**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re Application of

KUWAIT PORTS AUTHORITY,

Case No. 1:20-mc-00046 (ALC)

Petitioner, for an Order Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in a Foreign Proceeding

**MEMORANDUM OF LAW IN SUPPORT OF THE PORT FUND'S
MOTION TO INTERVENE AND OPPOSITION TO KPA APPLICATION
PURSUANT TO 28 U.S.C. §1782**

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ........................................................................................................................ 7

    I.   THE PORT FUND'S MOTION TO INTERVENE SHOULD BE GRANTED ............... 7

    II.  THE KPA APPLICATION SHOULD BE DENIED DUE TO ITS FAILURE TO MEET
       THE STATUTORY REQUIREMENTS OF SECTION 1782 .......................................... 8

      A. Legal Standard ........................................................................................................ 8

      B. The KPA Application Should Be Denied In Its Entirety Because It Does Not Seek
        Discovery For Use In Reasonably Contemplated Litigation ....................................... 10

      C. The Remaining Two Statutory Requirements and the Failure of the KPA Kickback
        Requests To Satisfy The First Statutory Requirement .................................................. 14

    III. THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY THE KPA
       APPLICATION ...................................................................................................... 15

      A. The KPA Application Should Be Denied Because The Clark Asset Requests Seek
        Documents In Possession Of A Party To The "Impending Cayman Litigation" ......... 15

      B. The KPA Application Should Be Denied Because the Clark Asset Requests Seek To
        Circumvent The Outcome Of KPA's Pending Cayman Islands Proceeding ............... 17

      C. The KPA Application Should Be Denied Because The KPA Kickback Requests Seek
        Plainly Irrelevant Information And The Entire Application Reflects Bad Faith ......... 21

CONCLUSION.................................................................................................................... 25

DCACTIVE-54481383.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017)...................................................................24

*Al Fayed v. CIA*,
    229 F.3d 272 (D.C. Cir. 2000) ............................................................15

*Andover Healthcare, Inc. v. 3M Co.*,
    No. 14-mc-44, 2014 WL 4978476 (D. Minn. Oct. 6, 2014), *aff'd*, 817 F.3d
    621 (8th Cir. 2016)...............................................................................18

*AT&T Corp. v. Sprint Corp.*,
    407 F.3d 560 (2d Cir. 2005)...................................................................8

*In re Auto-Guadeloupe Investissement S.A.*,
    No. 12-mc-221, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)...............................22

*In re del Valle Ruiz*,
    939 F. 3d 520 (2d Cir. 2019)................................................14, 15, 23, 25

*Deposit Ins. Agency v. Leontiev*,
    No. 17-mc-00414, 2018 WL 3536083 (S.D.N.Y. July 23, 2018)....................22, 23

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002)...............................................................9, 10

*In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of
Fortress Inv. Grp. LLC*, No. 14-cv-1801, 2014 WL 3404955, (S.D.N.Y. July
    9, 2014), *aff'd*, 798 F.3d 113 (2d Cir. 2015).  ........................................12

*In re Escallon*,
    323 F. Supp. 3d 552 (S.D.N.Y. 2018)...................................................14

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F. 3d 1095 (2d Cir. 1995)...............................................................10

*In re Furstenberg Fin. SAS*,
    No. 18-mc-44, 2018 WL 3392882 (S.D.N.Y. July 12, 2018), *aff'd*, 785 F.
    App'x 882 (2d Cir. 2019) ...................................................................13

*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d Cir. 2012) ...........................................................1

i

*Hake v. Citibank, N.A.*,
No. 19-mc-00125, 2020 WL 1467132 (S.D.N.Y. Mar. 26, 2020)..........................................21

*In re Hansainvest Hanseatische Investment-GMBH*,
2019 WL 5939860 (S.D.N.Y. Oct. 4, 2019) ........................................................................25

*In re Harbour Victoria Inv. Holdings Ltd*,
No. 15-mc-127, 2015 WL 4040420 (S.D.N.Y. June 29, 2015) ..............................................11

*In re Hornbeam Corp.*,
722 F. App'x 7 (2d Cir. 2018) ............................................................................................12

*In re Hornbeam Corp.*,
No. 14 Misc. 424 (Part 1), 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17,
2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018) ....................................................................7, 8

*In re Hulley Enters., Ltd.*,
358 F. Supp. 3d 331 (S.D.N.Y. 2019)..................................................................................21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)..................................................................................................*passim*

*Inv. Vehicles v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015)......................................................................................*passim*

*Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*,
No. 18-mc-103, 2019 WL 1559433 (D.D.C. Apr. 10, 2019)................................................24

*Jiangsu S.S. Co. v. Success Superior Ltd.*,
No. 14-cv-9997, 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) ........................................11, 14

*In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*,
No. 14-cv-00797, 2015 WL 3439103 (D. Nev. May 28, 2015) ............................................25

*In re Kreke Immobilien KG*,
No. 13 Misc. 110, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) *abrogated on
other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ......................................18

*In re Lakhtakia*,
No. 18-mc-501, 2019 WL 3406659 (S.D.N.Y. July 29, 2019), *appeal
dismissed* (2d Cir. 19-2853) (Oct. 23, 2019) ....................................................................9, 15

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)..........................................................................................10, 22

*In re Microsoft Corp.*,
428 F. Supp. 2d 188 (S.D.N.Y. 2006).........................................................................16, 17, 19

ii

*In re Microsoft Corp.*,
   428 F. Supp. 2d at 195–96 ...................................................................................21

*In re OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign
Proceeding*, No. 19 Misc. 99, 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009).........................19

*In re Postalis*,
   No. 18-mc-497, 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018)..............................14

*In re Reyes*,
   No. 19-cv-7219, 2019 WL 6170901 (S.D.N.Y. Nov. 20, 2019)..............................8

*In re RSM Prod. Corp.*,
   No. 17-mc-213, 2018 WL 1229705 (S.D.N.Y. Mar. 9, 2018)...............................17

*In re Sargeant*,
   278 F. Supp. 3d 814 (S.D.N.Y. 2017)....................................................................11

*In re Sarrio, S.A.*,
   119 F.3d 143 (2d Cir. 1997).....................................................................................7

*In re Schlich*,
   No. 16-mc-319, 2017 WL 4155405 (S.D.N.Y. Sept. 18, 2017) ...........................14

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004).....................................................................................17

*In re Top Matrix Holdings Ltd.*,
   No. 18 Misc. 465, 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020)............................12

