UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

EX PARTE APPLICATION OF KUWAIT PORTS AUTHORITY FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. §1782

Case No 1:20-mc-00046 (ALC)

## DECLARATION OF BARNABY GOWRIE

Pursuant to 28 U.S.C. § 1746, I, **BARNABY GOWRIE** hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

### Introduction

1. I am an Attorney-at-Law in the Cayman Islands with the firm, Walkers, of 190 Elgin Avenue, George Town, Grand Cayman KY1-9001, Cayman Islands, where I am a Partner in the Insolvency and Dispute Resolution group.

2. I am a graduate of Magdalene College, Cambridge University, England where I studied Law. I was admitted to the Law Society of England and Wales in 2004 and practiced as a solicitor in England prior to being admitted as an Attorney-at-Law in the Cayman Islands in 2007.  I became a partner of Walkers in 2014.

3. I act as Cayman Islands legal counsel to The Port Fund L.P. (the "**Fund**") and its general partner, Port Link GP Ltd. (the "**GP**", and together with the Fund, the "**Port Fund Entities**") on a number of matters, including an ongoing proceeding in the Cayman Islands pursuant to which the Kuwait Ports Authority ("**KPA**") seeks the disclosure of certain documents

and information pursuant to section 22 of the Cayman Islands Exempted Limited Partnership Law (2018 Revision) (the "**ELP Law**," attached hereto as **Exhibit 1**) (the "**KPA S.22 Proceeding**").

4. Although I am not a U.S. Attorney and therefore do not purport to make any authoritative statements concerning matters of U.S. law, I am reasonably well acquainted with section 1782 of Title 28 of the United States Code ("**Section 1782**") due to my experience advising clients on complex cross-border litigation.

5. I make this declaration in support of the Port Fund's motion to intervene and opposition to KPA's application for an order under Section 1782 to serve subpoenas on Citibank N.A. and E-Trade Financial Corporation for the purpose of obtaining documents relating to, *inter alia*, certain transactions entered into by the Port Fund Entities (the "**KPA Application**").

6. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal experience and knowledge, and my review of relevant documents which are identified throughout this declaration. To the extent that statements in this declaration are of my legal opinion, they represent my views of the laws of the Cayman Islands only.[1]

**Overview of Cayman Islands Exempted Limited Partnerships**

7. The Fund is a Cayman Islands exempted limited partnership. Exempted limited partnerships (each an "**ELP**") are principally governed by the ELP Law. An ELP is not an entity with separate legal personality. As such, all letters, contracts, deeds, instruments or documents must be entered into by the general partner for and on behalf of the ELP: section 14(2) of the ELP Law. In addition, a limited partner shall not take part in the conduct of the business of an ELP in its capacity as a limited partner: section 14(1) of the ELP Law.

8. Consistent with the matters set out above, section 33(1) of the ELP Law provides

---

[1] I also certify that the exhibits attached hereto are true and correct copies of the original documents.

that, subject to sub-sections to section 33, any legal proceedings on behalf of an ELP must be brought by the general partner, stating: *"...legal proceedings by or against an exempted limited partnership may be instituted by or against any one or more of the general partners only, and a limited partner shall not be a party to or named in the proceedings."*

**Overview of S.22 Proceedings**

9.  Relevantly, section 22 of the ELP Law provides: *"Subject to any express or implied term of the partnership agreement, each limited partner may demand and shall receive from a general partner true and full information regarding the state of the business and financial condition of the exempted limited partnership."*

10. Accordingly, section 22 of the ELP Law provides a mechanism under Cayman Islands law that permits limited partners to access documents and information concerning the state of the business and financial condition of an ELP, subject to the terms of the partnership agreement that relates to that particular ELP.

11. In addition to the ELP Law, the rights and obligations of the GP and the limited partners are set out in the Fund's Limited Partnership Agreement which is dated 22 March 2007 (as amended and restated on 24 July 2008) (the "**LPA**," attached hereto as **Exhibit 2**). The LPA contains certain provisions which govern the provision of documents and information to the limited partners (which section 22 of the ELP Law is subject to).

