# EXHIBIT 11

 WALKERS

**BY EMAIL**

6 March 2020                                                                                    Our Ref: BG/LP/D08984

Ogier
89 Nexus Way
Camana Bay
Grand Cayman KY1-9009
Cayman Islands

**Attention:  Jennifer Fox**

Dear Sirs

**KUWAIT PORTS AUTHORITY V THE PORT FUND L.P. (THE "FUND") AND PORT LINK GP LTD.
CAUSE NO. FSD 13 OF 2020 (THE "CAYMAN PROCEEDINGS")**

**1.      INTRODUCTION**

1.1     We refer to the Cayman Proceedings and the Originating Summons issued by the Kuwait Ports
        Authority (the "**KPA**") dated 29 January 2020 (the "**Summons**") against the Port Fund L.P. (the
        "**Fund**") and Port Link GP Ltd. (the "**GP**").

1.2     We also refer to the *ex parte* application filed by the KPA in the United States for an order to conduct
        discovery against Citibank, N.A. ("**Citibank**") and E-Trade Financial Corporation ("**E-Trade**")
        concerning information relating to the Fund for use in contemplated litigation in the Cayman Islands
        pursuant to 28 U.S.C. § 1782 and Federal Rules of Civil Procedure 26, 34, and 45 (the "**US
        Proceedings**" and together with the Cayman Proceedings, the "**Proceedings**").

1.3     By way of opening observation, we note that the evidence contained in the First Affidavit of Yousef
        Al Sabah ("**Mr Al Sabah**") dated 27 January 2020 and filed in support of the Summons ("**Al Sabah
        1**"), is selective and misleading.  Your client has made a number of serious allegations against the
        Fund, KGL Investment Company K.S.C.C. ("**KGLI Kuwait**") in its capacity as the sponsor and
        placement agent of the Fund, and the Fund's management team in the Proceedings.  For example,
        your client states in paragraph 11 of Al Sabah 1 that the KPA "*believes that a significant fraud has
        been committed by, inter alia, Port Link, KGLI, and individuals associated with KGLI, which has
        resulted in the misappropriation of assets belonging to the Port Fund, in the order of several
        hundred million dollars, as well as other wrongdoing (including potential kickbacks).*"  However, the
        KPA has yet to provide any credible evidence to substantiate these serious allegations.

1.4     On 29 January 2020, Andrew Childe and Christopher Rowland of FFP (Directors) Limited were
        appointed as independent directors on the board of the GP to assist the Fund and the GP with
        respect to the Proceedings and addressing the allegations made against the Fund and the GP (the
        "**Independent Directors**"). The Independent Directors will be in charge of matters going forward
        given their experience in dealing with vehicles involved in litigation and contentious issues
        comparable to those currently faced by the Fund. All of the Directors of the GP take the matters
        and allegations raised by the KPA very seriously and are investigating these matters very carefully.

1

**Walkers**

190 Elgin Avenue, George Town
Grand Cayman KY1-9001, Cayman Islands
**T** +1 345 949 0100 **F** +1 345 949 7886  www.walkersglobal.com

1.5     Given the nature of the allegations and matters raised by the KPA and the expenses that have been and will be incurred if litigation proceeds in multiple jurisdictions, the Fund and the GP have considered it appropriate to substantively respond to the matters raised in the Proceedings so that the issues in question can be narrowed (if not extinguished altogether).

## 2.     BACKGROUND TO THE PROCEEDINGS

2.1     In or around September 2019, the Fund became aware that third parties had contacted investors of the Fund in order to encourage investors to commence legal proceedings against the Fund based upon unsubstantiated allegations.  The Fund's concerns in this regard arose as a result of our clients being provided with a copy of an email that appears to have been sent by Bader AbdulMohsen El-Jeaan ("**Mr El-Jeaan**") to a number of investors in the Fund in or around June 2019 (the "**El-Jeaan Email**").  As you will be aware, Mr El-Jeaan is a partner at Meysan Partners, a law firm based in the State of Kuwait, and is currently instructed by two other limited partners of the Fund, Gulf Investment Corporation ("**GIC**") and General Retirement and Social Insurance Authority, in separate proceedings issued by GIC pursuant to section 22 of the Exempted Limited Partnership Law (as amended).

2.2     Notwithstanding the positive performance of the Fund and the significant distributions made by the Fund to limited partners following the exit of the Fund's investments, the El-Jeaan Email made a number of unsubstantiated allegations regarding the purported mismanagement of the Fund and the alleged risk of the dissipation of the Fund's assets.  The allegations set out in the El-Jeaan Email are wholly without any substance or merit and are, in many instances, defamatory to the Fund and its management team.

2.3     By way of an example, the El-Jeaan Email made the following misleading and inaccurate statements as part of Mr El-Jeaan's efforts to defame the Fund and its management team in order to encourage investors to commence legal proceedings against the Fund:

> "*As I indicated to Tarek, based on my review of this matter, there is a critical need to protect the LPs' investment in the Port Fund. I must emphasize the need for speed on this matter in order to ensure that the assets of the Port Fund are no lost. It is imperative that they move quickly.*"

> …

> "*Despite the near USD 1 billion reported sale price for GGDH, Lazareva first attempted to evade the Port Fund's limited partners of all Port Fund exit monies by claiming that the Fund had exited all of its investments at a complete loss.*"

> …

> "*On information and belief, realizing that such a brazen fraud would be uncovered, the Port Fund and its executives subsequently accounted for the Clark Project exit in varying amounts.*"

As will be described in further detail in this letter, such statements are misleading and inaccurate and appear to be nothing more than an attempt by Mr El-Jeaan and other third parties (who have no financial interest in the Fund) to cause disruption to the Fund and its management team.

2

2.4   In addition to the defamatory allegations of fraudulent activity as set out in the El-Jeaan Email, it is of particular concern to our clients that there are multiple references in the El-Jeaan Email to discussions with "Tarek".  Representatives and advisors of the Fund have confirmed that such references are to Tarek Sultan, who is the Chief Executive Officer of Agility Public Warehouse Company in Kuwait ("**Agility**").  Further, we note that Mr El-Jeaan previously worked as in-house legal counsel for Agility prior to commencing his current employment with Meysan Partners in Kuwait.

2.5   As your client will be aware, Agility is a major commercial rival to the KGL Group in Kuwait and competes directly with the KGL Group for US government defence contracts.  The KGL Group refers to a group of companies in Kuwait with regional interests in transportation, logistics and supply chain management. The former Chairman of the KGL Group, Mr. Saeed Dashti, also served in his individual capacity as a director of KGLI Kuwait and the GP, and Ms. Maria (Marsha) Lazareva, a former KGL Group employee, served as a director of the GP and currently serves as the Vice Chairman and CEO of KGLI Kuwait (which was the parent company of the former investment manager of the Fund). Both Mr. Dashti and Ms. Lazareva were, to varying degrees, involved in the day-to-day management of the Fund. It is apparent from the El-Jeaan Email, as well as other steps taken by Agility and its representatives in Kuwait in connection with the criminal proceedings in Kuwait against Ms Lazareva and Mr Dashti, that Agility and its associates have pursued a transparent strategy of seeking to damage the interests of the KGL Group (and by extension the Fund) in order to further their own commercial interests and agendas.

2.6   Your client wrote to Crowell & Moring LLP ("**Crowell**"), the Fund's US legal counsel, in a letter dated 8 October 2019. The KPA stated in this letter that they "*wish to raise a number of issues of grave concern*" to the KPA and requested that the Fund provide the KPA with an exhaustive list of documentation and information on a range of issues.  However, the letter failed to particularise the nature and source of the KPA's concerns and, furthermore, had been signed by Mr Al Sabah in his capacity as the Director General of the KPA.

2.7   Without in any way waiving any privileges, Walkers is instructed that Mr Al Sabah does not have the requisite authority to represent the KPA and instruct attorneys on the KPA's behalf with respect to the Proceedings. We are further instructed that the Minister of State for Services Affairs for the State of Kuwait (formerly known as the Minister of Communications), in his capacity as the chairman of the board of directors of the KPA, has the sole authority to represent the KPA on any and all legal matters as well as matters relating to the KPA's arrangements with third parties. Accordingly, Walkers wrote to the Minister of State for Services Affairs on 22 October 2019 to express the Fund's concerns that the views set out in the letter of 8 October 2019 do not necessarily represent the views of the board of directors of the KPA.

2.8   Walkers received two further letters from Mr Al Sabah on 31 October 2019 in response to the letter sent to the Minister of State for Services Affairs. In the first letter dated 31 October 2019, Mr Al Sabah referred to a number of Ministerial Decrees as evidence for his authority to represent the views of the KPA.  Without waiving any privileges, we are instructed that Mr Al Sabah's letter was incorrect and misstated the position as a matter of Kuwaiti law with respect to Mr Al Sabah's purported authority to represent the KPA.  In the second letter from Mr Al Sabah dated 31 October 2019, Mr Al Sabah set out his alleged concerns with respect to the management of the Fund and his request for information and documentation on various issues.

2.9   In circumstances where the Proceedings appear to be directly based on, and the result of, the unsubstantiated allegations set out in the El-Jeaan Email, it is disappointing that your client has commenced costly legal proceedings that the Fund has been forced to respond to in multiple jurisdictions without prior notice of the same.

3

2.10   Notwithstanding your client's premature decision to commence the Proceedings and without prejudice to the matters raised above and in previous correspondence regarding Mr Al Sabah's lack of authority to represent the KPA, our clients have, to the extent they are able to do so without breaching their confidentiality obligations to third parties, prepared responses to the numerous requests for information in the Proceedings which are set out in this letter.

2.11   We also **enclose** at Schedule 1 a table that consolidates all of your client's information requests in the Proceedings along with a corresponding paragraph reference to this letter where the Fund's response to each information request can be identified.

## 3.     PAYMENTS RELATING TO THE SALE OF GGLC

3.1    Between 2008 and 2017, the Fund developed a project in the Philippines to develop a logistics city which in 2012 was named Sabah Al Ahmed Global Gateway Logistics City ("**GGLC**"). The Fund's equity investment in this project was approximately US$100,000,000. The Fund structured its investment in GGLC by incorporating Global Gateway Development Corporation ("**Global Gateway**"), a Cayman Islands exempted company.   Global Gateway ultimately owned the underlying business assets in the Philippines and, in particular, entered into the lease agreement with Clark Civil Aviation Complex to develop GGLC.   The Fund later incorporated GGDC Holdings, a Cayman Islands exempted company, that acted as an intermediary company between the Fund and Global Gateway.   GGDC Holdings in turn owned the majority of the issued share capital of Global Gateway.

3.2    In July 2017, the Fund agreed to sell the entire issued share capital of GGDC Holdings to Udenna Development (UDEVCO) Corporation ("**Udenna**"), a company incorporated in the Philippines. The transaction details are subject to non-disclosure obligations (as Udenna reaffirmed when the Fund asked Udenna for its consent to disclose such details in the past). Whilst the purchase price reported by Udenna in a regulatory filing in the Philippines was significantly higher than the net purchase price received by the Fund, any disclosure made by Udenna of the purchase price is not determinative of what was agreed with the Fund with regards to the sale of GGLC. What Udenna has stated in its regulatory filing is unrelated to and completely independent of the Fund and is a matter for Udenna to address. It is not up to the Fund to explain Udenna's regulatory filings.

3.3    As your client is aware, as part of the sales process, the Fund received a payment of US$496,429,767 (the "**$496 Million**") from Udenna in connection with the sale of GGDC Holdings. The $496 Million was transferred to Noor Bank PJSC ("**Noor**") for deposit into a bank account held in the name of the GP (the "**Noor Account**").

3.4    Following the receipt of the $496 Million by Noor but before the funds were deposited in the Noor Account, the UAE Central Bank and the Attorney General of Dubai (the "**Dubai AG**") instructed Noor to freeze the $496 Million. The monies remained frozen until February 2019. The Fund subsequently became aware that the lengthy freeze stemmed from attempts of the Attorney General of the State of Kuwait (the "**Kuwait AG**") to have the vast majority of the $496 Million transferred from the Noor Account to only two Kuwaiti limited partners (to the detriment of the other limited partners of the Fund).

3.5    The Fund has obtained copies of correspondence between the Dubai AG and the Kuwait AG (the "**Attorney General Correspondence**"), which explains why the $496 Million remained frozen from November 2017 to February 2019.   It is apparent from the Attorney General Correspondence that that the Kuwait AG sought to persuade the Dubai AG to transfer US$400 million of the $496 Million to your client, the KPA, and the Public Institution for Social Security ("**PIFSS**") on the unexplained

4

and unjustified grounds that such monies belonged to the State of Kuwait and were duly owed to PIFSS and the KPA (as further explained below).

3.6     A summary of the Attorney General Correspondence is set out below:

(a)     On 22 March 2018, a letter was sent from the UAE Judicial Authority (represented by the Public Prosecution of Dubai) to the Judicial Authority of the State of Kuwait in which it noted, *inter alia*, that (i) on 21 November 2017, a report was issued by Noor to the Public Prosecution of Dubai regarding the $496 Million as a possible money laundering transaction involving the GP and, accordingly, the Public Prosecution issued its resolution to freeze the Noor Account; (ii) on 22 November 2017, the UAE Central Bank informed its Kuwaiti counterpart of the allegedly suspicious transaction; and (iii) on 18 March 2018, the Public Prosecution of Dubai received a comprehensive report issued by the Dubai Police that found that the money was "*of a legal source*". In its letter of 22 March 2018, the Public Prosecution of Dubai specifically requested information relating to the wire transfer of the $496 Million and the relationship between the funds and the ongoing investigations in Kuwait against KGLI Kuwait, the Fund, Mr Dashti and Ms Lazareva;

(b)     it appears that a letter was sent from the Kuwait AG to the Dubai AG on 9 May 2018 in order to request that a sum of US$400 million should be transferred from the $496 Million to the KPA and PIFSS as such monies were claimed to be public funds and belonged to the KPA and PIFSS. No evidence or explanation appears to have been provided to support or justify the request that such sums should be transferred[1];

(c)     on 7 June 2018, a letter was sent from the Dubai AG to the Kuwait AG stating that in order to satisfy the request of the State of Kuwait, they will need to submit a court order to confiscate or freeze the US$400 million which the Kuwait AG had requested be transferred to the KPA and PIFSS;

(d)     on 18 September 2018, a letter was sent from the Kuwaiti Prime Minister to the Vice President and Prime Minister of the UAE and ruler of the Emirate of Dubai (the "**UAE Prime Minister**") noting that the Kuwait AG had consistently been seeking to ensure that the frozen funds were not sent to any entities outside the State of Kuwait but had not received a response to such requests;

(e)     on 16 October 2018, a further letter was sent from the Kuwait AG to the Dubai AG in which the Kuwait AG had significantly lowered its demands with respect to the transfer of monies to the KPA and PIFSS. Instead of requesting that US$400 million be transferred to the KPA and PIFSS as it appears to have done in May 2018, the Kuwait AG now requested that US$125,000,000 be transferred to the KPA's bank account and US$79,200,000 transferred to PIFSS' bank account from the $496 Million (the "**Final Kuwait AG Imposition**");

(f)     on 3 November 2018, the UAE Prime Minister responded to the 18 September 2018 letter confirming that discussions were ongoing between the respective judicial authorities in order to ensure no stakeholders are harmed;

---

[1]     The Fund has not been able to obtain a copy of this letter but is aware of its existence from the later letters between the Kuwait AG and the Dubai AG.

(g)     on 30 December 2018, a letter was sent by the Kuwait AG to the Dubai AG requesting the release of the $496 Million for deposit in the Noor Account so that funds could be distributed to the Kuwaiti governmental institutions and other stakeholders; and

(h)     on 13 January 2019, a letter was sent from the Dubai AG to the Kuwait AG noting that a decision had been made to release the $496 Million within two weeks.

Copies of the Attorney General Correspondence along with certified translations are **enclosed** for your information at Schedule 2.

3.7     We are instructed that the Final Kuwait AG Imposition was imposed on representatives of the Fund in October 2018. It was made clear to the representatives of the Fund that this was the final imposition and if the Fund did not accept the terms of the Final Kuwait AG Imposition there was no possibility of the $496 Million being released to the Fund.  Given that the Fund had no say on the terms of the Final Kuwait AG Imposition, and was simply the recipient of such impositions from the Kuwait AG, the Fund considered that at such point in time that it would cost more to continue fighting than to accede to this imposition for the benefit of all the limited partners and creditors of the Fund.

3.8     In circumstances where the $496 Million had already been frozen for 14 months and the Fund did not have any reason to believe that the funds were going to be released by the Dubai authorities given the diplomatic pressure being exerted by the Kuwait AG, we are instructed that the Fund ultimately acceded to the Final Kuwait AG Imposition in or around October 2018.

3.9     At the time that the Final Kuwait AG Imposition was communicated to representatives of the Fund in October 2018, acceding to such demands appeared to be the only realistic prospect of the Fund securing the release of the $496 Million that would enable the Fund to settle its liabilities and make returns to all investors, despite the Fund's belief that those demands constituted an illegal expropriation.

3.10    Further to the Final Kuwait AG Imposition, the KPA was unduly enriched as a consequence of it receiving an extra US$13,230,877 from the Fund at the demand of the Kuwait AG to the detriment of all other investors other than PIFSS.  In circumstances where the Fund was forced to pay the KPA and PIFSS more distribution proceeds than they were entitled to, so that the Fund could receive the remainder of the $496 Million to pay the other limited partners their distribution proceeds, the Fund is considering the availability of restitutionary and unjust enrichment actions against the KPA and PIFSS and expressly reserves all its rights in this regard.

3.11    Once the $496 Million had been released by Noor in February 2019, the GP took the necessary steps to settle all of the remaining liabilities of the Fund and make final distributions to the limited partners of the Fund.  Representatives and advisors of the Fund have provided a summary and breakdown of the vast majority of the payments made from the Noor Account from when the $496 Million was unfrozen up until all the monies in the account were transferred out of the account is set out below[2]:

---

[2]     The table does not include bank account maintenance, internal and transfer fees charged by Noor to the Fund or any credited or reversed transactions.

| | Recipient | Sum Transferred (in US$) | Date of Transfer | Transaction Details |
|---|---|---|---|---|
| 1. | AL AHLEIA INSURANCE CO S A K | 5,266,179.00 | 5 Feb 2019 | Distribution to limited partner of the Fund. |
| 2. | KUWAIT REINSURANCE COMPANY | 3,507,018.00 | 5 Feb 2019 | Distribution to limited partner of the Fund. |
| 3. | PUBLIC INSTITUTION FOR SOCIAL | 79,201,193.00 | 5 Feb 2019 | Distribution to limited partner of the Fund. |
| 4. | THIRD OF THE LATE YACOB | 1,759,160.00 | 5 Feb 2019 | Distribution to limited partner of the Fund. |
| 5. | KUWAIT PORT AUTHORITY | 125,000,000.00 | 5 Feb 2019 | Distribution to limited partner of the Fund. |
| 6. | GULF INVESTMENT CORPORATION | 25,366,019.00 | 5 Feb 2019 | Distribution to limited partner of the Fund. |
| 7. | BEHBEHANI INVESTMENT COMPANY | 2,004,241.00 | 5 Feb 2019 | Distribution to limited partner of the Fund. |
| 8. | GENERAL RETIREMENT AND SOCIAL | 17,282,345.00 | 5 Feb 2019 | Distribution to limited partner of the Fund. |
| 9. | PETROLINK HOLDING COMPANY K S C C | 5,266,180.00 | 6 Feb 2019 | Distribution to limited partner of the Fund. |
| 10. | MOHAMMED ALI AL NAKI | 5,266,179.00 | 6 Feb 2019 | Distribution to limited partner of the Fund. |
| 11. | GLOBAL ADVOCACY | 89,737.00 | 6 Feb 2019 | Legal fees paid to Global Advocacy & Legal Counsel for legal services provided to the Fund in respect of the DIFC |

| | Recipient | Sum Transferred (in US$) | Date of Transfer | Transaction Details |
|---|---|---|---|---|
| | | | | Proceedings (as described below in section 6). |
| 12. | KGLI ASIA ROHQ | 973,976.32 | 6 Feb 2019 | Fees paid to KGLI Asia ROHQ for administrative and personnel services it provided to the Fund in 2018 – 2019 in respect of the sale of GGLC and the subsequent release of the monies frozen at Noor. |
| 13. | JIMENO COPE DAVID AND | 3,651,570.00 | 6 Feb 2019 | Fees paid to Jimeno Cope David & Associates Law Offices for legal services provided to the Fund for legal services it provided to the Fund between January 2017 – 31 October 2017 in connection with Philippines regulatory compliance relating to the sale of GGLC. |
| 14. | C AND M LLP DC IOLTA TRUST | 7,500,000.00 | 7 Feb 2019 | Retainer monies paid to Crowell for their legal fees and for disbursement on behalf of the Fund (see paragraph 3.12 below). |
| 15. | Payee designated by KGLI Kuwait, as limited partner in the Fund | 21,538,989.56 | 7 Feb 2019 | Amount paid to a payee on instruction from KGLI Kuwait to transfer KWD 6,432,834.621 reflecting a portion of the distribution proceeds that KGLI Kuwait was entitled to as a limited partner of the Fund. As converted by Noor at .2987, the US$ total was 21,538,989.56. |
| 16. | Payee designated by KGLI Kuwait, as limited partner in the fund | 5,022,433.54 | 7 Feb 2019 | Amount paid to a payee on instruction from KGLI Kuwait to transfer KWD 1,500,000 reflecting a portion of the distribution proceeds KGLI Kuwait was entitled to as a limited partner of the Fund. As converted by Noor at .2987, the US$ total was 5,022,433.54. |
| 17. | KGL INVESTMENT COMPANY K S C C | 8,520,061.87 | 7 Feb 2019 | After accounting for the payments in #15 and #16 above, this amount reflects the balance of the remaining distributions proceeds owed to KGLI Kuwait as a limited partner of the Fund. |

| | Recipient | Sum Transferred (in US$) | Date of Transfer | Transaction Details |
|---|---|---|---|---|
| 18. | Payee designated by EMPEML | 59,990,461.30 | 7 Feb 2019 | Payment of amount ordered by the DIFC Judgment to a payee designated by EMPEML (as described below at section 6). |
| 19. | MICHAEL V RUSSELL | 300,000.00 | 7 Feb 2019 | Payment by Fund to an employee retained to assist with the sale of GGLC. |
| 20. | UDENNA CORP | 55,343,116.00 | 10 Feb 2019 | Payment in connection with the sale of GGLC. |
| 21. | TMF MAURITIUS LIMITED | 10,000.00 | 10 Feb 2019 | Administration fees paid to TMF. |
| 22. | WALKERS DUBAI LLP | 83,973.76 | 10 Feb 2019 | Legal fees paid to Walkers. |
| 23. | WILFREDO A PLACINO | 2,720,000.00 | 10 Feb 2019 | Advisor fees paid in connection with sale of GGLC. |
| 24. | KGLI ASIA ROHQ | 975,000 | 10 Feb 2019 | Fees paid to KGLI Asia for administrative and personnel services it provided to the Fund in 2018 – 2019 in respect of the sale of GGLC and release of monies frozen with Noor. |
| 25. | GLOBAL ADVOCACY AND LEGAL | 10,260.82 | 10 Feb 2019 | Legal fees paid to Global Advocacy & Legal Counsel for legal services provided to the Fund in respect of the DIFC Proceedings – invoice dated 15 Jan 2019 for AED365,492.03.<br><br>As the Fund had already paid AED327,988.72 (see transfer 11 above), the remainder left to be settled was AED37,503.31 (which when converted by Noor was 10,260.82). |
| 26. | C AND M LLP DC IOLTA TRUST | 41,700,000.00 | 12 Feb 2019 | Retainer monies paid to Crowell for their legal fees and for disbursement on behalf of the Fund (see paragraph 3.12 below). |

9

| | Recipient | Sum Transferred (in US$) | Date of Transfer | Transaction Details |
|---|---|---|---|---|
| 27. | MISHCON DE REYA LLP | 6,272.89 | 18 Feb 2019 | Fees paid for services provided in connection with certain proceedings in Kuwait. |
| 28. | BAKER TILLY COMPANY | 100,312.98 | 18 Feb 2019 | Payment for a report commissioned in connection with the Kuwaiti proceedings that involved transactions made by the Fund. |
| 29. | GLOBAL ADVOCACY AND LEGAL | 9,941.95 | 6 March 2019 | Legal fees paid to Global Advocacy & Legal Counsel for legal services provided to the Fund in respect of the DIFC Proceedings. |
| 30. | TMF MAURITIUS LIMITED | 10,000 | 14 March 2019 | Administration fees paid to TMF in its capacity as the Fund's administrator. |
| 31. | WALKERS (DUBAI) LLP | 4,444.14 | 24 March 2019 | Legal fees paid to Walkers |
| 32. | C AND M LLP DC IOLTA TRUST | 1,500,000 | 30 March 2019 | Retainer monies paid to Crowell for their legal fees and for disbursement on behalf of the Fund (see paragraph 3.12 below). |
| 33. | KGL INVESTMENT COMPANY KSCC | 858,028.77 | 1 April 2019 | Reimbursement of documented expenses owed to KGLI in connection with its engagement of other service providers in Kuwait to assist the Fund in unfreezing the $496 Million held by Noor and maintaining the reputation of the Fund in Kuwait. |
| 34. | THE PORT FUND L P | 242,433.07 | 1 April 2019 | Transfer of the remaining balance in the Noor Account to the Fund's account in Kuwait. |

3.12    With respect to the sums transferred from the Noor Account to Crowell & Moring LLP ("**Crowell**") as retainer funds, the below table provided by Crowell provides a breakdown of further payments made by Crowell acting on the instructions of the board of directors of the Fund:

| | Recipient | Sum Transferred (in US$) | Transaction Details |
|---|---|---|---|
| 1. | Squire Patton Boggs LLP | 1,405,930.69 | Engaged to provide legal and other services and assist with the Fund's efforts to unfreeze the $496 Million held by Noor. |
| 2. | Navigant Consulting, Inc. | 229,593.56 | Engaged to provide services in support of legal advice to the Fund and the GP. |
| 3. | Brownstein Hyatt Farber Schreck LLP | 561,500.00 | Engaged to provide legal and other services and assist with the Fund's efforts to unfreeze the $496 Million held by Noor. |
| 4. | Marathon Strategies, LLC | 260,795.18 | Engaged to provide services to assist in Fund's efforts to unfreeze $496 Million held by Noor and protect the reputation of the Fund. |
| 5. | diGenova & Toensing, LLP | 23,875.00 | Engaged to provide services and assist with the Fund's efforts to unfreeze the $496 Million held by Noor. |
| 6. | Fahmy Hudome International LLC | 565,000.00 | Engaged to provide services and assist with the Fund's efforts to unfreeze the $496 Million held by Noor. |
| 7. | Neil Bush | 1,085,833.33 | Engaged to provide services and assist with the Fund's efforts to unfreeze the $496 Million held by Noor. |
| 8. | Triple Canopy Media LLC | 135,000.00 | Engaged to provide services to the Fund in support of the Fund's efforts to unfreeze the $496 Million held by Noor. |
| 9. | Laktineh & Co Ltd | 231,650.00 | Engaged to provide legal services and assist with the Fund's efforts to unfreeze the $496 Million held by Noor and general advice on UAE law. |
| 10. | Uzma Sarfraz dba Aurora International LLC | 60,000.00 | Engaged to provide services and assist with the Fund's efforts to unfreeze the $496 Million held by Noor. |
| 11. | Walkers (Dubai) LLP | 1,500,000.00 | Engaged as Cayman Islands legal counsel to the Fund. |
| 12. | Apache Asia and payee designated by Apache Asia | 36,200,000.00 | Paid to Apache on behalf of the Fund for fees owed to Apache for advisory services it provided to the Fund in connection with the sale of GGLC, with a portion paid to a payee |

|  | Recipient | Sum Transferred (in US$) | Transaction Details |
|---|---|---|---|
|  |  |  | designated by Apache Asia based on documented contractual obligations. |
| 13. | American Continental Group | 80,833.33 | Engaged to provide services and assist with the Fund's efforts to unfreeze the $496 Million held by Noor. |
| 14. | Covington & Burling LLP | 10,434.00 | Engaged to provide legal services and assist with the Fund's efforts to unfreeze the $496 Million held by Noor. |
| 15. | Essex Court Chambers | 14,491.15 | Engaged to provide legal services to The Port Fund. |
| 16. | McCool Smith, A Professional Corporation | 85,641.54 | Engaged to provide legal services and assist with the Fund's efforts to unfreeze the $496 Million held by Noor. |
| 17. | Crowell & Moring | 2,576,349.69 | Engaged to provide legal and other services to the Fund and Port Link GP. |
| 18. | The Port Fund | 1,396,926.76 | Returned to the Fund bank account in Kuwait. |

3.13    The tables set out above provide details with respect to the vast majority of the transactions made by or on behalf of the Fund from the monies originating in the Noor Account following the release of the $496 Million. Representatives and advisors of the Fund have instructed us that there have been occasions where service providers of the Fund who are based in Kuwait have been subject to malicious persecution from the authorities in Kuwait in order to deter other parties from assisting the Fund. Accordingly, in circumstances where the disclosure of the identity of service providers to the Fund would, in all likelihood, lead to adverse and wholly unjust consequences for such parties, we have not included details of those transfers in the tables above. Our clients are open to discussing sufficient confidentiality protections that would allow for the disclosure of such information in order to ensure that that the information is only used for a proper purpose. Furthermore, your client is not entitled to receive bank account details for the third parties who received payments from the Noor Account and such information is confidential to such third parties.

3.14    We note that in the US Proceedings your client has requested the following information from Citibank:

(a)    "All documents and communications concerning the $496 Million Deposit, including all documents and communications concerning USD dollar clearing transactions and/or other funds transfers concerning the $496 Million Deposit, as well as copies of all SWIFT messages concerning the $496 Million Deposit"; and

(b)    "Documents and communications sufficient to show (i) the account number for the Citibank account that received the $496 Million Deposit; (ii) the account holder of the Citibank

12

*account that received the $496 Million Deposit; (iii) the precise amount of the $496 Million Deposit; (iv) the date of the $496 Million Deposit; (v) the originating account(s) for the $496 Million Deposit; (vi) the beneficial owner of the originating account(s); (vii) the intermediary bank(s) involved in the $496 Million Deposit; (viii) the stated purpose or reason for the $496 Million Deposit and any other details relating thereto; (ix) any special instructions concerning the $496 Million Deposit; (x) notify party for the $496 Million Deposit (if any); (xi) any other details concerning the $496 Million Deposit; (xii) other transactions from the Citibank account that received the $496 Million Deposit before and/or after the $496 Million Deposit."*

3.15    It is entirely standard practice and indeed a mandatory requirement that any transactions made in United States dollars between entities that are not located in the United States are routed through a US intermediary bank account. In November 2017, Citibank acted as the US intermediary bank for the transaction between Udenna and the Fund with respect to the sale of GGLC. Our clients have provided detailed information with respect to the transfers made by the Fund from the Noor Account following the release of the $496 Million. Accordingly, our clients do not see the purpose of the KPA's requests for information relating to Citibank's role as the intermediary bank in the transaction between Udenna and the Fund.

3.16    As explained in the above tables, and upon advisement from representatives and advisors of the Fund, all of the payments made out of the Noor Account were valid payments to third parties pursuant to legal, valid and binding agreements between, on behalf, or for the benefit of the Fund, the GP, its management and such third parties (as applicable). We trust that this provides your client with sufficient information with respect to the use of the proceeds of the sale of GGLC.

## 4.    PREFERRED RETURN AMOUNT

4.1    Your client has requested the following information:

(a)    confirmation and itemisation of the capital commitments and contributions made by each limited partner at the commencement of the Fund and in each calendar year since that commencement, together with (i) bank statements showing the capital contributions received, and (ii) an explanation of for which of the Fund's investments the capital was received and applied towards;

(b)    confirmation of the respective ownership percentages of the limited partners since the commencement of the Fund; and

(c)    the capital account statement in respect of the KPA covering each calendar year since the commencement of the Fund that should show the capital contributions made by and distributions made to KPA, any adjustments made to the KPA's capital account including an explanation of the nature of any adjustments, and the corresponding preferred return balance accrued to the capital account balance of the Plaintiff over that period.

4.2    Your client is not entitled to obtain copies of bank statements itemising the capital contributions made by each limited partner of the Fund or a breakdown of precisely how the Fund's capital has been applied to the various investments made by the Fund.

4.3    The information requested by your clients at paragraph 5.1 (b) and (c) above has been disclosed to the limited partners of the Fund in the audited financial statements of the Fund for the period between 31 July 2007 and 31 December 2016. Copies of the financial statements have previously been provided to your client, but are **enclosed** herein as Schedule 3 for the sake of completeness.

13

Such information as it relates to the years ending 31 December 2017, 31 December 2018 and 31 December 2019 will be provided in due course (see paragraph 4.5 and section 9 below).

4.4    With respect to distributions made by the Fund to the KPA, our client had reasonably assumed that your client has maintained a record of the distributions made by the Fund to KPA. However, for the sake of completeness the distributions made by the Fund to KPA are summarised below:

(a)    a distribution of US$11,222,152.64 from the Fund to the KPA in November 2016 following the Fund's exit of its investment in Negros Navigation (as defined below); and

(b)    a distribution of US$125,000,000 from the Fund to the KPA on 5 February 2019 following the Fund's exit of its investment in GGLC.

(We **enclose** at Schedule 4 copies of the relevant correspondence and SWIFT transfer slips confirming that the above distributions were made to the KPA.)

4.5    Further to previous correspondence with respect to the audited financial statements of the Fund for the years ending 31 December 2017, 31 December 2018 and 31 December 2019 (the "**Outstanding Audited Accounts**"), the joint auditors of the Fund, BDO Al-Nisf & Partners and Moore Stephens Al-Bahar & Co (the "**Auditors**"), are in the process of preparing the Outstanding Audited Accounts.

## 5.    COMINGLING OF FUNDS

5.1    Your client has requested any and all correspondence relating to, (i) the opening of the Noor Account and (ii) the rationale for the $496 Million being deposited into the Noor Account in the name of the GP rather than any of the bank accounts that had historically been utilised in the name of the Fund (for example Al Ahli Bank of Kuwait or HSBC Kuwait).

5.2    We note that the above requests appear to be founded upon the apparent concern of your client as explained at paragraph 31(b) of Al Sabah 1:

"*the Defendants failed to properly segregate the accounts of Port Fund from those of Port Link by depositing the USD 496 million purported exit proceeds from the Clark Asset into the Noor Bank Account.*"

5.3    This demonstrates a basic and fundamental misunderstanding of the structure and operation of exempted limited partnerships as a matter of Cayman Islands law.  Unlike a Cayman Islands company, an exempted limited partnership (the Fund) is not an entity with separate legal personality.  As such, all letters, contracts, deeds, instruments or documents must be entered into by the GP for and on behalf of the Fund.  Another consequence of the lack of separate legal personality is that the Fund cannot own property in its own right.  The general statutory position is that the property of the Fund will be held on statutory trust by the GP under section 16(1) of the Exempted Limited Partnership Law (as amended). Accordingly, the GP opened the Noor Account in its name and held any monies on the account on trust for the Fund in accordance with Cayman Islands law.

5.4    In any event, your client is not entitled to documentation relating to the opening of the Noor Account and we do not see any relevance of this information to your client's limited partnership interest in the Fund. Without prejudice to the above, we are instructed that the Noor Account was a pre-existing and established account of the Fund. The Fund ultimately directed the $496 Million to be transferred to the Noor Account in the knowledge that Dubai was a reputable financial centre in the

14

Middle East and that the majority of the transfers from the Fund would be to recipients in the Gulf Region.

## 6.      THE DIFC PROCEEDINGS AND CARRY ENTITLEMENT

6.1     We note that your client has made a number of information requests in the Cayman Proceedings with respect to a claim filed by Emerging Markets PE Management Limited ("**EMPEML**") against the Fund for outstanding sums due and payable under the terms of an investment management agreement between EMPEML and the Fund dated 28 June 2007 (the "**DIFC Proceedings**").

6.2     In paragraph (k) of the Schedule to Al Sabah 1, your client has requested all information and documents held by the Fund and the GP pertaining to KGLI Kuwait's sale of EMPEML, including but not limited to the sale purchase agreement (or equivalent) and any associated addenda including associated warranties and indemnities and any other material identifying the purchaser, the date and terms of sale.

6.3     Notwithstanding that EMPEML provided investment management services to the Fund between 2007 and 2018, EMPEML is a third party entity that is not and has never been owned or controlled by the Fund or the GP.  Accordingly, your client is not entitled as a matter of Cayman Islands law to be provided with any information or documentation relating to the sale of EMPEML.  In any event, we note that our clients (being the Fund and the GP) are not in possession of any documentation of information relating to the sale of EMPEML.

6.4     In paragraph (l) of the Schedule to Al Sabah 1, your client has requested all written communication from EMPEML received by the GP, including but not limited to demand notices and correspondence relating to the investment management agreement.  Without prejudice to the fact that your client is not entitled to such information as a matter of Cayman Islands law, in the interests of transparency we hereby **enclose** at Schedule 5 a copy of the demand letter dated 7 July 2018 issued by EMPEML's DIFC legal counsel, Clyde & Co LLP, to the Fund that ultimately formed the basis of EMPEML's claim in the DIFC Proceedings (the "**EMPEML Demand Letter**").

6.5     In paragraph (m) of the Schedule to Al Sabah 1, your client has requested any information and documents pertaining to the DIFC claim brought by EMPEML against the Fund and the GP, including all associated legal advice, received by any of the parties on matters including, but not limited to, their decisions to submit to service in the DIFC and not file a defence and any other material relevant to the DIFC Proceedings.

6.6     Any legal advice provided to the Fund during the course of the DIFC Proceedings is subject to privilege and your client is plainly not entitled to be provided with such advice.  However, for the avoidance of doubt, we note that the Fund and EMPEML were represented by separate DIFC legal counsel in connection with the DIFC Proceedings.  Without waiving any privileges, the Fund concluded that EMPEML's claims asserted in the DIFC Proceedings had merit and that the Fund was not in the positon, financially or otherwise, to engage in protracted and costly litigation without a sufficient expectation of a success.  In addition, the EMPEML judgment could not be satisfied unless and until Kuwait ceased its improper effort to expropriate the monies frozen in Dubai and supported the release of those monies back to the Fund (permitting distributions to all the Limited Partners), or, at a minimum, until Kuwait appeared before a Dubai court to justify its improper request to expropriate the frozen funds before satisfying the pre-existing EMPEML judgment issued in the Dubai courts.

6.7     In paragraph (n) and (o) of the Schedule to Al Sabah 1, your client has requested the following information:

15

(a)  information and documentation (including documentary evidence and relevant agreements) submitted in the DIFC Proceedings or otherwise relied upon in support of EMPEML's claim of 8% penalty compound interest on delays in paying the Carry and Management Fees (as such terms are defined in the LPA); and

(b)  all information, analysis, accounts and other documents (including documentary evidence provided by way of disclosure) submitted in the DIFC Proceedings or otherwise relied upon in support of EMPEML's calculation of the Carry as USD 45,462,000.

6.8   It is apparent from your client's evidence filed in the Cayman Proceedings that your client has obtained a copy of the documents that have been publicly filed in the DIFC Proceedings, including the claim form filed in the DIFC Proceedings (the "**Claim Form**") and the default judgment dated 25 July 2018 (the "**DIFC Judgment**"). The Claim Form and the EMPEML Demand Letter, both of which have been provided to your client, set out the basis upon which EMPEML calculated the sums claimed in the DIFC Proceedings.

6.9   In paragraph (p) of the Schedule to Al Sabah 1, your client has requested all information and documents pertaining to the Fund's settlement of the DIFC Proceedings judgment debt with EMPEML, including the identity of all beneficiaries of that judgment debt, the dates of, amounts of and justification for those distributions.

6.10  Your client is in possession of a copy of the DIFC Judgment which clearly states that EMPEML was the beneficiary of the judgment sum ordered to be paid by the Fund in accordance with the DIFC Judgment. As set out in the table above at paragraph 3.11, the Fund made a payment of $59,990,461.30 to EMPEML in accordance with their instructions on 7 February 2019 in order to satisfy the Fund's obligations under the DIFC Judgment.

**7.    THE DAMIETTA LOAN**

7.1   Your client has issued an extensive list of questions relating to the Fund's convertible loan investment in the Damietta International Port Company in Egypt ("**DIPCO**") as set out in paragraphs (q) to (s) of the Schedule to Al Sabah 1. However, we note that the evidence filed by your client in support of the Proceedings fails to articulate why it is necessary and proper to investigate the Fund's convertible loan investment in DIPCO and the arrangements between the Fund and KGL International for Ports, Warehousing and Transport K.S.C.C. ("**KGL Ports**").

7.2   Notwithstanding your client's failure to provide any evidence of misconduct or mismanagement with respect to the Fund's investment in DIPCO, our clients have, to the extent they are able to do so, provided a response to the KPA's extensive list of questions below.

7.3   As your client is aware, the Fund entered into a convertible loan agreement with KGL Ports dated 22 August 2007 whereby the Fund provided a US$20 million loan to KGL Ports (the "**DIPCO Loan**") with an option to be converted into equity in DIPCO at a later date (the "**DIPCO Loan Agreement**"). The DIPCO Loan Agreement contains confidentiality provisions that prevent the Fund from disclosing the agreement to any third parties without the prior written consent of KGL Ports.

7.4   This firm wrote to KGL Ports on behalf of the Fund in a letter dated 6 February 2020 in order to seek KGL Ports' consent to disclose the DIPCO Loan Agreement to your client in the course of the Proceedings. KGL Ports responded to our letter on 12 February and noted that it expected the Fund to comply with the confidentiality provisions in the DIPCO Loan Agreement. Copies of the correspondence between Walkers and KGL Ports are **enclosed** at Schedule 6.

7.5     In its letter of 12 February 2020, KGL Ports provided an explanation as to why it is unwilling to release the Fund from its confidentiality obligations under the DIPCO Loan Agreement without sufficient restrictions being imposed on the disclosure of such information to your client:

> "In addition, a former in-house lawyer of one of KGL's main competitors in Kuwait has been representing GIC in these matters and, in fact, engaged in non-privileged communications with our competitor's CEO as part of a plan to encourage one or more of the Fund's limited partners to file a legal action in the Cayman Islands even though the competitor has no financial interest or legal standing in the matter. The same former in-house lawyer of our competitor has engaged in multiple lawsuits and complaints against KGL Logistics (one of the KGL group of companies and a major shareholder in KGLPI) with the Kuwait Capital Market Authorities. In addition, the KPA and our competitor maintain an unusually close relationship, including illegally terminating KGL's ability to work at the Kuwait Ports and transferring the work to our competitor. Given this track record, we are concerned that the KPA will use the confidential information for an improper purpose in Kuwait.

> KGLPI will therefore require robust restrictions on the disclosure of confidential information and other protections that will prevent misuse of the confidential information by the KPA, our main competitor, and the lawyers with close ties to our competitor."

7.6     As your client may be aware, the Damietta Ports Authority (the "**DPA**"), an affiliate of the Egyptian Ministry of Transport, terminated the concession agreement it had entered into with DIPCO (the "**DIPCO Concession Agreement**").  As a result of the termination of the DIPCO Concession Agreement and the cancellation of the project, the Fund decided against converting the DIPCO Loan into equity and called for the repayment of the DIPCO Loan by KGL Ports.

7.7     KGL Ports failed to repay the DIPCO Loan plus accrued interest to the Fund and therefore the Fund filed a claim in the Kuwaiti Courts (claim no. 6582/2016) against KGL Ports seeking the recovery of the outstanding sums due under the DIPCO Loan Agreement (the "**DIPCO Claim**").  The DIPCO Claim remains ongoing in the Kuwaiti Courts.  A copy of the DIPCO Claim along with a certified translation is **enclosed** at Schedule 7.

7.8     Your client may also be aware that DIPCO filed a claim against the DPA in the International Court of Arbitration with respect to the DPA's unilateral termination of the DICPO Concession Agreement (the "**DIPCO Arbitration**"). The Fund has been informed that the International Court of Arbitration in Paris recently issued an award in favour of DIPCO that requires the DPA to pay significant damages to DIPCO (the "**DIPCO Award**").  In circumstances where KGL Ports is a significant shareholder in DIPCO, the board of directors of the Fund is closely monitoring the situation and considering next steps with respect to the recovery of the DIPCO Loan plus accrued interest from KGL Ports.

7.9     Your client has also requested internal documentation (including board minutes, meeting notes and correspondence) relating to the DIPCO Loan Agreement and the DIPCO Loan.  Your client is not entitled to be provided with the internal working papers of the Fund, and in any event, the provision of such documentation would cause the Fund to breach its confidentiality provisions to KGL Ports under the DIPCO Loan Agreement.

7.10    Your client has also queried the rationale for the Fund's decision to record a provisional loss of the DIPCO Loan in its audited financial statements for the year ending 31 December 2014.  In circumstances where there is uncertainty as to the prospects of recovery for outstanding sums, it is entirely standard practice to treat such amounts as provisional losses for the purposes of the accounting records of the Fund.  As noted above, the Fund is continuing to take all necessary steps to recover the DIPCO Loan and any accrued interest from KGL Ports.

8.      **NEGROS NAVIGATION**

8.1     We note that at paragraph 24 of Al Sabah 1 your client states that:

        "*the sale of Negros Navigation had resulted in proceeds for the Port Fund of USD 120 million but an amount of circa USD 61.9 million had been used to settle "a loan outstanding for Global Gateway Development Corporation and other liabilities of the Fund." No explanation has ever been given as to what this loan was or what "other liabilities" of the Port Fund were discharged (if any).*"

8.2     The Fund prepared a detailed exit report relating to the Fund's sale of its stake in Negros Navigation and the use of the sale proceeds dated in or around November 2016 (the "**Negros Exit Report**"). A copy of the Negros Exit Report was provided to all limited partners in 2016 and this report provides a detailed breakdown of the sale of the Fund's stake in Negros Navigation. For the sake of good order, we have **enclosed** a copy of the Negros Exit Report at Schedule 8.

8.3     In the Negros Exit Report, it was explained to your client that the Fund exited its investment in Negros Navigation for a gross sale price of US$120,000,000. This figure was gross of the settlement of liabilities as stated in the Negros Exit Report. Such liabilities were:

| Gross Sales Price | US$120,000,000 |
|---|---|
| Settlement of NNC transaction related liabilities | (US$1,431,145) |
| Settlement of loan for subscription in capital increase of 2 GO group | (US$20,148,203) |
| Transaction advisory and professional fees | (US$6,480,024) |
| **Net Sales Proceeds** | **US$91,940.628.** |

8.4     Usage of the Net Sales Proceeds is set out below:

| Net Sales Proceeds | US$91,940.628. |
|---|---|
| Final Payment of MPC GMO | (US$3,200,000) |
| Loan paid on behalf of GGLC | (US$54,265,116) |
| Exit related expenses paid on behalf of GGLC | (US$2,434,500) |
| Distribution to limited partners | (US$30,000,000) |
| **Retained by the Fund for working capital and operation expenses** | US$2,041,012 |

9748208.2 T5138.D08984

8.5     On 28 December 2015, KGL Investment B.V., an entity used by the Fund to facilitate its investment in Negros Navigation (as described in further detail in the Negros Exit Report), entered into a loan agreement as borrower and Madison Pacific Trust Limited as agent and security agent (the "**Madison Loan**").  The amounts borrowed under the Madison Loan were used to service the Fund's investment in Negros Navigation and GGLC.

8.6     In 2016, KGL Investment B.V. was required to settle outstanding monies owed to lenders under the Madison Loan in the amount of US$74,413,318.77.  Accordingly, following receipt of the gross sales proceeds from the Negros exit, the Fund made the abovementioned loan payments of US$54,265,116 and US$20,148,203 which equal US$74,413,319 in full settlement of the Madison Loan (see Schedule 9 **enclosed** for a copy of the pay-off letter with respect to the Madison Loan).

8.7     The other liabilities listed in the above tables (which are extracted from the tables set out in the Negros Exit Report) are self-explanatory. It is misleading for the KPA to say that the Fund has not provided information on the nature of the liabilities above in circumstances where the KPA was provided with the Negros Exit Report in 2016, which contains such figures and their corresponding descriptions.

8.8     Notwithstanding that the KPA received a copy of the Negros Exit Report in late 2016, the KPA has not raised any concerns with respect to the Fund's exit of its investment in Negros Navigation until the Proceedings.  In any event, the KPA has failed to adequately explain its concern about the liabilities settled by the Fund in connection with the sale of Negros Navigation and articulate why the information sought by the KPA in this regard is necessary.

8.9     The Fund's investment in Negros Navigation resulted in a successful exit for the Fund and enabled the Fund to make significant distributions to the limited partners, including US$11,222,152.64 to the KPA.

## 9.     AUDITED FINANCIAL STATEMENTS

9.1     In paragraphs (t), (u) and (v) of the Schedule to Al Sabah 1, your client has requested the following information:

    (a)     A full accounting process used to reach the purported ownership percentages of the limited partners and GP of the Fund as stated in the 2015 and 2016 audited financial accounts;

    (b)     Full details of the investments (if any) made by KGLI Kuwait into the Fund; and

    (c)     A full accounting of the process used to distribute funds following the completion of the 2015 and 2016 audited financial accounts.

9.2     With respect to paragraph 9.1(a), the Fund's financial statements for 2015 and 2016 were audited by professional audit companies and in accordance with International Financial Reporting Standards.

9.3     With respect to paragraph 9.1(b), KGLI Kuwait has not made any investments into the Fund save for its capital commitments in its capacity as a limited partner in the Fund and such commitments have been duly recorded in the audited financial statements for the Fund.

9.4     With respect to paragraph 9.1(c), the Fund made distributions to the limited partners in October and November 2016 in accordance with the provisions of the LPA.

9.5    As noted above at paragraph 4.5, the Auditors are in the process of finalising the Outstanding Audited Accounts and the Fund will provide these to all of the limited partners of the Fund as soon as they have been issued and released by the Auditors.

9.6    The Fund has already provided an explanation with respect to the delay in finalising and issuing the Outstanding Audited Accounts. As noted in letters to all limited partners dated 3 October 2019, as a result of unsubstantiated allegations in connection with the management and affairs of the Fund made by third parties whose interests are adverse to those of the Fund, the GP has encountered difficulties in instructing external auditors for the financial years ending 2017, 2018 and for part of the year ending 2019.

9.7    We trust the above responses fully address your client's queries with respect to the audited financial statements.

## 10.    OWNERSHIP OF GP

10.1   In paragraph (w) of the Schedule to Al Sabah 1, your client has requested details of the GP's ownership and connections to KGLI Kuwait. The entire issued share capital of the GP is held by Port Link Holdings USA Inc. ("**Port Link USA**"), a company incorporated pursuant to the laws of the State of Delaware. Port Link USA was incorporated on 29 May 2018 as part of the Fund's strategy to resist the Kuwait AG's efforts to persuade the Dubai authorities to transfer the vast majority of the $496 Million to your client and PIFSS. The incorporation of Port Link USA to hold the shares of the GP provided the Fund with access to an entity incorporated in the United States should it become necessary to initiate legal proceedings in the United States to protect the interests of the Fund and/or the GP.

## 11.    PAYMENTS TO FIRMS WHO ASSISTED WITH THE UNFREEZING OF THE $496 MILLION

11.1   As explained above, the $496 Million was frozen by Noor for a total of 14 months between November 2017 and February 2019. During this period, the Fund became aware that the Kuwaiti authorities were attempting to persuade the Dubai authorities to instruct Noor to transfer the vast majority of the $496 Million from the Noor Account to two limited partners in Kuwait, a request that the Fund believed would amount to an illegal expropriation of the Fund's monies.

11.2   In such circumstances, it is entirely understandable and reasonable that the Fund took all available steps to try and obtain the release of the $496 Million wired to Noor so that the Fund could settle its liabilities and make final distributions to its investors. Accordingly, a number of firms were engaged by the Fund to assist with such efforts in the US, Kuwait and elsewhere. Many advised the Fund that it was very unlikely that the Fund would ever recover the monies.

11.3   The vast majority of the firms engaged by the Fund to assist with the unfreezing of the $496 Million were engaged on a retainer basis with a further obligation to pay a success fee in the event that such firms were successful in securing the release of the $496 Million during the term of the relevant agreements. Some of the firms engaged by the Fund to assist with the unfreezing of the $496 Million were also assisting the former directors of the GP in relation to the ongoing criminal proceedings in Kuwait. In circumstances where (i) such criminal proceedings directly related to the legitimacy of payments made by the Fund; and (ii) the Fund was on notice of contingent indemnity claims from the former directors of the GP with respect to defending such proceedings, the Fund was clearly interested in such payments and the outcome of the criminal proceedings in Kuwait. The GP at the time carefully considered the substance of the allegations in the criminal proceedings in Kuwait relating to the payments made by the Fund and ultimately took the view that such payments were legitimate payments in connection with the business of the Fund and the

20

allegations in the Kuwaiti criminal proceedings were without merit. Accordingly, the GP considered it appropriate for the firms engaged by the Fund to provide assistance to the former directors of the GP in relation to the criminal proceedings in Kuwait.

11.4    Details of the various payments made by the Fund to such firms are set out above in the tables at paragraphs 3.11 and 3.12.

## 12.    PAYMENTS TO APACHE ASIA LIMITED

12.1    We have been advised by representatives and advisors of the Fund that Apache Asia Limited ("**Apache**") was first engaged by the Fund in April 2015 to advise the Fund on its proposed exit from its investment in GGLC. Apache played a key role in identifying potential buyers of GGLC, including Udenna, and advised the Fund on the negotiation and implementation of the transaction between April 2015 and late 2017.

12.2    Pursuant to the terms of the agreement between Apache and the Fund, Apache was not entitled to any retainer but was entitled to a success fee that was to be calculated with reference to the sales price of GGLC once this had been agreed with a potential buyer. Accordingly, upon the sale of GGLC to Udenna in late 2017, Apache was entitled to receive a total success fee of US$45,850,000.

12.3    With respect to the US$45,850,000 that the Fund owed to Apache once an agreement had been reached with Udenna for the sale of GGLC, the following payments were made by the Fund to Apache:

(a)    the Fund arranged payment of a total of US$9,650,000.00 to Apache during 2017 - 2018; and

(b)    Crowell on behalf of the Fund paid a total of US$36,200,000 to Apache and a payee designated by Apache on 12 February 2019 (see table above at paragraph 3.12).

## 13.    TRANSFER TO KHALID AL SHAMALI

13.1    In the US Proceedings, your client has requested disclosure of the following information and documentation:

(a)    "*Documents and information from E-Trade related to an account held by Khalid Al Shamali, the brother of disgraced former KPA Director of Finance, Abdullah Al Shamali, including an approximate USD 3.3 million incoming transfer that occurred on or around September 2, 2010*";

(b)    "*All documents and communications concerning a transfer to the Account (E-Trade account ending in 6256 in the name of Khalid Al Shamali) of approximately $3,300,000 on or around September 2, 2010 (the "Transfer"), including all documents and communications concerning any subsequent transfers of these funds*"; and

(c)    "*Documents and communications sufficient to show (i) the originating account(s) for the Transfer; (ii) the beneficial owner of the originating account(s); (iii) the intermediary bank(s) involved in the Transfer; (iv) the stated purpose or reason for Transfer and any other details relating thereto; (v) any special instructions concerning the Transfer; (vi) notify party for the Transfer (if any); and (vii) any other details concerning the Transfer.*"

21

13.2    The Fund was not a party to the purported transfer to Khalid Al Shamali and, accordingly, is not in possession of any documentation relating to this transaction. In circumstances where your client's own evidence states that the purported transfer to Khalid Al Shamali was made by KGLI Kuwait and therefore did not involve the Fund in any way, our client does not understand the relevance of the requests made by your client in the US Proceedings and considers such requests to be nothing more than a fishing expedition.

## 14.    NEXT STEPS

14.1    In light of the information and documentation provided in this letter, we invite your client to withdraw all of the misleading and defamatory statements made in the Proceedings by return.

14.2    Further, in circumstances where the Fund has now responded substantively to your client's material information requests in the Proceedings, we invite your client to withdraw the Cayman Proceedings and the US Proceedings to avoid the parties incurring any further unnecessary costs.

14.3    In the meantime, all of our clients' rights with respect to the Proceedings and potential restitutionary and unjust enrichment actions against the KPA are reserved to the fullest extent.

Yours faithfully

*Walkers*

**WALKERS**

Enc.

22

| Category | Proceeding | Request | The Fund and GP's Response |
|---|---|---|---|
| **Fund Payments Related to Clark Asset** | KPA Section 22 | Complete copies of bank account statements for the Noor Account into which the USD 496 million as deposited from inception to date. | See section 3 of the Walkers Letter dated [X] February 2020 (the "**Walkers Letter**"). |
| | | The identities of all parties who received disbursements from the Noor Account, the amount mid date of such disbursement, and the bank account details for such disbursements | See section 3 of the Walkers Letter. |
| | | The legal basis upon which each and every payment above was made to such parties | See section 3 of the Walkers Letter. |
| | | Details of the third party to whom payment was made in order to secure release of the USD 496 million from Dubai, and all information and documents held by the Defendants pertaining to the interactions with such third party, including but not limited to any written agreements, and all correspondence. | See section 3 of the Walkers Letter. |
| | KPA 1782 | All documents and communications concerning the $496 Million Deposit, including all documents and communications concerning USD dollar clearing transactions and/or other funds transfers concerning the $496 Million Deposit, as well as copies of all SWIFT messages concerning the $496 Million Deposit. | See section 3 of the Walkers Letter. |
| | | Documents and communications sufficient to show (i) the account number for the Citibank account that received the $496 Million Deposit; (ii) the account holder of the Citibank account that received the $496 Million Deposit; (iii) the precise amount of the $496 Million Deposit; (iv) the date of the $496 Million Deposit; (v) the originating account(s) for the $496 Million Deposit; (vi) the beneficial owner of the originating account(s); (vii) the intermediary bank(s) involved in the $496 Million Deposit; (viii) the stated purpose or reason for the $496 Million Deposit and any other details relating thereto; (ix) any special instructions concerning the $496 Million Deposit; (x) notify party for the $496 Million Deposit (if any); (xi) any other details concerning the $496 Million Deposit; (xii) other transactions from the Citibank account that received the $496 Million Deposit before and/or after the $496 Million Deposit. | See section 3 of the Walkers Letter. |

|  |  | All documents and communications concerning disbursements, transfers and/or payments made from the Port Link account that received the $496 Million Deposit after the $496 Million Deposit was made, including those concerning the ultimate destination of the funds from the $496 Million Deposit, and concerning USD clearing transactions or other funds transfers concerning the $496 Million Deposit. | See section 3 of the Walkers Letter. |
|---|---|---|---|
| **Preferred Return Amount** | KPA Section 22 | Confirmation and itemisation of the capital commitments and contributions made by each limited partner at the commencement of the Port Fund and in each calendar year since that commencement, together with (i) bank statements showing the capital contributions received, and (ii) an explanation of for which of the Port Fund's investments the capital was received and applied towards. | See section 4 of the Walkers Letter. |
|  |  | Confirmation of the respective ownership percentages of the limited partners since the commencement of the Fund. | See section 4 of the Walkers Letter. |
|  |  | The capital account statement in respect of the Plaintiff covering each calendar year since commencement of the Port Fund. Such capital account statements should show the capital contributions made by and distributions made to the Plaintiff, any adjustments made to the Plaintiff's capital account including an explanation of the nature of any adjustments, and the corresponding preferred return balance accrued to the capital account balance of the Plaintiff over that period. | See section 4 of the Walkers Letter. |
| **Commingling of funds** | KPA Section 22 | Any and all correspondence relating to, (i) the opening of the Noor Account and (ii) the rationale for the USD 496 million being deposited into the Noor Account rather than any of the bank accounts that had historically been utilised in the name of the Port Fund (for example Al Ahli Bank of Kuwait or HSBC Kuwait) | See section 5 of the Walkers Letter. |
| **Carry Entitlement** | KPA Section 22 | Any and all underlying spreadsheets (including any distribution waterfall calculations prepared pursuant to the LPA) explaining how the quantum of each distribution to limited partners was quantified. | See sections 4 and 6 of the Walkers Letter. |
|  |  | All information held by the Defendants in connection with any loans and/or any other liabilities of the Port Fund that were paid as part of exit proceeds from the Clark City investment. | See sections 3 and 6 of the Walkers Letter. |

| The DIFC Claim | KPA Section 22 | All information and documents held by the Defendants pertaining to KGLJ's sale of EMPEML, including but not limited to the sale purchase agreement (or equivalent) and any associated addenda including associated warranties and indemnities and any other material identifying the purchaser, the date and terms of sale. | See section 6 of the Walkers Letter. |
|---|---|---|---|
| | | All written communication from EMPEML received by Port Link, including but not limited to demand notices and correspondence relating to the investment management agreement. | See section 6 of the Walkers Letter. |
| | | Any information and documents pertaining to the DIFC claim brought by EMPEML against the Port Fund and Port Link, including all associated legal advice, received by any of the parties on matters including, but not limited to, their decisions to submit to service in the DIFC and not to file a defence and any other material relevant to that claim | See section 6 of the Walkers Letter. |
| | | All information and documents (including documentary evidence and relevant agreements) submitted in the DIFC Claim or otherwise relied upon in support of EMPEML's claim of 8% penalty compound interest on delays in paying the Carry and Management Fees (as such terms are defined in the LPA). | See section 6 of the Walkers Letter. |
| | | All information, analysis, accounts and other documents (including documentary evidence provided by way of disclosure) submitted in the DIFC Claim or otherwise relied upon in support of EMPEML's calculation of the Carry as USD 45,462,000. | See section 6 of the Walkers Letter. |
| | | All information and documents pertaining to the Port Fund's settlement of the DIFC Claim judgment debt with EMPEML, including the identity of all beneficiaries of that judgment debt, the dates of, amounts of and justifications for those distributions. | See section 6 of the Walkers Letter. |
| The Damietta Loan | KPA Section 22 | The original executed loan agreement between the Port Fund and the borrower and any subsequent modifications to this loan agreement. | See section 7 of the Walkers Letter. |
| | | All loan statements prepared by the lender and provided to the borrower from the date of drawdown of the Damietta Loan, to the date of any subsequent write-off in 2014 and in the absence of any such statements, any and all correspondence between the parties showing the level of the borrower's indebtedness to the Port Fund. | See section 7 of the Walkers Letter. |

|  |  | Details of any placement fee paid by the Port Fund to the borrower, including (but not limited to) the date and amount of any such fee. | See section 7 of the Walkers Letter. |
|---|---|---|---|
|  |  | Any and all correspondence regarding the Damietta loan relating to the waiver of the lender's entitlement lo interest and confirmation provided by the Port Fund to the borrower that the loan principal had been repaid. | See section 7 of the Walkers Letter. |
|  |  | Internal documentation (including (but not limited to) board minutes, meeting notes and correspondence) setting out the rationale and approval process of any decision taken by the Port Fund in respect of: (i) any waiver by the Port Fund of its entitlement to interest on the Damietta loan; (ii) the rationale for any decision of the Port Fund to write off the Damietta Loan; and (iii) the rationale for any decision of the Port Fund not to convert the Damietta Loan (and accrued interest) into shares in the Borrower. | See section 7 of the Walkers Letter. |
|  |  | Documentation relating to the Port Fund's analysis of impairment disclosure requirements relating to the Damietta loan as required by IFRS 7 for the years 2013 and 2014. | See section 7 of the Walkers Letter. |
| **The Port Fund's Audited Financial Statements** | KPA Section 22 | A full accounting of the process used to reach the purported ownership percentages of the limited partners and general partner of the Port Fund as stated in the 2015 and 2016 audited financial accounts. | See section 9 of the Walkers Letter. |
|  |  | Full details of the investments (if any) made by KGLI into the Port Fund. | See section 9 of the Walkers Letter. |
|  |  | A full accounting of the process used to distribute funds following the completion of the 2015 and 2016 audited financial accounts. | See section 9 of the Walkers Letter. |
| **Transfer to Khalid Al Shamali** | KPA 1782 | Documents and information from E-Trade related to an account held by Khalid Al Shamali, the brother of disgraced former KPA Director of Finance, Abdullah Al Shamali, including an approximate USD 3.3 million incoming transfer that occurred on or around September 2, 2010. | See section 13 of the Walkers Letter. |
|  |  | All documents and communications concerning a transfer to the Account (E-Trade account ending in 6256 in the name of Khalid Al Shamali) of approximately $3,300,000 on or around September 2, 2010 (the "**Transfer**"), including all documents and communications concerning any subsequent |  |

|  |  | transfers of these funds. |  |
|---|---|---|---|
|  |  | Documents and communications sufficient to show (i) the originating account(s) for the Transfer; (ii) the beneficial owner of the originating account(s); (iii) the intermediary bank(s) involved in the Transfer; (iv) the stated purpose or reason for Transfer and any other details relating thereto; (v) any special instructions concerning the Transfer; (vi) notify party for the Transfer (if any); and (vii) any other details concerning the Transfer. |  |
| **Port Link** | KPA Section 22 | Details of Port Link's ownership and connections to KGLI. | See section 10 of the Walkers Letter. |



GOVERNMENT OF DUBAI



النيابة العامة
PUBLIC PROSECUTION

المكتب الفني للنائب العام
TECHNICAL OFFICE OF THE ATTORNEY GENERAL

وحدة التعاون القضائي الدولي

التاريخ: ٠٤ / رجب / ١٤٣٩ هـ
الموافق: ٢٢ / ٠٣ / ٢٠١٨ م

طلب مساعدة قضائية

في ملف غسل أموال رقم (٤/٢٠١٧)

| مقدم مـن : | السلطات القضائية بدولة الإمارات العربية المتحدة والمتمثلة في النيابة العامة لإمارة دبي |
| إلـــى : | السلطات القضائية المختصة في دولة الكويت الشقيقة |

تهدي السلطات القضائية بدولة الإمارات العربية المتحدة المتمثلة في النيابة العامة لإمارة دبي
إلى السلطات القضائية المختصة في دولة الكويت الشقيقة أطيب تحياتها وتشيد بإستمرار التواصل
والتعاون القضائي المشترك بين الدولتين .

نحن إسماعيل علي مدني – المحامي العام – رئيس وحدة التعاون القضائي الدولي للمكتب
الفني لسعادة النائب العام لإمارة دبي – ومفوض من قبل سعادة النائب العام لتقديم طلب المساعدة
القضائية الماثل .

في إطار التحقيق الذي تباشره النيابة العامة لإمارة دبي في ملف غسل أموال رقم (٤/٢٠١٧)
بشأن تقرير معاملة مشبوهة من نور بنك رقم (٣٦٦٧٤) والمتعلقة بشركة (بورت لينك – جي بي – ال
تي دي PORT LINK GP LTD) ، بشبهة " غسل الأموال " ، تتقدم النيابة العامة لإمارة دبي بطلب
المساعدة القضائية الماثل إستناداً لإتفاقية تنفيذ الأحكام والإنابات والإعلانات القضائية بدول مجلس
التعاون لدول الخليج العربية المصادق عليها من قبل الدولتين كأساس قانوني للطلب، وذلك على
النحو المبين تفاصيله أدناه .



– ١ –















حكومة دبي
GOVERNMENT OF DUBAI

النيابة العامة
PUBLIC PROSECUTION

المكتب الفني للنائب العام
TECHNICAL OFFICE OF THE ATTORNEY GENERAL

## الوقائع

تتلخص الوقائع أنه بتاريخ ٢٠١٧/١١/١٥م تلقت إدارة الإستعلامات المالية بمصرف الإمارات العربية المتحدة المركزي تقرير معاملة مشبوهة رقم (٣٦٧٤) من نور بنك بشأن شركة (بورت لينك – جي بي – ال تي دي PORT LINK GP LTD) بالمعلومات التالية :

**أولاً:** الشركة مرخصة في جزر الكايمان لمزاولة نشاط التطوير و الإستثمار في المشاريع والصناديق الإستثمارية ، و لها عنوان آخر للمراسلات الرسمية إضافة للعنوان المسجل في جزر الكايمان كما يلي (منطقة الشرق رقم ١٠ – مدينة مبارك الكبير ص.ب. ٩٠٣- دولة الكويت).

**ثانياً:** أسماء المدراء التنفيذيين للشركة :

١- المدعو/ سعيد إسماعيل علي دشتي .

٢- المدعوة/ لازريفا ماريا .

٣- المدعو/ عبدالغفور محمد أحمد العوضي .

**ثالثاً:** شركة (بورت لينك – جي بي – ال تي دي PORT LINK GP LTD) مملوكة من قبل شركة (كي جي ال للإستثمار) المرخصة من قبل وزارة التجارة و الصناعة الكويتية في دولة الكويت برخصة رقم (١١٧٦٤٢) بتاريخ ٢٠٠٦/١١/٢٠م .

**رابعاً:** قامت شركة (بورت لينك – جي بي – ال تي دي PORT LINK GP LTD) بفتح حساب مصرفي لدى نور بنك الإسلامي و بنك المشرق في دولة الإمارات العربية المتحدة ، وقام مجلس إدارة الشركة بتفويض المذكورين أدناه بالتوقيع في حساب الشركة لدى نور بنك الإسلامي :

١- المدعو/ عبدالله أكبر جبر أكبر .

٢- المدعو/ قاسم محمد حفيظ .

حيث بتاريخ ٢٠١٧/١١/١٥م وردت تحويلة مالية بمبلغ وقدره (٤٩٦,٤٢٩,٧٦٧) دولار أمريكي ما يعادل (١,٨٢٣,٠٠٠,٠٠٠) درهم إماراتي تقريباً لصالح شركة (بورت لينك – جي بي – ال تي دي PORT LINK GP LTD) لدى نور بنك الإسلامي من بنك (Bnaco DE ORO – UniBank INC) في جمهورية









🖥 ( وحدة التعاون القضائي الدولي ) طارق

-٢-



GOVERNMENT OF DUBAI



النيابة العامة
PUBLIC PROSECUTION

المكتب الفني للنائب العام
TECHNICAL OFFICE OF THE ATTORNEY GENERAL

الفلبين عبر بنك سيتي بنك (البنك المراسل) في نيويورك بالولايات المتحدة الأمريكية بتعليمات من شركة ( BDO TRUST AND INVESTMENT GROUP ) ، و على ضوء التعليمات الصادرة من مصرف الإمارات العربية المتحدة المركزي للمصارف التجارية العاملة في الدولة بتطبيق إجراءات على التحويلات المالية الواردة المشبوهة أو الكبيرة في قيمتها ، قام بنك نور الإسلامي بإجراء اللازم حول الحساب المصرفي وتبين الآتي :

١- المدراء التنفيذيين للشركة كل من المدعو/ سعيد إسماعيل علي دشتي و المدعوة/ ماريا لازريفا و المدعو/ عبدالغفور محمد أحمد العوضي و أخرون يخضعون للتحقيقات من قبل السلطات القضائية في دولة الكويت بتهمة الإستيلاء على الأموال العامة .

٢- إدراج شركة كي جي ال للإستثمار في موقع البحث العالمي (WORLD CHECK) لصدور قرار تأديبي بحقها من قبل هيئة أسواق المال الكويتية في دولة الكويت .

٣- إدراج المدعوة/ لازريفا ماريا بموقع البحث العالمي (WORLD CHECK) كشخص منكشف سياسياً لكونها عضو مجلس إدارة شركة (EXPORT ANALYTICAL OF INTERREGIONAL) و المدير التنفيذي لها .

٤- هيكلة معقدة لملكية الشركات المملوكة من قبل شركة كي جي ال للإستثمار .

٥- عدم معرفة إسم المستفيد النهائي (المالك الحقيقي) لقيمة التحويلة المالية.

٦- إشتباه بأن الشركة تم تأسيسها في جزر الكايمان لغرض الولوج في عمليات غسل الأموال بتمويه مصدر الأموال عبر تأسيس الشركات الإستثمارية و إستغلال نظام الأسواق المفتوحة العالمية .

وعليه طلبت إدارة الإستعلامات المالية بمصرف الإمارات العربية المتحدة المركزي من النيابة العامة بدبي بمقتضى أحكام القانون الإتحادي رقم (٤) لسنة ٢٠٠٢ في شأن مكافحة غسل الأموال و تعديلاته لغاية ٢٠١٤ بإصدار قرار لتحديد كيفية التصرف بقيمة التحويلة المالية البالغة (٤٩٦،٤٢٩،٧٦٧) دولار أمريكي ، وكذلك قامت بتاريخ ٢٠١٧/١١/٢٢ بإخطار نظيرتها في دولة الكويت عن طريق التبادل التلقائي للمعلومات عبر موقع إجمونت بشأن تقرير المعاملة المشبوهة على شركة (بورت لينك – جي بي – ال تي دي PORT LINK GP LTD) .



النيابة العامة دبي
PUBLIC PROSECUTION DUBAI





(وحدة التعاون القضائي الدولي ) طارق

JR VISION: Supremacy of law with Excellent International Performance
971 4 3346666 - Fax : +971 4 3340514 - P.O. Box 2383 Dubai - U.A.E.







GOVERNMENT OF DUBAI



النيابة العامة
PUBLIC PROSECUTION

المكتب الفني للنائب العام
TECHNICAL OFFICE OF THE ATTORNEY GENERAL

وبتاريخ ٢٠١٧/١١/٢١م ورد تقرير المعاملة المشبوهة من نور بنك الإسلامي للنيابة العامة بدبي بشأن تحويل مالي إلى حساب شركة (بورت لينك – جي بي – ال تي دي PORT LINK GP LTD) بقيمة (٤٩٦,٤٣٩,٧٦٧) دولار أمريكي و تم تقييد التقرير لدى النيابة العامة بملف غسل أموال رقم (٢٠١٧/٤) و بتاريخ ٢٠١٧/١١/٢١ صدر قرار من النيابة العامة بالتحفظ على الحساب المصرفي العائد لشركة (بورت لينك – جي بي – ال تي دي PORT LINK GP LTD) لدى نور بنك الإسلامي، وتشكيل لجنة مشتركة من جهات إنفاذ القانون لإعداد تقرير فني تفصيلي مشترك، وفقاً للقانون الإتحادي رقم (٤) لسنة ٢٠٠٢ في شأن مواجهة جرائم غسل الأموال و مكافحة تمويل الإرهاب و تعديلاته بالقانون الإتحادي رقم (٩) لسنة ٢٠١٤.

وبتاريخ ٢٠١٨/٠٢/١٨م ورد إلى النيابة العامة التقرير الفني المعد من القسم المختص في شرطة دبي و الخاص بتقرير المعاملة المشبوهة موضوع الطلب أعلاه، و جاء بنتيجته :

" المبالغ المحولة من جمهورية الفلبين لصالح شركة (بورت لينك – جي بي – ال تي دي PORT LINK GP LTD) نتيجة لبيع إستثماراتها في مدينة صباح الأحمد اللوجستية في منطقة مطار كلارك الدولي عبر تمويل قرض مصرفي مشترك بين تحالف مجموعة من المصارف التجارية العاملة في جمهورية الفلبين هي مشروعة المصدر، و لكن لأسباب فنية مجهولة تم تحويل الأموال إلى حساب الشركة في الدولة بدلاً من تحويلها مباشرة من جمهورية الفلبين إلى الحسابات المصرفية للمستثمرين أو إلى الحساب المصرفي الذي تم إستلام أموال المستثمرين عند بدأ مرحلة الإكتتاب أو إلى حساب شركة كي جي ال للإستثمار في دولة الكويت .

إضافة إلى ذلك قامت شركة (بورت لينك GP LTD – جي بي – ال تي دي PORT LINK) بالطلب من نور بنك الإسلامي تحويل مبلغ (٩٤,٦١٣,٤٩٩) دولار أمريكي إلى الحساب المصرفي لشركة (بورت لينك – جي بي – ال تي دي PORT LINK GP LTD) في حساب شركة (بورت لينك – ايديال جلف هولدنجس ليمتد الذي يملكها أحد المفوضين بالتوقيع في حساب شركة (بورت لينك – جي بي – ال تي دي PORT LINK GP LTD) وهذا يبين هيكلة معقدة لملكية الشركات المملوكة من قبل شركة كي جي ال للإستثمار، و من واقع البحث تبين بأن دافع تأسيس شركة ايديال جلف هولدنجس ليمتد في منطقة عجمان الحرة منذ عام ٢٠١٦ لم يكن دافعاً تجارياً حيث لم نستدل على أية قيود مالية لعمليات تشغيل حقيقة بعد الولوج في قاعدة أنظمة البيانات و كذلك من واقع كشف حسابها المصرفي حيث لم يتبين بأنها قامت بإستخدام حسابها بعملة الدرهم الإماراتي عدا مبلغ ٣,٦٢٢ أما حسابها بعملة الدولار الأمريكي فقد وردت تحويلة مالية بقيمة (٣,١٥١,٣٢٨,١٤) دولار أمريكي تم





IR VISION: Supremacy of law with Excellence in Legal Performance
71 4 3346666 - Fax - +97      P.O.Box2363 Dubai - U.A.E.







رؤيتنا: سيادة القانون بناءً على متميز مالصيا
+٩٧١ ٤ ٣٣٤١١١١ – فاكس - +٩٧١ ٤ ٣٣٤٠٥١٤ – ص. ب. ٢٣٦٣ ، دبي





المكتب الفني للنائب العام
TECHNICAL OFFICE OF THE ATTORNEY GENERAL

تحويلها مجزءة على فترات زمنية لشركة واحدة فقط تدعى كابيتال لينك هولدنغ  CAPITAL LINK
HOLDING  KSCC في دولة الكويت ، يستشف من ذلك بأن الشركة تم تأسيسها فقط لغاية فتح
حساب مصرفي لها في الدولة، علاوة على أن شركة كي جي ال للإستثمار وصندوق الموانئ تواجهان
دعاوى قضائية في دولة الكويت من قبل مؤسسة الموانئ الكويتية المؤسسة العامة لتأمينات
الإجتماعية الكويتية بدليل الرسائل الموجهة للشاكيتين مذيلة بتوقيع المدعو/ عبدالغفور محمد أحمد
العوضي أحد المدراء التنفيذين لشركة (بورت لينك – جي بي – ال تي دي (PORT LINK GP LTD
إضافة إلى إن كل من المدعو/ سعيد إسماعيل على دشتي و المدعوة/ لازريفا ماريا مقيد بحقهما
قضية رقم ١٤٩٦ / ٢٠١٧ – جناية٢ – نيابة الأموال بتهمة الإستيلاء على الأموال العامة ".

و أوصت اللجنة المشتركة في تقريرها أعلاه بطلب مساعدة قضائية من الجهات القضائية
المختصة في دولة الكويت بشأن التحويلة المالية المذكورة و علاقتها بالتحقيقات الجارية لديها بشأن
الدعاوى المرفوعة ضد شركة كي جي ال للإستثمار و صندوق الموانئ وكل من المدعو/ سعيد
إسماعيل على دشتي و المدعوة/ لازريفا ماريا .

### " الجريمة و المواد القانونية المنطبقة "

إن الواقعة على النحو السالف بيانها في محال وصف القانوني وفقاً للقوانين العقابية في دولة
الإمارات العربية المتحدة تشكل جريمة " غسل الأموال " المعاقب عليها بالمواد ( ٢ ، ٣ ، ١٣، ١٤، ١٥،
١٨) من قانون العقوبات الإتحادي رقم (٤) لسنة ٢٠٠٢ في شأن مواجهة جرائم غسل الأموال و مكافحة
تمويل الإرهاب و تعديلاته بالقانون الإتحادي رقم (٩) لسنة ٢٠١٤.

### " الأساس القانوني لطلب المساعدة القضائية "

تقدم السلطات القضائية في دولة الإمارات العربية المتحدة المتمثلة في النيابة العامة لإمارة دبي
إلى السلطات القضائية المختصة في دولة الكويت بطلبها الماثل إستناداً لأحكام المواد (١٣، ١٤/ب، ١٥،
١٦، ١٨،) من إتفاقية تنفيذ الأحكام والإنابات والإعلانات القضائية بدول مجلس التعاون لدول الخليج
العربية المصادق عليها من قبل الدولتين كأساس قانوني للطلب .








JR VISION; Supremacy of law, with Excellent International Performance
71 4 3346666 - Fax : +971 4 3340514 - P.O. Box 2383 Dubai - U.A.E.





GOVERNMENT OF DUBAI

النيابة العامة
PUBLIC PROSECUTION

المكتب الفني للنائب العام
TECHNICAL OFFICE OF THE ATTORNEY GENERAL

" النصوص القانونية المنطبقة "

مرفق بالطلب الماثل ملحق بنصوص المواد القانونية المنطبقة .

" مضمون المساعدة المطلوبة "

تلتمس السلطات القضائية في دولة الإمارات العربية المتحدة المتمثلة في النيابة العامة تنفيذ الطلب
طبقاً للقوانين والأنظمة المعمول بها لدى دولة الكويت الشقيقة و المتمثل في تزويد النيابة العامة
بالآتي :

1- معلومات عن تحويلة مالية بمبلغ وقدره (٤٩٦,٤٣٩,٧٦٧) دولار أمريكي لصالح شركة (بورت لينك –
جي بي – ال تي دي PORT LINK GP LTD) لدى نور بنك الإسلامي من بنك ( Bnaco DE ORO –
UniBank INC) في جمهورية الفلبين عبر سيتي بنك (البنك المراسل) في نيويورك بالولايات المتحدة
الأمريكية بتعليمات من شركة ( BDO TRUST AND INVESTMENT GROUP ) و علاقتها
بالتحقيقات التجارية لديها بشأن الدعاوى المرفوعة ضد شركة كي جي ال للإستثمار و صندوق الموانئ
وكل من المدعو/ سعيد إسماعيل على دشتي و المدعوة/ لازريفا ماريا و أي متهمين آخرين .

2- الأدلة القائمة بشأن تلك العلاقة و التي تثبت تواطؤهم أو تورطهم أو إرتباطهم بتلك المبالغ المالية
المحولة أنفة البيان أعلاه و التهم الموجهة إلى المذكورين أو أية أشخاص آخرين و ما وصلت إليه مرحلة
التحقيق و في حالة ما إذا كانت الدعوى منظورة أمام المحكمة بيان ما آلت إليها الدعوى .

وختاماً تنتهز النيابة العامة لإمارة دبي هذه الفرصة لتقدم إحترامها وخالص تقديرها للسلطات
المختصة في دولة الكويت الشقيقة .

وتفضلوا بقبول فائق التقدير والاحترام .

المستشار/ إسماعيل علي مدني – المحامي العام
رئيس وحدة التعاون القضائي الدولي

للإستفسار والتواصل مع :
المستشار : إسماعيل علي مدني – للمحامي العام
رقم هاتف المكتب : ٩٧١٤٢٣٠٧٨٢١٦+
البريد الإلكتروني : IMADANI@dxbpp.gov.ae

المرفقات : 1- ملحق بنصوص المواد القانونية المنطبقة
2- التقرير الفني المشترك موضوع الطلب

IR VISION: Supremacy of law with Excellent International Performance
71 4 3346666 - Fax : +971 4 3340514 - P.O. Box 2383 Dubai - U.A.E.

رؤيتنا : سيادة القانون بأداء متميز عالمياً
+٩٧١٤ ٣٣٤٦٦٦٦ - فاكس : +٩٧١ ٤ ٣٣٤٠٥١٤ - ص . ب : ٢٣٨٣ دبي - ٢٠٤٠١















GOVERNMENT OF DUBAI

النيابة العامة
PUBLIC PROSECUTION

المكتب الفني للنائب العام
TECHNICAL OFFICE OF THE ATTORNEY GENERAL

## ملحق بالمواد القانونية المطبقة

القانون الاتحادي رقم (٤) لسنة ٢٠٠٢ م

في شأن مواجهة جرائم غسل الأموال ومكافحة تمويل الإرهاب

وتعديلاته بالقانون الاتحادي رقم (٩) لسنة ٢٠١٤م

### المادة (١)

في تطبيق أحكام هذا القانون يكون للكلمات والعبارات التالية المعاني المبينة قرين كل منها ما لم

يقض سياق النص بغير ذلك:

**الدولة:** الإمارات العربية المتحدة.

**الوزارة:** وزارة المالية.

**الوزير:** وزير المالية.

**المصرف المركزي:** مصرف الإمارات العربية المتحدة المركزي.

**الهيئة:** هيئة الأوراق المالية والسلع.

**المحافظ:** محافظ المصرف المركزي.

**اللجنة:** اللجنة الوطنية لمواجهة غسل الأموال ومكافحة تمويل الإرهاب.

**الأموال:** الأصول أيا كان نوعها مادية أو معنوية، منقولة أو ثابتة بما فيها العملة الوطنية والعملات

الأجنبية والمستندات أو الصكوك التي تثبت تملك تلك الأصول أو أي حق متعلق بها أيا كان شكلها بما

في ذلك الشكل الإلكتروني أو الرقمي.

**الوحدة:** وحدة المعلومات المالية لمواجهة غسل الأموال والحالات المشبوهة المنشأة بالمصرف

المركزي بموجب المادة (٧) من هذا القانون.

**الجهات الرقابية:** السلطات الاتحادية والمحلية التي تعهد إليها القوانين والأنظمة المختلفة بالرقابة

والترخيص على المنشآت المالية والمنشآت المالية الأخرى والتجارية والاقتصادية.

**غسل الأموال:** أي عمل من الأعمال المحددة في المادة (٢) من هذا القانون.

**المتحصلات:** أية أموال ناتجة بطريق مباشر أو غير مباشر من ارتكاب أية جناية أو جنحة.

— ٧ —








UAE VISION: Supremacy of law with Excellent International Performance
971 4 3346666 - Fax : +971 4 3340514 - P.O. Box 2383 Dubai - U.A.E.

DUBAI
www.dxbpp.gov.ae

THE INTERNATIONAL
STANDARD FOR SERVICE
EXCELLENCE



GOVERNMENT OF DUBAI



النيابة العامة
PUBLIC PROSECUTION

المكتب الفني للنائب العام
TECHNICAL OFFICE OF THE ATTORNEY GENERAL

المعاملات المشبوهة: معاملات تتعلق بأموال تتوافر بشأنها أسباب معقولة للاشتباه في أنها متحصلة من أية جناية أو جنحة أو مرتبطة بتمويل الإرهاب أو تمويل التنظيمات غير المشروعة، سواء تم تنفيذها أو شرع في ذلك.

التنظيمات غير المشروعة: التنظيمات المجرم إنشاؤها أو أحد أنشطتها.

التجميد أو الحجز: الحظر المؤقت على نقل الأموال أو تحويلها أو التصرف فيها أو تحريكها أو تبديلها بأمر صادر من السلطة المختصة .

المصادرة: نزع ملكية الأموال الخاصة بصورة دائمة بموجب حكم صادر من محكمة مختصة .

الوسائط: أي شيء يستخدم أو يراد استخدامه بأي شكل في ارتكاب أية جناية أو جنحة.

المنشآت المالية: أي بنك أو شركة تمويل أو محل صرافة أو وسيط مالي و نقدي أو أية منشأة أخرى مرخص لها من قبل المصرف المركزي أو الهيئة سواء كانت مملوكة ملكية عامة أو خاصة .

المنشآت المالية الأخرى والتجارية والاقتصادية: منشآت التي يتم ترخيصها ومراقبتها من قبل جهات أخرى غير المصرف المركزي أو الهيئة.

تمويل الإرهاب: تقديم أموال أو جمعها أو تأمين الحصول عليها أو نقلها بأية وسيلة بشكل مباشر أو غير مباشر لأية جمعية أو هيئة أو منظمة أو مركز أو جماعة أو عصابة أو أي أشخاص تنطبق عليهم أحكام القانون الإتحادي رقم (٧) لسنة ٢٠١٤ في شأن مكافحة الجرائم الإرهابية .

تمويل التنظيمات غير المشروعة: كل فعل مادي أو تصرف قانوني يراد به توفير المال لتنظيم غير مشروع أو لأحد أنشطته أو لأحد المنتمين أليه .

## المادة (٢)

١- يعد مرتكباً جريمة غسل الأموال كل من كان عالماً بأن الأموال متحصلة من جناية أو جنحة، و ارتكب عمداً أحد الافعال الآتية :

أ- حول أو نقل أو أودع أو حفظ أو استثمر أو استبدل المتحصلات أو قام بإدارتها بقصد إخفاء أو تمويه مصدرها غير المشروع .

ب- أخفى أو موه حقيقة المتحصلات، أو مصدرها، أو مكانها أو طريقة التصرف فيها أو حركتها أو الحقوق المتعلقة بها أو ملكيتها .

ج- اكتسب أو حاز أو استخدم المتحصلات.



رؤيتنا: سيادة القانون بأداء متميز عالميا
+٩٧١ ٤ ٣٣٤٦٦٦٦ - فاكس : ٩٧١ ٤ ٣٣٤٠٥١٤ - ص . ب : ٢٣٨٣ ، دبي - م . ع . م















المكتب الفني للنائب العام
TECHNICAL OFFICE OF THE ATTORNEY GENERAL

٢- تعتبر جريمة غسل الأموال جريمة مستقلة و لا تحول معاقبة مرتكب الجرم الأصلي دون معاقبته على جريمة غسل الأموال .

٣- لا يشترط حصول الإدانة بارتكاب الجريمة لإثبات المصدر غير المشروع للمتحصلات .

## المادة (٣)

تكون المنشآت المالية و المنشآت المالية الأخرى والتجارية و الاقتصادية العاملة في الدولة مسؤولة جنائياً عن جريمة غسل الأموال أو تمويل الإرهاب أو تمويل التنظيمات غير المشروعة إذا ارتكبت باسمها أو لحسابها عمداً وذلك دون إخلال بالجزاءات الإدارية المنصوص عليها في القانون .

## المادة ( ١٣ )

١ - يعاقب كل من يرتكب أحد الأفعال المنصوص عليها في البند (١) من المادة (٢) من هذا القانون أو يشرع فيها بالحبس مدة لا تزيد على عشر سنوات وبالغرامة التي لا تقل عن (١٠٠،٠٠٠) مائة ألف درهم و لا تتجاوز (٥٠٠،٠٠٠) خمسمائة ألف درهم أو بإحدى هاتين العقوبتين .

٢ - يعاقب على تمويل الإرهاب بالعقوبات الواردة في القانون الاتحادي رقم(٧) لسنة ٢٠١٤ في شأن مكافحة الجرائم الإرهابية .

٣ - للمحكمة أن تقدر إعفاء الجاني في حال تعدد الجناة من عقوبة الحبس الواردة في البند(١) من هذه المادة إذا بادر بإبلاغ السلطات المختصة بمعلومات عن الجريمة وباقي الجناة قبل علم السلطات المختصة و أدى تبليغه إلى ضبط باقي الجناة أو الأموال محل الجريمة .

## المادة (١٤)

تعاقب بالغرامة التي لا تقل عن ( ٣٠٠،٠٠٠ ) ثلاثمائة ألف درهم و لا تزيد على (١،٠٠٠،٠٠٠) مليون درهم أية منشأة ارتكبت جريمة غسل الأموال أو تمويل الإرهاب أو تمويل التنظيمات غير المشروعة .



- ٩ -

OUR VISION: Supremacy of law with Excellent International Performance
+971 4 3346666 - Fax : +971 4 3340514 - P.O. Box 2383 Dubai - U.A.E.

DUBAI
www.dxbpp.gov.ae

    

9





المكتب الفني للنائب العام
TECHNICAL OFFICE OF THE ATTORNEY GENERAL

## المادة (١٥)

يعاقب بالحبس وبالغرامة التي لا تقل عن (٥٠,٠٠٠) خمسين ألف درهم و لا تجاوز(٣٠٠,٠٠٠) ثلاثمائة ألف درهم أو بإحدى هاتين العقوبتين رؤساء و أعضاء مجالس إدارة ومدراء وموظفو المنشآت المالية والمنشآت المالية الأخرى والتجارية والاقتصادية الذين علموا بأي فعل وقع في منشآتهم وكان متصلا بجريمة غسل الأموال أو تمويل الإرهاب أو تمويل التنظيمات غير المشروعة وامتنعوا عن إبلاغ وحدة المعلومات المالية .

## المادة (١٨)

يعاقب بالحبس وبالغرامة أو بإحدى هاتين العقوبتين كل من تعمد عدم الإفصاح أو امتنع عن تقديم المعلومات الإضافية عند الطلب منه، أو أخفى عمدا معلومات يجب الإفصاح عنها، أو قدم عمدا معلومات غير صحيحة، وذلك بالمخالفة للنظام المنصوص عليه في المادة (٦) من هذا القانون .





~١٠~



OUR VISION: Supremacy of law with Excellent International Performance
+971 4 3346666 - Fax : +971 4 3340514 - P.O. Box 2383 Dubai - U.A.E.

رؤيتنــا: سيادة القـانـون بـأداء متـميـز عـالمـيــا
+٩٧١ ٤ ٣٣٤٦٦٦٦ – فـاكس : ٣٣٤٠٥١٤ ٤ ٩٧١+ – ص . ب : ٢٣٨٣ ، دبي – إ . ع . م














Government of Dubai                                  Public

Prosecution

Technical Office of The Attorney General

## International Cooperation Department
Date: 4 Rajab 1439
Corresponding:
22/3/2018

**Judicial Assistance Request**

**Money Laundering File Number**

**(4/2017)**

| Submitted by: | The UAE Judicial Authority, represented by the Public Prosecution of Dubai |
|---|---|
| To: | The Judicial Authority, the State of Kuwait |

The UAE Judicial Authority, represented by the Public Prosecution of Dubai, is pleased to extend its best regards to the competent judicial authorities in Kuwait and praise the continuous engagement and judicial cooperation between both countries.

I, Ismail Ali Madani, the Advocate-General, Head of the International Judicial Cooperation Unit in the Technical Office of the Attorney General, Dubai, who is authorized by the Attorney General to provide the judicial assistance.

As part of the investigations conducted by the Emirate of Dubai in Money Laundering File No. (4/2017) regarding Report No. (36674) issued by Noor Bank on "money laundering" suspicious transaction involving (Port Link GP LTD), the

1





ALDIYAR
LEGAL TRANSLATION
Legal Translator/ Mahmood Subhi Nassar

الــتــرجــمة القــانــونــيــة
المترجم القانوني / محمودصبحي نصار

Public Prosecution of Dubai hereby requests your judicial assistance pursuant to the GCC Convention for the Execution of Judgments, Delegations and Judicial

Notifications adopted by the two countries as a basis for that request as detailed below.

### **The Incidents**

The incidents are summarized as follows: on 15/11/2017, the Financial Intelligence Function at the Central Bank of the UAE received Report No. (36674) on a suspicious transaction from Noor Bank involving Port Link GP LTD including the following information:

**First**: The company is licensed in the Cayman Islands to practice development and investment activities in projects and investment funds. It has an alternate address for official correspondence in addition to its registered mailing address in the Cayman Islands, which is as follows: (Sharq, 10 – Mubarak Al-Kabeer City, P.O. Box 903, Kuwait).

**Second**: The names of the company's executive directors are:

1- Saeed Ismail Ali Dashti
2- Maria Lazareva
3- Abdul Ghafour Mohamed Ahmed Al-Awadhi

**Third**: Port Link GP LTD is owned by KGL Investment Company, which is licensed by the Ministry of Commerce and Industry in Kuwait, license number (117642) dated 20/11/2016.

**Fourth**: Port Link GP LTD opened a bank account at Noor Islamic Bank and Mashreq Bank in the UAE. The company's board of directors authorized the following signatories for the transactions executed at Noor Islamic Bank:

1- Abdullah Akbar Jabr Akbar.

2- Qassim       Mohamed Hafez.

On 15/11/2017, a wire transfer in the amount of USD (496,429,767) equivalent to

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. ،م.ع.أ ،يـبـد، ٧٧٩٤:ب.ص ، ٢٢٨٣٦٧٨ : فاكس ، ٢٢، ٢٢
Mob.: 050-6284563       Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com







ALDIYAR
LEGAL TRANSLATION
Legal Translator/ Mahmood Subhi Nassar

AED (1,823,000,000) was sent to Port Link GP LTD as the beneficiary at Noor Islamic Bank from Bnaco DE ORO – UniBank INC in the Philippines through Citi Bank, New York, USA as the (corresponding Bank) as per instructions issued by BDO Trust and Investment Group. In light of the instructions issued by the Central Bank of the UAE to commercial banks working in the UAE to duly inspect suspicious and transfers of a large value, Noor Bank has conducted its investigations which revealed the following:

1- The company's executives, Saeed Ismail Ali Dashti, Maria Lazareva, Abdul Ghafour Mohamed Ahmed Al-Awadhi and others are being investigated by the Kuwaiti judicial authorities for the embezzlement of public funds.
2- KGL Investment (KGLI) is listed on World Check as a result of a disciplinary resolution issued by the Capital Markets Authority in Kuwait.
3- Maria Lazareva is listed on World Check as a Politically Exposed Person (PEP) as she is a board member and the CEO of Export Analytical of Interregional.
4- KGLI has a complex equity structure for its subsidiaries.
5- The final beneficiary (the actual owner) of the transfer is unknown.
6- The company is suspected to have been incorporated in the Cayman Islands for money laundering purposes in order to disguise the source of the funds through the establishment of investment companies and exploiting the international open markets system.

Based on the foregoing, the Financial Intelligence Function at the Central Bank of the UAE requested from the Public Prosecution in Dubai to provide instructions on how to deal with the wire transfer of USD (496,429,767), pursuant to Federal Law number (4) of 2002 Regarding Criminalization of Money Laundering and its amendments issued in 2014. Moreover, on 22/11/2017, it informed its Kuwaiti counterpart, through the Egmont Secure Web as to the suspicious transaction report made on Port Link GP LTD.

On 21/11/2017, a report was issued by Noor Bank to the Public Prosecution, Dubai regarding the transfer made to Port Link GP LTD bank account in the amount of USD (496,429,767). The report was listed by the Public Prosecution in Money Laundering File No. (4/2017). On 21/11/2017, the Public Prosecution issued its resolution to freeze Port Link GP LTD Company's bank account at Noor Bank and to form a joint committee comprising of various legal entities to prepare a joint

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E.  ٢٢٢ ، هاتف : ٢٢٨٣٦٧٨ ، فاكس : ٧٧٩٤ ، ص.ب.: ، دبي - أ.ع.م.
Mob.: 050-6284563    Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com







detailed technical report, pursuant to Federal Law No. (4) of 2002 Regarding the Criminalization of Money Laundering and Combating Terrorism Financing, as amended by Federal Law No.(9) of 2014.

On 18/03/2018, the Public Prosecution received the technical report issued by the competent department at Dubai Police related to the above-mentioned suspicious transaction report. The results were as follows:

"The amounts transferred from the Philippines to Port Link GP LTD were the result of the sale of its investment in Sabah Al-Ahmad Logistics City at Clark International Airport area through a bank syndicated loan made by a group of commercial banks working in the Philippines; therefore, this money is of a legal source. However, for unknown technical reasons, the money was transferred to the company's account in the country instead of being directly transferred from the Philippines to the inventors' bank accounts, the bank account through which the investors' money was initially received at the beginning of the subscription process, or KGLI Company's bank account in Kuwait.

Moreover, Port Link GP LTD requested from Noor Bank to transfer USD (94,613,499) to Ideal Gulf Holdings LTD, which is owned by one of the authorized signatories of Port Link GP LTD Company's bank account. This reflects the complex equity structure of the companies owned by KGLI. Through re-investigating the issue, it became clear that the establishing Ideal Gulf Holdings LTD in Ajman Free Zone in 2016 wasn't business related, as we couldn't locate on the data base any financial records for actual operations. The same is reflected through the company's bank account as there were no transactions except for one transaction in the amount of AED 3,622. As for the USD bank account, there were inward transfers for USD (3,151,328.14) which were transferred in installments over a period of time to one company named Capital Link Holding KSCC in Kuwait. This suggests that the company was only established in order to open a bank account in the country. Additionally, KGLI and the Port Fund are facing legal proceedings in Kuwait by KPA and PIFSS as indicated by the letters sent by the two complainants signed by Abdul Ghafour Mohamed Ahmed Al-Awadhi, one of Port Link's executives. Besides, Saeed Ismail Ali Dashti and Maria Lazareva are facing charges in case 1496/2017 criminal division 2 for the embezzlement of public funds

4

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E.
Mob.: 050-6284563        Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com

14





**ALDIYAR**
**LEGAL TRANSLATION**
Legal Translator/ Mahmood Subhi Nassar

الـــــديـــار
للــترجمة القـانـونيـة
المترجم القانوني / محمودصبحي نصار

The committee recommended in its aforementioned report to seek judicial assistance from the competent authorities in Kuwait regarding the abovementioned bank transfers and their relations to the ongoing investigations conducted over there against KGLI, the Port Fund, Saeed Ismail Ali Dashti and Maria Lazareva.

### The Crime & Applicable Law

The incident as described above is classified by the UAE Penal Code as "Money Laundry" crime punishable by Articles (2, 3, 13, 14, 15 & 18) of Federal Law No. (4) of 2002 Regarding the Criminalization of Money Laundering and Combating Terrorism Financing, as amended by Federal Law No.(9) of 2014.

### The Legal Basis of Requesting Judicial Assistance

The judicial authorities in the UAE, represented by the Public Prosecution of Dubai Emirate, hereby request the judicial assistance from the State of Kuwait pursuant to Articles (13, 14/B, 15, 16 and 18) of the GCC Convention for the Execution of Judgments, Delegations and Judicial Notifications adopted by the two countries as a basis for that request.

### Applicable Articles of the Law

An annex containing the applicable legal articles is attached to this request.

### The Contents of the Requested Assistance

The judicial authorities in the UAE, **represented by the Public Prosecution of the Emirate of Dubai**, hereby request the State of Kuwait, pursuant to its applicable laws and regulations, to provide the Public Prosecution with the following:

1- Information on the USD (496,429,767) wire transfer to Port Link GP LTD at Noor Bank from Banco De ORO UniBank Inc in the Philippines through the intermediary CITI Bank, New York, USA as per the instructions issued by BDO Trust and Investment Group and their relation to the ongoing investigations over there regarding the cases filed against KGLI, the Port Fund, Saeed Ismail Ali Dashti, Maria Lazareva and others.

2- The evidence confirming that relationship implicating their collusion,

5

15





involvement or connection to those transferred amounts as mentioned above and the accusations filed against them or other individuals, as well as the update on the investigations, and in case there were legal proceedings, the Kuwaiti authorities are kindly requested to provide the latest developments in that regard.

Finally, the Public Prosecution of Dubai would like to take this opportunity to express its utmost respect and appreciation to the competent authorities in the State of Kuwait.

Best Regards;
Counselor/ Ismail Ali Madani, the Advocate-General (signed & stamped) Head of the International Judicial Cooperation Unit

For inquiries please contact:
Counselor Ismail Ali Madani, the Advocate-General Office Phone Number: +97142 - 78316
Email: imandani@dxbpp.gov.ae

| Attachments: | 1)Articles of applicable laws |
| | 2)The joint technical report |



Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. هـ.ع.م ، أ.دبـي ، ٧٧٩٤:ص.ب ، ٢٢٨٣٦٧ : فاكس ، ٢٢٢٢٧٢٢ / ٢٢٢١٥٥٧:هاتف
Mob.: 050-6284563    Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com    ٠٥٠-٦٢٨٤٥٦٣ : متحرك

16





Legal Translator/ Mahmood Subhi Nassar

---

### Annex containing applicable laws

### Federal Law No. (4) of 2002

#### Regarding the Criminalization of Money Laundering and Combating Terrorism Financing

#### as amended by Federal Law No.(9) of 2014

#### Article (1)

In the application of the provisions of this law, the following words and phrases shall have the meanings, respectively, ascribed thereto unless the context otherwise requires:

**The State:** United Arab Emirates.

**The Ministry**: Ministry of Finance.

**The Minister:** Minister of Finance.

**The Central Bank**: The Central Bank of the UAE.

**The Authority:** Securities and Commodities Authority (SCA).

**The Governor:** Governor of the Central Bank.

**The Committee:** National Committee for Anti-Money Laundering and Counter-Terrorism Financing.

**Funds:** Any assets whatsoever the nature thereof, whether material or immaterial, moveable or immoveable; including national currency, foreign currencies, documents and instruments proving acquisition of these assets or any right related thereto; whether in electronic or digital form.

**The Function:** Financial Intelligence Function for Combating Money Laundering and Suspicious Transactions, established at the Central Bank by virtue of Article (7) herein.

**Supervisory Authorities:** Federal and local authorities responsible for licensing or supervising financial, commercial and economic institutions, by virtue of the laws and regulations in force.

**Money Laundering**: Any of the acts specified in Article (2) herein.

**Proceeds**: Any funds derived, directly or indirectly, from an offence or misdemeanor.

7

17

  

Legal Translator/ Mahmood Subhi Nassar

المترجم القانوني / محمودصبحي نصار

**Suspicious Transactions**: Any transactions involving reasonable grounds for suspicion; in term of being derived from an offence or misdemeanor, or related to terrorism or terrorist organizations financing; whether executed or planned to be executed.

**Illegitimate Organizations**: Any organization that the establishment of the same or the finance of any activities thereof are hereby criminalized.

**Freezing or Seizure:** Temporary prohibition of the transfer, conversion, disposition or movement of any funds by virtue of an order issued by the Competent Authority.

**Forfeiture:** Permanent dispossession of funds by virtue of an order issued by a competent court.

**Instruments**: Any item used or intended to be used, in any way, in the commission of an offence or misdemeanor.

**Financial Institutions**: Any bank, finance company, money-exchange establishment, financial and cash broker or any other financial institution licensed by the Central Bank or the Authority; whether publicly or privately owned.

**Other Financial, Commercial and Economic Establishments:** Establishments licensed and supervised by departments other than the Central Bank or the Authority.

**Terrorism Financing:** Providing, collecting, securing or transferring funds via any means, directly or indirectly, to any association, authority, organization, center, group, gang or individuals fall under the provisions of Federal Law No. (7) of 2014 concerning Combating Terrorism Crimes.

**Illegitimate Organizations Financing**: Each physical or legal act seeks to provide money to an illegal organization, the activities thereof or the affiliates of the same.

### Article (2)

1.      Whoever commits any of the following acts, despite being fully aware that such funds are derived from an offence or misdemeanor, shall be deemed as a perpetrator of money laundering crime:

a.      If converts, transfers, deposits, saves, invests, exchanges or manages any proceeds, with intent to conceal or disguise the illicit origin thereof.

b.      If conceals or disguises the true nature, origin, location, way of disposition, movement, rights related to any proceeds or the ownership



8

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. دبي، أ.ع.م، ص.ب:٧٧٩٤، فاكس : ٢٢٨٣٦٧٨، هاتف:٢٢٢

Mob.: 050-6284563      Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com





Legal Translator/ Mahmoud Subhi Nassar

thereof.

c.      If acquires, possesses or uses such proceeds.

2.      A money laundering offence shall be deemed as an independent crime. The punishment of the person who has committed a predicate offence shall not prevent the penalty for money laundering crime.

3.      A conviction with a predicate offence shall not be deemed as a condition to prove the illicit source of the proceeds.

## Article (3)

Without prejudice to administrative penalties stated in the law, Financial Institutions and Other Financial, Commercial and Economic establishments operating in the State shall be criminally liable for the offence of Money Laundering if intentionally committed in their respective names or for their account.

## Article (13)

1.      Whoever commits or attempts to commit any of the acts set forth in Clause (1) of Article (2) herein, shall be punished by imprisonment for a term not exceeding ten years, or by a fine not less than AED (100.000) "one hundred thousand dirhams" and not more than AED (500.000) "five hundred thousand dirhams", or by either of both penalties.

2.      In case of terrorism financing, the penalties should be subject to Federal Law No. (7) of 2014 concerning Combating Terrorism Crimes.

3.      In case of a crime multiple perpetrators, the court may decide to exempt from the penalties, set forth in Clause (1) of this Article, the perpetrator who informs competent authorities of any information relating to such crime and the perpetrators thereof before detection of the same, provided that such information leads to the detection of the other perpetrators and the funds, subject of the crime.

## Article (14)

Any institution commits a crime of money laundering, terrorism or illegal organizations financing shall be punished by a fine not less than AED (300.000) "three hundred thousand dirhams" and not more than AED (1.000.000) "one million dirhams".

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. - م.ع.أ، يـبـد، ٧٧٩٤:ب.ص، ٢٢٨٣٦٧٨ : فاكس،٢٢، المربية لرةحسنولودال
Mob.: 050-6284563        Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com

19





Legal Translator/ Mahmood Subhi Nassar

### Article (15)

The chairmen, directors, managers and employees of the Financial Institutions or Other Financial, Commercial and Economic Establishments who are aware of any offence, occurred within the establishments thereof; relating to money laundering, terrorism and terrorist organizations financing, yet refrain from informing the Financial Intelligence Function, shall be punished by imprisonment and by a fine not less than AED (50.000) "fifty thousand dirhams" and not more than AED (300.000) "three hundred thousand dirhams", or by either of them.

### Article (18)

Whoever intentionally refrains from disclosing or providing further information upon request, or deliberately conceals information necessary to be disclosed, or submits false information, in violation to the provisions of Article (6) hereof, shall be punished by imprisonment and fine or by one of either penalties.



Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. م.ع.أ ، دبــي،٧٧٩٤ :ب.ص ، ٢٢٨٣٦٧ : فاكس ، ٢٢٢٢٧٢٢ / ٢٢٢١٥٥٧:هاتف
Mob.: 050-6284563   Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com   ٠٥٠-٦٢٨٤٥٦٣ : متحرك

**20**



**GOVERNMENT OF DUBAI**

مكتب النائب العام
ATTORNEY GENERAL OFFICE



النيابة العامة
PUBLIC PROSECUTION

التاريــــخ: 2018 / 06 / 07
رقم المرجـع: 2018 / 131 - 47

الموقــــر

سعـادة الأخ الفـاضــل / ضــرار علــي السـمحــوسـي
النائب العـام لدولـة الكـويت ..

السلام عليكم ورحمة الله وبركاته ،،،

يســعدني أن أرفــع إلــيكم أطيــب التحيـــات متمنيــاً لكــم دوام التوفيــق
وبمناسبة قرب عيد الفطر المبارك أتقدم إليكم بأرق التهاني والتبريكات .

وبالإشارة إلى كتابكم رقم : م ن ع / 370 س / 2018 المؤرخ 09 / 05 / 2018م
المرفق بـه طلب المسـاعدة القضـائية المقدم مـن النيابـة العامة بدولـة الكويت المقيد
برقـــم 127 لسنــــة 2018 نيابـــة شـــؤون التقيـــذ الجنـــائي والتعـــاون الدولـــي
أتشــرف بأن أرسـل إليكــم رد النيابـة العامة لإمارة دبي على الطلب المشار إليه .

وتفضلوا بقبول فائق الاحترام والتقدير ،،،



المستشار / عصــام عيسى الحميدان
النائـب العـام لإمـارة دبـي





**DUBAI**

رؤيتنـــا: سيـادة القـانــون بـأداء مـتـمـيـز عـالمـيـا
هـاتف: 4 3366001 971+ –فاكس: 4 3342184 971+ – ص.ب: 2383،دبـي –ا.ع.م
Tel. : +971 4 3366001 - Fox : +971 4 3342184 - P.O. Box 2383 Dubai - U.A.E.
www.dxbpp.gov.ae

**21**



**GOVERNMENT OF DUBAI**

مكتب النائب العام
ATTORNEY GENERAL OFFICE



النيابة العامة
PUBLIC PROSECUTION

مذكرة بشأن الرد على طلب المساعدة القضائية المقدم من النيابة العامة
بدولة الكويت المقيد برقم ١٢٧ لسنة ٢٠١٨

يتقدم النائب العام لإمارة دبي – دولة الإمارات العربية المتحدة المستشار / عصام عيسى الحميدان بأطيب التحيات إلى سعادة المستشار / ضرار علي العسعوسي النائب العام بدولة الكويت ويؤكد على علاقة الود والتعاون البناء لإرساء العدالة وإعلاء كلمة القانون من أجل البلدين الشقيقين .

وقد تلقت النيابة العامة بدبي طلب مساعدة قضائية من النيابة العامة بدولة الكويت عنون تحت اسم إنابة قضائية تطلب فيه بعض أوجه المساعدة المتعلقة بما تجريه النيابة العامة الكويتية من تحقيقات بشأن القضية رقم ١٤٩٦ لسنة ٢٠١٢ حصر أموال عامة المنضمة لها القضيتين رقمــي ٥٤٧ لسنـة ٢٠١٣ و ١٧١٩ لسنـة ٢٠١٤ حصـر أموال عامة للارتباط ، والمتهم فيها كلاً من :

١) سعيد إسماعيل علي دشتي – كويتي الجنسية .

٢) لازاريقا ماريا بتهمة الاستيلاء بغير حق على المال العام وتسهيل الاستيلاء عليه للغير والإضرار عمداً بالمال العام وغسل الأموال .

وقد تضمن الطلب بصفة أساسية :

١) اتخاذ الإجراءات اللازمة نحو تحويل مبلغ أربعمائة مليون دولار امريكي المودع في الحسابات المصرفية بدولة الإمارات العربية المتحدة إلى المؤسسة العامة للتأمينـات الاجتماعـية والمؤسسة العامـة للموانـئ بدولـة الكويت .

٢) الكشف عن أية حسابات بنكية أو أموال تسفر التحريات عن أنها مودعة في حسابات المتهمين سالفي الذكر أو شركاتها لدى البنوك بدولة الإمارات العربية المتحدة .

وقد استند طلب المساعدة إلـى أحكام اتفاقية تنفيذ الأحكام والإنابات والإعلانات القضائية بدول مجلس التعاون لدول الخليج العربية واتفاقية الأمم المتحدة لمكافحة الجريمة ......... كأساس قانوني لتنفيذ المساعدة .

**DUBAI**

رؤيتنـــا سيــادة القـانــون بـأداء مــــميـــز عــالمــيــــا

هاتف : ٣٣٦٦٠٠١ ٤ ٩٧١+ – فاكس : ٣٣٤٢١٨٤ ٤ ٩٧١+ – ص.ب : ٢٣٨٣ دبـــي – إ.ع.م
Tel. : +971 4 3366001 - Fax : +971 4 3342184 - P.O. Box 2383 Dubai - U.A.E
www.dxbpp.gov.ae





المميز الدولي للخدمة المتميزة
THE INTERNATIONAL
STANDARD FOR SERVICE





**GOVERNMENT OF DUBAI**

بمكتب النائب العام
ATTORNEY GENERAL OFFICE



النيابة العامة
PUBLIC PROSECUTION

وحيث أنه في سبيل اتخاذ الإجراءات المكنة نحو تنفيذ بنود المساعدة المطلوبة وبعد الاطـلاع على الأوراق المرسلـة رفق الطلب وعلى نصـوص الاتفاقيات ذات العـلاقة والقانـون الاتحادي رقم ٣٩ لسنة ٢٠٠٦ بشأن التعاون القضائي الدولي في المسائل الجنائية فإنه يتعين موافاتنا بالآتي :

١) حكم قضائي صادر من المحكمة المختصة بمصادرة أو حجز المبلغ المالي المطلوب تحويله.
٢) بيان صلة أو علاقة أو الارتباط بين القضايا المقيدة ضد المتهمين سعيد إسماعيل الدشتي ولازاريفا ماريا والمبلغ المطلوب تحويله إلى المؤسسة العامة للتأمينات الاجتماعية والمؤسسة العامة للموانئ بدولة الكويت .

في الختــــــام :

نعيـد التأكيد على حرصنا الدائم للتعاون القضائي المتبادل بين بلدينا الشقيقتين لاسيما في إطار مكافحة الجريمة بصفة عامة وعلى وجه الخصوص في إطار الجريمة العابـرة وجرائـم غسل الأموال ، نأمـل موافاتنا بالمطلوب في أقرب وقـت حتى يتسنـى لنا البـت في طلب المساعدة على النحو سالف البيان .



مستشار / عصـام عيسـى الحميـدان
النائـب العـام لإمـارة دبـي



**DUBAI**

رؤيتنـــا سيـادة القـانـون بـأداء مـمـيـز عـالمـيـا
هاتـف : ٣٣٦٦٠٠١ ٤ ٩٧١+ —فاكـس : ٣٣٤٢١٨٤ ٤ ٩٧١+ —ص.ب : ٢٣٨٣،دبـي — أ.ع.م
Tel. : +971 4 3366001 - Fax : +971 4 3342184 - P.O. Box 2383 Dubai - U.A.E
www.dxbpp.gov.ae

المعيار الدولي للخدمة المتميزة
THIS INTERNATIONAL
STANDARD FOR SERVICE





**23**

  

**Government of Dubai**

**Public Prosecution**

Attorney General Office

Date: 7/6/2018

Ref.: 47 – 131 / 2018

To:     The Honorable Dherar Al-Asousi
        The Attorney General of State of Kuwait

I would like to extend my best greetings, wishing you the best for a blessed Eid Al-Fitr.

Reference to your letter number ع ن م/370س/2018 dated 09/05/2018 with which a request is enclosed for judicial assistance by Kuwait's Public Prosecution on Case No. 127/2018 – Criminal Execution Affairs and International Cooperation, please find attached the response issued by Dubai's Public Prosecution to that request.

Best Regards;

Counselor Essam Essa Al Humaidan

Attorney General of Dubai

(signed & stamped)



Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. ع.م.أ.ـي،تبـي،VV٩٤:ـ.ن،.ص، ٢٢٨٣٦٧٨ : فاكس،٢٢٢٢٧٢٢ / ٢٢٢١٥٥٧:هاتف
Mob. 050-6284563          Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com          ٠٥٠-٦٢٨٤٥٦٣ : متحرك

**24**

  

## A Memo Regarding Reply to Judicial Assistance Request Number 127 of 2018 Submitted by Kuwait's Public Prosecution

Counselor Essam Essa Al Humaidan, the Attorney General of Dubai is pleased to extend his best regards to Counselor Dherar Al-Asousi, the Attorney General, Kuwait and would like to affirm the friendly relationship and constructive cooperation to establish and uphold law and justice between the two brotherly nations.

The Public Prosecution in Dubai received a judicial assistance request from the Public Prosecution in Kuwait titled Rogatory Judicial Request, requesting certain form of assistance regarding the investigations conducted by the Kuwaiti Public Prosecution in case no. 1496/2012 Public Funds Prosecutions, affiliated with cases 547/2013 and 1719/2014, in which the following defendants are charged:

1) Saeed Ismail Ali Dashti – Kuwaiti National
2) Lazareva Maria, of the embezzlement of public funds, facilitating the embezzlement of public funds to others, deliberately inflecting damages to the public funds and committing money laundering crimes.

The request mainly included the following:

1) Take the necessary action to transfer USD 400 million deposited at UAE bank accounts to PIFSS and KPA in Kuwait.
2) Declare any bank accounts revealed during investigations or monies deposited in the above mentioned defendants' bank accounts in the UAE or in the bank accounts belonging to their partners.

That request was submitted pursuant to the GCC Convention for the Execution of Judgments, Delegations and Judicial Notifications and the United Nations Convention against Transnational Organized Crime as basis for the request.

Tel. 2222722 / 2221557, Fax 22836/8, P.O Box 7794, Dubai  U.A.E   ع.م. أ.ي.د،VV٩٤:ص.ب، ٢٢٨٢٦٧،ساكف : ٢٢٢١٥٥٧ هاتف:
Mob. 050 6284563                Email mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com            ٠٥٠٦٢٨٤٥٦٣ : متحرك

**25**

  

In order to fulfill that request, after reviewing the documents enclosed with the request, and pursuant to the relevant convention and UAE Federal Law number 39 of 2006 regarding International Judicial Cooperation on Criminal Matters, please be advised that you are required to submit the following documents:

1) A court order issued by the competent court to confiscate or freeze the amount requested to be transferred.
2) Indicate the connection, relationship or association between the cases involving defendants Saeed Ismail Dashti and Lazareva Maria to the amount requested to be transferred to PIFSS and KPA in Kuwait.

### Therefore

We hereby stress our keenness on continually supporting the mutual judicial assistance between our nations, fighting crimes in general and transitional and money laundry crimes in particular. We hope to receive the above required documents at the earliest in order to be able to take a decision regarding that matter.

Best Regards;

Counselor Essam Essa Al Humaidan

Attorney General of Dubai

(signed & stamped)



Tel : 2222722 / 2221557, Fax : 2283878, P.O.Box : 7794, Dubai  U.A.E.  أ.ع.م، دبي، ٧٧٩٤: ص ب ، ٢٢٨٣٦٧ : فاكس ، ٢٢٢٢٧٢٢ / ٢٢٢١٥٥٧: هاتف
Mob  050 6284563     Email  mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com    ٠٥٠٦٢٨٤٥٦٣ : متحرك

**26**

The Prime Minister
State of Kuwait

الأخ الكريم صاحب السمو الشيخ محمد بن راشد آل مكتوم    حفظه الله
نائب رئيس الدولة رئيس مجلس الوزراء حاكم دبي
دولة الامارات العربية المتحدة الشقيقة

تحية طيبة وبعد،،،

أود في البداية أن أتقدم لسموكم بأطيب الامنيات لكم بالصحة والسعادة
ولشعب الامارات الشقيق بدوام التقدم والازدهار .
كما أود أن أعرب لكم عن بالغ الارتياح لتطور علاقاتنا الأخوية مع بلدكم
الشقيق ولمستوى التنسيق والتشاور بيننا ، وأشير هنا الى قضية الأموال المجمدة
لاحدى الشركات الكويتية و البالغة 496 مليون دولار (أربعمائة وستة
وتسعون مليوناً) لدى بنك نور الاسلامي والتي تم تحويلها منذ ما يزيد على
تسعة شهور ،وهي أموال ناتجة عن استثمار للشركة الكويتية ( KGL ) في
جمهورية الفلبين في إطار صندوق ساهم فيه عدد من الشركاء المستثمرين
منهم مؤسسة المواني الكويتية ومؤسسة التأمينات الاجتماعية وآخرون من
القطاع الخاص، وقد تم تسييل قيمة هذا الاستثمار بناء على طلب الشركاء وقام
المسؤولون عن إدارة الصندوق بتحويل مبلغ الاستثمار الناتج عن ذلك
التسييل الى بنك نور الاسلامي في دبي، وذلك عن طريق ستي بنك في
الولايات المتحدة ، الذي قام بدوره بتحويل المبلغ الى بنك نور الاسلامي بناء
على طلب ممثولي الصندوق .

27

State of Kuwait

وقــد أبلغــت الســلطات القضــائية الإماراتيــة النائــب العــام فــى دولــة الكويــت بوجـود المبلـغ لــدى بنـك نـور الإسـلامى ، حيـث طلـب النائـب العـام الكـويتى فـى حينـه مــن الســلطات القضــائية الإماراتيـة عـدم السـماح بتحويـل هـذا المبلـغ لأيـة جهـة خـارج دولـة الكويـت ، وذلـك لـتمكين المسـتثمرين مــن الحصــول علــى أمـواهم وخـلال التسـعة شـهور الـتى اسـتغرقها إبـداع المبلـغ كانـت هنالـك مراسـلات بـين السـلطات القضـائية الإماراتيـة والنائـب العـام الكـويتى تضـمنت استفسـارات تم الإجابـة عليهـا مـن الجانـب الكـويتى ، وكـان مـن ضـمنها إفـادة مـن النائـب العـام الامـاراتى تشــير إلـى أن تحريـاتهم أسـفرت عـن نظافـة هـذه الأمـوال وبعـدها تواصـلت مطالبـات النائـب العـام الكـويتى مـن الســلطات القضــائية الإماراتيــة بـالإفراج عــن الأمـوال وتحويلــها الـى دولــة الكويـت ، الا ان هــذه المطالبات لم تصل الى نتيجة .

ونظـرا الى أن هـذه الأمـوال تخـص جهـات حكوميـة وباعتبارهـا أمـوالاً عامـة وتخـص أيضـا مسـتثمرين مــن القطـاع الخـاص ، ونظـرا لمـا يتسـبب فيـه اسـتمرار تجميـد هـذه الأمـوال مـن أضـرار بالغـة بمؤسسـات حكوميـة ومسـتثمرين آخـرين ، فإننـا نرجـو مـن سموكم توجيـه الجهـات المعنيـة لـديكم بسرعة الإفراج عن الأموال .

وتقبلوا سموكم خالص الود والتقدير ،،،

جابر ال.... الأحمد الصباح

رئيس .... الوزراء

دولة الكويت

الكويت في : 08 محرم 1440 هـ
الموافـــــق : 18 سبتمبر 2018 م





**The Prime Minister**
State of Kuwait

His Highness Sheikh Mohammed Bin Rashid Al-Maktoum, may Allah protect him
The Vice President and the Prime Minister of the State and Ruler of Dubai
State of United Arab Emirates

*Dear Sir,*

First of all, I would like to extend to your Highness the best wishes of health and happiness and for the brotherly people of the UAE for continuous progress and prosperity.

I would also like to express our deep satisfaction with the development of our fraternal relations with your brotherly country and the coordination and consultation between us, and I refer here to the issue of the frozen funds for one of the Kuwaiti companies amounting to 496 million US dollars (four hundred and ninety-six million) with Noor Islamic Bank that was transferred for more than nine months ago. These funds constitute the return on investment by Kuwait's (KGL) Company in the Republic of the Philippines in a Fund, where a number of investors, including the Kuwait Port Authority, the Public Institution for Social Security and other private players had shares. The value of this investment was liquidated at the request of the investors, and the officials in charge of the Fund transferred the investment amount resulting from the liquidation to Noor Islamic Bank in Dubai through Citibank in the United States, which in turn transferred the amount to Noor Islamic Bank at the request of the officials in charge of the Fund.

The judicial authorities in the UAE have informed the Attorney General of Kuwait that the amount is available at Noor Islamic Bank, and the Kuwaiti Attorney General requested at that time from the UAE judicial authorities not to allow the transfer of this amount to any entity outside the State of Kuwait in order to enable investors to receive their money. During the nine months and while the amount was deposited, there was correspondence between the judicial authorities in the UAE and the Kuwaiti Attorney General, which contained inquiries that were answered by the Kuwaiti side, including a statement by the Attorney General of the UAE indicating that their investigations resulted that the funds are free from any illegitimate activities, and after that, the Kuwaiti Attorney General continuously requested from the UAE judicial authorities to release the funds and to transfer them to State of Kuwait, but these requests were not answered.

Since these funds belong to government entities and are considered public funds and as well belong to private investors, and since the continuous freezing of these funds is very damaging

Tel. 2222722 / 2221557, Fax. 2283678, P.O.Box : 7794, Dubai - U.A.E. ع.م. أ. دبي، VV٩٤: ص.ب، ٢٢٨٣٦٧٨ ،٢٢٢... ه
Mob. 050-6284563     Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com

**29**





Legal Translator/ Mahmood Subhi Nassar

to government entities and other investors, we ask your highness to direct your entities in-charge to release the funds quickly.

With our sincere appreciation to your highness,

Your Brother
Jaber Al-Mubarak Al-Hamad Al-Sabah
The Prime Minister
State of Kuwait
(Signature)

Kuwait, on 8 Muharram 1440 Hijri
Date: 18 September 2018



Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. ‏.ع.م.، دبي، ص.ب : ۷۷۹٤، ۲۲۸۳٦۷۸ : فاكس‎
Mob.: 050 6284563          Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com

**30**

**STATE OF KUWAIT**

**PUBLIC PROSECUTION**

**The Attorney General Office**



دولـــة الكويــت

النيابـــة العـــامـــة

إدارة مكتب النـائب العام

الكويت في : ١٦/ ١٠ / ٢٠١٨ ؟

الملف  قم :

الرقم : ٢/ ١/ ٨١٠/ ٢م/ ٠١٨٠

الموقر

سعادة الأخ الفاضل / عصام عيسى الحميدان

النائب العام لإمارة دبي – بدولة الامارات العربية المتحدة

تحية طيبة مباركة وبعد ،،،

يطيب لي أن أرفع إليكم أسمى آيات التقدير والاعتزاز ، مع تأكيد حرصنا الدائم على توطيد أواصر التعاون المثمر في خدمة صرح العدالـة وإعلاء كلمة القانون في بلدينا الشقيقين .

وأنتهز هذه الفرصة لتوجيه الشكر الجزيل لشخصكم الكريم وللسادة الأفاضل أعضاء النيابة العامة بإمارة دبي الشقيقة ، لما نلقاه دائماً من تعاون مثمر وجهد مشكور واهتمام بالغ في سبيل تقديم يد العون للسلطات القضائية الكويتية بشكل عام والنيابة العامة بشكل خاص في شتى مناحي التعاون القضائي .

وفي إطار المكاتبات التي تمت بيننا والجهود التي بذلتموها بشأن طلب المساعدة القضائية المقدم من النيابة العامة بدولة الكويت رقم ١٢٧ لسنة ٢٠١٨ نيابة شــئون التنفيــذ الجنــائي والتعــاون الــدولي ، بشــأن مبلــغ (٤٩٦,٤٢٩,٧٦٧ دولار أمريكي) أربعمائـة وستة وتسـعون مليـون وأربعمائـة وتسعة وعشرون ألف وسبعمائة وسبعة وستون دولار أمريكي المتحفظ عليه والمودع بنك نور الإسلامي بدبي ، والعائد عن استثمار الشركة الكويتية (KGL) في الصندوق الإستثماري (PORT LINK G P) بجمهورية الفلبين الذي ساهمت فيه كلاً من مؤسسة الموانئ الكويتية ومؤسسة التأمينات الاجتماعية الكويتية وآخرين مواطنين كويتين من القطاع الخاص وغيرهم .

g@moj.gov.kw ايميل الإدارة : www.pp.moj.gov.kw الموقع الالكتروني   Fax : +965 - 22437659   Tel. : +965 - 22463233

**STATE OF KUWAIT**
**PUBLIC PROSECUTION**
The Attorney General Office



دولـــة الكويـــت
النيـابـــة العـــامـــة
إدارة مكتب النـائب العام

الكويت في :
الموافــــق :

الرقم :

نأمـل معـاونتكم البنـاءة وإصدار توجيهـاتكم الكريمـة نحـو رفـع التحفظ عـن
المبلغ المشار إليه وتحويل مبلغ (١٢٥.٠٠٠.٠٠٠ دولار أمريكي) مائـة وخمسة
وعشـــرون مليــون دولار أمريكــي إلـــى حســـاب مؤسســة المـوانئ الكويتيـــة
ومبلغ (٧٩.٢٠٠.٠٠٠ دولار أمريكي) تسعة وسبعون مليون ومائتي ألف دولار
أمريكي إلى حساب مؤسسة التأمينات الإجتماعية لدى البنوك الكويتية .

كمــا نأمــل أيضـاً تحويـل الأمـوال لحسـاب بـورت لينـك جـي بـي
(PORT LINK G P) لدى بنك دبي الإسلامي ، شريطة أن يتم توزيعه على
الجهات الحكومية الكويتية المذكورة أعلاه والأطراف المستحقة من المساهمين .

وإذ نشكر لكم مقدماً حسن تعاونكم الكريم .

تتضلوا بقبول وافر تحياتنا،،،

النائب العام
ضرار علي الأسعوسي





Tel. : +965 - 22463233   Fax : +965 - 22437659   الموقع الالكتروني www.pp.moj.gov.kw   ايميل الإدارة moj.gov.kw@;







ALDIYAR
LEGAL TRANSLATION
Legal Translator/ Mahmood Subhi Nassar

**State of Kuwait**
**Public Prosecution**
**The Attorney General Office**
**Kuwait: 16 October 2018**
**Reference: س810/م ن ع/2018**

The Honorable Essam Eisa Al-Humaidan,
Attorney General of the Emirate of Dubai - United Arab Emirates

### *Dear Sir,*

It is my pleasure to extend to you our highest esteem and pride, while reaffirming our constant commitment to establish fruitful cooperation in the service of the justice and the establishment of the rule of law in our both countries.

I would like to take this opportunity to extend my sincere thanks to your honorable person and to the distinguished members of the Public Prosecution in the Emirate of Dubai, for the continuous and fruitful cooperation, effort and great interest in helping the Kuwaiti judicial authorities in general and the Public Prosecution in particular across various aspects of judicial cooperation.

This is to refer to the correspondence between us and your efforts exerted for the Request of Legal Assistance No. 127 of 2018 – Prosecution of Criminal Enforcement and International Cooperation Affairs by Kuwait's Public Prosecution regarding the amount of (USD 496,439,767) Four Hundred Ninety Six Million and Four Hundred Thirty Nine Thousand and Seven Hundred Sixty seven US Dollar held and deposited with Noor Islamic Bank in Dubai, being the return of the investment of Kuwait's (KGL) in the Investment Fund (Port Link GP) in the Republic of the Philippines, in which both Kuwait Port Authority and Public Institution for Social Affairs, other Kuwaiti private persons and others have shares.

We hope for your constructive cooperation to instruct to remove the freezing ordered on the previously mentioned amount and transfer the amount of (USD 125,000,000) Hundred Twenty Five Million US Dollar to the account of the Kuwait Port Authority and (USD 79,200,000) Seventy Nine Million and Two Hundred Thousand to the account of the Public Institution for Social Security with Kuwaiti Banks.

We also hope to transfer the funds to the account of Port Link GP (Port Link GP) with Dubai Islamic Bank, provided that such funds be distributed among the Kuwaiti government entities mentioned above and eligible shareholders.

Tel   2222722 / 2221557, Fax  2283678, P.O.Box  7794, Dubai - U.A.E  ع.م.أ،يبي،دبي،VV٩٤ب.ص.ص، ٢٢٨٣٦٧٨ : سكاف
Mob  050 6384563                     Email  mahmoudsubhin@hotmail.com / diyar.translation@hotmail.com

**33**

  

We thank you in advance for your kind cooperation,

Best regards,

Attorney general
Dherar Ali Al-Asousi
(Signature)
(Stamp - Ministry of Justice General Prosecution Department of the Office of Attorney General)

**34**

Mohammed Bin Rashid Al Maktoum

Vice President & Prime Minister of U.A.E, Ruler of Dubai

United Arab Emirates





التاريخ: 03 نوفمبر 2018

الأخ الكريم سمو الشيخ جابر المبارك الحمد الصباح    حفظه الله

رئيس مجلس الوزراء لدولة الكويت الشقيقة

السلام عليكم ورحمة الله وبركاته ...

يسعدني أن أعبر لسموكم عن صادق المودة وأطيب الأمنيات لشخصكم الكريم بموفور الصحة
والسعادة، كما أرجى إلى دولة الكويت الشقيقة ولشعبها الأبي الكريم كل التحية وأخلص الأمنيات بدوام
الرفاهية والتقدم.

ولقد تلقيت بوافر السرور رسالتكم الكريمة المؤرخة 18 سبتمبر 2018 بشأن الأموال المجمدة لإحدى
الشركات، والتي كانت موضوعاً لتشاور مستمر بين السلطتين القضائيتين في بلدينا، والذي اتسم بكل
معاني التعاون والرغبة المشتركة للوصول إلى إقامة العدالة وحصول كل ذي حق على حقه، وكل ذلك
إنما يعبر ويؤكد على التعاون البناء في كافة المجالات بين بلدينا الشقيقين.

وإنني لعلى ثقة كاملة بأن الجهود المشتركة بين النيابة العامة في دولة الكويت، والنيابة العامة في
امارة دبي لابد وأن تثمر عن حلول عادلة لهذه القضية وإعمال مقتضى القانون وبما يرفع الأضرار
عن أصحاب الحقوق.

إنتهز هذه الفرصة لكي أؤكد لسموكم عن حرصنا التام على مزيد من التعاون بين بلدينا في كافة
مجالات بما يعود على شعبينا الشقيقين بكل الخير والازدهار.



محمد بن راشد آل مكتوم

**35**

  

Legal Translator/ Mahmood Subhi Nassar

Mohammed Bin Rashid Al Maktoum
Vice President & Prime Minister of UAE, Ruler of Dubai
United Arab Emirates

Date: 03 November 2018

**His Highness Shaikh Jaber Al-Mubarak Al-Hamad Al Sabah**
The Prime Minister of the State of Kuwait

Peace, mercy and blessings of God ,,,

I am pleased to express to your Highness the most sincere and best wishes to your
honorable person for the health and happiness. I also convey to the brotherly State of
Kuwait and to its noble people all greetings and best wishes for their well-being and
progress.

I have gladly received your kind letter dated September 18, 2018 regarding the frozen
funds for one of the companies, which was the subject of continuous consultation between
the two judicial authorities in our countries. Such consultation was characterized by all the
meanings of cooperation and common desire to establish justice and the right of every
person for his right, and all this reflects and emphasizes constructive cooperation in all
areas between our two brotherly countries.

I am fully confident that the joint efforts of the Kuwait's Public Prosecution and Dubai's
Public Prosecution should yield fair solutions of this case to enforce the law in such a way
to prevent stakeholders from being harmed.

I would like to take this opportunity to assure your Highness that we are fully committed to
further cooperation between our both countries in all areas for the benefit of our both
brotherly peoples to achieve goodness and prosperity.

Mohammed Bin Rahsid Al Maktoum
[Signed]



Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai : U.A.E. ‫ .م.ع.أ‬:‫دبي‬,VV٩٤:‫ص.ب‬,٢٢٨٣٦٧٨ : ‫فاكس‬,٢٢٢٢٧٢٢ / ٢٢٢١٥٥٧:‫هاتف‬
Mob : 050 6284563      Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com      ٠٥٠ ٦٢٨٤٥٦٣ : ‫متحرك‬

**36**

**STATE OF KUWAIT**

**PUBLIC PROSECUTION**

**The Attorney General Office**



دولــــة الـكـويــــت

النـيـابــــة الـعـــامـــة

إدارة مكتب النـائب العام

الكويت في : ١٢:١٨/١١/١٨ م

الموافــــق : ــــــــــــــ

الرقم : ١٦٢/ع س/٢٠١٨

سعادة الأخ الفاضل المستشار / عصام عيسى الحميدان          الموقر

النائب العام لإمارة دبي – بدولة الأمارات العربية المتحدة

تحية طيبة مباركة وبعد ،،،

يطيب لي أن أرفع إليكم أسمى آيات التقدير والاعتزاز ، مع تأكيد حرصنا الدائم على توطيد أواصر التعاون المثمر في خدمة صرح العدالة وإعلاء كلمة القانون في بلدينا الشقيقين .

وأنتهز هذه الفرصة لتوجيه الشكر الجزيل لشخصكم الكريم وللسادة الأفاضل أعضاء النيابة العامة بإمارة دبي الشقيقة ، لما نلقاه من تعاون مثمر وجهد مشكور واهتمام بالغ في سبيل تقديم يد العون للسلطات القضائية الكويتية بشكل عام والنيابة العامة بشكل خاص في شتى مناحي التعاون القضائي .

وبالإشـارة إلـى كتـابكم رقـم ٤٧-٢٢٥-٢٠١٨ بتـاريخ ٢٠١٨/١٠/٢٢ والمراسلات التي تمت بيننا وبينكم والجهود التي بذلتموها بشأن طلب المساعدة القضائية المقدمة من النيابة العامة بدولة الكويت رقم ١٢٧ لسنة ٢٠١٨ نيابة شئون التنفيذ الجنائي والتعاون الدولي ، بشأن المبلغ المودع في حساب شركة (بورت لينك–جي بي–ال تي دي PORT LINK GP LTD) لدى بنك نور الإسلامي بدبي والبالغ قدره (٤٩٦.٤٢٩.٧٦٧ دولار أمريكـي) أربعمائـة وستة وتسعون مليـون وأربعمائـة وتسعة وعشرون ألـف وسـبعمائة وسبعة وستون دولار أمريكي .

37

**STATE OF KUWAIT**

**PUBLIC PROSECUTION**

**The Attorney General Office**



دولـــــة الكـويـــــت

النـيــابـــة العــامـــة

إدارة مكتب النائب العام

الرقم : ــــــــــــــــــــ

الكويت في : ــــ ـــــ
الموافـــــق : ـــــــــ

نأمـــل بإفادتنــا عمـــا إذا كـــان المبلـــغ البــالغ قـــدره (٤٩٦,٤٢٩,٧٦٧
دولار أمريكـــي) أربعمائـــة وســـتّة وتسعون مليــون وأربعمائـــة وتســـعة وعشـــرون
ألــف وسـبعمائة وسـبعة وسـتون دولار أمريكــي ، مـــازال متحفظـاً عليــه مـن
عدمــه والجهـــة التـــي أمـرت بــالتحفظ ، ونتمنـــى علــيكم المســـاعدة فـــي رفـــع
الــتحفظ عـن هـذا المبلـغ والمـودع لـدى بنـك نـور يـدبى فـي حسـاب شــركة
(بـورت لينـك –جـي بـي –ال تـي دي PORT   LINK GP   LTD) وتمكـين
الشـركة صـاحبة الحسـاب مـن تحويـل وتوزيـع المبلـغ المـذكور إلـى الجهـات
الحكوميـــة الكويتيـــة (مؤسســـة التأمينـــات الاجتماعيـــة الكويتيـــة ومؤسســـة
الموانئ الكويتيّة ، والأطراف الأخرى المستحقة من المساهمين) .

شاكرين لكم جهودكم واهتمامكم ،،،

وتفضلوا بقبول وافر تحياتنا ،،،



النائب العام

ضرار علي المسعوسي

ag@moj.gov.kw الإدارة ايميل www.pp.moj.gov.kw الموقع الالكتروني   Fax : +965 - 22437659   Tel. : +965-22482275

  

**State of Kuwait**
**Public Prosecution**
**The Attorney General Office**
**Kuwait: 30 December 2018**
**Reference: س/م ن ع1063/2018**

The Honorable, Essam Eisa Al-Humaidan,
Attorney General of the Emirate of Dubai - United Arab Emirates

*Dear Sir,*

It is my pleasure to extend to you our highest esteem and pride, while reaffirming our constant commitment to establish fruitful cooperation in the service of the justice and the establishment of the rule of law in our both countries.

I would like to take this opportunity to extend my sincere thanks to your honorable person and to the distinguished members of the Public Prosecution in the Emirate of Dubai, for the continuous and fruitful cooperation, effort and great interest in helping the Kuwaiti judicial authorities in general and the Public Prosecution in particular across various aspects of judicial cooperation.

This is to refer to your Letter Ref. 47-225-2018 dated 22 October 2018 and the correspondence between us and you, and your efforts exerted to the Request of Legal Assistance No. 127 of 2018 - Prosecution of Criminal Enforcement and International Cooperation Affairs by Kuwait's Public Prosecution regarding the money deposited at the company's account (Port Link-GP-LTD Port Link GP LTD) with Noor Islamic Bank which amounts to (USD 496,429,767) Four Hundred Ninety Six Million and Four Hundred Twenty Nine Thousand and Seven Hundred Sixty seven US Dollar.

We humbly request to be advised whether the amount of (USD 496,429,767) Four Hundred Ninety Six Million and Four Hundred Twenty Nine Thousand and Seven Hundred Sixty Seven USD Dollar is still frozen or not, and about the entity who ordered such freezing. Further, we seek your help to remove the freezing on this amount which is deposited with Noor Bank at the account of Port Link- GP-LTD Port Link GP LTD) and enable the account holder company to transfer the mentioned amount to the Kuwaiti government entities (Kuwait's Public Institution for Social Security and Kuwait Port Authority and to other eligible shareholders).

Tel : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E.  ص.ب : ٧٧٩٤، دبي - إ.ع.م
Mob : 050-6284563     Email mahmoudsubhin@hotmail.com / diyar.translation@hotmail.com

هاتف : ، فاكس : ٢٢٨٣٦٧٨
متحرك : ٠٥٠ ٦٢٨٤٥٦٣

39

  

Legal Translator/ Mahmood Subhi Nassar

Thank you for your efforts and interest,,,


Best regards,
Attorney general
Dherar Ali Al-Asousi
(Signature)
(Stamped - Ministry of Justice, General Prosecution, Department of the Office of Attorney General)



Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box . 7794, Dubai - U.A.E. هاتف: ٢٢٢١٥٥٧ / ٢٢٢٢٧٢٢، فاكس : ٢٢٨٣٦٧٨، ص.ب:٧٧٩٤، دبي - أ.ع.م.
Mob. 050-8284963          Email  mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com          متحرك: ٦٢٨٤٩٦٣-٠٥٠

高





النيابة العامة
PUBLIC PROSECUTION

GOVERNMENT OF DUBAI

التاريـــــخ ، 2019 / 01 / 13
رقم المرجـــع : 2018 / 05 - 47

سعـادة الأخ المستشــــار الفاضـــل / ضـــرار علــى العسعـــوسـى          الموقــــر
النائب العام لدولة الكويت ..

السلام عليكم ورحمة الله وبركاته ،،،

يسعدنــى أن أرفــع لمقامكم الكريم أطيـب التحيــات وأشيد بالتعـاون الـدائم القـائم
بيننا متمنياً لكم دوام التوفيق والنجـاح ، وإننا إذ نعرب لكم عن عميق اعتزازنا بالعلاقـات
الأخوية البناءة بين بلدينا راجين من المولى العلي القدير أن يحقق لكم وللزملاء الأشقاء كل الخير
ودوام الرفعـة ، وعطفـاً علـى كتـاب سعادتكم مرجع رقـم م ن ع / 1063 س / 2018 المـؤرخ
فى 20 / 12 / 2018م .

نود الإحاطة بأن النيابة العامة بدبى بتاريخ 21 / 11 / 2017م قررت التحفظ على المبلـغ
المودع فى حساب شركة ( بورت لينك – جى بى – ال تى دى PORT LINK GP LTD ) لدى
بنك نور الإسلامي بدبى والبالغ قدره ( 496.429.767 دولار أمريكى ) أربعمائة وستة وتسعون
مليون وأربعمائة وتسعة وعشرون ألف وسبعمائة وسبعة وستون دولار أمريكى بموجب تقرير
المعاملة المشبوهة وملف غسل الأموال رقم ( 4 / 2017 ) ، كما تم الإشارة إليه بموجب كتابنا
لسعادتكم رقم : م ف د / 52 / 7 / 2018 – 2 / 17657 المؤرخ فى 22 / 03 / 2018م وتم حالياً
دراسة الملف المشار إليه وتقرير اللجنة المختصة لاتخاذ قرار رفع الحجز خلال أسبوعين من تاريخه .
شاكرين ومقدرين تعاونكم الدائم معنا .

ونفضلوا بقبول وافر الاحترام وعظيم التقدير ،،،



المستشار / عصــام عيسـى الحميدان
النائب العـام لإمـارة دبـى

وبتنـــا سيــادة القـانــون بـأداء متميـز عـالمـي

هاتف : 4336600١ 4971+ – فاكس : 3342184 4971+ – ص.ب : 2383 دبـى – ا.ع.م
Tel. : +971 4 3366001 - Fox : +971 4 3342184 - P.O. Box 2383 Dubai - U.A.E.
www.dxbpp.gov.ae

  

ALDIYAR
LEGAL TRANSLATION
Legal Translator/ Mahmood Subhi Nassar

**Public Prosecution**                                    **Government of Dubai**

Attorney General Office

Date: 13 January 2019
Ref: 47 – 05 / 2018

**The Honorable Dherar Ali Al-Asousi,**
Attorney General of the State of Kuwait

*Peace, mercy and blessings of God ,,,*

I am pleased to extend to you my best regards and to command the ongoing cooperation between us and to wish you success, and we express to you our profound pride in the constructive brotherly relations between our both countries, hoping that the Almighty may achieve for you and your fellow brothers all the good and the fullness of prosperity.

With reference to Your Excellency's letter Reference Number ع ن م / 1063 س/ 2018 dated 30 December 2018, kindly be informed that on 21 November 2017 Dubai Public Prosecution decided to freeze the amount deposited at the account of the company (Port Link - G P – L T D PORT LINK GP LTD) with Noor Islamic Bank in Dubai, which amounts to USD 496,429,767 (Four Hundred and Ninety Six Million and Four Hundred Twenty Nine Thousand and Seven Hundred Sixty Seven American Dollar) in accordance with the Suspicious Transaction Report and Money Laundry File No. (4/2017), as referred to it in our letter to Your Excellency Reference Number: M F D / 52 / 7 / 2018 - 2 / 1765 dated 22 March 2018. Currently, we are studying the File referred to and the competent committee report to take the decision to remove the freezing within two weeks from the date of this letter.

We thank you and appreciate your continuous cooperation,

Best regards,

**Essam Eisa Al-Humaidan,**
**Attorney General of the Emirate of Dubai**
**(Signature and Date)**
**(Stamp of Attorney General Office - Public Prosecution – Dubai)**

Tel   2222722 / 2221557, Fax   2283678, P.O.Box : 7794, Dubai - U.A.E   م.ع.أ ،دبي، VV٤٤:ب.ص، ٢٢٨٣٦٧V :ت، Mob   050-6284563           Email   mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com

**42**

**The Port Fund Limited Partnership**
**Cayman Island**

**Financial statements and independent auditor's report**
**For the period from 21 March 2007 to 31 December 2008**

## MOORE STEPHENS
PUBLIC ACCOUNTANTS

AL NISF & PARTNERS

Al Jawhara Tower, 6th Floor
Khaled Ben Al-Waleed Street, Sharq
P.O. Box: 25578, Safat 13116, Kuwait

Tel : 965 2426 999
Fax : 965 2401 666

## INDEPENDENT AUDITOR'S REPORT TO THE LIMITED PARTNERS' OF THE PORT FUND LIMITED PARTNERSHIP

### Report on the financial statements

We have audited the accompanying financial statements of The Port Fund Limited Partnership ("the fund") which comprise the balance sheet as at 31 December 2008, and the related statements of income, changes in equity and cash flows for the period from 21 March 2007 to 31 December 2008, and a summary of significant accounting policies and other explanatory notes.

### Management's responsibility for the consolidated financial statements

The fund's management is responsible for the preparation and fair presentation of these financial statements in accordance with International Financial Reporting Standards. This responsibility includes: designing, implementing and maintaining internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error; selecting and applying appropriate accounting policies; and making accounting estimates that are reasonable in the circumstances.

### Auditor's responsibility

Our responsibility is to express an opinion on these financial statements based on our audit. We conducted our audit in accordance with International Standards on Auditing. Those standards require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the fund's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the fund's internal control. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### Opinion

In our opinion, the financial statements present fairly, in all material respects, the financial position of the fund as at 31 December 2008, and of its financial performance and its cash flows for the period then ended in accordance with International Financial Reporting Standards.

**Qais M. Al-Nisf**
License No. 38-A
Moore Stephens Al Nisf & Partners Member of
Moore Stephens International

Date: 27 April 2009

1

A member firm of
Moore Stephens International Limited

# The Port Fund Limited Partnership
# Cayman Island

**Financial statements and independent auditor's report**

*For the period from 21 March 2007 to 31 December 2008*

| Contents | Page |
|---|---|

| | |
|---|---|
| Independent auditor's report | 1 |
| Balance sheet | 2 |
| Statement of income | 3 |
| Statement of changes in equity | 4 |
| Statement of cash flows | 5 |
| Notes to the financial statements | 6 - 14 |

**The Port Fund Limited Partnership**
**Cayman Islands**

**Balance sheet**

As at 31 December 2008

|  | Notes | 2008 US$ |
|---|---|---|
| **Assets** | | |
| Cash and cash equivalents | 3 | 21,083,673 |
| Financial assets at fair value through statement of income | 4 | 72,559,455 |
| Loans and receivables | 5 | 20,000,000 |
| Accrued interest | 6 | 7,774,896 |
| Due from related party | 7 | 6,980,812 |
| **Total assets** | | 128,398,836 |
| | | |
| **Liabilities** | | |
| Accrued expenses | | 165,009 |
| Due to investment manager | 7 | 7,076,366 |
| **Total liabilities** | | 7,241,375 |
| **Net assets** | | 121,157,461 |
| | | |
| **Represented by:** | | |
| Fund capital | 10 | 92,852,000 |
| Retained earnings | | 28,305,461 |
| **Total equity** | | 121,157,461 |

Investment Manager

The accompanying notes form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

## Statement of income

For the period from 21 March 2007 to 31 December 2008

| | Notes | For the period from 21 March 2007 to 31 December 2008 US$ |
|---|---|---|
| **Income** | | |
| Unrealised gain on financial assets at fair value through statement of income | 4 | 34,304,524 |
| Interest income | | 8,007,777 |
| Foreign exchange gain | | 19,719 |
| **Total income** | | 42,332,020 |
| | | |
| **Expenses** | | |
| Management fees | 7 | (2,721,963) |
| General and administrative expenses | 8 | (4,228,230) |
| **Total expenses** | | (6,950,193) |
| **Profit for the period** | | 35,381,827 |
| | | |
| **Profit for the period:** | | |
| Attributable to investment manager * | | 7,076,366 |
| Attributable to limited partners | | 28,305,461 |
| | | 35,381,827 |

\* The profit allocation to the Investment Manager is as per S 4.2c of the Limited Partnership Agreement.

The accompanying notes form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

## Statement of changes in equity

For the period from 21 March 2007 to 31 December 2008

| | Fund capital US$ | Retained earnings US$ | Total equity US$ |
|---|---|---|---|
| Capital contribution by limited partners | 92,852,000 | - | 92,852,000 |
| Profit for the period attributable to limited partners | - | 28,305,461 | 28,305,461 |
| **Balance at 31 December 2008** | 92,852,000 | 28,305,461 | 121,157,461 |

The accompanying notes form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of cash flows**

For the period from 21 March 2007 to 31 December 2008

| | Note | From 21 March 2007 to 31 December 2008 US$ |
|---|---|---|
| **OPERATING ACTIVITIES** | | |
| Profit for the period | | 35,381,827 |
| Adjustments for; | | |
| Interest income on deposits | | (443,941) |
| Non cash interest income on loan | | (7,563,836) |
| Unrealised foreign exchange gain | | (19,719) |
| Unrealised gain on financial assets at fair value through statement of income | | (34,304,524) |
| Loss before changes in operating assets and liabilities | | (6,950,193) |
| Increase in receivables | | 4,972,281 |
| Increase in payables | | (5,002,544) |
| Net cash used in operating activities | | (6,980,456) |
| **INVESTING ACTIVITIES** | | |
| Purchase of financial assets at fair value through statement of income | | (33,067,659) |
| Loan | | (20,000,000) |
| Interest received | | 443,941 |
| Net cash generated by investing activities | | (52,623,718) |
| **FINANCING ACTIVITIES** | | |
| Capital contributions received | | 80,687,847 |
| Net cash from financing activities | | 80,687,847 |
| Net increase in cash and cash equivalents | | 21,083,673 |
| Cash and cash equivalents at end of the period | 3 | 21,083,673 |

The accompanying notes form an integral part of these financial statements.

5

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the period from 21 March 2007 to 31 December 2008

1.    **INCORPORATION AND ACTIVITIES**

The Port Fund Limited Partnership, ("the Partnership") was established on 21 March 2007 and is registered as an exempt limited partnership in the Cayman Islands under the exempted Law (2003 Revision) of the Cayman Islands. The first closing acceptance of committed contributions was on 15 July 2007 and the final closing is expected to be twelve months after the initial close.

The partnership will offer select sophisticated investors the opportunity to participate in the growth and consolidation of the port management industry and related sectors through selected private equity investments in high potential companies on a world wide basis.

The Port Link ("General Partner") has appointed KGL Investment Cayman Limited ("Investment Manager") who is responsible for the preparation of the financial statements for each financial period in accordance with the Limited Liability Partnership Agreement.

The Partnership will be terminated on 31 December 2012, but this may be extended by the General Partner for a period of consecutive periods of one year not exceeding two years in the aggregate, to permit the General Partner to dispose of existing investments in accordance the Limited Partnership Agreement.

The financial statements of the Partnership for the period ended 31 December 2008 were authorized for issue by the General partners on 27 April 2009.

2.    **SIGNIFICANT ACCOUNTING POLICIES**

**Statement of compliance**

The financial statements have been prepared in accordance with the International Financial Reporting Standards (IFRS).

**Basis of preparation**

The financial statements are prepared on the historical cost basis except for measurement at fair value of financial assets at fair value through statement of income.

The financial statements have been presented in United States Dollar (US$) which is the functional currency of the Partnership.

The preparation of financial statements in conformity with International Financial Reporting Standards (IFRS) requires management to make judgements, estimates and assumptions that may affect the amounts reported in these financial statements. The estimates and underlying assumptions are reviewed on an ongoing basis. Revisions to accounting estimates are recognised in the period in which the estimate is revised if the revision affects only that period or in the period of the revision and future periods if the revision affects both current and future periods.

The Partnership has adopted the following new applicable or amended IFRS during the year:

The Partnership has adopted IFRS 7 "Financial Instruments: Disclosure" which is effective for annual reporting periods beginning on or after 1 January 2007, and the consequential amendments to IAS 1 "Presentation of Financial Statements".

6

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the period from 21 March 2007 to 31 December 2008

## 2.    SIGNIFICANT ACCOUNTING POLICIES (CONTINUED)

### Basis of preparation (Continued)

The impact of the adoption of IFRS 7 and the changes to IAS 1 has been to expand the disclosures provided in these financial statements regarding the Partnership's financial instruments and management of capital.

### IASB Standard issued but not adopted

The following International Accounting Standard Board (IASB) and International Financial Reporting Interpretation Committee (IFRIC) has been issued but is not yet effective and has not been adopted by the Partnership:

IAS 1: Presentation of Financial Statements - Revised (effective 2009)

The application of this Standard will be made in the financial statements when this Standard becomes effective and is not expected to have a material impact on the financial performance or position of the Partnership.  They will, however, result in additional disclosures.

### Cash and cash equivalents

Cash and cash equivalents comprises of cash and bank balances,and time deposits with an original maturity of three months or less from the acquisition date.

### Financial assets at fair value through statement of income

(i) Classification

The Partnership has classified its investments as financial assets at fair value through statement of income.

Financial assets at fair value through statement of income are designated upon initial recognition and are managed together and their performance is evaluated on a fair value basis.

(ii) Recognition and de-recognition

The Partnership recognises financial assets at fair value through statement of income when the Partnership becomes party to the contractual provision of the instrument.

A financial asset is de-recognised either when the right to receive cash flows have expired or the Partnership has transferred substantially all the risks and rewards of ownership or when it has neither transferred nor retained substantially all the risks and rewards and when it no longer has control over the asset or a proportion of the asset.

(iii) Measurement

Financial assets carried at fair value through statement of income are initially recognised at fair value and transaction costs are expensed in the statement of income. Subsequent to initial recognition, all financial instruments are measured at fair value. As an exception, any instrument that does not have a quoted market price in an active market and whose fair value cannot be reliably measured is stated at cost, including transaction costs, less impairment losses if any. If a reliable measure of fair value becomes available subsequently, the instrument is measured at fair value.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the period from 21 March 2007 to 31 December 2008

2.    SIGNIFICANT ACCOUNTING POLICIES (CONTINUED)

(iv) Fair value measurement principles

The fair value of financial instruments is based on their quoted market price at the balance sheet date without any deduction for estimated future selling costs. Financial assets are priced at current bid prices, while financial liabilities are priced at current offer prices. If a quoted market price is not available on a recognised stock exchange or from a broker/dealer for non-exchange-traded investments, the fair value of the instrument is estimated using pricing models and/or discounted cash flow techniques.

(v) Gains and losses on subsequent measurement

Gains or losses arising from changes in fair value of financial assets at fair value through statement of income are recognised in the statement of income.

(vi) Trade date accounting

All regular way purchases and sales of financial assets are recognised on the trade date i.e. the date that the entity commits to purchase or sell the asset. Regular way purchases or sales are purchases or sales of financial assets that require delivery of assets within the time frame generally established by regulations or conventions in the market place.

**Loans and receivables**

Loans and receivables that have a fixed or determinable payments that are not quoted in an active market are classified as "loans and receivables". Loans and receivables are measured at amortised cost using the effective interest method less any impairment. Interest income is recognized by applying the effective interest rate, except for short-term advances when the recognition of interest would be immaterial.

**Accrued income**
Accrued income are recognised initially at fair value and subsequently measured at amortised cost using the effective interest method, less provision for impairment losses.

**Accrued expenses**

Accrued expenses are recognized initially at cost and subsequently measured at amortized cost.

**Revenue recognition**

Interest income is recognized in the statement of income as it accrues, taking into account the effective yield of the asset. Dividend income is recognized when the right to receive payment is established.

**Foreign currency translation**

Foreign currency transactions are recorded in US$ at the rate of exchange ruling at the date of the transaction. Monetary assets and liabilities denominated in foreign currencies are translated into US$ at the rate of exchange prevailing on the balance sheet date. Resulting gains or losses on exchange are recorded as part of the results for the period.

8

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the period from 21 March 2007 to 31 December 2008

3.    CASH AND CASH EQUIVALANTS

|  | 2008 |
| --- | --- |
|  | US$ |
| Bank Balance | 1,183,673 |
| Time deposits | 19,000,000 |
| Restricted cash | 900,000 |
|  | 21,083,673 |

The time deposits with banks yield interest at 5.25 % per annum and mature within three months from the date of deposit.

The restricted bank balance attributable to Unified Transport and Logistics Co. PLC ("UNIF") is for a guarantee on behalf of UNIF's in the amount of USD 900,000.  The Port Fund is being reimbursed by UNIF for all expenses attributable to the guarantee and is being paid an annual fee based on a percentage of the Face Value of un-drawn guarantee which is outstanding through May 2009.   In the event the guarantee is pulled, The Port Fund will have the option to either:

   ▪ Charge a market rate interest rate on monies drawn under the guarantee until such funds are repaid by UNIF to the Port Fund; or,

   ▪ The Port Fund may convert the drawn amount and any or all interest accrued on monies pulled (inclusive of the guarantee fee if unpaid) to UNIF common equity.

4.    FINANCIAL ASSETS AT FAIR VALUE THROUGH STATEMENT OF INCOME

|  | 2008 |
| --- | --- |
|  | US$ |
| **Designated on initial recognition:** |  |
| Unquoted equity securities | 72,559,455 |

The investments in unquoted securities amounting to US $ 72,559,455 carried at fair value as determined based on the independent third party valuation reports prepared using pricing models and discounted cash flow techniques that are based on non-observable market prices or rates for which an unrealised gain of US $ 34,304,524 was recognised in the statement of income for the period.

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the period from 21 March 2007 to 31 December 2008

5. **LOANS AND RECEIVABLES**

|  | 2008 |
| --- | --- |
|  | US$ |
| **Convertible loan:** | |
| At amortised cost | 20,000,000 |

The convertible loan to KGL International for Ports, Warehousing and Transport K.S.C.C. is for a period of five years with a final maturity date of 26 August 2012. The original loan amounted to US$ 20,000,000 and a placement fee of 3% of original loan amounted to KD 600,000 was capitalised as financial assets at fair value through statement of income. The loan is interest bearing at a simple rate of interest of 28% per annum. Interest on the principal of US$ 20,000,000 is accrued every year and is payable with the principal on maturity of the loan. US$ 7,563,836 was accrued for the period ended 31 December 2008.

6. **ACCRUED INTEREST**

|  | 2008 |
| --- | --- |
|  | US$ |
| Due from KGL International for Ports and Warehousing K.S.C.C. (see note 5) | 7,563,836 |
| Accrued interest on time deposits from banks | 211,060 |
|  | 7,774,896 |

7. **RELATED PARTY TRANSECTIONS AND BALANCES**

|  | 2008 |
| --- | --- |
|  | US$ |
| **Due from related party** | |
| ▪ KGL Investments K.S.C.C | 6,980,812 |
| Loans and receivables (note 5) | 20,000,000 |
| Due from KGL International for Ports and Warehousing K.S.C.C | 7,563,836 |
| **Due to investment manager** | |
| ▪ KGL Investments Cayman Limited | 7,076,366 |

In accordance with the Limited Partnership Agreement, 20% of the profit has been allocated to the Investment Manager as performance fees, KGL Investments Cayman Limited

In accordance with the Limited Partnership Agreement, 2% of the total capital commitments have been allocated to the Investment Manger, KGL Investments Cayman Limited as management fees.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the period from 21 March 2007 to 31 December 2008

8.    **GENERAL AND ADMINISTRATIVE EXPENSES**

|  | 2008 |
|---|---|
|  | US$ |
| Pre-operating expenses | 717,067 |
| Project costs | 533,562 |
| Professional fees | 2,136,445 |
| Travel expenses | 546,659 |
| Others | 294,497 |
|  | 4,228,230 |

9.    **TAXATION**

As per the Limited Partnership Agreement Any tax liability arising on the activity of the partnership will be borne by the individual investors.

10.    **FINANCIAL RISK MANAGEMENT**

The Partnership primarily invests in equity related investments in port management companies that operate ports in the fastest growing regions of the world which are the developing markets of the Asia, Africa and the Middle East. The objective of the partnership is to achieve long term capital appreciation through investments in entrepreneurial companies demonstrating the potential for significant growth derived from products and services with international market appeal and demonstrate and sustainable competitive advantages.

The Partnership is exposed to a number of risks arising from the various financial instruments it holds. The main risk to which the partnership is exposed is; credit risk, market price risk, interest rate risk and liquidity risk. The risk management policies employed by the Partnership to manage these risks are discussed below;

**Market price risk**

The Partnership's unquoted equity securities are susceptible to market price risk arising from uncertainties about future values of investment securities. The Partnership's advisor advises the Partnership on the equity securities that have prospects to appreciate in value over the medium to long term period. The advisor's recommendations are reviewed by the General Partner before the investment decisions are implemented.

The performance of investments held by the Partnership is monitored by the advisory committee on an ongoing basis and reviewed on a regular basis by the General Partner.

**Currency risk**

The Partnership hold assets denominated in currencies other than US$, the functional and presentation currency of the Partnership. Consequently the Partnership is exposed to currency risk since the value of the securities denominated in other currencies will fluctuate due to changes in exchange rates. The Partnership's policy is not enter into any currency hedging transections.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the period from 21 March 2007 to 31 December 2008

The table below summarise the Partnership's exposure to currency risks. Included in the tables are the Partnership's assets and liabilities at fair values categorised by their base currencies;

**Concentration of assets and liabilities**

| As at 31 December 2008 | Other currencies | United States Dollars | Total |
|---|---|---|---|
| | US $ | US $ | US $ |
| **Assets** | | | |
| Convertible loan | - | 20,000,000 | 20,000,000 |
| Financial assets at fair value through statement of income | - | 72,559,455 | 72,559,455 |
| Interest receivable | - | 7,774,896 | 7,774,896 |
| Due from related parties | - | 6,980,812 | 6,980,812 |
| Cash and cash equivalents | 533,479 | 20,550,194 | 21,083,673 |
| **Total assets** | 533,479 | 127,865,357 | 128,398,836 |
| | | | |
| **Liabilities** | | | |
| Due to investment manager | - | (7,076,366) | (7,076,366) |
| Accrued expenses | - | (165,009) | (165,009) |
| **Total net assets** | 533,479 | 120,623,982 | 121,157,461 |

**Interest rate risk**

The majority of the Partnership's financial assets and liabilities are non-interest bearing. As a result, the partnership is not subject to significant amounts of risk due to fluctuations in the prevailing levels of market. Interest income from cash deposits may fluctuate in amount, in particular due to changes in the interest rates. Whilst the Partnership seeks to optimise overall performance from the assets it holds, it does not seek to maximise interest income in view of its policy to focus on investments in equity securities but one of its investments is in a convertible loan which earns interest.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the period from 21 March 2007 to 31 December 2008

The following table analyses the interest rate composition of the Partnership's net assets.

| As at 31 December 2008 | Interest bearing | Non-interest bearing | Total |
|---|---|---|---|
| | US $ | US $ | US $ |
| Convertible loan | 20,000,000 | - | 20,000,000 |
| Financial assets at fair value through statement of income | - | 72,559,455 | 72,559,455 |
| Interest receivable | - | 7,774,896 | 7,774,896 |
| Due from related parties | - | 6,980,812 | 6,980,812 |
| Cash and cash equivalents | 19,000,000 | 2,083,673 | 21,083,673 |
| Due to investment manager | - | (7,076,366) | (7,076,366) |
| Accrued expenses | - | (165,009) | (165,009) |
| | 39,000,000 | 82,157,461 | 121,157,461 |

**Liquidity risk**

The liquidity risk is that the Partnership cannot meet its financial obligations when they fall due. When funds are required capital contributions are called from Partners. As at 31 December 2008 amounts available for call amounted to US$ 6,980,812. The partnership therefore has no liquidity risk for the foreseeable future. Some of the investments are unquoted and are not readily realisable.

**The Port Fund Limited Partnership**
Cayman Islands

**Notes to the financial statements**

For the period from 21 March 2007 to 31 December 2008

## 11. CAPITAL ACCOUNTS

| Limited Partners | Ownership % | Total Commitment US $ | Cumulative contributions US $ | Cumulative operating income & expenses US $ | Capital accounts US $ |
|---|---|---|---|---|---|
| General retirement and pension authority Qatar | 10.61% | 9,852,000 | 9,852,000 | 3,003,331 | 12,855,331 |
| Gulf Investment Corporation. | 10.77% | 10,000,000 | 10,000,000 | 3,048,448 | 13,048,448 |
| Behbehani Investment Company. | 1.08% | 1,000,000 | 1,000,000 | 304,845 | 1,304,845 |
| The public institution for social security | 43.08% | 40,000,000 | 40,000,000 | 12,193,797 | 52,193,797 |
| Yaqoub behbehani | 1.08% | 1,000,000 | 1,000,000 | 304,845 | 1,304,845 |
| Al Ahlia Holding Company. | 3.23% | 3,000,000 | 3,000,000 | 914,535 | 3,914,535 |
| Kuwait reinsurance Company K.S.C.C | 2.15% | 2,000,000 | 2,000,000 | 609,691 | 2,609,691 |
| Al Ahlia Insurance Company. | 3.23% | 3,000,000 | 3,000,000 | 914,535 | 3,914,535 |
| Mohammed Ali Al-Naki | 3.23% | 3,000,000 | 3,000,000 | 914,535 | 3,914,535 |
| KGL Investment K.S.C.C | 21.54% | 20,000,000 | 20,000,000 | 6,096,899 | 26,096,899 |
| | 100.00% | 92,852,000 | 92,852,000 | 28,305,461 | 121,157,461 |

14

**The Port Fund Limited Partnership**
**Cayman Islands**

**Financial statements and independent auditor's report**
**For the year ended 31 December 2009**

# The Port Fund Limited Partnership
# Cayman Islands

**Financial statements and independent auditor's report**

*For the year ended 31 December 2009*

## Contents

| | Page |
|---|---|
| The Investment Manager, General Partner and Professional Advisor of the Fund | 1 |
| Statement of Investment Manager's Responsibilities | 2 |
| Independent auditor's report | 3 |
| Statement of financial position | 4 |
| Statement of comprehensive income | 5 |
| Statement of changes in equity | 6 |
| Statement of cash flows | 7 |
| Notes to the financial statements | 8 - 20 |

**The Port Fund Limited Partnership**
**Cayman Islands**

**Financial statements and independent auditor's report**

*For the year ended 31 December 2009*

**The Investment Manager, General Partner and Professional Advisor of the Fund**

| | |
|---|---|
| **Investment Manager:** | KGL Investment (Cayman) Limited<br>Walkers SPV Ltd Walkers House,<br>87 Mary Street,<br>George Town Grand Cayman<br>KY1-9002 Cayman Islands |
| **General Partner:** | Port Link GP Limited<br>C/o Walkers SPV Ltd Walkers House,<br>87 Mary Street,<br>George Town Grand Cayman<br>KY1-9002 Cayman Islands |
| **Bankers:** | HSBC Bank Middle East Limited - Kuwait<br>G/1/2 Floors, Al-Kharafi Tower,<br>Qibla Area, Hamad Al-Saqr Street,<br>P O Box 1683, Safat 13017, Kuwait |
| **Auditors:** | Moore Stephens Al-Nisf & Partners<br>P.O.Box: 25578<br>Safat 13116<br>Kuwait |
| **Legal Advisors:** | Walkers Dubai LLP<br>5th Floor, The Exhange Building<br>Dubai International Finance Centre PO Box 506513<br>Dubai |
| **Administrators:** | Mourant & Co. Capital (SPV) Limited<br>1st Floor<br>Phoenix House<br>18 King William Street<br>London<br>EC4N 7BP |

# The Port Fund Limited Partnership
# Cayman Islands

### Financial statements and independent auditor's report

*For the year ended 31 December 2009*

## STATEMENT OF THE INVESTMENT MANAGER'S RESPONSIBILITIES
## FOR THE YEAR ENDED 31 DECEMBER 2009

The Investment Manager of the Limited Partnership is responsible for the preparation of the financial statements for each financial period in accordance with the Limited Partnership Agreement which give a true and fair view of the state of affairs of the Limited Partnership and of the net expenditure of the Limited Partnership for that year.   In preparing those financial statements, the Manager is required to:

- Select suitable accounting policies and then apply them consistently;
- make judgements and estimates that are reasonable and prudent;
- state whether applicable accounting standards have been followed; and
- prepare the financial statements on the going concern basis unless it is inappropriate to presume the Limited Partnership will continue in business.

The Investment Manager is responsible for keeping the proper accounting records which disclose with reasonable accuracy at any time the financial position of the Limited Partnership and hence for taking reasonable steps for the prevention and detection of fraud and other irregularities.

# MOORE STEPHENS
PUBLIC ACCOUNTANTS

AL NISF & PARTNERS

Al Johara Tower, 6th Floor
Khaled Ben Al-Waleed Street, Sharq
P.O. Box: 25578, Safat 13116, Kuwait

Tel : 965 2242 6999
Fax : 965 2240 1666

## INDEPENDENT AUDITOR'S REPORT TO THE LIMITED PARTNERS' OF THE PORT FUND LIMITED PARTNERSHIP

### *Report on the financial statements*
We have audited the accompanying financial statements of The Port Fund Limited Partnership ("the Fund") which comprise the statement of financial position as at 31 December 2009, and the related statements of comprehensive income, changes in equity and cash flows for the year then ended, and a summary of significant accounting policies and other explanatory notes.

### *Management's responsibility for the financial statements*
The Fund's management is responsible for the preparation and fair presentation of these financial statements in accordance with International Financial Reporting Standards. This responsibility includes: designing, implementing and maintaining internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error; selecting and applying appropriate accounting policies; and making accounting estimates that are reasonable in the circumstances.

### *Auditor's responsibility*
Our responsibility is to express an opinion on these financial statements based on our audit. We conducted our audit in accordance with International Standards on Auditing. Those standards require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the fund's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the fund's internal control. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### *Opinion*
In our opinion, the financial statements present fairly, in all material respects, the financial position of the Fund as at 31 December 2009, and of its financial performance and its cash flows for the year then ended in accordance with International Financial Reporting Standards.

**Qais M. Al-Nisf**
**License No. 38-A**
**Moore Stephens Al Nisf & Partners**
**Member of Moore Stephens International**

**Kuwait: 21 July 2010**

3

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of financial position**

As at 31 December 2009

|  | Notes | 2009 US$ | 2008 US$ |
|---|---|---|---|
| **Assets** |  |  |  |
| Cash and cash equivalents | 5 | 2,701,297 | 21,083,673 |
| Financial assets at fair value through statement of Income | 6 | 126,481,625 | 72,559,455 |
| Loans and receivables | 7 | 20,900,000 | 20,000,000 |
| Accrued interest | 8 | 8,181,138 | 7,774,896 |
| Other receivables | 9 | 50,013,691 | - |
| Due from related party | 10 | 7,186,491 | 6,980,812 |
| **Total assets** |  | 215,464,242 | 128,398,836 |
|  |  |  |  |
| **Liabilities** |  |  |  |
| Accrued expenses |  | 5,297,502 | 165,009 |
| Due to investment manager | 10 | 13,462,949 | 7,076,366 |
| **Total liabilities** |  | 18,760,451 | 7,241,375 |
| **Net assets** |  | 196,703,791 | 121,157,461 |
|  |  |  |  |
| **Represented by:** |  |  |  |
| Fund capital | 15 | 142,852,000 | 92,852,000 |
| Retained earnings |  | 53,851,791 | 28,305,461 |
| **Total equity** |  | 196,703,791 | 121,157,461 |

Investment Manager

The notes on pages 8 to 20 form an integral part of these financial statements.

4

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of comprehensive income**

For the year ended 31 December 2009

| | Notes | 2009<br>US$ | For the period from<br>21 March 2007 to<br>31 December 2008<br>US$ |
|---|---|---|---|
| **Income** | | | |
| Unrealised  gain on financial assets at fair value through statement of income | 6 | 38,977,328 | 34,304,524 |
| Interest income | | 806,009 | 8,007,777 |
| Foreign exchange (loss)/gain | | (390) | 19,719 |
| **Total income** | | 39,782,947 | 42,332,020 |
| | | | |
| **Expenses** | | | |
| Management fees | 10 | (4,281,697) | (2,721,963) |
| General and administrative expenses | 11 | (3,568,337) | (4,228,230) |
| **Total expenses** | | (7,850,034) | (6,950,193) |
| **Profit for the year /period** | | 31,932,913 | 35,381,827 |
| Other comprehensive income | | - | - |
| **Total comprehensive income for the year / period** | | 31,932,913 | 35,381,827 |
| Attributable to investment manager * | | 6,386,583 | 7,076,366 |
| Attributable to limited partners | | 25,546,330 | 28,305,461 |
| | | 31,932,913 | 35,381,827 |

* The profit allocation to the Investment Manager is as per S 4.2c of the Limited Partnership Agreement.

The notes on pages 8 to 20 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of changes in equity**

For the year ended 31 December 2009

| | Fund capital US$ | Retained earnings US$ | Total equity US$ |
|---|---|---|---|
| Capital contribution by limited partners | 92,852,000 | - | 92,852,000 |
| Total comprehensive income for the period attributable to limited partners | - | 28,305,461 | 28,305,461 |
| **Balance at 31 December 2008** | 92,852,000 | 28,305,461 | 121,157,461 |
| Capital contribution | 50,000,000 | - | 50,000,000 |
| Total comprehensive income for the year attributable to limited partners | - | 25,546,330 | 25,546,330 |
| **Balance at 31 December 2009** | 142,852,000 | 53,851,791 | 196,703,791 |

The notes on pages 8 to 20 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of cash flows**

For the year ended 31 December 2009

| | Note | 2009 US$ | For the period from 21 March 2007 to 31 December 2008 US$ |
|---|---|---|---|
| **OPERATING ACTIVITIES** | | | |
| Profit for the year | | 31,932,913 | 35,381,827 |
| Adjustments for: | | | |
| Interest income | | (806,009) | (443,941) |
| Non cash interest income on loan | | - | (7,563,836) |
| Unrealised foreign exchange gain | | - | (19,719) |
| Unrealised gain on financial assets at fair value through statement of income | | (38,977,328) | (34,304,524) |
| Loss before changes in operating assets and liabilities | | (7,850,424) | (6,950,193) |
| Due from related party | | (205,679) | 4,972,281 |
| Accrued interest | | 153,879 | - |
| Other receivables | | (13,691) | - |
| Accrued expenses | | 5,132,492 | (5,002,544) |
| **Net cash used in operating activities** | | (2,783,423) | (6,980,456) |
| | | | |
| **INVESTING ACTIVITIES** | | | |
| Purchase of financial assets at fair value through statement of income | | (14,944,842) | (33,067,659) |
| Loans | | (900,000) | (20,000,000) |
| Interest received | | 245,889 | 443,941 |
| **Net cash used in investing activities** | | (15,598,953) | (52,623,718) |
| | | | |
| **FINANCING ACTIVITIES** | | | |
| Capital contributions received | | - | 80,687,847 |
| **Net cash from financing activities** | | - | 80,687,847 |
| **Net (decrease) / increase in cash and cash equivalents** | | (18,382,376) | 21,083,673 |
| Cash and cash equivalents at beginning of the year / period | | 21,083,673 | - |
| **Cash and cash equivalents at end of the year / period** | 5 | 2,701,297 | 21,083,673 |

The notes on pages 8 to 20 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2009

1. **GENERAL INFORMATION**

   The Port Fund Limited Partnership, ("the Fund") was established on 21 March 2007 and is registered as an exempt limited partnership in the Cayman Islands under the exempted Law (2003 Revision) of the Cayman Islands. The first closing acceptance of committed contributions was on 15 July 2007 and the final closing occurred on 7 September 2008.

   The Fund will offer select sophisticated investors the opportunity to participate in the growth and consolidation of the port management industry and related sectors through selected private equity investments in high potential companies on a world wide basis.

   The Port Link ("General Partner") has appointed KGL Investment Cayman Limited ("Investment Manager") who is responsible for the preparation of the financial statements for each financial period in accordance with the Limited Liability Partnership Agreement.

   The Fund will terminate on 31 December 2012, but this may be extended by the General Partner for a period of consecutive periods of one year not exceeding two years in the aggregate, to permit the General Partner to dispose of existing investments in accordance with the Limited Partnership Agreement.

   The financial statements of the Fund for the year ended 31 December 2009 were authorized for issue by the General Partner on 21 July 2010.

2. **ADOPTION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS (IFRSs)**

2.1 *Standards and Interpretations adopted by the Partnership*

   The following new and revised standards and interpretations have been adopted by the The Partnership for the annual period begining 1 January 2009:

   - IAS 1 (revised) 'Presentation of Financial Statements' - effective 1 January 2009. The revised standard has introduced terminology changes (including revised titles for the financial statements) and changes in the format and content of the financial statements. The the partnership has elected to present the 'Statement of comprehensive income' in one statement: the 'Statement of comprehensive income'. The revised standard requires changes in equity arising from transactions with owners in their capacity as owners (i.e.owner changes in income) to be presented in the statement of changes in equity. All other changes in equity (i.e. non-owner changes in equity) are required to be presented separately in the statement of comprehensive income. Comparative information has been re-presented so that it also is in conformity with the revised standard. As the change in accounting policy only impacts presentation aspects, there is no impact on the reported results or financial position of the the Partnership.

   - IFRS 7 'Financial Instruments - Disclosures' (amendment) – effective 1 January 2009. The amendment requires enhanced disclosures about fair value measurement and liquidity risk. In particular, the amendment requires disclosure of fair value measurements by level of fair value measurement hierarchy. The the partnership has elected not to provide comparative information for these expanded disclosures in the current year in accordance with the transitional reliefs offered in these amendments. As the change in accounting policy only results in additional disclosures, there is no impact on the results of the the Partnership.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2009

2.  **ADOPTION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS (IFRSs) (continued)**

*Standards and Interpretations in issue not yet effective*

- IAS 39 (revised), 'Financial Instruments: Recognition and Measurement'
  Effective for annual periods beginning on or after 1 July 2009;

- IFRS 5 (revised), Non-current Assets Held for Sale and Discontinued Operation'
  Effective for annual periods beginning on or after 1 July 2009;

- IAS 38 (amendment), 'Intangible Assets'
  Effective for annual periods beginning on or after 1 July 2009;

- IAS 1 (amendment), 'Presentation of Financial Statements'
  Effective for annual periods beginning on or after 1 July 2009;

- IFRIC 17 'Distributions of Non-cash Assets to Owners'
  Effective for annual periods beginning on or after 1 July 2009;

- IAS 24 (amendment), 'Related Party Transactions'
  Effective for annual periods beginning on or after 1 January 2011;

- IFRS 9 'Financial Instruments'
  Effective for annual periods beginning on or after 1 January 2013.

The Investment Manager anticipate that the adoption of these Standards, amendments and interpretations in future periods will have no material financial impact on the financial statements of the the Partnership in the period of initial application. The Fund is considering the timing and implication of adopting IFRS 9 on its financial position.

3.  **SIGNIFICANT ACCOUNTING POLICIES**

3.1  **Statement of compliance**

The financial statements have been prepared in accordance with the International Financial Reporting Standards (IFRS).

3.2  **Basis of preparation**

The financial statements are prepared on the historical cost basis except for measurement at fair value of financial assets at fair value through statement of income.

The financial statements have been presented in United States Dollar (US$) which is the functional currency of the Partnership.

3.3  **Cash and cash equivalents**

Cash and cash equivalents comprise of cash and bank balances, and time deposits with an original maturity of three months or less from the acquisition date.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2009

## 3.    SIGNIFICANT ACCOUNTING POLICIES (continued)

### 3.4    Financial assets at fair value through statement of income

Financial assets at fair value through statement of income are initially recognised at cost, excluding transaction costs. These investments are either "held for trading" or "designated".

"Held for trading investments" are acquired principally for the purpose of selling or repurchasing it in the near term or are a part of a portfolio of identified financial instruments that are managed together and for which there is evidence of a recent actual pattern of short term profit taking. "Designated investments" are investments which are designated as investments at fair value through statement of income on initial recognition. After initial recognition, financial assets at fair value through statement of income are remeasured at fair value.

Gain or losses arising either from the sale or changes in fair value of "financial assets at fair value through statement of income" are recognised in the statement of comprehensive income.

### 3.5    Loans and receivables

Loans and receivables that have fixed or determinable payments that are not quoted in an active market are classified as "loans and receivables". Loans and receivables are measured at amortised cost using the effective interest method less any impairment. Interest income is recognized by applying the effective interest rate, except for short-term advances when the recognition of interest would be immaterial.

### 3.6    Fair value

For securities traded in organised financial markets, fair value is determined by reference to Stock Exchange quoted market bid prices at the close of business on the statement of financial position date.

For securities where there is no quoted market price, a reasonable estimate of the fair value is determined by reference to the current market value of another instrument which is substantially the same, or is based on the expected discounted cash flows. The determination of fair value is done for each investment individually.

### 3.7    Trade date and settlement date accounting

All "regular way" purchases and sales of financial assets are recognised on the trade date, i.e. the date that the partnership commits to purchase or sell the assets. Regular way purchases or sales, are transactions that require the delivery of assets within the time frame generally established by regulation or convention in the market place concerned.

### 3.8    Provisions

A provision is recognised in the statement of financial position when the Partnership has a legal or constructive obligation as a result of a past event, it is probable that an outflow of economic benefits will be required to settle the obligation and a reliable estimate can be made of the amount of the obligation. If the effect is material, provisions are determined by discounting the expected future cash flows that reflects current market assessments of the time value of money and, where appropriate, the risks specific to the liability.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2009

3.    **SIGNIFICANT ACCOUNTING POLICIES (continued)**

3.9    **Related party transactions**

Related parties are general partner, limited partners, investment manager, directors, key management personnal and entities controlled, jointly controlled or significantly influanced by such parties. All related party transactions are carried out in the normal course of business and with the approval of the management.

3.10    **Revenue recognition**

Revenue is measured at the fair value of the consideration received or receivable.

Interest income is accrued on a time basis, by reference to the principal outstanding and at the effective interest rate applicable, which is the rate that exactly discounts estimated future cash receipts through the expected life of the financial asset to that asset's net carrying amount.

Dividend income from investments is recognised when the shareholder's right to receive payment has been established. Gain on sale of investments is measured by the difference between the sale proceeds and the carrying amount of the investment at the date of disposal, and is recognized at the time of sale. Management fees and performance fees are accrued when services are performed.

3.11    **Accrued income**

Accrued income are recognised initially at fair value and subsequently measured at amortised cost using the effective interest method, less provision for impairment losses.

3.12    **Accrued expenses**

Accrued expenses are recognized initially at cost and subsequently measured at amortized cost.

3.13    **Foreign currency translation**

Foreign currency transactions are recorded in US$ at the rate of exchange ruling at the date of the transaction. Monetary assets and liabilities denominated in foreign currencies are translated into US$ at the rate of exchange prevailing on the statement of financial position date. Resulting gains or losses on exchange are recorded as part of the results for the year.

4.    **CRITICAL ACCOUNTING JUDGEMENTS AND KEY SOURCES OF ESTIMATION OF UNCERTAINTY**

In the application of the Partnership's accounting polices, which are described in note 3, management is required to make judgements, estimates and assumption about the carrying amounts of assets and liabilities that are not readily apparent from other sources. The estimates and associated assumptions are based on historical experience and other factors that are considered to be relevant. Actual results may differ from these estimates.

The estimates and underlying assumptions are reviewed on an ongoing basis. Revisions to accounting estimates are recognised in the year in which the estimate is revised if the revision affects only that year or in the year of the revision and future years if the revision affects both current and future years.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2009

4.  **CRITICAL ACCOUNTING JUDGEMENTS AND KEY SOURCES OF ESTIMATION OF UNCERTAINTY (continued).**

**Judgements**
In the process of applying the Fund's accounting policies, management has made the following judgements, apart from those involving estimations, which have the most significant effect in the amounts recognised in the financial statements:

Classification of investments
Management decides on acquisition of an investment whether it should be classified as at fair value through statement of income or as available for sale. In making that judgement the Partnership considers the primary purpose for which it is acquired and how it intends to manage and report its performance. Such judgement determines whether it is subsequently measured at cost, amortised cost or at fair value and if the changes in fair value of instruments are reported in profit or loss or in other comprehensive income.

**Estimation uncertainty**

The key assumptions concerning the future and other key sources of estimation uncertainty at the statement of financial position date, that have a significant risk of causing a material adjustment to the carrying amounts of assets and liabilities within the next financial year are discussed below:

*Valuation of unquoted equity investments*

Valuation of unquoted equity investments is normally based on one of the following:

- recent arm's length market transactions;
- current fair value of another instrument that is substantially the same ;
- earnings multiple ;
- the expected cash flows discounted at current rates applicable for items with similar terms and risk characteristics; or
- other valuation models.

The determination of the cash flows and discount factors for unquoted equity investments requires significant estimation.

5.  **CASH AND CASH EQUIVALANTS**

|  | 2009 US$ | 2008 US$ |
|---|---|---|
| Bank balances | 701,297 | 1,183,673 |
| Time deposits | 2,000,000 | 19,000,000 |
| Restricted cash | - | 900,000 |
|  | 2,701,297 | 21,083,673 |

The time deposits with banks yield interest at 0.35 % (2008: 5.25%) per annum and mature within three months from the date of deposit.

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2009

6.   FINANCIAL ASSETS AT FAIR VALUE THROUGH STATEMENT OF INCOME

|  | Fair value at 31 December 2008 | Additions during the year | Fair value adjustment at 31 December 2009 | Fair value at 31 December 2009 |
|---|---|---|---|---|
|  | US$ | US$ | US$ | US$ |
| **Unquoted investments:** |  |  |  |  |
| Project MPC Global | 2,443,870 | - | (362,308) | 2,081,562 |
| Project Master | 33,958,935 | 8,944,842 | 15,698,241 | 58,602,018 |
| Project City | 35,556,650 | 6,000,000 | 24,241,395 | 65,798,045 |
| Project Damietta | 600,000 | - | (600,000) | - |
|  | 72,559,455 | 14,944,842 | 38,977,328 | 126,481,625 |

The financial assets at fair value through statement of income amounting to US$ 126,481,625 is carried at fair value as determined based on the independent third party valuation reports prepared using pricing models and discounted cash flow techniques that are based on non-observable market prices or rates for which an unrealised gain of US$ 38,977,328 was recognised in the statement of comprehensive income for the year.

7.   LOANS AND RECEIVABLES

|  | 2009 | 2008 |
|---|---|---|
|  | US$ | US$ |
| **Convertible loan:** |  |  |
| At amortised cost | 20,000,000 | 20,000,000 |
| **Other loan:** |  |  |
| UNIF | 900,000 | - |
|  | 20,900,000 | 20,000,000 |

The convertible loan to KGL International for Ports, Warehousing and Transport K.S.C.C. is for a period of five years with a final maturity date of 26 August 2012.The loan is interest bearing at a simple rate of interest of 28% per annum. Interest on the principal of US$ 20,000,000 is accrued every year and is payable with the principal on maturity of the loan. During the current year no interest has been accrued as the agreement is currently being renegotiated.

The loan is convertible at the option of the Fund into 2 million shares in Damietta International Ports Company. The Fund is entitled to convert the loan to shares at any time before its final settlement on 26 August 2012.

The Fund through its bankers HSBC Bank provided a bank Guarantee of US$ 900,000 to UNIFIED Transport and Logistic Company with a renewed expiry date of 31 December 2009. As per the agreement, guarantee claims and expenses were made during the year amounting to US$ 913,691 and interest of US$ 57,181 has been charged thereon. The interest rate is based on 6% per annum each year on non claimed amounts and 9% per annum on enchased amounts. The above balances are included within loans and receivables, other receivables and accrued interest.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2009

8.    **ACCRUED INTEREST**

| | 2009 US$ | 2008 US$ |
|---|---|---|
| Due from KGL International for Ports and Warehousing K.S.C.C. (note 7) | 7,563,836 | 7,563,836 |
| Due from KGL Investments K.S.C.C | 558,465 | - |
| Accrued interest on time deposits from banks | 1,656 | 211,060 |
| Interest on UNIF loan (note 7) | 57,181 | |
| | 8,181,138 | 7,774,896 |

9.    **OTHER RECEIVABLES**

| | 2009 US$ | 2008 US$ |
|---|---|---|
| Due from limited partner – Kuwait Ports Authority* | 50,000,000 | - |
| Guarantee charges on UNIF | 13,691 | - |
| | 50,013,691 | - |

*This amount has been received in full on 18 July 2010.

10.    **RELATED PARTY TRANSACTIONS AND BALANCES**

| | 2009 US$ | 2008 US$ |
|---|---|---|
| **Statement of financial position** | | |
| **Due from related party** | | |
| ▪ KGL Investments K.S.C.C | 7,186,491 | 6,980,812 |
| ▪ Loans and receivables (note 7) | 20,900,000 | 20,000,000 |
| ▪ Due from KGL International for Ports and Warehousing K.S.C.C (note 8) | 7,563,836 | 7,563,836 |
| **Due to investment manager** | | |
| ▪ KGL Investments Cayman Limited | 13,462,949 | 7,076,366 |

In accordance with the Limited Partnership Agreement, 20% of the profit has been allocated to the Investment Manager as performance fees, KGL Investments Cayman Limited.

In accordance with the Limited Partnership Agreement, 2% of the total capital commitments have been allocated to the Investment Manger, KGL Investments Cayman Limited as management fees.

14

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2009

11.  **GENERAL AND ADMINISTRATIVE EXPENSES**

|  | 2009 US$ | 2008 US$ |
|---|---|---|
| Pre-operating expenses | - | 717,067 |
| Aborted deal cost | 89,571 | 533,562 |
| Professional fees | 837,757 | 2,221,208 |
| Marketing expenses | 2,500,000 | - |
| Travel expenses | 29,902 | 546,659 |
| Others | 111,107 | 209,734 |
|  | 3,568,337 | 4,228,230 |

12.  **TAXATION**

As per the Limited Partnership Agreement Any tax liability arising on the activity of the Fund will be borne by the partners.

13.  **FINANCIAL RISK MANAGEMENT**

The Fund primarily invests in equity related investments in port management companies that operate ports in the fastest growing regions of the world which are the developing markets of the Asia, Africa and the Middle East. The objective of the Fund is to achieve long term capital appreciation through investments in entrepreneurial companies demonstrating the potential for significant growth derived from products and services with international market appeal and demonstrate and sustainable competitive advantages.

The Fund is exposed to a number of risks arising from the various financial instruments it holds. The main risk to which the Fund is exposed is; credit risk, market price risk, interest rate risk and liquidity risk. The risk management policies employed by the Fund to manage these risks are discussed below:

a.  **Market price risk**

The Fund's unquoted investments are susceptible to market price risk arising from uncertainties about future values of investment securities. The Fund's advisor advises the Fund on the investments that have prospects to appreciate in value over the medium to long term period. The advisor's recommendations are reviewed by the General Partner before the investment decisions are implemented.

The performance of investments held by the Fund is monitored by the advisory committee on an ongoing basis and reviewed on a regular basis by the General Partner.

b.  **Currency risk**

The Fund hold assets denominated in currencies other than US$, the functional and presentation currency of the Fund. Consequently the Fund is exposed to currency risk since the value of the securities denominated in other currencies will fluctuate due to changes in exchange rates. The Fund's policy is not enter into any currency hedging transections.

The table below summarise the Fund's exposure to currency risks. Included in the tables are the Fund's assets and liabilities at fair values categorised by their base currencies;

15

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2009

13.   **FINANCIAL RISK MANAGEMENT (continued)**

c.   **Concentration of assets and liabilities**

| As at 31 December 2009 | Other currencies | United States Dollars | Total |
|---|---|---|---|
| | US$ | US$ | US$ |
| **Assets** | | | |
| Convertible loan | - | 20,000,000 | 20,000,000 |
| Other loan | - | 900,000 | 900,000 |
| Financial assets at fair value through statement of income | - | 126,481,625 | 126,481,625 |
| Accrued interest | - | 8,181,138 | 8,181,138 |
| Other receivables | | 50,013,691 | 50,013,691 |
| Due from related parties | - | 7,186,491 | 7,186,491 |
| Cash and cash equivalents | 305,888 | 2,395,409 | 2,701,297 |
| **Total assets** | 305,888 | 215,158,354 | 215,464,242 |
| | | | |
| **Liabilities** | | | |
| Due to investment manager | - | (13,462,949) | (13,462,949) |
| Accrued expenses | - | (5,297,502) | (5,297,502) |
| **Total net assets** | 305,888 | 196,397,903 | 196,703,791 |
| | | | |
| **As at 31 December 2008** | | | |
| **Assets** | | | |
| Convertible loan | - | 20,000,000 | 20,000,000 |
| Financial assets at fair value through statement of income | - | 72,559,455 | 72,559,455 |
| Accrued interest | - | 7,774,896 | 7,774,896 |
| Due from related parties | - | 6,980,812 | 6,980,812 |
| Cash and cash equivalents | 533,479 | 20,550,194 | 21,083,673 |
| **Total assets** | 533,479 | 127,865,357 | 128,398,836 |
| | | | |
| **Liabilities** | | | |
| Due to investment manager | - | (7,076,366) | (7,076,366) |
| Accrued expenses | - | (165,009) | (165,009) |
| **Total net assets** | 533,479 | 120,623,982 | 121,157,461 |

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2009

## 13.   FINANCIAL RISK MANAGEMENT (continued)

### d.   Interest rate risk

The majority of the Fund's financial assets and liabilities are non-interest bearing. As a result, the Fund is not subject to significant amounts of risk due to fluctuations in the prevailing levels of market. Interest income from cash deposits may fluctuate in amount, in particular due to changes in the interest rates. Whilst the Fund seeks to optimise overall performance from the assets it holds, it does not seek to maximise interest income in view of its policy to focus on unquoted investments but one of its investments is in a convertible loan which earns interest.

The following table analyses the interest rate composition of the Fund's net assets.

| As at 31 December 2009 | Interest bearing | Non-interest bearing | Total |
|---|---|---|---|
| | US$ | US$ | US$ |
| Convertible loan | 20,000,000 | - | 20,000,000 |
| Other loan | 900,000 | - | 900,000 |
| Financial assets at fair value through statement of income | - | 126,481,625 | 126,481,625 |
| Accrued interest | - | 8,181,138 | 8,181,138 |
| Other receivables | | 50,013,691 | 50,013,691 |
| Due from related parties | - | 7,186,491 | 7,186,491 |
| Cash and cash equivalents | - | 2,701,297 | 2,701,297 |
| Due to investment manager | - | (13,462,949) | (13,462,949) |
| Accrued expenses | - | (5,297,502) | (5,297,502) |
| | 20,900,000 | 175,803,791 | 196,703,791 |
| **As at 31 December 2008** | | | |
| Convertible loan | 20,000,000 | - | 20,000,000 |
| Financial assets at fair value through statement of income | - | 72,559,455 | 72,559,455 |
| Accrued interest | - | 7,774,896 | 7,774,896 |
| Due from related parties | - | 6,980,812 | 6,980,812 |
| Cash and cash equivalents | 19,000,000 | 2,083,673 | 21,083,673 |
| Due to investment manager | - | (7,076,366) | (7,076,366) |
| Accrued expenses | - | (165,009) | (165,009) |
| | 39,000,000 | 82,157,461 | 121,157,461 |

### e.   Liquidity risk

The liquidity risk is that the Fund cannot meet its financial obligations when they fall due. When funds are required capital contributions are called from Partners. As at 31 December 2009 amounts available for call amounted to US$ 57,186,491. The Fund therefore has no liquidity risk for the foreseeable future. Some of the investments are unquoted and are not readily realisable.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2009

13.  **FINANCIAL RISK MANAGEMENT (continued)**

f.  **Fair value of financial instruments**

The Fund used discounted cash flow and other pricing models to value its investments in financial assets at fair value through statement of income that are based on non-observable prices or rates. The Fund's investments in financial assets at fair value through statement of income are classified within level 3 investments.

| 31 December 2009 | Level 3 |
| --- | --- |
| | US$ |
| **Financial assets at fair value through statement of income** | |
| Unquoted investments | 126,481,625 |

**Reconciliation of Level 3 fair value measurements of financial assets at fair value through statement of income**

| 31 December 2009 | Financial assets at fair value through statement of income |
| --- | --- |
| | US $ |
| As at 1 January 2009 | 72,559,455 |
| Additions during the year | 14,944,842 |
| Total gains or losses in valuation | 38,977,328 |
| Ending balance | 126,481,625 |

14.  **COMMITMENTS AND CONTINGENT LIABILITIES**

| | 2009 | 2008 |
| --- | --- | --- |
| | US $ | US $ |
| Investment commitments | 9,812,500 | - |

The Fund has a Contingent Liability to MPC Global for US$ 9,812,000 of which US$ 2,250,000 was called for during the year ended 2009.This amount has not been paid pending further agreement with MPC Global. There is the possibility of an obligation to pay in the near future as per contractual agreement.

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2009

15. CAPITAL ACCOUNTS

a) Movement during the year from 1 January 2009 to 31 December 2009

| Limited Partners | Total Commitment US$ | Balance as at 1st January 2009 US$ | Contributions US$ | Penalty allocation US$ | Equalisation of operating income and expenses b/fwd * US$ | 2009 Operating Income & Expenses US$ | Capital accounts 2009 US$ |
|---|---|---|---|---|---|---|---|
| General Retirement and Pension Authority Qatar | 9,852,000 | 12,855,331 | - | 1,088,276 | (1,051,203) | 1,761,841 | 14,654,245 |
| Gulf Investment Corporation. | 10,000,000 | 13,048,448 | - | 1,104,625 | (1,066,994) | 1,788,307 | 14,874,386 |
| Behbehani Investment Company. | 1,000,000 | 1,304,845 | - | 110,463 | (106,700) | 178,831 | 1,487,439 |
| The Public Institution For Social Security | 40,000,000 | 52,193,797 | - | 4,418,501 | (4,267,983) | 7,153,230 | 59,497,545 |
| Yaqoub Behbehani | 1,000,000 | 1,304,845 | - | 110,463 | (106,700) | 178,831 | 1,487,439 |
| Al Ahlia Holding Company. | 3,000,000 | 3,914,535 | - | 331,388 | (320,098) | 536,492 | 4,462,317 |
| Kuwait Reinsurance Company K.S.C.C | 2,000,000 | 2,609,691 | - | 220,925 | (213,400) | 357,661 | 2,974,877 |
| Al Ahlia Insurance Company. | 3,000,000 | 3,914,535 | - | 331,388 | (320,099) | 536,492 | 4,462,316 |
| Mohammed Ali Al-Naki | 3,000,000 | 3,914,535 | - | 331,388 | (320,099) | 536,492 | 4,462,316 |
| Kgl Investment K.S.C.C | 20,000,000 | 26,096,899 | - | 2,209,251 | (2,133,992) | 3,576,615 | 29,748,773 |
| Kuwait Ports Authority | 50,000,000 | - | 50,000,000 | (10,256,668) | 9,907,268 | 8,941,538 | 58,592,138 |
| | 142,852,000 | 121,157,461 | 50,000,000 | - | - | 25,546,330 | 196,703,791 |

* Equalisation adjustment made during the year on admittance of Final Close Investor, Kuwait Ports Authority.

19

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2009

15.    CAPITAL ACCOUNTS (continued)

b) Cumulative balances as at 31 December 2009

| Limited Partners | Ownership % | Cumulative contributions US$ | Penalty allocation US$ | Cumulative Operating Income and Expenses US$ | Capital accounts 2009 US$ |
|---|---|---|---|---|---|
| General Retirement And Pension Authority Qatar | 6.90% | 9,852,000 | 1,088,276 | 3,713,969 | 14,654,245 |
| Gulf Investment Corporation | 7.00% | 10,000,000 | 1,104,625 | 3,769,761 | 14,874,386 |
| Behbehani Investment Company | 0.70% | 1,000,000 | 110,463 | 376,976 | 1,487,439 |
| The Public Institution For Social Security | 28.00% | 40,000,000 | 4,418,501 | 15,079,044 | 59,497,545 |
| Yaqoub Behbehani | 0.70% | 1,000,000 | 110,463 | 376,976 | 1,487,439 |
| Al Ahlia Holding Company | 2.10% | 3,000,000 | 331,388 | 1,130,929 | 4,462,317 |
| Kuwait Reinsurance Company K.S.C.C | 1.40% | 2,000,000 | 220,925 | 753,952 | 2,974,877 |
| Al Ahlia Insurance Company | 2.10% | 3,000,000 | 331,388 | 1,130,928 | 4,462,316 |
| Mohammed Ali Al-Naki | 2.10% | 3,000,000 | 331,388 | 1,130,928 | 4,462,316 |
| KGL Investment K.S.C.C | 14.00% | 20,000,000 | 2,209,251 | 7,539,522 | 29,748,773 |
| Kuwait Ports Authority | 35.00% | 50,000,000 | (10,256,668) | 18,848,806 | 58,592,138 |
| | 100.00% | 142,852,000 | - | 53,851,791 | 196,703,791 |

16.    COMPARATIVE FIGURES

Certain comparative figures have been reclassified to conform to current year's presentation.

20

**The Port Fund Limited Partnership
Cayman Islands**

**Financial statements and independent auditor's report
For the year ended 31 December 2010**

# The Port Fund Limited Partnership
# Cayman Islands

**Financial statements and independent auditor's report**

*For the year ended 31 December 2010*

| Contents | Page |
|---|---|
| The Investment Manager, General Partner and Professional Advisor of the Fund | 1 |
| Statement of Investment Manager's Responsibilities | 2 |
| Independent auditor's report | 3 |
| Statement of financial position | 4 |
| Statement of comprehensive income | 5 |
| Statement of changes in equity | 6 |
| Statement of cash flows | 7 |
| Notes to the financial statements | 8 - 20 |

# The Port Fund Limited Partnership
# Cayman Islands

**Financial statements and independent auditor's report**

*For the year ended 31 December 2010*

**The Investment Manager, General Partner and Professional Advisor of the Fund**

| | |
|---|---|
| **Investment Manager:** | KGL Investment Cayman Limited<br>Walkers SPV Ltd Walkers House,<br>87 Mary Street,<br>George Town Grand Cayman<br>KY1-9002 Cayman Islands |
| **General Partner:** | Port Link GP Limited<br>C/o Walkers SPV Ltd Walkers House,<br>87 Mary Street,<br>George Town Grand Cayman<br>KY1-9002 Cayman Islands |
| **Bankers:** | HSBC Bank Middle East Limited - Kuwait<br>G/1/2 Floors, Al-Kharafi Tower,<br>Qibla Area, Hamad Al-Saqr Street,<br>P O Box 1683, Safat 13017, Kuwait |
| **Auditors:** | Moore Stephens Al-Nisf & Partners<br>P.O.Box: 25578<br>Safat 13116<br>Kuwait |
| **Legal Advisors:** | Walkers Dubai LLP<br>5th Floor, The Exhange Building<br>Dubai International Finance Centre PO Box 506513<br>Dubai |
| **Administrators:** | Equity Trust (Mauritius) Limited<br>3rd Floor, Raffles Tower<br>19 Cybercity<br>Ebene, Mauritius |

**The Port Fund Limited Partnership**
**Cayman Islands**

**Financial statements and independent auditor's report**

*For the year ended 31 December 2010*

## STATEMENT OF THE INVESTMENT MANAGER'S RESPONSIBILITIES
## FOR THE YEAR ENDED 31 DECEMBER 2010

The Investment Manager of the Fund is responsible for the preparation of the financial statements for each financial period in accordance with the Limited Partnership Agreement which give a true and fair view of the state of affairs of the Fund and of the net expenditure of the Fund for that year. In preparing those financial statements, the Investment Manager is required to:

- Select suitable accounting policies and then apply them consistently;
- make judgements and estimates that are reasonable and prudent;
- state whether applicable accounting standards have been followed; and
- prepare the financial statements on the going concern basis unless it is inappropriate to presume the Limited Partnership will continue in business.

The Investment Manager is responsible for keeping the proper accounting records which disclose with reasonable accuracy at any time the financial position of the Fund and hence for taking reasonable steps for the prevention and detection of fraud and other irregularities.

# MOORE STEPHENS
PUBLIC ACCOUNTANTS

AL NISF & PARTNERS

Al Johara Tower, 6th Floor
Khaled Ben Al-Waleed Street, Sharq
P.O. Box: 25578, Safat 13116, Kuwait

Tel : 965 2242 6999
Fax : 965 2240 1666

## INDEPENDENT AUDITOR'S REPORT TO THE LIMITED PARTNERS' OF THE PORT FUND LIMITED PARTNERSHIP

### Report on the Financial Statements
We have audited the accompanying financial statements of The Port Fund Limited Partnership ("the Fund") which comprise the statement of financial position as at 31 December 2010, and the statement of comprehensive income, statement of changes in equity and statement of cash flows for the year then ended, and a summary of significant accounting policies and other explanatory information.

### Management's Responsibility for the Financial Statements
The Fund's management is responsible for the preparation and fair presentation of these financial statements in accordance with International Financial Reporting Standards, and for such internal control as management determines is necessary to enable the preparation of financial statements that are free from material misstatement, whether due to fraud or error.

### Auditor's Responsibility
Our responsibility is to express an opinion on these financial statements based on our audit. We conducted our audit in accordance with International Standards on Auditing. Those standards require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the fund's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the fund's internal control. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### Opinion
In our opinion, the financial statements present fairly, in all material respects, the financial position of the Fund as at 31 December 2010, and of its financial performance and cash flows for the year then ended in accordance with International Financial Reporting Standards.

**Qais M. Al-Nisf**
**License No. 38-A**
**Moore Stephens Al Nisf & Partners**
**Member of Moore Stephens International**

Kuwait:11 April 2011

3

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of financial position**

As at 31 December 2010

| | Notes | 2010 US$ | 2009 US$ |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 5 | 35,722,823 | 2,701,297 |
| Financial assets at fair value through statement of Income | 6 | 163,887,860 | 126,481,625 |
| Loans and receivables | 7 | 20,000,000 | 20,900,000 |
| Accrued interest | 8 | 7,563,836 | 8,181,138 |
| Prepayments and other receivables | 9 | 7,554 | 50,013,691 |
| Balances due from related party | 10 | 7,687,184 | 7,186,491 |
| **Total assets** | | 234,869,257 | 215,464,242 |
| | | | |
| **Liabilities** | | | |
| Accrued expenses | | 195,537 | 5,297,502 |
| Balances due to investment manager | 10 | 18,364,345 | 13,462,949 |
| **Total liabilities** | | 18,559,882 | 18,760,451 |
| **Net assets** | | 216,309,375 | 196,703,791 |
| | | | |
| **Represented by:** | | | |
| Fund capital | | 142,852,000 | 142,852,000 |
| Retained earnings | | 73,457,375 | 53,851,791 |
| **Total equity** | | 216,309,375 | 196,703,791 |

The notes on pages 8 to 20 form an integral part of these financial statements.

*Investment Manager*

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of comprehensive income**

For the year ended 31 December 2010

| | Notes | 2010 US$ | 2009 US$ |
|---|---|---|---|
| **Income** | | | |
| Unrealised  gain on financial assets at fair value  through statement of income | 6 | 30,019,727 | 38,977,328 |
| Interest income | | 430,016 | 806,009 |
| **Total income** | | 30,449,743 | 39,783,337 |
| | | | |
| **Expenses** | | | |
| Management fees | 10 | (2,857,040) | (4,281,697) |
| Impairment loss on financial assets at fair value  through statement of income | 6 | (1,688,492) | - |
| General and administrative expenses | 11 | (1,395,497) | (3,568,337) |
| Foreign exchange loss | | (1,734) | (390) |
| **Total expenses** | | (5,942,763) | (7,850,424) |
| **Profit for the year** | | 24,506,980 | 31,932,913 |
| Other comprehensive income | | - | - |
| **Total comprehensive income for the year** | | 24,506,980 | 31,932,913 |
| | | | |
| Attributable to investment manager * | | 4,901,396 | 6,386,583 |
| Attributable to limited partners | | 19,605,584 | 25,546,330 |
| | | 24,506,980 | 31,932,913 |

* The profit allocation to the Investment Manager is as per S 4.2c of the Limited Partnership Agreement.

The notes on pages 8 to 20 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of changes in equity**

For the year ended 31 December 2010

| | Fund capital US$ | Retained earnings US$ | Total equity US$ |
|---|---|---|---|
| **Balance at 31 December 2008** | 92,852,000 | 28,305,461 | 121,157,461 |
| New capital contribution | 50,000,000 | - | 50,000,000 |
| Total comprehensive income for the year attributable to limited partners | - | 25,546,330 | 25,546,330 |
| **Balance at 31 December 2009** | 142,852,000 | 53,851,791 | 196,703,791 |
| Total comprehensive income for the year attributable to limited partners | - | 19,605,584 | 19,605,584 |
| **Balance at 31 December 2010** | 142,852,000 | 73,457,375 | 216,309,375 |

The notes on pages 8 to 20 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of cash flows**

For the year ended 31 December 2010

| | Note | 2010 US$ | 2009 US$ |
|---|---|---|---|
| **OPERATING ACTIVITIES** | | | |
| Profit for the year | | 24,506,980 | 31,932,913 |
| Adjustments for: | | | |
| Interest income | | (430,016) | (806,009) |
| Impairment loss on financial assets at fair value through statement of income | | 1,688,492 | - |
| Unrealised gain on financial assets at fair value through statement of income | | (30,019,727) | (38,977,328) |
| Loss before changes in operating assets and liabilities | | (4,254,271) | (7,850,424) |
| Increase in balances due from related party | | (71,251) | (205,679) |
| Decrease in Accrued interest | | 617,302 | 153,879 |
| Decrease /(increase) in prepayments and other receivables | | 50,006,137 | (13,691) |
| (Decrease) /increase in payable and accruals | | (5,101,966) | 5,132,492 |
| **Net cash from /(used in) operating activities** | | 41,195,951 | (2,783,423) |
| | | | |
| **INVESTING ACTIVITIES** | | | |
| Purchase of financial assets at fair value through statement of income | | (9,075,000) | (14,944,842) |
| Loans | | 900,000 | (900,000) |
| Interest received | | 575 | 245,889 |
| **Net cash used in investing activities** | | (8,174,425) | (15,598,953) |
| **Net increase/(decrease) in cash and cash equivalents** | | 33,021,526 | (18,382,376) |
| Cash and cash equivalents at beginning of the year | | 2,701,297 | 21,083,673 |
| **Cash and cash equivalents at end of the year** | 5 | 35,722,823 | 2,701,297 |

The notes on pages 8 to 20 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2010

1.    **GENERAL INFORMATION**

The Port Fund Limited Partnership, ("the Fund") was established on 21 March 2007 and is registered as an exempt limited partnership in the Cayman Islands under the exempted Law (2003 Revision) of the Cayman Islands. The first closing acceptance of committed contributions was on 15 July 2007 and the final closing occurred on 31 December 2009.

The Fund will offer select sophisticated investors the opportunity to participate in the growth and consolidation of the port management industry and related sectors through selected private equity investments in high potential companies on a world wide basis.

The Port Link GP Limited ("General Partner") has appointed KGL Investment Cayman Limited ("Investment Manager") who is responsible for the preparation of the financial statements for each financial period in accordance with the Limited Partnership Agreement.

The Fund will terminate on 31 December 2012, but this may be extended by the General Partner for a period of consecutive periods of one year not exceeding two years in the aggregate, to permit the General Partner to dispose of existing investments in accordance with the Limited Partnership Agreement.

The financial statements of the Fund for the year ended 31 December 2010 were authorized for issue by the General Partner on 11 April 2011.

2.    **ADOPTION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS (IFRSs)**

2.1   *Standards and Interpretations adopted by the Fund*
The accounting policies adopted are consistent with those of the previous financial year, except for the new and amended IFRS and IFRIC interpretations effective as of 1 January 2010. The adoption of the standards and interpretations did not have any impact on the accounting policies, financial position or performance of the Fund.

2.2   *Standards and Interpretations in issue not yet effective*

- Amendments to IFRS 1, Limited Exemption from Comparative IFRS 7 Disclosures for First-time Adopters — Effective for annual periods beginning on or after 1 July 2010

- Amendments to IFRS 7, Disclosures Transfers of Financial Assets — Effective for annual periods beginning on or after 1 July 2011

- IAS 24 (as revised in 2009), Related Party Disclosures — Effective for annual periods beginning on or after 1 January 2011

- Amendments to IAS 32, Classification of Rights Issues — Effective for annual periods beginning on or after 1 February 2010

- IFRS 9, Financial Instruments — Effective for annual periods beginning on or after 1 January 2013.

- Amendments to IFRIC 14, Prepayments of a Minimum Funding Requirement — Effective for annual periods beginning on or after 1 January 2011

8

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2010

## 2   ADOPTION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS (IFRSs) (continued)

### 2.2   *Standards and Interpretations in issue not yet effective (continued)*

- IFRIC 19, Extinguishing Financial Liabilities with Equity Instruments

  Effective for annual periods beginning on or after 1 July 2010

- Improvements to IFRSs (issued in May 2010)

  Effective for annual periods beginning on or after 1 July 2010 and 1 January 2011, as appropriate

The Investment Manager anticipates that the adoption of these Standards, amendments and interpretations in future periods will have no material financial impact on the financial statements of the Fund in the period of initial application. The Investment Manager is considering the timing and implication of adopting IFRS 9 on its financial position.

## 3.   SIGNIFICANT ACCOUNTING POLICIES

### 3.1   Statement of compliance

The financial statements have been prepared in accordance with the International Financial Reporting Standards (IFRSs).

### 3.2   Basis of preparation

The financial statements are prepared on the historical cost basis except for measurement at fair value of financial assets at fair value through statement of income.

The financial statements have been presented in United States Dollar (US$) which is the functional currency of the Fund.

### 3.3   Cash and cash equivalents

Cash and cash equivalents comprise of cash and bank balances, and time deposits with an original maturity of three months or less from the acquisition date.

### 3.4   Financial assets at fair value through statement of income

Financial assets at fair value through statement of income are initially recognised at cost, excluding transaction costs. These investments are either "held for trading" or "designated".

"Held for trading investments" are acquired principally for the purpose of selling or repurchasing it in the near term or are a part of a portfolio of identified financial instruments that are managed together and for which there is evidence of a recent actual pattern of short term profit taking. "Designated investments" are investments which are designated as investments at fair value through statement of income on initial recognition. After initial recognition, financial assets at fair value through statement of income are remeasured at fair value.

Gain or losses arising either from the sale or changes in fair value of "financial assets at fair value through statement of income" are recognised in the statement of comprehensive income.

9

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2010

3.      **SIGNIFICANT ACCOUNTING POLICIES (continued)**

3.5     **Loans and receivables**

Loans and receivables that have fixed or determinable payments that are not quoted in an active market are classified as "loans and receivables". Loans and receivables are measured at amortised cost using the effective interest method less any impairment. Interest income is recognized by applying the effective interest rate, except for short-term advances when the recognition of interest would be immaterial.

3.6     **Fair value**

For securities traded in organised financial markets, fair value is determined by reference to Stock Exchange quoted market bid prices at the close of business on the statement of financial position date.

For securities where there is no quoted market price, a reasonable estimate of the fair value is determined by reference to the current market value of another instrument which is substantially the same, or is based on the expected discounted cash flows. The determination of fair value is done for each investment individually.

3.7     **Trade date and settlement date accounting**

All "regular way" purchases and sales of financial assets are recognised on the trade date, i.e. the date that the Fund commits to purchase or sell the assets. Regular way purchases or sales, are transactions that require the delivery of assets within the time frame generally established by regulation or convention in the market place concerned.

3.8     **Provisions**

A provision is recognised in the statement of financial position when the Fund has a legal or constructive obligation as a result of a past event, it is probable that an outflow of economic benefits will be required to settle the obligation and a reliable estimate can be made of the amount of the obligation. If the effect is material, provisions are determined by discounting the expected future cash flows that reflects current market assessments of the time value of money and, where appropriate, the risks specific to the liability.

3.9     **Related party transactions**

Related parties are general partner, limited partners, investment manager, directors, key management personnal and entities controlled, jointly controlled or significantly influanced by such parties. All related party transactions are carried out in the normal course of business and with the approval of the management.

3.10    **Revenue recognition**

Revenue is measured at the fair value of the consideration received or receivable.

Interest income is accrued on a time basis, by reference to the principal outstanding and at the effective interest rate applicable, which is the rate that exactly discounts estimated future cash receipts through the expected life of the financial asset to that asset's net carrying amount.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2010

3.      **SIGNIFICANT ACCOUNTING POLICIES (continued)**

3.10    **Revenue recognition (continued)**

Dividend income from investments is recognised when the shareholder's right to receive payment has been established. Gain on sale of investments is measured by the difference between the sale proceeds and the carrying amount of the investment at the date of disposal, and is recognized at the time of sale. Management fees and performance fees are accrued when services are performed.

3.11    **Accrued income**

Accrued income are recognised initially at fair value and subsequently measured at amortised cost using the effective interest method, less provision for impairment losses.

3.12    **Accrued expenses**

Accrued expenses are recognized initially at cost and subsequently measured at amortized cost.

3.13    **Foreign currency translation**

Foreign currency transactions are recorded in US$ at the rate of exchange ruling at the date of the transaction. Monetary assets and liabilities denominated in foreign currencies are translated into US$ at the rate of exchange prevailing on the statement of financial position date. Resulting gains or losses on exchange are recorded as part of the results for the year.

4.      **CRITICAL ACCOUNTING JUDGEMENTS AND KEY SOURCES OF ESTIMATION OF UNCERTAINTY**

In the application of the Fund's accounting polices, which are described in note 3, management is required to make judgements, estimates and assumption about the carrying amounts of assets and liabilities that are not readily apparent from other sources. The estimates and associated assumptions are based on historical experience and other factors that are considered to be relevant. Actual results may differ from these estimates.

The estimates and underlying assumptions are reviewed on an ongoing basis. Revisions to accounting estimates are recognised in the year in which the estimate is revised if the revision affects only that year or in the year of the revision and future years if the revision affects both current and future years.

**Judgements**
In the process of applying the Fund's accounting policies, management has made the following judgements, apart from those involving estimations, which have the most significant effect in the amounts recognised in the financial statements:

Classification of investments
Management decides on acquisition of an investment whether it should be classified as at fair value through statement of income or as available for sale. In making those judgements the Fund considers the primary purpose for which it is acquired and how it intends to manage and report its performance. Such judgement determines whether it is subsequently measured at cost, amortised cost or at fair value and if the changes in fair value of instruments are reported in profit or loss or in other comprehensive income.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2010

4.    **CRITICAL ACCOUNTING JUDGEMENTS AND KEY SOURCES OF ESTIMATION OF UNCERTAINTY (continued)**

**Estimation uncertainty**

The key assumptions concerning the future and other key sources of estimation uncertainty at the statement of financial position date, that have a significant risk of causing a material adjustment to the carrying amounts of assets and liabilities within the next financial year are discussed below:

*Valuation of unquoted equity investments*

Valuation of unquoted equity investments is normally based on one of the following:

- recent arm's length market transactions;
- current fair value of another instrument that is substantially the same ;
- earnings multiple ;
- the expected cash flows discounted at current rates applicable for items with similar terms and risk characteristics; or
- other valuation models.

The determination of the cash flows and discount factors for unquoted equity investments requires significant estimation.

5.    **CASH AND CASH EQUIVALENTS**

|  | 2010 | 2009 |
|---|---|---|
|  | US$ | US$ |
| Bank balances | 35,722,823 | 701,297 |
| Time deposits | - | 2,000,000 |
|  | 35,722,823 | 2,701,297 |

The time deposits with banks yield interest at nil (2009: 5.25%) per annum and mature within three months from the date of deposit.

6.    **FINANCIAL ASSETS AT FAIR VALUE THROUGH STATEMENT OF INCOME**

|  | Fair value at 31 December 2009 | Additions during the year | Fair value adjustment at 31 December 2010 | Impairment during the year | Fair value at 31 December 2010 |
|---|---|---|---|---|---|
|  | US$ | US$ | US$ | US$ | US$ |
| **Unquoted investments:** |  |  |  |  |  |
| Project MPC Global | 2,081,562 | - | (393,070) | (1,688,492) | - |
| Project Master | 58,602,018 | - | 25,337,387 | - | 83,939,405 |
| Project City | 65,798,045 | 9,075,000 | 5,075,410 | - | 79,948,455 |
|  | 126,481,625 | 9,075,000 | 30,019,727 | (1,688,492) | 163,887,860 |

12

**The Port Fund Limited Partnership**
**Cayman Islands**

Notes to the financial statements

For the year ended 31 December 2010

6.    **FINANCIAL ASSETS AT FAIR VALUE THROUGH STATEMENT OF INCOME (continued)**

The financial assets at fair value through statement of income amounting to US$ 163,887,860 is carried at fair value as determined based on the independent third party valuation reports prepared using pricing models and discounted cash flow techniques that are based on non-observable market prices or rates for which an unrealised gain of US$ 30,019,727 (2009: US$ 38,977,328) was recognised in the statement of comprehensive income for the year.

7.    **LOANS AND RECEIVABLES**

|  | 2010 | 2009 |
|---|---|---|
|  | US$ | US$ |
| **Convertible loan:** | | |
| At cost | 20,000,000 | 20,000,000 |
| **Other loan:** | | |
| UNIFIED Transport and Logistic Company ("UNIF") | - | 900,000 |
|  | 20,000,000 | 20,900,000 |

The convertible loan to KGL International for Ports, Warehousing and Transport K.S.C.C. is for a period of five years with a final maturity date of 26 August 2012.The loan is interest bearing at a simple rate of interest of 28% per annum. Interest on the principal of US$ 20,000,000 is accrued every year and is payable with the principal on maturity of the loan. During the current year no interest has been accrued as the agreement is currently being renegotiated.

The loan is convertible at the option of the Fund into 2 million shares in Damietta International Ports Company. The Fund is entitled to convert the loan to shares at any time before its final settlement on 26 August 2012.

The Fund through its bankers HSBC Bank provided a bank Guarantee of US$ 900,000 to UNIF with a renewed expiry date of 31 December 2009. As per the agreement, guarantee claims and expenses were made during 2009 amounting to US$ 913,691 and interest of US$ 57,181 has been charged thereon. The interest rate is based on 6% per annum each year on non claimed amounts and 9% per annum on enchased amounts. During 2010 all these amounts due from UNIF was settled to the fund by a related party.

8.    **ACCRUED INTEREST**

|  | 2010 | 2009 |
|---|---|---|
|  | US$ | US$ |
| Balances due from KGL International for Ports and Warehousing K.S.C.C. (note 7) | 7,563,836 | 7,563,836 |
| Balances due from KGL Investments K.S.C.C | - | 558,465 |
| Accrued interest on time deposits from banks | - | 1,656 |
| Interest on UNIF loan (note 7) | - | 57,181 |
|  | 7,563,836 | 8,181,138 |

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2010

## 9.   PREPAYMENTS AND OTHER RECEIVABLES

|  | 2010 US$ | 2009 US$ |
|---|---|---|
| Balances due from limited partner – Kuwait Ports Authority* | - | 50,000,000 |
| Prepayments | 7,554 | - |
| Guarantee charges on UNIF | - | 13,691 |
|  | 7,554 | 50,013,691 |

*This amount has been received in full on 18 July 2010.

## 10.   RELATED PARTY TRANSACTIONS AND BALANCES

|  | 2010 US$ | 2009 US$ |
|---|---|---|
| **Statement of financial position** |  |  |
| **Balances due from related party** |  |  |
| ▪   KGL Investments K.S.C.C | 7,687,184 | 7,186,491 |
| ▪   Loans and receivables (note 7) | 20,000,000 | 20,900,000 |
| ▪   Balances due from KGL International for Ports, Warehousing and Transport  K.S.C.C (note 8) | 7,563,836 | 7,563,836 |
| **Balances due to investment manager** |  |  |
| ▪   KGL Investments Cayman Limited | 18,364,345 | 13,462,949 |

In accordance with the Limited Partnership Agreement, 20% of the profit has been allocated to the Investment Manager as performance fees, KGL Investments Cayman Limited.

In accordance with the Limited Partnership Agreement, 2% of the total capital commitments have been allocated to the Investment Manger, KGL Investments Cayman Limited as management fees.

## 11.   GENERAL AND ADMINISTRATIVE EXPENSES

|  | 2010 US$ | 2009 US$ |
|---|---|---|
| Aborted deal cost | - | 89,571 |
| Professional fees | 315,209 | 837,757 |
| Marketing expenses | - | 2,500,000 |
| Travel expenses | - | 29,902 |
| Success fee | 1,000,000 | - |
| Others | 80,288 | 111,107 |
|  | 1,395,497 | 3,568,337 |

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2010

12. **TAXATION**

As per the Limited Partnership Agreement Any tax liability arising on the activity of the Fund will be borne by the partners.

13. **FINANCIAL RISK MANAGEMENT**

The Fund primarily invests in equity related investments in port management companies that operate ports in the fastest growing regions of the world which are the developing markets of the Asia, Africa and the Middle East. The objective of the Fund is to achieve long term capital appreciation through investments in entrepreneurial companies demonstrating the potential for significant growth derived from products and services with international market appeal and demonstrate and sustainable competitive advantages.

The Fund is exposed to a number of risks arising from the various financial instruments it holds. The main risk to which the Fund is exposed is; credit risk, market price risk, interest rate risk and liquidity risk. The risk management policies employed by the Fund to manage these risks are discussed below:

a. **Market price risk**

The Fund's unquoted investments are susceptible to market price risk arising from uncertainties about future values of investment securities. The Fund's advisor advises the Fund on the investments that have prospects to appreciate in value over the medium to long term period. The advisor's recommendations are reviewed by the General Partner before the investment decisions are implemented.

The performance of investments held by the Fund is monitored by the advisory committee on an ongoing basis and reviewed on a regular basis by the General Partner.

b. **Currency risk**

The Fund hold assets denominated in currencies other than US$, the functional and presentation currency of the Fund. Consequently the Fund is exposed to currency risk since the value of the securities denominated in other currencies will fluctuate due to changes in exchange rates. The Fund's policy is not to enter into any currency hedging transactions.

The table below summarise the Fund's exposure to currency risks. Included in the tables are the Fund's assets and liabilities at fair values categorised by their base currencies;

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2010

13.   FINANCIAL RISK MANAGEMENT (continued)

c.   Concentration of assets and liabilities

| As at 31 December 2010 | Other currencies | United States Dollars | Total |
|---|---|---|---|
| | US$ | US$ | US$ |
| **Assets** | | | |
| Convertible loan | - | 20,000,000 | 20,000,000 |
| Financial assets at fair value through statement of income | - | 163,887,860 | 163,887,860 |
| Accrued interest | - | 7,563,836 | 7,563,836 |
| Prepayments and other receivables | - | 7,554 | 7,554 |
| Due from related parties | - | 7,687,184 | 7,687,184 |
| Cash and cash equivalents | 402,125 | 35,320,698 | 35,722,823 |
| **Total assets** | 402,125 | 234,467,132 | 234,869,257 |
| | | | |
| **Liabilities** | | | |
| Due to investment manager | - | (18,364,345) | (18,364,345) |
| Accrued expenses | - | (195,537) | (195,537) |
| **Total net assets** | 402,125 | 215,907,250 | 216,309,375 |
| | | | |
| **As at 31 December 2009** | | | |
| **Assets** | | | |
| Convertible loan | - | 20,000,000 | 20,000,000 |
| Other Loans | - | 900,000 | 900,000 |
| Financial assets at fair value through statement of income | - | 126,481,625 | 126,481,625 |
| Prepayments and other receivables | - | 50,013,691 | 50,013,691 |
| Accrued interest | - | 8,181,138 | 8,181,138 |
| Due from related parties | - | 7,186,491 | 7,186,491 |
| Cash and cash equivalents | 305,888 | 2,395,409 | 2,701,297 |
| **Total assets** | 305,888 | 215,158,354 | 215,464,242 |
| | | | |
| **Liabilities** | | | |
| Due to investment manager | - | (13,462,949) | (13,462,949) |
| Accrued expenses | - | (5,297,502) | (5,297,502) |
| **Total net assets** | 305,888 | 196,397,903 | 196,703,791 |

d.   Interest rate risk

The majority of the Fund's financial assets and liabilities are non-interest bearing. As a result, the Fund is not subject to significant amounts of risk due to fluctuations in the prevailing levels of market. Interest income from cash deposits may fluctuate in amount, in particular due to changes in the interest rates. Whilst the Fund seeks to optimise overall performance from the assets it holds, it does not seek to maximise interest income in view of its policy to focus on unquoted investments but one of its investments is in a convertible loan which earns interest.

**The Port Fund Limited Partnership**
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2010

13.    **FINANCIAL RISK MANAGEMENT (continued)**

d.    **Interest rate risk (continued)**

The following table analyses the interest rate composition of the Fund's net assets.

| As at 31 December 2010 | Interest bearing | Non-interest bearing | Total |
|---|---|---|---|
| | US$ | US$ | US$ |
| Convertible loan | 20,000,000 | - | 20,000,000 |
| Financial assets at fair value through statement of income | - | 163,887,860 | 163,887,860 |
| Accrued interest | - | 7,563,836 | 7,563,836 |
| Prepayments and other receivables | - | 7,554 | 7,554 |
| Due from related parties | - | 7,687,184 | 7,687,184 |
| Cash and cash equivalents | - | 35,722,823 | 35,722,823 |
| Due to investment manager | - | (18,364,345) | (18,364,345) |
| Accrued expenses | - | (195,537) | (195,537) |
| | 20,000,000 | 196,309,375 | 216,309,375 |
| **As at 31 December 2009** | | | |
| Convertible loan | 20,000,000 | - | 20,000,000 |
| Other loan | 900,000 | - | 900,000 |
| Financial assets at fair value through statement of income | - | 126,481,625 | 126,481,625 |
| Accrued interest | - | 8,181,138 | 8,181,138 |
| Prepayments and other receivables | | 50,013,691 | 50,013,691 |
| Due from related parties | - | 7,186,491 | 7,186,491 |
| Cash and cash equivalents | - | 2,701,297 | 2,701,297 |
| Due to investment manager | - | (13,462,949) | (13,462,949) |
| Accrued expenses | - | (5,297,502) | (5,297,502) |
| | 20,900,000 | 175,803,791 | 196,703,791 |

e.    **Liquidity risk**

The liquidity risk is that the Fund cannot meet its financial obligations when they fall due. As at 31 December 2010, the amount available for call and other charges amounted to US$ 7,687,184. The Fund has no liquidity risk for the foreseeable future. Some of the investments are unquoted and are not readily realisable. The maturity profile of the funds liabilities are as follows.

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2010

13.    FINANCIAL RISK MANAGEMENT (continued)

e.    Liquidity risk (continued)

| As at 31 December 2010 | One to two years US$ | Three to five years US$ | Total US$ |
|---|---|---|---|
| Due to investment manager | - | 18,364,345 | 18,364,345 |
| Accrued expenses | 195,537 | - | 195,537 |
| | 195,537 | 18,364,345 | 18,559,882 |
| As at 31 December 2009 | | | |
| Due to investment manager | - | 13,462,949 | 13,462,949 |
| Accrued expenses | 5,297,502 | - | 5,297,502 |
| | 5,297,502 | 13,462,949 | 18,760,451 |

f.    Fair value of financial instruments

The Fund used discounted cash flow and other pricing models to value its investments in financial assets at fair value through statement of income that are based on non-observable prices or rates. The Fund's investments in financial assets at fair value through statement of income are classified within level 3 investments.

| 31 December 2010 | Level 3 US$ |
|---|---|
| **Financial assets at fair value through statement of income** | |
| Unquoted investments | 163,887,860 |

| 31 December 2009 | Level 3 US$ |
|---|---|
| **Financial assets at fair value through statement of income** | |
| Unquoted investments | 126,481,625 |

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2010

13.   **FINANCIAL RISK MANAGEMENT (continued)**

f.   **Fair value of financial instruments (continued)**

**Reconciliation of Level 3 fair value measurements of financial assets at fair value through statement of income**

| 31 December 2010 | Financial assets at fair value through statement of income |
| --- | --- |
| | US $ |
| As at 1 January 2010 | 126,481,625 |
| Additions during the year | 9,075,000 |
| Total gains or losses in valuation | 30,019,727 |
| Impairment loss | (1,688,492) |
| Ending balance | 163,887,860 |

| 31 December 2009 | Financial assets at fair value through statement of income |
| --- | --- |
| | US $ |
| As at 1 January 2009 | 72,559,455 |
| Additions during the year | 14,944,842 |
| Total gains or losses in valuation | 38,977,328 |
| Ending balance | 126,481,625 |

14.   **COMMITMENTS AND CONTINGENT LIABILITIES**

| | 2010 | 2009 |
| --- | --- | --- |
| | US $ | US $ |
| Investment commitments | 15,250,000 | 9,812,500 |

The total unfunded commitment of investment in MPC Global is USD 16,250,000. The called but unfunded commitments to MPC Global are in the amount of US$ 15,250,000. This amount has not been paid by the Fund pending MPC Global demonstrating to the Fund's satisfaction that it has complied in all material manners with the MPC Global Private Placement Memorandum. MPC Global commenced its legal proceedings in Luxembourg against the Fund in January 2010 (the "proceedings"). The proceedings are a result of the disagreement between MPC Global and the Fund regarding their respective obligations and responsibilities as per the PPM. There is a possibility of an obligation to pay this amount in the near future as per the PPM.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For   year ended 31 December 2010

15.    **CAPITAL ACCOUNTS**

Movement during the year from 1 January 2010 to 31 December 2010

| Limited Partners | Ownership % | Total Commitment US$ | Cumulative Contributions US$ | Previous Years' Profits and Equalisation Adjustments US$ | Profit for the Year 2010 US$ | Capital accounts 2010 US$ |
|---|---|---|---|---|---|---|
| General Retirement and Social Insurance Authority, Qatar | 6.90% | 9,852,000 | 9,852,000 | 5,169,584 | 1,352,128 | 16,373,712 |
| Gulf Investment Corporation. | 7.00% | 10,000,000 | 10,000,000 | 5,247,243 | 1,372,440 | 16,619,683 |
| Behbehani Investment Company. | 0.70% | 1,000,000 | 1,000,000 | 524,725 | 137,244 | 1,661,969 |
| The Public Institution For Social Security | 28.00% | 40,000,000 | 40,000,000 | 20,988,974 | 5,489,761 | 66,478,735 |
| Yaqoub Behbehani | 0.70% | 1,000,000 | 1,000,000 | 524,725 | 137,244 | 1,661,969 |
| Al Ahlia Holding Company. | 2.10% | 3,000,000 | 3,000,000 | 1,574,174 | 411,732 | 4,985,906 |
| Kuwait Reinsurance Company K.S.C.C | 1.40% | 2,000,000 | 2,000,000 | 1,049,448 | 274,488 | 3,323,936 |
| Al Ahlia Insurance Company. | 2.10% | 3,000,000 | 3,000,000 | 1,574,173 | 411,732 | 4,985,905 |
| Mohammed Ali Al-Naki | 2.10% | 3,000,000 | 3,000,000 | 1,574,173 | 411,732 | 4,985,905 |
| Kgl Investment K.S.C.C | 14.00% | 20,000,000 | 20,000,000 | 10,494,487 | 2,744,882 | 33,239,369 |
| Kuwait Ports Authority | 35.00% | 50,000,000 | 50,000,000 | 5,130,085 | 6,862,201 | 61,992,286 |
| | 100.00% | 142,852,000 | 142,852,000 | 53,851,791 | 19,605,584 | 216,309,375 |

* Equalisation adjustment made on funding by Limited Partner , Kuwait Ports Authority.

20

# The Port Fund Limited Partnership
# Cayman Islands

**Financial statements and independent auditor's report**
**For the year ended 31 December 2011**

# The Port Fund Limited Partnership
# Cayman Islands

**Financial statements and independent auditor's report**

*For the year ended 31 December 2011*

| Contents | Page |
|---|---|
| The Investment Manager, General Partner and Professional Advisor of the Fund | 1 |
| Statement of Investment Manager's Responsibilities | 2 |
| Independent auditor's report | 3 |
| Statement of financial position | 4 |
| Statement of comprehensive income | 5 |
| Statement of changes in equity | 6 |
| Statement of cash flows | 7 |
| Notes to the financial statements | 8 - 22 |

# The Port Fund Limited Partnership
# Cayman Islands

**Financial statements and independent auditor's report**

*For the year ended 31 December 2011*

**The Investment Manager, General Partner and Professional Advisor of the Fund**

| | |
|---|---|
| **Investment Manager:** | KGL Investment Cayman Limited<br>Walkers SPV Ltd Walkers House,<br>87 Mary Street,<br>George Town Grand Cayman<br>KY1-9002 Cayman Islands |
| **General Partner:** | Port Link GP Limited<br>C/o Walkers SPV Ltd Walkers House,<br>87 Mary Street,<br>George Town Grand Cayman<br>KY1-9002 Cayman Islands |
| **Bankers:** | HSBC Bank Middle East Limited - Kuwait<br>G/1/2 Floors, Al-Kharafi Tower,<br>Qibla Area, Hamad Al-Saqr Street,<br>P O Box 1683, Safat 13017, Kuwait |
| **Auditors:** | BDO Al-Nisf & Partners<br>P.O.Box: 25578<br>Safat 13116<br>Kuwait |
| **Legal Advisors:** | Walkers Dubai LLP<br>5th Floor, The Exchange Building<br>Dubai International Finance Centre PO Box 506513<br>Dubai |
| **Administrators:** | TMF Mauritius Limited<br>(Formerly Equity Trust (Mauritius) Limited)<br>3rd Floor, Raffles Tower<br>19 Cybercity<br>Ebene, Republic of Mauritius |

# The Port Fund Limited Partnership
# Cayman Islands

**Financial statements and independent auditor's report**

*For the year ended 31 December 2011*

## STATEMENT OF THE INVESTMENT MANAGER'S RESPONSIBILITIES
## FOR THE YEAR ENDED 31 DECEMBER 2011

The Investment Manager of the Fund is responsible for the preparation of the financial statements for each financial period in accordance with the Limited Partnership Agreement which give a true and fair view of the state of affairs of the Fund and of the net expenditure of the Fund for that year. In preparing those financial statements, the Investment Manager is required to:

- Select suitable accounting policies and then apply them consistently;
- make judgements and estimates that are reasonable and prudent;
- state whether applicable accounting standards have been followed; and
- prepare the financial statements on the going concern basis unless it is inappropriate to presume the Limited Partnership will continue in business.

The Investment Manager is responsible for keeping the proper accounting records which disclose with reasonable accuracy at any time the financial position of the Fund and hence for taking reasonable steps for the prevention and detection of fraud and other irregularities.



Tel: +965 2242 6999
Fax: +965 2240 1666
www.bdo.com.kw

Al Johara Tower, 6ᵗʰ Floor
Khaled Ben Al Waleed Street, Sharq
P.O. Box 25578, Safat 13116
Kuwait

## INDEPENDENT AUDITOR'S REPORT TO THE LIMITED PARTNERS' OF THE PORT FUND LIMITED PARTNERSHIP

### *Report on the Financial Statements*
We have audited the accompanying financial statements of The Port Fund Limited Partnership ("the Fund") which comprise the statement of financial position as at 31 December 2011, and the statement of comprehensive income, statement of changes in equity and statement of cash flows for the year then ended, and a summary of significant accounting policies and other explanatory information.

### *Management's Responsibility for the Financial Statements*
The Fund Manager is responsible for the preparation and fair presentation of these financial statements in accordance with International Financial Reporting Standards, and for such internal control as management determines is necessary to enable the preparation of financial statements that are free from material misstatement, whether due to fraud or error.

### *Auditor's Responsibility*
Our responsibility is to express an opinion on these financial statements based on our audit. We conducted our audit in accordance with International Standards on Auditing. Those standards require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the fund's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the fund's internal control. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### *Opinion*
In our opinion, the financial statements present fairly, in all material respects, the financial position of the Fund as at 31 December 2011, and of its financial performance and cash flows for the year then ended in accordance with International Financial Reporting Standards.

**Qais M. Al-Nisf**
**License No. 38-A**
**BDO Al Nisf & Partners**

**Kuwait: 19 February 2012**

3

BDO Al Nisf & Partners is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of financial position**

As at 31 December 2011

| | Notes | 2011 US$ | 2010 US$ |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 5 | 8,751,010 | 35,722,823 |
| Financial assets at fair value through statement of Income | 6 | 247,877,008 | 163,887,860 |
| Loans and receivables | 7 | 20,000,000 | 20,000,000 |
| Accrued interest | 8 | - | 7,563,836 |
| Prepayments and other receivables | | - | 7,554 |
| Due from related party | 9 | 6,070,923 | 7,687,184 |
| **Total assets** | | 282,698,941 | 234,869,257 |
| | | | |
| **Liabilities** | | | |
| Accrued expenses | | 258,999 | 195,537 |
| Due to Investment Manager | 9 | 27,917,589 | 18,364,345 |
| **Total liabilities** | | 28,176,588 | 18,559,882 |
| **Net assets** | | 254,522,353 | 216,309,375 |
| | | | |
| **Represented by:** | | | |
| Fund capital | | 142,852,000 | 142,852,000 |
| Retained earnings | | 111,670,353 | 73,457,375 |
| **Total equity** | | 254,522,353 | 216,309,375 |

The accompanying notes on pages 8 to 22 form an integral part of these financial statements.

*Investment Manager*

4

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of comprehensive income**

For the year ended 31 December 2011

| | Notes | 2011 US$ | 2010 US$ |
|---|---|---|---|
| **Income** | | | |
| Unrealised gain on financial assets at fair value through statement of income (net) | 6 | 59,564,178 | 30,019,727 |
| Interest income | | 499,109 | 430,016 |
| **Total income** | | 60,063,287 | 30,449,743 |
| | | | |
| **Expenses** | | | |
| Management fees | 9 | (2,857,040) | (2,857,040) |
| Impairment loss on financial assets at fair value through statement of income | 6 | - | (1,688,492) |
| General and administrative expenses | 10 | (1,872,711) | (1,395,497) |
| Impairment provision for accrued interest | 8 | (7,563,836) | - |
| Foreign exchange loss | | (3,478) | (1,734) |
| **Total expenses** | | (12,297,065) | (5,942,763) |
| **Profit for the year** | | 47,766,222 | 24,506,980 |
| Other comprehensive income | | - | - |
| **Total comprehensive income for the year** | | 47,766,222 | 24,506,980 |
| | | | |
| Attributable to investment manager * | | 9,553,244 | 4,901,396 |
| Attributable to limited partners | | 38,212,978 | 19,605,584 |
| | | 47,766,222 | 24,506,980 |

* The profit allocation to the Investment Manager is as per S 4.2c of the Limited Partnership Agreement.

The accompanying notes on pages 8 to 22 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of changes in equity**

For the year ended 31 December 2011

| | Fund capital US$ | Retained earnings US$ | Total equity US$ |
|---|---|---|---|
| **Balance at 31 December 2009** | 142,852,000 | 53,851,791 | 196,703,791 |
| Total comprehensive income for the year attributable to limited partners | - | 19,605,584 | 19,605,584 |
| **Balance at 31 December 2010** | 142,852,000 | 73,457,375 | 216,309,375 |
| Total comprehensive income for the year attributable to limited partners | - | 38,212,978 | 38,212,978 |
| **Balance at 31 December 2011** | 142,852,000 | 111,670,353 | 254,522,353 |

The accompanying notes on pages 8 to 22 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of cash flows**

For the year ended 31 December 2011

| | Note | 2011 US$ | 2010 US$ |
|---|---|---|---|
| **OPERATING ACTIVITIES** | | | |
| Profit for the year | | 47,766,222 | 24,506,980 |
| Adjustments for: | | | |
| Interest income | | (499,109) | (430,016) |
| Impairment provision for accrued interest | | 7,563,836 | - |
| Impairment loss on financial assets at fair value through statement of income (net) | | - | 1,688,492 |
| Unrealised gain on financial assets at fair value through statement of income (net) | | (59,564,178) | (30,019,727) |
| | | (4,733,229) | (4,254,271) |
| **Changes in operating assets and liabilities:** | | | |
| Due from related party | | 2,103,455 | (71,251) |
| Accrued interest | | - | 617,302 |
| Prepayments and other receivables | | 7,554 | 50,006,137 |
| Payable and accruals | | 63,462 | (5,101,966) |
| **Net cash (used in) / from operating activities** | | (2,558,758) | 41,195,951 |
| | | | |
| **INVESTING ACTIVITIES** | | | |
| Purchase of financial assets at fair value through statement of income | | (24,424,970) | (9,075,000) |
| Loans | | - | 900,000 |
| Interest received | | 11,915 | 575 |
| **Net cash used in investing activities** | | (24,413,055) | (8,174,425) |
| **Net (decrease) / increase in cash and cash equivalents** | | (26,971,813) | 33,021,526 |
| Cash and cash equivalents at beginning of the year | | 35,722,823 | 2,701,297 |
| **Cash and cash equivalents at end of the year** | 5 | 8,751,010 | 35,722,823 |

The accompanying notes on pages 8 to 22 form an integral part of these financial statements.

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2011

1. **GENERAL INFORMATION**

The Port Fund Limited Partnership, ("the Fund") was established on 21 March 2007 and is registered as an exempt limited partnership in the Cayman Islands under the exempted Law (2003 Revision) of the Cayman Islands. The first closing acceptance of committed contributions was on 15 July 2007 and the final closing occurred on 31 December 2009.

The Fund will offer select sophisticated investors the opportunity to participate in the growth and consolidation of the port management industry and related sectors through selected private equity investments in high potential companies on a world wide basis.

The Port Link GP Limited ("General Partner") has appointed KGL Investment Cayman Limited ("Investment Manager") who is responsible for the preparation of the financial statements for each financial period in accordance with the Limited Partnership Agreement.

The Fund will terminate on 31 December 2012, but this may be extended by the General Partner for up to two consecutive additional one year periods, to permit the General Partner to dispose of existing investments in accordance with the Limited Partnership Agreement.

These financial statements of the Fund for the year ended 31 December 2011 were authorized for issue by the Investment Manager on 19 February 2012.

2. **ADOPTION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS (IFRSs)**

2.1 **New / revised *IFRS adopted by the Fund***

The accounting policies used in the preparation of these financial statement are consistent with those used in the previous year, except for the adoption of the following new and amended IASB Standards during the year:

- *IAS 24 Related Party Disclosures (Revised)*
  The amendment clarified the definition of a related party to simplify the identification of such relationships and to eliminate inconsistencies in its application. The adoption of the amendment did not have any impact on the financial position or performance of the Fund.

- *IAS 32: Financial Instruments: Presentation - (Amended)*
  The amendment alters the definition of a financial liability in IAS 32 to enable entities to classify rights issues in foreign currency and certain options or warrants as equity instruments. The amendment is applicable if the rights are given pro rata to all of the existing owners of the same class of an entity's non-derivative equity instruments, to acquire a fixed number of the entity's own equity instruments for a fixed amount in any currency. The amendment has had no effect on the financial statements or performance of the Fund.

- *IAS 1 Presentation of Financial Statements (Amendment)*
  The amendment clarifies that an entity may choose to present the required analysis of items of other comprehensive income either in the statement of changes in equity or in the notes to the financial statements. The adoption of the amendment did not have any impact on the financial position or performance of the Fund.

8

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2011

## 2. ADOPTION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS (IFRSs) (continued)

### 2.2 *New / revised IFRS in issue but not yet effective and not early adopted by the Fund*

Standards issued but not yet effective up to the date of issuance of the Fund's financial statements are listed below. This listing of standards issued are those that the Fund reasonably expects to have an impact on disclosures, financial position or performance when applied at a future date. The Fund intends to adopt these standards when they become effective.

- *IFRS 7 Financial Instruments: Disclosures — Enhanced Derecognition Disclosure Requirements*
  The amendment requires additional disclosure about financial assets that have been transferred but not derecognised to enable the user of the Fund's financial statements to understand the relationship with those assets that have not been derecognised and their associated liabilities. In addition, the amendment requires disclosures about continuing involvement in derecognised assets to enable the user to evaluate the nature of, and risks associated with, the Fund's continuing involvement in those derecognised assets. The amendment becomes effective for annual periods beginning on or after 1 July 2011. The amendment affects disclosure only and has no impact on the Fund's financial position or performance.

- *IFRS 9 Financial Instruments*
  IFRS 9 as issued reflects the first phase of the IASBs work on the replacement of IAS 39 and applies to classification and measurement of financial assets and financial liabilities as defined in IAS 39. The Standard is effective for annual periods beginning on or after 1 January 2015. In subsequent phases, the IASB will address hedge accounting and impairment of financial assets. The adoption of the first phase of IFRS 9 will have an effect on the classification and measurement of the Fund's financial assets, but will potentially have no impact on classification and measurements of financial liabilities. The Fund will quantify the effect in conjunction with the other phases, when issued, to present a comprehensive picture.

- *IFRS 13 Fair Value Measurement*
  IFRS 13 establishes a single source of guidance under IFRS for all fair value measurements. The standard does not change when an entity is required to use fair value, but rather provides guidance on how to measure fair value under IFRS when fair value is required or permitted. The Fund is yet to assess IFRS 13's full impact and intends to adopt IFRS 13 no later than the accounting period beginning on or after 1 January 2013.

## 3. SIGNIFICANT ACCOUNTING POLICIES

**Statement of compliance**

These financial statements have been prepared in accordance with the International Financial Reporting Standards (IFRSs).

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2011

3.    **SIGNIFICANT ACCOUNTING POLICIES (continued)**

**Basis of preparation**

These financial statements are prepared on the historical cost basis except for measurement at fair value of financial assets at fair value through statement of income.

These financial statements have been presented in United States Dollar (US$) which is the functional and presentation currency of the Fund.

**Financial Instruments**

**Classification and measurement**

The Fund classifies its financial assets as "financial assets at fair value through statement of income" and "loans and receivables". Financial liabilities are classified as "other than at fair value through statement of income". All financial instruments are initially recognised at its fair value plus, transaction costs that are directly attributable to the acquisition of the financial instrument. The Investment Manager determines the appropriate classification of each instrument at the time of acquisition.

*Financial assets at fair value through statement of income(FVTSI)*
Investments are classified as FVTSI where the financial asset is either held for trading or it is designated as FVTSI.

A financial asset is classified as held for trading if: (i) it has been acquired principally for the purpose of selling in the near future; or (ii) it is a part of an identified portfolio of financial instruments that the Fund manages together and has a recent actual pattern of short-term profit-taking; or (iii) it is a derivative that is not designated and effective as a hedging instrument.

A financial asset other than a financial asset held for trading may be designated as FVTSI upon initial recognition if: (i) such designation eliminates or significantly reduces a measurement or recognition inconsistency that would otherwise arise; or (ii) the financial asset forms part of a group of financial assets or financial liabilities or both, which is managed and its performance is evaluated on a fair value basis, in accordance with the Fund's documented risk management or investment strategy, and information about the grouping is provided internally on that basis; or (iii) it forms part of a contract containing one or more embedded derivatives, and IAS 39 Financial Instruments: Recognition and Measurement permits the entire combined contract (asset or liability) to be designated as at FVTSI.

Financial assets at FVTSI are stated at fair value, with any resultant gain or loss recognised in the statement of comprehensive income. The net gain or loss recognised in the statement of comprehensive income incorporates any dividend or interest earned on the financial asset. Fair value is determined in the manner described in note 12.

*Loans and receivables*
These are non-derivative financial assets with fixed or determinable payments that are not quoted in an active market. These are subsequently remeasured and carried at amortised cost, less any provision for impairment.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2011

3.     **SIGNIFICANT ACCOUNTING POLICIES (continued)**

*Loans and receivables(continued)*
Loans and receivables include convertible loan, cash and cash equivalents and due from related parties.

*Cash and cash equivalents*
Cash and cash equivalents comprise of cash and bank balances, and fixed deposits with banks with an original maturity of three months or less from the placement date.

*Amoritsed Cost*
Amortised cost is computed by taking into account any discount or premium on acquisition of the financial instrument and fees and costs that are an integral part of the effective interest rate. The effective interest rate is the rate that exactly discounts estimated future cash receipts through the expected life of the financial asset, or, where appropriate, a shorter period. The effective interest rate method is a method of calculating the amortised cost of a financial asset and of allocating interest income over the relevant period.

*Financial Liabilities*
Financial liabilities are classified as "other than at fair value through statement of income". These are subsequently remeasured at amortised cost using the effective interest rate method. Financial liabilities represent due to Investment Manager.

**Recognition and de-recognition**

A financial asset or a financial liability is recognised when the Fund becomes a party to the contractual provisions of the instrument.

All 'regular way' purchase and sale of financial assets are recognized using trade date accounting. Regular way purchases or sales are purchases or sales of financial assets that require delivery of assets within the time frame generally established by regulations or conventions in the market place.

A financial asset (in whole or in part) is derecognised where:
▪ the contractual rights to receive cash flows from the asset have expired,; or
▪ the Fund retains the right to receive cash flows from the asset, but has assumed an obligation to pay them in full without material delay to a third party under a 'pass through' arrangement; or
▪ the Fund has transferred its rights to receive cash flows from the asset and either (a) has transferred substantially all the risks and rewards of the asset, or (b) has neither transferred nor retained substantially all the risks and rewards of the asset, but has transferred control of the asset.

When the Fund has transferred its rights to receive cash flows from an asset and has neither transferred nor retained substantially all the risks and rewards of the asset nor transferred control of the asset, the asset is recognised to the extent of the Fund's continuing involvement in the asset. Continuing involvement that takes the form of a guarantee over the transferred asset is measured at the lower of the original carrying amount of the asset and the maximum amount of consideration that the Fund could be required to repay.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2011

3.    **SIGNIFICANT ACCOUNTING POLICIES (continued)**

A financial liability is derecognised when the obligation under the liability is discharged or cancelled or expires. Where an existing financial liability is replaced by another from the same lender on substantially different terms, or the terms of an existing liability are substantially modified, such an exchange or modification is treated as a derecognition of the original liability and recognition of a new liability and the difference between the carrying amount of the financial liability (or part of the financial liability) extinguished or transferred to another party and the consideration paid, including any non-cash assets transferred or liabilities assumed, is recognised in the statement of comprehensive income.

*Impairment of financial assets*
Financial assets are assessed for indicators of impairment at each financial position date. Financial assets are considered to be impaired where there is objective evidence that, as a result of one or more events that occurred after the initial recognition of the financial asset, the estimated future cash flows of the asset have been impacted.

Objective evidence of impairment could include:
- significant financial difficulty of the issuer or counterparty; or
- default or delinquency in interest or principal payments; or
- it becoming probable that the borrower will enter bankruptcy or financial re-organisation.

For financial assets carried at amortised cost, the amount of the impairment is the difference between the asset's carrying amount and the present value of estimated future cash flows, discounted at the financial asset's original effective interest rate. Individual impairment is identified at counterparty specific level; following objective evidence the financial asset is impaired. This may be after an interest or principal payment is defaulted or when a contract covenant is breached. The present value of estimated cash flow recoverable is determined after taking into account any security held.

The carrying amount of the financial asset is reduced by the impairment loss directly. If in a subsequent period, the amount of the impairment loss decreases and the decrease can be related objectively to an event occurring after the impairment was recognised, the previously recognised impairment loss is reversed through profit or loss to the extent that the carrying amount of the investment at the date the impairment is reversed does not exceed what the amortised cost would have been had the impairment not been recognised.

**Provisions**

A provision is recognised in the statement of financial position when the Fund has a legal or constructive obligation as a result of a past event, it is probable that an outflow of economic benefits will be required to settle the obligation and a reliable estimate can be made of the amount of the obligation. If the effect is material, provisions are determined by discounting the expected future cash flows that reflects current market assessments of the time value of money and, where appropriate, the risks specific to the liability.

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2011

3.    SIGNIFICANT ACCOUNTING POLICIES (continued)

Revenue recognition

Revenue is measured at the fair value of the consideration received or receivable.

Interest income is accrued on a time basis, by reference to the principal outstanding and at the effective interest rate applicable, which is the rate that exactly discounts estimated future cash receipts through the expected life of the financial asset to that asset's net carrying amount.

Dividend income from investments is recognised when the shareholder's right to receive payment has been established. Gain on sale of investments is measured by the difference between the sale proceeds and the carrying amount of the investment at the date of disposal, and is recognized at the time of sale. Management fees and performance fees are accrued when services are performed.

Accrued income

Accrued income is recognised at fair value.

Accrued expenses

Accrued expenses are recognized at cost.

Foreign currency translation

Foreign currency transactions are recorded in US$ at the rate of exchange ruling at the date of the transaction. Monetary assets and liabilities denominated in foreign currencies are translated into US$ at the rate of exchange prevailing on the financial position date. Resulting gains or losses on exchange are recorded as part of the results for the year.

4.    CRITICAL ACCOUNTING JUDGEMENTS AND KEY SOURCES OF ESTIMATION OF UNCERTAINTY

In the application of the Fund's accounting policies, which are described in note 3, the Investment Manager is required to make judgements, estimates and assumptions about the carrying amounts of assets and liabilities that are not readily apparent from other sources. The estimates and associated assumptions are based on historical experience and other factors that are considered to be relevant. Actual results may differ from these estimates.

The estimates and underlying assumptions are reviewed on an ongoing basis. Revisions to accounting estimates are recognised in the period in which the estimate is revised if the revision affects only that period, or in the period of the revision and future periods if the revision affects both current and future periods.

The following are the critical judgements, apart from those involving estimations (see below), that Investment Manager has made in the process of applying the Fund's accounting policies and that have the most significant effect on the amounts recognised in the financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2011

4.    **CRITICAL ACCOUNTING JUDGEMENTS AND KEY SOURCES OF ESTIMATION OF UNCERTAINTY (continued)**

*Classification of investments*
The classification of investments depends on the nature and purpose of the financial assets and is determined at the time of initial recognition. The Fund classifies all its investments as FVTSI.

**Key sources of estimation uncertainty**
The key assumptions concerning the future and other key sources of estimation uncertainty at the financial position date, that have a significant risk of causing a material adjustment to the carrying amounts of assets and liabilities within the next financial year are discussed below:

*Impairment of financial assets*
The Investment Manager reviews periodically items classified as loans and receivables to assess whether a provision for impairment should be recorded in the statement of comprehensive income. The Investment Manager estimates the amount and timing of future cash flows when determining the level of provisions required. Such estimates are necessarily based on assumptions about several factors involving varying degrees of judgement and uncertainty.

*Valuation of unquoted equity investments*
Valuation of unquoted equity investments is normally based on one of the following:
- recent arm's length market transactions;
- current fair value of another instrument that is substantially the same;
- the expected cash flows discounted at current rates applicable for items with similar terms and risk characteristics; or
- other valuation models.

5.    **CASH AND CASH EQUIVALENTS**

|                | 2011 | 2010 |
|----------------|------:|------:|
|                | US$ | US$ |
| Bank balances  | 3,751,010 | 35,722,823 |
| Fixed deposits | 5,000,000 | - |
|                | 8,751,010 | 35,722,823 |

Fixed deposits with banks yield interest at 0.5% (2010: nil) per annum and mature within three months from the date of deposit.

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2011

### 6.   FINANCIAL ASSETS AT FAIR VALUE THROUGH STATEMENT OF INCOME

|  | Fair value at 31 December 2010 | Additions during the year | Fair value adjustment at 31 December 2011 | Fair value at 31 December 2011 |
|---|---|---|---|---|
|  | US$ | US$ | US$ | US$ |
| **Unquoted investments:** |  |  |  |  |
| Project MPC | - | 4,500,000 | (1,088,379) | 3,411,621 |
| Project Master | 83,939,405 | - | 12,893,247 | 96,832,652 |
| Project City | 79,948,455 | 19,924,970 | 47,759,310 | 147,632,735 |
|  | 163,887,860 | 24,424,970 | 59,564,178 | 247,877,008 |

The financial assets at fair value through statement of income amounting to US$ 247,877,008 is carried at fair value as determined based on the independent third party valuation reports prepared using pricing models and discounted cash flow techniques that are based on non-observable market prices or rates for which an unrealised gain of US$ 59,564,178 (2010: US$ 30,019,727) was recognised in the statement of comprehensive income for the year.

### 7.   LOANS AND RECEIVABLES

|  | 2011 | 2010 |
|---|---|---|
|  | US$ | US$ |
| **Convertible loan:** |  |  |
| At cost | 20,000,000 | 20,000,000 |

The convertible loan to KGL International for Ports, Warehousing and Transport K.S.C.C. is for a period of five years with a final maturity date of 26 August 2012.

The loan is convertible at the option of the Fund into 2 million shares in Damietta International Ports Company. The Fund is entitled to convert the loan to shares at any time before its final settlement on 26 August 2012.

### 8.   ACCRUED INTEREST

|  | 2011 | 2010 |
|---|---|---|
|  | US$ | US$ |
| Interest due from KGL International for Ports and Warehousing K.S.C.C. (note 7) | 7,563,836 | 7,563,836 |
| Impairment provision during the year | (7,563,836) | - |
|  | - | 7,563,836 |

Due to unforeseen circumstances and current political situation in Egypt, till such time as the project is formally restarted the Fund has made a 100% impairment provision on the accrued interest receivable from KGL International for Ports and Warehousing K.S.C.C.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2011

### 9.    RELATED PARTY TRANSACTIONS AND BALANCES

Related parties are General Partner, Limited Partners, Investment Manager, Directors, key management personnel and entities controlled, jointly controlled or significantly influenced by such parties.  All related party transactions are carried out in the normal course of business and with the approval of the management.

The related party transactions and balances included in the financial statements that are not disclosed elsewhere are as follows:

| | 2011 | 2010 |
|---|---|---|
| | US$ | US$ |
| **Transactions** | | |
| Interest income | 487,194 | 429,441 |
| | | |
| **Statement of financial position** | | |
| **Due from related party** | | |
| ▪   KGL Investments K.S.C.C | 6,070,923 | 7,687,184 |
| | | |
| **Due to Investment Manager** | | |
| ▪   KGL Investments Cayman Limited | 27,917,589 | 18,364,345 |

In accordance with the Limited Partnership Agreement, 20% of the profit has been allocated to the Investment Manager KGL Investments Cayman Limited as performance fees.

In accordance with the Limited Partnership Agreement, 2% of the total capital commitments have been allocated to the Investment Manger, KGL Investments Cayman Limited as management fees.

### 10.    GENERAL AND ADMINISTRATIVE EXPENSES

| | 2011 | 2010 |
|---|---|---|
| | US$ | US$ |
| Administration expenses | 538,848 | 128,114 |
| Professional and legal fees | 249,763 | 187,095 |
| Interest on late payment (note 13) | 905,922 | - |
| Marketing expenses | 72,088 | - |
| Transaction fee | - | 1,000,000 |
| Others | 106,090 | 80,288 |
| | 1,872,711 | 1,395,497 |

### 11.    TAXATION

As per the Limited Partnership Agreement any tax liability arising on the activity of the Fund will be borne by the Partners.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2011

12.   **FINANCIAL RISK MANAGEMENT**

The Fund primarily invests in equity related investments in port management companies that operate ports in the fastest growing regions of the world which are the developing markets of the Asia, Africa and the Middle East. The objective of the Fund is to achieve long term capital appreciation through investments in entrepreneurial companies demonstrating the potential for significant growth derived from products and services with international market appeal and demonstrate and sustainable competitive advantages.

The Fund is exposed to a number of risks arising from the various financial instruments it holds. The main risk to which the Fund is exposed is; credit risk, market price risk, interest rate risk and liquidity risk. The risk management policies employed by the Fund to manage these risks are discussed below:

a.   **Market price risk**

The Fund's unquoted investments are susceptible to market price risk arising from uncertainties about future values of investment securities. The Fund's advisor advises the Fund on the investments that have prospects to appreciate in value over the medium to long term period. The advisor's recommendations are reviewed by the General Partner before the investment decisions are implemented.

The performance of investments held by the Fund is monitored by the advisory committee on an ongoing basis and reviewed on a regular basis by the General Partner.

b.   **Currency risk**

The Fund hold assets denominated in currencies other than US$, the functional and presentation currency of the Fund. Consequently the Fund is exposed to currency risk since the value of the securities denominated in other currencies will fluctuate due to changes in exchange rates. The Fund's policy is not to enter into any currency hedging transactions.

The table below summarize the Fund's exposure to currency risks. Included in the tables are the Fund's assets and liabilities at fair values categorised by their base currencies:

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2011

12.   **FINANCIAL RISK MANAGEMENT (continued)**

c.   **Concentration of assets and liabilities**

| As at 31 December 2011 | Other currencies | United States Dollars | Total |
|---|---|---|---|
| | US$ | US$ | US$ |
| **Assets** | | | |
| Convertible loan | - | 20,000,000 | 20,000,000 |
| Financial assets at fair value through statement of income | - | 247,877,008 | 247,877,008 |
| Due from related party | - | 6,070,923 | 6,070,923 |
| Cash and cash equivalents | 393,029 | 8,357,981 | 8,751,010 |
| **Total assets** | 393,029 | 282,305,912 | 282,698,941 |
| | | | |
| **Liabilities** | | | |
| Due to Investment Manager | - | (27,917,589) | (27,917,589) |
| Accrued expenses | - | (258,999) | (258,999) |
| **Total net assets** | 393,029 | 254,129,324 | 254,522,353 |
| | | | |
| **As at 31 December 2010** | | | |
| **Assets** | | | |
| Convertible loan | - | 20,000,000 | 20,000,000 |
| Financial assets at fair value through statement of income | - | 163,887,860 | 163,887,860 |
| Accrued interest | - | 7,563,836 | 7,563,836 |
| Prepayments and other receivables | - | 7,554 | 7,554 |
| Due from related party | - | 7,687,184 | 7,687,184 |
| Cash and cash equivalents | 402,125 | 35,320,698 | 35,722,823 |
| **Total assets** | 402,125 | 234,467,132 | 234,869,257 |
| | | | |
| **Liabilities** | | | |
| Due to investment manager | - | (18,364,345) | (18,364,345) |
| Accrued expenses | - | (195,537) | (195,537) |
| **Total net assets** | 402,125 | 215,907,250 | 216,309,375 |

d.   **Interest rate risk**

The majority of the Fund's financial assets and liabilities are non-interest bearing. As a result, the Fund is not subject to significant amounts of risk due to fluctuations in the prevailing levels of market. Interest income from fixed deposits may fluctuate in amount, in particular due to changes in the interest rates. Whilst the Fund seeks to optimise overall performance from the assets it holds, it does not seek to maximise interest income in view of its policy to focus on unquoted investments but one of its investments is in a convertible loan which earns interest.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2011

## 12.   FINANCIAL RISK MANAGEMENT (continued)

### d.   Interest rate risk (continued)

The following table analyses the interest rate composition of the Fund's net assets.

| As at 31 December 2011 | Interest bearing | Non-interest bearing | Total |
|---|---|---|---|
| | US$ | US$ | US$ |
| Convertible loan | 20,000,000 | - | 20,000,000 |
| Financial assets at fair value through statement of income | - | 247,877,008 | 247,877,008 |
| Due from related party | 6,070,923 | - | 6,070,923 |
| Cash and cash equivalents | 5,000,000 | 3,751,010 | 8,751,010 |
| Due to Investment Manager | - | (27,917,589) | (27,917,589) |
| Accrued expenses | - | (258,999) | (258,999) |
| | 31,070,923 | 223,710,429 | 254,522,353 |
| **As at 31 December 2010** | | | |
| Convertible loan | 20,000,000 | - | 20,000,000 |
| Financial assets at fair value through statement of income | - | 163,887,860 | 163,887,860 |
| Accrued interest | - | 7,563,836 | 7,563,836 |
| Prepayments and other receivables | - | 7,554 | 7,554 |
| Due from related party | 7,687,184 | - | 7,687,184 |
| Cash and cash equivalents | - | 35,722,823 | 35,722,823 |
| Due to Investment Manager | - | (18,364,345) | (18,364,345) |
| Accrued expenses | - | (195,537) | (195,537) |
| | 27,687,184 | 188,622,191 | 216,309,375 |

### e.   Liquidity risk

The liquidity risk is that the Fund cannot meet its financial obligations when they fall due. As at 31 December 2011, the amount available for call and other charges amounted to US$ 6,070,923. The Fund has no liquidity risk for the foreseeable future. Some of the investments are unquoted and are not readily realisable. The maturity profile of the Funds liabilities are as follows.

| As at 31 December 2011 | One to two years | Three to five years | Total |
|---|---|---|---|
| | US$ | US$ | US$ |
| Due to Investment Manager | - | 27,917,589 | 27,917,589 |
| Accrued expenses | 258,999 | - | 258,999 |
| | 258,999 | 27,917,589 | 28,176,588 |
| **As at 31 December 2010** | | | |
| Due to Investment Manager | - | 18,364,345 | 18,364,345 |
| Accrued expenses | 195,537 | - | 195,537 |
| | 195,537 | 18,364,345 | 18,559,882 |

19

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2011

## 12.   FINANCIAL RISK MANAGEMENT (continued)

### f.   Fair value of financial instruments

**Fair value measurements recognised in the statement of financial position**

The following table provides an analysis of financial instruments that are measured subsequent to initial recognition at fair value, grouped into Levels 1 to 3 based on the degree to which the fair value is observable.

- Level 1 fair value measurements are those derived from quoted prices (unadjusted) in active markets for identical assets or liabilities.
- Level 2 fair value measurements are those derived from inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly (i.e. as prices) or indirectly (i.e. derived from prices).
- Level 3 fair value measurements are those derived from valuation techniques that include inputs for the asset or liability that are not based on observable market data (unobservable inputs).

The Fund used discounted cash flow and other pricing models to value its investments in financial assets at fair value through statement of income that are based on non-observable prices or rates. The Fund's investments in financial assets at fair value through statement of income are classified within level 3 investments.

| 31 December 2011 | Level 3 |
| --- | --- |
| | US$ |
| **Financial assets at fair value through statement of income** | |
| Unquoted investments | 247,877,008 |

| 31 December 2010 | Level 3 |
| --- | --- |
| | US$ |
| **Financial assets at fair value through statement of income** | |
| Unquoted investments | 163,887,860 |

Reconciliation of Level 3 fair value measurements of financial assets at fair value through statement of income:

| 31 December 2011 | Financial assets at fair value through statement of income |
| --- | --- |
| | US $ |
| As at 1 January 2011 | 163,887,860 |
| Additions during the year | 24,424,970 |
| Total gains or losses on valuation (net) | 59,564,178 |
| Ending balance | 247,877,008 |

20

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2011

12.   **FINANCIAL RISK MANAGEMENT (continued)**

f.   **Fair value of financial instruments (continued)**

|  | Financial assets at fair value through statement of income |
|---|---|
| **31 December 2010** |  |
|  | US $ |
| As at 1 January 2010 | 126,481,625 |
| Additions during the year | 9,075,000 |
| Total gains or losses on valuation | 30,019,727 |
| Impairment loss | (1,688,492) |
| Ending balance | 163,887,860 |

13.   **COMMITMENTS AND CONTINGENT LIABILITIES**

|  | 2011 | 2010 |
|---|---|---|
|  | US $ | US $ |
| Investment commitments | 10,750,000 | 15,250,000 |

The total unfunded commitment of investment in MPC is USD 10,750,000 (2010: USD 15,250,000). This amount was not paid by the Fund pending MPC demonstrating to the Fund's satisfaction that it has complied in all material manners with the MPC's Private Placement Memorandum (PPM). MPC commenced its legal proceedings in Luxemburg against the Fund in January 2010 ("the proceedings"). The proceedings were a result of the disagreement between MPC and the Fund regarding their respective obligations and responsibilities as per the PPM. A settlement between MPC and the Fund was reached during 2011. Pursuant to this settlement agreement, the Fund contributed USD 4,500,000 towards its part of unpaid investment commitment in MPC and furthermore paid interest on late payment amounting USD 905,922. The total unfunded commitment in MPC is USD 10,750,000 at the financial position date.

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2011

14.   CAPITAL ACCOUNTS

Movement during the year from 1 January 2011 to 31 December 2011

| Limited Partners | Ownership % | Total Commitment US$ | Capital accounts at 31 December 2010 US$ | Profit for the year 2011 US$ | Capital accounts at 31 December 2011 US$ |
|---|---|---|---|---|---|
| General Retirement and Social Insurance Authority, Qatar | 6.90% | 9,852,000 | 16,373,712 | 2,636,695 | 19,010,407 |
| Gulf Investment Corporation | 7.00% | 10,000,000 | 16,619,683 | 2,674,908 | 19,294,591 |
| Behbehani Investment Company | 0.70% | 1,000,000 | 1,661,969 | 267,491 | 1,929,460 |
| The Public Institution For Social Security | 28.00% | 40,000,000 | 66,478,735 | 10,699,634 | 77,178,369 |
| Yaqoub Behbehani | 0.70% | 1,000,000 | 1,661,969 | 267,491 | 1,929,460 |
| Al Ahlia Holding Company | 2.10% | 3,000,000 | 4,985,906 | 802,473 | 5,788,379 |
| Kuwait Reinsurance Company K.S.C.C | 1.40% | 2,000,000 | 3,323,936 | 534,982 | 3,858,918 |
| Al Ahlia Insurance Company | 2.10% | 3,000,000 | 4,985,905 | 802,473 | 5,788,378 |
| Mohammed Ali Al-Naki | 2.10% | 3,000,000 | 4,985,905 | 802,473 | 5,788,378 |
| KGL Investment K.S.C.C | 14.00% | 20,000,000 | 33,239,369 | 5,349,816 | 38,589,185 |
| Kuwait Ports Authority | 35.00% | 50,000,000 | 61,992,286 | 13,374,542 | 75,366,828 |
| | 100.00% | 142,852,000 | 216,309,375 | 38,212,978 | 254,522,353 |

22

**The Port Fund Limited Partnership**
**Cayman Islands**

**Financial statements and independent auditor's report**
**For the year ended 31 December 2012**

**The Port Fund Limited Partnership**
**Cayman Islands**

**Financial statements and independent auditor's report**

*For the year ended 31 December 2012*

| Contents | Page |
|---|---|
| The Investment Manager, General Partner and Professional Advisor of the Fund | 1 |
| Statement of Investment Manager's Responsibilities | 2 |
| Independent auditor's report | 3 |
| Statement of financial position | 4 |
| Statement of comprehensive income | 5 |
| Statement of changes in equity | 6 |
| Statement of cash flows | 7 |
| Notes to the financial statements | 8 - 25 |

# The Port Fund Limited Partnership
# Cayman Islands

**Financial statements and independent auditor's report**

*For the year ended 31 December 2012*

**The Investment Manager, General Partner and Professional Advisor of the Fund**

| | |
|---|---|
| **Investment Manager:** | KGL Investment Cayman Limited<br>Walkers SPV Ltd Walkers House,<br>87 Mary Street,<br>George Town Grand Cayman<br>KY1-9002 Cayman Islands |
| **General Partner:** | Port Link GP Limited<br>C/o Walkers SPV Ltd Walkers House,<br>87 Mary Street,<br>George Town Grand Cayman<br>KY1-9002 Cayman Islands |
| **Bankers:** | Al Ahli Bank of Kuwait - Kuwait<br>Main Office, Kuwait City,<br>Kuwait |
| **Auditors:** | BDO Al-Nisf & Partners<br>P.O.Box: 25578<br>Safat 13116<br>Kuwait |
| **Legal Advisors:** | Walkers Dubai LLP<br>5th Floor, The Exchange Building<br>Dubai International Finance Centre PO Box 506513<br>Dubai |
| **Administrators:** | TMF Mauritius Limited<br>3rd Floor, Raffles Tower<br>19 Cybercity<br>Ebene, Republic of Mauritius |

# The Port Fund Limited Partnership
# Cayman Islands

**Financial statements and independent auditor's report**

*For the year ended 31 December 2012*

## STATEMENT OF THE INVESTMENT MANAGER'S RESPONSIBILITIES
## FOR THE YEAR ENDED 31 DECEMBER 2012

The Investment Manager of the Fund is responsible for the preparation of the financial statements for each financial period in accordance with the Limited Partnership Agreement which give a true and fair view of the state of affairs of the Fund and of the net expenditure of the Fund for that year. In preparing those financial statements, the Investment Manager is required to:

- Select suitable accounting policies and then apply them consistently;
- make judgements and estimates that are reasonable and prudent;
- state whether applicable accounting standards have been followed; and
- prepare the financial statements on the going concern basis unless it is inappropriate to presume the Limited Partnership will continue in business.

The Investment Manager is responsible for keeping the proper accounting records which disclose with reasonable accuracy at any time the financial position of the Fund and hence for taking reasonable steps for the prevention and detection of fraud and other irregularities.



Tel: +965 2242 6999
Fax: +965 2240 1666
www.bdo.com.kw

Al Johara Tower, 6ᵗʰ Floor
Khaled Ben Al Waleed Street, Sharq
P.O. Box 25578, Safat 13116
Kuwait

## INDEPENDENT AUDITOR'S REPORT TO THE LIMITED PARTNERS' OF THE PORT FUND LIMITED PARTNERSHIP

### Report on the Financial Statements

We have audited the accompanying financial statements of The Port Fund Limited Partnership ("the Fund") which comprise the statement of financial position as at 31 December 2012, and the statement of comprehensive income, statement of changes in equity and statement of cash flows for the year then ended, and a summary of significant accounting policies and other explanatory information.

### Management's Responsibility for the Financial Statements

The Fund Manager is responsible for the preparation and fair presentation of these financial statements in accordance with International Financial Reporting Standards, and for such internal control as management determines is necessary to enable the preparation of financial statements that are free from material misstatement, whether due to fraud or error.

### Auditor's Responsibility

Our responsibility is to express an opinion on these financial statements based on our audit. We conducted our audit in accordance with International Standards on Auditing. Those standards require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the fund's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the fund's internal control. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### Opinion

In our opinion, the financial statements present fairly, in all material respects, the financial position of the Fund as at 31 December 2012, and of its financial performance and cash flows for the year then ended in accordance with International Financial Reporting Standards.

**Qais M. Al-Nisf**
**License No. 38-A**
**BDO Al Nisf & Partners**

**Kuwait: 23 April 2013**

3

BDO Al Nisf & Partners is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

**The Port Fund Limited Partnership**
Cayman Islands

**Statement of financial position**

As at 31 December 2012

|  | Notes | 2012 US$ | 2011 US$ |
|---|---|---|---|
| **Assets** |  |  |  |
| Cash and cash equivalents | 5 | 383,634 | 8,751,010 |
| Financial assets at fair value through profit or loss | 6 | 332,060,873 | 247,877,008 |
| Loans and receivables | 7 | 28,050,000 | 20,000,000 |
| Capital contribution receivable | 8 | 35,000,000 | - |
| Due from related party | 9 | 5,491,762 | 6,070,923 |
| **Total assets** |  | 400,986,269 | 282,698,941 |
|  |  |  |  |
| **Liabilities** |  |  |  |
| Other payables and accrued expenses | 10 | 14,927,127 | 258,999 |
| Due to related parties | 9 | 3,777,000 | - |
| Due to Investment Manager | 9 | 40,826,029 | 27,917,589 |
| **Total liabilities** |  | 59,530,156 | 28,176,588 |
| **Net assets** |  | 341,456,113 | 254,522,353 |
|  |  |  |  |
| **Represented by:** |  |  |  |
| Fund capital |  | 178,152,000 | 142,852,000 |
| Retained earnings |  | 163,304,113 | 111,670,353 |
| **Total equity** |  | 341,456,113 | 254,522,353 |

The accompanying notes on pages 8 to 25 form an integral part of these financial statements.

*Investment Manager*

4

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of comprehensive income**

For the year ended 31 December 2012

| | Notes | 2012 US$ | 2011 US$ |
|---|---|---|---|
| **Income** | | | |
| Unrealised gain on financial assets at fair value through profit or loss (net) | 6 | 68,433,865 | 59,564,178 |
| Interest income | | 386,027 | 499,109 |
| Other income | | 639,246 | - |
| **Total income** | | 69,459,138 | 60,063,287 |
| | | | |
| **Expenses** | | | |
| Management fees | 9 | (3,563,040) | (2,857,040) |
| General and administrative expenses | 11 | (1,351,495) | (1,872,711) |
| Impairment provision for accrued interest | | - | (7,563,836) |
| Foreign exchange loss | | (2,403) | (3,478) |
| **Total expenses** | | (4,916,938) | (12,297,065) |
| **Profit for the year** | | 64,542,200 | 47,766,222 |
| Other comprehensive income | | - | - |
| **Total comprehensive income for the year** | | 64,542,200 | 47,766,222 |
| | | | |
| Attributable to investment manager * | 9 | 12,908,440 | 9,553,244 |
| Attributable to limited partners | | 51,633,760 | 38,212,978 |
| | | 64,542,200 | 47,766,222 |

* The profit allocation to the Investment Manager is as per S 4.2c of the Limited Partnership Agreement.

The accompanying notes on pages 8 to 25 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of changes in equity**

For the year ended 31 December 2012

| | Fund capital US$ | Retained earnings US$ | Total equity US$ |
|---|---|---|---|
| **Balance at 31 December 2010** | 142,852,000 | 73,457,375 | 216,309,375 |
| Total comprehensive income for the year attributable to limited partners | - | 38,212,978 | 38,212,978 |
| **Balance at 31 December 2011** | 142,852,000 | 111,670,353 | 254,522,353 |
| Capital contributions | 35,300,000 | - | 35,300,000 |
| Total comprehensive income for the year attributable to limited partners | - | 51,633,760 | 51,633,760 |
| **Balance at 31 December 2012** | 178,152,000 | 163,304,113 | 341,456,113 |

The accompanying notes on pages 8 to 25 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of cash flows**

For the year ended 31 December 2012

| | Note | 2012 US$ | 2011 US$ |
|---|---|---|---|
| **OPERATING ACTIVITIES** | | | |
| Profit for the year | | 64,542,200 | 47,766,222 |
| Adjustments for: | | | |
| Interest income | | (386,027) | (499,109) |
| Impairment provision for accrued interest | | - | 7,563,836 |
| Unrealised gain on financial assets at fair value through profit or loss (net) | | (68,433,865) | (59,564,178) |
| | | (4,277,692) | (4,733,229) |
| **Changes in operating assets and liabilities:** | | | |
| Loans and receivables | | (8,050,000) | - |
| Other receivables | | - | 7,554 |
| Due from related party | | 856,022 | 2,103,455 |
| Other payables and accrued expenses | | 3,918,128 | 63,462 |
| Due to related parties | | 3,777,000 | - |
| **Net cash used in operating activities** | | (3,776,542) | (2,558,758) |
| | | | |
| **INVESTING ACTIVITIES** | | | |
| Additions to financial assets at fair value through profit or loss | | (5,000,000) | (24,424,970) |
| Interest received | | 109,166 | 11,915 |
| **Net cash used in investing activities** | | (4,890,834) | (24,413,055) |
| | | | |
| **FINANCING ACTIVITIES** | | | |
| Capital contributions received | | 300,000 | - |
| **Net cash from financing activities** | | 300,000 | - |
| **Net decrease in cash and cash equivalents** | | (8,367,376) | (26,971,813) |
| Cash and cash equivalents at beginning of the year | | 8,751,010 | 35,722,823 |
| **Cash and cash equivalents at end of the year** | 5 | 383,634 | 8,751,010 |

The accompanying notes on pages 8 to 25 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2012

1. **GENERAL INFORMATION**

The Port Fund Limited Partnership, ("the Fund") was established on 21 March 2007 and is registered as an exempt limited partnership in the Cayman Islands under the exempted Law (2003 Revision) of the Cayman Islands. The first closing acceptance of committed contributions was on 15 July 2007 and the final closing occurred on 31 December 2012.

The Fund will offer select sophisticated investors the opportunity to participate in the growth and consolidation of the port management industry and related sectors through selected private equity investments in high potential companies on a world wide basis.

The Port Link GP Limited ("General Partner") has appointed KGL Investment Cayman Limited ("Investment Manager") who is responsible for the preparation of the financial statements for each financial period in accordance with the Limited Partnership Agreement.

The term of the Fund ends on 31 December 2012, and by a resolution of the general partner on 28 July 2012, the term of the Fund was extended for another period of two years till 31 December 2014.

These financial statements of the Fund for the year ended 31 December 2012 were authorized for issue by the General Partner and the Investment Manager on 23 April 2013.

2. **ADOPTION OF NEW / REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS (IFRSs)**

2.1 **New and revised IFRSs adopted by the Fund**

The Fund has adopted the following amended IFRS during the year:

**Amendments to IFRS 7, *'Financial instruments: Disclosures', on transfer of financial assets (Effective for annual periods beginning on or after 1 July 2011)***

The amendment requires additional disclosure about financial assets that have been transferred but not derecognised to enable the user of the Fund's financial statements to understand the relationship with those assets that have not been derecognised and their associated liabilities. In addition, the amendment requires disclosures about the entity's continuing involvement in derecognised assets to enable the users to evaluate the nature of, and risks associated with, such involvement. The amendment is effective for annual periods beginning on or after 1 July 2011. The adoption of the amendment did not have any impact on the financial position or performance of the Fund.

2.2 *New standards, interpretations and amendments not yet effective and not early adopted*

The Fund has not applied the following new and revised IFRSs that have been issued and are not yet effective for annual periods beginning on or after 1 January 2012:

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2012

2.   ADOPTION OF NEW / REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS (IFRSs) (continued)

- *Amendments to IAS 1 Presentation of Items of Other Comprehensive Income* **(Effective for annual periods beginning on or after 1 July 2012)**

    The amendments to IAS 1 retain the option to present profit or loss and other comprehensive income in either a single statement or in two separate but consecutive statements. However, the amendments to IAS 1 require additional disclosures to be made in the other comprehensive income section such that items of other comprehensive income are grouped into two categories: (a) items that will not be reclassified subsequently to profit or loss; and (b) items that will be reclassified subsequently to profit or loss when specific conditions are met. Income tax on items of other comprehensive income is required to be allocated on the same basis. The amendments to IAS 1 are effective for annual periods beginning on or after 1 July 2012. The presentation of items of other comprehensive income will be modified accordingly when the amendments are applied in the future accounting periods.

- *Amendments to IAS 19 Employee benefits (as revised in 2011)* **(Effective for annual periods beginning on or after 1 January 2013)**

    The amendments to IAS 19 change the accounting for defined benefit plans and termination benefits. The most significant change relates to the accounting for changes in define benefit obligations and plan assets. The amendments require recognition of changes in defined benefit obligations and fair value changes of plan assets when they occur, and hence eliminate the 'corridor approach' permitted under the previous version of IAS 19 and accelerate the recognition of past service costs. The amendments require all actuarial gains and losses to be recognised immediately through other comprehensive income in order for the net pension asset or liability recognised in the statement of financial position to reflect the full value of the plan deficit or surplus. The amendments to IAS 19 are effective for annual periods beginning on or after 1 January 2013 and require retrospective application with certain exceptions.

- *IAS 27 Separate Financial Statements (as revised in 2011) (Effective for annual periods beginning on or after 1 January 2013)*

    The amended version of IAS 27 now only deals with the requirements for separate financial statements, which have been carried over largely unchanged from IAS 27 Consolidated and Separate Financial Statements. The standard outlines the accounting and disclosure requirements for 'separate financial statements', which are financial statements prepared by a parent, or an investor in a joint venture or associate, where those investments are accounted for either at cost or in accordance with IAS 39 Financial Instruments: Recognition and Measurement or IFRS 9 Financial Instruments. The standard also outlines the accounting requirements for dividends and contains numerous disclosure requirements.

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2012

2.    ADOPTION OF NEW / REVISED INTERNATIONAL FINANCIAL
      REPORTING STANDARDS (IFRS) (continued)

- *IAS 28 Investments in Associates and Joint Ventures (as revised in 2011) (Effective for annual periods beginning on or after 1 January 2013)*

  As a consequence of the new IFRS 11 Joint Arrangements, and IFRS 12 Disclosure of Interests in Other Entities, IAS 28 Investments in Associates, has been renamed IAS 28 Investments in Associates and Joint Ventures, and describes the application of the equity method to investments in joint ventures in addition to associates. The revised standard becomes effective for annual periods beginning on or after 1 January 2013.

- *Amendments to IAS 32 'Financial instruments: Presentation', on asset and liability offsetting (Effective for annual periods beginning on or after 1 January 2014)*

  These amendments are to the application guidance in IAS 32, 'Financial instruments: Presentation', and clarify some of the requirements for offsetting financial assets and financial liabilities on the statement of financial position. The amendments to IAS 32 are effective for annual periods beginning on or after 1 January 2014 and require retrospective application

- *Amendments to IFRS 7 Disclosures — Offsetting Financial Assets and Financial Liabilities (Effective for annual periods beginning on or after 1 January 2013)*

  These amendments require an entity to disclose information about rights to set-off and related arrangements (e.g., collateral agreements). The disclosures would provide users with information that is useful in evaluating the effect of netting arrangements on an entity's financial position. The new disclosures are required for all recognised financial instruments that are set off in accordance with IAS 32 Financial Instruments: Presentation. The disclosures also apply to recognised financial instruments that are subject to an enforceable master netting arrangement or similar agreement, irrespective of whether they are set off in accordance with IAS 32. These amendments will not impact the Fund's financial position or performance and becomes effective for annual periods beginning on or after 1 January 2013.

- *IFRS 9 'Financial instruments' (Effective for annual periods beginning on or after 1 January 2015)*

  The standard addresses the classification, measurement and recognition of financial assets and financial liabilities. IFRS 9 was issued in November 2009 and October 2010. It replaces the parts of IAS 39 that relate to the classification and measurement of financial instruments. IFRS 9 requires financial assets to be classified into two measurement categories: those measured as at fair value and those measured at amortised cost. The determination is made at initial recognition. The classification depends on the entity's business model for managing its financial instruments and the contractual cash flow characteristics of the instrument. For financial liabilities, the standard retains most of the IAS 39 requirements. The main change is that, in cases where the fair value option is taken for financial liabilities, the part of a fair value change due to an entity's own credit risk is recorded in other comprehensive income rather than the income statement, unless this creates an accounting mismatch. The guidance in IAS 39 on impairment of financial assets and hedge accounting continues to apply. The Fund is yet to assess IFRS 9's full impact and intends to adopt IFRS 9 no earlier than the accounting period beginning on or after 1 January 2015.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2012

2. **ADOPTION OF NEW / REVISED INTERNATIONAL FINANCIAL**
   **REPORTING STANDARDS (IFRSs) (continued)**

- *IFRS 10 'Consolidated financial statements' (Effective for annual periods beginning on or after 1 January 2013)*

  The standard builds on existing principles by identifying the concept of control as the determining factor in whether an entity should be included within the consolidated financial statements of the parent company. The standard provides additional guidance to assist in the determination of control where this is difficult to assess. The Group is yet to assess IFRS 10's full impact and become effective for annual periods beginning on or after 1 January 2013.

- *IFRS 11 'Joint Arrangements' (Effective for annual periods beginning on or after 1 January 2013)*

  The standard replaces IAS 31 Interests in Joint Ventures. IFRS 11 deals with how a joint arrangement of which two or more parties have joint control should be classified. SIC-13 Jointly Controlled Entities – Non-monetary Contributions by Venturers has been withdrawn upon the issuance of IFRS 11. Under IFRS 11, joint arrangements are classified as joint operations or joint ventures, depending on the rights and obligations of the parties to the arrangements. In contrast, under IAS 31, there are three types of joint arrangements: jointly controlled entities, jointly controlled assets and jointly controlled operations. In addition, joint ventures under IFRS 11 are required to be accounted for using the equity method of accounting, whereas jointly controlled entities under IAS 31 can be accounted for using the equity method of accounting or proportionate accounting. The Fund is yet to assess IFRS 11's full impact and becomes effective for annual periods beginning on or after 1 January 2013.

- *IFRS 12 'Disclosures of interests in other entities' (Effective for annual periods beginning on or after 1 January 2013)*

  The standard includes the disclosure requirements for all forms of interests in other entities, including joint arrangements, associates, special purpose vehicles and other off balance sheet vehicles. The Fund is yet to assess IFRS 12's full impact and intends to adopt IFRS 12 no later than the accounting period beginning on or after 1 January 2013.

- *IFRS 13 'Fair value measurement' (Effective for annual periods beginning on or after 1 January 2013)*

  The standard aims to improve consistency and reduce complexity by providing a precise definition of fair value and a single source of fair value measurement and disclosure requirements for use across IFRSs. The requirements, which are largely aligned between IFRSs and US GAAP, do not extend the use of fair value accounting but provide guidance on how it should be applied where its use is already required or permitted by other standards within IFRSs or US GAAP. The Fund is yet to assess IFRS 13's full impact and intends to adopt IFRS 13 no later than the accounting period beginning on or after 1 January 2013.

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2012

2.    ADOPTION OF NEW / REVISED INTERNATIONAL FINANCIAL
       REPORTING STANDARDS (IFRSs) (continued)

- *Annual Improvements to IFRSs 2009-2011 Cycle (Effective for annual periods beginning on or after 1 January 2013):*
  **IFRS 1** *First-time Adoption of International Financial Reporting Standards*
  This improvement clarifies that an entity that stopped applying IFRS in the past and chooses, or is required, to apply IFRS, has the option to re-apply IFRS 1. If IFRS 1 is not re-applied, an entity must retrospectively restate its financial statements as if it had never stopped applying IFRS.

  **IAS 1 Presentation of Financial Statements**
  This improvement clarifies the difference between voluntary additional comparative information and the minimum required comparative information. Generally, the minimum required comparative information is the previous period.

  **IAS 16** *Property Plant and Equipment*
  This improvement clarifies that major spare parts and servicing equipment that meet the definition of property, plant and equipment are not inventory.

  **IAS 32** *Financial Instruments, Presentation*
  This improvement clarifies that income taxes arising from distributions to equity holders are accounted for in accordance with IAS 12 Income Taxes.

  **IAS 34** *Interim Financial Reporting*

  The amendment aligns the disclosure requirements for total segment assets with total segment liabilities in interim financial statements. This clarification also ensures that interim disclosures are aligned with annual disclosures.

3.    SIGNIFICANT ACCOUNTING POLICIES

Statement of compliance

These financial statements have been prepared in accordance with the International Financial Reporting Standards (IFRSs).

Basis of preparation

These financial statements are prepared on the historical cost basis except for measurement at fair value of financial assets at fair value through profit or loss.

These financial statements have been presented in United States Dollar (US$) which is the functional and presentation currency of the Fund.

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2012

3.    SIGNIFICANT ACCOUNTING POLICIES (continued)

Financial Instruments

**Classification and measurement**
The Fund classifies its financial assets as "financial assets at fair value through profit or loss" and "loans and receivables". Financial liabilities are classified as "other than at fair value through profit or loss". All financial instruments are initially recognised at its fair value plus transaction costs for all financial assets that are not carried at fair value through profit or loss. Financial assets carried at fair value through profit or loss are initially recognized at fair value through profit or loss are initially recognized at fair value, and transaction costs are expensed in the profit or loss in the statement of comprehensive income.. The Investment Manager determines the appropriate classification of each instrument at the time of acquisition.

*Financial assets at fair value through profit or loss (FVTPL)*
Investments are classified as FVTPL where the financial asset is either held for trading or it is designated as FVTPL.

A financial asset is classified as held for trading if: (i) it has been acquired principally for the purpose of selling in the near future; or (ii) it is a part of an identified portfolio of financial instruments that the Fund manages together and has a recent actual pattern of short-term profit-taking; or (iii) it is a derivative that is not designated and effective as a hedging instrument.

A financial asset other than a financial asset held for trading may be designated as FVTPL upon initial recognition if: (i) such designation eliminates or significantly reduces a measurement or recognition inconsistency that would otherwise arise; or (ii) the financial asset forms part of a group of financial assets or financial liabilities or both, which is managed and its performance is evaluated on a fair value basis, in accordance with the Fund's documented risk management or investment strategy, and information about the grouping is provided internally on that basis; or (iii) it forms part of a contract containing one or more embedded derivatives, and IAS 39 Financial Instruments: Recognition and Measurement permits the entire combined contract (asset or liability) to be designated as at FVTPL.

Financial assets at FVTPL are stated at fair value, with any resultant gain or loss recognised in profit or loss in the statement of comprehensive income. The net gain or loss recognised in the statement of comprehensive income incorporates any dividend or interest earned on the financial asset. Fair value is determined in the manner described in note 13.

*Loans and receivables*
These are non-derivative financial assets with fixed or determinable payments that are not quoted in an active market. These are subsequently remeasured and carried at amortised cost, less any provision for impairment. Loans and receivables include convertible loan, cash and cash equivalents and due from related parties.

*Cash and cash equivalents*
Cash and cash equivalents comprise of cash and bank balances, and fixed deposits with banks with an original maturity of three months or less from the placement date.

13

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2012

3.    **SIGNIFICANT ACCOUNTING POLICIES (continued)**

**Financial Instruments (continued)**

*Amortised Cost*
Amortised cost is computed by taking into account any discount or premium on acquisition of the financial instrument and fees and costs that are an integral part of the effective interest rate. The effective interest rate is the rate that exactly discounts estimated future cash receipts through the expected life of the financial asset, or, where appropriate, a shorter period. The effective interest rate method is a method of calculating the amortised cost of a financial asset and of allocating interest income over the relevant period.

*Financial Liabilities*
Financial liabilities are classified as "other than at fair value through profit or loss". These are subsequently remeasured at amortised cost using the effective interest rate method. Financial liabilities represent due to Investment Manager.

**Recognition and de-recognition**

A financial asset or a financial liability is recognised when the Fund becomes a party to the contractual provisions of the instrument.

All 'regular way' purchase and sale of financial assets are recognized using trade date accounting. Regular way purchases or sales are purchases or sales of financial assets that require delivery of assets within the time frame generally established by regulations or conventions in the market place.

A financial asset (in whole or in part) is derecognised when:
▪ the rights to receive cash flows from the asset have expired; or
▪ the Fund has transferred its rights to receive cash flows from the asset and either (a) has transferred substantially all the risks and rewards of ownership.

*Impairment of financial assets*
Financial assets are assessed for indicators of impairment at each financial position date. Financial assets are considered to be impaired where there is objective evidence that, as a result of one or more events that occurred after the initial recognition of the financial asset, the estimated future cash flows of the asset have been impacted.

Objective evidence of impairment could include:
▪    significant financial difficulty of the issuer or counterparty; or
▪    default or delinquency in interest or principal payments; or
▪    it becoming probable that the borrower will enter bankruptcy or financial re-organisation.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2012

3.    **SIGNIFICANT ACCOUNTING POLICIES (continued)**

**Financial Instruments (continued)**

For financial assets carried at amortised cost, the amount of the impairment is the difference between the asset's carrying amount and the present value of estimated future cash flows, discounted at the financial asset's original effective interest rate. Individual impairment is identified at counterparty specific level; following objective evidence the financial asset is impaired. This may be after an interest or principal payment is defaulted or when a contract covenant is breached. The present value of estimated cash flow recoverable is determined after taking into account any security held.

The carrying amount of the financial asset is reduced by the impairment loss directly. If in a subsequent period, the amount of the impairment loss decreases and the decrease can be related objectively to an event occurring after the impairment was recognised, the previously recognised impairment loss is reversed through profit or loss to the extent that the carrying amount of the investment at the date the impairment is reversed does not exceed what the amortised cost would have been had the impairment not been recognised.

**Provisions**

A provision is recognised in the statement of financial position when the Fund has a legal or constructive obligation as a result of a past event, it is probable that an outflow of economic benefits will be required to settle the obligation and a reliable estimate can be made of the amount of the obligation. If the effect is material, provisions are determined by discounting the expected future cash flows that reflects current market assessments of the time value of money and, where appropriate, the risks specific to the liability.

**Revenue recognition**

Revenue is measured at the fair value of the consideration received or receivable.
Interest income is accrued on a time basis, by reference to the principal outstanding and at the effective interest rate applicable, which is the rate that exactly discounts estimated future cash receipts through the expected life of the financial asset to that asset's net carrying amount.

Dividend income from investments is recognised when the shareholder's right to receive payment has been established. Gain on sale on investments is measured by the difference between the sale proceeds and the carrying amount of the investment at the date of disposal, and is recognized at the time of sale.

Management fees and performance fees are accrued when services are performed.

**Accrued income**

Accrued income is recognised at fair value.

**Accrued expenses**

Accrued expenses are recognized at cost.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2012

3. **SIGNIFICANT ACCOUNTING POLICIES (continued)**

**Foreign currency translation**

Foreign currency transactions are recorded in US$ at the rate of exchange ruling at the date of the transaction. Monetary assets and liabilities denominated in foreign currencies are translated into US$ at the rate of exchange prevailing on the financial position date. Resulting gains or losses on exchange are recorded as part of the results for the year.

4. **CRITICAL ACCOUNTING JUDGEMENTS AND KEY SOURCES OF ESTIMATION OF UNCERTAINTY**

In the application of the Fund's accounting policies, which are described in note 3, the Investment Manager is required to make judgments, estimates and assumptions about the carrying amounts of assets and liabilities that are not readily apparent from other sources. The estimates and associated assumptions are based on historical experience and other factors that are considered to be relevant. Actual results may differ from these estimates.

The estimates and underlying assumptions are reviewed on an ongoing basis. Revisions to accounting estimates are recognised in the period in which the estimate is revised if the revision affects only that period or in the period of the revision and future periods if the revision affects both current and future periods.

The following are the critical judgments, apart from those involving estimations (see below), that Investment Manager has made in the process of applying the Fund's accounting policies and that have the most significant effect on the amounts recognised in the financial statements.

*Classification of investments*
The classification of investments depends on the nature and purpose of the financial assets and is determined at the time of initial recognition. The Fund classifies all its investments at financial assets at FVTPL.

**Key sources of estimation uncertainty**
The key assumptions concerning the future and other key sources of estimation uncertainty at the financial position date, that have a significant risk of causing a material adjustment to the carrying amounts of assets and liabilities within the next financial year are discussed below:

*Impairment of financial assets*
The Investment Manager reviews periodically items classified as loans and receivables to assess whether a provision for impairment should be recorded in the statement of comprehensive income. The Investment Manager estimates the amount and timing of future cash flows when determining the level of provisions required. Such estimates are necessarily based on assumptions about several factors involving varying degrees of judgment and uncertainty.

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**

For the year ended 31 December 2012

4. **CRITICAL ACCOUNTING JUDGEMENTS AND KEY SOURCES OF ESTIMATION OF UNCERTAINTY (continued)**

*Valuation of unquoted equity investments*
Valuation of unquoted equity investments is normally based on one of the following:
- recent arm's length market transactions;
- current fair value of another instrument that is substantially the same;
- the expected cash flows discounted at current rates applicable for items with similar terms and risk characteristics; or
- Other valuation models.

The determination of the cash flows and discount factors for unquoted investments requires significant estimation.

5. **CASH AND CASH EQUIVALENTS**

|  | 2012 US$ | 2011 US$ |
|---|---|---|
| Bank balances | 383,634 | 3,751,010 |
| Fixed deposits | - | 5,000,000 |
|  | 383,634 | 8,751,010 |

6. **FINANCIAL ASSETS AT FAIR VALUE THROUGH PROFIT OR LOSS (FVTPL)**

|  | Fair value at 31 December 2011 US$ | Additions during the year US$ | Unrealised gain / (loss) for the year US$ | Fair value at 31 December 2012 US$ |
|---|---|---|---|---|
| **Unquoted investments:** |  |  |  |  |
| MPC Global Maritime Opportunities S.A. ("MPC-GMO") | 3,411,621 | 10,750,000 | (9,516,823) | 4,644,798 |
| Negros Navigation Corporation Inc. (NENACO) | 96,832,652 | - | 1,339,585 | 98,172,237 |
| Sabah Al-Ahmad Global Gateway Logistics City | 147,632,735 | 5,000,000 | 76,611,103 | 229,243,838 |
|  | 247,877,008 | 15,750,000 | 68,433,865 | 332,060,873 |

The investment in MPC-GMO (the "Fund") is carried at valuation based on the Net Assets Value of the Fund.
The investments in NENACO and Sabah Al-Ahmad Global Gateway Logistics City amounting to US$ 327,416,075 (2011: US$ 244,465,387) are carried at fair value as determined based on the independent third party valuation reports using pricing models and discounted cash flow techniques that are based on non-observable market prices or rates for which an unrealised gain of US$ 77,950,688 (2011: US$ 60,652,557) is recognised in the statement of comprehensive income for the year.

17

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2012

## 7. LOANS AND RECEIVABLES

|  | 2012 US$ | 2011 US$ |
|---|---|---|
| Convertible loan | 20,000,000 | 20,000,000 |
| Other short term loan | 8,050,000 | - |
|  | 28,050,000 | 20,000,000 |

The convertible loan to KGL International for Ports, Warehousing and Transport K.S.C.C. was originally for a period of five years with a final maturity date of 26 August 2012, which has been extended for another two years with a final maturity date of 26 August 2014.

KGL International for Ports and Warehousing K.S.C.C has invested this loan in Damietta International Ports Company which is in Egypt. Due to unforeseen circumstances and current political situation in Egypt, till such time as the project is formally restarted, interest on the above convertible loan is not accrued.

The loan is convertible at the option of the Fund into two million shares in Damietta International Ports Company. The Fund is entitled to convert the loan to shares at any time before its final settlement on 26 August 2014.

Other short term loan represents an advance given to Sabah Al-Ahmad Global Gateway Logistics City, and is repayable on demand.

## 8. CAPITAL CONTRIBUTION RECEIVABLES

Capital contribution amounting to US$ 35,000,000 (2011: nil) is due from the limited partner, Kuwait Ports Authority which has been received in full on 17 April 2013.

## 9. RELATED PARTY TRANSACTIONS

Related parties are General Partner, Limited Partners, Investment Manager, Directors, key management personnal and entities controlled, jointly controlled or significantly influenced by such parties. All related party transactions are carried out in the normal course of business and with the approval of the management.

The related party transactions and balances included in the financial statements are as follows:

|  | 2012 US$ | 2011 US$ |
|---|---|---|
| **Statement of comprehensive income** |  |  |
| **Income** |  |  |
| • Interest income | 276,861 | 487,194 |
| **Expenses** |  |  |
| • Management fees | 3,563,040 | 2,857,040 |
| • Performances fees | 12,908,440 | 9,553,244 |

18

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2012

9.    RELATED PARTY TRANSACTIONS (continued)

Statement of financial position

|  | 2012 | 2011 |
|---|---|---|
|  | US$ | US$ |
| **Due from related parties:** | | |
| ▪ Loans and receivables (note 7) | 28,050,000 | 20,000,000 |
| ▪ KGL Investment Company K.S.C.C | 5,491,762 | 6,070,923 |
| | | |
| **Due to Investment Manager:** | | |
| ▪ KGL Investments Cayman Limited | 40,826,029 | 27,917,589 |
| | | |
| **Due to related parties:** | | |
| ▪ Petro Link Holding Company K.S.C.C | 1,000,000 | - |
| ▪ KGL Investment Company K.S.C.C | 2,777,000 | - |
| | 3,777,000 | - |

In accordance with the Limited Partnership Agreement, management fees representing 2% of the total capital commitments of the limited partners (note 15) have been accrued to the Investment Manger, KGL Investments Cayman Limited.

In accordance with the Limited Partnership Agreement, 20% of the profit for the year has been allocated to the Investment Manager KGL Investments Cayman Limited as performance fees.

10.    OTHER PAYABLES AND ACCRUED EXPENSES

|  | 2012 | 2011 |
|---|---|---|
|  | US$ | US$ |
| Capital contribution payable to MPC-GMO | 10,750,000 | - |
| Management fees payable | 3,563,040 | - |
| Others | 614,087 | 258,999 |
| | 14,927,127 | 258,999 |

11.    GENERAL AND ADMINISTRATIVE EXPENSES

|  | 2012 | 2011 |
|---|---|---|
|  | US$ | US$ |
| Fund administration expenses | 539,194 | 538,848 |
| Professional and legal fees | 140,334 | 249,763 |
| Interest on late payment to MPC-GMO | 580,709 | 905,922 |
| Marketing expenses | - | 72,088 |
| Others | 91,258 | 106,090 |
| | 1,351,495 | 1,872,711 |

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2012

12. **TAXATION**

As per the Limited Partnership Agreement any tax liability arising on the activity of the Fund will be borne by Partners.

13. **FINANCIAL RISK MANAGEMENT**

The Fund primarily invests in equity related investments in port management companies that operate ports in the fastest growing regions of the world which are the developing markets of the Asia, Africa and the Middle East. The objective of the Fund is to achieve long term capital appreciation through investments in entrepreneurial companies demonstrating the potential for significant growth derived from products and services with international market appeal and demonstrate and sustainable competitive advantages. The Fund is exposed to a number of risks arising from the various financial instruments it holds. The main risk to which the Fund is exposed is; credit risk, market price risk, interest rate risk and liquidity risk. The risk management policies employed by the Fund to manage these risks are discussed below:

a. **Market price risk**

The Fund's unquoted investments are susceptible to market price risk arising from uncertainties about future values of investment securities. The Fund's advisor advises the Fund on the investments that have prospects to appreciate in value over the medium to long term period.
The advisor's recommendations are reviewed by the General Partner before the investment decisions are implemented. The performance of investments held by the Fund is monitored by the advisory committee on an ongoing basis and reviewed on a regular basis by the General Partner.

b. **Currency risk**

The Fund hold assets denominated in currencies other than US$, the functional and presentation currency of the Fund. Consequently the Fund is exposed to currency risk since the value of the securities denominated in other currencies will fluctuate due to changes in exchange rates. The Fund's policy is not to enter into any currency hedging transactions.

The table below summarizes the Fund's exposure to currency risks. Included in the tables are the Fund's assets and liabilities at fair values categorised by their base currencies:

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2012

13.   FINANCIAL RISK MANAGEMENT (continued)

c.   Concentration of assets and liabilities

| As at 31 December 2012 | Other currencies | United States Dollars | Total |
|---|---|---|---|
| | US$ | US$ | US$ |
| **Assets** | | | |
| Loans and advances | - | 28,050,000 | 28,050,000 |
| Financial assets at FVTPL | - | 332,060,873 | 332,060,873 |
| Due from related party | - | 5,491,762 | 5,491,762 |
| Capital contribution receivable | - | 35,000,000 | 35,000,000 |
| Cash and cash equivalents | 285,286 | 98,348 | 383,634 |
| **Total assets** | 285,286 | 400,700,983 | 400,986,269 |
| **Liabilities** | | | |
| Due to Investment Manager | - | (40,826,029) | (40,826,029) |
| Due to related parties | - | (3,777,000) | (3,777,000) |
| Other payables and accrued expenses | - | (14,927,127) | (14,927,127) |
| **Total net assets** | 285,286 | 341,170,827 | 341,456,113 |
| | | | |
| **As at 31 December 2011** | | | |
| **Assets** | | | |
| Loans and advances | - | 20,000,000 | 20,000,000 |
| Financial assets at FVTPL | - | 247,877,008 | 247,877,008 |
| Due from related party | - | 6,070,923 | 6,070,923 |
| Cash and cash equivalents | 393,029 | 8,357,981 | 8,751,010 |
| **Total assets** | 393,029 | 282,305,912 | 282,698,941 |
| | | | |
| **Liabilities** | | | |
| Due to investment manager | - | (27,917,589) | (27,917,589) |
| Other payables and accrued expenses | - | (258,999) | (258,999) |
| **Total net assets** | 393,029 | 254,129,324 | 254,522,353 |

d.   Interest rate risk

The majority of the Fund's financial assets and liabilities are non-interest bearing. As a result, the Fund is not subject to significant amounts of risk due to fluctuations in the prevailing levels of market interest rates. Interest income from fixed deposits may fluctuate in amount, in particular due to changes in the interest rates. Whilst the Fund seeks to optimise overall performance from the assets it holds, it does not seek to maximise interest income in view of its policy to focus on unquoted investments.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2012

13.   **FINANCIAL RISK MANAGEMENT (continued)**

d.     **Interest rate risk (continued)**

The following table analyses the interest rate composition of the Fund's net assets.

| As at 31 December 2012 | Interest bearing | Non-interest bearing | Total |
|---|---:|---:|---:|
| | US$ | US$ | US$ |
| Convertible loan | - | 28,050,000 | 28,050,000 |
| Financial assets at FVTPL | - | 332,060,873 | 332,060,873 |
| Cash and cash equivalents | - | 383,634 | 383,634 |
| Due from related party | 5,491,762 | - | 5,491,762 |
| Capital contribution receivables | - | 35,000,000 | 35,000,000 |
| Due to Investment Manager | - | (40,826,029) | (40,826,029) |
| Due to related parties | (2,777,000) | (1,000,000) | (3,777,000) |
| Other payables and accrued expenses | (10,750,000) | (4,177,127) | (14,927,127) |
| | (8,035,238) | 349,491,351 | 341,456,113 |
| **As at 31 December 2011** | | | |
| Convertible loan | - | 20,000,000 | 20,000,000 |
| Financial assets at FVTPL | - | 247,877,008 | 247,877,008 |
| Due from related party | 6,070,923 | - | 6,070,923 |
| Cash and cash equivalents | 5,000,000 | 3,751,010 | 8,751,010 |
| Due to Investment Manager | - | (27,917,589) | (27,917,589) |
| Other payables and accrued expenses | - | (258,999) | (258,999) |
| | 11,070,923 | 243,451,430 | 254,522,353 |

e.     **Liquidity risk**

The liquidity risk is that the Fund cannot meet its financial obligations when they fall due. The Fund has no liquidity risk for the foreseeable future. Some of the investments are unquoted and are not readily realisable. The maturity profile of the Funds liabilities are as follows.

| As at 31 December 2012 | Less than one year | Between one and two years | Total |
|---|---:|---:|---:|
| | US$ | US$ | US$ |
| Due to Investment Manager | - | 40,826,029 | 40,826,029 |
| Due to related parties | 3,777,000 | - | 3,777,000 |
| Other payables and accrued expenses | 14,927,127 | | 14,927,127 |
| | 18,704,127 | 40,826,029 | 59,530,156 |
| **As at 31 December 2011** | | | |
| Due to Investment Manager | - | 27,917,589 | 27,917,589 |
| Other payables and accrued expenses | 258,999 | - | 258,999 |
| | 258,999 | 27,917,589 | 28,176,588 |

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**

For the year ended 31 December 2012

13.   **FINANCIAL RISK MANAGEMENT (continued)**

   f.   **Fair value of financial instruments**

   **Fair value measurements recognised in the statement of financial position**

   The following table provides an analysis of financial instruments that are measured subsequent to initial recognition at fair value, grouped into Levels 1 to 3 based on the degree to which the fair value is observable.

   • Level 1 fair value measurements are those derived from quoted prices (unadjusted) in active markets for identical assets or liabilities.

   • Level 2 fair value measurements are those derived from inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly (i.e. as prices) or indirectly (i.e. derived from prices).

   • Level 3 fair value measurements are those derived from valuation techniques that include inputs for the asset or liability that are not based on observable market data (unobservable inputs).

   The Fund's investments in financial assets at FVTPL are classified within level 3 investments.

| 31 December 2012 | Level 3 |
| --- | --- |
| | US$ |
| **Financial assets at FVTPL** | |
| Unquoted investments | 332,060,873 |

| 31 December 2011 | Level 3 |
| --- | --- |
| | US$ |
| **Financial assets at FVTPL** | |
| Unquoted investments | 247,877,008 |

Reconciliation of Level 3 fair value measurements of financial assets at FVTPL:

| 31 December 2012 | Financial assets at FVTPL |
| --- | --- |
| | US $ |
| As at 1 January 2012 | 247,877,008 |
| Additions during the year | 15,750,000 |
| Total gains or losses on valuation (net) | 68,433,865 |
| Ending balance | 332,060,873 |

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2012

13.   FINANCIAL RISK MANAGEMENT (continued)

f.   Fair value of financial instruments (continued)

| 31 December 2011 | Financial assets at FVTPL |
|---|---|
| | US $ |
| As at 1 January 2011 | 163,887,860 |
| Additions during the year | 24,424,970 |
| Total gains or losses on valuation (net) | 59,564,178 |
| Ending balance | 247,877,008 |

14.   COMMITMENTS AND CONTINGENT LIABILITIES

| | 2012 | 2011 |
|---|---|---|
| | US $ | US $ |
| Investment commitments | - | 10,750,000 |

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements

For the year ended 31 December 2012

15.    CAPITAL ACCOUNTS

Limited Partners

| | Ownership % | Total Commitments US$ | Capital accounts at 31 December 2011 US$ | Capital contributions during 2012 US$ | Profit for the year 2012 US$ | Late payment fee adjustment for the year 2012 US$ | Capital accounts at 31 December 2012 US$ |
|---|---|---|---|---|---|---|---|
| General Retirement and Social Insurance Authority, Qatar | 6.06% | 9,852,000 | 19,010,407 | - | 3,128,793 | 194,856 | 22,334,056 |
| Gulf Investment Corporation | 6.15% | 10,000,000 | 19,294,591 | - | 3,174,138 | 197,680 | 22,666,409 |
| Behbehani Investment Company | 0.72% | 1,300,000 | 1,929,460 | 300,000 | 370,861 | (4,232) | 2,596,089 |
| The Public Institution For Social Security | 24.59% | 40,000,000 | 77,178,369 | - | 12,696,553 | 790,720 | 90,665,642 |
| Yaqoub Behbehani | 0.62% | 1,000,000 | 1,929,460 | - | 317,414 | 19,768 | 2,266,642 |
| Petro Link Holding Company K.S.C.C | 1.84% | 3,000,000 | 5,788,379 | - | 952,241 | 59,304 | 6,799,924 |
| Kuwait Reinsurance Company K.S.C.C | 1.23% | 2,000,000 | 3,858,918 | - | 634,828 | 39,536 | 4,533,282 |
| Al Ahlia Insurance Company | 1.84% | 3,000,000 | 5,788,378 | - | 952,241 | 59,304 | 6,799,923 |
| Mohammed Ali Al-Naki | 1.84% | 3,000,000 | 5,788,378 | - | 952,241 | 59,304 | 6,799,923 |
| KGL Investment K.S.C.C | 12.30% | 20,000,000 | 38,589,185 | - | 6,348,278 | 395,360 | 45,332,823 |
| Kuwait Ports Authority | 42.81% | 85,000,000 | 75,366,828 | 35,000,000 | 22,106,172 | (1,811,600) | 130,661,400 |
| | 100.00% | 178,152,000 | 254,522,353 | 35,300,000 | 51,633,760 | - | 341,456,113 |

**The Port Fund Limited Partnership**
**Cayman Islands**

**Financial statements and independent auditor's report**
**For the year ended 31 December 2013**

# The Port Fund Limited Partnership
# Cayman Islands

**Financial statements and independent auditor's report**
*For the year ended 31 December 2013*

| Contents | Page |
|---|---|
| The Investment Manager, General Partner and Professional Advisor of the Fund | 1 |
| Statement of the Investment Manager's Responsibilities | 2 |
| Independent auditor's report | 3 |
| Statement of financial position | 4 |
| Statement of comprehensive income | 5 |
| Statement of changes in equity | 6 |
| Statement of cash flows | 7 |
| Notes to the financial statements | 8 - 21 |

## The Port Fund Limited Partnership
## Cayman Islands

**Financial statements and independent auditor's report**
*For the year ended 31 December 2013*

### The Investment Manager, General Partner and Professional Advisor of the Fund

| | |
|---|---|
| **Investment Manager:** | KGL Investment Cayman Limited<br>Walkers SPV Ltd Walkers House,<br>87 Mary Street,<br>George Town Grand Cayman<br>KY1-9002 Cayman Islands |
| **General Partner:** | Port Link GP Limited<br>C/o Walkers SPV Ltd Walkers House,<br>87 Mary Street,<br>George Town Grand Cayman<br>KY1-9002 Cayman Islands |
| **Bankers:** | Al Ahli Bank of Kuwait<br>Main Office, Kuwait City,<br>Kuwait |
| **Auditors:** | BDO Al-Nisf & Partners<br>P.O.Box: 25578<br>Safat 13116<br>Kuwait |
| **Legal Advisors:** | Walkers Dubai LLP<br>5th Floor, The Exchange Building<br>Dubai International Finance Centre P.O.Box 506513<br>Dubai |
| **Administrators:** | TMF Mauritius Limited<br>3rd Floor, Raffles Tower<br>19 Cybercity<br>Ebene, Republic of Mauritius |

# The Port Fund Limited Partnership
# Cayman Islands

**Financial statements and independent auditor's report**
*For the year ended 31 December 2013*

## STATEMENT OF THE INVESTMENT MANAGER'S RESPONSIBILITIES
## FOR THE YEAR ENDED 31 DECEMBER 2013

The Investment Manager of the Fund is responsible for the preparation of the financial statements for each financial period in accordance with the Limited Partnership Agreement which give a true and fair view of the state of affairs of the Fund and of the net expenditure of the Fund for that year. In preparing those financial statements, the Investment Manager is required to:

- Select suitable accounting policies and then apply them consistently;
- make judgements and estimates that are reasonable and prudent;
- state whether applicable accounting standards have been followed; and
- prepare the financial statements on the going concern basis unless it is inappropriate to presume the Limited Partnership will continue in business.

The Investment Manager is responsible for keeping the proper accounting records which disclose with reasonable accuracy at any time the financial position of the Fund and hence for taking reasonable steps for the prevention and detection of fraud and other irregularities.



Tel:  +965 2242 6999
Fax: +965 2240 1666
www.bdo.com.kw

Al Johara Tower, 6th Floor
Khaled Ben Al Waleed Street, Sharq
P.O. Box 25578, Safat 13116
Kuwait

## INDEPENDENT AUDITOR'S REPORT TO THE LIMITED PARTNERS' OF THE PORT FUND LIMITED PARTNERSHIP

### *Report on the Financial Statements*
We have audited the accompanying financial statements of The Port Fund Limited Partnership ("the Fund") which comprise the statement of financial position as at 31 December 2013, and the statement of comprehensive income, statement of changes in equity and statement of cash flows for the year then ended, and a summary of significant accounting policies and other explanatory information.

### *Management's Responsibility for the Financial Statements*
The Fund Manager is responsible for the preparation and fair presentation of these financial statements in accordance with International Financial Reporting Standards ("IFRSs"), and for such internal control as management determines is necessary to enable the preparation of financial statements that are free from material misstatement, whether due to fraud or error.

### *Auditor's Responsibility*
Our responsibility is to express an opinion on these financial statements based on our audit. We conducted our audit in accordance with International Standards on Auditing. Those standards require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the fund's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the fund's internal control. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### *Opinion*
In our opinion, the financial statements present fairly, in all material respects, the financial position of the Fund as at 31 December 2013, and its financial performance and cash flows for the year then ended in accordance with International Financial Reporting Standards.

**Qais M. Al-Nisf**
**License No. 38-A**
**BDO Al Nisf & Partners**

**Kuwait: 30 March 2014**

BDO Al Nisf & Partners is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of financial position**
As at 31 December 2013

| | Notes | 2013 US$ | 2012 US$ |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 5 | 13,974,120 | 383,634 |
| Financial assets at fair value through profit or loss | 6 | 444,284,879 | 332,060,873 |
| Loans and receivables | 7 | 20,000,000 | 28,050,000 |
| Capital contribution receivable | | - | 35,000,000 |
| Due from related party | | 5,177,516 | 5,491,762 |
| **Total assets** | | 483,436,515 | 400,986,269 |
| | | | |
| **Liabilities** | | | |
| Other payables and accrued expenses | 9 | 7,299,205 | 14,927,127 |
| Due to related parties | | 8,885,000 | 3,777,000 |
| Due to Investment Manager | | 55,820,063 | 40,826,029 |
| **Total liabilities** | | 72,004,268 | 59,530,156 |
| **Net assets** | | 411,432,247 | 341,456,113 |
| | | | |
| **Represented by:** | | | |
| Fund capital | | 188,152,000 | 178,152,000 |
| Retained earnings | | 223,280,247 | 163,304,113 |
| **Total equity** | | 411,432,247 | 341,456,113 |

The accompanying notes on pages 8 to 21 form an integral part of these financial statements.

*Sorce*

*Investment Manager*

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of comprehensive income**
For the year ended 31 December 2013

| | Notes | 2013 US$ | 2012 US$ |
|---|---|---|---|
| **Income** | | | |
| Unrealised gain on financial assets at fair value through profit or loss (net) | 6 | 86,868,804 | 68,433,865 |
| Realised loss on sale of financial assets at fair value through profit or loss | 6 | (2,594,209) | - |
| Interest income | | 382,726 | 386,027 |
| Other income | | - | 639,246 |
| **Total income** | | 84,657,321 | 69,459,138 |
| | | | |
| **Expenses** | | | |
| Management fees | 8 | (3,022,280) | (3,563,040) |
| Success fees | | (2,265,000) | - |
| Professional fees and charges | | (2,777,015) | - |
| General and administrative expenses | 10 | (1,622,376) | (1,351,495) |
| Foreign exchange loss | | (482) | (2,403) |
| **Total expenses** | | (9,687,153) | (4,916,938) |
| **Profit for the year** | | 74,970,168 | 64,542,200 |
| Other comprehensive income | | - | - |
| **Total comprehensive income for the year** | | 74,970,168 | 64,542,200 |
| | | | |
| Attributable to investment manager * | 8 | 14,994,034 | 12,908,440 |
| Attributable to limited partners | | 59,976,134 | 51,633,760 |
| | | 74,970,168 | 64,542,200 |

* The profit allocation to the Investment Manager is as per S 4.2c of the Limited Partnership Agreement.

The accompanying notes on pages 8 to 21 form an integral part of these financial statements.

5

**The Port Fund Limited Partnership**
**Cayman Islands**

**Statement of changes in equity**
For the year ended 31 December 2013

| | Fund capital US$ | Retained earnings US$ | Total equity US$ |
|---|---|---|---|
| **Balance at 31 December 2011** | 142,852,000 | 111,670,353 | 254,522,353 |
| Capital contributions | 35,300,000 | | 35,300,000 |
| Total comprehensive income for the year attributable to limited partners | - | 51,633,760 | 51,633,760 |
| **Balance at 31 December 2012** | 178,152,000 | 163,304,113 | 341,456,113 |
| Capital contributions | 10,000,000 | - | 10,000,000 |
| Total comprehensive income for the year attributable to limited partners | - | 59,976,134 | 59,976,134 |
| **Balance at 31 December 2013** | 188,152,000 | 223,280,247 | 411,432,247 |

The accompanying notes on pages 8 to 21 form an integral part of these financial statements.

The Port Fund Limited Partnership
Cayman Islands

**Statement of cash flows**
For the year ended 31 December 2013

| | Notes | 2013 US$ | 2012 US$ |
|---|---|---|---|
| **OPERATING ACTIVITIES** | | | |
| Profit for the year | | 74,970,168 | 64,542,200 |
| Adjustments for: | | | |
| Interest income | | (382,726) | (386,027) |
| Unrealised gain on financial assets at fair value through profit or loss (net) | | (86,868,804) | (68,433,865) |
| Realised loss on sale of financial assets at fair value through profit or loss | | 2,594,209 | - |
| | | (9,687,153) | (4,277,692) |
| **Changes in operating assets and liabilities:** | | | |
| Loans and receivables | | - | (8,050,000) |
| Capital contribution receivable | | 35,000,000 | - |
| Due from/to related parties- net | | 5,422,245 | 4,633,022 |
| Other payables and accrued expenses | | (5,194,725) | 3,918,128 |
| **Net cash generated from/(used in) operating activities** | | 25,540,367 | (3,776,542) |
| | | | |
| **INVESTING ACTIVITIES** | | | |
| Additions to financial assets at fair value through profit or loss | | (21,950,000) | (5,000,000) |
| Interest received | | 119 | 109,166 |
| **Net cash used in investing activities** | | (21,949,881) | (4,890,834) |
| | | | |
| **FINANCING ACTIVITIES** | | | |
| Capital contributions received | | 10,000,000 | 300,000 |
| **Net cash from financing activities** | | 10,000,000 | 300,000 |
| **Net increase/(decrease) in cash and cash equivalents** | | 13,590,486 | (8,367,376) |
| Cash and cash equivalents at beginning of the year | | 383,634 | 8,751,010 |
| **Cash and cash equivalents at end of the year** | 5 | 13,974,120 | 383,634 |
| | | | |
| | | | |
| Non-cash transactions | | | |
| Transfer of other short term loan to financial assets at FVTPL | 6 | 8,050,000 | - |
| Liquidation value of investment in MPC – GMO, offset against the obligation | 6 | 2,050,589 | - |

The accompanying notes on pages 8 to 21 form an integral part of these financial statements.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**
For the year ended 31 December 2013

1.     **GENERAL INFORMATION**

The Port Fund Limited Partnership, ("the Fund") was established on 21 March 2007 and is registered as an exempt limited partnership in the Cayman Islands under the exempted Law (2003 Revision) of the Cayman Islands. The first closing acceptance of committed contributions was on 15 July 2007 and the final closing occurred on 31 December 2012.

The Fund will offer select sophisticated investors the opportunity to participate in the growth and consolidation of the port management industry and related sectors through selected private equity investments in high potential companies on a world wide basis.

The Port Link GP Limited ("General Partner") has appointed KGL Investment Cayman Limited ("Investment Manager") who is responsible for the preparation of the financial statements for each financial period in accordance with the Limited Partnership Agreement.

The term of the Fund ends on 31 December 2012, and by a resolution of the General Partner on 28 July 2012, the term of the Fund was extended for another period of two years till 31 December 2014.

These financial statements of the Fund for the year ended 31 December 2013 were authorized for issue by the General Partner and the Investment Manager on 30 March 2014.

2.     **APPLICATION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS (IFRSs)**

*a)      New standards, interpretations and amendments effective from 1 January 2013*

The Fund has adopted the following amended IFRS during the year.

- *Amendments to IAS 1 Presentation of Items of Other Comprehensive Income (Effective for annual periods beginning on or after 1 July 2012)*

The amendments to IAS 1 retain the option to present profit or loss and other comprehensive income in either a single statement or in two separate but consecutive statements. However, the amendments to IAS 1 require additional disclosures to be made in the other comprehensive income section such that items of other comprehensive income are grouped into two categories: (a) items that will not be reclassified subsequently to profit or loss; and (b) items that will be reclassified subsequently to profit or loss when specific conditions are met. Income tax on items of other comprehensive income is required to be allocated on the same basis. The amendment has not impacted the Fund's financial position or performance on adoption for annual periods beginning on or after 1 January 2013. The presentation of items of other comprehensive income will be modified accordingly as and when they are applicable in the future accounting periods.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**
For the year ended 31 December 2013

2. **APPLICATION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS (IFRSs) (continued)**

*a)*     *New standards, interpretations and amendments effective from 1 January 2013 (continued)*

- **IFRS 13 'Fair value measurement' (Effective for annual periods beginning on or after January 1, 2013)**

   IFRS 13 sets out the framework for determining the measurement of fair value and the disclosure of information relating to fair value measurement, when fair value measurements and/or disclosures are required or permitted by other IFRSs.

   As a result, the guidance and requirements relating to fair value measurement that were previously located in other IFRSs have now been relocated to IFRS 13.

   While there has been some rewording of the previous guidance, there are few changes to the previous fair value measurement requirements. Instead, IFRS 13 is intended to clarify the measurement objective, harmonise the disclosure requirements, and improve consistency in application of fair value measurement.

   IFRS 13 did not materially affect any fair value measurements of the Fund's assets or liabilities, with changes being limited to presentation and disclosure, and therefore has no effect on the Fund's financial position or performance.

   In addition, IFRS 13 is to be applied prospectively and therefore comparative disclosures have not been presented.

*b)*     *New standards, interpretations and amendments not yet effective*

   The Fund has not applied the following new and revised IFRSs that have been issued but are not yet effective for annual periods beginning on or after 1 January 2013:

- **IFRS 9 'Financial instruments (2009)' (Effective for annual periods beginning on or after 1 January 2015)**

   The standard addresses the classification, measurement and recognition of financial assets and financial liabilities. IFRS 9 was issued in November 2009 and October 2010. It replaces the parts of IAS 39 that relate to the classification and measurement of financial instruments. IFRS 9 requires financial assets to be classified into two measurement categories: those measured as at fair value and those measured at amortised cost. The determination is made at initial recognition. The classification depends on the entity's business model for managing its financial instruments and the contractual cash flow characteristics of the instrument. For financial liabilities, the standard retains most of the IAS 39 requirements. The main change is that, in cases where the fair value option is taken for financial liabilities, the part of a fair value change due to an entity's own credit risk is recorded in other comprehensive income rather than the income statement, unless this creates an accounting mismatch.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**
For the year ended 31 December 2013

2. **APPLICATION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS (IFRSs) (continued)**

*b)*    *New standards, interpretations and amendments not yet effective (continued)*

- ▪ ***IFRS 9 'Financial instruments (2013)' (Hedge Accounting and amendments to IFRS 9, IFRS 7 and IAS 39) (Effective for annual periods beginning on or after January 1, 2015)***

  A revised version of IFRS 9 incorporating revised requirements a new chapter to IFRS 9 on hedge accounting, putting in place a new hedge accounting model that is designed to be more closely aligned with how entities undertake risk management activities when hedging financial and non-financial risk exposures. It also permits an entity to apply only the requirements introduced in IFRS 9 (2010) for the presentation of gains and losses on financial liabilities designated as at fair value through profit or loss without applying the other requirements of IFRS 9, meaning the portion of the change in fair value related to changes in the entity's own credit risk can be presented in other comprehensive income rather than within profit or loss.

  The revised version also removes the mandatory effective date of IFRS 9 (2013), IFRS 9 (2010) and IFRS 9 (2009), leaving the effective date open pending the finalisation of the impairment and classification and measurement requirements. Notwithstanding the removal of an effective date, each standard remains available for application.

  The Fund is yet to assess IFRS 9's full impact and intends to adopt IFRS 9 no earlier than the accounting period beginning on or after 1 January 2015.

3. **SIGNIFICANT ACCOUNTING POLICIES**

**Statement of compliance**

These financial statements have been prepared in accordance with the International Financial Reporting Standards (IFRSs).

**Basis of preparation**

These financial statements are prepared on the historical cost basis except for measurement at fair value of financial assets at fair value through profit or loss.

These financial statements have been presented in United States Dollar (US$) which is the functional and presentation currency of the Fund.

**Financial Instruments**

**Classification and measurement**
The Fund classifies its financial assets as "financial assets at fair value through profit or loss" and "loans and receivables". Financial liabilities are classified as "other than at fair value through profit or loss". All financial instruments are initially recognised at its fair value plus transaction costs for all financial assets that are not carried at fair value through profit or loss. Financial assets carried at fair value through profit or loss are initially recognized at fair value through profit or loss are initially recognized at fair value, and transaction costs are expensed in the profit or loss in the statement of comprehensive income.. The Investment Manager determines the appropriate classification of each instrument at the time of acquisition.

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**
For the year ended 31 December 2013

3.   **SIGNIFICANT ACCOUNTING POLICIES (continued)**

**Financial Instruments (continued)**

*Financial assets at fair value through profit or loss (FVTPL)*
Investments are classified as FVTPL where the financial asset is either held for trading or it is designated as FVTPL.

A financial asset is classified as held for trading if: (i) it has been acquired principally for the purpose of selling in the near future; or (ii) it is a part of an identified portfolio of financial instruments that the Fund manages together and has a recent actual pattern of short-term profit-taking; or (iii) it is a derivative that is not designated and effective as a hedging instrument.

A financial asset other than a financial asset held for trading may be designated as FVTPL upon initial recognition if: (i) such designation eliminates or significantly reduces a measurement or recognition inconsistency that would otherwise arise; or (ii) the financial asset forms part of a group of financial assets or financial liabilities or both, which is managed and its performance is evaluated on a fair value basis, in accordance with the Fund's documented risk management or investment strategy, and information about the grouping is provided internally on that basis; or (iii) it forms part of a contract containing one or more embedded derivatives, and IAS 39 Financial Instruments: Recognition and Measurement permits the entire combined contract (asset or liability) to be designated as at FVTPL.

Financial assets at FVTPL are stated at fair value, with any resultant gain or loss recognised in profit or loss in the statement of comprehensive income. The net gain or loss recognised in the statement of comprehensive income incorporates any dividend or interest earned on the financial asset. Fair value is determined in the manner described in note 13.

*Loans and receivables*
These are non-derivative financial assets with fixed or determinable payments that are not quoted in an active market. These are subsequently remeasured and carried at amortised cost, less any provision for impairment. Loans and receivables include convertible loan, cash and cash equivalents and due from related parties.

*Cash and cash equivalents*
Cash and cash equivalents comprise of cash and bank balances, and fixed deposits with banks with an original maturity of three months or less from the placement date.

*Amoritsed Cost*
Amortised cost is computed by taking into account any discount or premium on acquisition of the financial instrument and fees and costs that are an integral part of the effective interest rate. The effective interest rate is the rate that exactly discounts estimated future cash receipts through the expected life of the financial asset, or, where appropriate, a shorter period. The effective interest rate method is a method of calculating the amortised cost of a financial asset and of allocating interest income over the relevant period.

*Financial Liabilities*
Financial liabilities are classified as "other than at fair value through profit or loss". These are subsequently remeasured at amortised cost using the effective interest rate method. Financial liabilities represent due to Investment Manager.

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**
For the year ended 31 December 2013

3.    SIGNIFICANT ACCOUNTING POLICIES (continued)

**Financial Instruments (continued)**

**Recognition and de-recognition**
A financial asset or a financial liability is recognised when the Fund becomes a party to the contractual provisions of the instrument.

All 'regular way' purchase and sale of financial assets are recognized using trade date accounting. Regular way purchases or sales are purchases or sales of financial assets that require delivery of assets within the time frame generally established by regulations or conventions in the market place.

A financial asset (in whole or in part) is derecognised when:
- the rights to receive cash flows from the asset have expired; or
- the Fund has transferred its rights to receive cash flows from the asset and either (a) has transferred substantially all the risks and rewards of ownership.

*Impairment of financial assets*
Financial assets are assessed for indicators of impairment at each financial position date. Financial assets are considered to be impaired where there is objective evidence that, as a result of one or more events that occurred after the initial recognition of the financial asset, the estimated future cash flows of the asset have been impacted.

Objective evidence of impairment could include:
- significant financial difficulty of the issuer or counterparty; or
- default or delinquency in interest or principal payments; or
- it becoming probable that the borrower will enter bankruptcy or financial re-organisation.

For financial assets carried at amortised cost, the amount of the impairment is the difference between the asset's carrying amount and the present value of estimated future cash flows, discounted at the financial asset's original effective interest rate. Individual impairment is identified at counterparty specific level; following objective evidence the financial asset is impaired. This may be after an interest or principal payment is defaulted or when a contract covenant is breached. The present value of estimated cash flow recoverable is determined after taking into account any security held.

The carrying amount of the financial asset is reduced by the impairment loss directly. If in a subsequent period, the amount of the impairment loss decreases and the decrease can be related objectively to an event occurring after the impairment was recognised, the previously recognised impairment loss is reversed through profit or loss to the extent that the carrying amount of the investment at the date the impairment is reversed does not exceed what the amortised cost would have been had the impairment not been recognised.

**Provisions**

A provision is recognised in the statement of financial position when the Fund has a legal or constructive obligation as a result of a past event, it is probable that an outflow of economic benefits will be required to settle the obligation and a reliable estimate can be made of the amount of the obligation. If the effect is material, provisions are determined by discounting the expected future cash flows that reflects current market assessments of the time value of money and, where appropriate, the risks specific to the liability.

The Port Fund Limited Partnership
Cayman Islands

**Notes to the financial statements**
For the year ended 31 December 2013

3.    **SIGNIFICANT ACCOUNTING POLICIES (continued)**

**Revenue recognition**

Revenue is measured at the fair value of the consideration received or receivable.
Interest income is accrued on a time basis, by reference to the principal outstanding and at the effective interest rate applicable, which is the rate that exactly discounts estimated future cash receipts through the expected life of the financial asset to that asset's net carrying amount.

Dividend income from investments is recognised when the shareholder's right to receive payment has been established. Gain on sale on investments is measured by the difference between the sale proceeds and the carrying amount of the investment at the date of disposal, and is recognized at the time of sale.

Management fees and performance fees are accrued when services are performed.

**Accrued income**

Accrued income is recognised at fair value.

**Accrued expenses**

Accrued expenses are recognized at cost.

**Foreign currency translation**

Foreign currency transactions are recorded in US$ at the rate of exchange ruling at the date of the transaction. Monetary assets and liabilities denominated in foreign currencies are translated into US$ at the rate of exchange prevailing on the financial position date. Resulting gains or losses on exchange are recorded as part of the results for the year.

4.    **CRITICAL ACCOUNTING JUDGEMENTS AND KEY SOURCES OF ESTIMATION OF UNCERTAINTY**

In the application of the Fund's accounting policies, which are described in note 3, the Investment Manager is required to make judgments, estimates and assumptions about the carrying amounts of assets and liabilities that are not readily apparent from other sources. The estimates and associated assumptions are based on historical experience and other factors that are considered to be relevant. Actual results may differ from these estimates.

The estimates and underlying assumptions are reviewed on an ongoing basis. Revisions to accounting estimates are recognised in the period in which the estimate is revised if the revision affects only that period or in the period of the revision and future periods if the revision affects both current and future periods.

The following are the critical judgments, apart from those involving estimations (see below), that Investment Manager has made in the process of applying the Fund's accounting policies and that have the most significant effect on the amounts recognised in the financial statements.

*Classification of investments*
The classification of investments depends on the nature and purpose of the financial assets and is determined at the time of initial recognition. The Fund classifies all its investments at financial assets at FVTPL.

13

The Port Fund Limited Partnership
Cayman Islands

Notes to the financial statements
For the year ended 31 December 2013

4.    CRITICAL ACCOUNTING JUDGEMENTS AND KEY SOURCES OF ESTIMATION
      OF UNCERTAINTY (continued)

      **Key sources of estimation uncertainty**
      The key assumptions concerning the future and other key sources of estimation uncertainty at the
      financial position date, that have a significant risk of causing a material adjustment to the carrying
      amounts of assets and liabilities within the next financial year are discussed below:

      *Impairment of financial assets*
      The Investment Manager reviews periodically items classified as loans and receivables to assess
      whether a provision for impairment should be recorded in the statement of comprehensive income.
      The Investment Manager estimates the amount and timing of future cash flows when determining
      the level of provisions required. Such estimates are necessarily based on assumptions about
      several factors involving varying degrees of judgment and uncertainty.

      *Valuation of unquoted equity investments*
      Valuation of unquoted equity investments is normally based on one of the following:
      • recent arm's length market transactions;
      • current fair value of another instrument that is substantially the same;
      • the expected cash flows discounted at current rates applicable for items with similar terms and
        risk characteristics; or
      • Other valuation models.

      The determination of the cash flows and discount factors for unquoted investments requires
      significant estimation.

5.    CASH AND CASH EQUIVALENTS

|  | 2013 | 2012 |
|---|---|---|
|  | US$ | US$ |
| Bank balances | 13,974,120 | 383,634 |
|  | 13,974,120 | 383,634 |

6.    FINANCIAL ASSETS AT FAIR VALUE THROUGH PROFIT OR LOSS (FVTPL)

|  | Fair value at 31 December 2012 | Additions during the year | Disposals during the year | Unrealised gain for the year | Fair value at 31 December 2013 |
|---|---|---|---|---|---|
|  | US$ | US$ | US$ | US$ | US$ |
| **Unquoted investments:** |  |  |  |  |  |
| MPC Global Maritime Opportunities S.A. ("MPC-GMO") | 4,644,798 | - | (4,644,798) | - | - |
| Negros Navigation Corporation Inc. (NENACO) | 98,172,237 | - | - | 3,334,375 | 101,506,612 |
| Sabah Al-Ahmad Global Gateway Logistics City | 229,243,838 | 30,000,000 | - | 83,534,429 | 342,778,267 |
|  | 332,060,873 | 30,000,000 | (4,644,798) | 86,868,804 | 444,284,879 |

Additions include an amount of US$ 8,050,000 transferred from other short term loans (note 7).

14

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**
For the year ended 31 December 2013

6.    **FINANCIAL ASSETS AT FAIR VALUE THROUGH PROFIT OR LOSS (FVTPL) (Continued)**

During the year, the investment in MPC-GMO was disposed off at the liquidation value of US$ 2,050,589 and was set off against the obligations of the Fund towards MPC-GMO. The Fund recognized a loss of US$ 2,594,209 on disposal of its investment in MPC-GMO.

The investments in NENACO and Sabah Al-Ahmad Global Gateway Logistics City amounting to US$ 444,284,879 (2012: US$ 327,416,075) are carried at fair value as determined based on the independent third party valuation reports using pricing models and discounted cash flow techniques that are based on non-observable market prices or rates for which an unrealised gain of US$ 86,868,804 (2012: US$ 77,950,688) is recognised in the statement of comprehensive income for the year.

7.    **LOANS AND RECEIVABLES**

|  | 2013 US$ | 2012 US$ |
|---|---|---|
| Convertible loan | 20,000,000 | 20,000,000 |
| Other short term loan (note 6) | - | 8,050,000 |
|  | 20,000,000 | 28,050,000 |

The convertible loan to KGL International for Ports, Warehousing and Transport K.S.C.C. was originally for a period of five years with a final maturity date of 26 August 2012, which has been extended for another two years with a final maturity date of 26 August 2014.

KGL International for Ports and Warehousing K.S.C.C has invested this loan in Damietta International Ports Company which is in Egypt. Due to unforeseen circumstances and current political situation in Egypt, till such time as the project is formally restarted, interest on the above convertible loan is not accrued.

The loan is convertible at the option of the Fund into two million shares in Damietta International Ports Company. The Fund is entitled to convert the loan to shares at any time before its final settlement on 26 August 2014.

8.    **RELATED PARTY TRANSACTIONS**

Related parties are General Partner, Limited Partners, Investment Manager, Directors, key management personnal and entities controlled, jointly controlled or significantly influenced by such parties. All related party transactions are carried out in the normal course of business and with the approval of the management.

The related party transactions included in the financial statements are as follows:

|  | 2013 US$ | 2012 US$ |
|---|---|---|
| **Statement of comprehensive income** |  |  |
| **Income** |  |  |
| • Interest income | 382,607 | 276,861 |
| **Expenses** |  |  |
| • Management fees | 3,022,280 | 3,563,040 |
| • Performances fees | 14,994,034 | 12,908,440 |

15

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**
For the year ended 31 December 2013

8.   **RELATED PARTY TRANSACTIONS (continued)**

In accordance with the Limited Partnership Agreement, management fees representing 1.5% (2012: 2%) of the total capital commitments of the limited partners have been accrued to the Investment Manger, KGL Investments Cayman Limited.

In accordance with the Limited Partnership Agreement, 20% of the profit for the year has been allocated to the Investment Manager KGL Investments Cayman Limited as performance fees.

9.   **OTHER PAYABLES AND ACCRUED EXPENSES**

|  | 2013 | 2012 |
|---|---|---|
|  | US$ | US$ |
| Capital contribution payable to MPC-GMO | 6,660,292 | 10,750,000 |
| Management fees payable | - | 3,563,040 |
| Others | 638,913 | 614,087 |
|  | 7,299,205 | 14,927,127 |

10.   **GENERAL AND ADMINISTRATIVE EXPENSES**

|  | 2013 | 2012 |
|---|---|---|
|  | US$ | US$ |
| Fund administration expenses | 535,805 | 539,194 |
| Consultancy and legal fees | 272,179 | 140,334 |
| Finance charges for MPC-GMO obligation | 539,311 | 580,709 |
| Others | 275,081 | 91,258 |
|  | 1,622,376 | 1,351,495 |

11.   **TAXATION**

As per the Limited Partnership Agreement any tax liability arising on the activity of the Fund will be borne by Partners.

12.   **FINANCIAL RISK MANAGEMENT**

The Fund primarily invests in equity related investments in port management companies that operate ports in the fastest growing regions of the world which are the developing markets of the Asia, Africa and the Middle East. The objective of the Fund is to achieve long term capital appreciation through investments in entrepreneurial companies demonstrating the potential for significant growth derived from products and services with international market appeal and demonstrate and sustainable competitive advantages. The Fund is exposed to a number of risks arising from the various financial instruments it holds. The main risk to which the Fund is exposed is; credit risk, market price risk, interest rate risk and liquidity risk. The risk management policies employed by the Fund to manage these risks are discussed below:

16

**The Port Fund Limited Partnership**
**Cayman Islands**

**Notes to the financial statements**
For the year ended 31 December 2013

## 12. FINANCIAL RISK MANAGEMENT (continued)

### a. Market price risk

The Fund's unquoted investments are susceptible to market price risk arising from uncertainties about future values of investment securities. The Fund's advisor advises the Fund on the investments that have prospects to appreciate in value over the medium to long term period.
The advisor's recommendations are reviewed by the General Partner before the investment decisions are implemented. The performance of investments held by the Fund is monitored by the advisory committee on an ongoing basis and reviewed on a regular basis by the General Partner.

### b. Currency risk

The Fund hold assets denominated in currencies other than US$, the functional and presentation currency of the Fund. Consequently the Fund is exposed to currency risk since the value of the securities denominated in other currencies will fluctuate due to changes in exchange rates. The Fund's policy is not to enter into any currency hedging transactions.

The table below summarizes the Fund's exposure to currency risks. Included in the tables are the Fund's assets and liabilities at fair values categorised by their base currencies:

### c. Concentration of assets and liabilities

| As at 31 December 2013 | Other currencies | United States Dollars | Total |
|---|---|---|---|
| | US$ | US$ | US$ |
| **Assets** | | | |
| Loans and receivables | - | 20,000,000 | 20,000,000 |
| Financial assets at FVTPL | - | 444,284,879 | 444,284,879 |
| Due from related party | - | 5,177,516 | 5,177,516 |
| Cash and cash equivalents | 997,473 | 12,976,647 | 13,974,120 |
| **Total assets** | 997,473 | 482,439,042 | 483,436,515 |
| **Liabilities** | | | |
| Due to Investment Manager | - | (55,820,063) | (55,820,063) |
| Due to related party | - | (8,885,000) | (8,885,000) |
| Other payables and accrued expenses | - | (7,299,205) | (7,299,205) |
| **Total net assets** | 997,473 | 410,434,774 | 411,432,247 |
| **As at 31 December 2012** | | | |
| **Assets** | | | |
| Loans and receivables | - | 28,050,000 | 28,050,000 |
| Financial assets at FVTPL | - | 332,060,873 | 332,060,873 |
| Due from related party | - | 5,491,762 | 5,491,762 |
| Capital contribution receivable | - | 35,000,000 | 35,000,000 |
| Cash and cash equivalents | 285,286 | 98,348 | 383,634 |
| **Total assets** | 285,286 | 400,700,983 | 400,986,269 |
| **Liabilities** | | | |
| Due to investment manager | - | (40,826,029) | (40,826,029) |
| Due from related parties | - | (3,777,000) | (3,777,000) |
| Other payables and accrued expenses | - | (14,927,127) | (14,927,127) |
| **Total net assets** | 285,286 | 341,170,827 | 341,456,113 |