# EXHIBIT 14
# Part 6





# Andrew Childe

Cayman Islands
D +1 345 640 5858
M +1 345 916 1813
E andrew.childe@ffp.ky

Andrew Childe is an independent director specialising in providing independent board level governance and dispute resolution advice to companies, partnerships, trusts and other financial structures.

He takes liquidation appointments over both solvent and insolvent entities, and is qualified to act as a Court appointed liquidator in the Cayman Islands.

Formerly a senior manager at a 'Big Four' advisory and accounting firm, where he managed the restructuring department. Andrew moved to the Cayman Islands in 2009, prior to which he worked with PricewaterhouseCoopers, on a number of large retail and banking restructuring engagements.

Andrew has substantial experience in dealing with a wide range of assets and managing complex cross border litigation. He has in depth knowledge of litigation claims, secondary markets, performing and non-performing loans, as well as traded and non-traded equities. He is also well versed in asset backed lending, real estate sales and management, derivatives and debt instruments, in addition private equity investments, structured finance products and other esoteric assets.

He is therefore extremely well placed to advise on a wide range of investment strategies, operating an extensive network of trusted advisors and legal counsel in multiple jurisdictions.

Andrew currently sits as a board member on a variety of investment companies in Cayman, the US, British Virgin Islands, the Channel Islands and West Africa.

He is a member of the Institute of Chartered Accountants in England & Wales, CISPA, the American Bankruptcy Institute, INSOL International, and is the former Secretary of the Restructuring and Insolvency Specialists Association in the Cayman Islands.

Andrew is a qualified Court appointed liquidator in the Cayman Islands and a Certified Director, accredited by ICSA Canada. He is a member of the Cayman Islands Directors Association, the Cayman Islands Compliance Association and is registered with the Cayman Islands Monetary Authority as an Approved Director.

www.ffp.ky





# Chris Rowland

Cayman Islands
D +1 345 640 5857
M +1 345 916 3488
E chris.rowland@ffp.ky

Chris Rowland is an independent director and advisor specialising in providing independent board level governance and dispute resolution advice to a select number of companies, partnerships, trusts and other financial structures.

Currently Chris acts as a director to investment companies and other entities in the Cayman Islands, the British Virgin Islands, the US, the Channel Islands and the UK.

With his background at a 'Big Four' accounting and advisory practice in the Cayman Islands, Chris has over 20 years' of experience in the Cayman Islands financial services sector, with a particular focus on hedge funds, alternative investments, SPVs, trusts and their service providers.

A highly experienced hedge fund liquidator, his expertise includes investigations into insurance companies, banks and trust companies. As a former law enforcement and government financial investigator Chris also has significant experience in relation to fraud and financial investigations, anti-money laundering, and regulatory matters, including anti-corruption and sanctions.

In his public sector roles, he has advised various bodies, such as, the Cayman Islands Compliance Association, the Cayman Islands Monetary Authority and the Caribbean Financial Action Task Force. Chris has conducted investigations and provided testimony in the UK, US and Caribbean

With decades of experience, Chris has deep insight into alternative investment and offshore financial structures and products. He routinely deals with such issues as: service provider responsibilities, valuation, redemption and side letter disputes, complex and illiquid assets and other issues such as communication and relationship break downs, fraud, claims, regulatory investigations, disputes, restructurings, indemnification practices, claw backs and litigation.

He is recognised in the industry as a leader and strategic advisor in contentious and complex situations.

Chris is a Caymanian national, a Notary Public and is qualified as a Certified Fraud Examiner (ACFE), a Certified Anti-Money Laundering Specialist (ACAMS) and a Certified Director (Acc. Dir. – Chartered Secretaries Canada). He is a member of the Cayman Islands Directors Association, the Cayman Islands Compliance Association, INSOL International and the Restructuring and Insolvency Specialists Association in the Cayman Islands. Chris is also registered with the Cayman Islands Monetary Authority as an Approved Director.

www.ffp.ky

**Discovery of a systematic funded campaign to attack the State of Kuwait and the Kuwait Port Authority in the United States of America in order to subvert justice in Kuwait**

August 17, 2019—Kuwait:  A new public file submitted by the legal adviser of KGL Investment KSCC under the Foreign Agents Registration Act (FARA) of the US Department of Justice has unveiled a cynical public relations strategy deployed by law firm Crowell & Moring LLP, on behalf of former executives of KGL, both of whom have been indicted for embezzlement and misuse of public funds, and who face ongoing criminal prosecution in Kuwait.

In 2007, two Kuwaiti governmental entities, the Kuwait Public Institution for Social Security (PIFSS) and the Kuwait Ports Authority (KPA), previously contributed more than 60% of the total assets of an investment fund managed by KGLI, called The Port Fund.  It is the activities of the defendants in managing The Port Fund that are now being investigated by Kuwait's criminal authorities and which are before Kuwait's courts.

The FARA filing confirms that Crowell & Moring LLP hired Marathon Strategies LLC, a public relations firm in the United States, with an explicit mandate to (i) "*raise questions about whether Kuwait is a safe place to invest*" and publicize this in the United States media and elsewhere, as well as to denounce (ii) "*the unjustified State of Kuwait actions, including the Kuwait Ports Authority, against KGL and its executives and / or its shareholders.*"

Marathon Strategies was also hired to lobby state officials and draft "*letters to legislators.*"

The public relations campaign waged by Crowell & Moring LLP and the other cabal of lobbyists and advisors hired by KGL and its former executives is a blatant attempt to subvert the course of justice in Kuwait, and to help disgraced former executives of KGL, Saeed Dashti and Maria (Marsha) Lazareva, avoid an ongoing criminal investigation and escape from justice in Kuwait in connection with multiple allegations of embezzlement and misappropriation of public funds.

From the beginning of 2019, reports submitted under the US Lobbying Disclosure Act (LDA) confirm that more than US$3.5 million has been spent in an international lobbying and public relations campaign specifically attacking the independence and impartiality of the Kuwaiti judiciary, judges and Kuwaiti prosecutors.

In pursuit of this campaign another KGL advisor, Omnia Strategy LLP has filed complaints against Kuwait before the United Nations, alleging violations of the International Convention on Civil and Political Rights, and Crowell & Moring has filed a claim before the UNCITRAL (United Nations Commission on International Trade Law) Arbitration Center.  These advisors have also attempted to coopt various U.S. politicians—including Senator Roger Wicker and Congress members Madeleine Dean and Steve Chabot—to their cause by maliciously disparaging Kuwait's reputation internationally.  As part of this effort, they have bizarrely tried to threaten a number of senior Kuwaiti officials—including Kuwait's Attorney-General, and the Director-General of Kuwait Ports Authority—with sanctions under the US Magnitsky Act.

In response, the Kuwait Ports Authority confirms that it will bring to the notice of the relevant criminal authorities in Kuwait the recent FARA filings made by Marathon Strategies.  The combination of the LDA

filings and the FARA filings suggests that the advisors, including Crowell & Moring LLP and Marathon Strategies, are fully knowledgeable that that they are utilizing Kuwaiti government funds (derived through Kuwait's investments in The Port Fund) in a highly unethical scheme to attack the Kuwaiti government itself.  In Kuwait, these actions could also be tantamount to a further misappropriation of public funds on the part of all of those concerned, as well as a violation of crimes against the State.

The Kuwait Port Authority further warned any advisors engaged by KGL or its former executives—including Crowell & Moring LLP and Marathon Strategies—that, to the extent they claim to be engaged by The Port Fund or have received payments from assets rightfully belonging to The Port Fund, no such engagement was approved by the investors of The Port Fund, and such investors will seek to hold responsible those receiving such monies unlawfully from assets belonging exclusively to The Port Fund.

Despite the heavy lobbying done by Crowell & Moring LLP and Marathon Strategies, there appears to be little success.  According to Shaikh Yousef Al-Sabah, Director-General of the Kuwait Ports Authority, "*The international community continues to perceive Kuwait as a fundamentally sound place in which to invest. Last month, Kuwait was upgraded from frontier to emerging market status by MSCI.  According to Franklin Templeton, this could result in as much as $10 billion in additional investments into Kuwait.  However, while Kuwait is a safe place in which to invest, it is not a safe place in which to embezzle public funds.*"

**Background of the Cases:**

The courts of Kuwait have ruled in many judgments, some of which have become final and enforceable, that KGL and its former executives have breached the public trust vested in them insofar as it relates to Kuwaiti public funds.  Examples of these court rulings issued in the context of protecting public funds include:

*Illegal Usurpation of Public Lands*.  KGL has illegally usurped and continues to usurp public lands.

- Mina Abdullah Land.  In its rulings Nos. 11 and 23 of 2017 (Administrative), the Kuwait Court of Appeals has ordered the eviction of KGL from Kuwait Ports Authority lands, as a result of its illegal usurpation of more than 1,000,000 square meters of land in Mina Abdullah, Kuwait. KGL's attempts to appeal the decision have been rejected by the Kuwait Court of Appeals and the Kuwait Court of Cassation. The Kuwait Ports Authority has also filed a criminal complaint (No. 5 of 2016) with the Kuwait Public Prosecution (Public Funds Section) regarding the same unlawful usurpation of Mina Abdullah land and the obstruction of operations of a public facility.

- Doha Land.  In its ruling No. 1957 of 2015 (Administrative), the Kuwaiti judiciary has ordered the eviction of KGL from an area of 270,000 square meters in a storage area at the port of Doha, Kuwait.

- Seventh Storage Area. In its ruling No. 420 of 2017 (Administrative), the Kuwaiti judiciary has ordered the eviction of KGL from the land located in the Seventh Storage Area, and compelled it to pay usufruct fees.

- Shuaiba Land.  In its ruling No. 2472 of 2018 (Urgent Matters), the Kuwaiti judiciary has permitted the Kuwait Ports Authority to retrieve from KGL a sizeable area in Shuaiba Port.

**Debarment.**  In its judgment No. No. 2512 of 2018 (Administrative), the Kuwaiti judiciary has confirmed the Decision No. 657 of 2017 issued by the Kuwait Port Authority to debar KGL and its affiliates from any further contracting with the KPA or any activities on its lands.

With respect to the ongoing criminal prosecutions of former KGL executives, the KPA notes the following:

**Embezzlement of Public Funds**.  Whilst a judgment had previously been issued in Felony Case No. 1942 of 2015 (Public Prosecution - Public Funds), which found that former KGL executives were guilty of the unlawful appropriation of KD 21 million, this judgment has been overturned by the Kuwait Court of Appeal on procedural grounds.  The case has been remanded back to the Kuwait Court of First Instance, and the prosecution remains ongoing.  While the KPA does not generally comment on the substance of Kuwaiti court rulings, it does believe that the decision of the Kuwait Court of Appeal demonstrates the independence and neutrality of the Kuwaiti judiciary, despite the allegations made by KGL, Crowell & Moring LLP and their respective advisors.

**The Port Fund**.  In addition to the ongoing embezzlement prosecution, there is also a further felony being prosecuted which is currently before the Criminal Court in Case No. 1496 of 2012 (Public Prosecution - Public Funds section) which relates to the unlawful appropriation by KGL Investment of assets belonging to The Port Fund, in which the Kuwait Port Authority invested approximately US$85 million.  This case remains ongoing.

In connection with the latter complaint, The Kuwait Port Authority has submitted to the Kuwait Public Prosecutor several reports relating to suspected wrongdoing, including:

- **Manipulation of Financial Statements**.  Alleged manipulation by the defendants of The Port Fund's financial statements to reflect fictitious investments made by KGL Investment towards the investments by The Port Fund when, in fact, no capital contributions were made by KGL Investments.
- **Unauthorized Asset Transfers**.  Unauthorized transfer of ownership of The Port Fund's investments to shell companies owned by one of the defendants, Saeed Dashti, prior to the end of The Port Fund's term in 2014 without the knowledge or approval of the investors in The Port Fund.
- **Unauthorized Related Party Transactions**.  The defendants engaged in various related party transactions that were not disclosed to or authorized by the investors of The Port Fund, including:
  - In 2007, one of the defendants, Maria Lazareva, granted a loan of in excess of US$ 20 million to a subsidiary of KGL, KGL International Ports and Warehousing. In 2014, the loan and all accrued interest was cancelled on the basis of an impairment.
  - Maria Lazareva also granted a bank loan to a Jordanian company named United Company, owned by her co-defendant, Saeed Dashti, for US$900,000, a which loan was neither disclosed to, nor authorized by, the investors in The Port Fund.

The investigation into the defendants' activities in connection with their management of The Port Fund remains ongoing, and the Kuwait Port Authority reserves the right to bring further instances of wrongdoing to the Kuwait Public Prosecutor.

**NEIL BUSH**
GLOBAL ADVISERS

Neil Bush
50 Briar Hollow Lane, 200E
Houston, TX
neil@nbglobaladvisers.com



*Louis J. Freeh*
*Freeh@FreehSporkinSullivan.com*

August 19, 2019

**BY ELECTRONIC MAIL** (sk.alsabah@mofa.gov.kw)

His Excellency Sabah Al Khalid Al Sabah
Deputy Prime Minister and Minister of Foreign Affairs
State of Kuwait

   Re: <u>Release of Saeed Dashti</u>

Your Excellency:

The concerns expressed in our letters of 1 August 2019 and 6 August 2019 once again appear to have been justified.  The Summer Panel of the Court of Appeals scheduled a hearing on 18 August to receive written confirmation that the court, in fact, had on deposit the amount of funds specified in the 2 June 2019 order for Mr. Dashti's release on bail.  Mr. Dashti's lawyers brought such documentation to the 18 August hearing.

However, we are advised that Mr. Mohammed Ben Naji, the Head of the Appeals Court and a family relative of Mr. Dashti's chief business rival, once again appears to have personally intervened in his case while on his vacation.  We are advised that Judge Ben Naji apparently had a subordinate inform the judge presiding at the 18 August hearing not to take any action on Mr. Saeed Dashti's pending request to be released under the 2 June 2019 court order.  As a result of Judge Ben Naji's apparent interference, the Summer Panel that scheduled the 18 August hearing did not even call his case to be heard even though both Mr. Dashti and his lawyers were present in the courtroom.  The court did not provide any explanation for its failure to call the case.

This is yet another unfortunate example of the arbitrary procedural irregularities that have plagued Mr. Dashti and Ms. Lazareva legal proceedings.  This latest unexplained action by the court reinforces the concern by international observers that non-judicial, improper influences appear to be at play.  We again urge your good offices to protect Kuwait's reputation and take whatever action appropriate to allow these legal proceedings to be reviewed on the facts and the law without repeated interference by Judge Ben Naji, who should recuse himself from any involvement in these cases.

In another extremely disturbing development, the Kuwait Port Authority (KPA) issued a press release on 17 August 2019 that threatens members of the international defense team with baseless criminal charges in connection with their legal defense of their clients.  This is a direct attack on the rule of law and an appalling attempt to intimidate the international legal counsel

H.E. Sheikh Sabah Al Khalid Al Sabah
Deputy Prime Minister and Minister of Foreign Affairs
August 19, 2019
Page 2

and advisors.  It is no coincidence that this conduct comes from KPA under the management of Sheik Yousef Al-Sabah, who is himself the subject of bipartisan calls from members of the U.S. Congress for investigation and potential sanctions under the Global Magnitsky Human Rights Accountability Act for this role in these cases.  This tactic reaffirms the serious concerns of international bodies and civil society about the handling of these cases.  We encourage your good offices to have the KPA press release withdrawn.

Finally, we will be informing the appropriate U.S. officials regarding these developments for their appropriate review and action.

Sincerely,

Neil Bush                                                     Louis Freeh

**ccs:**

*His Excellency Khaled Al-Jarallah*
Deputy Foreign Minister of the State of Kuwait

*His Excellency Salem Abdullah Al-Jaber Al-Sabah*
Ambassador of the State of Kuwait to the United States of America

*The Honorable Lawrence R. Silverman*
U.S. Ambassador to the State of Kuwait

**NBGLOBAL**
GLOBAL ADVISERS

Neil Bush
50 Briar Hollow Lane, 200E
Houston, TX
neil@nbglobaladvisers.com



*Louis J. Freeh*
*Freeh@FreehSporkinSullivan.com*

September 5, 2019

**BY ELECTRONIC MAIL** (sk.alsabah@mofa.gov.kw)

His Excellency Sabah Al Khalid Al Sabah
Deputy Prime Minister and Minister of Foreign Affairs
State of Kuwait

Re:  Release of Saeed Dashti and Attendance at Hearings in Kuwait

Your Excellency:

We once again write to express the same concerns articulated in our last three letters dated 1, 6, and 19 August 2019.  The Summer Panel of the Court of Appeals, again without explanation, took no action on Mr. Saeed Dashti's urgent request to be released on bail under the 2 June 2019 order for his release.  The Summer Panel took no action, notwithstanding that Mr. Dashti's lawyers complied with the Summer Panel's request to submit documentation showing that the KWD 10 million in bail had already been deposited with the court.  We also understand that the regular panel declined to take any action last Sunday to enforce the 2 June 2019 bail order and postpone the issue until the hearing on 15 September.

It appears, once again, that Mr. Mohammed Ben Naji, the Head of the Appeals Court and a family relative of Mr. Dashti's chief business rival, has prevailed in keeping Saeed Dashti from being released until the 15 September hearing unless he deposits an *additional* KWD 10 million that the Kuwait Attorney General has demanded, but the court did not order.  Any objective observer could view these events as convincing evidence that certain actors in the judicial system are either trying to arbitrarily detain Saeed Dashti or extra-judicially expropriate and deplete his assets.

The unexplained failure to take action on his repeated urgent bail requests after the Appeals Court nullified his conviction four months ago reinforces, once again, the concerns by international observers that non-judicial, improper influences appear to be at play.  We yet again urge your good offices to protect Kuwait's reputation and take whatever action appropriate to allow these legal proceedings to be reviewed on the facts and the law without repeated interferences by Judge Ben Naji, who should recuse himself from any involvement in these cases.

Finally, we will be returning to Kuwait to attend the September hearings along with other members of the defense team.  We hope the hearings will be consistent with upholding the rule of law

H.E. Sheikh Sabah Al Khalid Al Sabah
Deputy Prime Minister and Minister of Foreign Affairs
September 5, 2019
Page 2

and that the court will seriously study and consider the significant amount of new evidence supporting the actual innocence of Ms. Lazareva and Mr. Dashti.  We also urge you to advise the KPA that any further threats against our United States and international legal team, whose members are providing legal services to their clients in a completely professional and lawful manner, could result in a more serious diplomatic situation.  It is time for these matters to be closed out for the sake of all stakeholders.

Respectfully submitted,

Neil Bush                                        Louis J. Freeh

ccs:

*His Excellency Khaled Al-Jarallah*
Deputy Foreign Minister of the State of Kuwait

*His Excellency Salem Abdullah Al-Jaber Al-Sabah*
Ambassador of the State of Kuwait to the United States of America

*The Honorable Lawrence R. Silverman*
U.S. Ambassador to the State of Kuwait

**PETITION TO:**

**UNITED NATIONS WORKING GROUP ON
ARBITRARY DETENTION**

**In the Matter of:**

**MARIA LAZAREVA**

v

**GOVERNMENT OF THE STATE OF KUWAIT**

---

**CASE UPDATE FOR THE WORKING GROUP ON ARBITRARY DETENTION**

---

**I.      INTRODUCTION AND SUMMARY**

**A.  Previous engagement with the Working Group on Arbitrary Detention**

1.  On 23 May 2019, international counsel for Ms Lazareva submitted a petition to the UN Working Group on Arbitrary Detention ("**Working Group**") complaining (among other matters) that in breach of its obligations under international law (notably Articles 9 and 14 of the International Covenant on Civil and Political Rights ("**ICCPR**")) the State of Kuwait ("**Kuwait**") was arbitrarily detaining Ms Lazareva ("**Complaint**").

2.  On 28 August 2019, international counsel for Ms Lazareva submitted a Case Update ("**August Case Update**") informing the Working Group that, among other things:

    a.  while Ms Lazareva had been belatedly released on bail on 12 June 2019, this had been preceded by further periods of continued arbitrary detention;

1

b. upon leaving Sulaibiya jail, Ms Lazareva was followed by people in three cars who tracked and monitored her. Surveillance had been maintained continuously while Ms Lazareva was on bail and extended to her legal team, despite there being no known court order providing for such interference with Ms Lazareva's liberty;

c. the Kuwait Port Authority ("**KPA**"), a State entity at the heart of the allegations against Ms Lazareva, had issued a press release that directly and in clear and unambiguous terms, threatened the international legal team working on Ms Lazareva's case in response to their legitimate engagement with UN Special Mechanisms; and

d. there were serious concerns that Ms Lazareva may be subjected to further periods of arbitrary detention.

3. On 23 September 2019, international counsel for Ms Lazareva submitted comments ("**Rejoinder**") on the Government of Kuwait's response to Ms Lazareva's complaint to the Working Group dated 3 September 2019 and received by Ms Lazareva's legal counsel on 6 September 2019. We were (and remain) particularly concerned to note that Kuwait's response demonstrated a fundamental misunderstanding of its international obligations, including basic principles of the ICCPR.

4. We are aware of no other submissions made to the Working Group by the State of Kuwait.

5. In summary, Ms Lazareva has faced and is facing prosecution in two cases:

a. **The Advisory Services Case**, including appeal and retrial (Cases 1942/2015 and 1596/2018), which involves allegations of embezzlement relating to the provision by KGL Investment Company K.S.C.C ("**KGLI**"), the investment firm of which Ms Lazareva was the CEO, of advisory services to the KPA; and

b. **The Port Fund Case** (Case 1496/2012), which relates to allegations of misappropriation of the KPA and Kuwait Public Institution for Social Security ("**PIFSS**") funds by subscribing and investing in an investment fund called The Port Fund ("**TPF**" or "**the Fund**").

2

**B.  11 November 2019 conviction**

6.  Judgment in The Port Fund Case was handed down on Monday 11 November 2019. Relying on analysis and information provided by local counsel, we are firmly of the view that the conviction is unsafe and is likely to have been strongly influenced by extra-judicial factors, and that the custodial sentence imposed is arbitrary and a serious miscarriage of justice.

7.  We are conscious that the Working Group expects to consider our complaint at its upcoming session, scheduled to commence on Monday 18 November 2019, which we welcome. In light of the significance and seriousness of the recent developments, Ms Lazareva and her legal team considered it important to provide this update to the Working Group as quickly as possible. We do not anticipate that this will necessitate the Working Group postponing its consideration of this case, and we respectfully request that no such delay is entertained, given the urgency of the situation.

8.  As this update is filed only four days after the judgment was issued, and in difficult circumstances in which Ms Lazareva and local counsel have had limited available time, this Case Update does not purport to be exhaustive and may need to be supplemented in due course.

**II.   CASE UPDATE**

**A.  Background**

9.  In previous submissions to the Working Group, international counsel for Ms Lazareva focused mainly on the Advisory Services Case, in connection with which Ms Lazareva was arbitrarily detained. The retrial in that case continues, following the first instance conviction having been quashed by the Kuwaiti Court of Appeal on the basis of fundamental due process violations.

10.  However, our submissions also alerted the Working Group to serious concerns regarding the parallel proceedings in The Port Fund Case. In The Port Fund Case, Ms Lazareva was

*3*

accused, together with her co-defendant, Mr Saeed Dashti, of misappropriating USD 166 million from The Port Fund, an investment fund administered by KGLI.

11. In particular, the Working Group will recall our submissions that:

   a. The Port Fund Case originated from complaints lodged by a disgruntled KGLI former employee who had since been convicted on charges of embezzling over USD 500,000 from Ms Lazareva's personal bank account;

   b. Ms Lazareva was detained for interrogation in January, August and September 2016 and January 2017 in relation to these complaints;

   c. Each interrogation would last for up to eight hours (and in one instance as long as twelve hours). Ms Lazareva reported being kept in isolation and that there were long periods of waiting for questioning without any comfort being provided or necessities such as food and water;

   d. Documents were not provided for Ms Lazareva to consider, and she was required to sign an Arabic transcript of her interview that she did not understand. Ms Lazareva describes having been intimidated during these periods of questioning;

   e. Trial proceedings in The Port Fund Case commenced in May 2018. Counsel for Ms Lazareva presented evidence at trial that the alleged misappropriated funds were not missing, but had in fact been frozen in Dubai and remained frozen at the request of the Government of Kuwait;

   f. The Port Fund Case was largely dormant for eight months between December 2018 and August 2019, in which time the funds were unfrozen and returned to investors (with a substantial profit) after the Kuwait Attorney General belatedly requested the Dubai Attorney General to release the funds. Together with The Port Fund records, this demonstrated conclusively that there was no credible basis on which the prosecution could be pursued for absconding with the funds. Nevertheless, the case was reactivated soon after Ms Lazareva's conviction in the Advisory Services Case was overturned;

   g. The restarting of The Port Fund Case coincided with the court overturning the separate conviction in the Advisory Services Case gave rise to questions about the Kuwaiti authorities' motivation, and whether, as it seemed, this was simply a means of continuing the targeting of Ms Lazareva for non-judicial reasons; and

4

    h.   Following a final hearing on 9 September 2019, judgment in The Port Fund Case was due on 11 November 2019.

