# EXHIBIT 14
# Part 7

## FINANCIAL REPORT REGARDING FINANCIAL TRANSACTIONS

**AS REPORTED IN THE BILL OF INDICTMENT
DATED 26 APRIL 2017 ISSUED BY THE PUBLIC PROSECUTION
TO THE CRIMINAL COURT WITH RESPECT TO FELONY NUMBER 1496/2012 PUBLIC FUNDS
PROSECUTIONS REGISTERED UNDER NUMBER 23/2015 FELONY, INVESTIGATIONS
ALONG WITH THE CONFIRMING EVIDENCE ATTACHED TO FELONIES 547/2013 AND
1719/2014 PUBLIC FUNDS PROSECUTIONS**

**DECEMBER 2018**



Consulting Company
With limited liabilities
P.O.Box 1486 Safat 13015
Kuwait

T:  +965  1 88 77 99
F:  +965  2294 2651

info@bakertillykuwait.com
www.bakertillykuwait.com

**Date:** 11 December 2018
**Ref. :** BTK/C/4746/2018

**PetroLink Holding Company K.S.C (Closed)**

Dear Sirs,

<div align="center">

**Subject :**   **Financial Report Regarding Financial Transactions
As reported in the bill of indictment dated 26 April 2017
issued by the Public Prosecution to the Criminal Court with
respect to felony number 1496/2012 public funds
prosecutions registered under number 23/2015 felony,
Investigations along with the confirming evidence attached to
felonies 547/2013 and 1719/2014 public funds prosecutions**

</div>

Reference is made to the appointment of Baker Tilley Consulting Company WLL as an independent financial advisor to provide opinion on the soundness of the financial information included in the bill of indictment dated 26 April 2017 issued by the Public Prosecution to the Criminal Court with respect to felony number 1496/2012 public funds prosecutions registered under number 23/2015 felony, Investigations along with the confirming evidence attached to felonies 547/2013 and 1719/2014 public funds prosecutions.

Please find attached the requested report.

Best Regards,

**Hisham Sorour**
**Managing Partner**

**Report Contents**

Financial Report Regarding Financial Transactions

As reported in the bill of indictment dated 26 April 2017 issued by the Public Prosecution to the Criminal Court with respect to felony number 1496/2012 public funds prosecutions registered under number 23/2015 felony, investigations, along with the confirming evidence attached to felonies 547/2013 and 1719/2014 public funds prosecutions.

| # | Particulars | Page Number |
|---|---|---|
| 1 | **Appointment, scope, reference of work, background and independence of the report's author** | 1-3 |
| | 1-1  Appointment | 1 |
| | 1-2  Report Author's Scope of work | 1 |
| | 1-3  Report Author's Reference of Work | 1 |
| | 1-4  Report Author's Bio | 1-2 |
| | 1-5  Independence of the Report Author | 2 |
| | 1-6  Emphasis of matter | 2 |
| | 1-7  Summary of the final opinion | 2-3 |
| 2 | **The Port Fund** | 3-19 |
| | 2-1 Establishment of the Fund | 3-6 |
| | 2-1-1 The Fund's Inception | |
| | 2-1-2 Regulatory approvals in Kuwait | |
| | 2-1-3 The Fund Term | |
| | 2-1-4 The Fund's independent Auditors | |
| | 2-2 Subscriptions (Initial Subscription – First Secondary Capital Raise– Second Secondary Capital Raise) and the Aggregate Capital Commitments | 7 |
| | 2-3 The Fund Structure | 8-14 |
| | 2-4 The Fund Investments | 14-19 |
| 3 | **Response to accusation evidence against Lazareva Maria and conclusion.** | 20-77 |
| | 3-1 First Accusation | 20-27 |
| | 3-2 Second Accusation | 28-30 |
| | 3-3 Third Accusation | 30-55 |
| | 3-4 Fourth Accusation | 55-58 |
| | 3-5 Fifth Accusation | 58-61 |
| | 3-6 Sixth Accusation | 61-65 |
| | 3-7 Seventh Accusation | 65-66 |
| | 3-8 Eighth Accusation | 66-71 |
| | 3-9 Ninth Accusation | 71-72 |
| | 3-10 Tenth Accusation | 73-77 |
| 4 | **Response to accusations against Saeed Dashti and conclusion.** | 78-79 |
| | 4-1 First Accusation | |
| | 4-2 Second Accusation | |



# 1. Appointment, scope, reference of work, background and independence of the report's Author

## 1.1 Appointment

PetroLink Holding Company K.S.C (Closed) (hereinafter referred to as "PetroLink") has appointed Baker Tilly Consulting Company WLL to undertake the task as an independent financial advisor to present its opinion on the soundness of the financial information presented in the aforementioned bill of indictment along with its attached evidence dated 26 April 2017 and issued by the Public Prosecution to the Criminal Court with respect to felony number 1496/2012 public funds prosecutions registered under number 23/2015 felony, Investigations, along with the confirming evidence attached to felonies 547/2013 and 1719/2014 public funds prosecutions. PetroLink is one of the Limited Partners in the Port Fund L.P., which has acquired Al-Ahlia Holding Company's interest in the Port Fund.

## 1.2 Scope of Work

The scope of work comprises the implementation of the following agreed-upon procedures:

1. Analyze the components of each financial transaction subject matter of accusation;
2. Analyze the reference of each financial transaction in accordance with the Port Fund's provisions and documents (the "Fund"); and
3. Examine the supporting documents for each transaction.

In light of the procedures from 1 - 3, Baker Tilly Consulting Company WLL will provide an independent opinion by examining the transactions to determine whether or not the transactions conform with the Fund's provisions and document as well as their conformity with the Fund's audited financial statements, and present a professional opinion regarding the respective accusations, as to whether each accusation is valid or not, and if invalid, the reasons for invalidity.

## 1.3 Report Author's Reference of Work

This report has been prepared in accordance with the International Standard on Related Services (ISRS) 4400, Engagements to Perform Agreed-Upon Procedures Regarding Financial Information.

## 1.4 Background of the Report Author

Baker Tilly Consulting Company WLL was established in Kuwait in 2008 as an independent member of Baker Tilly International, one of the top-10 specialized accounting, tax and business consulting networks. It operates according to international financial reporting standards, local laws and regulations, and best practices around the world.

Page 1 of 79



Baker Tilly International Network has global presence as follows:

- Combined annual revenue of USD 3.2 billion
- 126 member firms
- 147  Countries
- 769 Offices around the world
- 22,597 Professional team members
- 2,933 Partners
- 4,960 Administrative team members
- 30,490 Total employees
  (Source: International Accounting Bulletin No. 570 issued February 2017)

## 1.5  Independence of the Report Author

Baker Tilly Consulting Company WLL has ensured full independence, which enables us to narrate the facts discovered without prejudice, conflict of interest or any undue influence by any of the stakeholders.

## 1.6  Emphasis of matter

Our procedures do not constitute an audit or review in accordance with International Standards on Auditing (ISA) or International Standard on Review Engagements (ISRE). Accordingly, we do not express any assurance about the financial transactions presented in the report.

This report has been submitted to you for the purpose described in paragraph 2 of this report and may not be used for any other purpose or submitted to another party— other than the Criminal Court, or any other party that the Criminal Court may refer this report to, or any other court that has any connection to this case—without our prior consent. This report relates to the information contained in the Bill of indictment and does not extend to any financial statements related to the Port Fund as a whole.

## 1.7  Summary of the Final Opinion

In light of our review of the Fund's Private Placement Memorandum (PPM), the Limited Partnership Agreement (LPA), the Incorporation Agreement of the General Partner, the resolutions issued by the General Partner, the supporting documents to the Fund's accounting records, the list of confirming evidence and other documents, below are the conclusions of our findings:

a) The Port Fund's money has been used toward its investments and transactions made in line with the Fund's provisions and documents, PPM, LPA, as well as the Incorporation Agreement of the General Partner and the resolutions issued by the General Partner. They did not involve any suspicion of facilitating embezzlement and did not involve any suspicion of embezzlement.



b)   The Port Fund has successfully exited its investment in Negros Navigation in the Philippines during 4Q2016 where the Fund distributed USD 30 million to Port Fund's investors including Kuwait Port Authority "KPA" (which received USD 11,222,152.44 - i.e., 13.2% of total capital commitment) and Public Institution for Social Security "PIFSS" (which received USD 7,684,540.56 - i.e., 19.2% of the total capital commitment). All the above mentioned amounts, including Negros Navigation exit proceeds, were recorded in the audited financial statement of the Fund.

c)   All the Port Fund's financial information and statements prove that Sabah Al Ahmad Logistics City was owned by the Fund. In November 2017, the Fund successfully exited that investment and transferred the proceeds to the Fund's bank account. The Fund advised its limited partners about the distribution of more than USD 300 million (i.e., more than double the capital commitments). Therefore, there is no suspicion of facilitating embezzlement or suspicion of unlawful embezzlement or damaging the public                                                                                        funds.

d)   All the transactions listed in the bill of indictment have been conducted in accordance with the Fund's PPM, LPA, Incorporation Agreement of the General Partner and the resolutions issued by the General Partner, as well as other valid legal documents. Such transactions did not involve any suspicion of facilitating embezzlement or any suspicion of unlawful embezzlement, as detailed in this report.

e)   The amounts reported in the supporting documents conform to the Fund's accounting records and were reflected in the Fund's audited financial statements in accordance with accounting standards.

Note: In all the bank transfers, we have adopted the transfer request date, which might be off by one or two days from the actual transfer date listed on the Fund's bank statement.

## 2.   General Background on the Port Fund

### 2.1   Fund Establishment
#### 2.1.1   Fund Inception
The Port Fund (hereinafter referred to as the "Fund") was established on 21 March 2007 as a limited partnership in the Cayman Islands as "The Port Fund L.P." or, the Port Fund – Limited Partnership, to invest in investment opportunities outside Kuwait in the field of port management and operations as well as related activities.

As per the Fund's provisions and documents, which were approved by all Limited Partners of the Fund, the Fund is managed by "Port Link GP LTD (hereinafter referred to as the "General Partner" or the "Fund Manager"), KGLI Investment Cayman LTD is in charge of the Fund's investment management (referred to hereafter as the "Investment Manager"), and KGL Investment Company K.S.C (Closed). KGLI was in charge of marketing the Fund's units inside and outside of Kuwait.



### 2.1.2   Regulatory Approvals in Kuwait

The Fund is governed by the Cayman Islands' laws, the provisions of the Fund's Private Placement Memorandum (PPM) and the Amended and Restated Limited Partnership Agreement (LPA).

For the purposes of marketing the Fund's units in Kuwait, KGL Investment Company K. S.C. (Closed) (KGLI)—in its capacity as the Fund's Placement Agent and Fund unit marketer inside the state of Kuwait—secured the regulatory approvals as per the following procedures:

a) On 24 April 2007, the Central Bank of Kuwait issued its special approval for KGL Investment Company K.S.C (Closed) (KGLI) to market the Fund units in Kuwait.

b) On 12 May 2007, The Ministry of Commerce and Industry in Kuwait issued its approval to KGL Investment Company K.S.C (Closed) (KGLI) to market the Fund units as per license number 24/2007.

c) On 15 May 2007, it was approved to register the Fund in the Investment Funds Register maintained by the Ministry of Commerce and Industry in the State of Kuwait with a special marketing approval inside the State of Kuwait as per the Ministerial Resolution No 347 for the year 2007.

Thus, the Fund has completed the necessary procedures to market its units inside the State of Kuwait by KGL Investment Company K.S.C (Closed).

### 2.1.3   The Fund Term, Exit & Winding Up

As per the Fund's PPM issued in April 2007 (page 109 under the "Term" clause), the term of the Fund shall commence from the Initial Closing Date of 15 July 2007 as set forth in the Fund's PPM and will continue until 31 December following the 5th anniversary of the Initial Closing Date, and may be extended for up to two consecutive additional one-year periods.

As per the Fund's General Partner's resolution issued on 28 July 2012, the Fund term **has** been extended by two consecutive additional one-year periods. Therefore, the Fund Term extends from 15 July 2007 until 31 December 2014. As per the Amended and Restated LPA, Clause 2.4 and Clause 9.1 (a) the partnership liquidation starts on 31 December 2014 (i.e., after the end of the Fund Term), but in any case, it should not be understood that the liquidation process is the termination of the Partnership Agreement (i.e., the Fund). In accordance with Clause 9.1 (b), the partnership shall terminate only after the full distribution as defined in clause 9.2 of the Agreement, which determined that the General Partner will undertake the liquidation of the partnership after the end of the Fund's Term. The agreement also provided the General Partner with absolute discretion to determine the mechanism for selling assets or distributing them in-kind in the best interest of the partnership, as needed.



As per the laws of the Cayman Islands and the Exempt Partnership Act, if the asset liquidation process is delayed due to its magnitude or delay to obtain the best valuations for the assets, the General Partner's duties include maximizing the interest of the limited partners of the Fund. The liquidation process is not tied to a specific time period as long as the General Partner continues to exert continuous effort to achieve the best interest for the partnership.

The matter of the Fund Term and liquidation (as clarified hereafter) is reflected in the audited financial statements of the Independent Auditor's Reports of the Fund, where the Auditor stated that the financial statements as of 31 December 2014, 2015 and 2016 confirm that the term of the Fund expires on 31 December 2014 and, as a result of that, the audited financial statements were not prepared based on a going concern basis.

### 2.1.4   The Fund's Independent Auditor

The Fund's General Partners has appointed independent auditor(s) to audit the Fund's financials as follows:

| Period/Year | Auditor | Auditor's Opinion |
|---|---|---|
| Period from 21 March 2007 to 31 December 2008 | Qais Mohammed Al-Nisf – Auditing license number 38 (A) Moore Stephens Al Nisf & Partners - Kuwait | Unqualified opinion (1) |
| Year ended 31 December 2009 | Qais Mohammed Al-Nisf – Auditing license number 38 (A) Moore Stephens Al Nisf & Partners – Kuwait | Unqualified opinion (1) |
| Year ended 31 December 2010 | Qais Mohammed Al-Nisf – Auditing license number 38 (A) Moore Stephens Al Nisf & Partners – Kuwait | Unqualified opinion (1) |
| Year ended 31 December 2011 | Qais Mohammed Al-Nisf– Auditing license number 38 (A) -BDO Al Nisf & Partners – Kuwait | Unqualified opinion (1) |
| Year ended 31 December 2012 | Qais Mohammed Al-Nisf– Auditing license number 38 (A) -BDO Al Nisf & Partners – Kuwait | Unqualified opinion (1) |
| Year ended 31 December 2013 | Qais Mohammed Al-Nisf– Auditing license number 38 (A) -BDO Al Nisf & Partners – Kuwait | Unqualified opinion (1) |
| Year ended 31 December 2014 | Qais Mohammed Al-Nisf– Auditing license number 38 (A) -BDO Al Nisf & Partners – Kuwait | Unqualified opinion (1) The Auditor stated emphasis of matter indicating that the Term of the Fund ended on 31 December 2014 and the Fund is under winding up process. |
| Year ended 31 December 2015 | Qais Mohammed Al-Nisf– Auditing license number 38 (A) –BDO Al Nisf & Partners – Kuwait | Unqualified opinion (1) The auditor stated emphasis of matter indicating that the Term |



| Period/Year | Auditor | Auditor's Opinion |
|---|---|---|
| | | of the Fund ended on 31 December 2014, the Fund is under winding up process, and that the Investment Manager will exit the Fund's investments in 2016, and therefore, the Fund's financial statements were not prepared on a going concern basis. |
| Year ended 31 December 2016 | • Qais Mohammed Al-Nisf– Auditing license number 38 (A) – BDO Al Nisf & Partners – Kuwait<br>• Hessa Al-Bahar– Auditing license number 66 (A) –Moore Stephens Al Bahar & Partners – Kuwait | Unqualified opinion (1) The auditor stated emphasis of matter indicating that the Term of the Fund ended 31 December 2014 and that the Investment Manager will exit the Fund's investments in 2017, and therefore, the Fund's financial statements were not prepared on a going concern basis. |

(1) The unqualified opinion of the Fund's Auditor(s) stated the following:
"The financial statements fairly present, in all material respects, the Fund's financial position and performance".



## 2.2 Subscriptions (Initial Subscription – First Secondary Capital Raise– Second Secondary Capital Raise–) and the Aggregate Capital Commitments

The fund's subscriptions took place in three phases, which are summarized as follows:

| Subscription | PPM Date | Subscription Closing Date | Limited Partner/Investor's Name | Capital Commitment (USD) |
|---|---|---|---|---|
| Initial Subscription | April 2017 | July 15, 2007 | PIFSS | 40,000,000 |
| | | | Al Ahlia Holding (1) | 3,000,000 |
| | | | Al Ahlia Insurance | 3,000,000 |
| | | | Behbhani Investment | 1,000,000 |
| | | | General Retirement and Social Insurance Authority - Qatar | 9,852,000 |
| | | | Gulf Investment Corporation | 10,000,000 |
| | | | Kuwait Re-Insurance Company | 2,000,000 |
| | | | Mohamed Ali Al Naqi | 3,000,000 |
| | | | Yacoub Behbahani | 1,000,000 |
| | | | KGL Investment Company | 20,000,000 |
| First Secondary Capital Raise | August 2009 (Fund raising of capital commitments of up to USD 100 million) | July 2010 | Kuwait Port Authority | 50,000,000 |
| Second Secondary Capital Raise | August 2009 | April 09, 2013 | Kuwait Port Authority | 35,000,000 |
| | | | Gulf Investment Corporation | 10,000,000 |
| | | | Behbehani Investment Co. | 300,000 |
| Total Capital Commitments | | | | 188,152,000 |

(1)     On March 29, 2012, PetroLink Holding Company K.S.C. (Closed) acquired Al Ahlia Holding Company's interest in the Fund, and PetroLink became a Limited Partner replaced Al Ahlia Holding Company as a Limited Partner in the Fund as per the documents and the Fund's audited financial statements.



