**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re Application of                                      :
                                                         :
**KUWAIT PORTS AUTHORITY,**              :
                                                         :          Case No.: 20-mc-00046(ALC)
**Petitioner for an Order Pursuant to**    :
**28 U.S.C. § 1782 to Conduct Discovery for** :
**Use in a Foreign Proceeding**                :
-------------------------------------------------------------x

**REPLY OF KUWAIT PORTS AUTHORITY IN FURTHER SUPPORT OF EX PARTE
APPLICATION PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY
FOR USE IN A FOREIGN PROCEEDING AND OPPOSITION
<u>TO MOTION TO INTERVENE</u>**

# TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ....................................................................................................... ii

Introduction .................................................................................................................... 1

Argument ......................................................................................................................... 8

I.    Opposition to the Port Fund's Motion to Intervene ............................................... 8

   A.    The Port Fund's Right to Intervene to Challenge the E*Trade Subpoena Requires a Concession that the Information Sought is "For Use" Against it in a Foreign Proceeding........ 8

   B.    The Port Fund Has Only Limited Rights to Intervene to Challenge the Citibank Subpoena. ........................................................................................................................... 9

II.    Reply in Further Support of the KPA 1782 Application ....................................... 9

   A.    The KPA 1782 Application Meets the Statutory Requirements of Section 1782. ........... 9

      1.    The Impending Cayman Litigation is "Reasonably Contemplated." ........................ 10

      2.    E*Trade is "Found In" the District. ......................................................................... 15

   B.    The *Intel* Discretionary Factors Are Satisfied and Weigh in Favor of Granting the KPA 1782 Application. ............................................................................................................... 17

      1.    The E*Trade Subpoena Should Issue. ...................................................................... 17

      2.    The Citibank Subpoena Should Issue. ...................................................................... 17

         (a)    The Requested Discovery is Not Within the Jurisdiction of a Cayman Court. ...... 17

         (b)    The Cayman Courts are Receptive to Section 1782 Discovery. ........................... 19

         (c)    The KPA 1782 Application Does Not Circumvent Any Foreign Proof-Gathering Restrictions. ....................................................................................................................... 20

         (d)    The KPA 1782 Application Places No Burden on the Port Fund and Is Not Otherwise Unduly Intrusive. ............................................................................................. 22

         (e)    The KPA 1782 Application Was Not Brought in Bad Faith. ................................ 24

Conclusion ..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.G. of the British V.I. v. Hyman*,
 No. 1:19-MC-164, 2020 US Dist. LEXIS 90763 (D.D.C. May 23, 2020) ........................14, 16

*Accent Delight Int'l v. Sotheby's, Inc. (In re Accent Delight Int'l)*,
 791 F. App'x 247 (2d Cir. 2019) ..................................................................................... 17-18

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*,
 798 F.3d 113 (2d Cir. 2015).....................................................................................................10

*Duttle v. Bandler & Kass*,
 No. 82-CV-5084, 1992 U.S. Dist. LEXIS 8894 (S.D.N.Y. June 23, 1992) ............................16

*Edelman v. Taittinger (In re Edelman)*,
 295 F.3d 171 (2d Cir. 2002)....................................................................................................15

*Esses v. Hanania (In re Esses)*,
 101 F.3d 873 (2d Cir. 1996)................................................................................................ 19-20

*Gushlak v. Gushlak*,
 486 Fed. Appx. 215 (2d Cir. 2012)..........................................................................................25

*In re ALB-GOLD Teigwaren GmbH*,
 No. 19-MC-1166, 2019 U.S. Dist. LEXIS 148595 (E.D.N.Y. Aug. 30, 2019).................10, 14

*In re Apostolos Mangouras to Conduct Discovery for Use In A Foreign*
 *Proceeding Pursuant to 28 U.S.C. 1782*,
 No. 17-MC-172, 2017 U.S. Dist. LEXIS 179534 (S.D.N.Y. Oct. 30, 2017) .........................14

*In re Application of Hill*,
 No. 19-MC-117, 2005 U.S. Dist. LEXIS 10838 (S.D.N.Y. June 2, 2005).............................12

*In re Application of Hopkins*,
 No. 20-MC-80012, 2020 U.S. Dist. LEXIS 25386 (N.D. Cal. Feb. 13, 2020).......................20

*In re Asia Maritime Pacific*,
 253 F. Supp. 3d 701 (S.D.N.Y. 2015)................................................................................. 11-12

*In re Celso De Aquino Chad*,
 No. 19-MC-261, 2019 U.S. Dist. LEXIS 100483 (S.D.N.Y. June 17, 2019).........................23

*In re Consellior SAS*,
 No. 16-MC-00400, 2017 U.S. Dist. LEXIS 15045 (S.D.N.Y. Feb. 2, 2017) .........................23

*In re Cty. of Orange*,
    208 B.R. 117 (Bankr. S.D.N.Y. 1997) ...................................................................23

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ................................................................. 15-16, 24

*In re Ex Parte Application of Gulf Investment Corporation for an Order to Obtain*
    *Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*,
    Case No. 1:19-mc-00593 (S.D.N.Y.) ......................................................................21

*In re Furstenberg Fin. SAS*,
    334 F. Supp. 3d 616 (S.D.N.Y. 2018), *aff'd* 785 F. App'x 882 (2d Cir. 2019) ......................15

*In re Harbour Victoria Inv. Holdings Ltd.*,
    No. 15-MC-127, 2015 U.S. Dist. LEXIS 87912 (S.D.N.Y. June 29, 2015) ...................... 11-12

*In re Hornbeam*,
    No. 14-MC-424, 2015 LEXIS 142361 (S.D.N.Y. Sept. 17, 2015) ............................................8

*In re IJK Palm LLC*,
    No. 3:16-MC-171, 2019 U.S. Dist. LEXIS 88065 (D. Conn. Jan. 30, 2019) ...................14, 20

*In re Iraq Telecom*,
    No. 18-MC-458, 2019 U.S. Dist. LEXIS 136321 (S.D.N.Y. Aug. 13, 2019) .................. 23-24

*In re Kiobel*,
    No. 16-CV-7992, 2017 U.S. Dist. LEXIS 9746 (S.D.N.Y. Jan. 24, 2017) ............................20

*In re Operacion Y Supervision De Hoteles, S.A. de C.V.*,
    No. 14-MC-82, 2014 U.S. Dist. LEXIS 179442 (S.D.N.Y. Dec. 31, 2014) ...........................19

*In re Platinum Partners Value Arbitrage Fund L.P.*,
    583 B.R. 803 (Bankr. S.D.N.Y. 2018) ..................................................................20

*In re Reiko Aso*,
    No. 19-MC-190, 2019 U.S. Dist. LEXIS 93175 (S.D.N.Y. June 3, 2019) .........................9, 22

*In re Reyes*,
    2019 U.S. Dist. LEXIS 201875 (S.D.N.Y. Nov. 20, 2019) ....................................................25

*In re Sargeant*,
    278 F. Supp. 3d 814 (S.D.N.Y. 2017) .............................................................. 10-11

*In re Top Matrix Holdings Ltd. for an Order to Take Discovery for Use in a*
    *Foreign Proceeding Pursuant to 28 U.S.C. § 1782*,
    No. 18-MC-465, 2019 U.S. Dist. LEXIS 210264 (S.D.N.Y. Dec. 2, 2019) ...........................24

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982)...................................................................................................... 15-16

*Intel Corp. v. Advanced Micro Devices*,
    542 U.S. 241 (2004).................................................................................................... *passim*

*Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015)................................................................................................10

