

**Baker & McKenzie LLP**

452 Fifth Avenue
New York, NY 10018
United States

Tel: +1 212 626 4100
Fax: +1 212 310 1600
www.bakermckenzie.com

**Asia Pacific**
Bangkok
Beijing
Brisbane
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta*
Kuala Lumpur*
Manila*
Melbourne
Seoul
Shanghai
Singapore
Sydney
Taipei
Tokyo
Yangon

**Europe, Middle East & Africa**
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dubai
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Jeddah*
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh*
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

**Latin America**
Bogota
Brasilia**
Buenos Aires
Caracas
Guadalajara
Juarez
Lima
Mexico City
Monterrey
Porto Alegre**
Rio de Janeiro**
Santiago
Sao Paulo**
Tijuana
Valencia

**North America**
Chicago
Dallas
Houston
Miami
New York
Palo Alto
San Francisco
Toronto
Washington, DC

\* Associated Firm
\*\* In cooperation with
Trench, Rossi e Watanabe
Advogados

November 11, 2020

The Honorable Andrew L. Carter Jr.
United States District Judge
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**By CM/ECF and Email**
ALCarterNYSDChambers@nysd.uscourts.gov

*In re Application of Kuwait Ports Authority for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, **Case No. 20-mc-00046(ALC)**

Dear Judge Carter,

We represent Applicant the Kuwait Ports Authority (the "***KPA***") in connection with the above-referenced 1782 Application.[1] We write in response to the November 2, 2020 letter filed by the Port Fund [ECF 29], to address certain contentions and correct certain misstatements made therein.

## I. The Section 22 Proceedings Remain Irrelevant to the 1782 Application

In its letter, the Port Fund resurrects its trope that the discovery in the KPA's Section 1782 Application overlaps with the discovery sought in the Cayman Section 22 proceedings. It does not. As the KPA has explained to this Court, it seeks different documents, from different parties, than what has been sought in the Cayman Section 22 proceedings. *See* KPA Reply [ECF 24], at n.5, 17-19, 21. The Section 22 proceedings continue to be completely irrelevant to the instant 1782 Application.

The Port Fund's claim that settlement of the Section 22 proceedings would lead to the "withdrawal of the [1782] application before this Court" is thus incorrect. Indeed, the Section 22 proceedings settled almost immediately after the Port Fund sent its letter to this Court, and the Consent Order settling those proceedings does not withdraw, much less address, the 1782 Application. *See In re Port Fund L.P.*, Consent Order dated November 3, 2020 (attached hereto as **Exhibit A**).

---

[1] Capitalized terms used but not defined shall have the meaning ascribed to such term in the KPA's October 15, 2020 letter. [ECF 28]

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.
1456787\NYCDMS



Nor would it. The documents sought in the 1782 Application are held by financial institutions—Citibank and E*Trade—whose records are not within the "possession, custody or power" of the Port Fund. *See* KPA 1782 Application [ECF 4], at 4, 13; KPA Reply [ECF 24], at 6, 18; Supp. Fox Decl. [ECF 26], at ¶¶ 32-33. The Port Fund does not have the power to produce, nor the Cayman Court the power to order, production of these documents. That power rests with this Court on this 1782 Application.

## II.    The KPA's Commencement of Substantive Cayman Proceedings Further Demonstrates its Entitlement to § 1782 Discovery

The Port Fund spent much of its opposition to the 1782 Application arguing that the KPA's failure to commence proceedings in the Cayman Islands meant that there were no "reasonably contemplated proceedings" justifying a 1782 application. *See* Port Fund Opp. [ECF 20], at 10-14. Now that the KPA has commenced proceedings, the Port Fund pivots, and attempts to argue that the actual commencement of foreign proceedings "does not demonstrate any greater entitlement" to 1782 discovery. *See* Port Fund's November 2, 2020 letter [ECF 29], at 1.

It most assuredly does. Section 1782 exists to provide "assistance to foreign and international tribunals and to litigants before such tribunals." That is the title of the Section. The Port Fund therefore quibbles with the type of proceedings brought. Yet these proceedings are squarely among the kinds of proceedings that the KPA has consistently maintained it intended to bring in its 1782 Application. *See* Fox Decl. [ECF 6], at ¶ 12; KPA Reply [ECF 24], at 10; Supp. Fox Decl. [ECF 26], at ¶¶ 6, 11-12, 17-19. And the discovery sought is clearly relevant to the proceedings that the KPA has initiated in the Cayman Islands, which seek damages for the conduct described in the 1782 Application.[2]

## III.    The Port Fund's Demand Letter is Another Dead Cat

Finally, the Port Fund appears to claim that the Cayman proceedings were initiated solely to distract the Port Fund and Port Link from pursuing a $13 million overpayment claim. Again, this has absolutely no bearing on the merits of the 1782 Application. And again, it is not true. The Port Fund's claim to be entitled to recover this alleged "overpayment" is nothing more than the final death throes of their moribund feline; a gimmick.

---

[2] The Port Fund also claims that the Cayman proceedings are derivative proceedings. This has no bearing on the merits of the 1782 Application. Nor is it true. The Proceedings are not derivative proceedings, as the Port Fund contends, but direct proceedings. *See* Writ of Summons and Statement of Claim [ECF 28-1]. The referenced derivative claim is only an alternative and subsidiary claim. *Id.*, at ¶ 25.



Indeed, this "overpayment" argument was already addressed and dispelled by the KPA in its papers filed with this Court. *See* KPA Reply [ECF 24], at n.4. It was also addressed and dispelled in the KPA's response to the Port Fund's demand letter. Yet despite being in possession of this letter, the Port Fund omitted any reference to it in its correspondence with this Court. A copy of that response letter is therefore attached hereto for the Court's convenience as **Exhibit B**.

The KPA's repeated responses to this canard make clear that the Port Fund's claim that the KPA was "overpaid" requires blindly adopting the very same assertions about the Port Fund's finances that the Port Fund has steadfastly refused to evidence. To credit them, one must ignore the reported sale price of US$1 billion for the Clark Asset and instead assume the Port Fund's $496M price, as further diluted by over $191M in deductions whose legitimacy is questionable, at best. Indeed, if the Port Fund ever brought an action for the alleged "overpayment," the documents requested in the 1782 Application would also assist in the resolution of such dispute, further supporting the KPA's current 1782 Application.

\* \* \* \* \*

Nothing in the Port Fund's latest letter affects the validity of the 1782 Application. Indeed, the Port Fund has failed to demonstrate *any* reason to deny the 1782 Application. We therefore respectfully request that the 1782 Application be granted by this Court at its earliest convenience.

We remain available should the Court have any questions.

Respectfully yours,

/s/ Jacob Kaplan

Jacob Kaplan
Partner
+1 212 891 3896
Jacob.Kaplan@bakermckenzie.com

Cc:      Kathy Hirata Chin
         Crowell & Moring LLP
         By email: kchin@crowell.com

         Sarah M. Gilbert
         Crowell & Moring LLP
         By email: sgilbert@crowell.com

Enclosures