*U.S. v. Sealed 1, Letter of Request for Legal Assistance from the Deputy
Prosecutor General of the Russian Federation*, 235 F.3d 1200 (9th Cir. 2000) ....................24

*In re WinNet R CJSC*,
   No. 16-mc-484, 2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017) .......................22, 23

**Statutes**

U.S.C. Title 28 Section 1782 .................................................................... *passim*

Cayman Islands Exempted Limited Partnership Law Section 22.............................5, 21

Confidential Information Disclosure Law Section 4 .................................................19

DCACTIVE-54481383.1

## PRELIMINARY STATEMENT

The Port Fund L.P. ("Port Fund"), a Cayman Islands exempted limited partnership, respectfully submits this Memorandum of Law in support of its Motion to Intervene and in opposition to the *ex parte* application made by Kuwait Ports Authority ("KPA") on January 27, 2020 pursuant to Section 1782 to serve subpoenas on two financial institutions (the "KPA Application"): (i) a subpoena to Citibank for documents related to the Clark Asset Sale[1] (the "Clark Asset Requests") and (ii) a subpoena to E-Trade Financial Corporation for documents related to an alleged kickback scheme involving KPA and KGL Investment Company KSCC ("KGLI") (the "KPA Kickback Requests").  As KPA freely acknowledges, the Port Fund is the ultimate target of the KPA Application.[2]

In this Memorandum of Law, the Port Fund will establish as Point I that, as the ultimate target of the discovery sought, it is entitled to intervene.  Indeed, while it may be true that an applicant can readily avail itself of the benefits of Section 1782 *ex parte*, this practice can lead to abuses of the process and a waste of judicial resources.[3]  The Port Fund appreciates the opportunity given by this Court to move to intervene and present its opposition in a single set of papers before a decision on the KPA Application is made.  (ECF 11).

---

[1] The "Clark Asset Sale" refers to the sale of Clark Civil Aviation Complex, a former airport infrastructure site in the Philippines that was successfully redeveloped, marketed, and sold by the Port Fund, resulting in significant profits for all limited partners of the Port Fund, including KPA.  (*See* Declaration of Kathy Hirata Chin ("Chin Decl.") ¶¶ 5, 7).

[2] *See* KPA Memorandum of Law ("KPA Memo") at 13-14; Declaration of Jennifer Fox ("Fox Decl.") ¶ 5.

[3] As KPA is quick to point out, the Second Circuit has recognized that "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.  The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to F.R.C.P. 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012); KPA Memo at 1, n.1. Hans Smit, a leading academic commentator and drafter of § 1782, was, until his death, a most ardent supporter of liberal construction of Section 1782; even Professor Smit, however, considered these *ex parte* applications to be improper and possibly a violation of due process, and suggested that courts should consider assessing costs and attorney's fees against the party that made the application.  *See* Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l. L. & Com. 1, 16 (1998).  Encouraging litigants to file without notice with the expectation that further motion practice will be necessary to prevent a violation of constitutional norms can only increase the burden on district courts.

1

Point II of this Memorandum will demonstrate that KPA does not satisfy the statutory requirements for a Section 1782 application and that, even if it did, this Court could, and should, deny the application as an exercise of discretion (Point III).  The KPA Application is remarkable for its lack of candor, its apparent efforts to mislead, and its reliance on suspicion and unsubstantiated accusations—the kind of allegations that have been adequate under Kuwait's opaque criminal justice system to subject two former directors of Port Link GP Ltd. ("Port Link"), the general partner of the Port Fund, to years of persecution and criminal prosecution and enabled KPA to obtain more of the proceeds of the Clark Asset Sale than its entitlement. Now KPA seeks to persuade this Court as its first request to assist it in a fishing expedition to support its "impending" winding up petition against the Port Fund, even though KPA's own counsel admits that "KPA does not . . . have sufficient evidence to prove that Port Link, as general partner of Port Fund, has committed fraud or has breached its fiduciary duties or has mismanaged Port Fund" (Fox Decl. ¶ 9) and even though it is KPA that arguably defrauded the Port Fund and its partners by taking more of the profits of Port Fund than its entitlement.

KPA asks this of this Court even as the information that KPA claims to most urgently seek, the location of the allegedly missing Clark Asset Sale funds, has either already been given to KPA or is the subject of proceedings before a Cayman Islands court.  In that proceeding, the court is currently reviewing whether KPA is entitled to the information under the Cayman Islands law applicable to exempted limited partnerships, and, if so, whether that information should be shared with protections adequate to ensure certain confidentiality obligations and concerns, including limits on how and where it will be used.  The twin aims of Section 1782 would not be served by granting the KPA Application under these circumstances.

DCACTIVE-54481383.1

For its second request, KPA asks this Court to provide discovery into allegations of an alleged kickback scheme involving KPA and KGLI, an inquiry that has no plausible relevance to KPA's "Impending Cayman Litigation" against the Port Fund and which is grounded in allegations that are so misleading that they serve only to confirm the bad faith underlying KPA's request to the Court and mandate denial of its application.

For the reasons set forth below and in the accompanying declarations of Cayman Islands and US counsel to the Port Fund, the Motion to Intervene should be granted and the KPA Application denied, with attorney's fees to be awarded to the Port Fund, Citibank, and E-Trade.[4]

## **BACKGROUND**

The KPA Application presents this Court with descriptions of multiple transactions and events that KPA deems suspicious or does not understand, leading to the conclusion that "KPA is the victim of egregious misconduct directed by KGLI and its principals who managed the Port Fund . . ." (KPA Memo at 4). KPA highlights in particular its concerns about allegedly missing funds from the Clark Asset Sale and recounts the history of the freezing of the sale proceeds at Noor Bank (KPA Memo at 2, 8-10), without mentioning how it profited from the freeze at the expense of other limited partners in the Port Fund. (Chin Decl. ¶¶ 7, 23). KPA also mentions the criminal convictions of two former directors of Port Link, Marsha Lazareva and Saeed Dashti (KPA Memo at 7-8), without mentioning its own role in their current situation. (Chin Decl. ¶ 14). And KPA speculates that "[h]undreds of millions of dollars that rightfully belong to KPA and the Port Fund's other limited partners are unaccounted for, under circumstances that are

---

[4] Where discovery abuse includes efforts to mislead the court, it is within the court's inherent power to impose such sanctions. *See Metropolitan Opera*, 212 F.R.D. 178, 231 (S.D.N.Y. 2003); *Four Star Fin. Servs.*, 166 F. Supp. 2d 805, 810 (S.D.N.Y. 2001). To the extent Citibank and E-Trade have expended legal fees on the subpoenas, we make this request on their behalf as well.

currently shrouded in mystery" (KPA Memo at 1), without mentioning the funds it was able to obtain from Noor Bank to which it was not entitled.  (Chin Decl. ¶¶ 7, 23).