12. The KPA S.22 Proceeding was initiated on 29 January 2020 by way of originating summons (the "**KPA Summons**", attached hereto as **Exhibit 3**) which sought information from the Port Fund Entities pursuant to clause 7.1 of the LPA and/or section 22 of the ELP Law. The KPA Summons was supported by the First Affidavit of Yousef Al Sabah sworn on 27 January 2020 ("**Al Sabah 1**," attached hereto as **Exhibit 4**). Al Sabah 1 set out, in the schedule to the

3

affidavit, KPA's requests for information from the Port Fund Entities (the "**KPA S.22 Requests**").

13. Prior to the commencement of the KPA S.22 Proceeding, Gulf Investment Corporation, another of the Fund's limited partners, commenced its own proceedings under section 22 of the ELP Law by way of originating summons dated 26 November 2019 (the "**GIC Summons**," attached hereto as **Exhibit 5**)[2]. The GIC Summons was supported by the First Affidavit of Bader AbdulMohsen El-Jeaan sworn on 26 November 2019 ("**El Jeaan 1**," attached hereto as **Exhibit 7**) (the "**GIC S.22 Proceeding**").[3]

14. On 8 January 2020, Walkers received a letter from KPA's Cayman Islands attorneys, Ogier, stating that they were instructed by KPA to apply for leave of the Cayman Court to be joined as a party to the GIC S.22 Proceeding (the "**Proposed Joinder Application**") and seeking the Port Fund Entities' consent to the Proposed Joinder Application (attached hereto as **Exhibit 9**. On 21 January 2020, Walkers sent a letter to Ogier stating that the Port Fund Entities would consent to KPA being joined as a party to the GIC S.22 Proceeding, provided that KPA filed its own evidence and did not seek to rely on the evidence filed by GIC (which it had indicated it may seek to do in Ogier's letter dated 8 January 2020) (attached hereto as **Exhibit 10**. Notwithstanding the Port Fund Entities' provisional consent, KPA then proceeded to commence the KPA S.22 Proceeding on 29 January 2020 (as described at paragraph 12 above).

15. The information KPA requested in the KPA S.22 Proceeding was virtually identical to the information requested by GIC and GRSIA in the GIC S.22 Proceeding. As set

---

[2] GIC filed and served an Amended Originating Summons dated 12 December 2019 ("**Amended GIC Summons**," attached hereto as **Exhibit 6**) in materially the same terms as the Summons, but correcting an error in the GP entity name.

[3] On 29 January 2020, the Port Fund Entities were served with a further summons seeking to add an additional limited partner, the General Retirement and Social Insurance Authority ("**GRSIA**"), as a second plaintiff to the GIC S.22 Proceeding on the basis that it sought the same information as GIC from the Port Fund Entities (the "**GRSIA Summons**"). Mr El-Jeaan swore a second affidavit on 21 January 2020 in support of the GRSIA Summons ("**El-Jeaan 2**," attached hereto as **Exhibit 8**).

22887905.1 T5138.D08984

out in the schedule to Al Sabah 1, KPA has requested expansive discovery from the Port Fund Entities regarding their finances and transactions, with a focus on the Fund's investment in the Clark Civil Aviation Complex (the "**Clark Asset**") transaction (the "**KPA S.22 Requests**").

16. It was agreed between all parties that, given the identical information sought by three limited partners of the Fund, the GIC S.22 Proceeding and the KPA S.22 Proceeding would be heard together by the Grand Court of the Cayman Islands (the "**Cayman Court**") (together, the "**S.22 Proceedings**").

**Similarities between the KPA S.22 Proceeding and the KPA Application**

17. Despite KPA initiating the KPA S.22 Proceeding, KPA also filed the KPA Application which, as set out below, appears to be duplicative of the KPA S.22 Requests.

18. In order to illustrate the overlap between the KPA S.22 Requests and the information KPA seeks in the KPA Application, I set out below a non-exhaustive list of information requested in the KPA S.22 Requests as it relates to the Clark Asset: (a) Bank account statements from the Noor Bank account relating to the Clark Asset; (b) The identities of all parties who received disbursements from the Noor Account, the amount and date of such disbursement, and the bank account details for such disbursements; and (c) The legal basis upon which each and every payment above was made to such parties.