12.  The Accusation Report filed by the Public Prosecutor contained ten counts. Nine of the counts alleged that the defendants had, through many individual financial transactions, harmed, embezzled or facilitated the embezzlement of public funds invested in The Port Fund by the KPA and PIFSS. One of the ten counts alleged money laundering associated with transferring the allegedly embezzled public funds.

13.  On 11 November 2019, the Kuwaiti Court of First Instance ("**the Court**") issued its judgment in The Port Fund Case. The court acquitted Ms Lazareva in respect of all but two of the over 160 allegedly fraudulent transactions. The impugned transactions in respect of which she was acquitted covered the entirety of the USD 166 million alleged to have been misappropriated.

14.  However, the Court convicted Ms Lazareva in respect of two transactions, finding that Ms Lazareva:

    a.   facilitated and embezzled KWD 719,000 (approximately USD 2.5 million) as a result of that amount being transferred from the bank account of The Port Fund to the bank account of KGLI, and subsequently transferred this same sum across two separate payments from KGLI to the bank account of a company associated with Mr Dashti (Ms Lazareva was convicted on Count 2 of the Accusation Report);

    b.   facilitated and embezzled KWD 350,000 (approximately USD 1.15 million) by transferring that amount from KGLI's bank account to Mr Dashti's bank account (Ms Lazareva was purportedly convicted on Count 7 of the Accusation Report, although see Section II.D below); and

    c.   was, as a result of the two transactions described above, guilty of one count of money laundering (Count 10).

15.  The Court sentenced Ms Lazareva to 15 years imprisonment with hard labour.

16.  Even an initial analysis of the lengthy Court judgment reveals fundamental and fatal flaws in respect of these convictions, the most significant of which are outlined in this Case

<div align="center">5</div>

Update. The judicial process and outcome are manifestly and undoubtedly unfair, and the deprivation of liberty ordered by the Court is a gross violation of Kuwaiti law and international human rights standards. In addition to the periods of arbitrary detention already described in our preceding submissions to the Working Group, this most recent judgment constitutes a classic case of arbitrary detention, with the judicial process nothing more than a sham to provide the illusion of a fair trial.

**B. Lack of reasoning for the convictions and sentence**

17. The Court went to considerable and even commendable lengths to provide detailed reasoning within its judgment for each of the counts on which Ms Lazareva was acquitted.

18. During the first 246 pages of the 270-page judgment, the Court methodically addresses over 160 separate financial transitions in which The Port Fund was involved and in respect of which wrongdoing was alleged. In this main body of the judgment, the Court demonstrably weighed relevant prosecution and defence evidence and, in respect of each and every transaction, explained why it found in favour of the defence evidence.

19. In the judgment, the Court repeatedly emphasises that all the transactions in question were executed in accordance with the Fund's governing instruments,[1] and were in conformity with the Fund's accounting books. On numerous occasions, the judgment states that the testimony and reports of Walkers (r Islands solicitors to The Port Fund), Baker Tilly (a respected international consulting firm), and the Fund's external auditor, BDO (a respected international audit, accounting and consulting firm), were credible and reliable, and that the Court believed them. These reports, together with supporting financial records and other defence evidence, comprehensively refuted each prosecution allegation in respect of the whole USD 166 million alleged to have been embezzled. In short, the Court accepted, without exception, that the exculpatory evidence presented by the defence successfully proved that The Port Fund was a legitimate commercial enterprise, properly run in compliance with its limited partnership agreement and applicable legal and accounting standards.

---

[1] Including the Fund's Private Placement Memorandum, the Limited Partnership Agreement, the General Partner's Article of Incorporation, the resolutions issued by the General Partners.

6

20. We return below to the Court's assessment of the prosecution evidence, but for present purposes it is sufficient to note that the judgment explained, in respect of each impugned transaction covered by Counts 1, 3, 4, 5, 6, 8, 9 and parts of 10 of the Accusation Report, why the prosecution failed to meet its burden of proof, and why, therefore, Ms Lazareva was not guilty on these counts.

21. In sharp contrast, the part of the Court's judgment addressing Counts 2, 7 and part of 10, on which Ms Lazareva was convicted, is devoid of any such intellectual rigour or judicial reasoning. Instead, the Court makes bare assertions that it believed the prosecution witnesses (see below) that certain transactions constituted embezzlement and money laundering.  In respect of Counts 2, 7 and 10, the judgment makes no effort to identify or explain any reason to suspect any wrongdoing in respect to the two transactions that allegedly constituted embezzlement, let alone any reasoned basis for criminal convictions (and a lengthy custodial sentence). This is all the more striking given the internal contradictions within the judgment (see Section II.D. below).

22. On its own, this lack of reasoning is outrageous, is a violation of international human rights standards, and renders the resulting prison sentence arbitrary. Furthermore, this rush to convict on Counts 2, 7 and partially 10, without explanation, should be compared and contrasted to the more judicious approach in the first 246 pages of the judgment and considered in the context of the myriad due process violations that have marred the prosecutions against Ms Lazareva (as described in our earlier submissions to the Working Group). In all the circumstances, the natural inference is that the convictions were based on something other than evidence, legal submissions and independent judicial deliberations. It seems overwhelmingly likely that the true reasons for Ms Lazareva's conviction are extra-judicial, and, accordingly, have been kept out of the judgment entirely.

23. Such concerns are exacerbated by the unusually harsh sentence imposed and for which the Court provides no explanation.

24. Under Kuwaiti law, and more specifically Article No. 20 of Law No.1 of 1993 on the Protection of Public Funds, if an individual's conviction relates to public money and the

7

amount in question is returned prior to the close of the defence case, the judge may forego any custodial sentence.

25. We are informed by local counsel that the common practice for judges in Kuwait is to exercise this discretion, and that in fact the presiding judge responsible for the Court's judgment has himself routinely done so previously.

26. Further, as stated above, the defence submitted (and the court expressly believed) exculpatory evidence that there was no adverse impact on the public funds and that, to the contrary, all the invested funds had been returned, together with significant profits, courtesy of Ms Lazareva's good management of The Port Fund.

27. The Court's failure to provide any reasons justifying the severe sentence that markedly differs from standard Kuwaiti practice reinforces the serious concerns set out above that the deprivation of Ms Lazareva's liberty is indefensible and arbitrary.

28. This absence of judicial reasoning with regard to Ms Lazareva's conviction and sentence is another serious breach of Ms Lazareva's fundamental fair trial rights. Indeed the Human Rights Committee ("**HRC**") has previously referred to the need for any judgment to publicly pronounce "*the essential findings, evidence and legal reasoning*" [2] of the Court's decision.

29. Further, the absence of any explanation as to why Ms Lazareva was convicted on Counts 2, 7 and 10 severely undermines her ability to appeal her conviction. As the HRC has clearly stated, "*the right to have one's conviction reviewed <u>can only be exercised effectively</u> if the convicted person is entitled to have access to a <u>duly reasoned</u>, written judgement of the trial court*" [3] (emphasis added).

---

[2]   General Comment 32, HRI/GEN/1/Rev.9 (Vol 1) ("**GC 32**"), 248 para 29. See, similarly: *Karakasis v Greece* [2000] ECHR 483, para 27; *Tatishvili v Russia* [2007] ECHR 168, para 58; and *Grădinar v Moldova* [2008] ECHR 279, paras 107–108, 116.

[3]   GC 32 [49] (emphasis added).

8

**C.  Internal contradiction within the judgment**

30. As stated above, except for two of the over 160 transactions, the Court was at pains to express that it was entirely persuaded by the defence's account of the impugned transactions and the commercial activity and proper administration of The Port Fund generally.

31. We are informed by local counsel that the payment (totalling KWD 719,000) that was found to be embezzlement for the purposes of Count 2 was included within the broader series of transactions (totalling KWD 1.06 million and USD 89.76 million) that were systematically found to be lawful in the main body of the judgment where the Court acquitted Ms Lazareva on all allegations contained in Count 3.

32. More particularly, in acquitting Ms Lazareva on Count 3, the Court expressly accepted the defence's case that all transactions in Count 3 were legal, *including* the KWD 719,000 (USD 2.5 million) marketing fee paid to KGLI for successfully marketing the Fund to investors, pursuant to a Marketing Agreement between KGLI and The Port Fund and dated 3 August 2009 ("**2009 Marketing Agreement**"), a copy of which had been submitted to the Court by the defence. Inconsistent with that finding, I respect of Count 2 the Court ruled the same payment constituted embezzlement of public funds.

33. Having already acknowledged, in considering Count 3:

    a.  the legitimacy of the 2009 Marketing Agreement;

    b.  that this agreement served as a valid legal basis for money transfers from The Port Fund to KGLI;

    c.  that this agreement provided for marketing fees;

    d.  that the agreement was in full compliance with the constituent documents of The Port Fund and the laws of the Cayman Islands; and

    e.  that KGLI was duly licensed by both the Central Bank of Kuwait and the Ministry of Commerce to be a marketing agent,

the Court simply could not consistently convict Ms Lazareva for payment of a marketing fee as alleged in Count 2.  The  payment of marketing fees could not logically be lawful for

9

the purposes of one embezzlement charge (Count 2) and yet unlawful for the purposes of an overlapping embezzlement charge (Count 3).

34. Nevertheless, inexplicably, the Court, in the final pages of its judgment, convicted Ms Lazareva on Count 2, relying solely and without reasons (see above) on the testimony of Ms Mona Abdul Wahab ("**Ms Wahab**") and Mr Hamad Al-Allayan ("**Mr Al-Allayan**"). As well as being wholly unreliable (as acknowledged in strident terms by the Court in the judgment), these witnesses' testimony failed to identify any reason why the transactions were illegal.

35. The Court's finding in respect of Count 2 is, therefore, both intrinsically incoherent and a serious breach of Ms Lazareva's fundamental right to be presumed innocent until proven guilty. In its General Comment 29, the Human Rights Committee clearly stated that this right, set out in Article 14(2) of **ICCPR**, is one of the "*fundamental principles of fair trial*" and constitutes a rule of *jus cogens*.[4] The burden of proof rests on the prosecution, and where reasonable doubt exists, the case must be decided in favour of the accused.[5]

36. In the circumstances set out above, the Court's conviction of Ms Lazareva under Count 2 is clearly arbitrary and raises serious questions about the integrity of the proceedings and the impartiality of the judges responsible for the verdict.

**D. The Court's reliance on the testimony of demonstrably unreliable prosecution witnesses**

Mona Abdul Wahab

37. As previously stated in our Complaint (see paragraphs 41 to 48 of the Complaint), The Port Fund Case originated in 2012 following complaints made by Ms Wahab. Ms Wahab previously worked as Ms Lazareva's administrative assistant at KGLI until her employment was terminated for cause on 30 March 2010. In retaliation, Ms Wahab and her

---

[4]     General Comment 29, HRI/GEN/1/Rev.9 (Vol 1) ("**GC 29**") at 234 para 11.
[5]     General Comment 13, HRI/GEN/1/Rev.9 (Vol 1) ("**GC 13**") at 184 para 7.

10

husband forged Ms Lazareva's identity and stole more than USD 500,000 from Ms Lazareva's personal bank account.

38. Both Ms Wahab and her husband were convicted on charges of embezzlement by the Kuwaiti Court of First Instance on 3 February 2015 with their final appeal being denied by the Cassation Court on 30 May 2016. They were sentenced to three years imprisonment. We are informed by local counsel that as a matter of Kuwaiti law and practice, any person convicted of such a dishonesty crime is considered to have no or minimal "honour" – i.e. credibility – and as such their testimony should be given no weight in proceedings such as Ms Lazareva's prosecution. Indeed, under Kuwaiti law, individuals convicted of such crimes are not even permitted to vote or participate in electoral campaigns.

39. In its judgment on The Port Fund Case, the Court explicitly recognised that Ms Wahab's testimony was unreliable. Yet, inexplicably, for two of the over 160 transactions upon which Ms Lazareva was convicted, the Court declared out of the blue that it believed Ms Wahab's statement with regard to these specific allegations and relied on her statement to convict. This is all the more perplexing when one appreciates that Ms Wahab's testimony was plainly contradicted by the same exculpatory defence evidence the Court had already found to be reliable.

40. Further, we are instructed that Ms Wahab's statement amounted to little more than a bare assertion that Ms Lazareva was guilty of criminal conduct, without any particulars or explanation. She did not set out any account of the facts that could form the basis of a conviction by any court acting reasonably. It is, therefore, perhaps unsurprising that the Court failed to give any reason for its reliance on Ms Wahab's testimony, let alone any explanation of how it enabled the Court to overcome the doubt established by the defence evidence.

<u>Hamad Al-Allayan</u>

41. When convicting Ms Lazareva on Counts 2, 7 and partially 10, the Court also expressly relied on the testimony of Mr Al-Allayan. As explained in our submissions to the Working Group (see paragraph 60 of our Complaint, paragraphs 14-16 of our August Case Update and paragraph 44 of our Rejoinder), Mr Al-Allayan is the former Director of Audit at the

11

Kuwait State Audit Bureau. He has been involved throughout the proceedings against Ms Lazareva and most importantly authored three "expert reports" for the prosecution and provided witness evidence in The Port Fund Case.

42. Mr Al-Allayan also testified in the Advisory Services Case and submitted three forged invoices as evidence in support of the embezzlement charges against Ms Lazareva. Ms Lazareva was convicted in reliance on this forged evidence, although the conviction was subsequently overturned on appeal. As the Working Group will recall from our Case Update filed in August 2019, Mr Al-Allayan has since been convicted for forging those very documents and was sentenced to six months' imprisonment. As described above in respect of Ms Wahab, as a matter of Kuwaiti law and practice, Mr Al-Allayan's testimony should be treated with substantial scepticism, or dismissed entirely.

43. Throughout the majority of the judgment, the Court explicitly and repeatedly dismissed Mr Al-Allayan's testimony and report as clearly incompetent and unreliable. The Court noted in its judgment that when Mr Al-Allayan was cross-examined by the defence team he repeatedly changed his evidence and testimony, starkly contradicting the content of his expert reports and statements taken during prosecution investigations.

44. However, again, without giving reasons and in clear contrast with the rest of its reasoning in the main body of its judgment, the Court declared itself to be satisfied with Mr Al-Allayan's statement that the two transactions underlying the conviction under Counts 2, 7 and 10 were illegal. Again, neither Mr Al-Allayan nor the Court provided any further particulars as to why these transfers were unlawful.

**E. Improper conviction under Count 7**

45. Count 7 of the Accusation Report alleged that on 4 October 2010 Ms Lazareva illegally facilitated the transfer of KWD 350,000 from The Port Fund to Mr Dashti.

46. The defence evidence demonstrated that no transfer was made from The Port Fund to Mr Dashti on 4 October 2010 or at any other time.

47. In its judgment, the Court purported to convict Ms Lazareva:

12

    a. not on the basis of any single transfer of money from The Port Fund's bank account to Mr. Dashti's bank account, as alleged in Count 7; and

    b. despite making no finding of an illegal source of funds, and not even any connection between The Port Fund and the transfers.

48. Instead, it went on to convict Ms Lazareva based on a completely different transaction, namely a transfer in the same amount between KGLI and Mr Dashti. This constituted a clear departure from the relevant allegation in the Accusation Report.

49. Under Kuwaiti law, the court may not issue a conviction based on facts that materially differ from those alleged in the Accusation Report. While the court may revise the legal characterisation of a factual allegation (provided it makes a finding that the final allegation has been proven to the requisite standard), it is not open to the court to convict on the basis of a factually different case against the accused.

50. We are instructed that, as a result, the Court's conviction of Ms Lazareva of embezzlement under Count 7 (and related money laundering under Count 10) was in clear violation of Kuwaiti law.

51. The conviction under Count 7 is also a violation of international human rights standards. Indeed, Ms Lazareva's conviction based on the amended Count 7 (as described above) amounts to a clear violation of her rights "*to be informed (...) of the nature and cause of the charges against h*[er]" (Article 14(3)(a) ICCPR) and "*to have adequate time and facilities for the preparation of h[er] defence*" (Article 14(3)(b) ICCPR).

52. It is also unsound for want of any proven link between the transfer and any illegal act. In and of itself, it is of course not unlawful for KGLI to make transfers to Mr Dashti and at any time. The Court failed to identify or explain any reason why the impugned KGLI transfer to Mr Dashti was unlawful, and instead simply relied on the testimony of Ms Wahab and Mr Al-Allayan that the funds in KGLI's bank account constituted public funds and that KGLI's payment to Mr Dashti constituted embezzlement of those funds. We are instructed that any and all KGLI payments to Mr Dashti were legitimate transactions in

13

compliance with KGLI's broader commercial agreements. In fact, the transaction in question was properly recorded in the financial reports submitted by the defence.

53. It follows that for the reasons set out above, Kuwait has serious questions to answer regarding the conviction of Ms Lazareva of embezzlement based on one KWD 350,000 transaction under the amended Count 7 of the Accusation Report (and the related money laundering allegation under Count 10).

## III. CONCLUSION

54. In light of all the above, the 11 November 2019 court order to deprive Ms Lazareva of her liberty is the result of judicial inappropriateness, injustice, and a profound lack of predictability, reasonableness, necessity and proportionality. It is the product of serious and sustained due process violations and does not, therefore, comply with the principle of legality under international law. As a result, it would be without legal basis for the purpose of Category I and would breach basic guarantees of legality under international human rights law, as provided under the ICCPR, to which Kuwait is a party. Further, the egregious fair trial violations described above render Ms Lazareva's lengthy custodial sentence arbitrary under Category III.

55. We therefore hereby request that the UN Working Group on Arbitrary Detention:

    a. For the reasons set out in previous submissions, issue an opinion finding Ms Lazareva previous detention in the Advisory Services Case to have been arbitrary, in violation of Kuwait's obligations under the relevant provisions of the ICCPR;

    b. issue an opinion finding Ms Lazareva's custodial sentence in The Port Fund Case to be arbitrary, in violation of Kuwait's obligations under the relevant provisions of the ICCPR;

    c. request the Government of Kuwait to investigate and hold to account all those responsible for her unlawful arrest, detention and imprisonment; and

    d. request the Government of Kuwait to award Ms Lazareva adequate compensation for the harm caused by being deprived of her liberty.

14

56. Given the urgency of the situation arising from Ms Lazareva's risk of renewed arbitrary detention, as well as its impact upon the health and well-being of Ms Lazareva and her 5 year old son, we respectfully request that the Working Group first address this case pursuant to the urgent action procedure.


**Cherie Blair CBE, QC**

**James Palmer**

**Adam Smith-Anthony**

**Lauren Lederle**

**Omnia Strategy LLP**


**Jennifer Robinson**

**Doughty Street Chambers**


**Jonathan Worboys**

**4 New Square Chambers**


**15 November 2019**

15



النيابة العامة

نيابة الأموال العامة

## تقرير اتهام

مقدم من النيابة العامة إلى محكمة الجنايات في الجناية رقم ١٤٩٦/٢٠١٢ حصر أموال عامة المقيدة برقم ٢٠١٥/٢٣ جنايات المباحث ، المنضمة لها الجنايتين رقمي ٥٤٧/٢٠١٣ و ١٧١٩/٢٠١٤ حصر أموال عامة .

*تتهم النيابة العامة* كل من :

١ . لازاريفا ماريا    ( روسية الجنسية ـ ٤٤ سنة ـ العضو المنتدب لشركة كي جي أل للاستثمار ـــ مقيمة فـــي ســلوى ق ٦ ـــ رقـــم مــدني ٢٧٣٠٥٢٨٠٥١٣٨ )

٢ . سعيد اسماعيل حاجية دشتي   ( كويتي ـ ٦١ سنة ـ عضو مجلس إدارة شركة كي جي أل للاستثمار ـ مقيم فـي النزهة ق ٣ ش عبدالرحمن الفارس م ٣٠ رقم مدني ٢٥٦٠٦١٥٠١٦٧٦ )

٣  . محمد عبدالمحسن عبداللطيف العصفور ( كويتي   . ٧١ سنة  . نائب رئيس مجلس إدارة مؤسسة الموانئ الكويتية سابقاً  . مقيم في النزهة ق ١ ش ١٤ م ١٢ رقم مدني ٢٤٦٠٨١٨٠٠٠١٧ )

لأنهم في غضون الفترة من عام ٢٠٠٧ وإلى عام ٢٠١٥ بدائرة المباحث الجنائية بدولة الكويت

أولاً : المتهمة الأولى : -

١ . بصفتها في حكم الموظف العام ( مدير الاستثمار في صندوق الموانئ الاستثماري الذي تساهم المؤسسة العامة للتأمينات الاجتماعية ومؤسسة الموانئ الكويتية في رأس ماله بشكل مباشر بنسبة تزيد على ٢٥ % ) استولت بغير حق على مبلغ ١٢٩٤٤٢دينار كويتي "مائة وتسعة وعشرون ألف وأربعمائة واثنان وأربعون دينار كويتي" ، وعلى مبلغ أمريكي "ستة آلاف وستون دولار أمريكي" المملوكين لصندوق الموانئ الاستثماري التي استغلت صفتها كمفوض وحيد على حسابات الصندوق داخل دولة الكويت

١



النيابة العامة

نيابة الأموال العامة

، وحولت المبالغ إلى حساباتها وأصدرت الشيكات موضوعها والمبينة تفصيلاً بالأوراق إلى نفسها ، بقصد الاستيلاء على تلك المبالغ ، وفي غير أغراض إدارة أموال الصندوق أو استثمارها ، على النحو المبين بالتحقيقات .

٢ . بصفتها سالفة البيان سهلت بغير حق لشركة كي جي أل للاستثمار الاستيلاء على مبلغ ٧١٩١٠٠ دينار كويتي " سبعمائة وتسعة عشر ألف ومائة دينار كويتي " المملوك لصندوق الموانئ الاستثماري ، بأن استغلت صفتها كمفوض وحيد على جميع حسابات الصندوق داخل دولة الكويت وحولت المبلغ من حساب صندوق الموانئ الاستثماري إلى حساب شركة كي جي أل للاستثمار لدى البنك الأهلي الكويتي رقم(٠٦٠٣٧٢٣٥٤٩٢٠١) واستخدمت صفتها كرئيس تنفيذي بشركة كي جي أل للاستثمار في تحويل هذا المبلغ على دفعتين الأولى بمبلغ ٣٠٩٠٠٠ دينار كويتي " ثلاثمائة وتسعة آلاف دينار كويتي " والثانية بمبلغ ٤١٠٠٠٠ دينار كويتي " أربعمائة وعشرة آلاف دينار كويتي " إلى شركة المرابطون الدولية المملوكة للمتهم الثاني/ سعيد اسماعيل دشتي وأخرين لدى بنك برقان حساب رقم (٣١٦٠٠٠١٣١٩) ، بقصد تسهيل الاستيلاء على هذا المبلغ ، وفي غير أغراض إدارة أموال الصندوق أو استثمارها ، وقد ارتبطت هذه الجريمة بجناية أخرى ارتباطاً لا يقبل التجزئة وهي جناية غسل الأموال الواردة بالتهمة العاشرة من تقرير الاتهام ، وذلك على النحو المبين بالتحقيقات .