## 2.3 The Fund's Structure

**First: The Fund's structure consists of Six (6) key units/parties summarized as follows:**

| # | The Party | Description |
|---|-----------|-------------|
| 1 | The General Partner | The General Partner of the Fund is Port Link GP Ltd., incorporated in the Cayman Islands. The General Partner has primary responsibility for and charge over the business, affairs and management of the Fund in all respects. The General Partner delegated the day-to-day investment decision-making responsibilities to the Investment Manager (KGL Investment Cayman LTD) but retained discretion over such matters as the admission of Limited Partners to the Fund and the amount and timing of distributions by the Fund. The General Partner is also in charge of appointing the auditor, administrator and the Advisory Board as per the authorities granted to the General Partner by Limited Partners as stated in the PPM, LPA, Subscription Agreement and other related organizing matters. |
| 2 | The Placement Agent | KGL Investment Company K.S.C.(Closed), and as per the PPM issued in April 2007 (page 8) the Placement Agent will be entitled a placement fee (the "Placement Fee") of 3% of each investor's Capital Commitment, paid by each investor either by direct transfer to the account of the Placement Agent (or paid to the Fund in addition to investor's commitment, which the Fund will transfer it to the Placement Agent), and the Placement Fee will be due to the Placement Agent upon subscription. |
| 3 | The Advisory Board | As per the PPM issued in April 2007 (page 103), the Advisory Board consists of 9 members. The LPA (page 11 Clause 3.5) sets forth that the Advisory Board consists of up to 9 members. The Advisory Board was formed of the following member: <br>• Mr. Saeed Dashti (the Second Defendant) – Chairman <br>• Mr. Faisal Al-Musalam – Member representing the Public Institution for Social Security (PIFSS) <br>• Mr. Abdul Azizi Al-Ousaimi – Member representing (Kuwait Ports Authority) KPA. <br>• Mr. Abdullah Al Shamali - Member representing (Kuwait Ports Authority) KPA. <br>• Mr. Robert Bourghese – Member <br>• Ms. Lazareva Maria (First Defendant) – Member <br><br>KPA replaced its representatives Mr. Abdul Aziz Al-Ousaimi and Mr. Abdullah Al Shamali by Mr. Khaled Al Seef and Mr. Abdullah Redda Nassrallah |



| # | The Party | Description |
|---|-----------|-------------|
|   |           | As per the resolution passed during Advisory Board meeting dated 20 October 2011, the Advisory Board members shall receive the following remunerations:<br>a. The Chairman is entitled to receive KWD 7,000 for attending each meeting.<br>b. Each member of the Advisory Board is entitled to receive remunerations in the amount of KWD 5,000 for attending each meeting.<br>c. The Chairman and board members are entitled to the reimbursement of any travel / accommodation related costs.<br><br>(7) meetings were held for the Fund as follows:<br>• 1/2010 – held during the period from 06-09 December 2010 in Manilla and it was attended by 5 members.<br>• 2/2011 –held during the period from 20-21 October 2011 in London, and it was attended by 5 members<br>• 1/2012 – held during the period from 23-27 March 2012 in Manilla, and it was attended by 5 members.<br>• 2/2012 – held during the period from 26-27 April 2012 in London it was attended by 6 members.<br>• 1/2013- held during the period from 14-15 June 2012 in London, and it was attended by 5 members.<br>• 2/013 – held during the period from 26-30 January 2014 in Manilla, and it was attended by 5 members.<br>• 1/2014 held during the period from October 28 to November 01, 2014 in Manila, and it was attended by 6 members. |
| 4 | Investment Manager | KGL Investment Cayman LTD, established in accordance with the Cayman Islands laws.<br><br>As per the PPM issued in April 2007 (page 8) the Investment Manager is entitled to the following:<br>a. An annual management fee equal to 2% per annum of the aggregate Capital Commitments. If the Fund's Term is extended for any one-year option period, the Management Fee will be reduced to 1.5% per annum for such period. On 2 September 2007 the right to receive the Management Fees was assigned from the Investment Manager KGL Investment Cayman LTD of Cayman to "KGL Investment Company K.S.C. (Closed)" of Kuwait.<br><br>b. Performance Fees are paid subject to certain conditions. With respect to each exited investment, the proceeds will be distributed as follows: first to the Limited Partners up to the capital employed in that investment, second in the event the exit proceeds exceeded the Capital Commitments, proceeds will be paid to the Limited Partners up to 8% annual preferred return on committed capital; then the Investment Manager will receive a 20% "Catch-up fee" of the preferred return of the total preferred returns paid to Limited Partners mentioned in "Second" above. |



| # | The Party | Description |
|---|---|---|
| | | **Finally**, if the proceeds exceeded the capital employed in the investment, the preferred returns and the catch-up fee, then the proceeds will be distributed as 80% to the Limited Partners and 20% to the Investment Manager. |
| | | It is important to emphasize here an important point that, while preparing the Audited Financial Statement at the end of each Fiscal Year, and in the event the Net Equity attributed to Limited Partners exceeds their Capital Commitment **and** additional 8% preferred return on their capital commitment for that Fiscal Year, then the Investment Manager's Performance Fees are calculated in accordance to the mechanism specified above on annual basis; and in the event the Fund suffers loses later in any Fiscal Year, the share of the Investment Manager in the Performance Fees is deducted from the accumulated Performance Fees, if any. In any case, no money will be paid out of the accumulated balance of the Performance Fees to the Investment Manager until the investments are exited and the fulfillment of *both* conditions listed above, regardless of the provisional amounts the Fund has taken, because the distributions are conditional on the final exits, and the exit proceeds may increase or decrease compared to the valuation of the Fund's investments. |
| 5 | The Administrator | As per the PPM Issued in April 2007, KGL Investment Company K.S.C. (Closed) was appointed as the Fund Administrator, and it reserves the right to outsource its responsibilities to an outside party on its behalf. From 14 November 2007, Mourant International Financial Administration Company was hired as the                    Fund                    Administrator. |
| | | On 15 April 2014, TMF Group Mauritius LTD (headquarted in Mauritius) was appointed as the Fund Administrator. It is a leading international provider of administrative and business services with over 75 offices spread across the Americas, Asia Pacific, Europe and the Middle East. The Fund Administrator is in charge of preparing the Fund's financial statements and sending them to the Fund Auditors for review. |

**Second: General Rules about the Fund and related issues:**
- **The Fund's Provisions and Documents:**

The Fund's PPM, the amended and restated LPA, Subscription Agreement and the Laws of Cayman Islands collectively set out the terms of reference, rules and regulations that govern the Fund's activities (business), its management, internal affairs, relationships with the third parties, the Limited Partners' relationships with each other, the General Partner, the Investment Manager and others,



in addition to the placement procedures, market opportunities, market analysis, investment sectors analysis, investment pipelines, and other issues related to the Fund, deal structuring, investments and associated risks, which were included in the PPM.

- **The Fund's Legal Structure:**
  The Fund is an exempted limited partnership organized and registered under the Exempted Limited Partnership Law of the Cayman Islands, as amended.

- **The Fund's Objective and Strategy:**
  The objective of the Fund is to create an investment portfolio that invests in ports operations, management, and related activities, as well as in other related opportunities that are consistent with the Fund's investment objective, including, but not limited to the logistics services, technology and shipping sectors.

- **Targeted Internal Rate of Return (IRR)**
  The PPM issued in April 2007 determined that the Fund aims to achieve a **targeted** 30% internal rate of return ("IRR"). In the PPM issued in August 2009 for the Fund's additional capital raise, the **targeted** IRR was reduced to 15-20%. In all cases, this rate is a targeted, but not a guaranteed, rate. Prior to taking the investment decision, the Investor should be aware of all investments' risks, which would be highlighted hereafter as they were described in detailed in the PPM which were reviewed and approved by all investors.

- **Deal Structuring:**
  The Investment Manager will use its expertise in choosing the best possible deal structure to maximize utilization of investments and mitigate risks, taking into considerations the most favorable tax benefits and ease of exiting the investment. Moreover, the Investment Manager may explore creative investment instruments, including convertible debt instruments that comply with the Fund's interest.

- **Investment Risks:**
  The PPM determined the investment risks in detail, including that each Investor should give careful consideration to the Fund's investment risk factors prior to subscribing to the Fund which include: Risk of Low Capital Commitment, Private Equity Investments, High Risks, ability to arrange loans, Illiquid Nature of Investments, Minority Interests, Exit, Dilution Risks, Portfolio Risks, Competitive Environment, New Market, Subsequent Closings, Sector's Risks, Conflicts of Interests between Different Limited Partners, Consequences of Default on Loans, Track Record, Investment Selection Risk, Limited Transferability of Investments in the Fund, Political Climate, Regulatory Risks, Exchange Rate Risks, Co-Investments, Uninsured Losses, Legal Regimes, Accounting, Disclosure and Regulatory Standards, and there is no guarantee that the Fund's investment objectives would be achieved.



- **General and Administrative Expenses:**
  In addition to the management fees, the Fund is responsible for paying all other expenses and fees relating to the Fund's activities, investments and business including, without limitation:

  a) Organizational and offering expenses of the Fund (including, but not limited to, fees and expenses of legal counsel to and accountants for the Fund and the General Partner, travel expenses of personnel of the General Partner and its advisors, and other expenses, in each case, incurred in connection with the formation of the Fund, the preparation of the Partnership Agreement, compliance with applicable laws or regulations and the offering of Interests).

  b) All costs and expenses attributable to holding the Fund's investments (including, without limitation, interest on money borrowed by the Fund or by the General Partner on behalf of the Fund, brokerage, finders', custodial and other fees);

  c) All costs and expenses incurred in connection with all consummated and unconsummated transactions;

  d) Legal, accounting, auditing, consulting, insurance and other fees and expenses;

  e) Costs, expenses and liabilities of the Fund (including, without limitation, litigation and indemnification costs and expenses, judgments and settlements);

  f) The Management Fees and Performance Fees;

  g) Any taxes, fees and other governmental charges levied against the Fund. Marketing Expenses and any other expenses of the Fund, but not including ordinary overhead and administrative expenses of the Investment Manager which are payable by the Investment Manager.

- **Adjustment and Reallocation of Limited Partners' Capital Accounts:**
  When an Additional Partner becomes an investor or an existing partner increases his capital commitment, the capital accounts are reallocated and adjusted to reflect the reallocations of previous years' earnings, as appropriate, and the capital accounts of each partner are reallocated and adjusted for Later Entry Surcharge.

- **Accounting Standards:**
  The Fund's financial statements are prepared in accordance to IFRS (International Financial Reporting Standards).

- **Leverage:**
  Up to 30% of the aggregate capital commitments at the Fund's level.



- **Auditing:**
  The General Partner appointed an auditor to audit the Fund's financials prepared by the Fund Administrator.

- **Aggregate Capital Commitment:**
  The Partners' aggregate capital commitment stood at USD 188,152,000 as on 31 December 2014 (i.e. by the end of the Fund's term). In October 2016, a total amount of US 30 million was distributed pro rata to each Limited Partner. The parties, which benefited the most from the Fund's distributions, are PIFSS (USD 7,684,455) and KPA (USD 11,222,153). It is worth noting that as per the provision stated above in section 2.3 (Table, item 4-b "Investment Manager's Performance Fees"), the Investment Manger didn't receive Performance Fees since the exit amount did not meet the first condition set forth therein.

- **Net Asset Value (NAV):**
  The NAV of the Fund is determined by deducting the total liabilities, including all accrued liabilities, from the total assets of the Fund. Total assets are the sum of all cash, accrued profit, dividends, other receivables and the market value of all investments together with the present value of any other assets held. All Fund liabilities, reserve and emergency items (inclusive of taxes) and accrued costs and expenses that are paid through the Fund shall be deducted. Investments listed or quoted on a recognized market are valued at closing price in the relevant market. Investments for which no appropriate market price is readily available, or which are not listed or quoted on a recognized market are valued at their market value as determined pursuant to procedures adopted by the Investment Manager. These procedures consider, among others, the following factors to determine a security's fair value: market prices for the security or securities deemed comparable; dealer valuations of the security or securities deemed comparable; and determinations of value by one or more pricing services for the security or securities deemed comparable. In the event that no third party is able to make a determination of the value for a particular investment, the Investment Manager acting in the best interests of the Fund is entitled to exercise reasonable judgment in determining the values to be attributed to such assets.

- **Reporting:**
  At the end of each Fiscal Year the General Partner shall cause to be prepared and mailed to each Limited Partner an audited report, setting forth as at the end of such Fiscal Year: A) A balance sheet of the Partnership; B) A statement of the Net Profit or Net Loss of the Partnership for such year; C) A statement of changes in financial position or a cash flow statement of the Partnership; and D) A supplemental statement of such Partner's Capital Account, including such Partner's allocations and share of Net Profit or Net Loss for such year.



- **Special Purpose Vehicle:**
  The General Partner may cause the Fund to form one or more special purpose vehicles in light of certain tax or regulatory considerations, including, where applicable, seeking to obtain tax treaty benefits, with respect to certain investments.

## 2.4 The Fund's Investments

The General Partner entered into 4 investments for the Fund during its term, as follows:

### A - Damietta International Port Company Egypt ("DIPCO")

| Investment Objective | Investment in Damietta International Port. It is a 40-year concession agreement to build, operate and transfer (BOT) Damietta Ports Authority – in Egypt. In 1H2007, KGL International for Ports, Warehousing and Transport K.S.C. (Closed) held a 30% stake in **DIPCO, which is the company holding the concession agreement right (or the Project Company)** through increasing the capital of the Project Company. After the Fund reached the First Closing on 15 July 2007 and started its activities, and since the Fund wished to pursue investment opportunity in ports, and since the project was in one of the fastest developing economies at the time, therefore, the Fund decided to acquire a stake in the project. (after the capital increase phase for DIPCO was concluded thus the Fund didn't have a chance to directly invest in the Project Company), therefore the Fund invested through a convertible loan to KGL International for Ports, Warehousing and Transport in the amount of USD 20 million to be converted to shares in the Project Company after 5 years.

Most of the investors who participated in the Project Company were well-known names in the shipping and navigation field including: United Arab Shipping Co., China Shipping Company, Terminal Link Company, General Electric Gulf, CMA-CGM, AREF Investment and Damietta Ports Authority.

The Fund invested USD 20 million through a convertible loan agreement to KGL International for Ports, Warehousing and Transport, which upon conversion constituted 10% of ownership in the |
|---|---|



| | |
|---|---|
| | Project Company, with 140% in interest payable on the loan's due date (i.e. simple interest of 28% per annum), and if the loan is not repaid on due date, the loan and interest would either be paid or converted into a 10% stake in the Project Company, with a collateral of 10% stake in DIPCO's share. |
| The Fund's stake in the Project | The committed amount is not considered ownership stake in the project unless the convertible loan is transferred into shares after 5 years, and at that time it will comprise 10% of the shares of DIPCO. |
| Investment Starting Date | August 22, 2007 |
| Fund's commitment | USD 20 million |
| Amounts paid by the Fund | USD 20.6 million were invested through a convertible loan offered to KGL International for Ports, Warehousing and Transport for a 10% stake in the Project Company as follows:<br>• USD 20 Million against investment through a convertible loan into 10% shares of DIPCO<br>• USD 0.6 million against placement fees as per the agreement dated 22 August 2007 Clause 4 Page 8, which refers to the 3% due on the aggregate loan amount. |
| Commitment Payment Method | The amount was transferred through one (1) bank transfer.<br>It was recorded in the Fund's books as a convertible loan for 10% of DIPCO's shares. |
| Investment Status | Due to the so-called "Arab Spring", and the disturbances of the economic situation in Egypt and Force Majeure conditions, the loan was not converted into shares. Subsequently, the concession agreement was terminated between the Egyptian government and DIPCO and a lawsuit was filed against the Egyptian government before the International Arbitration Commission |
| Investment Exit | Since the Fund could not convert its loan into DIPCO's shares due to the so-called "Arab Spring", and the disturbances of the economic situation in Egypt and Force Majeure conditions, the Fund recognized a provisional loss of its books of full invested amount of USD 20 Million during the Fiscal Year ending 31 December 2014.<br>The Fund filed claim number 6582/2016 before Kuwaiti courts against KGL International for Ports, Warehousing and Transport K.S.C.(Closed) to |



| | recover the loan amount. The claim is currently pending in Kuwaiti courts. It is worth mentioning that DICPO has filed an international arbitration proceedings against Egypt government seeking compensation for the Project. The case is currently examined before the international courts. |
|---|---|

### B – MPC Global Maritime Opportunities S.A.

| | |
|---|---|
| Investment Objective | MPC Global is a fund that owns and operates cargo ships, which has attracted a select base of known investors like Montrica Investment, Morgan Stanley and Goldman Sachs, which increased the attractiveness of the investment in that fund. |
| Fund's ownership percentage | 10% of the total capital of MPC Global |
| Investment Starting Date | 12 November 2007 |
| Fund's commitment | USD 25 million <br> As per the agreement entered between the Fund and MPC GMO, the Fund had to pay its commitments upon request. |
| Amounts paid by the Fund | USD 25,112,795 were paid as follows: <br> • USD 24 million for the amount the Fund committed to invest in MPC (following several rounds of negotiations between the Fund and MPC-GMO. In order to exit the investment, the amount the Fund committed to invest in MPC was reduced from USD 25 million to USD 24 million) <br> • USD 1,112,975 in late payments for it's commitments for the period from April 17, 2008 to 15 May 2016. |
| Commitment Payment Method | The amount was paid through twenty-two (22) bank transfers |
| Investment Status | Due to the global financial crisis that has affected the shipping market, MPC GMO started incurring losses. However, according to the investment agreement Page 4 Clause 8, the investor was required to pay its capital commitment: otherwise, late payment fees and damages would apply, since MPC GMO had already financed most of its operational assets through loans, which it was committed to repay. |



|  | The General partner attempted to negotiate several times to exit the investment or otherwise lower its commitment; however, MPC GMO sent several legal notices for payment demanding that if the Port Fund defaulted on its payment, said default would result in legal claims against the Port Fund and the seizure of its other Fund assets, which would expose its other operational assets to risk.<br><br>On 9 July 2013, the Fund and MPC GMO signed an agreement to exit its investment commitment resulting in the fund owing USD 6,660,292 (Committed amount was reduced to USD 24 million). The amount was recognized as payables, which were paid in installments during the period from that date until 2016, and accordingly, the Fund satisfied all of its commitments. |
| Investment Exit | The investment was exited, and the total invested amount was lost. |

### C – Global Gateway Development Corporation (GGDC)

| | |
|---|---|
| Investment Objective | Unique investment opportunity in the development of integrated logistics city through a multiple-use long-term lease in the Philippines |
| Fund's ownership percentage | • The Fund owned nearly 100% of the project through its full ownership of GGDC Holding (Cayman Islands) and Global Gateway Development (GGDC), also incorporated in the Cayman Islands and Global Gateway Development (GGDC), which was incorporated in the Philippines. |
| Investment Starting Date | 16 July 2008 |
| Fund's commitment | USD 100 million |
| Amount Paid | USD 100,040,000 |
| Payment Method | (51) bank transfers |
| Investment Status | • The investment is directed towards the development of a project named "Sabah Al Ahmed Logistics City" in the Philippines.<br>• The project land was leased to Global Gateway Development (GGDC) of the Philippines.<br>• A main project contractor was appointed to develop the project. |



| | • Clark Gateway Investment Group is a limited liability company established in the Cayman Islands by the Port Fund as an exit vehicle for Global Gateway Development Corporation (GGDC), which owns Sabah Al Ahmed Logistics City and the Medical City, which they were owned during the entire investment period by the Port Fund. |
|---|---|
| Investment Exit | The investment was exited in November 2017 through the sale of GGDC Holdings for a net amount to the Limited Partners exceeding USD 300 Million (i.e. a profit of 2.0x the invested amount) about 200% return on the principle investment. The sale process took place from March 2017 until November 2017 to conclude the negotiations, prepare the power of attorney and obtain governmental as well as regulatory approvals for this deal, which is considered one of the most important deals in the Philippines. |

**D – Negros Navigation**

| Investment Objective | Unique investment opportunity in logistics supply chain, management, and in transport, shipping and the port management sector. |
|---|---|
| Fund's ownership percentage | • During 2008, KGLI-NM Holdings acquired Philippine-based Negros Navigation. The Fund acquired an 80% stake in Negros Navigation by acquiring 80% of KGLI-NM Holdings. The remaining 20% was owned by the management company.<br>• The Fund's ownership of the project was as following: The Fund fully owned KGL Investment Cooperatief U.A. (the Netherlands) which fully owned KGL Investment BV (the Netherlands) which owned 80% of KGLI-NM Holdings, and the later owned Negros Navigation.<br>• Subsequently, by the end of 2010 China Asian Fund (CAF) injected USD 100 million in the KGLI-NM Holdings for a 60% stake in the company, making the Fund's stake in KGLI-NM Holdings 32%. The management company accordingly owned 8%. The injected funds provided Negros Navigation with the monies to allow it to expand in the Philippines market. |



| | |
|---|---|
| | • The new capital led to the acquisition of 98% of ATS Company in the Philippines, thus creating a major logistics company in the Philippines (through the merger of Negros Navigations and ATS), which was later renamed as 2GO Group. |
| Investment Starting Date | 30 January 2008 |
| Fund's commitment | USD 28.5 million |
| Amounts paid by the Fund | USD 28.5 million in cumulative preferred shares in KGLI-NM Holding |
| Commitment Payment Method | Payment was made through bank transfers out of the Fund's bank account to KGLI-NM Holding (the Philippines) which the Fund had ownership. |
| Investment Status | Despite the global financial crises and the adverse impact thereof on the navigation industry, the investment achieved net returns of USD 91,940,628. |
| Investment Exit | In September 2016, the investment was exited for USD 91,940,628 achieving a return on investment of approximately 222% apart from the original investment of capital.<br><br>Out of those proceeds, USD 30,000,000 were distributed to the Limited Partners of the Port Fund, and the remaining amount was used to pay the Fund's liabilities. |



## 3.    Response to the Bill of indictment and Conclusion

The response to the Bill of indictment is presented in the following manner:

a.   Listing the text of accusation as described in the Bill of indictment.
b.   The Financial Transaction(s) related to the accusation.
c.   Review of the financial transaction according to the Fund's provisions and documents.
d.   Inspecting the transaction documents.
e.   Final conclusion on the inspection and conformity with the Fund's provisions and documents.