*Jiangsu S.S. Co. v. Success Superior Ltd.*,
    No. 14-CV-9997, 2015 U.S. Dist. LEXIS 18388 (S.D.N.Y. Jan. 6, 2015) ...................... 11-12

*Kuwait Inv. Auth. v. Sarrio S.A. (In re Sarrio, S.A.)*,
    119 F.3d 143 (2d Cir. 1997)..................................................................................................8

*Lancaster Factoring Co. v. Mangone*,
    90 F.3d 38 (2d Cir. 1996)....................................................................................................12

*Levine v. Brown*,
    No. 15-CV-1738, 2020 U.S. Dist. LEXIS 19473 (S.D.N.Y. Feb. 4, 2020)...................... 15-16

*Media v. Doe No. 4*,
    No 12-CV-2950, 2012 U.S. Dist. LEXIS 170554 (S.D.N.Y. Nov. 30, 2012)....................9, 22

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015).................................................................................................13

*Roberts v. Bennaceur*,
    658 F. App'x 611 (2d Cir. 2016) .........................................................................................19

*Rodriguez v. Carson*,
    401 F. Supp. 465 (S.D.N.Y. 2019) ......................................................................................19

*Sandra Holding Ltd. v. Fawzi Musaed Al Saleh*,
    No. 18-MC-91406, 2019 U.S. Dist. LEXIS 116920 (D. Mass. July 15, 2019) ......................14

*U.S. Reg'l Econ. Dev. Auth., LLC v. Matthews*,
    No. 3:16-CV-01093, 2018 U.S. Dist. LEXIS 78908 (D. Conn. May 10, 2018)................ 22-23

**Statutes, Rules and Laws**

28 U.S.C. § 1782..................................................................................................... *passim*

Cayman Confidential Information Disclosure Law ....................................................................21

Exempted Limited Partnership Law of the Cayman Islands Section 22 .............................. *passim*

Fed. R. Civ. P. 26...............................................................................................................15

Fed. R. Civ. P. 45 ....................................................................................................................15

**Foreign Cases**

*In the Matter of Nord Anglia Education, Inc.* - FSD 235 of 2017 - Costs ruling
    (18 April 2019) ............................................................................................................ 19-20

*Lyxor Asset Management SA v Phoenix Meridian Equity Limited*
    [2009] CILR 553 .................................................................................................................20

**Other Authorities**

Boris Johnson, *This cap on bankers' bonuses is like a dead cat – pure distraction,*
    The Telegraph (Mar. 3, 2013).................................................................................................1

Zachary Mider, Ben Elgin, & Joe Light, *Kuwaiti Cash Fuels a Surge of*
    *Misleading U.S. Media Coverage*, BLOOMBERG (Jan. 9, 2020),
    https://www.bloomberg.com/news/articles/2020-01-09/kuwaiti-cash-fuels-a-
    surge-ofmisleading-u-s-media-coverage.....................................................................................2

Applicant, the Kuwait Ports Authority ("**KPA**"), respectfully submits this consolidated reply in further support of its *ex parte* application [ECF 1] pursuant to 28 U.S.C. § 1782 ("**Section 1782**") for an order compelling discovery for use in a foreign proceeding and the memorandum of law submitted in support thereof [ECF 4] (together, the "**KPA 1782 Application**") and in opposition to the consolidated motion to intervene and response in opposition to the KPA 1782 Application [ECF 20] (the "**Response**") filed by The Port Fund L.P. (the "**Port Fund**").[1]

## INTRODUCTION

Let us suppose you are losing an argument. The facts are overwhelmingly against you, and the more people focus on the reality the worse it is for you and your case.

> Your best bet in these circumstances is to perform a manoeuvre that [Australian political strategist Lynton Crosby] describes as "**throwing a dead cat on the table, mate**" . . . . That is because there is one thing that is absolutely certain about throwing a dead cat on the dining room table – and I don't mean that people will be outraged, alarmed, disgusted. That is true, but irrelevant. The key point, says my Australian friend, is that everyone will shout "Jeez, mate, there's a dead cat on the table!"; in other words they will be talking about the dead cat, the thing you want them to talk about, and they will not be talking about the issue that has been causing you so much grief.

So wrote the current British Prime Minister in the British Daily Telegraph in 2013, when he was mayor of London.[2] The "Dead Cat Theory," as it has come to be known, is exactly what the Port Fund has sought to deploy in its Response.

While the complex and tortuous web of international intrigue, obscure and biased criminal persecution, gender discrimination and religious oppression, carefully woven by the Port Fund in its Response, makes for an entertaining and sometimes gripping read, it must be seen for what it is; if

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the KPA 1782 Application.

[2] *See* Boris Johnson, *This cap on bankers' bonuses is like a dead cat – pure distraction*, The Telegraph (Mar. 3, 2013) (emphasis added).

not Mr. Crosby's politically motivated "dead cat," then a classic litigation smoke screen designed to obscure, confuse and mislead the Court away from a more commonplace and unromantic truth.[3]

KPA's position is simple and straightforward: KPA invested a considerable sum of money (USD 85 million) in the Port Fund in the expectation (backed up by contractual rights and obligations contained in a Limited Partnership Agreement and associated contractual documentation governed by the law, and subject to the jurisdiction, of the Cayman Islands) that its money would be invested in a specific way and that such investment (subject to any attendant profit or loss) would be returned to it in due course, less any legitimate and properly incurred fees, costs and expenses.

For the reasons stated in the KPA 1782 Application, KPA has an informed and reasonable belief that the Port Fund's general partner, Port Link GP Ltd. ("**Port Link**"), and various companies and individuals associated with Port Link, including KGLI, the Fund Manager, and certain of the officers, executives or shareholders of these entities, have wrongfully and dishonestly misappropriated and/or misdirected assets away from the Port Fund's limited partners for the benefit of themselves and/or their associates.

The most egregious example relates to the Port Fund's disposition of the sale proceeds of the Clark Asset, a major greenfield airport infrastructure site in the Philippines. According to public financial filings made by the purchaser in the Philippines, the sale price of the Clark Asset was nearly *USD 1 billion*. Sabah Decl. [ECF 7] at ¶ 26. However, the net exit amount reported by the Port Fund was only *USD 496 million*, with a distribution made by the Port Fund to the limited partners of only *USD 305 million*. *Id.* at ¶ 31. Having never previously disclosed to the limited partners the existence of any financing arrangements, the Chin Declaration in support of the Port

---

[3] *See* Zachary Mider, Ben Elgin, & Joe Light, *Kuwaiti Cash Fuels a Surge of Misleading U.S. Media Coverage*, BLOOMBERG (Jan. 9, 2020), https://www.bloomberg.com/news/articles/2020-01-09/kuwaiti-cash-fuels-a-surge-ofmisleading-u-s-media-coverage, a true and correct copy of which is attached to the Kaplan Decl. as Exhibit 3.

Fund's Response revealed that the sale price may have been *USD 655 million*, but that *USD 160 million* was paid to satisfy "bank loans." *See* Chin Decl. [ECF 21] at ¶ 21. These discrepancies and undocumented and changing assertions evidence a clear intention on the part of the Port Fund to obfuscate and strongly suggest gross mismanagement of the Port Fund and the fraudulent diversion of hundreds of millions of dollars from the rightful recipients: the limited partners. Quite apart from these apparent discrepancies, there also appears to have been tens of millions of dollars paid to shadowy, potentially associated third parties under the pretense of "advisory services," rather than distributed to the Port Fund's limited partners. Sabah Decl. at ¶ 20; Exhibit 11 to the Gowrie Decl. [ECF 22-11], at ¶¶ 3.11-3.12. Additionally, an apparent "kickback" scheme provides another objective basis for the loss of confidence in the Port Fund's management and advisors. Sabah Decl. at ¶¶ 36-40. This scheme involves the misappropriation of KD 1 million (~USD 3.3 million) via KGLI by those in control of the Port Fund (*i.e.*, Ms. Lazareva and Mr. Dashti, both now convicted criminals), and paid to an account held by Khalid Al Shamali (the brother of the disgraced former KPA Director of Finance, Abdullah Al Shamali), at E*Trade's Bank of New York account in New York. *Id.* at ¶ 40.