KPA also inexplicably seeks documents and information related to an alleged kickback scheme involving KPA's former director of finance, Abdullah Bader Mohammed Al Shamali, and KGLI.  Even though KPA alleges this kickback involved funds it paid to KGLI for advisory services (and therefore did not involve the Port Fund in any way), KPA asserts that this kickback scheme could somehow "form the basis for additional causes of action that will be pursued in the Impending Cayman Litigation."  (KPA Memo at 4).  KPA does not even attempt to explain how it could assert its unspecified causes of action against KGLI in a winding up petition against the Port Fund; indeed, KPA itself suggests that the key issue in any winding up petition against the Port Fund is whether KPA can establish misconduct by Port Link, not KGLI.  (KPA Memo at 18).  In addition, to justify this irrelevant request, KPA has resorted to a remarkable tale that begins with a criminal conviction based on forged documents and that ends with a three-step description of a money trail that seems meticulous, but is at least one step short of a showing that could require E-Trade to divulge the records of its customer.  (Chin Decl. ¶ 31).  Finally, and perhaps most importantly, the request is grounded in the false claim that E-Trade is headquartered in New York City.  (*Id.* ¶ 32).

If granted the opportunity to intervene and oppose the application, the Port Fund does not propose to rebut each accusation and lay to rest every suspicion, recognizing that this Court need not determine the validity of the accusations or the guilt or innocence of Ms. Lazareva and Mr. Dashti to determine whether the KPA Application should be granted.  The Port Fund does propose to provide this Court with information sufficient to demonstrate why KPA should not be permitted to use the power of this Court to continue its fishing expedition for information to use

4

ostensibly against the Port Fund and presumably against Port Link's former directors and others as well.

As is more fully set forth in the accompanying declaration of the Port Fund's Cayman Islands counsel, on May 5 and 6, the Grand Court of the Cayman Islands held a hearing in a proceeding commenced under Section 22 of the Cayman Islands Exempted Limited Partnership Law (the "Section 22 Proceeding"), to determine whether certain limited partners of the Port Fund (including KPA) are entitled to information that would provide answers to all of KPA's questions about the Clark Asset Sale.  KPA did not provide the Court with any information about the Section 22 Proceeding in its *ex parte* application.  Had it done so, it would have revealed that the Clark Asset Requests are duplicative of the discovery requested in the Cayman Islands. (Chin Decl. ¶¶ 34-35).  The judge in the Cayman Islands will decide whether the limited partners are entitled to the information requested under the Cayman Islands law governing the limited partnership and, if so, what, if any, confidentiality protections and other restrictions will be put in place for the receipt and/or use of the information.  (*See* Declaration of Barnaby Gowrie ("Gowrie Decl.") ¶¶ 19-20).  It is largely Port Link's concern over these protections that has driven the opposition to the requests in the Cayman Islands, and the same concern must be considered here, for the following reason.

As KPA notes, it is a Kuwait-based corporation owned by Kuwait.  (KPA Memo at 5). The proceeds of the Clark Asset Sale were indeed frozen at Noor Bank in Dubai on suspicion of money laundering, as KPA had instigated criminal complaints against Mr. Dashti and Ms. Lazareva (at that time, still directors of Port Link) that were still pending in the Kuwaiti courts at the time of the sale.   (Chin Decl. ¶¶ 22-23). What is significant about this incident is the role of KPA and the Kuwaiti government in the freeze.  Correspondence between the UAE government

and the Kuwaiti government reveals that the Kuwaiti government sought the transfer of $400 million out of the $496 million of frozen funds to KPA and another Kuwaiti state-owned investor, PIFSS, far more than their entitlement.  (*Id.* ¶ 23).  Kuwait was not successful in its efforts to expropriate $400 million of the frozen funds, but Port Link was unable to convince the UAE government to release the funds until it agreed to the Kuwait Attorney General's reduced demand to transfer to KPA more than $13 million above its legal entitlement.  (*Id.* ¶¶ 7, 23).

Since then, KPA has asked the Kuwait Attorney General to bring still more criminal charges against Ms. Lazareva and Mr. Dashti, and KPA has warned third party law, lobbying, public relations, and other professional service providers to the Port Fund of possible retribution, including being charged with crimes against the State of Kuwait carrying a minimum five-year sentence, if they receive payments not approved by the limited partners, despite the limited partners' lack of authority over the day-to-day operations of Port Fund.[5]  (Chin Decl. Exs. V, W, Y; Gowrie Decl. ¶ 7).  Further detail about the various criminal proceedings and KPA's warnings to Port Fund service providers are available in the Chin Declaration.  Such conduct demonstrates why the Port Fund is concerned by any efforts launched by KPA to obtain information that it claims it will use against the Fund.

In sum, given the scope of disclosure to KPA in the Section 22 Proceeding to date, the alleged need of KPA for the information sought in the Clark Asset Requests no longer exists, and the information sought in the KPA Kickback Requests has no relevance to the winding up proceeding KPA claims it intends to bring against the Port Fund. Closer scrutiny of KPA's alleged desire to use the information sought for the Impending Cayman Litigation must be given in light of the history of criminal proceedings and government interference with the affairs of the

---

[5] It should be noted that even KPA's Cayman Islands counsel acknowledges that limited partners "are not permitted to take part in the conduct of the business of the ELP."  (Fox Decl. ¶ 6).

Port Fund outlined above.  Such scrutiny can only lead to the conclusion that the KPA

Application was made with far less than the candor an *ex parte* application requires.  Under the

circumstances, the KPA Application must be denied.

## **ARGUMENT**

## I.    **THE PORT FUND'S MOTION TO INTERVENE SHOULD BE GRANTED**

The Port Fund is entitled to intervene in this action as a matter of right under controlling

Second Circuit law. "[S]tanding to oppose subpoenas issued under § 1782 is [not] limited to the

subpoenaed witness . . . parties against whom the requested information will be used may have

standing to challenge the lawfulness of discovery orders directed to third parties." *In re Sarrio,*

*S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (citations omitted); *see also In re Hornbeam Corp.*, No.