**Disclosure Letter**

19. On 6 March 2020, the Port Fund Entities sent a letter to KPA disclosing certain documents and information sought by KPA pursuant to the KPA S.22 Proceeding and the KPA Application (the "**Disclosure Letter**," attached hereto with its enclosures as **Exhibit 11**). As set out in the Disclosure Letter, the Port Fund Entities did not disclose certain information (which includes documents and information relating to the Clark Asset) because that information is

subject to strict third party confidentiality obligations (the "**Confidential Information**"). The Confidential Information, insofar as it relates to the Clark Asset, includes but is not limited to, the following: (a) Certain correspondence relating to the Clark Asset; (b) Documentation relating to the financing of the Clark Asset; (c) Bank transfer slips and related documentation in connection with the sale of the Clark Asset; (d) Correspondence with the Philippines Competition Commission in relation to the sale of the Clark Asset; and (e) Agreements relating to the sale of the Clark Asset, (the "**Clark Confidential Information**").

20. If the Port Fund Entities were to disclose the Confidential Information without an order from the Cayman Court permitting the Port Fund Entities to disclose the Confidential Information, it is arguable that such disclosure would likely constitute a breach by the Port Fund Entities of their duty of confidence to the respective third party principals of the Confidential Information, and could expose the Port Fund Entities to potential claims by those third party principals.

**CIDL Application**

21. Accordingly, on 14 February 2020 the Port Fund Entities made an application under the Cayman Islands Confidential Information Disclosure Law (2016 Revision) (the "**CIDL**") seeking directions from the Cayman Court which would enable them to make disclosure of the Confidential Information requested by KPA without breaching the Port Fund Entities' strict third party confidential obligations (the "**CIDL Application**").

22. The CIDL Application sought orders from the Cayman Court that the Port Fund Entities be permitted to disclose the Confidential Information (including the Clark Confidential Information) in response to the S.22 Proceedings (including the KPA S.22 Requests), subject to KPA and other recipients of the Confidential Information executing appropriate confidentiality

and non-disclosure agreements in order to protect the third party principals of the Confidential Information.

23. The CIDL Application was listed to be heard *ex parte* on 17 April 2020.[4] Despite the CIDL Application initially proceeding on 17 April 2020, the Cayman Court ultimately adjourned the substantive hearing of the CIDL Application to be heard together with the S.22 Proceedings on 5 and 6 May 2020.[5]

**Procedural timeline of the KPA S.22 Proceeding**

24. The table below sets out the procedural timeline of the KPA S.22 Proceeding:

| Date | Procedural step |
|---|---|
| 29 January 2020 | KPA Summons issued by KPA supported by Al Sabah 1 |
| 9 April 2020 | The Port Fund Entities filed and served their evidence in response to the KPA Summons (the "**Port Fund Evidence**," attached hereto as **Exhibit 14**) |
| 24 April 2020 | KPA filed evidence in reply to the Port Fund Entities' evidence (the "**KPA Reply Evidence**," attached hereto as **Exhibit 15**) |
| 1 May 2020 | The Port Fund Entities filed further evidence in reply to the KPA Reply Evidence (the "**Port Fund Further Evidence**," attached hereto as **Exhibit 16**) |
| 1 May 2020 | Parties exchanged skeleton arguments in respect of the S.22 Proceedings (the "**Skeleton Arguments**," attached hereto as |

---

[4] Notwithstanding the *ex parte* nature of the CIDL Application, KPA, together with GRSIA and GIC, objected to the CIDL Application being heard on this basis (the "**CIDL Objections**," attached hereto as **Exhibit 12**). The Port Fund Entities responded to the CIDL Objections (the "**Response to CIDL Objections**," attached hereto as **Exhibit 13**).

[5] At the hearing of the S.22 Proceedings on 5 and 6 May 2020, the CIDL Application was further adjourned to a date to be fixed following the delivery of the judgment of the Cayman Court in respect of the S.22 Proceedings.