٣ . بصفتها سالفة البيان سهلت بغير حق لشركات ( كي جي أل للاستثمار ، رابطة الكويت والخليج للنقل ، كي جي أل الدولية للموانئ والتخزين والنقل ، كي جي أل أم القابضة ، بترولينك القابضة ، كي جي أل آسيا ROHQ ، كابيتال لينك القابضة ، كي جي أل كلارك جيت واي انفستمنت جروب ) الاستيلاء على مبلغ إجمالي مقداره .......... دينار كويتي "مليون وتسعة وخمسون ألف دينار كويتي" ، ومبلغ

٢



النيابة العامة

نيابة الأموال العامة

٨٩٧٦٤٥٣٣٫٦٨   دولار أمريكي " تسعة وثمانون مليون وسبعمائة وأربعة وستون ألف وخمسمائة وثلاثة وثلاثون دولار وثمانية وستون سنتاً أمريكياً " والمملوكين لصندوق الموانئ الاستثماري ، بأن استغلت صفتها كمفوض وحيد على جميع حسابات الصندوق داخل دولة الكويت المبينة تفصيلاً بالأوراق ، وحولت إجمالي المبلغين إلى حسابات الشركات سالفة البيان بداخل وخارج الكويت والمبينة تفصيلاً بالأوراق ، بقصد تسهيل الاستيلاء على تلك المبالغ ، وفي غير أغراض استثمار أموال الصندوق أو إدارتها ، على النحو المبين بالتحقيقات .

٤ . بصفتها سالفة البيان سهلت بغير حق لشركة MPC - GMO الاستيلاء على مبلغ إجمالي مقداره ٣٠٧٠٩٤٫٦٨٠ " ثلاثمائة وسبعة آلاف وأربعة وتسعون دينار وستمائة وثمانون فلساً كويتياً " ومبلغ ٤٠١١٣٧٫١٤ دولار أمريكي " أربعمائة وواحد ألف ومائة وسبعة وثلاثون دولار وأربع عشر سنتاً أمريكياً " المملوكين لصندوق الموانئ الاستثماري بأن استغلت صفتها كمفوض وحيد على جميع حسابات الصندوق داخل دولة الكويت المبينة تفصيلاً بالأوراق ، وحولت إجمالي المبلغين إلى الشركة سالفة البيان بعد انتهاء استثمار الصندوق مع شركة MPC - GMO في السنة المالية ٢٠١٣ وبعد انتهاء عمر الصندوق بتاريخ ٢٠١٤/١٢/١٣ ، في غير أغراض استثمار أموال الصندوق أو إدارتها ، بقصد تسهيل الاستيلاء على تلك المبالغ ، على النحو المبين بالتحقيقات .

٥ . بصفتها سالفة البيان سهلت بغير حق لشركة كي جي أل الدولية للموانئ والتخزين والنقل التي يملكها المتهم الثاني/ سعيد اسماعيل دشتي وآخرين الاستيلاء على مبلغ ٢ دولار أمريكي " عشرون مليون وستمائة ألف دولار أمريكي " ، المملوك لصندوق الموانئ الاستثماري ، بأن استغلت صفتها كمفوض وحيد على جميع حسابات دولة الكويت المبينة تفصيلاً بالأوراق ، وحولت المبلغ إلى الشركة سالفة

٣



النيابة العامة

نيابة الأموال العامة

البيان على صورة قرض " ائتمان " في غير أغراض استثمار أموال الصندوق أو إدارتها ،
ثم أسقطته وفوائده من البيانات المالية للصندوق ، بقصد تسهيل الاستيلاء على هذا المبلغ
، على النحو المبين بالتحقيقات .

٦ . بصفتها سالفة البيان سهلت بغير حق لشركة الموحدة للنقل البري الأردنية المملوكة
للمتهم الثاني/ سعيد اسماعيل دشتي وآخرين الاستيلاء على مبلغ ٩٠٠٠٠٠ دولار أمريكي
" تسعمائة ألف دولار أمريكي " ، ومبلغ ٢٠٠٠٠٠ دينار كويتي " مئتا ألف دينار كويتي "
، المملوكين لصندوق الموانئ الاستثماري ، بأن استغلت صفتها كمفوض وحيد على جميع
حسابات الصندوق داخل دولة الكويت المبينة تفصيلاً بالأوراق ، وحولت المبلغ إلى الشركة
سالفة البيان على صورة تسهيلات مالية " كفالة بنكية على البنك الكويتي الأردني لصالح
الشركة الموحدة سالفة البيان " في غير أغراض استثمار أموال الصندوق أو إدارتها ،
بقصد تسهيل الاستيلاء على هذين المبلغين على النحو المبين بالتحقيقات .

٧ . بصفتها سالفة البيان سهلت بغير حق للمتهم الثاني/ سعيد اسماعيل دشتي الاستيلاء
على مبلغ إجمالي مقداره ٣٥٠٠٠٠ دينار كويتي " ثلاثمائة وخمسون ألف دينار كويتي" ،
المملوك لصندوق الموانئ الاستثماري بأن استغلت صفتها كمفوض وحيد على جميع
حسابات الصندوق داخل دولة الكويت المبينة تفصيلاً بالأوراق ، وحولت المبلغ إلى حساب
المتهم الثاني لدى بنك برقان بنك بالأوراق ، في غير أغراض استثمار أموال الصندوق
أو إدارتها ، بقصد تسهيل الاستيلاء على هذا المبلغ ، على النحو المبين بالتحقيقات .

٨ . بصفتها سالفة البيان سهلت بغير حق لشركة CLARK GATEWAY
INVESTMENT GROUP المملوكة للمتهم الثاني/ سعيد اسماعيل دشتي الاستيلاء
على مبلغ إجمالي مقداره ٧٩١٦٩٦٦٢ دولار أمريكي " تسعة وسبعون مليون ومائة
وستة عشر ألف وستمائة واثنان وستون دولار أمريكي " المملوك لشركة Global



النيابة العامة

نيابة الأموال العامة

GATEWAY Development Corporation المملوكة بالكامل لصندوق الموانئ الاستثماري ، بأن استغلت صفتها كمدير استثمار ونقلت ملكية الشركة الأخيرة إلى الشركة الأولى التي يملكها المتهم الثاني سالف الذكر ، سيما مشروعي مدينة صباح الأحمد اللوجستية والمدينة الطبية في الفلبيين المملوكين لشركة Global GATEWAY Development Corporation دون مقابل حقيقي أو عائد على صندوق الموانئ الاستثماري ، وفي غير أغراض إدارة أموال الصندوق أو استثمارها ، بقصد تسهيل الاستيلاء على تلك المبالغ والمشروعين المذكورين على النحو المبين بالتحقيقات .

٩ . بصفتها سالفة البيان ومكلفة بالمحافظة على مصالح " صندوق الموانئ الاستثماري" في استثمار أموال المؤسسة العامة للتأمينات الاجتماعية ومؤسسة الموانئ الكويتية وجهات أخرى ، أضرت عمداً بالمال العام ، فتعمدت إجراء العمليات المالية لصندوق الموانئ الاستثماري على نحو يضر بمصلحة وأموال صندوق الموانئ الاستثماري ، بأن سهلت لنفسها وللجهات والأشخاص " المبينين في أوصاف الاتهام بالبنود من ٢ حتى ٨ أعلاه " الاستيلاء على أموال الصندوق ، ليحصلوا على ربح ، مما ترتب عليه الإضرار بأموال الصندوق بإجمالي مبلغ ١٦٦٠٠٩٧٥٦ دولار أمريكي مائة وستة وستون مليون وتسعة آلاف وسبعمائة وستون وخمسون دولار أمريكي " وذلك على النحو المبين بالتحقيقات .

١٠ . ارتكبت جريمة غسل أموال لمبلغ إجمالي مقداره ٢٠٨٩٠٠٠ دينار كويتي "مليونين وتسعة وثمانون ألف دينار كويتي " ، بأن استغلت صفتها كمفوض وحيد على جميع حسابات صندوق الموانئ الاستثماري بداخل دولة الكويت ، وحولت المبلغ المار بيانه على أكثر من عملية مالية ، خصماً من حسابات صندوق الموانئ الاستثماري المبينة تفصيلاً بالأوراق ، لصالح حساب شركة كي جي أل للاستثمار رقم ٠٦٠٣٧٢٣٥٤٩٢٠١ لدى البنك الأهلي الكويتي ، وأخفت وموهت حقيقة هذه العمليات ومصدرها بأن حولت حصيلة



النيابة العامة

نيابة الأموال العامة

تلك المبالغ من حساب شركة كي جي أل للاستثمار سالف البيان إلى حسابات (شركة المرايطون الدولية بمبلغ إجمالي ٧١٩٠٠٠ دينار كويتي "سبعمائة وتسعة عشر ألف دينار كويتي" ، ومن ثم إلى حساب المتهمة الشخصي لدى بيت التمويل الكويتي ، وشركة كابيتال لينك بمبلغ ١٠٠٠٠٠٠ دينار كويتي " مليون دينار كويتي " وشركة رابطة الكويت والخليج للنقل بمبلغ ٢٠٠٠٠ دينار كويتي " عشرون ألف دينار كويتي" ، وإلى حساب المتهم الثاني/ سعيد إسماعيل دشتي بمبلغ ٣٥٠٠٠٠ دينار كويتي " ثلاثمائة وخمسون ألف دينار كويتي " ) لدى بنوك برقان والأهلي الكويتي وHSBC وبيت التمويل الكويتي المبينة تفصيلاً بالأوراق ، مع علمها بأن تلك الأموال متحصلة من جريمتي الاستيلاء وتسهيل الاستيلاء على أموال صندوق الموانئ الاستثماري ، بقصد إخفاء وتمويه حركة تلك الأموال وحقيقتها ومصدرها على النحو المبين بالتحقيقات .

ثانياً : المتهم الثاني : .

١ . بصفته في حكم الموظف العام ( عضو في المجلس الاستشاري ومدير غير تنفيذي في صندوق الموانئ الاستثماري الذي تساهم المؤسسة العامة للتأمينات الاجتماعية ومؤسسة الموانئ الكويتية في رأس ماله بشكل مباشر بنسبة تزيد على ٢٥%) اشترك بطريقي الاتفاق والمساعدة مع المتهمة الأولى في ارتكاب جرائم تسهيل الاستيلاء على المال العام المسندة إليها بالبنود ( من ٢ إلى ٩) ، قبل وقوعها بأن اتفق معها على تحويل الأموال محل تلك الاتهامات إلى الشركات المستفيدة التي يملكها وآخرين ، وإلى حساباته الشخصية المبينة تفصيلاً بالأوراق، وساعدها بأن زودها ببيانات تلك الحسابات لدى البنوك بداخل وخارج الكويت المبينة بالتحقيقات ، فقامت المتهمة الأولى بتحويل المبالغ المستولى عليها في الحسابات المذكورة ، بقصد تسهيل الاستيلاء على تلك الأموال ، فوقعت الجريمة بناء على هذا الاتفاق وتلك المساعدة ، على النحو المبين بالتحقيقات .



النيابة العامة

نيابة الأموال العامة

٢ . اشترك مع المتهمة الأولى في جريمة غسل الأموال المسندة إليها موضوع التهمة بالبند (١٠) ، قبل وقوع الجريمة بطريقي الاتفاق والمساعدة ، بأن اتفق معها على تحويل الأموال إلى حساباته وحسابات الشركات المبينة بالتهمة سالفة البيان ، وساعدها بأن زودها ببيانات تلك الحسابات ، بقصد تمويه وإخفاء حركة الأموال وحقيقتها ومصدرها ، مع عمله بأن تلك الأموال متحصلة من جريمتي الاستيلاء وتسهيل الاستيلاء على أموال صندوق الموانئ الاستثماري ، على النحو المبين بالتحقيقات .

ثالثاً : المتهم الثالث : .

. بصفته في حكم الموظف العام ( نائب رئيس مجلس إدارة مؤسسة الموانئ الكويتية ) ومكلف بالمحافظة على مصلحة المؤسسة التي يعمل بها في التعاقد مع شركة كي جي أل للاستثمار للاكتتاب في صندوق الموانئ الاستثماري ، تعمد إجراءها على نحو يضر بمصلحة المؤسسة ، وليحصل لغيره على ربح ، بأن اعتمد احتساب مساهمة مؤسسة الموانئ الكويتية في الصندوق سالف البيان بأثر رجعي من تاريخ إنشاء الصندوق لا من تاريخ مساهمة المؤسسة الفعلية في ٢٠١٠ ، وكان من شأن ذلك ترتيب التزامات على المؤسسة ، تمثلت في قيمة أتعاب إدارة تقاضاها مدير الاستثمار (شركة كي جي أل للاستثمار كايمن) عن السنوات ٢٠٠٧ ، ٢٠٠٨ ، ٢٠٠٩ بلغت قيمتها الإجمالية ٣٨٩٨٢٦٠ دولار أمريكي " ثلاثة ملايين وثمانمائة وثمانية وتسعون ألف ومئتان وستون دولار أمريكي " وقد بلغ المتهم مقصده بأن خصمت تلك الأموال من رصيد مساهمة مؤسسة الموانئ الكويتية في صندوق الموانئ الاستثماري ، وذلك على النحو المبين بالتحقيقات .

بناء عليه

يكون المتهمون قد ارتكبوا الجناية المنصوص عليها بالمواد (٤٨/ثانياً وثالثاً ، ١/٥٢) من قانون الجزاء الصادر بالقانون رقم ١٦ لسنة ١٩٦٠ ، والمادة (٤٣/أ، هـ ) من القانون رقم ١٤٧ لسنة بتعديل بعض أحكام قانون الجزاء رقم ١٦ لسنة ١٩٦٠ ، والمواد (٢/ج ،



النيابة العامة

نيابة الأموال العامة

---

٣ ، ١٠ ، ١١ ، ١٦ ) من القانون رقم ١ لسنة ١٩٩٣ في شأن حماية الأموال العامة ، والمواد ( ١ ، ٢/١ ، ٢ ، ٦ ، ٧ ) من القانون رقم ٣٥ لسنة ٢٠٠٢ في شأن مكافحة غسل الأموال .

**لـذلك**

تطلب النيابة العامة من محكمة الجنايات معاقبة المتهمين طبقاً للمواد سالفة البيان ومرفق مع هذا التقرير قائمة بأدلة الإثبات .

المحامي العام الأول
المستشار
سلطان ماجد بوجروه



التاريخ : ح / ٤ / ٢٠١٧ .



٨

**Public Prosecution**
**Public Funds Prosecution**



النيابة العامة
نيابة الأموال العامة

قائمة بأدلة الإثبات
في القضية رقم ١٤٩٦/٢٠١٢ حصر أموال عامة
المقيدة برقم ٢٠١٦/٢٣ جنايات المباحث الجنائية
المنضمة لها الجنايتين رقم ٢٠١٣/٥٤٧
ورقم ١٧١٩/٢٠١٤ حصر أموال عامة

<u>أولاً : أقوال الشهود .</u>

الشاهد الأول :  منـى عبـدالمنعم محمـود ، مصـرية ، ٣٨ سـنة ، نزيلـة
السجن العمومي ، موظفة سابقة في شركة كي جي أل
للاستثمار .

تشهد

أنـه وبمناسبة عملهـا السـابق في شركة كي جي أل للاستثمار خلال الفتـرة من
١/١/٢٠٠٧ حتـى ٣٠/٣/٢٠١٠ ، تكشـف لهـا قيـام شـركة كـي جي أل للاستثمار
KGLINVESTMENT ـ شـركة مساهمة كويتيـة مقفلة ـ بإنشاء صندوق المـوانئ
الاستثماري في جزر كايمن ، كوكيل اكتتاب ومدير استثمار ، وذلك بعد استصدارها
الترخيص الرقم ٢٠٠٧/٢٤ الصادر في ٢٠٠٧/٥/١٢ من وزارة التجارة والصناعة ،
وجاء في نشرة الاكتتاب أن الصندوق يصبو إلى تحقيق معدل عائد بنسبة ٣٠% على
إجمـالي استثماراتـه ، عبـر تقديم فرصـة للمستثمرين في نمو وتطـوير الأعمـال ذات
العلاقة بالموانئ والاستثمارات الأخرى المتصلة بها .

وأردفت بتولي شركة " كي جي أل كايمـان للاستثمار المحدودة " مهام إدارة
الصندوق ، فيما كان بنك " إتش إس بي سي الشرق الأوسط المحدود " أميناً للاستثمار
، كما كان للصندوق في البنك سالف البيان حسابين ؛ الأول بعملة الدينار الكويتي يحمل
رقـم ٠٠١٠٠٤٠٠١٠٠١ والحسـاب الثـاني بعملـة الـدولار الأمريكـي يحمـل رقـم
٠٠١٠٠ .

<u>وكيل النيابة</u>

١



**Public Prosecution**
**Public Funds Prosecution**

النيابة العامة
نيابة الأموال العامة

وأضافت أن "شركة كي جي أل للاستثمار" وزعت نشرة الاكتتاب لوحدات الصندوق بمفاد التوزيعات سالفة البيان ، فبنيت عليها مساهمة المؤسسة العامة للتأمينات الاجتماعية في رأس مال الصندوق بمبلغ ٤٠٤٠٠٠٠ دولار أمريكي " أربعون مليون وأربعمائة ألف دولار أمريكي " ومساهمة مؤسسة الموانئ الكويتية بإجمالي مبلغ ٨٥ مليون دولار أمريكي " خمسة وثمانون مليون دولار أمريكي " .

مَثَّل مؤسسة الموانئ الكويتية في التوقيع على عقد الاكتتاب نائب رئيس مجلس إدارة المؤسسة المتهم الثالث / محمد عبد المحسن عبداللطيف العصفور ، في حين مَثَّل شركة (كي جي أل للاستثمار) في التوقيع رئيس مجلس إدارتها يعقوب عبدالله الوزان .

ونص عقد اكتتاب مؤسسة الموانئ الكويتية في الصندوق في تمهيده على تحقيق الصندوق لعائد بنسبة ٢٠% على إجمالي استثماراته ، بالمخالفة لما ورد بالترخيص الممنوح لمدير الصندوق وما صدر عنه من نشرة الاكتتاب المستخدمة في تسويق وحداته لدى مؤسسة الموانئ الكويتية .

وتضيف أنه استبان لها من متابعة كيفية إنشاء الصندوق ووسيلة اكتتاب مؤسسة الموانئ الكويتية فيه وأصول إدارة أمواله والتصرف فيها ، مخالفات مالية حول اختلاس أموال اصندوق والإضرار بمساهمة مؤسستي الموانئ الكويتية والتأمينات الاجتماعية للحصول على ربح والاستيلاء عليها دون وجه حق .

وذلك فيما لجأت إليه شركة (كي جي أل للاستثمار "مدير الاستثمار" ) من وسائل احتيالية في سبيل إقناع مؤسسة الموانئ الكويتية للمساهمة في رأس مال صندوق الموانئ ، حينما أظهرت سدادها وبعض المستثمرين لمساهماتهم في وحدات ذلك الصندوق .

وكذا إظهارها حجماً مالياً كبيراً لتدفقات الصندوق النقدية ، وما روجته من أنشطة متنوعة ومتميزة للصندوق وتحقيقه لأرباح ، وكل هذا بالمخالفة للحقيقة .

٢

وكيل النيابة



إذ لم تلتزم (شركة كي جي أل للاستثمار) بإيداع حصتها في رأس مال صندوق الموانئ الاستثماري بمقدار ٢٠ مليون دولار أمريكي " عشرون مليون دولار أمريكي" بما يعادل ٢١,٥٤% من رأس المال المُجمع ، وفقاً لما هو ثابت من كشف الحساب الصادر من أمين الاستثمار (بنك إتش إس بي سي) بتاريخ ٢٠٠٧/٨/٣٠ ، بما يعكس تعمد الشركة المذكورة التدليس على المساهمين في الصندوق المشار إليه ، بغرض استدراج مساهماتهم والاستيلاء عليها وتبديدها .

وأضافت أن شركة (كي جي أل للاستثمار) أقرضت شركة أخرى تابعة لها هي (شركة كي جي أل الدولية للموانئ والتخزين والنقل) مبلغ ٢٠٦٠٠٠٠٠ دولار أمريكي " عشرون مليون وستمائة ألف دولار أمريكي " حولتها من أموال المساهمين في صندوق الموانئ الاستثماري ، في غير أغراض الصندوق .

كما أظهر مدير الاستثمار الموقف المالي لصندوق الموانئ في حالة رواج وانتعاش وتحقيق أرباح على خلاف الحقيقة .

وتضيف أنه تكشف لها ارتكاب لازاريفا ماريا (العضو المنتدب لشركة كي جي أل للاستثمار) وسعيد إسماعيل دشتي (عضو مجلس إدارة شركة كي جي أل للاستثمار وأحد كبار الملاك في شركة كي جي أل الأم التي تملك شركة كي جي أل للاستثمار) عمليات غسل أموال عن طريق استخدامهما للحسابين الخاصين بصندوق الموانئ الاستثماري رقم (٠٠١٠٠٤٠٠١١٦٠) ورقم (٠٠١٠٠٤٠٠١٠٠١) لدى بنك " أتش أس بي سي" HSBC سالفي البيان، وكذا الحساب الخاص بشركة كي جي أل للاستثمار رقم ٠٦٠٣٧٢٣٥٤٩٢٠١ لدى البنك الأهلي الكويتي ، المودعة بها جميعاً أموال الصندوق المشار إليه ، في تحويلات بنكية عديدة بمبالغ مالية كبيرة من الحسابات الثلاثة المار ذكرها إلى حسابات أخرى ، منها حساب المتهمة لازاريفا ماريا لدى بيت التمويل الكويتي رقم (٢٢١٠١٠٠١٣٤٢٧) ، وحساب آخر لدى ذات البنك يحمل رقم (٢٢٠١٢٠٠٢٥٢٣٢) ، وحسابات أخرى بينتها بالتحقيقات ، للقيام بعمليات

وكيل النيابة

AL DIYAR LEGAL TRANSLATION
CERTIFIED BY UAE MINISTRY OF JUSTICE
TRANSLATOR/ MAHMOOD SUBHI

**Public Prosecution**
**Public Funds Prosecution**

النيابة العامة
نيابة الأموال العامة

غسل أموال ، على امتداد الفترة من ٢٠١٠/٦/٢٠ حتى ٢٠١٢/٢/١ ، عادت عليها بمبالغ يصل إجماليها إلى ٣٠٠٠٠٠٠ (ثلاثة ملايين دينار كويتي) ومن تلك التحويلات:

ـ العملية الأولى بتاريخ ٢٠١٠/٦/٢٠ وهي عبارة عن تحويل بنكي من حساب شركة كي جي أل للاستثمار إلى شركة المرابطون الدولية ( إحدى الشركات المملوكة للمتهم سعيد اسماعيل دشتي ) بمبلغ ٤٠٠٠٠٠ د.ك " أربعمائة ألف دينار كويتي " بأمر من المتهمة لازايفا ماريا .

ـ العملية الثانية بتاريخ ٢٠١٠/٨/١٥ عبر تحويل المتهمة المذكورة مبلغ ٧١٩١١٧,٨٠٩د.ك " سبعمائة وتسعة عشر ألف ومائة وسبعة عشر دينار وثمانمائة وتسعة أفلاس كويتية" من حساب صندوق الموانئ الاستثماري رقم ٠٠١٠٠٤٠٠١١٦٠ لدى بنك HSBC إلى حساب شركة كي جي أل للاستثمار رقم ٠٦٠٣٧٢٣٥٤٩٢٠١ لدى البنك الأهلي الكويتي ، وبعدها حولت هذا المبلغ من حساب شركة كي جي أل للاستثمار سالف البيان في عمليتين بتاريخ ٢٠١٠/٨/٢٦ الأولى بمبلغ ٣٠٩١٠٠ د.ك " ثلاثمائة وتسعة آلاف ومائة دينار كويتي ، والثانية بمبلغ ٤١٠٠٠٠ د.ك " أربعمائة وعشرة آلاف دينار كويتي " إلى حساب شركة المرابطون لدى بنك برقان ، وبتاريخ ٢٠١٠/٩/١٥ حولت شركة المرابطون الدولية هذين المبلغين إلى حساب المتهمة لازايفا ماريا رقم ٢٢٠١٢٠٠٢٥٢٣٢ لدى بيت التمويل الكويتي .

ـ العملية الثالثة عبارة عن مجموعة من التحويلات المالية استخدمت فيها المتهمة لازايفا ماريا حسابها في بنك برقان رقم ٢٠٦٠٢٥١٣١٦ ، إلى حساباتها في الولايات المتحدة الأمريكية وروسيا وسويسرا ، وحسابات أشخاص آخرين في دبي ومصر وفرنسا .