### 3-1   The First Accusation

#### A – The text of accusation as included in the Bill of indictment

In her considered capacity as Public Employee (Investment Manager of the Port Fund in which Public Institution for Social Security (PIFSS) and Kuwait Ports Authority (KPA) directly hold a stake exceeding 25%), she unlawfully embezzled KD 129,442 (Kuwaiti Dinars One Hundred Twenty-Nine Thousands and Four Hundred Forty-Two) and USD 6,060 (US Dollars Six Thousands and Sixty) owned by the Port Fund, as she exploited her position as the sole authorized signatory to the Fund's accounts inside the State of Kuwait, transferred to the amount her accounts and issued to herself the cheques disclosed in details in the documents, with the purpose of embezzling those amounts, and not for the Fund management or investment purposes, as set out in the investigations.

#### B – The Financial Transaction(s) Related to the Accusation

The amount listed in the Bill of indictment consists of four groups of amounts due for Lazareva Maria out of the Fund's accounts, summarized as follows:

| Item | Amount KWD | Amount USD |
|---|---|---|
| The total amount of salaries due in her capacity as member of the BOD of (Port Link G.P), the General Partner, for the period from July 2008 until December 2014 (with the exception of 12 months during 2010) for a total of 66 months in the amount of KWD 1,500 per month. | 99,000 | – |
| Due for attending (5) Advisory Board meetings for the period from 2010 to 2014. | 25,000 | – |
| Reimbursement for administrative expenses paid out of her personal account during the Advisory Board meetings as follows: | – | – |
| • Travel and accommodation expenses for two meetings in 1/2010 and 2/2011. | 5,000 | – |
| • Travel and accommodation expenses for two meetings in 1/2010 and 2/2011. | 442 | 6,060 |
| **Total** | **129,442** | **6,060** |



**C – Reference of the Financial Transaction According to the Fund's Provisions and Documents**

**C.1** As for the salaries, she is entitled to receiving them in her capacity as a board member (Director) of the General Partner, Port Link GP LTD, which is in charge of the Fund's business and managing its affairs.

**1)** Port Link GP LTD is a limited liability company established in the Cayman Islands for the purposes of managing the Fund's activities and affairs. As per the Port Link's GP LTD Articles of Incorporation dated 8 March 2007, Article 78 states that the directors' salaries are determined by a resolution issued by the directors of the General Partner.
(Please see attachment 1-1)

**2)** Port Link GP LTD's BOD was formed as per resolution issued in April 2007 to comprise 3 directors as follows:
- Lazareva Maria (director)
- Saeed Dashti (director)
- Dr. Mahdy Al-Jazzaf (director)
  (Please see attachment 1-2)

**3)** On 27 November 2007, the BOD issued a resolution, which was approved by all directors, determining BOD members' salaries stating that each director would receive KWD1,500 per month, paid annually and that this resolution was effective 1 August 2007 (effective the first month following the Initial Closing Date).
(Please see attachment 1-3)

**4)** Since the General Partner's strategy aimed at directing most of the Fund's liquidity towards investments, payment of GP BOD salaries due were deferred.



5) Therefore, the amounts were paid over the years extending from 2010 to 2014 for a total of KWD 99,000 to Lazareva Maria, made in 5 payments as follows:

| Date | Bank | CHQ No./Telex Transfer | Port Fund Account Number | Particulars | KWD |
|---|---|---|---|---|---|
| 29-Aug-10 | HSBC | Telex Transfer | 001-004001-160 | Total amount of salaries from July 2008 until the end of December 2009 (KD27000) (KWD 1500*18 months) | 27,000.00 |
| 11-Apr-12 | HSBC | 214469 | 001-004001-001 | Total amount of salaries from January until the end of December 2011(KWD 1500*12 months) | 18,000.00 |
| 24-Jun-13 | Ahli Bank of Kuwait | 9 | 0603493283002 | Total amount of salaries from January until the end of December 2012 (KWD 1,500 *12) | 18,000.00 |
| 13-Feb-14 | Ahli Bank of Kuwait | 19 | 0603493283002 | Total amount of salaries for January until the end of December 2013(KWD 1,500 *12) | 18,000.00 |
| 15-Dec-14 | Ahli Bank of Kuwait | 35 | 0603493283002 | Total amount of salaries for January until the end of December 2014(KWD 1,500 *12) | 18,000.00 |
| Total (Only Ninety Nine Thousand Kuwaiti Dinars) | | | | | 99,000.00 |

(Please see attachment 1-4)



**C.2. Allowances for Attending the Advisory Board Meetings:**

1. As per the Fund's PPM issued in April 2007 (page 103) the GP has been granted the right to appoint the Advisory Board for the Fund. The subscription provisions were approved by all subscribers upon their signature on the amended and restated LPA. Additionally, the PPM stated on page 113 that The Fund will pay all expenses related to the fees, activities and investments related to the General Partner.

   i. Please see attachment 1-5
   ii. Please see attachment 1-6
   iii. Please see section 2-3, paragraph 3, of this report.

2. After the first and second secondary capital raise, the Advisory Board was re-appointed as per a resolution issued by the GP to include the following members:

   • Mr. Saeed Dashti (Chairman)
   • Mr. Robert Bourghese (member)
   • Mr. Faisal Al Musalam (member representing PIFSS)
   • Mr. Abdul Aziz Al Ousaimi (member representing KPA)
   • Ms. Lazareva Maria (member)

3. After the first secondary capital raise, remunerations and fees were approved for Advisory Board members as per a resolution issued by the GP, which approved the following:

   • The Chairman is entitled to remuneration in the amount of KWD 7,000 for attending each meeting for a maximum number of 2 meetings per year.

   • The Advisory Board member is entitled to remuneration in the amount of KWD 5,000 for attending each meeting for maximum 2 meetings per year.

   • The fund shall reimburse all expenses related to travel and accommodation back to the Chairman and the Advisory Board members from the Fund's account.

4. On 20 October 2011 (after the first secondary capital raise), the remunerations and fees were approved for Advisory Board members as per a resolution issued by the Advisory Board, where the same remunerations were approved as per (item 3 above), approving the following remuneration:

   • The Chairman is entitled to remuneration in the amount of KWD 7,000 for attending each meeting for a maximum number of 2 meeting per year.



- The Advisory Board member is entitled to remuneration in the amount of KWD 5,000 for attending each meeting for a maximum number of 2 meeting per year.

- The fund shall reimburse all expenses related to travel and accommodation back to the Chairman and the Advisory Board members from the Fund's account.
(Please see attachment 1-7)

5. Based on that, several amounts were transferred during the period from 2011 to 2014 for a total of KWD 25,000 to Lazareva Maria, made in 5 payments as follows:

| Date | Bank | CHQ No. | Port Fund Account Number | Particulars | KWD |
|---|---|---|---|---|---|
| 25-Oct-11 | HSBC | 214454 | 001-004001-001 | Advisory Board allowance for Meeting # 2/2011 | 5,000.00 |
| 1-Nov-11 | HSBC | 214459 | 001-004001-001 | Advisory Board allowance for Meeting #1/2010 -Same cheque covered travel expenses in the amount of KD 5,000 (included in the following table to avoid duplication) | 5,000.00 |
| 9-Apr-12 | HSBC | 214465 | 001-004001-001 | Advisory Board allowance for Meeting # 1/2012 | 5,000.00 |
| 24-Jun-13 | Ahli Bank of Kuwait | 6 | 0603493283002 | Advisory Board allowance for Meeting # 1/2013 | 5,000.00 |
| 23-Feb-14 | Ahli Bank of Kuwait | 22 | 0603493283002 | Advisory Board allowance for Meeting # 2/2013 | 5,000.00 |
| Total (Kuwaiti Dinars Twenty-Five Thousand only) | | | | | 25,000.00 |

(Please see attachment 1-8)



**C.3. Travel and Accommodation Expenses**

1. As per the Advisory Board's resolution, the Fund will pay all expenses related to Advisory Board members' travel, accommodation and other expenses related to attending Advisory Board meetings. In addition to that, the PPM (page 113) states that The Fund will pay the travel expenses of personnel of the General Partner and its advisors.
(Please refer to item 3.1/ C.2–4 & 5 of this report.)

2. Lazareva Maria, in her capacity as a director of the General Partner and member of the Advisory Board, incurred expenses for attending meetings No. 1/2010 and 2/2011, which were paid from her own account for the amount of KWD 5,000 and subsequently reimbursed out of the Fund's account as per the following transfer (Item 4 below includes travel and accommodation expenses for attending the same two meetings).

| DATE | BANK | CHQ NO. | Port Fund Account No. | PARTICULARS | KWD |
|---|---|---|---|---|---|
| 1-Nov-11 | HSBC- | 214459 | 001-004001-001 | Travel expenses in the amount of KD 5000 (was deducted from the next column to avoid duplication) - Same cheque covered Advisory Board allowance for eeting#2/2011 for an amount of KD 5,000 (which was deducted from the next column to avoid duplication) | 5,000.00 |

(Please refer to item 3-1/ C2 / 6 of this report.)

3. Lazareva Maria, in her capacity as a director of the General Partner and member of the Advisory Board, incurred car rental expenses in her trip from China to Manila for attending a meeting1/2010 which was paid from her own— account and reimbursed to her for an amount equivalent to KWD 442 as follows:

| Item | Amount in relevant currency | Amount in KD as per the forex rate on the date of the transaction |
|---|---|---|
| Car rental local for transportation | 10,500 Chinese Yuan | 442.000 |
| | | |
| **Total** | | **442.000** |



The amount was reimbursed out of the Fund's account as per the following transfer:

| Date | Bank | CHQ No./Transfer | Port Fund Account Number | Particulars | KWD |
|------|------|------------------|--------------------------|-------------|-----|
| 14-Dec-10 | HSBC- | Bank transfer | 001-004001-160 | Local transportation expenses related to Advisory Board meeting 1/2010 | 422 |

*(Please refer to attachment 1-9)*

4. Lazareva Maria, in her capacity as a director of the General Partner and member of the Advisory Board, incurred expenses for hotel accommodation for attending meeting No. 2/2011, which were paid out of her own pocket for an amount equivalent to USD 6,060.76 as follows:

| Date | Particulars | USD |
|------|-------------|-----|
| 20-Dec-11 | Accommodation expenses for The Savoy Hotel London | 926.50 |
| 21-Oct-11 | Business lunch at Chicago RIB shack London | 224.06 |
| 21-Oct-11 | Credit Card Fee for the Business Lunch transaction | 6.04 |
| 22-Oct-11 | Accommodation expenses for Sheraton Park Tower London | 4,750.88 |
| 22-Oct-11 | Credit Card Fee for the hotel accommodation transaction | 128.27 |
| | Foreign exchange differences | 25.01 |
| **Total** | | **6,060.76** |

The amount was reimbursed out of the Fund's account as per the following transfer:

| Date | Bank | CHQ No./Transfer | Port Fund Account Number | Particulars | USD |
|------|------|------------------|--------------------------|-------------|-----|
| 31-Dec-11 | HSBC | Bank transfer | 001-004001-160 | Accommodation and meeting expenses related to Advisory Board meeting 2/2011 | 6,060.76 |

(Please refer to attachment 1/10)

Page 26 of 79



5.  It is worth noting that during the Public Prosecution interrogations, Ms. Lazareva deposited all the amounts involved in this accusation into the case account.

*(Please see attachment 1-11)*
*(Please see attachment 1-12)*
*(Please see attachment 1-13)*

## D – Inspecting the Transaction Documents

The following documents were reviewed:

| Attachment # | Description |
|---|---|
| 1-1 | Port Link GP LTD's Articles of Incorporation |
| 1-2 | Document proving the appointment of PORT Link GP LTD's Board of Directors |
| 1-3 | Port Link GP LTD's resolution issued on 27 November 2007 |
| 1-4 | (1) Bank transfer + (4) cheques for a total amount of KWD 99,000 |
| 1-5 | PPM issued in April 2007, Pages 103 & 113 |
| 1-6 | A sample of the LPA signed by PIFSS confirming all subscribers' approval to all the PPM provisions. |
| 1-7 | Advisory Board Resolution dated 20 October 2011 in regards to the Board's terms of reference, its tasks and chairman and members remunerations. |
| 1-8 | (5) Cheques related to a total amount of KWD 25,000 |
| 1-9 | (1) Bank transfer in addition to supporting invoices - the forex value corresponding to the transaction date. |
| 1-10 | (1) Bank transfer in addition to a printed copy of Lazareva Maria's account (Amex credit card) showing payment details. |
| 1-11 | A copy of the receipts issued by the Ministry of Justice dated 18 September 2016 of cheques payment fee for an amount of KWD 129,000 and a copy of Al Ahli Bank of Kuwait's cheque. |
| 1-12 | A copy of the receipt issued by the Ministry of Justice dated 16 September 2016 of cheques payment fee for an amount of KWD 442. |
| 1-13 | A copy of the receipt issued by the Ministry of Justice dated 19 September 2016 of cheques payment fee for an amount of USD 6,060.76 |

## E – Final conclusion on the inspection and conformity with the Fund's provisions and documents:

The inspection has concluded that:

1.  All transactions stated under the First Accusation were executed in accordance with the PPM, LPA, General Partner's Articles of Incorporation, and resolutions issued by the General Partner, and there is no suspicion of unlawful embezzlement.

2.  All supporting documents related to all of the payments are in conformity with the fund's accounting records and have been duly reflected in the audited financial statements.



3.  The values of amounts stated under the First Accusation are in conformity with all amounts that were duly and lawfully paid to Lazareva Maria, Director of GP Board and Member of Advisory Board.

    **There is, therefore, no unlawful embezzlement of these amounts.**

## 3-2   The Second Accusation

### A – The text of accusation as included in the Bill of indictment

In her aforementioned capacity, she unlawfully facilitated for KGL Investment Company K.S.C. (Closed)  the embezzlement of KD 719,100 (Kuwaiti Dinars Seven Hundred Nineteen Thousand One Hundred) owned by the Port Fund, as she exploited her position as the sole authorized signatory on all the Fund's accounts inside the State of Kuwait to transfer from the Port Fund's account to KGL Investment Company's account number (0603723549201) at Al Ahli Bank of Kuwait. She used her authority as a Chief Executive Officer of KGL Investment Company to transfer the amount in two payments; the first was in the amount of KD 309,000 (Kuwaiti Dinars Three Hundred Nine Thousand)  and the second was in the amount of KD 410,000 (Kuwaiti Dinars Four Hundred Ten Thousand) to Al Morabitoon International Company, which is owned by the second defendant, Saeed Ismail Dashti, and others at Burgan Bank account number (3160001319), with the purpose of facilitating the embezzlement of that amount, and not for the fund management or investment purposes. This crime is associated with another intertwined felony, which is Money Laundering, listed as number 10 in the bill of indictment, as set out in the investigations.

### B – The Financial Transaction(s) Related to the Accusation

The amount listed in the Bill of indictment was transferred to KGL Investment Company K.S.C. (Closed), i.e. amount of USD 2,500,000 on August 12, 2010. This payment covered KGL Investment Company's fees for marketing the first secondary capital raise, i.e. a 5% of the USD 50 million raised in the first secondary capital raise of the Port Fund. The amount was transferred out of the Fund's Al Ahli Bank Account number 201-72359-0603
(Please refer to attachment 2-1)
(Please refer to attachment 2-2)

Since the beneficiary of that transaction, i.e. KGL Investment Company K.S.C. (Closed), received that due amount as marketing fees, therefore, it has the right to dispose of that amount to pay for amounts due to Al Morabitoon International Company as will be explained under the Tenth Accusation.



**C – Reference of the Financial Transaction According to the Fund's Provisions and Documents**

**C.1.** As to the amount paid to KGL Investment Company K.S.C. (Closed):

    (1)    On 3 August 2009, a commercial marketing agreement was signed between the Port Fund and KGL Investment Company K.S.C. (Closed) to market the Fund's capital raise. Clause (1-3) page 2 of the agreement sets forth that KGL Investment Company K.S.C. (Closed) is entitled to a 5% of the subscription amount, payable within 5 days from the receipt of the capital commitment into the Fund's bank account and to be paid from the Fund's money.
        (Please see attachment 2-3)

    (2)    On 14 July 2010 a subscription agreement was entered into between KGL Investment Company K.S.C. (Closed) in its capacity as the Port Fund marketer and Kuwait Ports Authority to subscribe in the Fund, where they later committed an amount of USD 50 million in the Port Fund L.P. (incorporated in the Cayman Islands), and the whole amount was paid into the Fund's bank account on July 19, 2010. Therefore, KGL Investment Company K.S.C. (Closed), the Fund's marketer in the State of Kuwait, was entitled to receive its fees against marketing the capital raise of the Fund at 5% of the subscription amount i.e. USD 2,500,000 (equivalent to KWD 719,100).
        (Please see attachment 2-4)

**C.2.** As to the amount paid to Al-Morabitoon International Company, it will be address as part of the Tenth Accusation.

**D – Inspecting the Transaction Documents**

    The following documents were reviewed:

| Attachment # | Description |
|---|---|
| 2-1 | One (1) bank transfer |
| 2-2 | Marketing license issued No. 24/2007 by the Ministry of Commerce and Industry and registration in the fund registry for a special marketing approval inside the State of Kuwait as per the Ministerial resolution No 347 for the year 2007. |
| 2-3 | Agreement between the Fund and KGL Investment Company K.S.C. (Closed) for marketing the Fund for the first and second secondary capital increase. |
| 2-4 | KPA Subscription Agreement in the Port Fund. |



**E – Final conclusion on the inspection and conformity with the Fund's provisions and documents:**

The inspection has concluded that:

(1)   All transactions listed under the Second Accusation were executed in accordance with the PPM, LPA, General Partner's Articles of Incorporation, and resolutions passed by the General Partner, and in accordance with the license issued by the Ministry of Commerce and Industry in Kuwait, providing KGL Investment Company K.S.C. (Closed) with the right to market the Fund inside the State of Kuwait, as well as the commercial agreements between the Fund and KGLI to market the fund for its capital raise. There is no suspicion of unlawful facilitation of embezzlement.