The Port Fund would have the Court disregard all of this and instead believe that it has fully and properly accounted for all its activity and expenditure and that miraculous returns on investment have been paid to the limited partners. Any discontent on the part of the limited partners, according to the Port Fund, must be the result of sinister ulterior motives on the part of the State of Kuwait. Whether or not the Port Fund has fully or properly accounted for its activity and expenditure goes to the merits of the Impending Cayman Litigation, and it is not the task of a U.S. court on a Section 1782 application to consider the merits of the underlying proceeding. Nevertheless, since the Port Fund raised the issue, it is worth noting that the Port Fund has failed to produce any explanation of

its activities that withstands scrutiny or to produce any contemporaneous documentation to evidence or justify its explanations.

The Port Fund would also have the Court disregard the fact that KPA, its attorneys and other specialist advisers have spent a considerable amount of time and money in investigating the affairs of the Port Fund. KPA has uncovered numerous unexplained and undisclosed payments to apparently connected or concealed parties, and has given the Port Fund and Port Link every opportunity to explain and justify their position. Having initially flatly refused to provide any explanation or documentation, then delayed and prevaricated, the Port Fund has, when faced with the inevitability of court proceedings and mandatory orders, eventually provided a series of explanations (always vague and sometimes contradictory) but still not provided any, or any meaningful, contemporaneous documentary evidence to justify their position. Instead, the Port Fund and Port Link have deployed every available argument and litigation tactic, however vain or spurious, in a desperate attempt to avoid, or at least delay as long as possible, their day or reckoning.

First, the Port Fund and Port Link sought to rely on hopeless legal theories, including most prominently, third party confidentiality and privilege, in an attempt to resist providing to the Limited Partners such documentation and information which section 22 of the Exempted Limited Partnership Law of the Cayman Islands entitled them to.

In the ensuing proceedings brought by KPA in the Cayman Islands to enforce its statutory right (the "***Section 22 Proceedings***"), the Port Fund continued to press its hopeless arguments, only to see them robustly dismissed by the Grand Court of the Cayman Islands (the "***Grand Court***"). Even then, however, notwithstanding a comprehensive judgment (issued on June 16, 2020) that rejects each and every one of the Port Fund's arguments and upholds in unequivocal terms the limited partners' rights to receive "true and full information" relating to the affairs of the Fund, the

Port Fund and Port Link have failed to provide one shred of material in response to the Grand Court judgment. Rather, the Port Fund and Port Link seek to argue the unarguable terms of the judgment and threaten appeals.

These actions are hardly the actions of a wronged and innocent party. If, as the Port Fund and Port Link would have this court believe, they are the innocent victims of a cruel and unfortunate misunderstanding, they would of course be falling over themselves to assist the limited partners in clearing up such misunderstanding. If true advisory service agreements have been entered into, contracts and evidence of performance would be willingly volunteered. If sales and investment return figures have been correctly reported, supporting contemporaneous material could, and of course would, be eagerly provided. The fact that, rather than take such simple steps, the Port Fund and Port Link have gone to such extraordinary lengths to hide, conceal and obscure their actions and to confound and confuse the limited partners at every turn, is far more telling than any of the Port Fund's manufactured outrage. Plainly, the Port Fund and Port Link would not go to such lengths to prevent the limited partners from having access to material which evidences their innocence.

In these 1782 proceedings, notwithstanding the fact that they are not parties to such proceedings and that such proceedings seek documents in the possession of third party financial institutions, the Port Fund and Port Link continue to rely on a myriad of outlandish and spurious reasons, including many (such as the baseless allegations of malicious persecution and bad faith) that they sought unsuccessfully to rely upon in the Section 22 proceedings.[4] Yet the decision in the

---

[4] In addition to their now rejected third party confidentiality and privilege claims, the Port Fund and Port Link have attempted to shield information about the fund from disclosure through extravagant and fabricated excuses, like the risk of discrimination and persecution in Kuwait of parties generally no longer in Kuwait. However, even if disclosure of such information would increase the risk of prosecution for crimes committed, that cannot be a bar to disclosure of information for use in other, reasonably contemplated civil proceedings. Moreover, at the risk of accepting the Port Fund's invitation to discuss the state of health of the stiff and lifeless cat it has sought to introduce into these proceedings, we note that the so-called Attorney General Correspondence attached as Exhibit 11 to the Gowrie Declaration [ECF 22-11], makes clear that the Port Fund's suggestion that KPA, by way of the State of Kuwait, somehow played a role in the freeze of, and then sought to misappropriate the limited partners' funds, is entirely baseless. The evidence shows that

Section 22 Proceedings undermines the Port Fund and Port Link's central and repeated argument that a Cayman court would not endorse KPA's compilation of evidence to support its Impending Cayman Litigation.

Perhaps anticipating the Grant Court's rejection of each of its spurious theories, the Port Fund argued in the alternative that the granting of the application in the Section 22 Proceedings would produce duplicative evidence, negating the need for the KPA 1782 Application. To the contrary, although both applications were made to assist the investigation of the mismanagement of the Port Fund and in recovering the misappropriated funds, the KPA 1782 Application seeks different information, from different sources, and under a different premise[5] than in the Section 22 Proceeding. As discussed further herein, the KPA 1782 Application seeks information from financial institutions—Citibank and E*Trade—whose records are not within the possession, custody or power of the Port Fund. The Citibank subpoena (attached as Exhibit 4 to the Kaplan Declaration) is narrowly tailored to retrieve documents that will help evidence the diversion of funds from the Clark Asset sale, and will support a just and equitable ("***J&E***") winding up of the Port Fund and claims against its advisors and managers. *See* Sabah Declaration [ECF 7] at ¶ 27.[6] The E*Trade

---

Kuwaiti authorities became aware of the freezing order only *after* it was issued (*see* March 22, 2018 letter from the UAE Judicial Authority, Public Prosecution of Dubai, to the Judicial Authority, the State of Kuwait [ECF 22-11] at 39); suspicions relating to the funds transferred to the Noor Bank account were instead first raised by Noor Bank itself and communicated on November 15, 2017 by Noor Bank to the Financial Intelligence Function at the Central Bank of the UAE. *Id.* at 40 ("on 15/11/2017, the Financial Intelligence Function at the Central Bank of the UAE received Report No. (36674) on a suspicious transaction from Noor Bank involving Port Link GP LTD"). Similarly, there is no basis for the claim that KPA was unjustly enriched through its receipt of $125 million in proceeds of the Clark Asset sale. By the Port Fund's own calculations, KPA holds 41% of the interests in the Port Fund (*see* Chin Decl. ¶ 6), and KPA should thus be entitled to the entirety of the $125 million out of the $305 million (*i.e.*, 41%) that the Port Fund now claims was available for distribution (putting aside the fact that the amount available for distribution appears to have been hundreds of millions more).

[5] The 1782 application is for discovery from third parties in aid of contemplated winding up and other proceedings in the Cayman Islands. By contrast, the Section 22 proceedings are for access to financial information and books and records of the Port Fund by virtue of a statutory and contractual right of the limited partners, rather than for "disclosure/discovery" of material in the context of substantive proceedings.