14 Misc. 424 (Part 1), 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17, 2015) (granting

intervention as of right), *aff'd*, 722 F. App'x 7 (2d Cir. 2018).  The KPA Application is premised

on the assertion that it seeks to bring a winding up petition against the Port Fund.  (KPA Memo

at 13-14).  Because the Port Fund is a "part[y] against whom the requested information will be

used[,]" it is entitled to challenge the issuance of the § 1782 subpoenas, and their motion to

intervene should be granted. *In re Sarrio,* 119 F.3d at 148.

Even if the Port Fund was not entitled to intervene as of right, this Court should exercise

its "broad discretion" to permit intervention under Rule 24(b). *In re Hornbeam Corp.*, 2015 WL

13647606, at *2. In making that determination, courts must consider whether the Port Fund has

(1) filed a timely application; (2) shown an interest in the action; (3) demonstrated that the

interest may be impaired by the disposition of the action; and (4) shown that the interest is not

adequately protected by the parties to the action. *Id*. The Court must also consider whether the

proposed intervention will unduly delay or prejudice the adjudication of the parties' rights. *Id*

Here there is no dispute that the Port Fund made a timely application to this Court

seeking to intervene and has amply shown its interest in the KPA Application.  The KPA

Application was filed on January 27, 2020 without notice to the Port Fund. When the Port Fund

became aware of these proceedings, it immediately filed a February 4, 2020 letter with the Court

copied to KPA counsel requesting leave to intervene. (ECF 8).  As to the interest of the Port

Fund that may be impaired, KPA by its application seeks to subpoena every document related to

the transfer of the Clark Asset Sale proceeds to Noor Bank, as well as documentation of any

additional transactions involving those proceeds that might have passed through Citibank.

Permissive intervention is an appropriate means to protect the Port Fund's interest in this

information. *See AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005); *In re Reyes*, No.

19-cv-7219, 2019 WL 6170901, at *2 (S.D.N.Y. Nov. 20, 2019) ("Bangladesh Bank has an

interest in the proceeding, because Petitioner requests discovery for use against Bangladesh Bank

in the Philippines Proceeding."); *In re Hornbeam*, 2015 WL 13647606 (proposed intervenor has

an interest where information may be used against it and there were confidentiality concerns).

Furthermore, no party to this action would adequately protect the Port Fund's interests. Because

KPA proceeded *ex parte*, it is the only party to this proceeding, and it is currently unknown

whether the proposed subpoena recipients will undertake any effort to protect the Port Fund's

interests.[6] Finally, KPA has not identified any prejudice it would suffer from permitting the Port

Fund to intervene. For all these reasons, the Port Fund's motion to intervene should be granted.

## II.   THE KPA APPLICATION SHOULD BE DENIED DUE TO ITS FAILURE TO MEET THE STATUTORY REQUIREMENTS OF SECTION 1782

### A.   Legal Standard

28 U.S.C § 1782 grants federal district courts discretion to permit "discovery of evidence

---

[6] Pursuant to the Court's order (ECF 11), KPA served Citibank and E-Trade with the § 1782 Application on or about April 22, 2020 (ECF 12), but neither entity has appeared in the action or otherwise indicated whether it intends to oppose the KPA Application.

in the United States for use in foreign proceedings" so long as the applicant can first demonstrate that (i) the person from whom discovery is sought resides or is found in the district to which the application is made, (ii) the discovery is for use in a proceeding before a foreign tribunal, and (iii) the application is made by a foreign or international tribunal or any interested person. *In re Edelman*, 295 F.3d 171, 175 (2d Cir. 2002); 28 U.S.C. § 1782. "These three elements, known as the statutory factors, must be met in order for a district court to have jurisdiction in accordance with the Statute." *In re Lakhtakia*, No. 18-mc-501, 2019 WL 3406659, at *2 (S.D.N.Y. July 29, 2019) (Carter, J.), *appeal dismissed* (2d Cir. 19-2853) (Oct. 23, 2019).

Moreover, "a district court is not required to grant a § 1782[] discovery application simply because it has the [statutory] authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). If the statutory factors are met, the court considers the discretionary factors, with an eye towards the twin aims of § 1782 to "'provid[e] efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (citation omitted).  The discretionary factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782[] request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65. If "the district court determines that a party's discovery application under section

9

1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto[.]" *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F. 3d 1095, 1101 n.6 (2d Cir. 1995).

**B.     The KPA Application Should Be Denied In Its Entirety Because It Does Not Seek Discovery For Use In Reasonably Contemplated Litigation**

As a threshold issue, KPA cannot satisfy the second statutory requirement under Section 1782, that is, whether the discovery is for use in a foreign proceeding before a foreign tribunal. *In re Edelman*, 295 F.3d at 175.  An applicant satisfies this requirement by showing that the materials sought will be used in a foreign proceeding that is "within reasonable contemplation at the time" of the Section 1782 petition.  *Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015).

In determining whether litigation is in reasonable contemplation, "a district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *KPMG,* 798 F.3d at 123–24 (internal citation and punctuation omitted). As the Second Circuit instructs:

> [T]he applicant must have more than a subjective intent to undertake some legal action. . . the Supreme Court's inclusion of the word "reasonable" in the "within reasonable contemplation" formulation indicates that the proceedings cannot be merely speculative. At a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.

*Id*. at 123–24.

KPA argues that it has satisfied the reasonable contemplation standard because it has: "(1) conducted an extensive and ongoing factual investigation; (2) retained Cayman counsel; and (3) Cayman counsel has reviewed the relevant documents and begun preparing the necessary pleadings."  (KPA Memo at 18).  But KPA concedes that, despite all of this, it is unable to initiate its "impending" litigation because it does not have sufficient evidence to launch a winding up petition against Port Fund.  (Fox Decl. ¶ 9).  In other words, the KPA Application is

10

merely an improper fishing expedition designed to "to investigate whether litigation is possible before launching it" rather than to aid specific litigation within its "reasonable contemplation." *See In re Sargeant*, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017).