22887905.1 T5138.D08984

|  | **Exhibit 17**) |
|---|---|
| 5 and 6 May 2020 | Hearing of the S.22 Proceedings |

**Current status of S.22 Proceedings**

25. The S.22 Proceedings were heard before Justice Parker, a judge of the Cayman Court, on 5 and 6 May 2020. The Cayman Court has reserved its judgment, but indicated it will provide a written judgment in due course. I would typically expect a written judgment of this nature to be delivered within 6 to 8 weeks of the hearing, but this will depend on the workload of the individual Judge.

26. The decision of the Cayman Court is expected to address what information the Port Fund Entities are required to provide to KPA (and the other limited partners), and what confidentiality safeguards and/or other restrictions will be placed on the receipt and/or use of the information ordered to be provided to KPA.[6]

**Response to the declaration of Ms Jennifer Fox**

27. I have read the declaration by KPA's Cayman Islands counsel, Ms Jennifer Fox, executed on 27 January 2020 and filed in support of the KPA Application, the purpose of which appears to be to explain (i) the Cayman Court's jurisdiction to wind up ELPs on a just and equitable basis; and (ii) the Cayman Court's reception to parallel proceedings in the United States for discovery pursuant to Section 1782 (the "**Fox Declaration**").

Just and Equitable Jurisdiction

28. As to the Cayman Islands law on the ability to invoke the Cayman Court's jurisdiction to order the winding up of entities on a "just and equitable" basis, as noted in the Fox

---

[6] In addition, even once the Cayman Court hands down its judgment on what information must be provided, the order for provision of documents may still be subject to the adjourned CIDL Application, which Justice Parker has indicated he may wish to hear to determine appropriate confidentiality safeguards for those documents prior to finalisation of the Cayman Court's order.

Declaration, section 92(e) of the Companies Law (as amended) and section 36 of the ELP Law provide the Cayman Court with the power to wind up an ELP in circumstances where it is just and equitable to do so.

29. Whilst the Fox Declaration does correctly identify that KPA will need to adduce clear and cogent evidence to persuade the Cayman Court that it is just and equitable to wind up the Fund, we note the following critical points.

30. Section 92(e) of the Companies Law will require KPA as the petitioner to satisfy the Cayman Court that it is just and equitable to wind up the Fund. The meaning of "*just and equitable*" is not defined in statute. The circumstances in which it will be deemed just and equitable to wind up an exempted company or an ELP are derived from case law, and tend to fall within certain well-defined categories. As relevant to an ELP, those categories generally relate to conduct attributable to the GP, which is responsible for managing the affairs of the Fund that is the subject of the winding up petition.

31. As much is accepted by Ms Fox, where she states at paragraph 9 of the Fox Declaration that "*a just and equitable petition may be presented where the possible fraud, mismanagement or breach of duty has been committed by the general partner*". However, tellingly, Ms Fox states that KPA "*does not, however, presently have sufficient evidence*" to prove those matters.

32. That being the case, it is unclear why the KPA Application requests information with respect to a transfer made by an entirely separate entity (KGL Investment Company KSCC ("**KGLI**")) as part of an alleged kickback scheme. To the extent that KPA has complaints about transactions that may have been entered into by third parties that cannot be attributed to the Port Fund Entities as a matter of Cayman Islands law (for example, commercial transactions that are

unrelated to the business of the Fund), those transactions could not form the basis of any cause of action against the Port Fund Entities, including any application by KPA or any other limited partner of the Fund seeking to wind up the Fund in bankruptcy (i.e. the Impending Cayman Litigation). *See Re Hydrosan Ltd* [1991] BCLC 418 (attached hereto as **Exhibit 18**).

Likely claims to recover assets

33. At paragraph 10 of the Fox Declaration, Ms Fox states that the purpose of the KPA Application is not only to gather information which will support the issuance of a winding up petition in respect of the Fund, but will support "*likely claims to recover assets misappropriated from the Port Fund or to trace their value*". Given Ms Fox has also stated at paragraph 10 that "*KPA does not, however, currently have sufficient evidence to prove that Port Link, as general partner of Port Fund, has committed fraud or has breached its fiduciary duties or has mismanaged Port Fund*", it is unclear on what basis Ms Fox is able to state that assets have been misappropriated from the Fund and how claims to recover such assets or trace their value are "likely".  The Fox Declaration does not properly explain what potential or likely claims KPA may have with any level of specificity, nor does it identify the legal basis for any such potential claims.