ـ العملية الرابعة بتاريخ ٢٠١٠/١٠/٤ عبارة عن تحويل من المتهمة لازايفا ماريا بمبلغ ٣٥٠٠٠ د.ك " ثلاثمائة وخمسون ألف دينار " من حساب صندوق

وكيل النيابة



**Public Prosecution**
**Public Funds Prosecution**



النيابة العامة
نيابة الأموال العامة

الموانئ الاستثماري رقم ٠٠١٠٠٤٠٠١١٦٠ لدى بنك HSBC إلى حساب سعيد اسماعيل دشتي لدى بنك برقان رقم ٠٢٠٦٠١٢١٧٣١ .

وأضافت أنه لا يوجد سبب حقيقي وراء تلك التحويلات ، سوى تدوير المتهمة لازاريفا ماريا لأموال صندوق الموانئ الاستثماري في عمليات مالية متشعبة ومعقدة لتموه حقيقة استيلائها على أموال الصندوق ، يشاركها في ذلك المتهم الثاني سعيد اسماعيل دشتي .

الشاهد الثاني :    فيّ دهيران أبا الخيل ، كويتية ، ٢٧ سنة ، محامي قلم البنك الأهلي الكويتي ، وعنوانها العارضية ق ٤ ش ١ منزل ٤٨ ، ت ٩٧٧٧٧٩٠٢ .

تــشــهــد

أن الحساب الجاري رقم (٠٦٠٣٧٢٣٥٤٩٢٠١) يخص شركة ( كي جي أل للاستثمار) متفرع عنه الحسابين رقم ٠٦٠٣٧٢٣٥٤٩٠٠١ و ٠٦٠٣٧٢٣٥٤٩٠٠٢ فُتِح الحساب الرئيسي بتاريخ ٢٠٠٧/٢/٢٠ عبر يعقوب عبدالله الوزان (رئيس مجلس إدارة شركة كي جي أل للاستثمار) ، وكان كل من سالف الذكر ولازاريفا ماريا مخولين بالتوقيع عن حساب الشركة المشار إليه بموجب تفويض من رئيس مجلس إدارة الشركة يعقوب الوزان . وأن العمليات التي تمت على الحساب المذكور متنوعة بين تحويلات مالية وخصم شيكات وإيداع وسحب نقدي ، كما يبينها كشف الحساب ، إذ يبين الحساب تاريخ العملية ونوعها وقيمتها وإجمالي الرصيد ، وقدمت كشوف الحسابات المشار إليها أعلاه وبيانات المخولين بالتوقيع عنه ، ونموذج فتح الحساب وصورة ضوئية عن شهادة وزارة التجارة والصناعة مؤرخة ٢٠١٣/٤/٨ تفيد أن يعقوب الوزان رئيس مجلس إدارة شركة كي جي أل للاستثمار وأن لازاريفا ماريا نائبة الرئيس والعضو المنتدب للشركة المذكورة .

٥

وكيل النيابة




**Public Prosecution**
**Public Funds Prosecution**

النيابة العامة
نيابة الأموال العامة

الشاهد الثالث :   العنود بدر العبدالرزاق ، كويتية ، ٤٩ سنة ، محامي قلم بنك برقان ، وعنوانها ضاحية عبدالله السالم ق ١ ضارع صنعاء م ٤٥ ، ت ٢٢٩٨٨٧٢٨ .

تـشـهـد

أن لازاريفا ماريا عميلة لدى البنك بموجب الحساب الجاري رقم (٢٠٦٠٢٥١٣١٦) المفتوح بتاريخ ٢٠٠٤/٦/١٣ ، تديره المذكورة لوحدها بوصفها صاحبة الحساب ، وكان بنك برقان يتلقى أوامر التصرف على الحساب من العميلة وينجزها ، كما هو ثابت بكشف الحساب الذي يبين حركة الحساب بين مدين ودائن على امتداد الفترة من ٢٠٠٧/١/١ وحتى ٢٠١٤/١٢/٣١ ، فيما كان سعيد اسماعيل دشتي صاحب الحساب الجاري رقم (٢٠٦٠١٢١٧٣١) المفتوح بتاريخ ٢٠٠١/١٢/٢٤ ، يديره المذكور بوصفه صاحب الحساب ، وكان بنك برقان يتلقى أوامر التصرف على الحساب من العميل وينجزها ، كما هو ثابت بكشف الحساب الذي يبين حركة الحساب بين مدين ودائن على امتداد الفترة من ٢٠٠٧/١/١ وحتى ٢٠١٤/١٢/٣١ ، كما أن شركة مجموعة المرابطون الدولية للتجارة العامة والمقاولات عميل لدى البنك بموجب الحساب الجاري رقم (٣١٦٠٠٠١٣١٩) المفتوح بتاريخ ٢٠٠٩/٩/٢١ من فؤاد اسماعيل دشتي ، وكان كل من الأخير وسعيد اسماعيل دشتي مخولين بالتوقيع عن هذه الشركة كما جاء باستمارة فتح الحساب ، وتضيف أنه وحسبما يتضح من كشف حساب المتهم سعيد اسماعيل دشتي أنه تلقى بتاريخ ٢٠١٠/١٠/٤ مبلغ ٣٥٠٠٠٠ دينار كويتي ، فيما تلقت شركة المرابطون الدولية سالفة البيان مبلغ ٧١٩١٠٠ د.ك "سبعمائة وتسعة عشر ألف ومائة دينار" بتاريخ ٢٠١٠/٨/٢٦ في حسابها سالف البيان وارداً إليها من حساب شركة كي جي أل للاستثمار لدى البنك الأهلي الكويتي على عمليتين الأولى بمبلغ ٤١٠٠٠٠ د.ك والثانية بمبلغ ٣٠٩١٠٠ د.ك ، حولت بعد ذلك شركة المرابطون من حسابها المذكور إلى حساب لازاريفا ماريا رقم ٢٢١٠٢٠٠٢٥٢٣٢ لدى

وكيل النيابة

٦




**Public Prosecution**
**Public Funds Prosecution**

النيابة العامة
نيابة الأموال العامة

بيت التمويل الكويتي بتاريخ ٢٠١٠/٩/١٥ ، وقدمت المستندات الدالة على ما تقدم وكشوف الحسابات التي ذكرتها .

الشاهد الرابع :    سيد وليد سيد خالد عبدالرزاق ، كويتي ، ٣٠ سنة ، مدير المؤسسات المالية ببنك HSBC ، وعنوانه السرة ق ٦ ش ١٠ م ٢٠ .

يــشــهــد

أن صندوق الموانئ الاستثماري عميل لدى البنك بموجب الحسابين رقم (٠٠١٠٠٤٠٠١١٦٠ ) ورقم (٠٠١٠٠٤٠٠١٠٠١) ، الأول بعملة الدولار الأمريكي والثاني بعملة الدينار الكويتي ، فتح الحساب الأول بتاريخ ٢٠٠٧/٧/١٥ فيما فتح الحساب الثاني بتاريخ ٢٠٠٩/٥/٤ ، والذي فَتَح الحسابين المذكورين لازاريفا ماريا بصفتها الرئيس التنفيذي لهما ، ووقعت بمفاد ذلك على طلب فتحهما ، كما كانت تدير الحسابين منفردة دون أن يشاركها أحد في ذلك ، وقد تمت عمليات تحويل الأموال من الحسابين المذكورين بموجب أوامر تحويل صادرة من سالفة الذكر ، اشتملت الأوامر على توقيعها ومبلغ التحويل ورقم الحساب واسم الحساب المستفيد ، كما يدلل على ذلك كشف الحساب ، وكما استبان له من الكشف الخاص بالحساب بعملة الدولار الأمريكي أن الحساب المشار إليه ابتدأ بمبلغ ٣٥٩٥٩٨٠ دولار أمريكي " ثلاثة ملايين وخمسمائة وتسعة وخمسون ألف وتسعمائة وثمانون دولار " بتاريخ ٢٠٠٧/٧/١٥ ثم توالت عمليات الخصم والإيداع في الحساب المذكور ، حتى إغلاقه بتاريخ ٢٠١٣/٣/١٢ برصيد ٢٣,٥٦ دولار " ثلاثة وعشرون دولار وخمسة وستون سنت " ، أما عن الحساب الآخر بالدينار الكويتي سالف الإشارة فقد كان رصيده وقت فتحه يبلغ ١٠٠٠٠دك " عشرة آلاف دينار " توالت عليه عمليات الإيداع والخصم حتى أغلق بتاريخ ٢٠١٣/٣/ . . برصيد صفر دينار ، وقدم صوراً ضوئية عن كشوف الحسابات المشار إليها طويت على أوامر التحويل وبياناتها المختلفة ، وكذا طلبات فتح الحسابين.

وكيل النيابة

٧



**Public Prosecution**
**Public Funds Prosecution**



النيابة العامـة
نيابة الأموال العامة

الشاهد الخامس :        أحمد عبدالمحسن القطيفي ، كويتي ، ٢٨ سنة ،

محامي قلم بيت التمويل الكويتي ، وعنوانه كيفان

ق ٣ ش ٣٦ منزل ٤٠ ، ت ٩٩٧٢٢٨٥٩ .

يــشــهــد

أن المتهمة لازاريفا ماريا عميلة لدى بيت التمويل الكويتي بموجب الحساب

الجاري رقم ٢٢١٠١٠٠١٣٤٢٧ وحساب التوفير رقم ٢٢١٠٢٠٠٢٥٢٣٢ بعملة

الدينار الكويتي لكلاهما ، كصاحبة الحسابين والمخولة بالتوقيع عنهما .

فُتِحَ الحساب الأول بتاريخ ٢٠١٠/١١/٢٥ من العميلة المذكورة بموجب شهادة

صادرة من شركة كي جي أل للاستثمار أنها نائب رئيس مجلس الإدارة والعضو

المنتدب ، تتقاضى راتباً شهرياً مقداره ٨٥٠٠ د.ك دون أن يتوافر في التعريف مصادر

أخرى لدخلها وأظهر الكشف الخاص بالحساب المذكور أول عملية تمت عليه بتاريخ

٢٠١٠/١١/٢٥ وهي عبارة عن تحويلين داخليين واردين إليها من حسابها الآخر لدى

بيت التمويل الكويتي رقم ٢٢١٠٢٠٠٢٥٢٣٢ ، الأول بمبلغ ٥١١٣٩٤ دينار كويتي ،

والثاني بمبلغ ٥١١٣٩٤,٨٦٢ دينار كويتي

ثم توالت عمليات الخصم والإيداع على الحساب حتى كانت آخر علمية بتاريخ

٢٠١٣/٥/٢٢ بمبلغ ٥٨٢٥ دينار كويتي .

تمت جميع تلك العمليات بمعرفة العميلة لازاريفا ماريا .

كما ورد إلى حساب العميلة المذكورة رقم ٢٢١٠٢٠٠٢٥٢٣٢ لدى بيت

التمويل الكويتي بتاريخ ٢٠١٠/٩/١٥ مبلغ ٧١٩٠٠٠ دينار كويتي من بنك برقان ،

وقدم كشفي حساب لازاريفا ماريا سالفي البيان ومستندات التعريف بها المفتوحة لدى



وكيل النيابة

٨





**Public Prosecution**
**Public Funds Prosecution**

النيابة العامـة
نيابة الأمـوال العامة

الشاهد السادس :            لطيفة داود بوحيمد ، كويتية ، ٣٩ سنة ، محامي

قلم البنك الأهلي الكويتي ، وعنوانها مشرف ق ٢

ش ٤ منزل ١٩ ، ت ١٨٦٧٠٠٠ داخلي ٢٠٦٧ .

تـشـهـد

أن عدد ٢١ عملية مالية جرت على حساب شركة كي أل للاستثمار لدى

البنك الأهلي الكويتي رقم ٠٦٠٣٧٢٣٥٤٩٢٠١ ، ذات صلة بصندوق الموانئ

الاستثماري والمبلغ ضدهم في الواقعة ، ومن تلك العمليات :

العملية المؤرخة ٢٠١٠/١٠/٢٦ عبارة عن تحويل مالي بمبلغ ٢٠٠٠٠ دينار

كويتي من حساب شركة كي جي أل للاستثمار سالف البيان إلى حساب شركة رابط

الكويت والخليج للنقل رقم ٠٠١٠٠١٥٠٢٠٠١ لدى بنك HSBC ، مستند رقم (١٩) .

العملية المؤرخة ٢٠١٠/١٠/٤ عبارة عن تحويل مالي بمبلغ ٣٥٠٠٠٠ دينار

كويتي من حساب شركة كي جي أل للاستثمار سالف البيان ، إلى حساب المتهم الثاني

سعيد اسماعيل دشتي رقم ٢٠٦٠١٢١٧٣١ لدى بنك برقان مستند رقم (١٦) .

العملية المؤرخة ٢٠١٠/٨/١٥ عبارة عن تحويل مالي وارد من حساب صندوق

الموانئ الاستثماري بمبلغ ٧١٩١١٧,٨٠٩ دينار كويتي " سبعمائة وتسعة عشر ألف

ومائة وسبعة عشر دينار وثمانمائة وتسعة أفلاس كويتية " إلى حساب شركة كي جي

أل للاستثمار لدى البنك الأهلي الكويتي سالف البيان ، كما أثبت ذلك إشعار التحويل ،

مستند رقم (٨) .

العملية المؤرخة ٢٠١٠/٨/٢٦ عبارة عن تحويل مالي بمبلغ ٣٠٩١٠٠ دينار

كويتي الثلاثمائة وتسعة آلاف ومائة دينار " صادر من حساب شركة كي جي أل

للاستثمار سالف البيان إلى حساب شركة المرابطون الدولية رقم ٣١٦٠٠٠١٣١٩ لدى

وكيل النيابة


**Public Prosecution**
**Public Funds Prosecution**



النيابة العامـة
نيابة الأمـوال العامـة

بنك برقان ، كما أثبت ذلك أمر التحويل الموقع من زاريفا ماريا بتاريخ ٢٠١٠/٨/٢٥ مستند رقم (٩) .

<u>العملية المؤرخة ٢٠١٠/٨/٢٦</u> عبارة عن تحويل مالي بمبلغ ٤١٠٠٠٠ دينار كويتي " أربعمائة وعشرة آلاف دينار كويتي " صادر من حساب شركة كي جي أل للاستثمار سالف لدى البنك الأهلي الكويتي سالف البيان إلى حساب شركة المرابطون الدولية لدى بنك برقان سالف البيان ، كما أثبت ذلك أمر التحويل الموقع من لازاريفا ماريا مؤرخ ٢٠١٠/٨/٢٥ ، مستند رقم (١٠) .

<u>العملية المؤرخة ٢٠١٠/٩/٢</u> عبارة عن تحويل مبلغ ١٠٠٠٠٠٠ دينار كويتي "مليون دينار كويتي" من حساب شركة كي جي أل للاستثمار لدى البنك الأهلي الكويتي سالف البيان إلى حساب شركة كابيتال لينك رقم ٠٦٠٣٧٥٥٩٩١٠٠١ لدى الأهلي الكويتي ، بناءً على أمر تحويل صادر من المتهمة لازاريفا ماريا ، مستند رقم (١٣) .

الشاهد السابع :  حمد أحمد العليان ، كويتي ، ٥٥ سنة ، مدير إدارة المرافق الاقتصادية والخدمية بديوان المحاسبة ، وعنوانه الرحاب ق ٢ ش ١٨ م ٣ ، ت ٩٩٨٥٦٣٩٩ .

يشـهـد

أنه وبناءً على التكليفين الصادرين إليه من النيابة العامة بإعداد تقريرين حول الواقعة موضوع البلاغ ، أعد التقرير المرفق بالتحقيقات ، ثم ألحقه بتقريره المعدل في ٢٠١٦/٨/١١ كما أعد التقرير المؤرخ ٢٠١٧/٢/١٥ المرفق بالتحقيقات .

وأنه استقى معلومات التقريرين المشار إليهما من واقع مطالعته لتقارير ديوان المحاسبة الصادرة في هذا الشأن ، وكذا التكاليف الصادرة للديوان من مجلس الأمة حول

وكيل النيابة



**Public Prosecution**
**Public Funds Prosecution**



النيابة العامة
نيابة الأموال العامة

فحص واقعة مساهمة مؤسسة الموانئ الكويتية في صندوق الموانئ الاستثماري ، وكذا ما زودته به النيابة العامة من مستندات وكشوف بنكية ، وما زودته به مؤسستي الموانئ الكويتية والتأمينات الاجتماعية من أوراق .

فتبين له أنه وفي الفترة من عام ٢٠٠٧ أسست شركة ( كي جي أل للاستثمار) صندوق الموانئ الاستثماري في جزر الكايمن ، وتقدمت بعد ذلك إلى الجهات المعنية بدولة الكويت (وزارة التجارة والصناعة وبنك الكويت المركزي) بطلب الموافقة على تسويق وحداته بداخل الكويت ، وجاء في نشرة الاكتتاب التي اعتمدتها الشركة المسوقة أن الصندوق يهدف إلى تحقيق عائد سنوي بنسبة ٣٠% على إجمالي استثمارات الصندوق ، عبر منح فرصة للمستثمرين في الاكتتاب بأسهمه ، للعمل على تطوير الموانئ العالمية والاستثمارات المتصلة بهذا المرفق .

فصدرت موافقة تلك الجهات بموجب القرار رقم ٢٠٠٧/٢٤ في ٢٠٠٧/٥/١٢ برأس مال مصرح فيه بمبلغ ٥٠٠ مليون دولار أمريكي.

بناءً على ذلك أوكلت شركة ( كي جي أل للاستثمار) إحدى الشركات التي تملكها بالكامل وهي شركة ( كي جي أل للاستثمار كايمن) لتكون مدير الاستثمار ، مع تسويق وحداته في دولة الكويت .

وجاء نصيب مؤسستي الموانئ الكويتية والتأمينات الاجتماعية الكويتية بقيمة (٨٥ مليون دولار أمريكي) للأولى و(٤٠٤٠٠٠٠ دولار أمريكي) للثانية ، بإجمالي مبلغ (١٢٥٤٠٠٠٠ دولار أمريكي) من قيمة رأس المال المدفوع فعلاً بقيمة (١٦٦٠٠٩٧٥٦دولار أمريكي) ، شكلت مساهمة المؤسسة العامة للتأمينات الاجتماعية في رأس مال الصندوق منذ إنشائه في ٢٠٠٧ نسبة ٥٦ % ، زيدت عليها في العام ٢٠١٠ نسبة مساهمة مؤسسة الموانئ الكويتية ليصل حجم الأموال العامة في الصندوق



وكيل النيابة



**Public Prosecution**
**Public Funds Prosecution**



النيابة العامة
نيابة الأموال العامة

أودعت مبالغ المساهمين في حساب الصندوق لدى بنك HSBC فرع الكويت حساب رقم (٠٠١٠٠٤٠٠١١٦٠) ، ولدى البنك الأهلي الكويتي حساب رقم (٠٦٠٣٤٩٣٢٨٣٠٠١) .

سوقت المتهمة الأولى/ لازاريفا ماريا " بصفتها الرئيس التنفيذي شركة كي جي أل للاستثمار ومدير الاستثمار في شركة كي جي أل للاستثمار كايمن والمخول بالتوقيع عن جميع حسابات صندوق الموانئ الاستثماري لوحدات الصندوق بمساعدة عضو مجلس إدارة شركة ( كي جي أل للاستثمار) سعيد اسماعيل دشتي ، أحد كبار الملاك فيها "عبر ملكيته الشخصية وتمثيله قانوناً لعدد ٧٧٦ من المساهمين في شركة كي جي أل للاستثمار وكذا ملكية في شركة المرابطون الدولية أحد الملاك في شركة كي جي أل للاستثمار"  وذلك بعرضه أمر هذا الصندوق على مجلس الوزراء .

فصدر كتاب أمين عام مجلس الوزراء المؤرخ ٢٠١٠/٦/٢٩ حول العرض المقدم من شركة ( كي جي أل للاستثمار) إلى مؤسسة الموانئ الكويتية للمساهمة في صندوق الموانئ الاستثماري .

استغرقت فترة التسويق شهر من الزمن دون أن تلتزم شركة ( كي جي أل للاستثمار) خلالها وحتى بعد انتهاء عمر الصندوق بسداد مساهمتها في رأس مال الصندوق والبالغة ٢٠ مليون دولار أمريكي ، وكذا مساهمة إحدى شركاتها التابعة (شركة بترولينك القابضة ) البالغة ٣ مليون دولار ، كما دلت على ذلك جميع كشوف حسابات الصندوق المرفقة بتقريره .

تسبب في هذا كل من المتهمة/ لازاريفا ماريا مدير الاستثمار والمتهم الثاني/ سعيد اسماعيل دشتي ، مع إظهارهما البيان المالي للصندوق على غير حقيقته بإثبات سداد تلك المساهمات .

وأضاف أن مؤسسة الموانئ الكويتية ساهمت في صندوق الموانئ الاستثماري بموجب عقد المشاركة المؤرخ ٢٠١٠/٧/١٤ بمبلغ ٥٠ مليون دولار أمريكي ، مثلها في

وكيل النيابة





النيابة العامة
نيابة الأموال العامة

التوقيع عليه نائب رئيس مجلس الإدارة المتهم الثالث/ محمد عبدالمحسن عبداللطيف العصفور ، الذي وافق على تخفيض نسبة أرباح المؤسسة من عوائد الصندوق إلى ٢٠% بالمخالفة لنشرة الاكتتاب ، ودون بيان أسباب ذلك التخفيض ، وعلى الرغم من هدف المؤسسة من وراء تعاقدها إلى تنمية مواردها المالية .

وأثبت الفحص المستندي استيلاء المتهمة الأولى/ لازاريفا ماريا على مبلغ ١٢٩٤٤٢ دينار كويتي ، ومبلغ ٦٠٦٠ دولار أمريكي ، من أموال صندوق الموانئ الاستثماري عن طريق تحويلات مالية بتواريخ ٢٠١٠/٨/٢٦ و ٢٠١٠/١٢/١٣ و ٢٠١١/١٠/٣١ بمبالغ ( ٢٧٠٠٠ دينار كويتي و ٤٤٢ دينار كويتي و ٦٠٦٠ دولار أمريكي ) على التوالي ،  وإصدار الشيكات ( رقم ٢١٤٤٥٤ بمبلغ ٥٠٠٠ دينار كويتي ، ورقم ٢١٤٤٥٩ بمبلغ ١٠٠٠٠ دينار كويتي ، ورقم ٢١٤٤٦٥ بمبلغ ٥٠٠٠ دينار كويتي ، ورقم ٢١٤٤٦٩ بمبلغ ١٨٠٠٠ دينار كويتي ) المسحوبة على حساب صندوق الموانئ الاستثماري رقم ٠٠١٠٠٤٠٠١٠٠١ ، والشيكات ( رقم ٦ بمبلغ ٥٠٠٠ دينار كويتي ، ورقم ٩ بمبلغ ١٨٠٠٠ دينار كويتي ، ورقم ١٩ بمبلغ ١٨٠٠٠ دينار كويتي ، ورقم ٢٢ بمبلغ ٥٠٠٠ دينار كويتي ، ورقم ٣٥ بمبلغ ١٨٠٠٠ دينار كويتي ) المسحوبة على حساب صندوق الموانئ الكويتي رقم ٤٩٣٢٨٣٠٠٢ لدى البنك الأهلي الكويتي ، مستغلة صفتها كمفوض وحيد على جميع حسابات الصندوق بداخل دولة الكويت ، وتحويل تلك المبالغ لصالحها .