(2)   All transfers executed from KGL Investment Company K.S.C. (Closed) to Al Morabitoon International Company have nothing to do with the Fund's activities.

(3)   All amounts reported in the supporting documents related to the payments are in conformity with the fund's accounting books.

(4)   The values of amounts stated under the Second Accusation are in conformity to with all amounts that were duly and lawfully paid to KGL Investment Company K.S.C. (Closed).

**There is, therefore, no unlawful embezzlement of these amounts.**

## 3-3   The Third Accusation

**A – The text of accusation as included in the Bill of indictment**
In her aforementioned capacity, she unlawfully facilitated to (KGL Investment, Kuwait and Gulf Link, KGL International for Ports, Warehousing and Transport, KGLI-NM Holding, PetroLink Holding, KGL Asia ROHQ, Capital Link Holding, KGL petroleum and Clark Gateway Investment Group) the embezzlement of KD 1,059,000 (Kuwait Dinars One million Fifty-Nine Thousand) and an amount of USD 89,764,533.68 (US Dollars Eighty-Nine Million Seven Hundred Sixty-Four Thousand Five Hundred Thirty-Three and Sixty Eight Cents), which are owned by the Port Fund, as she exploited her position as the sole authorized signatory on all fund's accounts inside the State of Kuwait as exhibited in details in the documents, to transfer the total of the two amounts shown above to the aforementioned companies' accounts inside and outside of Kuwait, as detailed in the documents, with the purpose of facilitating the embezzlement of those amounts, and not for the fund management or investment purposes, as set out in the investigations.



## B – The Financial Transaction(s) Related to the Accusation

The amount reported in the bill of indictment consists of seventeen (17) sets of amounts transferred to the said companies from the Fund's accounts as summarized below:

| # | Transfer Beneficiary | Amount transferred in USD | Amount transferred in KWD |
|---|---|---|---|
| 1 | KGLI - Placement Fees for the initial subscription | 1,037,780.00 | - |
| 2 | KGLI - marketing fees for the first secondary capital raise | 2,500,000.00 | - |
| 3 | KGLI - marketing fees for the second secondary capital raise | 2,265,000.00 | - |
| 4 | KGLI – Management fees | 16,832,078.00 | - |
| 5 | KGLI - Reimbursement of expenses paid by KGLI to the Port Fund | - | (A) 40,000.000 |
| 6 | KGLI – as an intermediary account to pay an isntallment for MPC-GMO investment, in addition to fees and expenses | 4,900,000.00 | - |
| 7 | KGLI – repayment of a short-term advance paid to the Fund | 3,777,000.00 | - |
| 8 | KGLI – Service fees for the convertible loan agreement signed with KGL International for Ports | 1,000,000.00 | - |
| 9 | KGLI - Reimbursement ofexpenses paid by KGLI to the Port Fund | (B) 2,105,290.00 | - |
| 10 | Kuwait and Gulf Link for Transport Company – Advisory services costs | - | 20,000.000 |
| 11 | KGLI International For Ports – Dipco's investment | 20,600,000.00 | - |
| 12 | KGLI-NM Holding – Negros investment | 17,711,733.34 | - |
| 13 | PetroLink Holding – Reimbursement of an investment amount | 1,000,000.00 | - |
| 14 | KGL ROHQ – reimbursement of expenses | 6,700,000.00 | - |
| 15 | Capital Link – MPC GMO investment | 143,358.68 | - |
| 16 | Clark Gateway Investment Group – GGDC investment | 2,000,000.00 | - |
| 17 | KGL Petroleum-transferred to GGDC to invest in GGLC. | 7,090,000.00 | - |
| Total | | 89,662,240.02 | 60,000.000 |

(A) KWD 1,039,000 reported in the bill of indictment is not correct, since this amount includes a transfer for an amount KWD 1,000 (Kuwaiti Dinars One Thousand), not KWD 1,000,000 (Kuwaiti Dinars one million), therefore; the total of those amounts is KWD 60,000 and not KWD 1,059,000.

(B) USD 2,207,555 reported in the bill of indictment is not correct, since the transferred amount was USD 2,105,290 only, not USD 2,207,555, because there was a transfer from the Fund's USD bank account in the amount of USD 100,000 to the Fund's KWD account not to KGL Investment Company K.S.C. (Closed) and another amount of USD 2,265.00 which was mistakenly reversed by the bank (bank error), therefore the total amounts transferred in USD is USD 89,662,240.22 instead of USD 89,764,533.88.



## C – Reference of the Financial Transaction According to the Fund's Provisions and Documents

**C.1.** The amounts transferred to KGL Investment Company K.S.C. (Closed) – lacement Fee

(1) The PPM issued in April 2017 (page 8) states that a placement fee of 3% of each investor's Capital Commitment is payable to KGL Investment Company KSC(Closed) at the time of subscription by the subscriber and to be paid in addition to each investor's Capital Commitment or it will be deducted out of the amount committed.
(Please see attachment 3-1)

(2) In April 2007, an agreement was entered between the General Partner and KGLI, appointing KGL Investment Company K.S.C. (Closed) as the Placement Agent.
(Please see attachment 3-2)

(3) As per the initial subscription, KGL Investment Company K.S.C. (Closed) was entitled to receiving the following amounts:

| Subscriber | Capital Commitment USD | Subscription Fee in USD (3% as per the PPM) | Actual Amount paid through the Fund's accounts in USD | Difference in USD | Reasons |
|---|---|---|---|---|---|
| Al Ahlia Holding Company | 3,000,000 | 90,000 | 90,000 | - | |
| Al Ahlia Insurance Company | 3,000,000 | 90,000 | 60,000 | (30,000) | Subscriber negotiated the fee and the placement agent agreed |
| Behbehani Investment Company | 1,000,000 | 30,000 | 30,000 | - | |
| General Retirement & Social Insurance Authority, Qatar | 9,852,000 | 295,560 | 147,780 | (147,780) | Subscriber negotiated the fee and the placement agent agreed |
| Gulf Investment corporation | 10,000,000 | 300,000 | 150,000 | (150,000) | Subscriber negotiated the fee and the placement agent agreed |



| Subscriber | Capital Commitment USD | Subscription Fee in USD (3% as per the PPM) | Actual Amount paid through the Fund's accounts in USD | Difference in USD | Reasons |
|---|---|---|---|---|---|
| KGL Investment Company | 20,000,000 | 600,000 | - | (600,000) | Same beneficiary |
| Kuwait Re-insurance | 2,000,000 | 60,000 | 40,000 | (20,000) | Subscriber negotiated the fee and the placement agent agreed |
| Mohamed Ali Al Naqi | 3,000,000 | 90,000 | 90,000 | - | |
| Public Institution for Social Security (PIFSS) | 40,000,000 | 1,200,000 | 400,000 | (800,000) | Subscriber negotiated the fee and the placement agent agreed |
| Yacouq Bebhehani | 1,000,000 | 30,000 | 30,000 | - | |
| Total | 188,152,000 | 2,786,560 | 1,037,780 | 92,852,000 | |

(4) Therefore, an amount of USD 1,037,780 was transferred to KGL Investment Company K.S.C. (Closed) through two (2) bank transfers as follows::

| Date | Payment method | Fund Bank Account | Beneficiary Bank Account | Beneficiary Name |
|---|---|---|---|---|
| 01-Aug-07 | Bank Transfer | HSBC- account number 001-004001-160 | Gul Bank - Account number 10949957 | 947,780 |
| 22-Aug-07 | Bank Transfer | HSBC- account number 001-004001-160 | Gul Bank - Account number 10949957 | 90,000 |
| Total | | | | 1,037,780 |

**C.2. The amounts transferred to KGL Investment Company K.S.C. (Closed) towards marketing fees for the first secondary capital raise:**

(1) At the time of issuing the PPM dated August 2009 for the first and the second secondary capital raises to increase the capital for the Fund ranging between USD 50-100 million, an agreement was entered between the Fund and KGL Investment Company K.S.C. (Closed) on August 03, 2009 to market the Fund's capital raise. Article (1.3), Page 2, of the agreement states that KGL Investment Company K.S.C. (Closed) is entitled to a 5% marketing fee for the subscription amount, payable by the Fund, within 5 days from the receipt of the capital commitment into the Fund's bank account.

(Please see attachment 2-3)



(2)    Therefore, KGL Investment Company K.S.C. (Closed) was entitled to receive USD 2,500,000 or a 5% fee of the capital commitment, and that amount was transferred to KGL Investment Company K.S.C. (Closed) through one (1) bank transfer as follows:

| Date | Payment Method | Fund Bank Account- | Beneficiary Bank Account- | Amount (USD) |
|---|---|---|---|---|
| 11-Aug-10 | Bank Transfer | HSBC- account number 001-004001-160 | Al Ahli Bank of Kuwait account number 0603723549201 | 2,500,000 |

(Please see attachment 3-3)

(3)    It should be noted that KGL Investment Company K.S.C. (Closed) was entitled to marketing fees for the first secondary capital raise. However, it didn't receive any placement fees to avoid duplication of computation.

**C.3. The amounts transferred to KGL Investment Company K.S.C. (Closed) towards marketing fees for the second secondary capital raise:**

(1)    At the time of issuing the PPM dated August 2009 for the first and the second secondary capital raises in order to raise money for the Fund ranging between USD 50-100 million, an agreement was entered between the Fund and KGL Investment Company K.S.C. (Closed) on August 03, 2009 to market the Fund for its capital increase. Article (1.3), Page 2, of the agreement states that KGL Investment Company K.S.C. (Closed) is entitled to a 5% marketing fee for the subscription amount, payable within 5 days from the receipt of the capital commitment into the Fund's bank account.

(Please see attachment 2-3)

(2)    Therefore, KGL Investment Company K.S.C. (Closed) was entitled to receive USD 2,265,000 or a 5% fee of the capital commitment in raising USD 45,300,000 capital as follows:

| Subscriber | Capital Commitment Increase |
|---|---|
| Behbehani Investment | 300,000 |
| GIC | 10,000,000 |
| KPA | 35,000,000 |
| **Total** | **45,300,000** |

5% * USD 45,300,000 = USD 2,265,000



(3)   The amount of USD 2,265,000 was transferred to KGL Investment Company K.S.C. (Closed) through one (1) bank transfer as follows:

| Date | Payment Method | Fund Bank Account- | Beneficiary Bank Account | Amount (USD) |
|------|----------------|--------------------|--------------------------|--------------|
| 01-Jul-13 | Bank Transfer | Al Ahli Bank of Kuwait account number 001-4932283-0603 | Al Ahli Bank of Kuwait account number 0603723549002 | 2,265,000 |

(Please see attachment 3-4)

(4)   It should be noted that KGL Investment Company K.S.C. (Closed) was entitled to marketing fees for the second secondary capital raise. However, it didn't receive any placement fees to avoid duplication of computation.

Note: Regarding C2 and C3: According to the PPM issued in August 2009, which targeted to raise money for the Fund in the range of 50-100 Million, KGL Investment Company was able to raise an aggregate amount of USD 95.3 Million.

## C.4.  The amounts transferred to KGL Investment Company K.S.C. (Closed) – Management Fee:

(1)   The PPM issued in April 2007 (Page 8) states that the Management Fee is equal to 2% per annum of the aggregate Capital Commitments and will be reduced to 1.5% per annum if the Fund's Term is extended for additional two one-year period.

(Please section 2-3, item 4)

(2)   KGL Investment Cayman Ltd. (incorporated and governed in accordance with the laws of the Cayman Islands) is the Investment Manager, as per the Management Agreement signed with the Investment Manager and as per the agreement on page 6 (Clause 1.5) the Investment Manager is entitled to an annual management fee equal to 2% of the aggregate Capital Commitments for the date of the Initial Closing Date until December 31 of the fifth anniversary of the Initial Closing Date, then reduced to 1.5% per annum for subsequent periods until the end of the Fund term (i.e., two additional years).
(Please see attachment 3-5)

(3)   Since there is an assignment of receivables between KGL Investment Cayman LTD and KGL Investment K.S.C. (Closed) whereby KGL Investment Company K.S.C. (Closed) was authorized to receive the Management Fees directly into its account.
(Please see attachment 3-6)



(4)   Therefore, KGL Investment Company K.S.C. (Closed) was entitled to receiving the Management Fee amounts as per the assignment of receivables as follows:

| Financial Period/ FY Ending 31 December for Each Period | Total Capital Commitment in USD as per the audited financials | Management fees percentage | Value of Management Fees due in USD | Total amounts transferred to KGLI in USD |
|---|---|---|---|---|
| July 15, 2007-December 31, 2008 | 92,852,000 | 2.93% Including the whole period of 535 days) i.e. from July 15, 2007 until December 31, 2008. | 2,721,963 | - |
| 2009 | 142,852,000 | 2.00% | 4,281,697 (*) | - |
| 2010 | 142,852,000 | 2.00% | 2,857,040 | 7,424,478 |
| 2011 | 142,852,000 | 2.00% | 2,857,040 | - |
| 2012 | 178,152,000 | 2.00% | 3,563,040 | - |
| 2013 | 188,152,000 | 1.50% | 3,022,280 (**) | 6,585,320 |
| 2014 | 188,152,000 | 1.50% | 2,822,280 | 2,822,280 |
| 2015 | 188,152,000 | 0.00% | No management fee is due during this period | - |
| 2016 | 188,152,000 | 0.00% | No management fee is due during this period | - |
| 2017 | 188,152,000 | 0.00% | No management fee is due during this period | - |
| Total | | | 22,125,340 | 16,832,078 |

* It was approved to include KPA to benefit from the Fund's profits for the period from 30 July 2007 until 31 December 2008, therefore, the Investment manager has retroactively approved the Management Fees for the past period (535 days) in the amount of USD 1,424,658, for that period (i.e., until the end of 2008) in addition to its 2% fees on the capital commitment for 2009. KPA benefited from the allocation of the retroactive profits since the First Closing Date until 31 December 2010 in the amount of USD 11,992,286.

** A Management Fee was calculated for a subscription amount of USD 10.3 million that was raised by the Fund during 2013 through the second secondary capital raises retroactively since 2012, similar treatment given to KPA's stake of USD 35 million, 2%*10.3 = USD 206,000.



(5)   USD 16,832,078 was transferred to KGL Investment Company K.S.C. (Closed) through eleven (11) bank transfers as follows:

| Date | Payment Method | Fund Bank Account | Beneficiary Account | Amount in USD |
|---|---|---|---|---|
| 25-Jul-10 | Bank Transfer | HSBC bank account number 001-004001-160 | Al Ahli Bank Account number 0603723549201 | 2,424,658 |
| 25-Jul-10 | Bank Transfer | HSBC bank account number 001-004001-160 | Al Ahli Bank Account number 0603723549201 | 2,142,780 |
| 21-Nov-10 | Bank Transfer | HSBC bank account number 001-004001-160 | Al Ahli Bank Account number 0603723549201 | 2,857,040 |
| 17-Apr-13 | Bank Transfer | Al Ahli Bank of Kuwait number 0603-493283-001 | Al Ahli Bank Account number 001-4932283-0603 | 3,563,040 |
| 22-Apr-13 | Bank Transfer | Al Ahli Bank of Kuwait number 0603-493283-001 | Al Ahli Bank Account number | 1,336,140 |
| 15-Aug-13 | Bank Transfer | Al Ahli Bank of Kuwait number 0603-493283-001 | 001-4932283-0603 | 980,570 |
| 01-Oct-13 | Bank Transfer | Al Ahli Bank of Kuwait number 0603-493283-001 | Al Ahli Bank Account number | 705,570 |
| 05-Jan-14 | Bank Transfer | Al Ahli Bank of Kuwait number 0603-493283-001 | 001-4932283-0603 | 705,570 |
| 03-Apr-14 | Bank Transfer | Al Ahli Bank of Kuwait number 0603-493283-001 | Al Ahli Bank Account number | 705,570 |
| 01-Jul-14 | Bank Transfer | Al Ahli Bank of Kuwait number 0603-493283-001 | 001-4932283-0603 | 705,570 |
| 01-Oct-14 | Bank Transfer | Al Ahli Bank of Kuwait number 0603-493283-001 | Al Ahli Bank Account number | 705,570 |
| Total | | | | 16,832,078 |

(Please see attachment 3-7)

(6)   The difference between the Management Fees actually due and payable to the Investment Manager (USD 22,125,340) and the amount which was actually paid to the Investment Manager (USD 16,832,078) was accounted for towards the capital commitment accounts for KGLI and considered as part of its capital commitment payments to the Fund. This difference is USD 5,293,262 in favor of KGL Investment Company.



**C.5. The amounts transferred to KGL Investment Company K.S.C. (Closed) – Reimbursement of expenses paid on behalf of the Fund:**

(1)  As per the PPM issued in April 2007, on page 113, The Fund will pay all expenses related to the fees, activities and investments related to the General Partner.
(Please see attachment 3-8)

(2)  KGL Investment Company K.S.C. (Closed) has made some payments on behalf of the Fund, then it was reimbursed for these amounts from the Fund's bank accounts as follows:

| Amounts paid by KGL Investment Company K.S.C. (Closed) | | | Amounts reimbursed to KGL Investment Company K.S.C. (Closed) from the Fund's bank accounts | | |
| --- | --- | --- | --- | --- | --- |
| Date | Particulars | KWD | Date | Particulars | KWD |
| 27-Jul-09 | An invoice issued by Morgan Stanley for providing advisory services to the Port Fund for Sequoia project (partial payment) | 14,000 | 27-Jul-09 | Reimbursement of the first amount through bank transfer out of Al Ahli Bank of Kuwait to KGLI | 14,000 |
| 11-Feb-13 | An invoice issued by Protiviti for advisory services provided for the Fund paid through cheuqe number 1430 at Al Ahli Bank of Kuwait | 10,000 | 18-Apr-13 | Reimbursement of the second and third amounts through a bank transfer from the Fund's Al Ahli Bank of Kuwait to KGLI | 25,000 |
| 27-Mar-13 | Transfer from Kuwait International Bank | 15,000 | | | |
| 10-Feb-2013 | A transfer from the Fund's Al Ahli Bank of Kuwait | 1,000 | 16-May-2013 | a bank transfer from the Fund's Al Ahli Bank of Kuwait to KGLI | 1,000 |
| **Total Amount Borrowed** | | **40,000** | **Total Amount Reimbursed** | | **40,000** |

(A)  That amount was reported incorrectly in the Bill of Indictment, as the transferred amount was KWD 1,000 (Kuwaiti Dinars One Thousand only) not KWD 1,000,000 (Kuwaiti Dinars One Million).
(Please see attachment 3-9).



**C.6. Amounts transferred to KGL Investment Company K.S.C. (Closed) – MPC-GMO Investment:**

(1) As per the agreement made between the Port Fund and MPC -GMO dated 12 November 2007, the Port Fund committed to invest USD 25 million in MPC-GMO.