[6] The Citibank subpoena originally attached as Exhibit 1 to the Cross Declaration [ECF 5] has been revised to account for the substitution of counsel and changed return address and return date of the subpoena.

subpoena (attached as Exhibit 5 to the Kaplan Declaration) is narrowly tailored to procure account records that will help document the kickback scheme and provide further support for the J&E and other claims against the Port Fund's advisors and managers by showing that the individuals managing the Port Fund were defrauding KPA. *See* Sabah Decl. ¶ 40.[7]

As such, KPA engaged Cayman counsel to prepare a J&E winding up proceeding against the Port Fund and to prepare other claims against Port Link and other Port Fund managers and advisors. KPA's Cayman counsel submitted a declaration (the Fox Declaration [ECF 6]) setting forth the legal theories on which the Impending Cayman Litigation will rely. KPA also includes herewith a Supplemental Fox Declaration that counters certain misstatements of Cayman law set forth in the Gowrie Declaration [ECF 22], and provides further support for the KPA 1782 Application.

As will be discussed further herein, the KPA 1782 Application was unopposed by any of the actual subpoena targets, and the Port Fund's right to intervene to challenge the application is limited. Moreover, despite the contentions raised by the Port Fund in its Response, it is clear that the KPA 1782 Application meets the Section 1782 statutory requirements and that the *Intel* discretionary factors all weigh heavily in favor of granting the KPA 1782 Application. The KPA 1782 Application should thus be granted and KPA permitted to serve the requested subpoenas on Citibank and E*Trade.

---

[7] The E*Trade subpoena originally attached as Exhibit 2 to the Cross Declaration [ECF 5] has been revised to account for the substitution of counsel and changed return address and return date of the subpoena, as well as an incorrect address for E*Trade.

## ARGUMENT

### I. OPPOSITION TO THE PORT FUND'S MOTION TO INTERVENE

#### A. The Port Fund's Right to Intervene to Challenge the E*Trade Subpoena Requires a Concession that the Information Sought is "For Use" Against it in a Foreign Proceeding.

The Port Fund has grounded its argument that it is entitled to intervene on case law that "parties against whom the requested information will be used" may have standing to challenge a Section 1782 application. (Resp. at 7) (citing *Kuwait Inv. Auth. v. Sarrio S.A. (In re Sarrio, S.A.)*, 119 F.3d 143, 148 (2d Cir. 1997) and *In re Hornbeam*, No. 14-MC-424, 2015 LEXIS 142361, at *6-7 (S.D.N.Y. Sept. 17, 2015)). Yet the Port Fund also argues vehemently that it is <u>not</u> the target of the information sought from E*Trade. (Resp. at 13) ("The [kickback] 'scheme' has nothing to do with Port Fund or Port Link.").

KPA disagrees with the Port Fund's contention that the E*Trade information would be irrelevant in the Impending Cayman Litigation. The misappropriation of over USD 3 million from a limited partner by those in control of the Port Fund provides an objective basis for the loss of confidence in the Port Fund's management and advisors, and is one of the many grounds for the J&E proceeding and the additional claims reasonably contemplated by KPA.

Nevertheless, the Port Fund cannot have it both ways. Either it is the target of the E*Trade subpoena, in which case it cannot argue that the information sought is irrelevant to and not "for use" in the Impending Cayman Litigation against it, or it is not the target, in which case the Port Fund has no basis upon which to seek to intervene to object to the E*Trade subpoena, which is unopposed by E*Trade itself.

**B. The Port Fund Has Only Limited Rights to Intervene to Challenge the Citibank Subpoena.**

As for the Citibank subpoena—which seeks further evidence of the Port Fund and its management and advisors' diversion of funds from the Clark Asset sale—there is no dispute that the Port Fund is a party against whom the requested information will be used in the Impending Cayman Litigation. The question here is the *scope* of the Port Fund's right to intervene.

Unlike a subpoena recipient that must review its files and go through the labor of discovery, a third party intervenor bears none of that burden. Courts have accordingly found that, when considering the Section 1782 discretionary factors—and as a general rule when a third party intervenes to quash a subpoena served on another—the intervening party does not have standing to argue the burden of the requests addressed to the subpoena target. *In re Reiko Aso*, No. 19-MC-190, 2019 U.S. Dist. LEXIS 93175, at *24 (S.D.N.Y. June 3, 2019); *Media v. Doe No. 4*, No 12-CV-2950, 2012 U.S. Dist. LEXIS 170554, at *5 (S.D.N.Y. Nov. 30, 2012).

**II.     REPLY IN FURTHER SUPPORT OF THE KPA 1782 APPLICATION**

**A. The KPA 1782 Application Meets the Statutory Requirements of Section 1782.**

Putting aside the question of intervention, the Court should grant the KPA 1782 Application because it satisfies the statutory requirements of Section 1782: (1) Citibank and E*Trade are "found" in the Southern District of New York; (2) the requested information is "for use" in a reasonably contemplated foreign proceeding; and (3) KPA is an "interested person" as the plaintiff in the Impending Cayman Litigation. While the Port Fund challenges the KPA 1782 Application as to the first and second statutory requirements, neither challenge is viable.[8]

---

[8] The Port Fund questions, in passing, whether KPA is in fact an "interested person." However, it "acknowledges that . . . the weight of authority is in favor of deeming KPA a 'person' for Section 1782 purposes." (Resp. at 15). KPA's satisfaction of the third statutory factor is, thus, undisputed.

**1. The Impending Cayman Litigation is "Reasonably Contemplated."**

The Section 1782(a) "for use" statutory requirement has been interpreted by the U.S. Supreme Court to include proceedings "in reasonable contemplation, but [that] need not be 'pending' or 'imminent'[.]" *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 247 (2004). Here, KPA reasonably contemplates the initiation of a J&E winding up petition, on the basis that, at the very least, there has been a justifiable loss in confidence in the management of the Port Fund, and that an independent investigation into the affairs of the partnership is necessary. Supp. Fox Decl. ¶¶ 6, 11-12. Further, KPA reasonably contemplates bringing other causes of action against Port Link, the general manager of the Port Fund, and other managers and advisors of the Port Fund, including for mismanagement and misappropriation. *Id.* ¶¶ 17-19. This statutory factor is clearly satisfied.

> In this Circuit, the test for satisfying the "in reasonable contemplation" standard is that:
>
> [T]he applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated . . . . [The] applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123-24 (2d Cir. 2015). It is thus, in the words of one court, a "*de minimis* burden" and is intended to ferret out "fishing expeditions." *In re ALB-GOLD Teigwaren GmbH*, No. 19-MC-1166, 2019 U.S. Dist. LEXIS 148595, at *26 (E.D.N.Y. Aug. 30, 2019). The evidence KPA has put before this Court surely shows that it is not engaged in a fishing expedition.

As one would expect, the Port Fund puts before this Court a number of cases in which Section 1782 applications were denied because the contemplated proceedings were too speculative. But all are readily distinguishable. In *In re Sargeant* (Resp. at 10-11), the court said: "the Section 1782 Application is bereft of even the broadest contours of what the possible proceeding(s) in the

United Kingdom or the Isle of Man may entail—they are entirely embryonic." 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017). In contrast, here, KPA has detailed in the original Fox Declaration [ECF 6] and supplemented in the Supplemental Fox Declaration, the specific contours of the proceedings that will be commenced.