The discovery tools provided under §1782 were "not designed to provide potential litigants with information that will help them decide whether and where to commence proceedings." *Jiangsu S.S. Co. v. Success Superior Ltd.*, No. 14-cv-9997, 2015 WL 3439220, at *6 (S.D.N.Y. Feb. 5, 2015).  In the case of *In re Asia Mar. Pac. Ltd*., the court held that an application seeking discovery in support of a future attachment proceeding was too speculative, because the applicant was merely hoping that the requested discovery would result in the location of the debtor's assets. As the court explained, the "attachment proceedings cannot be commenced unless discovery reveals that Arma has assets against which Petitioner may proceed. In sum, Petitioner does not 'contemplate' bringing. . . attachment proceedings so much as it hopes to discover assets against which it can bring a pre- or post-judgment attachment proceedings." 253 F. Supp. 3d 701, 707–08 (S.D.N.Y. 2015); *see also In re Harbour Victoria Inv. Holdings Ltd,* No. 15-mc-127, 2015 WL 4040420, at *8 (S.D.N.Y. June 29, 2015) ("If the [requested] discovery does not confirm the existence of these bank accounts, it appears that Petitioner will not commence such proceedings. In short, this is a fishing expedition.").

Similarly, here, as stated by KPA's Cayman Islands counsel, submitting a winding up petition requires proof that "fraud, mismanagement or breach of duty has been committed by [Port Fund's] general partner," Port Link. (Fox Decl. ¶ 9).  But KPA expressly concedes that it "does not, however, currently have sufficient evidence to prove that Port Link, as general partner of Port Fund, has committed fraud or has breached its fiduciary duties or has mismanaged Port Fund." (*Id*. ¶ 9). KPA thereby acknowledges that its "Impending Cayman Litigation" is not

impending at all.  To the contrary – KPA's putative winding up petition is wholly speculative and can only be pursued if discovery in this proceeding yields the necessary evidence.

Notably, five months have elapsed since KPA filed this petition, and KPA still has not filed its Impending Cayman Litigation. As detailed below, KPA has already obtained much of the evidence it seeks in its Application, and yet it still has not been able to file a winding up petition, confirming that it has no basis to pursue litigation at this time. Courts must "guard[] against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse . . . [T]he concerns about misuse of the discovery process are particularly pronounced in this case, since petitioners have had an opportunity to initiate judicial proceedings abroad but have failed to do so." *See In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14-cv-1801, 2014 WL 3404955, at \*6-7 (S.D.N.Y. July 9, 2014), *aff'd*, 798 F.3d 113 (2d Cir. 2015).

Furthermore, to obtain discovery under § 1782, petitioners must, at a minimum, do what KPA has failed to do here: they must "provide the legal theories under which they plan[] to litigate" against specific defendants. *See In re Top Matrix Holdings Ltd.*, No. 18 Misc. 465, 2020 WL 248716, at \*4-5 (S.D.N.Y. Jan. 16, 2020) ("This Circuit has found that sworn statements attesting to petitioners' intent to litigate and *describing the legal theories on which they plan to rely* are sufficiently concrete to meet the statutory requirement.") (emphasis added); *In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018) (Petitioner "articulated a theory on which it intended to litigate"); *In re Furstenberg Fin. SAS*, No. 18-mc-44, 2018 WL 3392882, at \*4 (S.D.N.Y. July 12, 2018) (petitioners "articulated a specific legal theory on which they intend[ed] to rely."), *aff'd*, 785 F. App'x 882 (2d Cir. 2019).  KPA's "Impending Cayman Litigation" is also not "within reasonable contemplation" because KPA is unable to articulate the

12

basis for its winding up petition.  As noted above, KPA acknowledges that it does not currently have evidence to support such a petition, which must establish fraud, mismanagement or breach of duty by Port Link. And while the KPA Application references multiple financial transactions as somehow suspicious, KPA cannot identify which specific transaction will serve as the basis for its Impending Cayman Litigation, much less which alleged acts of Port Link might constitute fraud, mismanagement, or a breach of duty.

Finally, the second request contained within the KPA Application must fail for the additional reason that the request bears no discernible relationship to the affairs of Port Fund. The KPA Kickback Requests seek evidence concerning a "Kickback Scheme" involving KPA's former Director of Finance and KGLI.  The "scheme" has nothing to do with Port Fund or Port Link.  As explained in the Gowrie Declaration, such information about transactions that cannot be attributed to Port Fund or Port Link as a matter of Cayman Islands law could not be the basis for the Impending Cayman Litigation.  (Gowrie Decl. ¶ 32).

As the Second Circuit has explained, "it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." *KPMG*, 798 F.3d at 120 n. 7.  Where, as here, "Petitioner's discovery request appears to be little more than a fishing expedition to acquire documents and information that have at best limited relevance" to the proposed proceedings, the Petitioner has "failed to show that the requested discovery is 'for use' in foreign proceedings as required by § 1782, and his application must be denied on statutory grounds." *In re Escallon*, 323 F. Supp. 3d 552, 559 (S.D.N.Y. 2018); *see also In re Postalis,* No. 18-mc-497, 2018 WL 6725406, at *4 (S.D.N.Y. Dec. 20, 2018) (denying petition relying on "conclusory" allegations of relevance for failure to "show[] that the evidence sought is likely to be for use in the foreign proceedings."); *In re Schlich*, No. 16-mc-319, 2017

WL 4155405, at *6 (S.D.N.Y. Sept. 18, 2017) ("[T]he material sought is plainly irrelevant to the foreign proceeding and not 'for use' in a foreign proceeding within the meaning of § 1782."); *Jiangsu S.S. Co.*, 2015 WL 3439220, at *1 (denying application because "[i]t is clear from [the applicant's] moving papers that [it] does not need this information in order to prosecute the London arbitration").

Because the KPA Application fails to meet the second statutory requirement, it must be denied in its entirety.  *See KPMG*, 798 F.3d at 117.

**C.**  **The Remaining Two Statutory Requirements and the Failure of the KPA Kickback Requests To Satisfy The First Statutory Requirement**

As to the other two statutory requirements, focusing first on the Clark Asset Requests and the first statutory requirement, the Port Fund notes that the Second Circuit has chosen to apply a more liberal standard than even Professor Smit advocated with respect to the extraterritorial reach of Section 1782, thereby abrogating a number of well-reasoned district court decisions and exposing the district courts to even more ex parte applications against international financial institutions such as Citibank in future.  *See In re del Valle Ruiz*, 939 F. 3d 520, 528 and n. 16 (2d Cir. 2019); Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l. L. & Com. 1, 10-12 (1998) (discussing the "potent reasons" for not giving Section 1782 extraterritorial reach and expressing particular concern about the ease with which major banks may be "found" in the United States).  The Circuit did, however, also determine that a district court "may properly, and in fact should, consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize such discovery."  *In re del Valle Ruiz*, 939 F. 3d at 533.  The Port Fund accordingly will address the issue with respect to the Clark Asset Requests at Point III.C of its Memorandum below.