34. To the extent that KPA considers that it has claims against the GP that are fiduciary in nature, it is important to note that any such claims do not vest in KPA personally, but rather are claims that vest in the limited partners of the Fund as a whole for the benefit of the Fund. See section 33(1) of the ELP Law.

The Cayman Court's reception to Section 1782 Discovery

35. As to the Cayman Islands law on the reception of section 1782 applications in the Cayman Islands, the Fox Declaration appears to mischaracterise the position in the Cayman

Islands, by selectively summarising sections of *Lyxor Asset Management S.A. v Phoenix Meridian Equity Limited* [2009] CILR 553 (attached hereto as **Exhibit 19**) helpful to the KPA Application.  Accordingly, I set out below the full position in the Cayman Islands with respect to section 1782 applications.

36. The position in the Cayman Islands with respect to section 1782 applications is set out in some detail at paragraphs 20 to 21 of *In the Matter of Nord Anglia Education, Inc - FSD 235 of 2017 – Costs ruling (18 April 2019)* (attached hereto as **Exhibit 20**):

> *"20.    However, for present purposes the critical finding was not that the pursuit of section 1782 applications could never be complained of in Caymanian proceedings. On the contrary, the finding in the circumstances of that case was that:*
>
> *"In the particular circumstances of this case... Phoenix has taken the view that its interests are best served by seeking to obtain the information which it needs by taking oral depositions in New York - a relatively summary process - rather than by proceeding by way of further and better particulars and interrogatories in the Grand Court - with the potential for procrastination and delay inherent in that process. It cannot be said that, in making that choice, it is acting oppressively or unconscionably or that its choice amounts to an abuse of the process of the Cayman courts."*
>
> *21.    <u>It is accordingly competent for this Court to find that a party has acted unreasonably or abused the process of this Court by pursuing section 1782 proceedings in a manner which disrupts primary proceedings before this Court</u>.  On the other hand, the only authority cited which addresses the interaction between section 1782 applications and proceedings in the Grand Court supports the general proposition that parties are free in appropriate circumstances to pursue such applications in the US courts. In considering the propriety of the applications, it is relevant to note that:*
>
> *(a)    the Company has not contended that the applications (against third parties) <u>are wholly unnecessary and are seeking information which could be obtained through applications against the Company before this Court</u>; and*
>
> *(b)    the Company has essentially contended that the Dissenters have exaggerated their discovery complaints and manipulated them with a view to aligning the timetable in this action to that in the US proceedings."* [emphasis added]

37. While the Cayman Court recognised in *Nord Anglia* that the US Courts are usually best placed to determine if section 1782 applications are abusive or oppressive, it is clear that the Cayman Courts are not always receptive to the existence of parallel section 1782

proceedings in the United States as a matter of course, particularly where the section 1782 application seeks to interfere with proceedings before the Cayman Court.

38.  The Fox Declaration omits any reference to the *Nord Anglia* case. In addition, in the Fox Declaration, Ms Fox omits to cite the entire relevant passage from *Lyxor*, which is set out below:

> "*...prima facie a party who can invoke the jurisdiction of the US District Court under §1782 may choose to do so. The choice (in the present case) arises from the fact that SGAS is resident in New York. The right to take pre-trial deposition testimony from Mr. Rosenberg and Mr. Phlipponneau is a right conferred by US law—it is not a right conferred by, or to be withheld under, Cayman law. <u>The relevant question is not whether Phoenix could achieve a similar result in the Cayman Islands but whether (if it could) it is acting oppressively or abusively in seeking to rely on the right which it enjoys under US law.</u>*" [Emphasis added]

39.  Accordingly, it is clear from *Nord Anglia* and *Lyxor* that the Cayman Court may not consider it appropriate for a party to a proceeding in the Cayman Islands to seek relief under section 1782 where: (a) pursuing a section 1782 application would disrupt primary proceedings before the Cayman Court; and/or (b) the section 1782 application would be wholly unnecessary because the same information can be obtained through proceedings in the Cayman Court.

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this 28th day of May, 2020.

_____
BARNABY GOWRIE