كما أثبت الفحص استغلالها لصفتها كمفوض وحيد على جميع حسابات الصندوق وتسهيلها الاستيلاء على أموال الصندوق لشركات تابعة وزميلة لمدير الاستثمار ( شركة كي جي أل للاستثمار كأيمن المملوكة بالكامل لشركة كي جي أل للاستثمار ) هي شركات ( كي جي أل للاستثمار ، رابطة الكويت والخليج للنقل ، كي جي أل الدولية للموانئ والتخزين والنقل ، كي جي أل أن أي القابضة ، بترولينك القابضة ، كي جي أل آسيا كابيتال لينك القابضة ، كي جي أل البترولية ، كلارك جيت واي




**Public Prosecution**
**Public Funds Prosecution**

النيابة العامة
نيابة الأموال العامة

انفستمنت جروب ) بمبلغ إجمالي مقدراه ١٠٥٩٠٠٠ د.ك "مليون وتسعة وخمسون ألف دينار كويتي" ، ومبلغ إجمالي مقداره ٨٩٧٦٤٥٣٣,٦٨ دولار أمريكي" تسعة وثمانون مليون وسبعمائة وأربعة وستون ألف وخمسمائة وثلاثة وثلاثون دولار وثمانية وستون سنتاً أمريكياً ، عن طريق تحويلات مالية من حسابات صندوق الموانئ الاستثماري سالفة البيان إلى حسابات تلك الشركات لدى البنوك المبينة تفصيلاً بتقريره بداخل وخارج الكويت ، وذلك على التفصيل الآتي :

| اسم المستفيد | المبلغ بالدينار الكويتي | المبلغ بالدولار الأمريكي |
|---|---|---|
| كي جي أل للاستثمار | ٩٤٠٠٠٠ | ٣٤٠٥١٩٠٤١ |
| شركة رابطة الكويت والخليج للنقل | ٢٠٠٠٠ | – |
| شركة كي جي أل الدولية للموانئ والتخزين والنقل | – | – |
| شركة كي جي أل أن أم القابضة | – | ١٧٠٧١١٠٧٦٣ |
| شركة بترولنك القابضة | – | ١٦٧٠٠٠٠٠٠ |
| شركة كي جي أل اسيا (ROHQ) | – | ١٤٧٠٤٥٨٤١ |
| شركة كابيتال لينك | – | – |
| شركة كي جي أل البترولية | – | ٧٠٠٩٠٠٠٠٠ |
| كلارك جيت واي انفستمنت قروب | – | ٢٤٠٠٠٠٠٠ |
| الإجمالي | ١٠٥٩٠٠٠ | ٨٩٧٦٤٥٣٣,٦٨ |

وأردف أنه من بين العمليات المالية المشار إليها أعلاه استخدام المتهمة/ لازاريفا ماريـا أمـوال صـندوق المـوانئ الاستثماري فـي غير الغـرض المخصـص وفـي غيـر استثمارات أموال الصندوق أو إدارتها ، حينما منحت قرضاً " ائتمان " لطرف ذي صلة بها وهي شركة كي جي أل الدولية للموانئ والتخزين والنقل والتي يملكها المتهم الثاني سعيد اسماعيل دشتي وآخرين ، عبر تحويل مالي أمرت به من حساب صندوق الموانئ الاستثماري لدى أمين الاستثمار بنك HSBC حساب رقم ٠٠١٠٠٤٠٠١١٦٠ بمبلغ ٢٠٦٠٠٠٠٠ دولار أمريكي " فقط عشـرون مليـون وسـتمائة ألـف دولار أمريكـي " بتاريخ ٢٠٠٧/٨/٢٦ ، أودع في حساب كي جي أل الدولية للموانئ والتخزين والنقل رقم ٠٠٠٢٤٢٦٥٩٠٣٠١ لدى بنك الكويت الوطني ، لتستخدمه شركة كي جي أل الدولي للموانئ في صفقتها مع شركة ميناء دمياط المتعثرة مالياً في جمهورية مصر العربية ، على عقد يبين ظروف منح هذا القرض أو مناسبته .

١٤

وكيل النيابة



**Public Prosecution**
**Public Funds Prosecution**



النيابة العامة
نيابة الأموال العامة

وتبين له من البيانات المالية لصندوق الموانئ الاستثماري أن مدة ذلك القرض خمس سنوات بفائدة بسيطة نسبتها ٢٨% سنوياً ، بيد أن المتهمة/ لازاريفا ماريا أقدمت في وقت لاحق على منح القرض سالف البيان على إلغائه وفوائده كلياً ، ودون إثبات أي أصل يقابله في البيانات المالية للصندوق ، إضراراً بأموال صندوق الموانئ الاستثماري ، وتسهيلاً منها للمتهم الثاني/ سعيد اسماعيل دشتي الاستيلاء على هذا المبلغ .

كما ثبت له من الفحص أن المتهمة/ لازاريفا ماريا بوصفها مدير الاستثمار لأموال الصندوق دخلت في استثمار باسم صندوق الموانئ الاستثماري مع شركة MPC- GMO في أوروبا ، انتهى بخسارة محققة بلغت ١٥٢٨٠٩٧٣ دولار أمريكي مع انتهاء عمر الاستثمار في السنة المالية ٢٠١٣ ، لم تكتف المتهمة/ لازاريفا ماريا بتلك الخسائر وإنما عمدت إلى استغلال صفتها كمفوض وحيد على جميع حسابات صندوق الموانئ الاستثماري بداخل دولة الكويت وحولت خلال الفترة من ٢٠١٤/٣/٣١ حتى ٢٠١٥/٧/٩ أموالاً من حسابي الصندوق رقمي ٠٠٢٤٩٣٢٨٣٠٠١ و ٠٠٢٤٩٣٢٨٣٠٠١ لدى البنك الأهلي الكويتي بعد انتهاء استثمار الصندوق مع شركة GMO -MPC وبعد انقضاء أجل صندوق الموانئ الاستثماري بإجمالي مبلغ ٤٠١١٣٧,١٤ دولار أمريكي ، ومبلغ ٣٠٧٠٩٤,٦٨٠ دينار كويتي ، لتسهل بذلك لشركة GMO -MPC الاستيلاء على هذا المبلغ ، وفي غير أغراض إدارة أموال الصندوق واستثمارها .

وثبت له من الفحص كذلك أنه وبتاريخ ٢٠٠٩/٦/٢٧ قدم مدير الاستثمار المتهمة/ لازاريفا ماريا تسهيلات مالية لشركة يستفيد منها التهم الثاني/ سعيد اسماعيل دشتي وهي (شركة الموحدة للنقل والخدمات اللوجستية الأردنية) على شكل كفالة بنكية بمبلغ ٩٠٠٠٠٠ دولار أمريكي ، في غير أغراض إدارة أموال الصندوق ، أو استثمارها ، استغلت المتهمة صفتها كمفوض وحيد على حسابات الصندوق وحولت منح تلك الكفالة إلى الشركة المستفيدة لدى البنك الأردني الكويتي بالمملكة الأردنية ، كما

ـــــــــــــــــــــــــــــــــــــــــ

وكيل النيابة



**Public Prosecution**
**Public Funds Prosecution**

النيابة العامة
نيابة الأموال العامة

تتكبت الشركة المستفيدة عن سداد تلك الكفالة لصندوق الموانئ الاستثماري ، تسهيلاً من المتهمة للاستيلاء على أموال الصندوق للمتهم الثاني سعيد اسماعيل دشتي .

كما دل الفحص على إقدام المتهمة لازاريفا ماريا بتاريخ على تحويل مبلغ ٢٠٠٠٠٠ دينار كويتي لذات الشركة سالفة البيان ( شركة الموحدة ) مستغلة صفتها كمفوض وحيد على حسابات الصندوق ، في غير أغراض إدارة أموال الصندوق أو استثماراها ، تسهيلاً منها للاستيلاء على جميع تلك المبالغ للمتهم الثاني/ سعيد إسماعيل دشتي ، الذي مثل الشركة الموحدة في التوقيع على عقد الكفالة المار ذكره بتاريخ ٢٠٠٩/٦/٢٧ .

وثبت من له من الفحص أيضاً استغلال المتهمة/ لازاريفا ماريا لصفتها كمفوض وحيد على حسابات الصندوق عبر تحويلها بتاريخ ٢٠١٠/٨/٢٦ مبلغ إجمالي مقداره ٧١٩١٠٠ دينار كويتي إلى حساب شركة المرابطون الدولية المملوكة للمتهم الثاني سعيد اسماعيل دشتي ، دون سبب ، وفي أغراض إدارة أموال الصندوق استثمارها ، تسهيلاً منها للمتهم الثاني سالف الذكر الاستيلاء على هذا المبلغ ، وذلك على التفصيل الآتي :

| رقم تلكس التحويل | المبلغ بالدينار الكويتي | التاريخ |
|---|---|---|
| BR07002010020066 | ٣١٩١٠٠ | ٢٠١٠/٨/٢٦ |
| BR07002010020069 | ٤١٠٠٠٠ | ٢٠١٠/٨/٢٦ |
| المجموع | ٧١٩١٠٠ | |

كما ثبت له من الفحص استغلال المتهمة المذكورة لصفتها كمفوض وحيد على جميع حسابات صندوق الموانئ الاستثماري بداخل دول الكويت ، وتحويلها مبلغ ٣٥٠ ألف دينار كويتي من حساب صندوق الموانئ الاستثماري إلى حساب المتهم الثاني/ سعيد اسماعيل دشتي لدى بنك برقان المبين بتقريره.

وكذا قامت المتهمة/ لازاريفا ماريا بصفتها كمفوض وحيد على جميع حسابات صندوق الموانئ الاستثماري بتحويل مبلغ إجمالي مقداره ١٢١٠٠٠ دينار كويتي إلى



وكيل النيابة

١٦



**Public Prosecution**
**Public Funds Prosecution**



النيابـة العامـة
نيابة الأمـوال العامـة

المتهم سعيد اسماعيل دشتي ، عبر تحويل مالي بتاريخ ٢٠١٠/٨/٢٦ بمبلغ ٢٧٠٠٠ دينار كويتي من حساب صندوق الموانئ الاستثماري رقم ٠٠١٠٠٤٠٠١١٦٠ لدى بنك HSBC وأصدار شيكات ( رقم ٢١٤٤٥٣ بمبلغ ٩٠٠٠ دينار كويتي ، ورقم ٢١٤٤٥٨ بمبلغ ١٠٠٠٠ دينار كويتي ، ورقم ٢١٤٤٦٤ بمبلغ ٧٠٠٠ دينار كويتي ، ورقم بمبلغ ٢١٤٤٦٨ بمبلغ ١٨٠٠٠ دينار كويتي ) مسحوبة من حساب صندوق الموانئ الاستثماري رقم ٠٠١٠٠٤٠٠١١٦٠ لدى بنك HSBC ، وكذلك إصدارها الشيكات (رقم ٣ بمبلغ ١٨٠٠٠ دينار كويتي ، ورقم ٥ بمبلغ ٧٠٠٠ دينار كويتي ، ورقم ١٨ بمبلغ ١٨٠٠٠ دينار كويتي ، ورقم ٢٠ بمبلغ ٧٠٠٠ دينار كويتي ) في غير أغراض الصندوق أو إدارة أمواله ، وبقصد تسهيل الاستيلاء عليها .

وتوصل بفحصه لاستثمارات صندوق الموانئ الاستثماري أن للصندوق استثمار في الفلبين عبارة عن مشروعي (المدينة الطبية ومدينة صباح الأحمد اللوجستية) ، تم التعاقد عليهما بين شركة أنشأها مدير الصندوق المتهمة لازاريفا ماريا لإنجاز المشروع اسمها Global Gateway Development Corporation وبين الحكومـة الفلبينية بنظام B.O.T لمدة خمسين عاماً .

قام على إثر ذلك مدير الصندوق المتهمة لازاريفا ماريا بضخ مبالغ مالية ضخمة بلغ إجماليها ٧٩١٦٩٦٦٢ دولار أمريكي لمباشرة المشروع سالف البيان ، إلا أنه لم يتم إنجاز المشروع فعلياً ولـم يحقق أي عوائد مالية حتى انتهاء عمـر الصـندوق فـي ٢٠١٤/١٢/٣١ .

ويضيف أنه رافق ذلك انتهاء السيولة المالية لصندوق الموانئ الاستثماري ، فقـام مدير الاستثمار المتهمة/ لازاريفا ماريا مع المتهم الثاني/ سعيد إسماعيل دشتي بنقل ملكيـة شركة Global Gateway Development Corporation (مالكـة المشروع عين سالفي البيان) من صندوق الموانئ الاستثماري وبنسبة ١٠٠% إلى شركة Clark Gateway Investment Group المملوكـة المتهم الثاني/ سعيد إسماعيل

وكيل النيابة

١٧



**Public Prosecution**
**Public Funds Prosecution**



النيابة العامــة
نيابة الأمـوال العامة

دشتي ، وفق الثابت من الخطاب المرسل من المتهم الثاني سعيد اسماعيل دشتي بتاريخ ٢٠١٤/٤/١١ إلى المتهمة/ لازاريفا ماريا والذي أكد فيه عملية إتمام البيع .

ويضيف أن المتهمة/ لازاريفا ماريا لم تكتف بنقل ملكية المشروعين سالفي البيان إلى المتهم الثاني/ سعيد اسماعيل دشتي ،للاستيلاء عليهما فحسب ، إذ أقدمت بتاريخ ٢٠١٤/٩/٢ إلى تحويل مبلغ مليوني دولار أمريكي إلى شركة Clark Gateway Investment Group المملوكة للمتهم الثاني سعيد اسماعيل دشتي لتسهل بذلك المتهمة/ لازاريفا ماريا للمتهم الثاني سالف الذكر الاستيلاء على أموال الصندوق وأصوله بمبلغ إجمالي مقداره ٨١١٦٩٦٦٢ دولار أمريكي .

كما أثبت الفحص اعتماد نائب مدير عام مؤسسة الموانئ الكويتية المتهم الثالث محمد عبدالمحسن عبداللطيف العصفور اعتبار مساهمة مؤسسة الموانئ الكويتية في صندوق الموانئ الاستثماري بأثر رجعي منذ عام ٢٠٠٧ ، لا من تاريخ مساهمتها الفعلية في يوليو ٢٠١٠ ، مما نتج عنه احتساب أتعاب إدارة لمدير الصندوق شركة ( كي جي أل للاستثمار كايمن) بأثر رجعي عن السنوات ٢٠٠٧ و ٢٠٠٨ و ٢٠٠٩ ، بلغت ٣٨٩٨٢٦٠ دولار أمريكي ، إضراراً بأموال مؤسسة الموانئ الكويتية ، معللاً هذا التصرف باحتيال قامت به مدير الاستثمار المتهمة/ لازاريفا ماريا بالتواطؤ مع المتهم الثالث/ محمد عبدالمحسن عبداللطيف العصفور ،والمتهم الثاني سعيد اسماعيل دشتي ، مستدلاً على ذلك بمشاركة المتهم الثالث محمد عبدالمحسن العصفور للمتهم الثاني سعيد اسماعيل دشتي في شركات تجارية (كالشركة الوطنية للتنظيف المؤسسة في ١٩٧٩/٣/٢١ ) و (الشركة الوطنية للمجاري ذ.م.م المؤسسة في ١٩٨٩/١/٨ ) و (شركة صبحان للمقاولات الزراعية المؤسسة في ١٩٨٩/٩/٦ ) ، وكذا تعمد مدير الاستثمار المتهمة/ لازاريفا ماريا اتباع أسلوب إعادة تقييم أصول الصندوق لتضخيمها وللتحصيل على مزيد من أتعاب الأداء ، وكل ذلك بعلم المتهم الثاني/ سعيد اسماعيل

وكيل النيابة


**Public Prosecution**
**Public Funds Prosecution**



**النيابة العامة**
**نيابة الأموال العامة**

دشـتي واسـتفادتـه شخصـياً مـن أمـوال صـندوق المـوانئ الاسـتثماري الـتي حولتهـا إليـه المتهمة/ لازاريفا ماريا وإلى الشركات التي يملكها كما أسلف بشهادته .

وانتهى إلـى أن هـذه الأفعـال أضـرت بـأمـوال صـندوق المـوانئ الاسـتثماري وبمسـاهمتي المؤسسـة العامـة للتأمينـات الاجتماعيـة ومؤسسة المـوانئ الكويتيـة بمبلـغ ١٦٦٠٠٩٧٥٦ دولار أمريكي " مائة وستة وستون مليون وتسعة آلاف وسبعمائة وستة وخمسون دولار أمريكي " .

<u>ملاحظات النيابة العامة :</u>

١ـ أقرت المتهمة/ لازاريفا لاريا بالتحقيقات بأنها الرئيس التنفيذي لشركـة كـي جي أل للاستثمار ، صاحبة الفكرة في إنشاء صندوق الموانئ الاستثماري ، وبأن الشركة سالفة البيان أنشأت شركة كي جي أل للاستثمار كايمن لتكون مدير الاستثمار لصندوق الموانئ الاستثمار وتملكها بالكامل ، وبأنها ـ أي المتهمة ، المخول بالتوقيع منفرداً على جميع حسابات صندوق الموانئ الاستثماري لدى جميع البنوك ، وبأن شركة كي جي أل للاستثمار لم يسبق لها وأن أسست صندوق استثمارياً قبل صندوق الموانئ الاستثماري ، وبأنها ـ أي المتهمة ـ من طلبت إعداد نشرة الاكتتاب للصندوق ، وبأن صندوق الموانئ الاستثماري انتهى عمره في ٢٠١٤/١٢/٣١ دون أن يوزع أي أرباح ، وبأنه لا يوجد في حسابات الصندوق ما يغطي رأس ماله ، وبأنها من منحت شركة كي جي أل الدولية للموانئ والتخزين والنقل القرض بقيمة ٢٠٦٠٠٠٠٠ دولار أمريكي " عشرون مليون وستمائة ألف دولار أمريكي " ، وبأن المتهم الثاني/ سعيد إسماعيل دشتي هو رئيس المجلس الاستشاري لصندوق الموانئ الاستثماري والمدير غير التنفيذي .

٢ ـ ثبت من مطالعة النيابة العامة للصور الضوئية للشيكات (رقم ٢١٤٤٥٤ بمبلغ ٥٠٠٠ دينار كويتي ، ورقم ٢١٤٤٥٩ بمبلغ ١٠٠٠٠ دينار كويتي ، ورقم ٢١٤٤٦٥ بمبلغ ٥٠٠٠ دينار كويتي ، ورقم ٢١٤٤٦٩ بمبلغ ١٨٠٠٠ دينار كويتي ) المسحوبة



وكيل النيابة

وكيل النيابة

١٩



**Public Prosecution**
**Public Funds Prosecution**

النيابة العامة
نيابة الأموال العامة

على حساب صندوق الموانئ الاستثماري رقم ٠٠١٠٠٤٠٠١٠٠١ ، والشيكات ( رقم ٦ بمبلغ ٥٠٠٠ دينار كويتي ، ورقم ٩ بمبلغ ١٨٠٠٠ دينار كويتي ، ورقم ١٩ بمبلغ ١٨٠٠٠ دينار كويتي ، ورقم ٢٢ بمبلغ ٥٠٠٠ دينار كويتي ، ورقم ٣٥ بمبلغ ١٨٠٠٠ دينار كويتي ) المسحوبة على حساب صندوق الموانئ الكويتي رقم ٤٩٣٢٨٣٠٠٢ لدى البنك الأهلي الكويتي ، والشيكات ( رقم ٢١٤٤٥٣ بمبلغ ٩٠٠٠ دينار كويتي ، ورقم ٢١٤٤٥٨ بمبلغ ١٠٠٠٠ دينار كويتي ، ورقم ٢١٤٤٦٤ بمبلغ ٧٠٠٠ دينار كويتي ، ورقم بمبلغ ٢١٤٤٦٨ بمبلغ ١٨٠٠٠ دينار كويتي ) مسحوبة من حساب صندوق الموانئ الاستثماري رقم ٠٠١٠٠٤٠٠١١٦٠  لدى بنك HSBC ، وكذلك إصدارها الشيكات (رقم ٣ بمبلغ ١٨٠٠٠ دينار كويتي ، ورقم ٥ بمبلغ ٧٠٠٠ دينار كويتي ، ورقم ١٨ بمبلغ ١٨٠٠٠ دينار كويتي ، ورقم ٢٠ بمبلغ ٧٠٠٠ دينار كويتي ) مطابقتها لما شهد به الشاهد السابع .

٣ ـ ثبت من مطالعة النيابة للصور الضوئية عن كشوف الحساب وأوامر التحويل الخاصة بحسابات صندوق الموانئ الاستثماري لدى بنك HSBC المرفقة بتقرير عضو ديوان المحاسبة الشاهد السابع ، تحويل أموال من تلك الحسابات إلى حسابات شركة كي جي أل للاستثمار "مدير الصندوق" وشركات تابعة لها :

| المبلغ بالدولار الأمريكي | المبلغ بالدينار الكويتي | اسم المستفيد |
|---|---|---|
| ٣٤٠٥١٩٠٤١٢ | ٢٠٠٠٠٠ | كي جي أل للاستثمار |
|  | ٢٠٠٠٠٠ | شركة رابطة الكويت والخليج للنقل |
| ٢٠٠٢٠٠٠٠٠٠ | – | شركة كي جي أل الدولية للموانئ والتخزين والنقل |
| ١٧٠٧١١٠٧٦٣ | – | شركة كي جي ال ام القابضة |
| ١٠٠٠٠٤١٠ | – | شركة بتروللك القابضة |
| ٦٠٧٠٠٠٠٠٠ | – | شركة كي جي أل اسيا (ROHO) |
| ١٤٣٠٣٥٨٠٦٨ | – | شركة كابيتال لينك |
| ٧٠٠٩٠٠٠٠٠ | – | شركة كي جي ال البترولية |
| ٣٤٠٠٠٤٠٠٠ | – | كلارك جيت واي انفستمنت قروب |
| ٨٩٧٦٤٥٣٣٠٦٨ | ١٠٠٩٠٠٠ | الإجمالي |

ثبت من مطالعة النيابة العامة للصور الضوئية عن أوامر التحويل المرفقة بتقرير المحاسبة الشاهد السابع تحويل أموال من حسابي صندوق الموانئ

وكيل النيابة



**Public Prosecution**
**Public Funds Prosecution**

النيابة العـامـة
نيابة الأمـوال العامة

الاستثماري لدى البنك الأهلي الكويتي المبينة أدناه إلى حساب استثمار شركة أم بي سي جامو MPC-GMO بعد انتهاء استثمار الصندوق في الشركة سالفة البيان " مجلد رقم"

١ ـ حساب رقم ٠٠١ـ٤٩٣٢٨٣ـ٠٠١ :

| رقم تلكس التحويل | المبلغ بالدولار الامريكي | التاريخ |
|---|---|---|
| BR07002014006629 | ١٤٣٫٢٤٤٫٦٦ | ٢٠١٤/٣/٣١ |
| BR07002014008437 | ١٣٣٫٩٨٦٫٧٧ | ٢٠١٤/٤/٢١ |
| BR07002014022875 | ١٢٣٫٩٠٥٫٧١ | ٢٠١٤/١٠/٢١ |
| | ٤٠١٫١٣٧٫١٤ | المجموع |

٢ ـ حساب رقم ٠٠٢ـ٤٩٣٢٨٣ـ٠٠١ :

| رقم تلكس التحويل | المبلغ بالدينار الكويتي | التاريخ |
|---|---|---|
| BR07002015015492 | ٧٣٫٤٤٣٫٣٨ | ٢٠١٥/٧/٩ |

٤ ـ ثبت من مطالعة الصورة الضوئية للكتاب المرسل من المتهم الثاني/ سعيد إسماعيل دشتي ( بصفته مدير شركة Clark Gateway Investment Group ) إلى المتهمة/ لازاريفا ماريا ( عن شركة شركة Global Gateway Development Corporation ) أنه في ٢٠١٤/٤/١١ قامت Clark Gateway Investment Group بشراء ١٠٠% من الأسهم القائمة في شركة Global Gateway Development Corporation .

٤ ـ ثبت من مطالعة النيابة العامة للصور الضوئية عن المكاتبات المتبادلة بين شركتي كي جي أل للاستثمار والشركة الموحدة للنقل والبنك الأردني الكويتي ، قيام شركة كي جي أل للاستثمار بتقديم كفالة بنكية للشركة الموحدة بمبلغ ٩٠٠٠٠٠ دولار أمريكي .

٥ـ ثبت من مطالعة النيابة العامة للصورة الضوئية عن اتفاقية تقديم الكفالة البنكية المشار إليها أعلاه أنها مبرمة في ٢٠٠٩/٦/٢٧ بين صندوق الموانئ الاستثماري

وكيل النيابة



**Public Prosecution**
**Public Funds Prosecution**

النيابـة العامـة
نيابة الأمـوال العامـة

والشركة الموحدة للنقل ، مثل المتهم الثاني/ سعيد إسماعيل دشتي الشركة الموحدة في التوقيع على تلك الاتفاقية .