(Please refer to item 2-4b of this report)
(Please refer to attachment 3-10)

(2) As per MPC's letter requesting the Fund to pay the first installment of USD 252,500, the Fund had to pay that amount on 3 December 2007. (Please refer to attachment 3-11)

(3) On 29 August 2007, the Fund transferred USD 4,900,000 to KGL Investment Company K.S.C. (Closed) for the following purposes.

| Particulars | Amount in USD |
|---|---|
| KGL Investment Company K.S.C. (Closed) bank account was used as an intermediary account to make the payment to MPC | 4,750,000 |
| Payment made for expenses paid by KGLI on behalf of the Fund as will be explained later in this report. | 150,000 |
| **Total** | **4,900,000** |

The amount was transferred to KGL Investment Company K.S.C. (Closed) as follows:

| Date | Payment Method | Fund's Bank Account | Beneficiary Account | Amount in USD |
|---|---|---|---|---|
| 30-Aug-07 | Bank Transfer | HSBC Bank Account number - 001-004001-160 | Gulf Bank account number 10949957 then Gulf Bank account number 4807364 | 4,900,000 |

(Please refer to attachment 3-12)

(4) On February 12, 2008, KGL Investment Company K.S.C. (Closed) transferred USD 4,750,000 to MPC-GMO as follows:

| Date | Payment Method | Fund's Bank Account | Beneficiary Account | Amount in USD |
|---|---|---|---|---|
| 12-Feb-08 | Bank Transfer | Bank of Kuwait and the Middle East account 8538 number 1157 | Bank of New York for MPC-GMO | 4,750,000 |

It is mentioned in the transfer script that it was done on behalf of the Fund.

(Please refer to attachment 3-13)



(5) KGLI paid several expenses on behalf of the Port Fund as detailed in section C-9 below throughout the period from November 2007 until September 2008. A total of USD 427,213 was transferred against works and services for Global Gateway Logistics City Project and Negros Project by Peregrine, which was then the main contractor of both projects. Below is a summary of the transfers:

| Date | Beneficiary | USD |
|------|-------------|-----|
| 1 November 2007 | Peregrine | 4,232.63 |
| 11 December 2007 | Peregrine | 27,841.60 |
| 2 March 2008 | Peregrine | 12,076.97 |
| 28 April 2008 | Peregrine | 38,311.73 |
| 18 June 2008 | Peregrine | 7,250.00 |
| 2 June 2009 | Peregrine | 150,000.00 |
| 22 September 2008 | Peregrine | 187,500.00 |
| Total | | 427,212.93 |

The amount reported in the Bill of indictment represents an installment of the total expenses and costs paid by KGL Investment Company K.S.C. (Closed) on behalf of the Fund.

(Please refer to attachment 3-14)

## C.7. Transfers to KGL Investment K.S.C. (Closed) – Repayment of short-term advances to the Fund:

(1)    Due to shortage in the Fund's liquidity during the period from 31 October 2012 to 16 January 2013, KGL Investment K.S.C. (Closed) provided the required liquidity to the Fund through five (5) bank transfers totaling US 3,777,000 as follows:

| Date | Payment Method | KGLI Bank Account | The Fund's Bank Account | Amount in USD |
|------|----------------|-------------------|-------------------------|---------------|
| 31/10/2012 | Telex Transfer | Al Ahli Bank of Kuwait account # 0603723549201 | HSBC 001-004001-001 | 2,477,000 |
| 23/12/2012 | Telex Transfer | Al Ahli Bank of Kuwait account # 0603723549201 | HSBC 001-004001-160 | 300,000 |
| 14/01/2013 | Telex Transfer | Al Ahli Bank of Kuwait account # 0603723549201 | BKME 11581420 | 200,000 |
| 14/01/2013 | Telex Transfer | Al Ahli Bank of Kuwait account # 0603723549201 | HSBC 001-004001-160 | 300,000 |
| 16/01/2013 | Telex Transfer | Al Ahli Bank of Kuwait account # 0603723549201 | BKME 11581420 | 500,000 |
| Total | | | | USD 3,777,000 |

(Please refer to attachment 3-15)



(2)    The same amount has been reimbursed back to KGL Investment Company K.S.C.
(Closed)                                   as                                   follows:

| Date | Payment Method | KGLI Bank Account | The Fund's Bank Account | Amount in USD |
|------|----------------|-------------------|-------------------------|---------------|
| 22/04/2013 | Transfer Letter | Al Ahli Bank of Kuwait account # 001-493283-0603 | Al Ahli Bank of Kuwait account # 0603-723549-002 | 2,7 77,000 |
| 16/04/2013 | Transfer Letter | Al Ahli Bank of Kuwait account # 001-493283-0603 | Al Ahli Bank of Kuwait account # 0603-723549-002 | 1,000,000 |
| **Total** | | | | **USD 3,777,000** |

(Please refer to attachment 3-16)

## C.8. Transfers to KGL Investment K.S.C. (Closed) for the DIPCO's convertible loan with KGL International for Ports, Warehousing and Transportation:

(1)    On 22 August 2007, a convertible loan agreement was signed between the Fund and KGL International for Ports, Warehousing and Transportation related to offering a USD 20 million loan.

(Please refer to item 2- 4 -A of this report)
(Please refer to attachment 3-17)

(2)    As DIPCO started to build the port, the largest portion of the equity was used, so the Company had to secure a loan for USD 480 million. The project suffered the effects of the global financial crisis and the Arab Spring, and the work on Project was put on-hold.  DIPCO  subsequently  entered  into  negotiations  with  the  Egyptian government where ultimately, the Egyptian Government unilaterally terminated the concession agreement signed with DIPCO.

(3)    The project delay resulted in increased expenses and hindered the process of drawing the loans, which resulted in the project running out of cash by 1Q2009. A new  management  and  operational  teams  were  hired  and  the  Company  was committed to another capital increase of USD 115 million in cash, credit lines, letter of guarantees and bonds, so DIPCO reached an agreement with the Egyptian Ministry of Transportation, the contractors, and suppliers to move forward with the project to guarantee reserving 2.5 million TEU by the time the project started its operations in 2010.

(4)    In order to find the best exit means and investment restructuring for the Fund's investment in DIPCO, Candlewood Partners, a financial advisory firm, was appointed at the beginning of 2009 to provide the Fund with options and other related services in regard to the Fund's investment in DIPCO in the form of convertible loan into shares.



(5) USD 1,000,000 was paid to Candlewood Partners LLC for their services by Capital Link Holding (K.C.S.C), a subsidiary of KGL Investment Company K.S.C. (Closed) as follows:

| DATE | Candlewood Partners BANK ACCOUNT | AMOUNT USD |
|------|------|------|
| 11/05/2009 | 351521004389 | 100,000 |
| 23/06/2009 | 351521004389 | 100,000 |
| 04/08/2009 | 351521004389 | 100,000 |
| 04/10/2009 | 351521004389 | 100,000 |
| 07/10/2009 | 351521004389 | 100,000 |
| 29/12/2009 | 351521004389 | 100,000 |
| 29/12/2009 | 351521004389 | 100,000 |
| 03/05/2010 | 351521004389 | 300,000 |
| **Total** | | **1,000,000** |

(Please refer to attachment 3-18)

(6) On July 25, 2010, the Fund reimbursed USD 1,000,000 to KGL Investment Company K.S.C (Closed), through a bank transfer from the Fund's account to KGLI account as follows:

| Date | Payment Method | KGLI Bank Account | The Fund's Bank Account | Amount in USD |
|------|------|------|------|------|
| 25/07/2010 | Telex Transfer | HSBC – Account # 001-004001-160 | Al Ahli Bank of Kuwait account # 0603723549201 | 1,000,000 |

(Please refer to attachment 3-19)

**C.9. The amounts for a total of USD 2,105,290 transferred to KGL Investment Company K.S.C. (Closed) for reimbursement of payments made on behalf of the Fund:**

(1) KGL Investment Company K.S.C (Closed) paid over USD 3,465,807 in expenses on behalf of the Fund as follows:

Detailed expenses as listed in response to the Third Accusation paid on behalf of the Fund then was reimbursed later as follows:

- USD 150,000 (difference of the amount paid to MPC-GMO to Peregrine out of USD 427,213 (please refer to item C.6-5).
- USD 1,000,000 paid to Candlewood (please refer to item c-8).
- USD 100,000 as taxes paid by Capital Link (please refer to item c-14 below).
- USD 10,517 to Intertrust (please refer to item C.15-2 below).



In addition to:
- USD 277,213 paid to Peregrine as described in C6-5.
- USD 240,000 lease payments to GGDC project.
- USD 143,684 to Walkers for legal compliance.
- USD 1,544,393 miscellaneous payments to various service providers throughout the Fund's Term for legal, technical, compliance, administrative, public relations, and other services.

(Please refer to attachment 3-20)

(2) On June 27, 2013, the bank made an error as it executed a transfer to KGLI in the amount of USD 2,265.00. It was confirmed later that this amount was transferred in error; and hence, it was returned to the Fund's accounts out of KGLI's bank account on June 30, 2013.

(Please refer to attachment 3-21)

(3) On October 31, 2010, the Fund transfer USD 100,000 from the Fund's HSBC USD bank account number 001-004001-160 to the Fund's HSBC KWD account number 001-004001-001. That transfer was reported in the Bill of indictment in error as a transfer to KGL Investment Company K.S.C. (Closed).

| Date | Payment Method | Transferred from the Fund's account (in USD) | Transferred to the Fund's account (in KWD) | Amount transferred from the Fund's account in USD (in USD) |
|------|----------------|---------------------------------------------|---------------------------------------------|-------------------------------------------------------------|
| 31/10/2010 | Telex Transfer | HSBC bank account number 001-004001-160 | HSBC account number 001-004001-001 | 100,000 |

(Please refer to attachment 3-22)

## C.10. The payments transferred to Kuwait and Gulf Link Transport Company K.S.C. (Closed) (KGL) – Advisory Services:

(1) Kuwait and Gulf Link Transport Company provided advisory services to the Fund related to preliminary assessment for the proposed merger transaction of the Cargo side of Aboitiz Transport System Corporation and Negros Navigation Co. Inc., which later merged creating 2GO. Later, the Port Fund exited that investment with outstanding profit.

(2) On 7 September 2011, an invoice was received from Kuwait and Gulf Link Transport K.S.C. (Closed) for the services listed above.

(Please refer to attachment 3-23)



(3) On October 31, 2011, KWD 20,000 was transferred to Kuwait and Gulf Link Transport's bank account as follows:

| Date | Payment Method | Fund's account | Beneficiary Account | KWD |
|---|---|---|---|---|
| 31/10/2011 | Telex Transfer | HSBC # 001-004001-001 | Kuwait and Gulf Link Transport Company | 20,000 |

## C.11. The amounts transferred to KGL International for Ports, Warehousing and Transport – investment in DIPCO:

(1) 22 August 2007, a convertible loan agreement in shares of DIPCO, between the Fund and KGL International for Ports for USD 20 million.

(Please refer to sections 2-4-A and 3-3 C.8 of this report)
(Please refer to attachment 3-17)

(2) As per the investment of the Fund in DIPCO project through a Convertible Loan Agreement (Paragraph 4 on Page 8) the lender (the Port Fund) shall pay a 3% placement fee on the loan amount (i.e. USD 600,000).

(3) On August 27, 2007, USD 2,600,000 was transferred to KGL International for Ports, Warehousing and Transportation as follows:

| Date | from the Fund's Account | To KGL International for Ports, Warehousing and Transport | USD |
|---|---|---|---|
| 27/08/2007 | HSBC 001-00400-160 | Al Ahli Bank of Kuwait # 000242659031 | 20,600,000 |
| Total | | | 20,600,000 |

(Please refer to attachment 3-24)

## C.12. Amounts transferred to KGLI-NM Holdings – Negros Navigation Investment:

(1) In 2008, the Fund started its study to enter into Negros Navigation project in the Philippines for a total investment of USD 28.5 million.

(2) The Fund hired a group of advisors to set up the optimum ownership structure to meet the project's financial, legal and tax requirements.

- During 2008, KGLI-NM Holdings acquired Negros Navigation in the Philippines, whereby the Fund's stake was 80% of Negros Navigation through the acquisition of 80% of KGLI-NM Holdings while the remaining 20% was owned by the Management Company.



- The Fund's ownership of the project is as follows: The Fund fully owned KGL Investment Cooperatief U.A. - the Netherland, which fully owned KGL Investment BV – the Netherland, which owned 80% of KGLI-NM Holdings, as the latter owns Negros Navigation.

- Subsequently, at the end of 2010, China Asian Fund (CAF) injected USD 100 million in the KGLI-NM Holdings for a 60% stake in the Company. Therefore, the Fund's stake in KGLI-NM Holdings became 32%, and the management company owned 8%, and therefore, Negros Navigation received monies allowing it to expand its operations in the Philippines market.

- Indeed, the new capital were utilized to acquire 98% of ATS Company in the Philippines, thus creating the logistics giant company in the Philippines (through the merger of Negros Navigations and ATS), which was later renamed as 2GO Group.

  (Please refer to attachment 3-25)
  (Please refer to section 2-4-D of this report)

(3) Prior to CAF's investment, the Fund transferred the following amounts to KGLI-NM Holdings the Philippines, being the Company that owns Negros Navigation. Below are the transfers details:

| Date | Payment Method | Account number (The Fund) | Beneficiary Bank | Amount USD |
|---|---|---|---|---|
| 29-May-08 | Telex Transfer | BKME # 11581420 | Bank of Philippine Island 1924110208 | 4,000,000.00 |
| 15-Sep-08 | Telex Transfer | HSBC # 001-00401-160 | BANCO DE ORO # 4530052454 | 3,766,921.20 |
| 17-Dec-08 | Telex Transfer | HSBC # 001-00401-160 | BANCO DE ORO # 4530052454 | 1,000,000.00 |
| 4-Feb-09 | Telex Transfer | HSBC # 001-00401-160 | BANCO DE ORO # 4530052454 | 1,000,000.00 |
| 17-Jun-09 | Telex Transfer | HSBC # 001-00401-160 | BANCO DE ORO # 4530052454 | 7,944,842.00 |
| Total | | | | 17,711,733.34 |

(Please refer to attachment 3-26)

(4) In August 2016, the Fund exited its investment in Negros Navigation. As per the exit report issued in November 2016, the net value of that exit stood at USD 91,940,628 equivalent to a 222% return apart from the principal investment.

(Please see attachment 3-27)

(5)    On 3 October 2016, the Fund's administrator, TMF Group advised the General Partner of the exit results and the proposed distributions to the Limited Partners, which amounted to USD 30,000,000 to all Limited Partners of the Fund after using the remaining to pay the Fund's liabilities. The amount paid to PIFSS was (USD 7,684,455) and KPA was (USD 11,222,153). Further, the other Fund's Limited Partners received their allotted distributions from the exit proceeds.

(Please refer to attachment 3-28)

## C.13. The amounts transferred to PetroLink Holding Company K.S.C. (Closed) – Return of investment monies:

(1)    On October 17, 2012, PetroLink Holding Company K.S.C. (Closed) paid USD 1,000,000 to invest it during the second secondary capital raise as per the following bank transfer:

| Date | Payment Method | Fund's bank account | USD |
|------|----------------|---------------------|-----|
| 17-Oct-12 | Telex Transfer | HSBC #001-004001-160 | 1,000,000 |

(2)    The Bill of indictment didn't mention that the above amount was transferred from PetroLink Holding Company K.S.C. (Closed) to the Port Fund.

(3)    Later, after the amount was paid, PetroLink Holding Company K.S.C. (Closed) reversed its decision to invest and requested the return of the money.

(4)    The Fund returned back USD 1,000,000 to PetroLink Holding Company K.S.C. (Closed) on 17 April 2013 as per the following transfer:

| Date | Payment Method | Fund's bank account | Beneficiary bank account of PetroLink Holding Company K.S.C. (Closed) | USD |
|------|----------------|---------------------|------------------------------------------------------------------------|-----|
| 17-Apr-13 | Telex Transfer | HSBC #0603-493283-001 | Ahli Bank of Kuwait # 11010141511 | 1,000,000 |

(Please refer to attachment 3-29)

## C.14. The amounts transferred to KGLI - Asia ROHQ - reimbursement of expenses:

(1)    KGLI Asia ROHQ is a subsidiary of KGL Investment Company K.S.C. (Closed). Its' bank accounts were used to pay some expenses on behalf of the Fund.

Page 46 of 79



(2) As per the invoice issued by the Tax Department in the Philippines dated 4 September 2013 confirming the payment of DST tax for KGL Investment BV, a wholly owned subsidiary of the Port Fund, in order to get the clearance certificate, therefore the Fund transferred USD 100,000 to KGL Asia as per the following details:

| Date | Payment Method | Fund's bank account | Beneficiary bank account | USD |
|------|----------------|---------------------|--------------------------|-----|
| 27-Aug-13 | Bank transfer | HSBC #0603-493283-001 | Bank of Philippine Island 1924110208 | 100,000 |

(Please refer to attachment 3-30)

(3) The Fund transferred US 100,000 to KGL Asia in the form of a short-term advance, (please refer to item c9 item (1) the amount was included as miscellaneous expenses) as per the following details:

| Date | Payment Method | Fund's bank account | Beneficiary bank account | USD |
|------|----------------|---------------------|--------------------------|-----|
| 15-Nov-2013 | Telex Transfer | HSBC #0603-493283-001 | Bank of Philippine Islands 1924110208 | 100,000 |

(Please see attachment 3-31)

(4) During the dispute between GGDC (wholly owned by the Port Fund) and the main contractor of the project, the Port Fund transferred USD 6,500,000 to KGLI ROHQ to issue a Bank Guarantee on behalf of GGDC as per the following details:

| Date | Payment Method | Fund's bank account | Beneficiary bank account | USD |
|------|----------------|---------------------|--------------------------|-----|
| 1-Jun-14 | Telex Transfer | HSBC #0603-493283-001 | Bank of Philippine Island 1924119221 | 6,500,000 |

However, GGDC managed to resolve the issue without the need for the Bank Guarantee. Therefore, on 20 August 2014, an amount of USD 6,499,989.00 was transferred back to the Fund's bank account - after deducting USD 11 for fees as per the following details:

| Date | Payment Method | Fund's bank account | USD |
|------|----------------|---------------------|-----|
| 20-Aug-14 | Bank transfer | Al Ahli Bank Account # 06003-493283-001 | 6,499,989.00 |

Page 47 of 79



The Bill of indictment didn't mention the fact that the amount was returned to the Fund's bank account. As per the statement provided by the Law Firm on 20 January 2018, the above-mentioned details were confirmed.