In a second case that the Port Fund relied on, *Jiangsu S.S. Co. v. Success Superior Ltd.* (Resp. at 11), the court said "the conclusion that what [the 1782 applicant] really wants is to decide whether to commence arbitration at all is inescapable." No. 14-CV-9997, 2015 U.S. Dist. LEXIS 18388, at *9-12 (S.D.N.Y. Jan. 6, 2015) (emphasis added). That is not the case here. There is no question that proceedings are going to be commenced in the Cayman Islands.

Similarly, in a third case cited by the Port Fund, *In re Asia Maritime Pacific* (Resp. at 11), the relevant foreign proceeding was an arbitration in London. But the discovery being sought under Section 1782 was not for use in that arbitration. It was supposedly to locate assets for some unidentified pre- and post-judgment attachment actions. The applicant's admission that the subject "had no significant assets held in its name" was fatal to the application, as the applicant was obviously engaged in a fishing expedition. 253 F. Supp. 3d 701, 707 (S.D.N.Y. 2015). In contrast, here, KPA is well aware—and has submitted evidence to prove—that Citibank and E-trade have the evidence that can be used in its contemplated proceedings against the Port Fund.

The fourth case the Port Fund relies on is *In re Harbour Victoria Inv. Holdings Ltd.* (Resp. at 11). In that case, however, the court said that it would assume (without deciding) that the evidence being sought *was in fact for use in a foreign proceeding*. The court's reluctance in reaching that conclusion was only because the court believed that the real purpose for seeking the Section 1782 discovery was to use in an ongoing lawsuit in the U.S. No. 15-MC-127, 2015 U.S. Dist. LEXIS 87912, at *15 (S.D.N.Y. June 29, 2015). There are no such concerns in the instant case.

Another distinguishing factor of *In re Harbour Victoria*, *Jiangsu* and *In re Asia Maritime Pacific* is that they sought discovery to assist with obtaining pre-judgment or post-judgment attachments. Here, in contrast, the KPA 1782 Application is not for a pre-judgment or post-judgment attachment, but for documents in support of KPA's forthcoming J&E winding up petition and claims to recover assets misappropriated from the Port Fund. Fox Decl. at ¶ 10. Courts have routinely found winding up or bankruptcy proceedings and proceedings to address misappropriation of assets to be the types of proceedings for which they will render assistance under Section 1782. *See Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("A bankruptcy proceeding, by its nature, . . . is within the intended scope of § 1782."); *In re Application of Hill*, No. 19-MC-117, 2005 U.S. Dist. LEXIS 10838, at *13-14 (S.D.N.Y. June 2, 2005) ("The fact that the Liquidators may use the fruits of discovery to pursue potential claims against third parties does not undermine their equally legitimate goals of reconstructing financial records, evaluating key transactions and identifying and recovering the debtors' assets.").

There is also entirely no substance to the Port Fund's claim that KPA has failed to provide the legal theories under which they plan to litigate in the Cayman Islands. (Resp. at 12). Both the Fox Declaration and the Supplemental Fox Declaration go into detail about the grounds for bringing a J&E winding up petition, which include showing a lack of probity or mismanagement of the Port Fund and a justifiable loss of confidence by KPA, or that there have been payments or inappropriate activities that require some further investigation by independent liquidators. Fox Decl. at ¶¶ 9 - 10; Supp. Fox Decl. at ¶¶ 6-16. The Supplemental Fox Declaration further explains how the information sought from Citibank and E*Trade will also be used in the Impending Cayman Litigation to support claims arising from the apparent mismanagement by the directors and advisors of the Port Fund. Supp. Fox Decl. at ¶¶ 17-19.

As grounds to deny the application, the Port Fund points to the statement in the Fox Declaration that KPA does not currently have sufficient evidence to prove that Port Link, as general partner of the Port Fund, has committed fraud and that the winding up petition is thus not "in reasonable contemplation." (Resp. 11-12). This is a deliberate distortion of KPA's position. KPA never stated, and does not agree with the premise, that it does not have sufficient grounds to bring a winding up petition. As outlined in the Supplemental Fox Declaration, the bases for a winding up petition here are substantial and myriad, and include the objective and obvious discrepancies between the reported sales amounts and distributions, the commingling of the Port Fund's assets in Port Link's accounts, the failure of the Port Fund to provide audited accounts, the ongoing criminal proceedings and convictions of the directors of the Port Fund's general partner, the kickback scheme engaged in by those in control of the Port Fund, the Port Fund's decision not to contest a USD 57 million claim against it in Dubai, the favorable treatment given to the Port Fund's sponsor and placement agent under a loan agreement, and the refusal of the Port Fund's general partner to provide the information requested of it from its limited partners about these issues and about the Port Fund's capital accounts and drawn down capital commitments. *See* Supp. Fox Decl. at ¶ 13. In any event, the Port Fund does not (and cannot) challenge the bases for bringing claims of breach of contract or breach of fiduciary duty against Port Link to recover assets misappropriated from the Port Fund (Supp. Fox Decl. at ¶ 18); the evidence sought in the KPA 1782 Application is "for use" in those proceedings as well. Indeed, even if the evidence sought in the KPA 1782 Application is needed to prove these claims in the Impending Cayman Litigation, that would not justify denying the Section 1782 request; the entire point of a Section 1782 application is to provide evidence that can be used in a foreign proceeding to assist in proving the claims brought in that proceeding. *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015).

It is also of no relevance that the evidence sought may be used to meet the heightened pleading standards for claims of fraud against Port Link. U.S. courts have repeatedly held that even where the information sought in a Section 1782 proceeding is needed to initiate the foreign proceeding, such proceeding would still be deemed to have been "reasonably contemplated" by the petitioner. *See In re Apostolos Mangouras to Conduct Discovery for Use In A Foreign Proceeding Pursuant to 28 U.S.C. 1782*, No. 17-MC-172, 2017 U.S. Dist. LEXIS 179534, at *6, *16-17 (S.D.N.Y. Oct. 30, 2017) (§ 1782 application granted to obtain discovery for use in drafting the initiating pleading for contemplated foreign proceeding); *In re ALB-GOLD Teigwaren GmbH*, at *23-24 (contemplated Swiss revision proceedings were within reasonable contemplation, although additional information sought in the § 1782 application was required to initiate the proceedings); *A.G. of the British V.I. v. Hyman*, No. 1:19-MC-164, 2020 US Dist. LEXIS 90763, at *18-19 (D.D.C. May 23, 2020) (granting § 1782 application where applicant set forth that evidence sought "would be extremely useful in ensuring that it meets [the heightened pleading] standard"); *In re IJK Palm LLC*, No. 3:16-MC-171, 2019 U.S. Dist. LEXIS 88065, at *9-11 (D. Conn. Jan. 30, 2019) (applicant intended to pursue claims against past and present directors of an investment vehicle in the Cayman Islands *after* obtaining discovery in U.S.); *Sandra Holding Ltd. v. Fawzi Musaed Al Saleh*, No. 18-MC-91406, 2019 U.S. Dist. LEXIS 116920, at *5, *10 (D. Mass. July 15, 2019) (finding that applicant satisfied the "for use" requirement by stating "with some specificity a basic theory of liability and the type of suit it plans to initiate, to wit: a derivative shareholder lawsuit in the Cayman Islands against Universal and Fawzi based on fraud" and to meet "the strict pleading standards of the Grand Court" in the Cayman Islands).

Finally, the Port Fund states in its response that the fact that KPA has not yet filed its winding up petition in the Impending Cayman Litigation "confirm[s] that it has no basis to pursue litigation

at this time." (Resp. at 12). Yet any delay in initiating a proceeding is not a ground to deny a Section 1782 application. *See In re Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 619-620 (S.D.N.Y. 2018) (finding no basis to deny § 1782 request despite delay in initiating foreign proceeding, particularly where, like here, delay was caused by the other party's obstruction in obtaining evidence that would be used in initiating the foreign proceeding), *aff'd* 785 F. App'x 882, 885 (2d Cir. 2019).