However, careful review of the KPA Kickback Requests reveals that they are not only irrelevant, but based on the false premise that E-Trade Financial Corporation is headquartered in New York City.  (KPA Memo at 16-17).  The KPA Memo relies on an outdated SEC filing for its claim, where a more recent filing shows that E-Trade is headquartered in Virginia and incorporated in Delaware.  (Chin Decl. ¶ 32).  As this Court has recently recognized, where the proposed subpoena recipient is not incorporated or does not maintain its principal place of business in this District, the application fails the first statutory requirement and the Court need not delve into the discretionary *Intel* factors.  *See In re Lakhtakia*, 2019 WL 3406659 (S.D.N.Y. July 29, 2019).  Accordingly, the KPA Kickback Requests must be denied.

It should also be noted that even the third statutory requirement is not entirely free from doubt, given KPA's status as an entity owned by a foreign sovereign (*see Al Fayed v. CIA*, 229 F.3d 272, 274 (D.C. Cir. 2000)), but the Port Fund acknowledges that at present, in the ever-developing world of Section 1782 jurisprudence, the weight of authority is in favor of deeming KPA a "person" for Section 1782 purposes.

## III.   THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY THE KPA APPLICATION

Even if KPA met the statutory requirements, which it does not, this Court should exercise its discretion and deny the application because the *Intel* discretionary factors weigh heavily against KPA, and granting the KPA Application would not further the twin aims of § 1782.

### A.   The KPA Application Should Be Denied Because The Clark Asset Requests Seek Documents In Possession Of A Party To The "Impending Cayman Litigation"

This Court should exercise its discretion to deny the KPA Application because the Clark Asset Requests improperly seek evidence that is already within the jurisdiction of a Cayman Islands court. The first *Intel* factor asks "[w]hether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid[.]" *In re*

*Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006). The "need for § 1782(a) aid generally is not as apparent" when the subpoena targets are parties to the foreign proceeding or where, as here, the likely parties are in possession of the requested evidence and "[a] foreign tribunal . . . can itself order them to produce [it]." *Intel,* 542 U.S. at 264.

With respect to the Clark Asset Sale, which is the primary focus of the KPA Application, the Clark Asset Requests seek all bank records showing details of the transfer of the $496 million in Clark Asset Sale proceeds to the Noor Bank account, as well as details of any additional transfers involving those proceeds, including the ultimate recipients of the funds. (Cross Decl. Ex. 1). Notably, KPA does not contend that Citibank is the target of these requests or has independent knowledge of any transactions discussed in its Application. To the contrary, in its pending Section 22 Proceeding, KPA is seeking the same information directly from the Port Fund and Port Link (together, the "Port Fund Entities"), confirming that the requested evidence is within the Cayman Islands court's jurisdiction.[7]  And while Citibank may have internal documents (*e.g.*, SWIFT messages) reflecting these transactions that typically would not be included in the bank customer's records, all of the requested information—the transaction dates, amounts, recipients, and underlying support—would appear in bank statements and other financial documentation in the possession of the Port Fund Entities.  Furthermore, it is the sharing and protection of such information that is the subject of proceedings in the Cayman Islands court already, as KPA well knows.  (*See* Gowrie Decl. ¶ 26).

While Citibank itself is not a "participant in the foreign proceeding, it would be a poor exercise of discretion in these circumstances to assist [a Cayman Islands] court by providing

---

[7] The accompanying Chin Declaration addresses the relevant information requested by KPA in the Cayman Islands proceeding and the extent to which information sought in the § 1782 Requests already has been provided to KPA in that proceeding. (*See* Chin Decl. ¶¶ 34-35).

DCACTIVE-54481383.1

discovery . . . within the [Cayman Islands] court's jurisdiction." *See In re RSM Prod. Corp.*, No. 17-mc-213, 2018 WL 1229705, at *4 (S.D.N.Y. Mar. 9, 2018); *In re Microsoft Corp.*, 428 F. Supp. 2d at 194 ("While IBM and Cleary Gottlieb are not 'participants,' per se, in the underlying antitrust proceeding, all of the documents sought by Microsoft are within the Commission's reach."); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) ("for all intents and purposes petitioners are seeking discovery from [Cravath's client], their opponent in the [foreign] litigation.").

**B.**   **The KPA Application Should Be Denied Because the Clark Asset Requests Seek To Circumvent The Outcome Of KPA's Pending Cayman Islands Proceeding**

This Court should exercise its discretion to deny the KPA Application because the Clark Asset Requests seek to avoid or preempt a negative ruling from the Cayman Islands court in the pending proceeding. That effort weighs heavily against KPA under the third *Intel* factor, which asks whether an applicant is seeking discovery "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65.

On January 8, 2020, KPA sought the Port Fund Entities' consent to join the Section 22 Proceeding commenced by Gulf Investment Corporation ("GIC"), another limited partner in the Port Fund. (Gowrie Decl. ¶ 14).  On January 21, 2020, the Port Fund Entities consented to KPA's request so long as KPA filed separate evidence supporting its requests for the same information sought by GIC, which it did on January 29, 2020.[8]  (*Id.*). Despite its clear awareness of it, KPA does not even mention the Section 22 Proceeding in its § 1782 Application.  KPA thereby avoided informing this Court that the Section 22 Proceeding asks the Cayman Islands

---

[8] The supporting affidavit of Yousef Al Sabah in the Section 22 Proceeding was sworn on January 27, 2020, the same day that he swore to his declaration in support of the KPA Application. (Gowrie Decl. ¶ 12).  It should be noted that, as more fully set forth in the Chin Declaration, Sheikh Yousef does not have authority to commence legal proceedings on behalf of KPA.  (Chin Decl. at 10, n.50).

court to compel release to KPA of the same documents and information regarding the Clark Asset Sale that it now seeks to obtain from Citibank through this §1782 proceeding. (*Id.* ¶¶ 17-18; Chin Decl. ¶ 27).