٦ ـ ثبت من مطالعة النيابة العامة لقرار محافظ البنك المركزي رقم ٢٠٠٧/٩٩/١ المؤرخ ٢٠٠٧/٣/١١ أن شركة ( كي أل للاستثمار ) شركة مساهمة كويتية مقفلة ، تاريخ تأسيسها ٢٠٠٦/١١/٦ ، برأس مال مصرح مقداره ١٥٠٠٠٠٠٠ د.ك ، وبأن المتهمة/ لازاريفا ماريا العضو المنتدب فيها ، والمتهم الثاني/ سعيد اسماعيل دشتي عضو في مجلس إدارتها .

٧ـ ثبت من مطالعة النيابة العامة للصورة الضوئية عن طلب التأشير في سجل صناديق الاستثمار الصادر عن إدارة الشركات المساهمة بوزارة التجارة والصناعة أن شركة كي جي أل للاستثمار مدير التسويق لصندوق الموانئ الاستثماري .

٨ ـ ثبت من مطالعة النيابة العامة للصورة الضوئية عن رخصة التسويق الخاصة رقم ٢٠٠٧/٢٤ الصادرة في ٢٠٠٧/٥/٢٢ أن أغراض صندوق الموانئ الاستثماري هي تحقيق معدل عائد داخلي بنسبة ٣٠% على إجمالي استثمارات الصندوق عن طريق تقديم الفرصة للمستثمرين للاكتتاب في نمو وتوحيد الأعمال ذات العلاقة بالميناء والاستثمارات الأخرى التي تتيح الفرصة للاستثمار فيها والتي تكون لها علاقة باستثمارات الصندوق ، وأن شركة كي جي أل للاستثمار من أنشأت الصندوق ، وأن شركة كي جي أل كيمان للاستثمار المحدودة مدير الصندوق ، وأن أمين الاستثمار هو بنك HSBC الشرق الأوسط المحدود .

٩ ـ ثبت من مطالعة النيابة العامة للصورة الضوئية عن عقد اكتتاب ومشاركة مؤسسة الموانئ الكويتية في صندوق الموانئ الاستثماري المؤرخ ٢٠١٠/٧/١٤ في تمهيده أن الصندوق المشار إليه يهدف إلى تحقيق معدل عائد داخلي بنسبة ٢٠% على إجمالي استثمارات الصندوق ، ونصت المادة الثانية منه على مشاركة المؤسسة في وحدات الصندوق يبلغ ٥٠ مليون دولار أمريكي . ونصت المادة الثانية عشرة منه على أن

وكيل النيابة



**Public Prosecution**
**Public Funds Prosecution**



النيابـة العامـة
نيابة الأمـوال العامة

يخضع العقد للقوانين الكويتية وأن تختص المحاكم الكويتية بنظر المنازعات التي تثور بصدد تنفيذ بنوده، مثل مؤسسة الموانئ الكويتية في التوقيع عليه نائب رئيس مجلس إدارتها المتهم الثالث/ محمد عبدالمحسن عبداللطيف العصفور .

١٠ ـ ثبت من مطالعة النيابة العامة للصورة الضوئية عن كتاب تحويل مبلغ مساهمة مؤسسة الموانئ الكويتية في صندوق الموانئ الاستثماري المؤرخ ٢٠١٠/٧/١٥ أنه موقع من نائب رئيس مجلس الإدارة المتهم الثالث/ محمد عبدالمحسن العصفور .

١١ ـ ثبت من مطالعة النيابة العامة للصورة الضوئية عن كتاب الأمين العام لمجلس الوزراء رقم (٣١١/٢٠/١٠) المؤرخ ٢٠١٠/٦/٢٩ أنه يتصل بموضوع مشاركة مؤسسة الموانئ الكويتية في صندوق الموانئ الاستثماري الذي أنشأته شركة كي جي أل للاستثمار ، وجاء فيه أن سعيد اسماعيل دشتي من شركة كي جي أل للاستثمار كتب لديوان سمو رئيس مجلس الوزراء في ٢٠١٠/٧/٣ بطلب إبداء الرأي في شأن الموافقة على مشاركة مؤسسة الموانئ الكويتية في صندوق الموانئ الاستثماري الذي أنشأته الشركة المذكورة .

١٣ ـ ثبت من مطالعة النيابة العامة لكتاب مدير عام مؤسسة الموانئ الكويتية المؤرخ ٢٠١٥/١٢/٢ أن البيان الختامي لمؤسسة الموانئ الكويتية للسنة المالية ٢٠١٥/٢٠١٤ الخاص باستثمار المؤسسة في صندوق الموانئ الكويتية تم تصحيحه إلى عدم تسجيل أي مبالغ إضافية أو أرباح خاصة بصندوق الموانئ الاستثماري في دفاتر المؤسسة .

١٤ ـ ثبت من مطالعة النيابة العامة لبلاغ وزير المواصلات المؤرخ ٢٠١٣/١١/٤ أنه تضمن بياناً حول المادة السابعة من عقد مشاركة مؤسسة الموانئ الكويتية في صندوق الموانئ الاستثماري بما نصت عليه من التزام طرفي العقد بنشرة الاكتتاب ووثائقها باعتبارها جزء لا يتجزأ من العقد ، والتي جاء فيها ـ أي نشرة الاكتتاب ـ أن متوسط العائد على استثمارات الصندوق يبلغ نسبة ٣٠% ، بيد أنه تمت مخالفة هذه المادة بتخفيض ذلك العائد إلى نسبة ٢٠% في عقد الاكتتاب ، وأن ثمة علاقة تضارب

وكيل النيابة



**Public Prosecution**
**Public Funds Prosecution**



النيابة العامة
نيابة الأموال العامة

مصالح بين نائب رئيس مجلس إدارة مؤسسة الموانئ الكويتية المتهم الثالث/ محمد عبدالمحسن العصفور وشركة كي جي أل للاستثمار .

١٥ ـ ثبت من مطالعة النيابة العامة لكشف التحويلات المالية المرفق بتقرير الشاهد السابع عضو ديوان المحاسبة ، تحويل أموال من حساب صندوق الموانئ الاستثماري رقم ٠٠١٠٠٤٠٠١٠٠١ لدى بنك HSBC ، ( شركة رابطة الكويت والخليج للنقل ) بإجمالي مبلغ ٢٠٠٠٠ دينار كويتي " عشرون ألف دينار كويتي " ، وذلك على التفصيل الآتي :

| لدى بنك/ بدولة | الشركة المستفيدة | رقم حسابها | مبلغ التحويل | تاريخ التحويل |
|---|---|---|---|---|
| HSBC/الكويت | شركة رابطة الكويت والخليج للنقل | ٠٠١٠٠٤٠٠١٠٠١ | | ٢٠١١/١٠/٣١ |

١٦ ثبت من مطالعة النيابة العامة للصورة الضوئية عن عقد تعديل شركة المرابطون الدولية (ذ.م.م) المؤرخ ٢٠٠٧/١/٢٨ أن المتهم الثاني/ سعيد اسماعيل دشتي يملك عدد (٧٥) حصة من إجمالي (١٠٠) حصة .

١٧ ـ ثبت من مطالعة النيابة العامة للصورة الضوئية عن عقد تأسيس شركة كي جي أل للاستثمار ( ش.م.ك.م) المؤرخ ٢٠٠٦/١١/٩ أن المتهم الثالث/ محمد عبدالمحسن عبداللطيف العصفور طرف مؤسس في الشركة المذكورة ( الطرف ٦٤١ ) يملك فيها عدد (٣٠ ألف سهم ) بقيمة (٣٠٠٠ د.ك) ، وأن المتهم الثاني سعيد اسماعيل دشتي وكيل عن جميع الشركاء .

١٨ ـ ثبت من مطالعة النيابة العامة للصورة الضوئية عن عقود تأسيس شركات الوطنية للتنظيف وصبحان للمقاولات الزراعية ، أن المتهم الثالث/ محمد عبدالمحسن عبداللطيف العصفور طرف شريك فيها مع المتهم الثاني سعيد اسماعيل دشتي .

وكيل النيابة



**Public Prosecution**
**Public Funds Prosecution**



النيابة العامة
نيابة الأموال العامة

١٩ ـ ثبت من مطالعة كشف حساب المتهمة/ لازاريفا ماريا لدى بنك برقان مطابقته لما شهد به الشاهد الثالث .

٢٠ ـ ثبت من مطالعة كشف حساب المتهم/ سعيد اسماعيل دشتي لدى بنك برقان مطابقته لما شهد به الشاهد الثالث .

٢١ ـ ثبت من مطالعة كشف حساب شركة كي أل للاستثمار لدى البنك الأهلي ومرفقاته الكويتي مطابقتها لما شهد به الشاهدين الثاني السادس .

٢٢ ـ ثبت من مطالعة كشف حساب المتهم/ لازاريفا ماريا لدى بنك بيت التمويل الكويتي مطابقته لما شهد به الشاهد الخامس .

٢٣ ـ ثبت من مطالعة كشف حساب صندوق الموانئ الاستثماري لدى بنك HSBC ومرفقاته مطابقته لما شهد به الشاهد الرابع .

٢٤ ـ ثبت من مطالعة الصورة الضوئية عن عقد تأسيس شركة كي أل للموانئ التخزين والنقل المؤرخ ٢٠٠٤/٧/٢٤ أن المتهم الثاني/ سعيد اسماعيل دشتي عضو مؤسسة في هذه الشركة بصفته ممثلاً لشركة رابطة الكويت والخليج للنقل المؤسسة بتاريخ ١٩٨٣/٥/١ .

٢٥ ـ ثبت من مطالعة النيابة العامة لتقرير عضو ديوان المحاسبة الشاهد السابع أن المساهمين في صندوق الموانئ الاستثماري ، وحصصهم في رأسمال ماله بالآتي :

| المبلغ بالدولار الأمريكي | الجهة المسددة |
|---|---|
| ٨٥٠٠٠٠٠٠ | مؤسسة الموانئ الكويتية |
| ٤٠٤٠٠٠٠٠ | المؤسسة العامة للتأمينات الاجتماعية |
| ٩٩٩٩٧٨٠ | الهيئة العامة للتقاعد والتأمينات الاجتماعية (قطر) |
| ١٣٣٠٠٠٠ | شركة مبهان للاستثمار |
| ٢٠٠٠٠٠٠ | مؤسسة الخليج للاستثمار |

وكيل النيابة



**Public Prosecution**
**Public Funds Prosecution**

النيابة العامة
نيابة الأموال العامة

| ١.٢٩٩٧٦ | يعقوب مهنا |
|---|---|
| ٣.٩٠٠٠٠ | الشركة الاهلية القابضة |
| ٢.٤٠٠٠٠ | شركة إعادة التامين الكويتية |
| ٣.٦٠٠٠٠ | الشركة الاهلية للتامين |
| ٣٠٠٠٠٠ | عبد علي النفي |
| ١٦٦٠٠٩٧٥٦ | المجموع |
| ١٢٥٤٠٠٠٠٠ | حجم مساهمة مؤسسة الموانئ والتأمينات الاجتماعية الكويتية في صندوق الموانئ الاستثماري ( بالدولار الأمريكي ) |
| %٧٤,٢٢ | نسبة الأموال العامة إلى اجمالي للمساهمين |

وكيل نيابة الأموال العامة
حمود مشاري الشامي

تحريراً في ٢٠١٧ / ٤ / ١٦ م






**ALDIYAR**
**LEGAL TRANSLATION**
Legal Translator/ Mahmood Subhi Nassar

**Public Prosecution**

**Public Funds Prosecution**

### Indictment

Filed by Public Prosecution to Criminal Court with regard to Felony No. 1496 / 2012 Public Finds Inventory registered under No. 23/ 2015 Criminal Investigation, to which the Felony Nos. 547/ 2013 and 1719/ 2014 Public Finds Inventory were joined.

The Public Prosecution accuses the following persons:

1- Maria Lazareva (Russian National – 44 years old – Managing Director of KGL Investment Company – residing at Salwa Plot No. 6 – Civil ID No. 273052805138)

2- Saeed Ismail Hajiya Dashti (Kuwaiti National – 61 years old- Member of Bord of Directors of KGL Investment Company - residing at Al Nozha, Plot No. 3, Abdul Rahman Al Fares St., House No. 3. Civil ID No. 256061501676)

3- Mohammed Abdul Mohsen Abdul Latif Al Asfour (Kuwaiti National – 71 years old- Previous Vice Chairman of Kuwait Ports Authority - residing at Al Nozha, Plot No. 1, Street No. 14, House No. 12. Civil ID No. 246081800017)

being within the period from the year 2007 till the year 2015, at the jurisdiction of the Criminal Investigation in State of Kuwait:

**<u>First: First Defendant: -</u>**

1- In her capacity as a Public Servant (Investment Manager at the Port Fund, in which the Public Institution for Social Security and Kuwait Ports Authority hold a capital share of more than 25%), the First Defendant embezzled an amount of KWD 129442 "One Hundred Twenty Nine Thousand Four Hundred Forty Two Kuwaiti Dinar" in addition to USD 6060 "Six Thousand sixty Kuwaiti Dinar", from the Port Fund, through taking advantage of her position as the sole authorized signatory for all accounts of The Port Fund inside the State of Kuwait to transfer the said amounts to her personal accounts, and to issue the relevant cheques, as shown in details in the papers, to herself, with the intent of taking over





these funds, and using it for purposes other than management or investment of the money of the Port Fund, as shown in the investigation reports.

2-In her above-mentioned capacity, she unjustly facilitated the embezzlement of an amount of KWD 719100 "Seven Hundred Nineteen Thousand One Hundred Kuwaiti Dinar" from the Port Fund by KGL Investment Company, through taking advantage of her position as the sole authorized signatory for all accounts of The Port Fund inside the State of Kuwait to transfer the said amount from the account of The Port Fund to KGL Investment Company account No. (0603723549201) with Al Ahli Bank of Kuwait, and after that she used her capacity as the CEO of KGL Investment Company to transfer this amount (through two transactions, first of which was made with amount of KWD 309000 "Three Hundred Nine Thousand Kuwaiti Dina", while the second was made in the amount of KWD 410000 "Four Ten Thousand Kuwaiti Dinar") to Al Morabitoon International Company which is owned by the Second Defendant/ Saeed Ismail Hajiya Dashti and others,  on its account No. (3160001319) with Burgan Bank, with the intent of facilitating embezzlement of these funds, and using it for purposes other than management or investment of the money of the Port Fund. This crime is intricately corelated with another felony, which is Money Laundering crime, i.e. 10th charge listed in the Indictment, as shown in the investigation reports.

3-In her above-mentioned capacity, she unjustly facilitated the embezzlement of total amount of KWD 1059000 "One Million Fifty-Nine Thousand Kuwaiti Dinar" and amount of USD 89764533.68 "Eighty-Nine Million Seven Hundred Sixty-Four Thousand Five Hundred Thirty-Three US Dollars and Sixty-Eight Cents" from the Port Fund by several companies (including KGL Investment, Kuwait and Gulf Link Company for Transport,  KGL International for Ports, Warehousing and Transport, KGL NM Holding, Petrolink Holding, KGL Asia (ROHQ), Capital Link Holding, KGL Petroleum, Clark Gateway Investment Group) through taking advantage of her position as the sole authorized signatory for all accounts of The Port Fund inside the State of Kuwait, as stated in detail in the papers, to transfer these amounts to the accounts of the above-mentioned companies inside and outside the State of Kuwait, as shown in detail in the papers, with the intent of facilitating embezzlement of these funds, and using it for purposes other than management or investment of the money of the Port Fund, as shown in the investigation reports.





4-In her above-mentioned capacity, she unjustly facilitated the embezzlement of total amount of KWD 307094.680 "Three Hundred Seven Thousand Ninety-Four Kuwaiti Dinar and Sixty-Eight Kuwaiti Fils" and amount of USD 401137.14 "Four Hundred One Thousand One Hundred Thirty-Seven Dollars and Fourteen Cents" from the Port Fund by MPC-GMO through taking advantage of her position as the sole authorized signatory for all accounts of The Port Fund inside the State of Kuwait, as stated in detail in the papers, to transfer these amounts to the above-mentioned company the Port Fund stopped investing with MPC – GMO in the financial year 2013 and after the expiry of the Fund Period on 13/12/2014, with the intent of facilitating embezzlement of these funds, and using it for purposes other than management or investment of the money of the Port Fund, as shown in the investigation reports.

5-In her above-mentioned capacity, she unjustly facilitated the embezzlement of a total amount of USD 20600000 "Twenty Million Six Hundred Thousand US Dollars" from the Port Fund by KGL International for Ports, Warehousing and Transport which is owned by the Second Defendant, Saeed Ismail Dashti and others, through taking advantage of her position as the sole authorized signatory for all accounts of The Port Fund inside the State of Kuwait, as stated in detail in the papers, to transfer the said amounts to the above-mentioned company in form of loan "Credit", for purposes other than the management or investment of the money of the Port Fund. Furthermore, she omitted this loan from the financial statements of the Port Fund with the intent of facilitating embezzlement of the amount, as shown in the investigation reports.

6-In her above-mentioned capacity, she unjustly facilitated the embezzlement of an amount of USD 900000 "Nine Hundred Thousand US Dollars" in addition to KWD 200000 "Two Hundred Thousand Kuwaiti Dinar" from the Port Fund by The Unified Transport Co (in Jorden) which is owned by the Second Defendant, Saeed Ismail Dashti and others, through taking advantage of her position as the sole authorized signatory for all accounts of The Port Fund inside the State of Kuwait, as stated in detail in the papers, to transfer the said amounts to the above-mentioned company in form of financial facilities, for purposes other than management or investment of the money of the Port Fund, and with the intent of facilitating embezzlement of amount, as shown in the investigation reports.





7- In her above-mentioned capacity, she unjustly facilitated the embezzlement of a total amount of KWD 350000 "Three Hundred Fifty Thousand Kuwaiti Dinar" from the Port Fund by The by the Second Defendant, Saeed Ismail Dashti, through taking advantage of her position as the sole authorized signatory for all accounts of The Port Fund inside the State of Kuwait, as stated in detail in the papers, to transfer the said amount to the account of the Second Defendant with Burgan Bank, as shown in papers, for purposes other than management or investment of the money of the Port Fund, and with the intent of facilitating embezzlement of this amount, as stated in the investigation reports.

8- In her above-mentioned capacity, she unjustly facilitated the embezzlement of a total amount of USD 79169662 "Seventy-Nine Million One Hundred Sixty-Nine Thousand Six Hundred Sixty-Two Dollars" from the GATEWAY Development Corporation, which is wholly owned by the Port Fund, by CLARK GATEWAY INVESTMENT GROUP, which is owned by the Second Defendant, Saeed Ismail Dashti, through taking advantage of her position as an investment manager to transfer the ownership of GATEWAY Development Corporation (including Sabah Al-Ahmad Logistics City and Medical City in Philippine projects which are owned by GATEWAY Development Corporation) to CLARK GATEWAY INVESTMENT GROUP, which is owned by the Second Defendant, without real consideration or return to the benefit of the Port Fund, and for achieving purposes other than management or investment of the money of the Port Fund, and with the intent of facilitating embezzlement of these amounts and the said projects, as stated in the investigation reports.

9- In her above-mentioned capacity, and in her capacity as an officer whose duty is to protect the interest of The Port Fund in investment of the funds of the Public Institution for Social Security, Kuwait Ports Authority, and other entities, she deliberately abused the public funds, and deliberately performed the money transactions of the Port Fund in a way which was detrimental to the interest and money of the Port Fund, through facilitating embezzlement of the money of the Port Fund, to herself and to the persons and companies stated in clauses from 2 till 8 above, in order to secure profits, which resulted in a damage to the Port Fund with a total amount of USD 166009756 "One Hundred Sixty-Six Million Nine Thousand Seven Hundred Fifty-Six Dollars" as stated in the investigation reports.




**ALDIYAR**
**LEGAL TRANSLATION**
Legal Translator/ Mahmood Subhi Nassar

10-The First Defendant committed the crime of Money Laundering to an amount of KWD 2089000 "Two Million Eighty-Nine Thousand Kuwaiti Dinar", through taking advantage of her position as the sole authorized signatory for all accounts of The Port Fund inside the State of Kuwait, to transfer the above-mentioned amount, in several transactions, from the accounts of The Port Fund, as stated in detail in the papers, to the account No. 060372354901 of KGL Investment with Al Ahli Bank of Kuwait. Furthermore, she hided and misrepresented these transactions and its sources by transferring these amounts from the account of the said company to several accounts (a total amount of KWD 719000 "Seven Hundred Nineteen Thousand Kuwaiti Dinar" to the account of Al Morabitoon International Company, which were subsequently transferred to the personal account of the First Defendant with Kuwait Finance House, an amount of KWD 1000000 "One Million Kuwaiti Dinar" to the account of Capital Link Co., an amount of KWD 20000 "Twenty Thousand Kuwaiti Dinar" to the account of Kuwait and Gulf Link Company for Transport, and an amount of KWD 350000 "Three Hundred Fifty Thousand Kuwaiti Dinar" to the account of the Second Defendant, Saeed Ismail Dashti) with Burgan Bank, Al Ahli Bank of Kuwait, HSBC, and Kuwait Finance House, as detailed in the papers; knowing that these funds are obtained from the crimes of embezzlement and facilitating embezzlement of the money of The Port Fund, with intent of hiding and misrepresenting the movement of these funds, its reality and sources, as shown in the investigation reports.

### Second: Second Defendant:

1- In his capacity as a public servant (Member of the Advisory Board and non-executive director in the Port Fund, in which the Public Institution for Social Security and Kuwait Ports Authority hold a capital share of more than 25% directly), the Second Defendant was an accomplice, by way of agreement and assistance, with the First Defendant, in the crimes of facilitating embezzlement of the public funds, stated in clauses from 2 till 9, before its occurrence, as he agreed with the First Defendant on transferring the funds, subject matter of the charges, to the beneficiary companies, which are owned by him and others, and to his personal accounts, as stated in detail in the papers. Further, the Second Defendant assisted the First Defendant in this crime by providing her with the information of these accounts with the banks inside and outside the State of Kuwait, as stated in the investigation





reports. After that the First Defendant transferred the embezzled amounts to these accounts with the intent of taking over the same. The crime was committed based on these agreement and assistance, as shown in the investigation reports.

2- The Second Defendant was an accomplice, with the First Defendant, in the crime of Money laundering, attributed to her in clause No. 10, before its occurrence, by way of agreement and assistance, as he agreed with her on transferring amounts to his accounts and accounts of the companies, stated in the above-mentioned charges, and assisted her by providing the information of these accounts, with the intent of hiding the funds movement, reality and sources, knowing that these funds are obtained from the crimes of embezzlement and facilitating embezzlement of the money of The Port Fund, as shown in the investigation reports.

## Third: Third Defendant:

In his capacity as a public servant (Vice-Chairman of Board of Director of Kuwait Ports Authority), whose duty is to protect the interest of Kuwait Ports Authority, for which he works, in the contract concluded with KGL Investment Company regarding subscription to the Port Fund, the Third Defendant intentionally contracted with KGL Investment, in a way which damaged the interest of  Kuwait Ports Authority, in order to secure a profits for others. The Third Defendant approved the process of calculating the contribution of Kuwait Ports Authority in the Fund retroactively from the date of Fund Establishment, rather than the date of the actual contribution of Kuwait Ports Authority in 2010. This resulted in incurring liabilities on the part of Kuwait Ports Authority, represented in management fees charged by the Investment manager (KGL Investment Cayman) for the years 2007, 2008 and 2009 which reached an amount of USD 3898260 "Three Million Eight Hundred Ninety-Eight Thousand Two Hundred Sixty US Dollars". The Defendant achieved his purpose by deducting this amount from the contribution of Kuwait Ports Authority in The Port Fund, as shown in the investigation reports.