(Please refer to attachment 3-32)

## C.15. The amounts transferred to Capital Link Company K.S.C. (Closed) – MPC GMO Investment Opportunities:

(1) In light of the Fund's investment commitment towards MPC-GMO for a total of USD 25 million, the Fund attempted to transfer USD 132,841.60 from the Fund's bank account to MPC-GMO, however, the correspondent bank, i.e. Bank of New York, did not process the transfer due to technical reasons and compliance issues. Therefore, the Fund used Capital Link's bank account as an intermediary account to transfer to MPC GMO, as per the following details:

| Date | Fund's bank account | Capital Link bank account | USD |
|------|--------------------|--------------------------|-----|
| 09-Apr-14 | Al Ahli Bank Account # 0603493283-001 | Al Ahli Bank Account # 0603755991002 | 132,841.60 |

(Please refer to attachment 3-33)

After the amount was transferred from Capital Link Company K.S.C. (Closed) to MPC GMO, MPC-GMO's bank did not accept the money because the bank could not identify the sender; therefore, Capital Link immediately returned the money to the Port Fund as per the following details:

| Date | Capital Link Company K.S.C. (Closed) bank account | Fund's bank account | USD |
|------|--------------------------------------------------|--------------------|-----|
| 22-Apr-14 | Al Ahli Bank Account # 0603755991002 | Al Ahli Bank Account # 0603493283-001 | 132,841.60 |

(Please refer to attachment 3-33)

(2) For the same technical reasons at Bank of New York, and because the professional services invoices were due for some payments, the Fund used Capital Link's account as an intermediary account to make the payments as detailed in c-9.

Below are the details of invoices due to Intertrust Corporate Services, as follows:

| Invoice Date | Invoice Number | Particulars | USD |
|--------------|----------------|-------------|-----|
| 01-12-12 | 341163 | Bank transfer fees related to GGDC's investment | 11.00 |
| 01-10-14 | 465489 | Annual Fees and charges related to GGDC's investment for the period from 01 Jan - 31 Dec 2015. | 1,114.02 |



| Invoice Date | Invoice Number | Particulars | USD |
|---|---|---|---|
| 14-11-14 | 479357 | Annual Fees and charges related to GGDC's investment (Wholly owned by the Fund) for the period from 01 Jan - 31 Dec 2015. | 4,873.17 |
| 01-10-14 | 465428 | Annual Fees and charges related to the Fund company for the period from 01 Jan - 31 Dec 2015. | 246.95 |
| 14-11-14 | 479328 | Annual Fees and charges related to the Fund company for the period from 01 Jan - 31 Dec 2015. | 4,089.02 |
| 14-11-14 | 479380 | Annual Fees and charges related to the GGL for the period from 01 Jan - 31 Dec 2015. | 182.92 |
| Total | | | 10,517.08 |

(Please refer to attachment 3-34)

Accordingly, the Fund transferred to Capital Link Company K.S.C. (Closed) USD 10,517.08 on 26 December 2014 as per the following details:

| Date | From Fund's bank account | To the bank account of Capital Link Company K.S.C. (Closed) | USD |
|---|---|---|---|
| 26-Nov-14 | Al Ahli Bank Account # 0603493283-001 | Al Ahli Bank Account # 0603755991002 | 10,517.08 |

Then, Capital Link Holding Company K.S.C (Closed) transferred the same amount to Intertrust as follows:

| Date | Capital Link Company K.S.C. (Closed) bank account | To the account of Inertrust | USD |
|---|---|---|---|
| 2-Dec-14 | Al Ahli Bank Account # 0603755991002 | Bank of New York # 01210039098 | 10,517.08 |

(Please refer to attachment 3-35).



**C.16. The amounts transferred to Clark Gateway Investment Group – Investment in Global Gateway Logistics:**

(1) Clark Gateway Investment Group is a limited liability company and wholly owned subsidiary of the Port Fund established by the Port Fund in the Cayman Islands to be an exit vehicle for Global Gateway Development (GGDC), which owns Sabah Al Ahmed Logistics City.

(Please refer to section 2-4 – C above)
(Please refer to attachment 3-38)

(2) Since the project was undergoing construction at the time and needed capital, the Fund transferred USD 2,000,000 to Clark Gateway Investment Group to invest in the project; both companies (Global Gateway Development (GGDC) and Clark Gateway Investment Group) are wholly owned by the Port Fund. The transfers were executed as follows:

| Date | Fund's bank account | Clark Gateway Investment Group bank account | USD |
|------|---------------------|---------------------------------------------|-----|
| 2-Sep-14 | Al Ahli Bank Account # 0603493283001 | Mashreq Bank # 019100065133 | 1,000,000 |
| 2-Sep-14 | Al Ahli Bank Account # 0603493283001 | ABN AMRO Bank # 603076/001-000-840 | 1,000,000 |
| Total | | | 2,000,000 |

(Please refer to attachment 3-38)

It is worth nothing that GGDC (Sabah Al Ahmad Logistic City) ownership is outlined in the Fund's audited financial statements a being fully owned by the Fund.

**C.17. The amounts transferred to KGL Petroleum Company K.S.C. (Closed) – Investment in Global Gateway Logistics Corp.:**

(1) KGLI Petroleum bank accounts were used to settle some payments for Global Gateway Development Corporation "Sabah Al Ahmed Logistics City" which is wholly owned by the Fund.



(2)   The Fund transferred USD 7,090,000 to KGL Petroleum Company K.S.C. (Closed) as follows:

| Date | Payment Method | Fund's Account | Beneficiary Account KGL Petroleum Company K.S.C. (Closed) | USD |
|------|----------------|----------------|-----------------------------------------------------------|-----|
| 14-May-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-493283-001 | Al Ahli Bank of Kuwait account # 0603-479663-001 | 2,000,000 |
| 17-Jul-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-493283-001 | Al Ahli Bank of Kuwait account # 0603-479663-001 | 1,000,000 |
| 18-Aug-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-493283-001 | Al Ahli Bank of Kuwait account # 0603-479663-001 | 500,000 |
| 21-Aug-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-493283-001 | Al Ahli Bank of Kuwait account # 0603-479663-001 | 1,000,000 |
| 27-Sep-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-493283-001 | Al Ahli Bank of Kuwait account # 0603-479663-001 | 1,000,000 |
| 1-Oct-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-493283-001 | Al Ahli Bank of Kuwait account # 0603-479663-001 | 1,000,000 |
| 8-Dec-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-493283-001 | Al Ahli Bank of Kuwait account # 0603-479663-001 | 500,000 |
| 8-Feb-15 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-493283-001 | Al Ahli Bank of Kuwait account # 0603-479663-001 | 50,000 |
| 4-Mar-15 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-493283-001 | Al Ahli Bank of Kuwait account # 0603-479663-001 | 40,000 |
| Total | | | | 7,090,000 |

(Please see attachment 3-38)



(3)   Therefore, KGL Petroleum transferred the same amount of USD 7,090,000 to Global Gateway Development on the same day or within a maximum of one day of receiving the amounts as follows:

| Date | Payment Method | KGL Petroleum Company K.S.C. (Closed) Bank Account | Beneficiary Account | SD |
|------|----------------|----------------------------------------------------|---------------------|-----|
| 14-May-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-479663-001 | Bank of Philippine Island # 1924110739 | 2,000,000 |
| 17-Jul-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-479663-001 | Bank of Philippine Island # 1924110739 | 1,000,000 |
| 18-Aug-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-479663-001 | Bank of Philippine Island # 1924110739 | 500,000 |
| 21-Aug-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-479663-001 | Bank of Philippine Island # 1924110739 | 1,000,000 |
| 1-Oct-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-479663-001 | Bank of Philippine Island # 1924110739 | 1,000,000 |
| 1-Oct-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-479663-001 | Bank of Philippine Island # 1924110739 | 1,000,000 |
| 8-Dec-14 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-479663-001 | Bank of Philippine Island # 1924110739 | 500,000 |
| 9-Feb-15 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-479663-001 | Bank of Philippine Island # 1924110739 | 50,000 |
| 4-Mar-15 | Bank Transfer | Al Ahli Bank of Kuwait account # 0603-479663-001 | Bank of Philippine Island # 1924110739 | 40,000 |
| Total | | | | 7,090,000 |

(Please see attachment 3-39)

## D – Inspecting the Transaction Documents

The following documents have been reviewed:

| Attachment # | Description |
|--------------|-------------|
| 3-1 | PPM issued in April 2007 - Page 8 |
| 3-2 | Agreement appointing KGL Investment Company K.S.C. (Closed) as the Fund's Placement Agent |
| 3-3 | One (1) bank transfer for USD 2,500,000 |
| 3-4 | One (1) bank transfer for USD 2,265,000 |



| Attachment # | Description |
|---|---|
| 3-5 | Agreement appointing KGL Investment Cayman LTD as the Investment Manager of the Fund. |
| 3-6 | Assignment of claim between KGL Investment Cayman LTD and KGL Investment Company K.S.C. (Closed) where KGL Investment Company K.S.C. (Closed) is authorized it to directly receive the Management Fees. |
| 3-7 | (11) bank transfers for a total amount of USD 16,832,078 |
| 3-8 | Exerts from the PPM indicating that the Fund bears the General and Administrative Expenses. |
| 3-9 | Copy of bank transfers from/to the Fund and supporting invoices |
| 3-10 | • A copy of the investment agreement entered between the Fund and MPC GMO dated 12 November 2007<br>• A copy of settlement agreement for the commitment to invest in MPC GMO dated 9 July 2013<br>• First amendment to the settlement agreement dated 10 February 2015<br>• Second amendment to the settlement agreement dated 26 June 2015<br>• Third amendment to the settlement agreement dated 6 December 2015<br>• Fourth amendment to the settlement agreement dated 29 April 2016<br>• Fifth amendment to the settlement agreement dated 20 August 2016<br>• Confirmation that the Fund has paid its commitments towards MPC-GMO issued by MPC-GMO. |
| 3-11 | Letter by MPC-GMO committing the Fund to pay the first installment in the amount of USD 252,500 |
| 3-12 | Bank transfer from the Fund to KGL Investment Company K.S.C. (Closed) in the amount of USD 4,900,000 |
| 3-13 | Bank Transfer from KGL Investment Company K.S.C. (Closed) to MPC-GMO in the amount of USD 4,750,000 |
| 3-14 | Supporting documents or the fees and expenses related to USD 150,000 |
| 3-15 | Five (5) bank transfers from KGL Investment Company K.S.C.(Closed) to the Fund's accounts |
| 3-16 | Two (2) transfers from the Fund's accounts to KGL Investment Company K.S.C. (Closed). |
| 3-17 | • Convertible Loan Agreement between the Fund and KGL 22 August 2007<br>• A copy of the BOT concession agreement between DIPCO and the Egyptian Government for the 40 years concession. |
| 3-18 | Certificate issued by Candlewood + copies of 8 wire transfers |
| 3-19 | One (1) bank transfer |
| 3-20 | Copy of invoices/receipts supporting the payments executed on behalf of the fund |
| 3-21 | A copy of the Fund's bank statement proving the transfer of and the repayment of USD 2,265,000 |
| 3-22 | Bank statement confirming the transfer of USD 100,000 from the Fund's USD bank account to the other Fund's KWD bank account |
| 3-23 | Invoice issued by Kuwait and Gulf Link Transport Co. dated 7 September 2011 for KWD 20,000 |



| Attachment # | Description |
|---|---|
| 3-24 | One (1) bank transfer to KGL International for Ports, Warehousing and Transport Company |
| 3-25 | • Memorandum of Incorporation of KGLI Investment BV – the Netherlands.<br>• Memorandum of Incorporation of KGLI Investment Coperatiief U.A.<br>• Letter issued by Law Firm Arnell Uuchoco confirming that the Fund holds 80% of KGLI – NM Holding |
| 3-26 | • Four (4) bank transfers to KGLI-NM Holding |
| 3-27 | Exit Report for Negros Navigation |
| 3-28 | TMF Group's confirmation letter for the value of exiting the investment and monies allocated to both PIFSS and KPA. |
| 3-29 | Two (2) bank transfers from/and to PetroLink Holding Company K.S.C. (Closed) |
| 3-30 | • A copy of the DST Tax receipt<br>• A clearance from the tax department<br>• One (1) bank transfer |
| 3-31 | • One (1) bank transfer |
| 3-32 | • One (1) bank transfer from the Fund to KGLI Asia<br>• One (1) bank transfer to return the money back from KGLI Asia to the Fund<br>• Certificate issued by the Law Firm dated 20 January 2018. |
| 3-33 | • Confirmation from the bank that the transfer from the Fund to MPC-GMO didn't go through<br>• One (1) bank transfer from the Fund to Capital Link<br>• One (1) bank transfer confirming the return of the money to the Fund. |
| 3-34 | • (6) invoices from Intertrust |
| 3-35 | One (1) Bank transfer from the Fund to Capital Link<br>One (1) bank transfer from Capital Link to Intertrust |
| 3-36 | Long term lease agreement with the Philippine government |
| 3-37 | Walkers letter confirming the shareholders list of Clark Gateway Investment Group |
| 3-38 | (2) bank transfers from the Fund to Clark Gateway Development Corp. |
| 3-39 | (9) bank transfers from the Fund to KGL Petroleum Company K.S.C. (Closed) |

**E – Final conclusion on the inspection and conformity with the Fund's provisions and documents**

The inspection has concluded that:

(1)    All transactions listed under the Third Accusation were executed in accordance with the Fund's provisions and documents, PPM, LPA, General Partner's Articles of Incorporation, and resolutions issued by the General Partner and there were no suspicions of facilitation of embezzlement or unlawful embezzlement.

(2)    All amounts reported in the supporting documents related to the payments are in conformity with the Fund's accounting books.



(3)   The values of amounts listed under the Third Accusation are in conformity with all amounts that were duly and lawfully paid to the companies mentioned in the bill of indictment except the followings:

a.   A reimbursed amount related to expenses, which was paid by KGL Investment Company K.S.C. (Closed) on behalf of the Fund and for the Fund's benefit, since the bill of indictment reported the amount as KWD 1,059,000, while the actual amount is KWD 60,000 only as per the Fund's accounting books and financial records that are in conformity with the bank statements.

b.   A reimbursed amount related to expenses which was paid on behalf of the Fund, since the bill of indictment listed the amount as USD 2,207,555 while the actual is USD 2,105,290 as per the Fund's accounting books, financial records and bank statements. A transfer of USD 2,265.00 was executed to KGL Investment Company K.S.C. (Closed), then it turned out that it was done in error and was reversed to the Fund's bank account from KGL Investment Company's account on 30 June 2013. Furthermore, it is mentioned in the bill of indictment by mistake that there was a transfer from the Port Fund account dated 31 October 2010 for an amount of USD 100,000 to KGL Investment Company, and the correct fact is that this amount was transferred from the Fund's USD bank account to the Fund's KWD bank account. Therefore, the transferred amounts in USD should be USD 89,662,240.02 and not USD 89,764,533.88.

**There is, therefore, no facilitation of embezzlement or unlawful embezzlement of these amounts.**

## 3-4 The Fourth Accusation

### A – The text of accusation as included in the Bill of indictment

In her aforementioned capacity, she unlawfully facilitated to MPC - GMO the embezzlement of KD 307,094.680 (Kuwaiti Dinars Three Hundred Seven Thousand Ninety Four and Six Hundred Eighty Fils", and an amount of USD 401,137.14 (US Dollars Four Hundred One Thousand One Hundred Thirty-Seven and Fourteen Cents) owned by the Port Fund, as she exploited her position as the sole authorized signatory on all the Fund's accounts inside the State of Kuwait as exhibited in details in the  documents, to transfer the two amounts shown above after exiting the investment in MPC – GMO in financial year 2013, after the end of the Fund Term  on 13 December 2014, and not for the fund management or investment purposes, with the purpose of facilitating the embezzlement of those amounts, as set out in the investigations.



**B – The Financial Transaction(s) Related to the Accusation**

The amount mentioned in the accusation consists of two groups of payments due to MPC-GMO out of the Port Fund as follows:

| # | Transfer Beneficiary | USD | KWD |
|---|---|---|---|
| 1 | Transfer out of the Fund's account to MPC-GMO | - | 307,095 |
| 2 | Three transfers out of the Fund's account o MPC-GMO | 401,137.00 | - |
| Total | | 401,137.00 | 307,095 |

**C – Reference of the Financial Transaction According to the Fund's Provisions and Documents**

MPC-GMO invited the investors, including the Port Fund, to raise its capital to become USD 288.1 million in order to invest in selective opportunities in the shipping market. Co-investors in MPC GMO comprised of established and well-known companies such as Montrica Investments, Morgan Stanley and Goldman Sachs which further strengthened the attractiveness of the investment.

As per the investment agreement signed between the Fund and MPC-GMO on 12 November 2007, the Fund committed to invest USD 25 million. However, due to the market conditions and the global financial crisis, the Fund negotiated down its commitment several times in order to reduce it and pay it in installments.

Those amounts were reported in the Bill of indictment as follows:
C-1 as for the KWD 307,095 transferred to MPC-GMO, that amount was transferred from the Fund to MPC-GMO as follows:

| Date | From the Fund's bank account | To MPC GMO Bank account | Euro | KWD equivalent |
|---|---|---|---|---|
| 09/07/2015 | From Fund's Al Ahli Bank account number 0603493283002 | Bank of Frankfurt DZ DE27500604000014046121 | 908,000 | 307,095 |
| Total | | | 908,000 | 307,095 |

(Please see attachment 4-1)



**C.2. The amount paid to MPC-GMO for USD 401,147 was transferred from the Fund to MPC-GMO as follows:**

| Date | Out of the Fund's bank account | To MPC GMO | Euro | USD equivalent |
|---|---|---|---|---|
| 30/3/2014 (1) | Al Ahli Bank of Kuwait 0603493283001 | LUXEMBOURG International bank DZ # LU551070799906001010 | - | 132,841.60 |
| 22 April 2014 | Al Ahli Bank of Kuwait 0603493283001 (this transfer is not included in the transfer list of MPC-GMO's investment | Frankfurt Bank DZ # DE27500604000014046121 | 96,074.06 | 133,986.40 |
| 3 November 2014 | Al Ahli Bank of Kuwait 0603493283001 | Frankfurt Bank DZ # DE27500604000014046121 | 107,241.11 | 134,309.00 |
| Total | | | | 401,137.00 |

(1) This amount has been discussed earlier in the Third Accusation under section 3-3- item C.15 regarding one of the transfers to Capital Link Company K.S.C. (Closed), which has been returned to the Fund due to technical reasons, so the Fund transferred the amount in Euro on April 22, 2014.

(2) The amount recognized for this transfer is USD 132,841.60 and the difference is due to forex differences.
(Please refer to item 3-3-C.15)
(Please refer to attachment 4-2)

Due to the dispute with MPC-GMO, the Fund had to continue negotiating until reaching a final settlement agreement and made a final payment of its due commitments on 3 August 2016 (i.e. after the end of the fund term on 31 December 2014) since the Fund settled all the Fund's commitments as part of its liquidation process.

**D – Inspecting the Transaction Documents**

The following documents have been reviewed:

| Attachment # | Description |
|---|---|
| 4-1 | One (1) bank transfer from the Fund company to MPC-GMO |
| 4-2 | Three (3) bank transfer from the Fund company to MPC-GMO |



**E – Final conclusion on the inspection and conformity with the Fund's provisions and documents**

The inspection has concluded that:

(1) All transactions reported under the Fourth Accusation were executed in accordance with the Fund's provisions and documents, PPM, LPA, General Partner's Articles of Incorporation, and resolutions issued by the General Partner, and there was no suspicion of unlawful facilitation of embezzlement.

(2) All amounts reported in the supporting documents related to the payments are in conformity with the Fund's accounting books.

(3) The values of amounts reported in the Fourth Accusation are in conformity with all amounts that were duly and lawfully paid, by the Fund to MPC-GMO.