### 2.   E*Trade is "Found In" the District.

The Port Fund also argues that E*Trade is not "found in" this District, based on an improperly narrow reading of this factor. The Second Circuit has explained, however, that "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019). The Second Circuit has also found that "§ 1782(a) supports a flexible reading of the phrase 'resides or is found,'" particularly in light of "the protections afforded by Rules 45 and 26 of the Federal Rules of Civil Procedure as well as the district court's 'prudent exercise of discretion.'" *Id.* at 527 (citing *Edelman v. Taittinger (In re Edelman)*, 295 F.3d 171, 178-179 (2d Cir. 2002)).

It is axiomatic that waiver is one way that a party can subject itself to the personal jurisdiction of a court. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived"). Thus, in contrast to subject matter jurisdiction—which a court must make certain is present in every case—if a party does not assert lack of personal jurisdiction as a defense, it is waived. Furthermore, it is only the party itself that can assert such defense. As the court said in *Levine v. Brown*, "personal jurisdiction is an individual right, which is waivable, and therefore cannot be raised on behalf of others." No. 15-CV-1738, 2020 U.S. Dist. LEXIS 19473, at *2-3 (S.D.N.Y. Feb. 4, 2020); *see also Duttle v. Bandler & Kass*, No. 82-CV-5084, 1992 U.S. Dist. LEXIS 8894, at *16 (S.D.N.Y. June 23, 1992) ("a third party lacks standing to make such a

motion.") (citing *Ins. Corp. of Ir.*, 456 U.S. 694 at 703). Thus, the Port Fund lacks standing to raise a personal jurisdiction defense on E*Trade's behalf.

Indeed, here, there is even less basis for the Port Fund's attempted objection, in that E*Trade has in fact agreed to be found in this district for purposes of this application. That is, E*Trade expressly stated to counsel for KPA that E*Trade was aware of and did not intend to oppose the KPA 1782 Application. *See* Kaplan Decl., Exhibit 1. The Port Fund cannot step into E*Trade's shoes to contest that decision.[9]

In any event, even if Port Fund had standing to assert the personal jurisdiction issue on behalf of E*Trade, such jurisdiction does in fact exist. E*Trade will be "found in" this district if the Court can assert either general or specific personal jurisdiction over E*Trade. *In re del Valle Ruiz*, 939 F.3d at 527 ("the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process"). Here, there can be no dispute that the Court can do so, and that E*Trade can be "found" in this district for purposes of this application. E*Trade has two offices in Manhattan, and the discovery sought from E*Trade arises from a 2010 funds transfer to an account at The Bank of New York in the name of E*Trade, which took place when E*Trade was headquartered in New York. Sabah Decl. ¶ 40; KPA 1782 Application at 16, n.13.[10]

---

[9] Nor would it make sense to deny an application that the subpoena target has agreed can be heard in this district, simply to go through the same process in another district. However, if the KPA 1782 Application were to be denied as to E*Trade, then it should be denied without prejudice to KPA bringing the same application in any other district where E*Trade can also be found. *See A.G. of British V.I.*, 2020 US Dist. LEXIS 90763, at *16-17 (denying without prejudice the portion of the § 1782 application concerning unknown persons and entities and permitting applicant to refile the application once the respondent's jurisdictional information was known).

[10] KPA has not misled the Court about E*Trade's location, as alleged by the Port Fund. (Resp.at 15). The change in E*Trade's headquarters pointed to by the Port Fund was set out in a SEC filing made *after* the KPA 1782 Application was filed. Regardless, the Court has specific, rather than general, personal jurisdiction over E*Trade, so this recent change in headquarters is of no import.

**B. The *Intel* Discretionary Factors Are Satisfied and Weigh in Favor of Granting the KPA 1782 Application.**

**1. The E*Trade Subpoena Should Issue.**

The Port Fund makes only one challenge to the E*Trade subpoena based on the *Intel* discretionary factors, arguing that the subpoena seeks documents not relevant to the claims against the Port Fund in the Impending Cayman Litigation. (Resp. at 21). Putting aside that this argument entirely undercuts the Port Fund's standing to challenge the E*Trade subpoena (*see supra* Section I.A), it is also incorrect. As discussed in detail in the Sabah Declaration, Fox Declaration and Supplemental Fox Declaration, the information sought in the E*Trade subpoena will evidence a "kickback" scheme orchestrated by the Port Fund's management and advisors, that provides another objective basis for the loss of confidence in the Port Fund's management and advisors in the Impending Cayman Litigation. *See* Sabah Decl. ¶¶ 36-40; Fox Decl. ¶ 15; Supp. Fox Decl. ¶ 15. It is thus relevant and the E*Trade subpoena should issue.

**2. The Citibank Subpoena Should Issue.**

The Port Fund also argues that the Court should exercise its discretion to deny the KPA 1782 Application with respect to the Citibank subpoena because (1) the discovery sought from Citibank is "within the jurisdiction of a Cayman Islands court," (Resp. at 15-17); (2) the application seeks to circumvent the Section 22 Proceedings in the Cayman Islands, (Resp. at 17-21); (3) the Citibank subpoena represents "an undue burden," (Resp. at 24-25); and (4) the application was brought in bad faith, (Resp. at 21-24). None of these are correct. Contrary to the Port Fund's assertions, all of the *Intel* discretionary factors weigh in favor of issuing the Citibank subpoena.

**(a)     The Requested Discovery is Not Within the Jurisdiction of a Cayman Court.**

The first *Intel* discretionary factor requires only that a petitioner has sufficient need for the § 1782 aid. *Accent Delight Int'l v. Sotheby's, Inc. (In re Accent Delight Int'l)*, 791 F. App'x 247,

251 (2d Cir. 2019). In making that determination, the Court focuses on whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Id.* at 250. In such case—where the foreign tribunal has jurisdiction over the discovery target, and can itself order the production of the evidence sought—that need may be diminished. *See id.* at 251.

Here, the subpoena target, Citibank, is concededly a non-participant in the Impending Cayman Litigation. (Resp. at 16). Nevertheless, in an effort to bring their objection within this factor, the Port Fund argues that "KPA is seeking the same information directly from the Port Fund and Port Link," who are parties in pending Section 22 Proceedings in the Cayman court. (Resp. at 15-16). This argument is unavailing. Although the Cayman court certainly does have jurisdiction over the Port Fund and Port Link in the Section 22 Proceedings, it is not true that production of the evidence being sought in the KPA 1782 Application could be ordered by the Cayman court.

Indeed, Citibank is not the Port Fund entities' bank, but rather the correspondent bank used by the Philippine purchaser of the Clark Asset to transfer the purchase price in US dollars to, *inter alia*, the Port Fund entities' bank. *See* Sabah Decl. ¶ 27. The documents sought here from Citibank—a non-party to the Cayman proceedings—will thus show the actual amount paid by the Clark Asset purchaser into its correspondent bank account (was it $1 billion? $655 million? $496 million? some other amount?). They will also show whether the amounts transferred from the purchaser's correspondent bank account went to parties other than the Port Fund.[11]

Yet despite the importance of these records, neither the Port Fund nor Port Link have "possession, custody, or power" over them. *See* Supp. Fox Decl. ¶¶ 32-33. The Citibank records are

---

[11] Document request 2(xii) of the Citibank subpoena, for example, seeks records related to the transfer of funds *other than* the $496 million transferred to Noor Bank and frozen by the UAE. This particular document request is particularly relevant now that the Port Fund alleges that the Clark Asset was actually sold for USD $655 million, and almost $160 million went to repay "bank loans." Chin Decl. [ECF 21] at ¶¶ 5, 21. This and related deductions and additions to the gross sales proceeds are unsupported and unexplained. However, the actual amounts transferred and actual recipients of those transfers will be evidenced by the correspondent bank transfer records.

concededly not held directly by the Port Fund or Port Link (Resp. at 16), and neither the Port Fund nor Port Link has an enforceable legal right to require Citibank to turn over these records. *See* Supp. Fox Decl. ¶ 33. Accordingly, the Citibank records have not been sought in the Section 22 Proceedings, because the Cayman courts would not have jurisdiction to order their production in that or in any other Cayman proceeding. *See* Supp. Fox Decl. ¶ 30.