In the Section 22 Proceeding, KPA has asked the Cayman Islands court to determine whether, under Cayman Islands law, KPA is entitled to obtain detailed information about the Port Fund Entities' investments and financial transactions and, if so, what confidentiality safeguards and others restrictions as to receipt and/or use should be applied.  (Gowrie Decl. ¶ 12). KPA's simultaneous effort to invoke § 1782 in this court is improper because the statute "was not intended 'as a vehicle to avoid … an unfavorable discovery decision' from a foreign tribunal." *In re Kreke Immobilien KG*, No. 13 Misc. 110, 2013 WL 5966916, at \*6 (S.D.N.Y. Nov. 8, 2013) (citation omitted) *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520, 532 (2d Cir. 2019). "It would create a perverse system of incentives—one counter to the efficiency and comity goals of § 1782—to encourage foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority." *Id*.  Indeed, courts routinely deny § 1782 petitions where, as here, the petitioner has a request for identical information pending before another Court. *See*, *e.g.*, *Andover Healthcare, Inc. v. 3M Co.*, No. 14-mc-44, 2014 WL 4978476, at \*7 (D. Minn. Oct. 6, 2014), *aff'd*, 817 F.3d 621 (8th Cir. 2016) ("Because the same discovery request currently is pending before the German court, it appears that Andover is simply attempting to avoid or preempt an unfavorable decision by that court."); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195-96 ("a decision by this Court which would either preempt or contradict a decision by the Commission[,] would render the Commission's proceedings meaningless and undermine the Commission's rules on confidentiality"); *see also In re OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, No.

19 Misc. 99, 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009) ("granting Promnefstroy's

Application would only frustrate the careful balance struck by the Dutch courts in the underlying

Dutch Proceedings.").

It should be noted that much of the information sought by KPA was provided to KPA by

the Port Fund's Cayman Islands counsel in a disclosure letter dated March 6, 2020.  A copy of

the disclosure letter, with exhibits, is annexed to the Gowrie Declaration.  Concerns about

sharing certain information, based on confidentiality concerns and concerns about the use to

which the information would be put, meant that not every detail and every document could be

shared.  As a result, the Cayman Islands court also will be deciding KPA's entitlement under

Cayman Islands law to certain limited categories of information, including details regarding the

Clark Asset Sale, that the Port Fund Entities have not already disclosed.  (Gowrie Decl. ¶ 26;

Chin Decl. ¶ 34).

First, the Cayman Islands court will decide whether information that is the subject of the

Port Fund Entities' *ex parte* application under Section 4 of the Confidential Information

Disclosure Law (the "CIDL Application") can be provided to KPA.  The CIDL Application

seeks directions from the Cayman Islands court in order to allow the Port Fund Entities to

disclose to KPA certain information that is subject to third party confidentiality obligations

without breaching those confidentiality obligations. (Gowrie Decl. ¶ 21). As relevant here, the

CIDL Application seeks the Cayman Islands court's permission to provide KPA with certain

documentation regarding the Clark Asset Sale and its guidance on what, if any, confidentiality

protections should be imposed on the use of these documents. (*Id.* ¶¶ 22, 26).

Second, the Port Fund Entities have not provided the Noor Account bank statements

requested in the Section 22 Proceeding in order to protect (i) the identities of a limited number of

recipients of proceeds from the Clark Asset Sale, (ii) the bank account numbers of third party recipients of those proceeds, and (iii) itself against claims by third parties due to disclosure of the information. (*Id.* ¶ 19). As described above, the Port Fund Entities have serious concerns about potential malicious prosecution in Kuwaiti courts of individuals associated with professional service advisors to the Port Fund Entities, as well as potential resulting claims against the Port Fund Entities for the release of third party information.  For that reason, the Port Fund Entities have taken the position that KPA is not entitled to that limited subset of information, but if the Cayman Islands court orders its production, KPA may be subject to an undertaking that it will use the information only for the purpose of informing itself about the affairs of the Port Fund and no other purpose. (*Id.* Ex. 17 at pp. 18, 24).

Following extensive briefing by all parties, the Cayman Islands court held a hearing on May 5-6, 2020 in the Section 22 Proceeding. (*Id.* ¶¶ 24, 25). The Port Fund Entities expect that the Cayman Islands court's ruling will be made within six to eight weeks after the hearing and will address whether KPA is entitled under Cayman Islands law to receive any additional disclosures and, if so, the confidentiality safeguards and other protections as to receipt and/or use required for that information.  (*Id.* ¶¶ 25-26). In the event that the Cayman Islands court grants KPA's application, it will moot KPA's requests related to the Clark Asset Sale in its §1782 Application.  If, on the other hand, the Cayman Islands court denies KPA's Section 22 requests, or grants them subject to specific confidentiality safeguards or other protections, any inconsistent decision from this Court "would render the [Cayman Islands Court's] proceedings meaningless and undermine [its] rules on confidentiality." *See In re Microsoft Corp.*, 428 F. Supp. 2d at 195–96. An inconsistent decision would run counter to the fundamental purpose of Section 1782 by "pitting this Court against the [Cayman Islands Court], rather than fostering cooperation between

20

them" and would "violate established principles of comity, under which 'United States courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries.'" *Id.* (quoting *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997)).

**C.      The KPA Application Should Be Denied Because The KPA Kickback Requests Seek Plainly Irrelevant Information And The Entire Application Reflects Bad Faith**

This Court should exercise its discretion and deny the KPA Application because the KPA Kickback Requests seek plainly irrelevant documents and KPA has brought its application in bad faith.  Under the fourth *Intel* factor, courts are asked to review the requested discovery under the "familiar standards of Rule 26[.]" *In re Hulley Enters., Ltd.*, 358 F. Supp. 3d 331, 352 (S.D.N.Y. 2019) (internal quotations and citation omitted). "It is the burden of the party seeking the documents to demonstrate that the documents are relevant and within the bounds of discovery permitted by Rule 26(b)." *Hake v. Citibank, N.A.*, No. 19-mc-00125, 2020 WL 1467132, at *5 (S.D.N.Y. Mar. 26, 2020). Here, KPA has not even attempted to meet its affirmative burden of explaining how the E-Trade Requests have any relevance or bearing on its proposed winding up petition, as explained *supra* in Point II.B.  A "request that appears only marginally relevant to the foreign proceeding may in certain cases suggest that the application 'is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials,' which would be grounds for a discretionary denial of discovery."  *Mees*, 793 F.3d at 299 n.10 (internal citation omitted).  In addition, KPA misrepresented the location of E-Trade, and its purported justification for the requests is misleading as well.  (*See* Chin Decl. ¶¶ 31, 32).