ALDIYAR
LEGAL TRANSLATION
Legal Translator/ Mahmood Subhi Nassar

الــــديـــار
للـترجمة القـانـونيـة
المـترجم القانوني / محمودصبحي نصار

### Accordingly,

The defendants have committed the felonies stated in Articles (48-II and III, and 52/1) of Penal Law promulgated by Law No. 16 of 1960, Article No. (43/ A, E) of Law No. 31 of 1970 amending some provisions of Penal Law No. 16 of 1960, articles Nos. (2/C, 3, 10, 11 and 16) of Law No. 1 of 1993 on the Protection of Public Funds, and articles Nos. (1, 2/1, 2, 6, 7) of Law No. 35 of 2002 on Anti-Money Laundering.

### Therefore,

The Public Prosecution petitions the Criminal Court to punish the defendants according to the above-mentioned articles. Further, the prosecution evidence is attached to this Indictment for your reference.

**First Attorney General**

**Judge**

Sultan Majed Bogroh

//*signed*//

Date: 26/ 07/ 2017



Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. هاتف: ٢٢٢١٥٥٧ / ٢٢٢٢٧٢٢، فاكس : ٢٢٨٣٦٧ ، دبي. ص.ب:٧٧٩٤،أ.ع.م.
Mob.: 050-6284563      Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com      متحرك : ٠٥٠-٦٢٨٤٥٦٣





**ALDIYAR**
**LEGAL TRANSLATION**
Legal Translator/ Mahmood Subhi Nassar

**Public Prosecution**

**Public Funds Prosecution**

**List of Prosecution Evidence**

**In Case No. 1496/ 2012 Public Funds Inventory**

**Registered under No. 23 /2016 Criminal Investigation Crimes**

**To which the two felonies Nos. 547 / 2013 and 1719/ 2017 Public Funds inventory**

**Were joined**

-------------------------------------------------------------------------

**First: Statement of Witnesses:**

First Witness: Mona Abdel Moneam Mahmoud, Egyptian National, 38 years old, prisoner of the Public Prison, ex-employee of KGL Investment

Witnesses That

Because of her work in KGL Investment during the period from 01/01/2007 till 30/03/2010, she found that KGL Investment -a Kuwaiti Shareholding Closed Company – has established The Port Fund in Cayman Islands, as a subscription agent and investment manager, after obtaining License No. 24/ 2007, which was issued on 12/05/2007 by Ministry of Commerce and Industry. The subscription prospectus stated that the Port Fund aims to achieve a return rate of 30% on its total investments, by providing opportunities for investors to develop businesses related to ports and other related investments.

The witness also added that KGL INVESTMENT CAYMAN LTD undertook the management of this Fund, while HSBC Bank Middle East Limited was an investment trustee. Further, the Port Fund had two accounts in the above





mentioned bank, first of which was Account No. 001004001001 in Kuwaiti Dinar, and the second was Account No. 001004001160 in US Dollar.

Further, the witness stated that KGL Investment circulated the subscription prospectus of the Fund units, which included the previously shown distributions. The prospectus stated that the contributions of Public Institution for Social Security and Kuwait Ports Authority in the capital of the fund shall be USD 40400000 "Forty Million Four Hundred Thousand US Dollar" and USD 85 million "Eighty-Five Million US Dollar" respectively.

The Kuwait Ports Authority was represented in signing on the subscription contract by Vice Chairman of Kuwait Ports Authority, i.e. the Third Defendant/ Mohammed Abdul Mohsen Abdul Latif Al Asfour, while KGL Investment was represented in signing by its Chairman, Yaqoub Abdullah Al-Wazzan.

The subscription contract of Kuwait Ports Authority states in its preamble that the Fund shall achieve a return of 20% on its total investment, in violation of the license issued to the Fund Manager, and the contents of subscription prospectus used in marketing the units of this Fund to Kuwait Ports Authority.

Furthermore, the witness stated that by reviewing the method of establishing the Fund, the method of subscription of the Kuwait Ports Authority in it and how the money of the Fund is being managed and disposed of, she discovered several financial irregularities which included embezzlement of the money of the Fund, damaging the profits of contributions of Kuwait Ports Authority and Public Institution for Social Security, and unjustly taking over the same.

As KGL Investment Company "Investment Manager" used fraudulent means to persuade Kuwait Ports Authority to subscribe to the capital of the Port Fund, when it showed that the company and some investors have paid their contribution in the units of that Fund.

KGL Investment Company also showed great amounts of cash flow in the fund, and promoted various and distinct activities of the fund, and its achievement of return, which is contrary to the truth.

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. ،أ.ع.م ،دبي، ٧٧٩٤:ص.ب ،٢٢٨٣٦٧ : فاكس ،٢٢
Mob.: 050-6264563        Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com







Further, KGL Investment Company didn't deposit its share in the capital of The Port Fund, i.e. USD 20 million "Twenty Million US Dollar", which represents 21.54% of the total capital, as established by the statement of account issued by Investment Trustee (HSBC Bank) on 30/08/2007, which showed that the said company deliberately defraud the subscribers of this Fund, for the purpose of soliciting, taking over and squandering their contributions.

She also witnesses that KGL Investment Company lent one of its subsidiaries, i.e. KGL International for Ports, Warehousing and Transport, an amount of USD 20600000 "Twenty Million Six Hundred Thousand US Dollars", by transferring the said amount from the money of subscribers of the Port Fund, for purposes other than the purposes for which the Fund was established.

The Investment Manger also misrepresent the financial position of the Port Fund, to establish the marketability, and upturn of the Port Fund and that it generated profits, which is contrary to the truth.

The witness also added that she found out that Maria Lazareva (Managing Director of Al Morabitoon International Company) and Saeed Ismail Dashti (Member of Bord of Directors of KGL Investment Company, and one of the key owners of the Parent company, KGL Co, which owns Al Morabitoon International Company) performed money laundering transactions by using the two accounts of the Port Fund Nos. (001004001160) and (001004001001) with HSBC Bank and the account of Al Morabitoon International Company No. 0603723549201 with Al Ahli Bank of Kuwait, in which the money of the Fund is deposited, in transferring huge amounts from the above-mentioned three accounts to other accounts, including the personal account of the defendant/ Maria Lazareva, No. 221010013427 with Kuwait Finance House, another account with the same bank under No. 220120025232, and other accounts as stated in the investigation reports, in order to carry out money laundering transactions, within the period from 20/06/2010 till 01/02/2012. Such transfers achieved returns for the First Defendant with total amount of KWD 3000000 (Three Million Kuwaiti Dinar):

- **First Transaction**, dated 20/06/2010, was a bank transfer made from KGL Investment Company's account to Al Morabitoon International





Company (a company owned by the Second Defendant/ Saeed Ismail Dashti in amount of KWD 400,000 "Four Hundred Thousand Kuwaiti Dinar" by an order from the Defendant/ Maria Lazareva.

- **Second Transaction**, dated 15/08/2010, was a transfer made by the said defendant/ Maria Lazareva, in amount of KWD 719,117,809 "Seven Hundred Nineteen Thousand One Hundred Seventeen Dinar and Eight Hundred Nine Fils" from the Port Fund's account No. 001004001160 with HSBC bank to the KGL Investment Company's account No. 0603723549201 with Al Ahli Bank of Kuwait. After that, she transferred such amount from the above-mentioned KGL Investment Company's account through two transfers, dated 26/08/2010, the first of which was made with amount of KWD 309,100 "Three Hundred Nine Thousand And Hundred Kuwaiti Dinar", and the second was made with amount of KWD 410,000 "Four Hundred Ten Thousand Kuwaiti Dinar" to the account of Al Morabitoon Company with Burgan Bank. On 15/09/2010, the Al Morabitoon International Company transferred these two amounts to Maria Lazareva's account No. 220120025232 with Kuwait Finance House.
- **Third transaction** was a group of money transfers in which the defendant Maria Lazareva used her account No. 2060251316 with Burgan Bank to transfer monies to her accounts in USA, Russia and Switzerland in addition to accounts of other persons in Dubai, Egypt and France.
- **Fourth Transaction**, dated 04/10/2010, was a transfer made by the defendant/ Maria Lazareva in an amount of KWD 350,000 "three hundred fifty thousand dinar" from the Port Fund's account No. 001004001160 with HSBC bank to Mr. Saeed Ismail Dashti's account No. 02060121731 with Burgan Bank.

She also added that there is no real cause for making these transfers, except for that the defendant/ Maria Lazareva has used the funds of The Port Fund in complex and complicated money transactions to hide the fact that she embezzled the money of The Port Fund in cooperation with the Second Defendant/ Mr. Saeed Ismail Dashti.





Second Witness: Fii Dehyran Aba Al Khail, Kuwaiti national, 27 years old, an attorney for Al Ahli Bank of Kuwait, and her address is Ardiya, Plot No. 4, St. 1, House No. 48, Tel.: 97777902

## Witnesses

That the current account No. (0603723549201) is owned by KGL Investment Company has two sub-accounts Nos. 0603723549001 and 0603723549002 respectively. On 20/02/2007, the main account was opened by Mr. Yaqoub Abdullah Al-Wazzan (Chairman of the Board of Directors of KGL Investment Company). Mr. Yaqoub Abdullah Al-Wazzan and Maria Lazareva were the authorized signatories of the above-mentioned company's account under an authorization issued by the Chairman of Board of Directors of the company, Mr. Yaqoub Al-Wazzan. All transactions made on the said account included money transfers, debit of cheques, cash deposit and cash withdrawal as stated in the account statement. The account statement shows the transactions' date, type, value and total balance. At the end, he submitted the above-mentioned account statements, information of authorized signatories, an account opening form and a copy of Certificate issued by Ministry of Commerce and Industry dated 08/04/2013 stating that Mr. Yaqoub Al-Wazzan is the Chairman of board of directors of KGL Investment Company and Maria Lazareva is the Vice-Chairman and Managing Director of the said Company.

Third Witness: Al Anood Badr Al Abdel Raziq, Kuwaiti National, 49 years old, an attorney at Burgan Bank, and her address is Abdullah Al Salim Area, Plot No. 1, Daraa, Sanaa, House No. 45, Tel.: 22988728

## Witnesses that

Maria Lazareva is a customer at the bank under the current account No (2060251316) opened on 13/06/2004, which is managed solely by the said person in her capacity as the account holder. Burgan Bank used to receive the transaction orders on the account from the customer, and carry out the same, As established in the account statement which shows the account

  

debit and credit transactions from 01/01/2007 to 31/12/2014. Where Saeed Ismail Dashti, the holder of current account No. (2060121731), opened on 24/12/2001, which is managed solely by the said person in his capacity as the account holder. Burgan Bank used to receive the transaction orders on the account from the customer, and carry out the same, As established in the account statement which shows the account debit and credit transactions from 01/01/2007 to 31/12/2014. In addition, Al Morabitoon International Company for General Trade and Contracting is a customer in the bank under the current account No. (3160001319), opened on 21/09/2009, by Mr. Fouad Ismail Dashti. Mr. Fouad Ismail Dashti and Mr. Saeed Ismail Dashti are the authorized signatories of this Company as stated in the account opening form. She added that the statement of the account of the Defendant/ Saeed Ismail Dashti, shows that on 04/10/2014 he has received an amount of KWD 350,000, while Al Morabitoon International Company received an amount of KWD 719,100 "Seven Hundred Nine Thousand And Hundred Dinar" on 26/08/2010 in its above-mentioned account from KGL Investment Company's account with Al Ahli Bank of Kuwait through two transactions, first of which was made with amount of KWD 410,000 and the second was made with amount of KWD 309,100. On 15/09/2010, Al Morabitoon International Company transferred this amount from its said account to Maria Lazareva's account No. 221020025232 with Kuwait Finance House. At the end, the witness submitted the supporting documents in this regard and mentioned account statements.


Fourth witness: Sayed Waleed Khalid Abdel-Raziq, Kuwaiti National, 30 years old, Manager of Financial Institutions at HSBC Bank, and his address is Al Sora, plot No. 6, St. 10, House No. 20.

Witnesses that

The Port Fund is a customer at the Bank under the two accounts Nos. (001004001160) and (001004001001). The first account is denominated in the US Dollar currency and the second account is denominated in the Kuwaiti Dinar currency. The first account was opened on 15/07/2007 and the second account was opened on 04/05/2009 by Ms. Maria Lazareva in her capacity as the CEO of the same. Accordingly, she has signed the account





ALDIYAR
LEGAL TRANSLATION
Legal Translator/ Mahmood Subhi Nassar

opening applications and managed the two accounts solely. Money transfers from the said two accounts has been carried out under transfer orders issued by Maria Lazareva. These orders contained her signature, transfer amount, and the beneficiary account name and number as stated in the account statement. As per the statement of the USD account, it is found that this account started with a balance of USD 3,595,980 "Three Million Five Hundred Fifty-Nine Thousand Nine Hundred Eighty US Dollar" on 15/07/2007. Later, many withdrawal and deposit transactions were being been carried out on the said account until it's closure on 12/03/2016 with a balance of USD 23.56 "twenty-three dollar and sixty-five cent". As for the KWD account, the opening balance was KWD 10,000 "ten thousand dinar". Later, many withdrawal and deposit transactions were being carried out on the said account until its closure on 12/03/2016 with a balance of KWD 0 "zero". The witness submitted copies of above-mentioned account statements including the transfer orders and their different data in addition to two accounts opening applications.

Fifth Witness: Ahmed Abdul-Mohsen Al-Qutifi, Kuwaiti National, 28 years old, an attorney at the Kuwait Finance House, his address: Kaifan, Plot No. 3, Street No. 36, House No. 40, T: 997228559,

Witnesses that

Defendant, Maria Lazareva, is a customer of Kuwait Finance House under the current account No. 221010013427, and the saving account No. 221020025232, both in the Kuwaiti dinar currency, in her capacity as the holder and authorized signatory of the two mentioned accounts.

The first account was opened on 25th of November, 2010 by the above-mentioned customer in accordance with a certificate issued by KGL Investment Company certifying that the she is the Vice Chairman and the Managing Director, working thereof in return for a monthly salary KWD 8500 without mentioning any other sources of her income. The statement of the said account showed the first transaction has been done on 25th of

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. ،م.ع.أ ،يبد، ٧٧٩٤ :ب.ص ، ٢٢٨٣٦٧٨ :فاكس ،٢٢٢٢٢٢٢
Mob.: 050-6264563        Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com





Legal Translator/ Mahmood Subhi Nassar

November, 2010; such transaction was a kind of two internal transfers that they received from her other account with Kuwait Finance House No. 221020025232, the first was in an amount of KWD 511394, and the second was in an amount of KWD 511394,862.

Then, the withdrawal and deposit transactions have continued on the account until the last transaction dated 22nd of May, 2013 in an amount of KWD 5825.

Maria Lazareva has been fully aware of all these transactions.

The statement also mentioned that an amount of KWD 719000 has been transferred from Burgan Bank to the account of the above-mentioned customer on 15th of September, 2010 to her account No. 221020025232.

The two statements of Maria Lazareva's account, previously mentioned, as well as the identification documents required from the bank to open such accounts have been submitted.


Sixth Witness: Latifa Daoud Bouhaimmed, Kuwaiti National, 39 years old, an attorney for Al Ahli bank of Kuwait, her address: Mishref, Plot No. 2, Street No. 4, House NO. 19, T.: 1867000, extension: 2067,

Witnesses that


A number of 21 money transactions have been executed in the account of KGL Investment Company in Al Ahli bank of Kuwait No. 0603723549201, related to the Port Fund subject matter of the present incident, among these transactions:

**The transaction dated 26th of October, 2010**, which is a money transfer in an amount of KWD 20000 from the aforementioned account of KGL Investment Company to the account of Kuwait and Gulf Link Company for Transport No. 001001502001 with HSBC Bank, Exhibit No. (19).

**The transaction dated 04th of October, 2010**, which is a money transfer in an amount of KWD 350000 from the aforementioned account of KGL

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. ،م.ع.أ ،يبد ،٧٧٩٤ :ب.ص ،٢٢٨٣٦٧ :سكاف ،٢٢ Mob.: 050-6284563       Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com





Investment Company to the account of the Second Defendant Saeed Ismail Dashti No. 2060121731 with Burgan Bank, Exhibit No. (16).

**The transaction dated 15th of August, 2010**, which is a money transfer from the account of The Port Fund in an amount of KWD 719117,809 "Seven hundred and nineteen thousand, one hundred and seventeen dinars, eight hundred and nine Kuwaiti Fils" to the aforementioned account of KGL Investment Company with Al Ahli Bank of Kuwait as evidenced from the transfer notice, Exhibit No. (08)

**The transaction dated 26th of August, 2010**, which is a money transfer in an amount of KWD 309100 " Three hundred and nine thousand and one hundred dinars" from the aforementioned account of KGL Investment Company to the account of Al Morabitoon International Company No. 3160001319 with Burgan Bank, as evidenced from the transfer order signed by Maria Lazareva dated 25th of August, 2010, Exhibit No. (09).

**The transaction dated 26th of August, 2010**, which is a money transfer in an amount of KWD 410000 " Four hundred and ten thousand Kuwaiti dinars" from the aforementioned account of KGL Investment Company in Al Ahli bank of Kuwait to the aforementioned account of Al Morabitoon International Company with Burgan Bank, as evidenced from the transfer order signed by Maria Lazareva dated 25th of August, 2010, Exhibit No. (10).

**The transaction dated 02nd of September, 2010** which is a money transfer in an amount of KWD 1000000 "One million Kuwaiti dinars" from the aforementioned account of KGL Investment Company in Al Ahli bank of Kuwait to the account of Capital Link Company No. 0603755991001 with Al Ahli bank of Kuwait, as per the transfer order issued by Maria Lazareva, Exhibit No. (13).

Seventh Witness : Hamad Ahmed Al-Olayan, Kuwaiti National, 55 years old, Director of the Department of Economic and Service Facilities at the State Audit Bureau, his address: Al Rehab, Plot No. 02, Street No. 18, House NO. 03, T.: 99856399, extension: 2067, hereby,

Witnesses that





Pursuant to the two assignments issued to him by the Public Prosecution to prepare two reports on the incident in question; therefore, Mr. Hamad Ahmed Al-Olayan has developed the report attached to the investigations, then, the same has annexed his modified report on 10th of November, 2016. In addition, Mr. Hamad has prepared the report dated 15th of February, 2017 that has been attached to the investigations as well.

Mr. Hamad certified that he has drawn up the information set out in the two reports referred to above after having reviewed the reports of the State Audit Bureau issued in this regard. In addition to the assignments mandated to the Bureau by the National Assembly to consider the incident of the contribution of the Kuwait Ports Authority in the Port Fund, to review the documents, exhibits, and statements of account provided by the Public Prosecution, and to examine the papers submitted by the Kuwait Ports Authority and the Public Institution for Social Security.

It became crystal clear to him that during the period from 2007, (KGL Investment Company) has established the Port Fund in the Cayman Islands, and then submitted to the relevant authorities in the State of Kuwait (i.e. the Ministry of Trade and Industry and the Central Bank of Kuwait) a request for approval to market its units inside Kuwait. The prospectus approved by the Marketer stated that the Fund aims to achieve an annual return of 30% on the total investment of the Fund by giving investors an opportunity to subscribe to its shares with a view to work on developing international ports and investments related to this facility.

The approval of these authorities has been issued in accordance with Resolution No. 24/2007 on 12th of May, 2007 with an authorized capital of USD 500 million.

Accordingly, (KGL Investment Company) assigned one of its fully owned companies, (KGL Investment Cayman), to be the investment manager, in addition to marketing its units in the State of Kuwait.

The share of the Kuwait Ports Authority and Public Institution for Social Security was (USD 85 million) – for the first- and (USD 40400000)- for the latter; i.e. with a total amount of (USD 125400000) of the value of the paid-up capital that amounts (USD 166009756). The share of the Public Institution for Social Security to the capital of the Fund since its

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. , ‫م‬.‫ع‬.‫ا‬ ، ‫دبي‬، ٧٧٩٤ :‫ب‬.‫ص‬، ٢٢٨٣٦٧٨ :‫فاكس‬ ، ٢٢٢٢٧٢٢ ‫تليفون‬
Mob.: 050-6264563     Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com





establishment was 56%, in 2010, the share of the Kuwait Ports Authority has been added, thus, the share of the public funds therein reached 74%.

The amounts of the shareholders have been deposited into the fund's account with HSBC, Kuwait Branch, account No. (001004001160), and in Al Ahli bank of Kuwait, account No. (0603493283001).

The First Defendant, Maria Lazareva, has marketed the units of the Fund, in her capacity as the Executive Chairman of KGL Investment Company, the Investment Manager of KGL Investment Cayman, and the authorized signatory in the accounts of the Port Fund, in cooperation with a board member of (KGL Investment Company) named Saeed Ismail Dashti, one of the biggest owners therein, in his personal capacity and on behalf of 776 of the shareholders in (KGL Investment Company) in addition to owning Al Morabitoon International Company, which is one of the owners in KGL Investment Company, by referring the issue of the Fund to the Council of Ministers.

Therefore, a letter by the Secretary of the Council of Ministers has been issued on 29th of June, 2010 regarding the offer submitted by (KGL Investment Company) to the Kuwait Ports Authority to have a share in the Port Fund.

The marketing period lasted one month without any commitment by the company (KGL Investment), during or even after the end of the Fund term, to pay the value of its share in the capital of the Fund, which amounts USD 20 million, as well as the contribution of one of its subsidiaries (Petro Link Holding Company) of USD 3 million, as provided in all the statements of Fund account attached to his report.

The First Defendant, Maria Lazareva, who is the investment manager therein, and Second Defendant, Saeed Ismail Dashti, have caused this jointly by submitting a financial statement of the Fund that was not true since it shows the payment of these shares.

He added that the Kuwait Ports Authority has a share in the Port Fund under the subscription contract dated 14th of July, 2010 in an amount of USD 50 million, and the said contract has been signed by the authorized signatory, the Vice Chairman of company and the Third Defendant named Mohammed

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. ٢، فاكس : ٢٢٨٣٦٧٨ ،دبي : أ.ع.م. ،ص.ب.: ٧٧٩٤:

Mob.: 050-6284563      Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com





ALDIYAR
LEGAL TRANSLATION
Legal Translator/ Mahmood Subhi Nassar

الــتـرجـمة القـانـونـيـة
المترجم القانوني / محمودصبحي نصار

Abdul Mohsen Abdul Latif Al Asfour, who agreed to reduce the Authority's return rate from the Fund to be 20% in violation of the prospectus, without explaining the reasons for such reduction. By doing so, he neglected the fact that the Authority aimed from this contract to merely enrich its financial resources.

The documentary examination proved that the First Defendant, Maria Lazareva, has embezzled and taken over an amount of KWD 129442, and USD 6060 of the funds of the Port Fund through money transfers executed on 26th of August, 2010, 13th of December, 2010 and 31st of October, 2011 with a total amount of (KWD 27000, KWD 442, and USD 6050) respectively. In addition, (check No. 214454 in an amount of KWD 5000, check No. 214459 in an amount of KWD 10000, check No. 214465 in an amount of KWD 5000, and check No. 214469 in an amount of KWD 18000) drawn on the Port Fund account No. 001004001001 were issued. In addition, checks (No. 06 in an amount of KWD 5000, No. 09 in an amount of KWD 18000, No. 19 in an amount of KWD 18000, No. 22 in an amount of KWD 5000, and No. 35 in an amount of KWD 18000) drawn on the Port Fund account No. 493283002 with Al Ahli bank of Kuwait were issued. First Defendant, Maria Lazareva, has taken advantage of her position and her capacity as the sole authorized signatory in such accounts within the State of Kuwait, and transferred these amounts to her account.