**There is, therefore, no unlawful facilitation of embezzlement of these amounts.**

## 3-5 The Fifth Accusation

### A –The text of accusation as included in the Bill of indictment

In her aforementioned capacity, she unlawfully facilitated to KGL International for Ports, Warehousing and Transport, owned by the second defendant, i.e. Saeed Ismail Dashti and others, the embezzlement of USD 20,600,000 (US Dollars Twenty Million Six Hundred Thousand) owned by the Port Fund, as she exploited her position as the sole authorized signatory on all fund's accounts inside the State of Kuwait as exhibited in details in the documents, to transfer the amount to the  aforementioned company in the form of a "credit facility" and not for fund management or investment purposes, then she wrote off the loan and its interests from the Fund's financials for the purpose of facilitating the embezzlement of that amount, as set out in the investigations.

### B – The Financial Transaction(s) Related to the Accusation

The amount mentioned in the Bill of indictment refers to one transfer in the amount of USD 20,600,000.



**C – Reference of the Financial Transaction According to the Fund's Provisions and Documents**

(1) The amount listed in the acquisition refers to a transfer executed to KGL International for Ports, Warehousing and Transportation Co. as an investment to enter into DIPCO's project, which is a major developmental and economic project in Egypt and the Middle East. DIPCO was established with a capital of USD 200 million and its shareholders list include big international names as follows:

   a.    KGL International for Ports – owns 30% of DIPCO's capital
   b.    China Shipping Co. – owns 20% of DIPCO's capital
   c.    Arab United shipping – owns 10% of DIPCO's capital
   d.    French company SMA – CGM Terminal Link – owns 20% of DIPCO's capital
   e.    GE – 10% of DIPCO's capital
   f.    Damietta Port Authority – owns 10% of DIPCO's capital

   The project has a BOT concession with Damietta Ports Authority.
   (Please refer to item 2-4-A of this report)

(2) The Fund is established in the Cayman Islands, where the Cayman Islands laws do not prohibit providing loans to third parties. In accordance with the PPM, page 97, deals structured by the Fund are explained, and "a convertible loan into shares in project" is among the available investment instruments for the Fund.

(3) (Please refer to attachment 5-1)

(4) On 22 August 2007, a convertible loan agreement was signed between the Fund and KGL International for Ports, Warehousing and Transportation related to investment in the Project through a USD 20 million convertible loan and subscription fees (since it is an investment instrument) in the amount of USD 600,000.
   (Please refer to sections 2-4-a / 3-3-C.8 / 3-3-C.11 of this report)
   (Please refer to attachment 3-23)

(5) On 27 August 2007, USD 20,600,000 was transferred to KGL International for Ports, Warehousing and Transport Company K.S.C. (Closed) as follows:

| Date | From the Fund's Account | To KGLI International for Ports, Warehousing and Transport Company K.S.C. (Closed) | USD |
|------|------------------------|-----------------------------------------------------------------------------------|-----|
| 27/08/2007 | HSBC 001-00400-160 | Al Ahli Bank of Kuwait # 000242659031 | 20,600,000 |
| **Total** | | | **20,600,000** |

(Please refer to attachment 3-25)

BAKER TILLY

(6) As per the PPM, page 120, it clearly states that the investment in the Fund should be considered a" high-risk" investment, and that there is no assurance that the Fund will be able to generate returns for its Limited Partners (who made capital commitments to the Fund). (Please refer to item 2-5)

(7) As DIPCO started to build the port, the largest portion of the equity was used, so the company had to secure a loan for USD 480 million. The project suffered the effects of the global financial crises and the Arab Spring, the work on Project was put on-hold, and DIPCO entered into negotiations with the Egyptian government. The project delay resulted in increased expenses and hindered the process of drawing the loans, which resulted in the project running out of cash by 1Q2009. A new management and operational team was hired and the company committed to another capital increase of USD 115 million in cash, credit lines, letter of guarantees and bonds, so DIPCO reached an agreement with the Egyptian Ministry of Transportation, the contractors, and suppliers to move forward with the project to guarantee reserving 2.5 million TEU by the time the project starts its operations in 2010.

(8) However, in 1Q2011, the project was suspended due to force majeure, as DIPCO was negatively impacted by the social and economic environment in Egypt at the time. DIPCO sought to reach settlements and get some credit privileges and facilities to make up for the obstacles and delays, as well as to regain the banks' confidence in financing the project. However, all attempts failed and when both parties couldn't reach an agreement, the Egyptian Government withdrew the concession from DICPO, which turned to international arbitration seeking compensation for the Project. The issue is still being examined before the international courts.

(9) As mentioned in item 2-4-A of this report, the Fund filed a case against KGL International for Ports, Warehousing and Transport Company K.S.C. (Closed) to get back the invested amount and its interests. The case is still being seen before the Kuwaiti courts
(Please refer to attachment 3-5)



**D – Inspecting the Transaction Documents**

The inspection has concluded that:

| Attachment # | Description |
|---|---|
| 5-1 | PPM Page 97 indicating that the Fund may enter into convertible loans. |
| 5-2 | PPM page 120 related to the Fund's risks. |
| 5-3 | A certificate issued by the Ministry of Justice regarding the case filed by the Fund against KGL International for Ports, Warehousing and Transport K.S.C. (Closed) |

**E – Final conclusion on the inspection and conformity with the Fund's provisions and documents**

The inspection has concluded that:

(1) All transactions reported under the Fifth Accusation were executed in accordance with the Fund's provisions and documents, PPM, LPA, General Partner's Articles of Incorporation, and resolutions issued by the General Partner, and there was no suspicion of unlawful facilitation of embezzlement.

(2) All amounts reported in the supporting documents related to the payments are in conformity with the Fund's accounting books.

(3) The values of amounts reported under the Fifth Accusation are in conformity with the amounts that were duly and lawfully paid by the Fund to KGL International for Ports, Warehousing and Transport Company K.S.C. (Closed).

**There is, therefore, no unlawful facilitation of embezzlement of these amounts.**

### 3-6 - The Sixth Accusation

**A – The text of accusation as included in the Bill of indictment**

In her aforementioned capacity, she unlawfully facilitated to the Jordanian Company Unified Transport and Logistics (UNIF) owned by the second defendant, Saeed Ismail Dashti, and others the embezzlement of USD 900,000 (US Dollars Nine Hundred Thousand)  and an amount of KD 200,000 (Two Hundred Thousand Kuwaiti Dinars) as she exploited her position as the sole authorized signatory on the all Fund's account inside  the State of Kuwait as exhibited in details in the documents, to transfer the amount to  the aforementioned company in the form of a credit facility "Bank Guarantee" to Kuwait and Jordan Bank for the benefit of UNIF, not for fund management or investment purposes, but for the purpose of embezzling that amount, as set out in the investigations.



**B – The Financial Transaction(s) Related to the Accusation**

The amounts reported in the bill of indictment were paid to Unified Transport and Logistics ("UNIF"), in two groups of transfers out of the Fund's accounts as follows:

| Description | KWD | USD |
|---|---|---|
| Letter of Guarantee for Aqaba Port Project | | 900,000 |
| An amount listed in the Bill of indictment which was never transferred to that company | 200,000 | |

**C – Reference of the Financial Transaction According to the Fund's Provisions and Documents**

**C.1.** As for the letter of guarantee (i.e., the bank guarantee issued to Jordan Kuwait Bank in favor of UNIF for USD 900,000), it is related to the Fund's investment in Aqaba Port project.

(1) UNIF is an associate company of KGL Investment Company K.S.C. (Closed). KGL Investment Company owns 42% of UNIF. Investment of KGL Investment Company in UNIF has been recognized as investment in an associate in the financial statements of KGL Investment Company's K.S.C. (Closed).

(2) Mr. Saeed Ismael Dashti doesn't have any shares in UNIF, however, he held the position of UNIF's Chairman during the period from July 2007 until the end of April 2011, representing KGL Investment Company K.S.C. (Closed).

(Please refer to attachment 6-1)

(3) Given the Fund's interest to invest in Aqaba Port Development project in Jordan under BOT scheme for 30 years (referred to hereafter as Aqaba Port Project), an investment operational consortium was formed with KGL Investment Company K.S.C. (Closed) as the consortium leader. On 7 July 2008, KGL Investment Company K.S.C. (Closed) expressed its interest to Aqaba Development Corporation (the governmental entity that tendered the project) to present its bid for the design, build, finance, and operate of the New Aqaba Port Project as a BOT.

(Please refer to attachment 6-2)

(4) On 15 July 2008 Aqaba Development Corporation (ADC) invited KGL Investment Company K.S.C. (Closed) - as the consortium leader -, to present its Request for Qualification and ADC included a list of other 50 major international consortiums interested in the project in different fields related to designing, building, financing, and other activities.

(Please refer to attachment 6-3)



(5) The Fund negotiated with UNIF, for the Fund participation in the Project to be through acquiring shares of UNIF. UNIF was a listed company on the Jordanian stock exchange at that time, which provided liquidity for the shares that the Fund would acquire thus allowing the Fund to exit the investment at any time it deems fit. Therefore, the Fund issued a USD 900,000 bank guarantee on 13 November 2008 to be valid until 27 May 2009, with the condition of offering the Fund the option to subscribe in UNIF's capital increase at par value without paying any "premiums" and in case the Fund elected to do so. It was also agreed that, during the bank guarantee period, the bank guarantee amount would bear interest due to the Fund. The Port Fund and UNIF entered into agreement to extend the bank guarantee term adding 6% annual interest rate effective 1 January 2009. In the event the bank cashed the bank guarantee amount, the interest went up to 9% on the aggregate amount, payable until the whole amount is fully paid.

(6) On 29 September 2008, Aqaba Development Company invited KGL Investment Company K.S.C. (Closed), being the leader of a qualified consortium, to present its Request for Proposal, and the deadline was set for receiving the final bids (which was extended twice) on 30 June 2009. Indeed, the technical and financial proposals were presented, including UNIF's contribution in part of the Project Company's capital as well as other privileges that UNIF would receive during the project execution phase through offering it rights to transport all the port construction materials, and other privileges as the first and only transportation company that owns a stake in Aqaba Port Project.

(Please refer to attachment 6-5)

(7) On 1 August 2009, Aqaba Development Corp. notified the consortium which is led by KGL Investment Company K.S.C. (Closed) that its consortium received highest evaluation score for the bids presented for the project, as it was announced as the preferred bidder and that both parties (i.e. Aqaba Development Corporation and Aqaba Gateway Consortium led by KGL Investment Company K.S.C. (Closed)) would start the negotiation phase to settle on contractual and legal provisions.

(Please refer to attachment 6-7)

(8) On 11 November 2009, Aqaba Development Corp. notified KGL Investment Company K.S.C. (Closed) of its intentions to re-tender the project, thus ending the negotiations with the consortium leader KGL Investment Company K.S.C. (Closed).

(Please refer to attachment 6-8)



(9)  During 2010, and since the Fund didn't want to invest in UNIF, especially that UNIF could not secure a stake in Aqaba Port Project that the Jordanian Government had cancelled, the Fund recovered the full amount of the bank guarantee, interests and other expenses for a total of USD 1,000,000.

(Please refer to attachment 6-9)

(10) The bank guarantee was recognized as "cash and cash equivalents" in the accounting records and financial statement for 2008-2010.

(Please refer to attachment 6-10)

**C.2. As for KWD 200,000**
Upon inspecting the Fund's bank statements, we were unable to identify the KD 200,000 amounts transferred from any of the Fund's accounts to UNIF.

## D – Inspecting the Transaction Documents

The following documents have been reviewed:

| Attachment # | Description |
|---|---|
| 6-1 | The Fund's Audited Financial Statement (Page 19) |
| 6-2 | A letter from KGLI to Aqaba Development Corp., for Expression of Interest to participate in the project. |
| 6-3 | A letter from Aqaba Development Corp. informing KGL Investment Company K.S.C. (Closed) about the qualification documents |
| 6-4 | Agreement signed between UNIF and the Fund on 27 June 2009 & attached is the letter of guarantee |
| 6-5 | • A letter issued by Aqaba Development Corp. informing KGL Investment Company K.S.C. (Closed) about the proposal documents<br>• The consortium proposal including UNIF as a consortium member |
| 6-6 | A letter from Aqaba Development Corp. informing KGL Investment Company K.S.C. (Closed) that its consortium has won the best bid. |
| 6-7 | A letter from Aqaba Development Corp informing KGL Investment Company that the negotiation with Aqaba Gateway consortium have been terminated and that it intends to retender the project. |
| 6-8 | Bank statement showing the USD 1,000,000 transfer and payment from KGLI to the Port Fund to pay for the Bank Guarantee and its interests as well as other expenses, on behalf of UNIF. |
| 6-9 | The Port Fund's audited Financial statement for FY2008 (page 9) FY2009 (pages 12, 13, 14) FY2010 (pages 7,13,14) |



**E – Final conclusion on the inspection and conformity with the Fund's provisions and documents**

The inspection concluded that:

(1)   The amount reported in the Bill of indictment does not match the amounts of investment transactions between the Fund and UNIF, where the bank guarantee was issued in an amount of USD 900,000 and no amounts were transferred by the Fund to UNIF. Further, we could not verify the KD 200,000 transfer in all banking records, and this amount was never transferred from any of the Fund's bank accounts to UNIF.

(2)   All transactions reported under the Sixth Accusation were executed in accordance with the Fund's provisions and documents, PPM, LPA, General Partner's Articles of Incorporation, and resolutions issued by the General Partner. There was no suspicion of unlawful facilitation of embezzlement, and the Fund received the Full amount of Bank guarantee including interest and other expenses for an amount of USD1,000,000 as agreed.

(3)   All amounts reported in the supporting documents related to the payments are in conformity with the Fund's accounting books.

**There is, therefore, no unlawful facilitation of embezzlement of these amounts.**

### 3-7 The Seventh Accusation

**A – The text of accusation as included in the Bill of indictment**

In her aforementioned capacity, she unlawfully facilitated to the second defendant, Saeed Ismail Dashti, the embezzlement of KD 350,000 (Kuwaiti Dinars Three Hundred Fifty Thousand), as she exploited her position as the sole authorized signatory on all fund's accounts inside the State of Kuwait as exhibited in details in the documents, to transfer the amount to the  second defendant's Burgan Bank account shown in the documents, not for fund management or investment purposes, but for the purpose of facilitating the embezzlement of that amount, as set out in the investigations.

**B – The Financial Transaction(s) Related to the Accusation**

The amount reported in the bill of indictment is baseless, as this amount of KWD 350,000 was never transferred out of any of the Fund's bank accounts to Mr. Saeed Dashti. The bill of indictment didn't include this transfer in the bank transfer lists for the Fund to Mr. Saeed Dashti.
(Please refer to attachment 7-1)



C – **Reference of the Financial Transaction According to the Fund's Provisions and Documents**

N/A

**D – Inspecting the Transaction Documents**

The following documents were reviewed:

| Attachment # | Description |
|---|---|
| 7-1 | Copy of the Audit Bureau's report listing the amounts withdrawn out of the Port Fund's bank accounts and transferred to Mr. Saeed Dashti which didn't include the aforementioned KWD 350,000 |

**E – Final conclusion on the inspection and conformity with the Fund's provisions and documents**

(1) The amount reported in the bill of indictment does not correspond with the Fund's banking records.

(2) This amount mentioned, is unfounded in the banking records, and there is no unlawful facilitation of embezzlement.

(3) All amounts reported in the supporting documents related to the payments are in conformity with the fund's accounting books.

**There is, therefore, no unlawful facilitation of embezzlement of these amounts.**

## 3-8   The Eighth Accusation

**A – The text of accusation as included in the Bill of indictment**

In her aforementioned capacity, she unlawfully facilitated to Clark Gateway Investment Group owned by the second defendant Saeed Ismail Dashti the embezzlement of an aggregated amount of USD 79,169,662 (US Dollars Seventy-Nine Million One Hundred Sixty-Nine Thousand Six Hundred Sixty-Two) owned by Global Gateway Development Corporation which is wholly owned by the Port Fund, as she exploited her position as the Investment Manager to transfer the ownership of the later company to the first company owned by the second defendant, specifically Sabah Al Ahmad Logistic City and the Medical City Projects in the Philippines owned by Global Gateway Development Corporation, for no actual monetary payment or any returns to the Port Fund, and not for fund management or investment purposes, but for the purpose of embezzling that amount and above mentioned Projects, as set out in the investigations.

Page 66 of 79



**B – The Financial Transaction(s) Related to the Accusation**

Clark Gateway Investment Group is wholly owned by the Port Fund and neither Mr. Saeed Dashti nor Ms. Lazareva Maria had any direct or indirect ownership in that investment.

A letter was issued by Walkers, the legal consultant appointed by the Port Fund, confirming that the investment is wholly owned by the Fund and that neither Ms. Lazareva, nor Mr. Dashti held any ownership in that investment since its inception until it was exited successfully.