This evidence would simply be unobtainable without this Court's assistance, and the first discretionary *Intel* factor is thus clearly met. *See In re Operacion Y Supervision De Hoteles, S.A. de C.V.*, No. 14-MC-82, 2014 U.S. Dist. LEXIS 179442, at *13-15 (S.D.N.Y. Dec. 31, 2014) (denying non-party's motion to quash subpoena where Mexican courts did not have ability to obtain respondent's testimony through other means).

### (b)    The Cayman Courts are Receptive to Section 1782 Discovery.

The second *Intel* discretionary factor asks the Court to consider the receptivity of the foreign court to the discovery sought. *Intel*, 542 U.S. 241 at 264. The Port Fund did not raise this issue in its brief, and has thus waived it. *Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) ("[A] party may forfeit a right or defense by actively litigating other issues and forgoing the opportunity to litigate that right or defense."); *Rodriguez v. Carson*, 401 F. Supp. 465, 470 (S.D.N.Y. 2019) (finding that defendants forfeited arguments they failed to make).

KPA addresses this issue only because it remains, vestigial, in the Gowrie Declaration submitted along with the Port Fund's Response. There, Mr. Gowrie argues that the Cayman case of *In the Matter of Nord Anglia Education, Inc.* - FSD 235 of 2017 - Costs ruling (18 April 2019), stands for the proposition that Cayman courts "are not always receptive" and in some cases "may not consider it appropriate" for a party to seek Section 1782 discovery.

That is not, however, enough. Section 1782 discovery should only be rejected on this discretionary ground if the respondent provides "authoritative proof that a foreign tribunal would

reject evidence obtained with the aid of section 1782." *Esses v. Hanania (In re Esses),* 101 F.3d 873, 876 (2d Cir. 1996); *see also In re Kiobel*, No. 16-CV-7992, 2017 U.S. Dist. LEXIS 9746, at *16 (S.D.N.Y. Jan. 24, 2017) (holding that amicus brief by the Government of the Netherlands was "not authoritative proof that the Netherlands is unreceptive to Section 1782 discovery," requiring, instead, "judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures.").

Instead, Cayman courts, including in the *Nord Anglia* decision cited by Mr. Gowrie, have affirmed their receptivity to discovery obtained via Section 1782. *See* Supp. Fox Decl. ¶ 35 (citing *Lyxor Asset Management SA v Phoenix Meridian Equity Limited* [2009] CILR 553). And, U.S. courts have previously and repeatedly acknowledged this receptivity. *See, e.g., In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) (citing *Lyxor*); *In re IJK Palm LLC*, 2019 U.S. Dist. LEXIS 88065, at *13 ("no legal barrier to the use of the requested discovery in Cayman Island courts."); *In re Application of Hopkins*, No. 20-MC-80012, 2020 U.S. Dist. LEXIS 25386, at *7-9 (N.D. Cal. Feb. 13, 2020) (noting no indication that the Cayman court would not be receptive to the information sought and citing cases finding the same).

Because Cayman law "neither prohibits nor is hostile" to evidence obtained through U.S. discovery procedures, this factor weighs in favor of granting the application. *In re Platinum Partners*, 583 B.R. 803 at 817; *see also* Fox Decl. ¶ 13, 16; Supp. Fox Decl. ¶¶ 35-36.

### (c)   The KPA 1782 Application Does Not Circumvent Any Foreign Proof-Gathering Restrictions.

The third *Intel* discretionary factor asks the Court to consider whether the Section 1782 application seeks to circumvent foreign proof-gathering restrictions. *Intel*, 542 U.S. 241 at 265. The Port Fund invokes this factor and argues that the Citibank subpoena somehow seeks "to avoid or preempt a negative ruling from the Cayman Islands court in the pending [Section 22] proceeding."

(Resp. at 17). Specifically, the Port Fund argues that if this Court were to issue an "inconsistent decision" from the Cayman court ruling in the Section 22 Proceedings, it would "run counter to the fundamental purpose of Section 1782 . . . ." (Resp. at 20-21).

It thus merits a repeated emphasis that, after the Port Fund made this argument, the Grand Court ruled on KPA's Section 22 application, and *granted* the relief sought therein. Specifically, the Grand Court held that KPA and the other limited partners of the Port Fund were entitled to the disclosure of true and full information regarding the business and financial condition of the Port Fund under Section 22 of the ELP Law. *See* Supp. Fox Dec. ¶ 23. The Grand Court also specifically refused to impose any confidentiality restrictions or restrictions on use of that information under the Cayman Confidential Information Disclosure Law. *See* Supp. Fox Decl. ¶ 24.[12]

Thus, if this Court were to maintain consistency with the Cayman Islands' decision, as suggested by the Port Fund under "established principles of comity," it would also allow the issuance of the subpoenas here. (Resp. at 21). The only remaining reason for not doing so suggested by the Port Fund is that the supposedly duplicative nature of the requests made in the Section 22 Proceeding would moot the Section 1782 Application. (Resp. at 20). As discussed in Section II.B.2(a), *supra*, the requests do not overlap, and the Section 22 ruling thus in no way moots the KPA 1782 Application.[13]

---

[12] While the precise terms of the disclosure order are still to be settled by the Cayman Court, there is no merit to any contention that there is any uncertainty as to the effects of the Section 22 Judgment. The Judgment deals comprehensively with the proper meaning, application and effect of Section 22 of the ELP Law and Section 4 of the CIDL, and every disputed point was determined in favor of KPA. *See* Supp. Fox Decl. at ¶¶ 22-29.

[13] In its response, the Port Fund makes much of the fact that KPA did not focus on the Section 22 Proceedings in the KPA 1782 Application. However, the Port Fund bases its "bad faith" argument on the misleading assertion that a discussion of those proceedings was necessary because there is an "overlap" in the evidence sought in each proceeding. That simply is not true, and there was no reason for KPA to raise and debunk each of the "dead cat" assertions made by the Port Fund, and ultimately rejected by the Cayman court, in the Section 22 Proceedings. Similarly, the Port Fund alleges that KPA somehow misled the Court by not identifying the case of *In re Ex Parte Application of Gulf Investment Corporation for an Order to Obtain Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, Case No. 1:19-mc-00593 (S.D.N.Y.) (the "***GIC 1782 Case***") as a "similar" case on its case initiating civil cover sheet. Resp. at n.9; Chin Decl. ¶¶ 25-27. But KPA had no obligation to identify the GIC 1782 Case, a different case, involving

Because granting the KPA 1782 Application can in no way be considered a circumvention of foreign proof-gathering restrictions, and would be entirely consistent with the approach taken by the Grand Court in the Section 22 Proceedings, the third *Intel* discretionary factor weighs heavily in KPA's favor.