With respect to the Clark Asset Requests, KPA has demonstrated bad faith by failing to apprise the Court of the Section 22 Proceeding.[9] This omission is inexcusable given the overlap between the Clark Asset Requests and the discovery sought in Section 22 Proceeding. It is particularly disconcerting given that, in the name of comity, KPA has asked this Court to take actions that would directly interfere with and potentially even moot a pending decision in the Cayman Islands Court. "Courts have quashed § 1782 subpoenas for misrepresenting related actions involving the same parties" including where they "misrepresent or omit" proceedings to conceal facts that would affect the outcome of a § 1782 petition. *Deposit Ins. Agency v. Leontiev*, No. 17-mc-00414, 2018 WL 3536083, at *11 (S.D.N.Y. July 23, 2018). Denial of a petition is warranted where, as here, the petitioner deliberately fails to disclose key facts about related litigation out of a recognition that "a candid description of the litigation would have undermined if not defeated its application." *In re WinNet R CJSC*, No. 16-mc-484, 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017).

KPA's failure to disclose the Section 22 Proceeding is only one example of the many misstatements and material omissions in its §1782 Application. The declaration submitted by Yousef Al Sabah in support of the KPA Application is remarkable for its misleading assertions and omissions. Taken together, these and the other examples of KPA's bad faith, which are discussed in more detail in the Chin Declaration, are more than sufficient grounds to deny its Application. *See In re Auto-Guadeloupe Investissement S.A.*, No. 12-mc-221, 2012 WL 4841945, at *8 (S.D.N.Y. Oct. 10, 2012) (finding, where petitioner "did not disclose much of this critical information in its ex parte § 1782 Application" that petitioner "may have acted in bad faith when

---

[9] As noted in the Chin Declaration, KPA also neglected to advise this Court that a similar proceeding had been filed only a month earlier by its fellow limited partner GIC. (Chin Decl. ¶¶ 25-27).

it filed its § 1782 Discovery Request" such that "the third *Intel* factor weighs in favor of quashing all or part of [petitioner's] subpoena").

KPA's lack of candor is even more egregious in light of its decision to file its §1782 Application *ex parte* without notice to the Port Fund:

> The duty of candor is, if anything, more critical when ex parte applications are made to a court. Both the New York State and Model Rules of Professional Conduct provide that "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." New York Rules of Prof'l Conduct R. 3.3(d) (2017); Model Rules of Prof'l Conduct R. 3.3(d) (2016).

*In re WinNet*, 2017 WL 1373918, at *9. The failure to abide by the heightened requirement of candor in an *ex parte* filing is yet another grounds for denial of KPA's Application.

We should also mention here the second *Intel* discretionary factor in accordance with the recommendation of the Second Circuit.  *In re del Valle Ruiz*, 939 F.3d at 533-34.  While the KPA Application sets its sights on an Impending Cayman Litigation, many of the concerns about sharing information with KPA and the other limited partners associated with the government of Kuwait stem from what has happened to the former directors of Port Link in the Kuwaiti justice system and the direct impact such proceedings have had on the affairs of the Port Fund, including the Noor Bank freeze.  Recent events suggest that KPA will not hesitate to bring any information it uncovers to the attention of the Kuwaiti authorities in hopes of commencing yet another criminal investigation.  (*See* Chin Decl. Exs. V, Z).  And while this Court need not engage in any study of the Kuwaiti judicial system to decide this Application, courts may consider concerns raised as a matter of discretion and limit any discovery granted carefully to avoid any misuse of the information.  *See Leontiev*, 2018 WL 3536083, at *5 (while concern that information would be given to Russian authorities to concoct criminal charges did not require the Court to deny the application where the mandatory and statutory factors were met, the court took

23

steps to require narrowing of the requests).  *See also Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*, No. 18-mc-103, 2019 WL 1559433, at *8 (D.D.C. Apr. 10, 2019) ("[a] refusal to grant assistance under Section 1782 may also be based on the district court's finding that, in some way, the foreign proceedings are unfair or incompatible with domestic notions or propriety.") (quoting Smit at 15); *U.S. v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor General of the Russian Federation*, 235 F.3d 1200, 1205 (9th Cir. 2000) ("[T]he statute provides considerable discretion to district courts to decline to order U.S. authorities to assist in situations where the foreign government has, for example, insufficient basis to believe that evidence may be found here, or is simply seeking to harass political opponents.")  Under the circumstances, were this Court to choose to grant any portion of the KPA Application, we would ask that the Court prohibit use of the discovery in proceedings other than the Impending Cayman Litigation.  *See generally In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) (evidence of intent to use foreign litigation as a ruse to obtain discovery for use in other foreign proceedings could provide good cause for a protective order or support denying the application altogether).

Finally, the Clark Asset Requests represent an undue burden given that KPA is already seeking to obtain, or has already obtained, the same information in its Section 22 Proceeding and the Cayman Islands court is already engaged both in determining whether KPA is entitled to the information as a limited partner and addressing confidentiality issues. (Chin Decl. ¶¶ 34-35).  "When the information sought is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome." *In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by*

*Macquarie Bank Ltd.*, No. 14-cv-00797, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015) (collecting cases).

The burden imposed by KPA's proposed subpoena to Citibank is also particularly unwarranted given that there is no basis to conclude that the material sought will be located in the United States, let alone the Southern District of New York.  Although courts in this Circuit are not "categorically barred from allowing discovery under § 1782 of evidence located abroad," the Second Circuit has directed that district courts should "consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize such discovery." *In re del Valle Ruiz*, 939 F.3d at 533. The proposed Citibank subpoena seeks documents related to foreign financial transactions between entities outside the United States. Allowing KPA to use § 1782 to subpoena foreign financial records as part of its global search for information will not further the "twin aims" of § 1782, and thus is a factor that supports this Court exercising its discretion and denying the application.  *See also In re Hansainvest Hanseatische Investment-GMBH*, 2019 WL 5939860 (S.D.N.Y. Oct. 4, 2019) (Carter, J.) (staying extraterritorial discovery).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the Port Fund's motion to intervene and deny KPA's Application.

25

Dated: May 29, 2020

Respectfully submitted,

CROWELL & MORING LLP

By: /s/ Kathy Hirata Chin

    Kathy Hirata Chin
    Sarah M. Gilbert
    590 Madison Avenue
    New York, New York 10022
    (212) 223-4000
    kchin@crowell.com
    sgilbert@crowell.com

    *Counsel for the Port Fund L.P.*

DCACTIVE-54481383.1