The documentary examination also proved that the First Defendant, Maria Lazareva, has taken advantage of her position and her capacity as the sole authorized signatory in the Fund accounts, and she has facilitated the embezzlement and taking over the funds of the Fund in favor of subsidiary companies and affiliates of the Investment Manager (KGL Investment Cayman that is fully owned by KGL Investment Company). These companies are (KGL Investment Company, Kuwait and Gulf Link Company for Transport, KGL International for Ports, Warehousing and Transport (KGL IP), KGL NM Holding, Petro Link Holding Company, KGL Asia ROHQ, Capital Link Holding, KGL Petroleum, and Clark Gateway Investment Group). The total embezzled amounts were about KWD 1059000 (one million fifty-nine thousand Kuwaiti dinars) and a total amount of USD 89764533,68 (Eighty nine million seven hundred and sixty four thousand five hundred and thirty three US dollars and sixty eight US cents); through money transfers from the

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E.   ، دبي، أ.ع.م.   ، ص.ب: ٧٧٩٤   ، فاكس : ٢٢٨٣٦٧٨   ، هاتف : ٢٢٨٣٦٧
Mob.: 050-6284563          Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com

  

ALDIYAR
LEGAL TRANSLATION
Legal Translator/ Mahmood Subhi Nassar

Port Fund accounts mentioned above to the accounts of the companies with the banks detailed in his report inside and outside Kuwait, as detailed below:

| Beneficiary Name | Amount in KWD | Amount in USD |
|---|---|---|
| KGL Investment | 1,039,000 | 34,519,412 |
| Kuwait and Gulf Link for Transport | 20,000 | - |
| KGL International for Ports, Warehousing and Transport (KGL IP) | - | 20,600,000 |
| KGL NM Holding | - | 17,711,763 |
| Petro Link Holding Company | - | 1,000,000 |
| KGL Asia ROHQ | - | 6,700,000 |
| Capital Link | - | 143,358,68 |
| KGL Petroleum | - | 7,090,000 |
| Clark Gateway Investment Group | - | 2,000,000 |
| Total | 1059000 | 89764533,68 |

Mr. Hamad also added that among the transactions referred to above is using the funds of the Port Fund for purposes other than the designated purpose, investments or management by the First Defendant, Maria Lazareva. When Maria Lazareva granted a "credit" loan to a related party, which is KGL International for Ports, Warehousing and Transport (KGL IP), bearing in mind that the said company is owned by the Second Defendant Saeed Ismail Dashti and others, through a money transfer ordered by Maria Lazareva from the account of the Port Fund in HSBC Bank No. 001004001160 in an amount of USD 20600000 (twenty million six hundred thousand US dollars) on 26th of August, 2007. The said amount has been deposited in account No. 0002426590301 of KGL International for Ports, Warehousing and Transport (KGL IP) with the National Bank of Kuwait so that KGL IP could use it in its deal with the Struggling Damietta International Port Company in the Arab Republic of Egypt, Without having a contract stating the conditions for granting such loan or the reason of granting the same.

It was revealed to Mr. Hamad in light of the financial statements of the Port Fund that the term of this loan was five years, with a simple interest of 28% per annum. However, the Defendant, Maria Lazareva, at a later date, has cancelled the loan in full along with all its due interests without submitting

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. م.ع.أ ،يبد، 7794 :ب.ص، 2283678 :سكاف ، 2221557 / 2222722 : فتاه
Mob.: 050-6284563        Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com





Legal Translator/ Mahmood Subhi Nassar

any proof of any corresponding assets in the Fund's financial statements, to the detriment of the Port Fund sums and to facilitate the embezzlement of such amount by the Second Defendant/ Saeed Ismail Dashti.

It was also evidenced from the examination that the, Maria Lazareva, in her capacity as the Investment Manager of the sums of the Port Fund, has entered into an investment in the name of the Port Fund with a company named MPC- GMO in Europe which ended with an incurred loss reached USD 15280973 by the end of the investment term in the fiscal year 2013. Moreover, the Defendant, Maria Lazareva was not satisfied with these losses, but instead she used her position and has taken advantage of her position and her capacity as the sole authorized signatory in such accounts of the Port Fund inside the state of Kuwait and transferred, during the period from 31st of March, 2014 to 09th of July, 2015, amounts from the accounts No. 002493283001 and 002493283001 in the National Bank of Kuwait, after the end of the investment term with MPC- GMO with a total amount of USD 401137,14 and KWD 307094,680 to facilitate the embezzlement of MPC-GMO of these funds and using it in purposes other than the purposes of managing and investing the Fund sums.

It was also evidenced from the examination that, on 27th of June, 2009, the Investment Manager, Defendant Maria Lazareva, has provided financial facilities for a company benefiting, the Second Defendant, Saeed Ismail Dashti (which is the Unified Transport and Logistics Co. in Jordan), as a bank guarantee in an amount of USD 900000, for purposes other than the purposes of managing or investing the sums of the Fund. First Defendant, Maria Lazareva, has taken advantage of her position and her capacity as the sole authorized signatory in the Fund accounts and transferred the value of such guarantee to the beneficiary company's account with the Jordan Kuwait Bank. In addition, the beneficiary company has refrained from repaying the value of this guarantee to the Port Fund to facilitate the embezzlement of such amount by the Second Defendant Saeed Ismail Dashti.

The examination also indicated that the Defendant Maria Lazareva has transferred an amount of KWD 200000 to the previously mentioned company (the Unified Company). By doing this, she has taken advantage of her position and her capacity as the sole authorized signatory in the Fund accounts, for purposes other than the purposes of managing or investing the





ALDIYAR
LEGAL TRANSLATION
Legal Translator/ Mahmood Subhi Nassar

sums of the Fund to facilitate the embezzlement of such amount by the Second Defendant Saeed Ismail Dashti, who represented (the Unified Company) in signing the Guarantee Agreement referred to above on 27th of June, 2009.

It was also evidenced from the examination that the Defendant, Maria Lazareva, has taken advantage of her position and her capacity as the sole authorized signatory in the Fund accounts by transferring an amount of KWD 719100 on 26th of August,2010 to the account of Al Morabitoon International Company, which is owned by the Second Defendant Saeed Ismail Dashti, for no reason, and for purposes other than the purposes of managing or investing the sums of the Fund with a view to facilitate the embezzlement of such amount by the Second Defendant referred to above, a detailed below:

| Date | Amount in KWD | Telex Transfer No. |
|------|---------------|--------------------|
| 26/08/2010 | 3,901,00 | BR07002010020066 |
| 26/08/2010 | 410,000 | BR07002010020069 |
| Total | 719,100 | |

It was also evidenced from the examination that the Defendant, Maria Lazareva, has taken advantage of her position and her capacity as the sole authorized signatory in the Fund accounts inside the state of Kuwait and transferred an amount of KWD 350 thousand from the account of The Port Fund to the account of the Second Defendant, Saeed Ismail Dashti, in Burgan Bank, referred to in his report.

Likewise, the Defendant Maria Lazareva, in her capacity as the sole authorized signatory in all the accounts of the Port Fund, has transferred a total amount of KWD 121000 to the Second Defendant, Saeed Ismail Dashti through a money transfer on 26th of August, 2010 in an amount of KWD 27000 from the Port Fund account No. 001004001160 in HSBC Bank. The said Defendant has also issued check No. 214453 in an amount of KWD 9000, check No. 214458 in an amount of KWD 10000, check No. 214464 in an





amount of KWD 7000, and check No. 214468 in an amount of KWD 18000 drawn on the Port Fund account No. 001004001160 in HSBC Bank and issued check No. 03 in an amount of KWD 18000, check No. 05 in an amount of KWD 7000, check No. 18 in an amount of KWD 18000, and check No. 20 in an amount of KWD 7000, for purposes other than the purposes of managing or investing the amounts of the Port Fund and with a view to facilitate the embezzlement of such amounts.

Having examined the investments of the Port Fund, Mr. Hamad found out that the Fund has some investments in the Philippines; these investments are two projects (the Medical City and Sabah Al-Ahmad Logistics City). They were contracted upon by and between a company established by the Defendant, Maria Lazareva, to complete the said project called Global Gateway Development Corporation and the Philippines Government on the basis of the B.O.T system for 50 years.

As a result, the Fund Manager, the Defendant Maria Lazareva injected huge sums of money totaling USD 79169662 directly to start the project. However, the said project has never been actually completed or gain any profits or revenues thereof till the end of the Fund term on 31st of December, 2014.

He added that this was accompanied by a deficit of the liquidity of the Port Fund. Therefore, the Defendant, Maria Lazareva, in cooperation with the Second Defendant, Saeed Ismail Dashti, have transferred the title deed of Global Gateway Development Corporation (the owning company of the aforesaid projects) from the Port Fund and transferred a percentage of 100% of its shares to Clark Gateway Investment Group, owned by the Second Defendant Saeed Ismail Dashti, as evidenced from the letter sent from the Second Defendant Saeed Ismail Dashti on 11th of April, 2014 to the Defendant Maria Lazareva in which the Second Defendant confirmed the completion of the Sale process.

He also added that the Defendant, Maria Lazareva was not satisfied with transferring the ownership of the two projects, referred to above, to the Second Defendant Saeed Ismail Dashti to embezzle it unjustly, but also transferred an amount of USD 2 million to Clark Gateway Investment Group, which is owned by the Second Defendant Saeed Ismail Dashti, with a view to facilitate the embezzlement of The Port Fund sums and assets, which is





estimated by a total of USD 81169662 by the aforementioned Second Defendant.

The examination also confirmed the approval of the Vice Chairman of Kuwait Ports Authority, Mohammed Abdul Mohsen Abdul Latif Al Asfour, the Third Defendant, to consider the contributions of Kuwait Ports Authority in the Port Fund retroactively since 2007, not as of its actual contribution in July, 2010. As a result, the administration fees of the Fund shall be calculated in favor of the Fund Manager (KGL Investment Cayman) retroactively for 2007, 2008, and 2009. The said fees reached USD 3898260, causing physical damage and great loss to the Kuwait Ports Authority. He explained this behavior as fraud by the Investment Manager, the Defendant Maria Lazareva in collusion with the Third Defendant, Mohammed Abdul Mohsen Abdul Latif Al Asfour and the Second Defendant Saeed Ismail Dashti. This can be proved by the contribution of the Third Defendant, Mohammed Abdul Mohsen Abdul Latif Al Asfour in commercial companies with the Second Defendant Saeed Ismail Dashti (such as National Cleaning Company K.P.S.C. established on 21st of March, 1979), (National Sewerage Company LLC established on 08th of January, 1989) and (Sabhan Agricultural Contracting established on 6th of September 1989). Thus, it is clear that the Investment Manager, the Defendant Maria Lazareva has followed the reevaluation method with a view to get more of the performance fees; bearing in mind that the Second Defendant, Saeed Ismail Dashti, was fully aware of that. In addition to his personal benefit from the sums and assets of the Port Fund that have been transferred by the Defendant Maria Lazareva to him and to the companies owned by him as he said in his statement previously. He concluded that such acts have caused harm to the funds of The Port Fund and the contributions of the Public Institution for Social Security and Kuwait Ports Authority in an amount of USD 166009756 (one hundred sixty-six million nine thousand seven hundred fifty-six US dollars).

**Remarks of the Public Prosecution:**

1. The Defendant, Maria Lazareva, has admitted during the investigations that she was the Executive Chairman of KGL Investment Company and the one who proposed the idea of establishing the Port Fund. She also admitted that the aforementioned company has established KGL Investment Cayman to be the Investment Manager of the Port Fund and to be fully owned by it. In



**ALDIYAR**
**LEGAL TRANSLATION**
Legal Translator/ Mahmood Subhi Nassar

addition, she, i.e. the Defendant, is the sole authorized signatory in all the bank accounts of the Port Fund. She also stated that KGL Investment Company has never established an investment fund before the Port Fund and that she, i.e. the Defendant, is the one who requested the preparation of the prospectus of the fund, and that the Fund term has ended on 31st of December, 2014 without distributing any profits. She also admitted that the sums existing in the accounts of the Fund are less than its capital. Maria Lazareva stated that she is the one who granted the loan that amounts USD 20600000 (twenty million six hundred thousand US dollars) to KGL International for Ports, Warehousing and Transport (KGL IP). She also acknowledged that the Second Defendant, Saeed Ismail Dashti, is the Chairman of the Advisory Board of the Port Fund, and the non-executive director therein.

2. After having examined the photocopy of the (check No. 214454 in an amount of KWD 5000, check No. 214459 in an amount of KWD 10000, check No. 214465 in an amount of KWD 5000, and check No. 214469 in an amount of KWD 18000) drawn on the Port Fund account No. 001004001001, checks (No. 06 in an amount of KWD 5000, No. 09 in an amount of KWD 18000, No. 19 in an amount of KWD 18000, No. 22 in an amount of KWD 5000, and No. 35 in an amount of KWD 18000) drawn on the Port Fund account No. 493283002 in Al Ahli bank of Kuwait and check No. 214453 in an amount of KWD 9000, check No. 214458 in an amount of KWD 10000, check No. 214464 in an amount of KWD 7000, and 214468 in an amount of KWD 18000 drawn on the Port Fund account No. 001004001160 in HSBC Bank as well as issuing (check No. 03 in an amount of KWD 18000, check No. 05 in an amount of KWD 7000, check No. 18 in an amount of KWD 18000, and check No. 20 in an amount of KWD 7000) perused by the Public Prosecution, it has been established that the same were consistent with the statements of the Seventh witness.

3. After having examined the photocopy of the statements of accounts and the transfer orders of the Port Fund Accounts in HSBC Bank, attached with the report of the member of State Audit Bureau- the Seventh witness, perused by the Public Prosecution, it has been established that some amounts have been transferred from these accounts to the accounts of KGL Investment Company "Fund Manager" and its affiliated companies.





**ALDIYAR**
**LEGAL TRANSLATION**
Legal Translator/ Mahmood Subhi Nassar

| Beneficiary Name | Amount in KWD | Amount in USD |
|---|---|---|
| KGL Investment | 1,039,000 | 34,519,412 |
| Kuwait and Gulf Link for Transport | 20,000 | - |
| KGL International for Ports, Warehousing and Transport (KGL IP) | - | 20,600,000 |
| KGL NM Holding | - | 17,711,763 |
| Petro Link Holding Company | - | 1,000,000 |
| KGL Asia ROHQ | - | 6,700,000 |
| Capital Link | - | 143,358,68 |
| KGL Petroleum | - | 7,090,000 |
| Clark Gateway Investment Group | - | 2,000,000 |
| Total | 1059000 | 89764533,68 |

4. After having examined the photocopy of the transfer orders attached with the report of the member of State Audit Bureau- the Seventh witness, perused by the Public Prosecution, it has been established that some amounts have been transferred from the account of the Port Fund in the National Bank of Kuwait, below specified, to the account of MPC-GMO after the end of the investment term of the Port Fund in the mentioned company "Volume No."

**(1)      Account No. 001-493283-001:**

| Date | Amount in KWD | Telex Transfer No. |
|---|---|---|
| 31/03/2014 | 132,841,60 | BR07002014006629 |
| 21/04/2014 | 133,986,77 | BR07002014008437 |
| 21/10/2014 | 134,308,77 | BR07002014022875 |
| Total | 401,137,14 | |

**(2)      Account No. 001-493283-002:**

| Date | Amount in KWD | Telex Transfer No. |
|---|---|---|
| 09/07/2015 | 307,094,680 | BR07002015015492 |

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. م.ع.أ ،دبي، ٧٧٩٤ :.ب.ص ، ٢٢٨٣٦٧٨ : فاكس ٢٢٢
Mob.: 050-6284563      Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com





**Legal Translator/ Mahmood Subhi Nassar**

4. After having examined the photocopy of the letter sent by the Second Defendant Saeed Ismail Dashti (in his capacity as the Director of Clark Gateway Investment Group) to the First Defendant, Maria Lazareva (regarding Global Gateway Development Corporation), perused by the Public Prosecution, it has been established that, on 11th of April, 2014, Clark Gateway Investment Group has purchased 100% of the existing shares of Global Gateway Development Corporation.

4. After having examined the photocopy of the letters exchanged between the KGL Investment Company, the Unified Transport Company and the Jordanian Kuwaiti Bank, perused by the Public Prosecution, it has been established that, KGL Investment Company provided a bank guarantee of USD 900000 to the Unified Company.

5. After having examined the photocopy of the Bank Guarantee Agreement referred to above on 27th of June, 2009 by and between the Port Fund and the Unified Transport and Logistics Co., perused by the Public Prosecution, it has been established that, the Second Defendant, Saeed Ismail Dashti, was the one who represented the Unified Company in signing the said Agreement.

6. After having the Central Bank Governor's resolution No. 1/99/2007 dated 11 of March 2007 perused by the Public Prosecution, it has been established that KGL Investment Company is a Kuwaiti Shareholding Closed Company which has been established on 6 of November 2006 with a registered capital amounting to KWD 15,000,000, that the defendant Maria Lazareva is the managing director of the same company, and the second defendant Saeed Ismail Hajiya Dashti is a member of the board of directors.

7. After having examined the photocopy of the approval request of the investment Funds registry issued by the joint stock companies management in the Ministry of Commerce and Industry perused by the Public Prosecution, it has been established that KGL Investment Company was the marketing administrator of The Port Fund.

8. After having examined the photocopy of the private marketing license No. 24/2007 issued on 22 of May 2007 perused by the Public Prosecution, it has been established the purposes of The Port Fund was to achieve an internal return rate of 30% on the total investments of The Fund by giving investors the opportunities to take part in the prospectus of the fund in order to increase and unify the works relevant to the port in addition to the other

  

investments which allow every investors to invest therein and which are relevant to The Fund's investments. It has also been established that KGL Investment Company is the company who has established the Fund and that KGL Investment Cayman LTD is the administrator of the Fund, and that HSBC Bank Middle East Limited is the Secretary of The Fund.

9. After having examined the photocopy of the contract of Kuwait Ports Authority's subscription and participation in The Port Fund dated 14 of July 2010 perused by the Public Prosecution, it has been established in the preamble thereof that the aim of the stated Fund was to achieve an internal return rate of 20% of the whole investments of the Fund. In addition, Article No. 2 of the mentioned contract has stipulated that the authority participates in the units of the fund in an amount of USD 50 Million. Moreover, Article No. 12 of the same contract has stipulated that the contract shall subject to the laws of Kuwait and any disputes that may arise between parties concerning the performance of the clauses thereof shall be referred to the Kuwaiti courts. Such disputes may be represented in the dispute that Kuwait Ports Authority authorizes the vice chairman of the authority, the third defendant, Mohammed Abdul Mohsen Abdul Latif Al Asfour to sign the mentioned contract.

10. After having examined the photocopy of the letter of transferring the amount of the Kuwait Ports Authority's contribution to The Port Fund dated 15 of July 2010 perused by the Public Prosecution, it has been established that such letter was signed by the vice chairman of the authority, the third defendant, Mohammed Abdul Mohsen Al Asfour.

11. After having examined the photocopy of the letter of Council of Ministers General Secretariat (CMGS) No. 10/20/311 dated 29 of June 2010 perused by the Public Prosecution, it has been established that such letter was associated with the subject of Kuwait Ports Authority's subscription in The Port Fund which has been established by KGL Investment Company. Furthermore, the letter includes that Saeed Ismail Dashti, from KGL Investment Company, has sent a letter to the office of the Prime Minister in 3 of July 2010 requesting his opinion concerning the approval of Kuwait Ports Authority's participation in The Port Fund which has been established by the mentioned Company.

12. After having the letter of the director general of Kuwait Ports Authority sent on 2 of December 2015 perused by the Public Prosecution, it has been



established that the final statement of Kuwait Ports Authority for the financial year 2014/2015 concerning the authority's investment in The Port Fund In Kuwait has been rectified to "there are no additional amounts or profits that have been recorded for The Port Fund in the authority's records".

13. After having the report of the Minister of Transportation dated 4 of November 2013 perused by the Public Prosecution, it has been established that such report included a statement concerning Article No. 7 of the contract of Kuwait Ports Authority's participation in The Port Fund as it has stipulated that both parties of the contract shall be committed to the prospectus and the documents thereof as it shall be deemed as an integral part of the contract. Furthermore, such prospectus has included that the average of the Fund's investments is 30%, yet such Article has been breached and this revenue has been decreased to 20% in the subscription Contract. Hence, there is a conflict of interest between the vice chairman of the Kuwait Ports Authority, the third defendant, Mohammed Abdul Mohsen Al Asfour and KGL Investment Company.

14. After having the statement of Money transfers attached to the seventh witness, the audit office member's report perused by the Public Prosecution, it has been established that funds have been transferred from the account of The Port Fund account No 001004001001 at HSBC Bank to (Kuwait and Gulf Link Company for Transport) of a total amount of KWD 20,000 "Only Twenty Thousand Kuwaiti Dinar", as detailed below:

| Date of Transfer | Amount of Transfer | Beneficiary Company | Account No. | Bank/ Country |
|---|---|---|---|---|
| 31 of October 2011 | 20,000 | Kuwait and Gulf Link Company for Transport | 0010015 02001 | HSBC/ Kuwait |

15. After having examined the photocopy of the amendment contract of Al Morabitoon International Company LLC dated 28 of January 2007 perused by the Public Prosecution, it has been established that the second defendant Saeed Ismail Hajiya Dashti owns 75 shares out of 100 shares.

16. After having examined the photocopy of KGL Investment Company's Memorandum of Association dated 9 of November 2006 perused by the Public Prosecution, it has been established that the third defendant, Mohammed Abdul Mohsen Abdul Latif Al Asfour is a founder in the mentioned company (Party No. 641) and owns 30 thousand shares





Legal Translator/ Mahmood Subhi Nassar

amounting to KWD 3,000, and that the second defendant Saeed Ismail Hajiya Dashti was an agent for all the partners.

17. After having examined the photocopy of National Cleaning Company K.P.S.C. (NCC)'s and Sabhan Agricultural Contracting Co WLL's Memorandum of Association perused by the Public Prosecution, it has been established that the third defendant, Mohammed Abdul Mohsen Abdul Latif Al Asfour was a partner in both companies with the second defendant Saeed Ismail Hajiya Dashti.

18. After having the statement of the defendant Maria Lazareva's account at Burgan Bank perused, it has been established that the statement of account is identical to what has been stated by the third witness.

19. After having the statement of the defendant Saeed Ismail Hajiya Dashti's account at Burgan Bank perused, it has been established that the statement of account was identical to what has been stated by the third witness.

20. After having the statement of the KGL Investment Company's account at Al Ahli Bank of Kuwait and attachments thereof perused, it has been established that the statement of account was identical to what has been stated by both the second and sixth witnesses.

21. After having the statement of the defendant Maria Lazareva's account at Kuwait Finance House (KFH) perused, it has been established that the statement of account was identical to what has been stated by the fifth witness.

22. After having the statement of The Port Fund's account at HSBC Bank and attachments thereof perused, it has been established that the statement of account is identical to what has been stated by the fourth witness.

23. After having examined the photocopy of KGL International for Ports, Warehousing and Transport (KGL IP)'s Memorandum of Association dated 24 of July 2006 perused, it has been established that the second defendant Saeed Ismail Dashti was a founder of such company in his capacity as a representative of Kuwait and Gulf Link Company for Transport founded on 01 of May 1983.

24. After having the report of the Audit Office member, the seventh witness perused by the Public Prosecution, it has been established that the contributors in The Port Fund and their shares in the capital thereof are as follows:

Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E.
Mob.: 050-6284563          Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com





**ALDIYAR**
**LEGAL TRANSLATION**
Legal Translator/ Mahmood Subhi Nassar

الــتــرجمة القـانـونيــة
المـترجم القانوني / محمودصبحي نصار

| Paying entity | Amount in USD |
|---|---|
| Kuwait Ports Authority | 85,000,000 |
| The Public Institution for Social Security (PIFSS) | 40,400,000 |
| General Retirement & social insurance Authority (Qatar) | 9,999,780 |
| Behbehani Investment Company | 1,330,000 |
| Gulf Investment Corporation G.S.C. (GIC) | 20,000,000 |
| Yacoub Behbehani | 1,029,976 |
| Al Ahlia Holding Company | 3,090,000 |
| Kuwait Reinsurance Company K.S.C.P. | 2,040,000 |
| Al Ahleia Insurance Co.S.A.K.P. | 3,060,000 |
| Mohammed A. Al-Naqi | 3,000,000 |
| Total | 166,009,756 |
| Contribution of both Kuwait Ports Authority and The Public Institution for Social Security (PIFSS) in The Port Fund (In USD) | 125,400,000 |
| Percentage of Public funds to the total contributors | 74,22% |

Public Funds Prosecutor
Hamoud Mishary AlShamsy
*/Signed/*

*Executed on 26 April 2017.*



Tel. : 2222722 / 2221557, Fax : 2283678, P.O.Box : 7794, Dubai - U.A.E. ، ص.ب.:٧٧٩٤،دبي. أ.ع.م، فاكس : ٢٢٨٣٦٧٨، ٢٢٢٢٧٢٢ / ٢٢٢١٥٥٧:هاتف
Mob.: 050-6284563          Email : mahmoudsubhin@hotmail.com / diyar-translation@hotmail.com          ٠٥٠-٦٢٨٤٥٦٣ : متحرك