The amount described in the Bill of Indictment is part of the Fund's investment in Sabah Al Ahmad Logistics City in the Philippines with a total aggregate investment amounts of USD 100,040,000. This amount was transferred from the Fund's bank accounts to Global Gateway Development Corp.
(Please refer to sections 2-4-c and 3-3-C.16 of this report)

**C – Reference of the Financial Transaction According to the Fund's Provisions and Documents**

The aggregate investment amounts in Sabah Al Ahmad Logistics City were transferred through (51) bank transfers totaling USD 100,040,000 as follows:

| # | Date | From the Account of | To Global Gateway Development | Value |
|---|------|---------------------|------------------------------|-------|
| 1 | 9/4/2008 | KGLI bank account at Gulf bank #504807432 | Philippine Veterans Bank # 2000191008317 | 35,000 |
| 2 | 23/04/2008 | The Fund – Burgan Bank # 3160997279 | Bank of Philippine Islands #1924109994 | 205,000 |
| 3 | 28/07/2008 | The Fund – BKME # 11581420 | Philippine Veterans Bank #004070000062 | 3,965,030 |
| 4 | 28/07/2008 | The Fund – BKME # 11581420 | Bank of Philippine Islands #1924109994 | 1,795,000 |
| 5 | 15/09/2008 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 4,000,000 |
| 6 | 11/3/2009 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924110739 | 1,500,000 |
| 7 | 6/4/2009 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 1,500,000 |
| 8 | 16/9/2009 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 3,000,000 |
| 9 | 21/1/2010 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 500,000 |
| 10 | 14/2/2010 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 500,000 |



| # | Date | From the Account of | To Global Gateway Development | Value |
|---|------|---------------------|-------------------------------|-------|
| 11 | 16/3/2010 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 300,000 |
| 12 | 26/5/2010 | Capital Link – Ahli Bank of Kuwait # 0603755991002 | Bank of Philippine Islands #1924110739 | 700,000 |
| 13 | 9/7/2010 | Capital Link – Ahli Bank of Kuwait # 0603755991002 | Bank of Philippine Islands #1924110739 | 75,000 |
| 14 | 1/7/2010 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 1,000,000 |
| 15 | 2/8/2010 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 6,000,000 |
| 16 | 20/2/2011 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 750,000 |
| 17 | 3/3/2011 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 4,174,970 |
| 18 | 30/5/2011 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 5,000,000 |
| 19 | 17/10/2011 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 5,000,000 |
| 20 | 22/12/2011 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 5,000,000 |
| 21 | 30/4/2012 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 5,000,000 |
| 22 | 20/12/2013 | The Fund; Al Ahli Bank of Kuwait # 0603493283001 | Bank of Philippine Islands #1924110739 | 5,000,000 |
| 23 | 29/1/2014 | The Fund; Al Ahli Bank of Kuwait # 0603493283001 | Bank of Philippine Islands #1924110739 | 10,000,000 |
| 24 | 11/7/2012 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 2,000,000 |
| 25 | 12/8/2012 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924109994 | 700,000 |
| 26 | 1/10/2012 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924110739 | 1,250,000 |
| 27 | 22/10/2012 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924110739 | 1,000,000 |
| 28 | 31/10/2012 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924110739 | 2,500,000 |
| 29 | 18/12/2012 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924110739 | 300,000 |
| 30 | 25/12/2012 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924110739 | 300,000 |
| 31 | 9/1/2013 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924110739 | 400,000 |
| 32 | 16/1/2013 | The Fund: HSBC # 001-00400-160 | Bank of Philippine Islands #1924110739 | 300,000 |



| # | Date | From the Account of | To Global Gateway Development | Value |
|---|------|---------------------|------------------------------|-------|
| 33 | 17/1/2013 | The Fund – Ahli United Bank # 11581420 | Bank of Philippine Islands #1924110739 | 200,000 |
| 34 | 21/1/2013 | The Fund – Ahli United Bank # 11581420 | Bank of Philippine Islands #1924110739 | 500,000 |
| 35 | 17/1/2013 | The Fund; Al Ahli Bank of Kuwait # 0603493283001 | Bank of Philippine Islands #1924110739 | 5,000,000 |
| 36 | 25/4/2013 | The Fund; Al Ahli Bank of Kuwait # 0603493283001 | Bank of Philippine Islands #1924110739 | 10,550,000 |
| 37 | 16/5/2013 | KGL Petroleum – Ahli Bank of Kuwait #0603479663001 | Bank of Philippine Islands #1924110739 | 2,000,000 |
| 38 | 17/7/2014 | KGL Petroleum – Ahli Bank of Kuwait #0603479663001 | Bank of Philippine Islands #1924110739 | 1,000,000 |
| 39 | 4/8/2014 | KGL Petroleum – Ahli Bank of Kuwait #0603479663001 | Bank of Philippine Islands #1924110739 | 1,000,000 |
| 40 | 18/8/2014 | KGL Petroleum – Ahli Bank of Kuwait #0603479663001 | Bank of Philippine Islands #1924110739 | 500,000 |
| 41 | 21/08/2014 | KGL Petroleum – Ahli Bank of Kuwait #0603479663001 | Bank of Philippine Islands #1924110739 | 1,000,000 |
| 42 | 1/10/2014 | KGL Petroleum – Ahli Bank of Kuwait #0603479663001 | Bank of Philippine Islands #1924110739 | 1,000,000 |
| 43 | 1/10/2014 | KGL Petroleum – Ahli Bank of Kuwait #0603479663001 | Bank of Philippine Islands #1924110739 | 1,000,000 |
| 44 | 27/11/2014 | KGL Petroleum – Ahli Bank of Kuwait #0603479663001 | Bank of Philippine Islands #1924110739 | 500,000 |
| 45 | 11/12/2014 | KGL Petroleum – Ahli Bank of Kuwait #0603479663001 | Bank of Philippine Islands #1924110739 | 500,000 |



| # | Date | From the Account of | To Global Gateway Development | Value |
|---|------|---------------------|-------------------------------|-------|
| 46 | 11/2/2015 | KGL Petroleum – Ahli Bank of Kuwait #0603479663001 | Bank of Philippine Islands #1924110739 | 50,000 |
| 47 | 6/3/2015 () | KGL Petroleum – Ahli Bank of Kuwait #0603479663001 | Bank of Philippine Islands #1924110739 | 40,000 |
| 48 | 30/9/2014 | Clark Global Gateway Mashrq Islamic Bank 19100065133 | Bank of Philippine Islands #1924110739 | 500,000 |
| 49 | 28/9/2014 | Clark Global Gateway Bank of America #6030769002000840 | Bank of Philippine Islands #1924110739 | 500,000 |
| 50 | 26/1/2015 | Clark Global Gateway Mashrq Islamic Bank 19100065133 | Bank of Philippine Islands #1924110739 | 225,000 |
| 51 | 26/1/2015 | Clark Global Gateway Bank of America #6030769002000840 | Bank of Philippine Islands # 1924110739 | 225,000 |
| **Total** | | | | **100,040,000** |

(Please refer to attachment 8-2)

## D – Inspecting the Transaction Documents

The following documents have been reviewed

| Attachment # | Description |
|--------------|-------------|
| 8-1 | Letter issued by Walkers confirming that the investment is wholly owned by the Fund and that neither Ms. Lazareva, nor Mr. Dashti had ever held any ownership in that investment. |
| 8-2 | (51) Bank transfers |



**E – Final conclusion on the inspection and conformity with the Fund's provisions and documents**

The inspection has concluded:

(1) The amount reported in the Eighth accusation is related to one of the Fund's investments. The Fund exited this investment. On 14 November 2017, the sale proceeds were transferred to Noor Bank in Dubai, an amount of USD 496 million. However, due to negativity targeted toward the Fund on social media, and ostensibly because there is related case being prosecuted against two of the Fund's directors, the General Prosecution in Dubai has frozen the money based on the request of General Prosecution of Kuwait. After the Fund fulfills all its liabilities and contractual expenses, it is expected that the Fund will be able to record a net distribution Limited Partners from this sale only in an amount exceeding USD 300 Million (i.e., a profit of more than USD 200 Million in addition to the invested principal amount of USD 100.04 Million).

(2) All transactions reported under the Eighth Accusation were executed in accordance with the Fund's provisions and documents, PPM, LPA, General Partner's Articles of Incorporation, and resolutions issued by the General Partner, and there was no suspicion of unlawful facilitation of embezzlement.

(3) All amounts reported in the supporting documents related to the payments are in conformity with the Fund's accounting books.

**There is, therefore, no unlawful facilitation of embezzlement of these amounts.**

## 3-9   The Ninth Accusation

### A – The text of accusation as included in the Bill of indictment

In her aforementioned capacity and being in charge of upholding the best interest of "The Port Fund" in investing PIFFS, KPA and other entities' money, she has intentionally caused damages to the public funds, as she intentionally executed the Port Fund's transactions in a way that harms the interest and the capital of the Port Fund, as she facilitated for herself, other entities, and other persons " as set out in the indictment descriptions in items 2 to 8 above" the embezzlement of the Fund's capital, in order to gain profit, which resulted in harming the Fund's capital in an aggregated amount of USD 166,009,756 (US Dollars One Hundred Sixty-Six Million Nine Thousand Seven Hundred Fifty-Six), as set out in the investigations.



**B – The Financial Transaction(s) Related to the Accusation**

The USD 166,009,756 amount is inclusive of all the previous transactions listed in all previous accusations warranting that the Fund has lost all of its capital.

**C – Reference of the Financial Transaction According to the Fund's Provisions and Documents**

The responses included in this report covering sections from 3-2 to 3-8 have dealt with the abovementioned amounts, and all the supporting documents, and the validity of the disposition of all the funds.

**D – Inspecting the Transaction Documents**

N/A

**E – Final conclusion on the inspection and conformity with the Fund's provisions and documents:**

The inspection has concluded that:

1) The Port Fund money has been used for the purpose of its investments and all its transactions were executed in accordance with the Fund's provisions and documents, PPM, LPA, and the General Partner's Articles of Incorporation, as well as the resolutions issued by the GP, and there was no damage to the public funds, no suspicion of unlawful facilitation of embezzlement, and no suspicion of unlawful embezzlement.

2) The Port Fund has successfully exited its investment in Negros Navigation in the Philippines and in in 4Q2016, it distributed USD 30 million to Port Fund's investors including KPA (received USD 11,222,152.44 – i.e. 13.2% of its total capital commitment) and PIFSS (received USD 7,684,540.56 – i.e. 19.2% of total capital commitment), and all the amounts listed above, including Negros navigation exit proceeds were recorded in the Fund's audited financial reports.

3) All the Port Fund's financial information and statements prove that Sabah Al Ahmad Logistics City is owned by the Fund. In November 2017, the Fund successfully exited that investment and informed all of investors that the Fund will make distributions above USD 300 Million.

4) Should the Fund be able to make the distribution from this exit, then all limited partners would have received an amount exceeding USD 330 Million (aggregated amount from the first and the second exit) of the original Fund's capital of USD 188,152,000.

**There is, therefore, no damage to the public funds, unlawful facilitation of embezzlement or unlawful embezzlement of these amounts.**



### 3-10    The Tenth Accusation

#### A – The text of accusation as included in the Bill of indictment

She committed the crime of money laundering of an aggregated amount of KD 2,089,000 (Kuwaiti Dinars Two Million Eighty-Nine Thousand) as she exploited her position as the sole authorized signatory on the fund's accounts inside the State of Kuwait to transfer the above amount through multiple financial transactions, as she deducted the amount from the Port Fund's accounts as detailed in the documents, to KGL Investment Company's account number 0603723549201 at Al Ahli Bank of Kuwait, and concealed and disguised the true state of those transactions and their source, as she transferred those amounts from KGL Investment Company's aforementioned bank account to the following accounts: Al Morabitoon International Company KD 719,000 (Kuwaiti Dinars Seven Hundred Nineteen Thousand) then to the defendant's personal account at Kuwait Finance House, and to Capital Link company KD 1,000,000 (Kuwaiti Dinars One Million), and to Kuwait and Gulf Link Co. KD 20,000 (Kuwaiti Dinars Twenty Thousand), and KD 350,000 (Kuwaiti Dinars Three Hundred Fifty Thousand) to the second defendant at his Burgan Bank , Al Ahli Bank, HSBC and KFH bank accounts as detailed in the documents, knowing that those amounts are the proceeds of both crimes of embezzlement and facilitation of embezzling the Port Fund's capital with the purpose of concealing and disguising the money's movement, nature, and source as set out in the investigations.

#### B – The Financial Transaction(s) Related to the Accusation

The amount reported in the Bill of Indictment consists of four amounts as summarized below:

| The Party Mentioned in the Bill of indictment | Amount (KWD) |
|---|---|
| Al-Morabitoon International Company | 719,000 |
| Capital Link Holding K.S.C. (Closed) | 1,000,000 |
| Kuwait and Gulf Link Transport Co. | 20,000 |
| Mr. Saeed Ismail Dashti | 350,000 |



**C – Reference of the Financial Transaction According to the Fund's Provisions and Documents**

**C.1.** As for the amount paid to Al-Morabitoon for KWD 719,000

(1) That amount was paid from the Port Fund bank account to KGL Investment Company's bank account and not to Al Morabitoon.

(2) The transfer to Al-Morabitoon was paid based on the terms of commercial agreement entered between KGL Investment Company and Al Morabitoon on 25 August 2008 (i.e., two years prior to the transfers for providing services and technical and administrative consultation to New Aqaba Port Project).

(3) During 2010, KGL Investment Company paid to Al Morabitoon through 3 bank transfers:

    a.  Transfer to repay KWD 400,000 on 30 June 2010.
    b.  Two transfers to repay KWD 410,000 and KWD 309,000

    For a total of KWD 1,119,100, whereas the bill of indictment failed to mention KWD 400,000 and selectively picked only two transfers out of the total transferred amount.
    (Please refer to attachment 10-1)

(4) There is no connection between what the Fund paid to KGLI as 5% placement   fees for marketing during the first secondary capital increase (USD 2,500,000 equivalent to KWD 719,100) and the amount paid by KGL Investment Company to Al Morabitoon.
(Please refer to attachment 3-2)

(5) Since the above stated amount was lawfully paid to KGL Investment Company, there is no unlawful embezzlement, hence, the dealing of KGL Investment Company with this money cannot in any way be described or classified as a money laundering crime.



**C.2.** The amount paid to Capital Link Holding Company K.S.C. (Closed) of KWD 1,000,000:

(1) The above stated amount wasn't paid from the Fund's bank account. The correct fact is that this is an internal transfer from KGL Investment Company K.S.C. (Closed) to Capital Link Holding, a wholly owned subsidiary (96%) of KGL Investment Company K.S.C. (Closed). There is nothing that prevents the company from transferring money to one of its wholly owned subsidiaries. The Fund has relation to that transfer as per the below details:

| Date | Out of KGLI's account | To Capital Link's account | KWD |
|------|----------------------|---------------------------|-----|
| 2/9/2010 | Al Ahli Bank of Kuwait #0603723549201 | Al Ahli Bank of Kuwait # 0603-755991-001 | 1,000,000 |
| | | | 1,000,000 |

(Please refer to attachment 10-2)

(2) Since the amount was never been transferred by the Fund, however, it was legally transferred from the parent company to its subsidiary company, therefore, there is no unlawful embezzlement of public funds, and the dealing of KGL Investment Company with this money cannot in any way be described or classified as a money laundering crime.

**C.3.** The amount paid to Kuwait and Gulf Link Transport Co. of KWD 20,000:

(1) This amount was not paid from the Fund's account. It was paid from KGL Investment Company's bank account to Kuwait and Gulf Link Transport Company as payment for the supply and installation of security equipment and cameras at KGLI's office, as KGLI headquarters was located at that time at KGL Transport's building, and there is no relation for this transaction to the Port Fund.

(Please refer to attachment 10-3)

(2) Since the amount was never been paid from the Fund's account, and it was officially and legally paid from KGL Investment account to Kuwait and Gulf Link Transport Company K.S. C. (Closed) account based on the company's entitlement to receive that amount, therefore, there is no unlawful embezzlement and hence, this transfer cannot in any way be described or classified as a money laundering crime.



**C-4** The amount paid to Mr. Saeed Ismail Dashti of KWD 350,000.

(1) This amount was transferred by KGL Investment Company not from the Fund's accounts. It is not against the law, and it has no relation with the Fund's money, this amount was for consultation services Agreement dated 4 January 2009 signed between KGL Investment Company and Mr. Saeed Dashti regarding the acquisition of Gulf General Contracting and Stevedoring Company in the Kingdom of Saudi Arabia. This transaction has no relation with the Fund.

(Please refer to attachment 10-4)

(2) Since the amount was officially and legally paid, there is no unlawful embezzlement and hence, this transfer cannot in any way be described or classified as a money laundering crime.

**D – Inspecting the Transaction Documents**

The following documents have been reviewed:

| Attachment # | Details |
|---|---|
| 10-1 | Commercial Agreement entered between KGL Investment Company and Al Morabitoon on 25 August 2008 for providing advisory services to New Aqaba Port. |
| 10-2 | Capital Link Memorandum of Incorporation showing KGL Investment's ownership of the company and a bank transfer from KGL Investment to Capital Link Holding Company. |
| 10-3 | An invoice issued from Kuwait and Gulf Link transport Company to KGL Investment Company |
| 10-4 | Advisory Services Agreement entered between KGL Investment Company and Mr. Saeed Dashti on 4 Jan 2009. |

**E – Final conclusion on the inspection and conformity with the Fund's provisions and documents:**

The inspection has concluded that:

(1) All amounts reported in the Bill of indictment conform with the amounts paid.

(2) All transactions reported under the Tenth Accusation were executed in accordance with the Fund's provisions and documents, PPM, LPA, General Partner's Articles of Incorporation, and resolutions issued by the General Partner, and there was no suspicion of unlawful of embezzlement.

(3) In light of the legality and entitlement of KGL Investment Company K.S.C. (Closed) to all amounts transferred, then the dealing of KGL Investment Company K.S.C. (Closed) with its money regardless of the beneficiary being individuals or companies, is legitimate action, and absolutely does not constitute a money laundering crime.

Page 76 of 79



(4) All amounts reported in the supporting documents are in conformity with the
Fund's accounting books.

**Therefore, the transfers in no way can be described or classified as a money
laundering crime. Further, there is no money laundering crime. Also, there is
no facilitation of embezzlement or unlawful embezzlement of any amount.**

Page 77 of 79



## 4    Response to accusations assigned to Saeed Ismail Dashti, and conclusion.

### 4-1    The First Accusation

#### A – The text of accusation as included in the Bill of indictment

In his considered capacity as a Public Employee (Advisory Board Member and non-executive director of the Port Fund in which PIFSS and KPA directly hold a stake exceeding 25%), he has participated through agreeing with and assisting the first defendant in committing the crimes of facilitating the embezzlement of public funds attributed to her in items (2 through 9) prior to the crimes taking place, as he agreed with her to transfer the stated amounts to the beneficiary companies that he owns with others, and to his personal accounts as detailed in the documents. He assisted her through providing bank account information inside and outside of Kuwait as detailed in the document, and the first defendant transferred the embezzled amounts to the aforementioned accounts, with the purpose of facilitating the embezzlement of those amounts, hence the crime has been committed based on that agreement and assistance provided as set out in the investigations.

#### B – The Financial Transaction(s) Related to the Accusation

The responses included in this report from section 3-2 to 3-9 have covered the above stated amounts, their supporting documents and lawfulness and validity of payments.

#### C – Inspecting the Transaction Documents

N/A

#### D – Final conclusion on inspection and conformity with the Fund's provisions and documents

The inspection has concluded that:

(1) All the transactions reported in the First Accusation were executed in accordance with the Fund's provisions and documents, PPM, LPA, and the General Partner's Articles of Incorporation, as well as the resolutions issued by the General Partner, and there was no suspicion of unlawful facilitation of embezzlement or unlawful embezzlement.

(2) The amounts reported in the supporting documents related to all of the payments correspond with the Fund's accounting books.

**There is, therefore, there is no facilitation of embezzlement or unlawful embezzlement of any amount.**



## 4-2    The Second Accusation

### A –The text of accusation as included in the Bill of indictment

He participated with the first defendant in the money laundering crime which she is charged with, as indicated in item (10), prior to committing the crime by means of agreement and assistance, as he agreed with her to transfer the funds to his bank accounts and to the bank accounts of his companies as previously indicated in the above charge, assisted her through providing the details of those bank accounts, with the purpose of concealing and disguising the funds movement, nature and their source, knowing that those amounts are the proceeds of both crimes of money laundering and facilitation of embezzling the Port Fund's capital, as set out in the investigations.

### B – The Financial Transaction(s) Related to the Accusation

The responses included in that report from section 3-10 have covered the above stated amounts, their supporting documents and lawfulness of payments.

### C – Inspecting the Transaction Documents

N/A

### D – Final conclusion on inspection and conformity with the Fund's provisions and documents

The inspection has concluded that:

(1) All the transactions reported in the Second Accusation were executed in accordance with the Fund's provisions and documents, PPM, LPA, and the General Partner's Articles of Incorporation, as well as the resolutions issued by the General Partner, and there was no suspicion of unlawful facilitation of embezzlement or unlawful embezzlement.

(2) In light of the legitimacy and entitlement of KGL Investment Company K.S.C. (Closed) to all amounts transferred, then the dealing of KGL Investment Company K.S.C. (Closed) with its money regardless of the beneficiary being individuals or companies, is legitimate action, and absolutely does not constitute money laundering crime, and in no way can be described or classified as a money laundering crime.

(3) All amounts reported in the supporting documents are in conformity with the Fund's accounting books. .

**Therefore, the transfers in no way can be described or classified as a money laundering crime. Further, there is no money laundering crime. Also, there is no facilitation of embezzlement or unlawful embezzlement of any amount.**

Page 79 of 79