### (d)   The KPA 1782 Application Places No Burden on the Port Fund and Is Not Otherwise Unduly Intrusive.

The Port Fund further argues that the Citibank subpoena represents an "undue burden" (Resp. at 24). Yet the subpoena is not directed at the Port Fund, and "undue burden" is thus not the Port Fund's argument to make. However, even if it were, the Citibank subpoena is narrowly tailored and does not place an undue burden on Citibank, nor is it otherwise unduly intrusive.

The case law is clear that it is only the subpoenaed party that can oppose a subpoena issued pursuant to Section 1782 on the grounds that it is "burdensome" – *not* the adversary in the foreign proceeding. *In re Reiko Aso*, No. 19-MC-190, 2019 U.S. Dist. LEXIS 93175, at *24 (S.D.N.Y. June 3, 2019) ("It appears disingenuous for Takeo to protest the burden of the requests *addressed to the subpoena targets* when none of them have intervened (though they have all been served with the Application).") (emphasis in original).

This principle is eminently sensible. There is absolutely no "burden" on the adversary in the foreign proceeding since they are not the ones gathering the responsive documents. The subpoenaed targets are the ones that must gather the materials, making the subpoenaed targets the only ones with standing to raise this complaint. *Media v. Doe No. 4*, No 12-CV-2950, 2012 U.S. Dist. LEXIS 170554, at *5 (S.D.N.Y. Nov. 30, 2012) (denying defendant standing to quash a subpoena to a non-party because "the burden of literal compliance with this subpoena falls to a third-party"); *U.S. Reg'l*

---

different parties and seeking different information. Indeed, Judge Broderick found them sufficiently dissimilar to deny the Port Fund's attempt to consolidate the cases. GIC 1782 Case [ECF 19].

*Econ. Dev. Auth., LLC v. Matthews*, No. 3:16-CV-01093, 2018 U.S. Dist. LEXIS 78908, at \*21 (D. Conn. May 10, 2018) ("a challenge to a subpoena based on grounds of relevance or burden may only be raised by the entity to which the subpoena is directed; a party lacks standing to raise such challenges to a subpoena directed at a nonparty").

In any event, "[t]he mere assertion that a subpoena is burdensome, without evidence to prove the claim, cannot form the basis for an 'undue burden' finding." *In re Cty. of Orange*, 208 B.R. 117, 121 (Bankr. S.D.N.Y. 1997) (declining to quash subpoena to bank); *see also*, *In re Consellior SAS*, No. 16-MC-00400, 2017 U.S. Dist. LEXIS 15045, at \*5 (S.D.N.Y. Feb. 2, 2017) ("This [*Intel*] factor simply requires that the subject matter of the request be reasonably tailored to speak to the claims and defenses raised in the proceedings at issue." (internal citation and quotation omitted)).

Here, KPA's discovery requests to Citibank are minimally burdensome, relevant and proportional to the needs of the Impending Cayman Litigation. KPA seeks records related to the Impending Cayman Litigation because it seeks information that will support its claims in a J&E winding up and its claims against Port Link and other Port Fund managers and advisors. The Citibank subpoena is also proportional because it seeks information related to one discrete event for which there are likely few Citibank correspondent accounts involved, but that represents potentially hundreds of millions of dollars diverted from KPA and the other limited partners. The Section 1782 request should thus be granted and the Citibank subpoena issued. *See, e.g.*, *In re Celso De Aquino Chad*, No. 19-MC-261, 2019 U.S. Dist. LEXIS 100483, at \*9-10 (S.D.N.Y. June 17, 2019) (granting petitioner's Section 1782 request for over seven years of wire transfer logs from four correspondent banks); *see also In re Iraq Telecom*, No. 18-MC-458, 2019 U.S. Dist. LEXIS 136321, at \*14 (S.D.N.Y. Aug. 13, 2019) (finding that even if documents sought regarding the relationship between the correspondent banks and other financial institutions was "unnecessary to prove Petitioner's

claims, issues of potential overbreadth are different from whether the process of searching for and producing the documents is unduly burdensome or intrusive.").

The Port Fund's final argument—that the KPA 1782 Application is "unduly burdensome" because it may seek information located outside the U.S.—is a grasp at straws. (Resp. at 25). There is absolutely no reason to believe that any of the information sought is located outside the U.S. Correspondent bank records for U.S. dollar transactions are located in the U.S. because that is how correspondent banks work. Yet even if the information were outside the U.S., the Second Circuit has made clear that extraterritorial discovery is permitted under Section 1782. *In re del Valle Ruiz*, 939 F.3d at 532 (discovery of evidence located extraterritorially can still be compelled under Section 1782); *In re Top Matrix Holdings Ltd. for an Order to Take Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. 18-MC-465, 2019 U.S. Dist. LEXIS 210264, at *15-16 (S.D.N.Y. Dec. 2, 2019) (same).

### (e)    The KPA 1782 Application Was Not Brought in Bad Faith.

Lacking the support of any of the statutory or discretionary *Intel* factors, the Port Fund falls back on general assertions of bad faith in its Response. (Resp. at 21-24). These assertions are entirely unfounded; they are the "dead cat" the Port Fund has thrown on the table.[14] The reality that the Port Fund attempts to obscure is simple: KPA is seeking narrowly tailored categories of information from two financial institutions related to an apparent scheme to defraud KPA and other limited partners out of potentially hundreds of millions of dollars. The Port Fund, Port Link, certain directors and advisors are all at the heart of the scheme, with the two main individuals having been convicted

---

[14] The Port Fund even alleges that the Director General of KPA is somehow without authority to instruct counsel in this matter. (Resp. at n.8). As has been explained repeatedly to the Port Fund, the Director General of KPA has full authority to direct counsel in its attempts to recover the amounts at issue from the Port Fund and to engage in the Section 1782 proceedings, the Section 22 Proceedings, and the Impending Cayman Litigation to do so. *See* April 1, 2020 letter from Herbert Smith Freehills to Kathy Chin of Crowell & Moring LLP, counsel for the Port Fund, with enclosures, a copy of which is attached to the Kaplan Decl. as Exhibit 2.

of the crimes of embezzlement, upheld on appeal. The Port Fund's allegations of bad faith are made to distract from this reality.

The Port Fund also claims that bringing these proceedings *ex parte* is somehow an indicia of bad faith. Yet Section 1782 applications are granted on an *ex parte* basis <u>as a matter of course</u>. *See Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte."). The KPA 1782 Application was, therefore, properly made on an *ex parte* basis, and is not an abuse of process or indicia of bad faith, as claimed by the Port Fund. It certainly is not grounds for denial of the application, especially where the Port Fund can claim no prejudice from the *ex parte* nature of the application. *See In re Reyes*, 2019 U.S. Dist. LEXIS 201875, at *7 (S.D.N.Y. Nov. 20, 2019) (declining to quash subpoenas issued pursuant to § 1782 where movant was not prejudiced by *ex parte* nature of application.).

## <u>CONCLUSION</u>

For the foregoing reasons, KPA respectfully asks the Court to issue the Proposed Order attached as Exhibit 6 to the Kaplan Declaration, granting the KPA 1782 Application, and authorizing KPA to serve the draft subpoenas attached as Exhibits 4 and 5 to the Kaplan Declaration.

Dated: July 3, 2020

   New York, New York      Respectfully submitted,

               **BAKER & McKENZIE LLP**

               */s/ Jacob Kaplan*
               Jacob Kaplan
               L Andrew S. Riccio

               452 Fifth Avenue
               New York, New York 10018
               Tel.: 212-626-4100
               Jacob.Kaplan@BakerMcKenzie.com
               Andrew.Riccio@BakerMcKenzie.com

               *Counsel for the Kuwait Ports Authority*