**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x
                      :
                      :
                      :

**In re Application of KUWAIT PORTS**     :       **1:20-MC-00046-ALC**
**AUTHORITY, Petitioner, for an Order Pursuant to**   :
**28 U.S.C. § 1782 to Conduct Discovery for Use in a**   :      <u>**Memorandum and Order**</u>
**Foreign Proceeding**                       :
                      :
                      :
                      :
                      :
-------------------------------------------------------------------- x

**ANDREW L. CARTER, JR., District Judge:**

The Kuwait Ports Authority ("KPA" or "Applicant"), a Kuwaiti entity responsible for

administering commercial ports, filed an *ex parte* application (the "Application") for foreign

judicial assistance pursuant to 28 U.S.C. § 1782 seeking documents and information from

Citibank N.A. ("Citibank") and E*Trade Financial Corporation ("E*Trade") for use in

anticipated litigation proceedings in the Cayman Islands. The Port Fund L.P. ("Port Fund" or

"Intervenor"), a private equity fund for which KPA is a limited partner, moved to intervene and

to oppose the Application. Upon careful review, the Application is hereby **GRANTED**.

## I.    FACTUAL BACKGROUND

This case arises from allegations by one of several limited partners of the Port Fund that

its directors and other managers engaged in fraudulent business activities that deprived the

limited partners of hundreds of millions of dollars. The Port Fund is a Cayman Islands exempted

limited partnership (ELP) that was established under Cayman Islands law in 2007 to make

investments in port-related assets. App.'s Mem. at 9. As a limited partner, the KPA invested

approximately $85 million into the Port Fund. *Id.* at 10. The Amended Limited Partnership

Agreement (LPA) between the Port Fund and its limited partners sets forth certain reporting and

distribution requirements for the Port Fund and Port Link (GP) Ltd. ("Port Link"), general partner of the Port Fund, to abide by. *Id.*

The KPA alleges that the Port Fund and its sponsor and placement agent, KGL Investment Company KSCC ("KGLI"), sold the Clark Asset[1] for approximately $1 billion in or about November 2017. *Id.* However, KPA claims that there is a discrepancy between the purported sale price (USD $1 billion), the publicly reported amount of sale proceeds (USD $496 million), and the amount the Port Fund ultimately attempted to distribute to KPA and other limited partners (USD $305 million). *Id.* at 12–15. The KPA claims that in November 2017 approximately $496 million was ultimately transferred to Noor Bank in Dubai from the Philippines, with funds passing through a Citibank account, and that the Port Fund had only attempted to distribute $305 million of that amount to the KPA and other limited partners. *Id.* at 6–7, 15. The Application alleges that the Port Fund improperly transferred these funds by sending them to Dubai under an account in the name of Port Link, as opposed to transferring the funds to Port Fund's regular accounts in Kuwait. *Id.* at 6, 12–13. The money was frozen by the United Arab Emirates Central Bank upon arrival in Dubai "under suspicion of money laundering or other illicit activity" and "remained frozen until February 2019 when some (not all) of the funds were distributed to the Port Fund's limited partners." *Id.* at 6.

In addition, the KPA alleges that its former Director of Finance, Abdullah Bader Mohammed Al Shamali, engaged in a kickback scheme for which he is being tried in Kuwait[2] and for which Mr. Al Shamali made improper transfers to his brother, Khalid Al Shamali, via an

---

[1] The Clark Asset refers to the sale of Clark Civil Aviation Complex in the Philippines by the Port Fund.
[2] The Application states that his initial conviction had been vacated on procedural grounds, but that—though now a fugitive—he is being re-tried in Kuwaiti criminal proceedings. *Id.* at 7 n.4. Mr. Al Shamali was convicted in Kuwait alongside Marsha Lazareva (Vice Chairman and CEO of KGLI and former director of Port Link), Saeed Dashti (Chairman of the KGL Group of Companies and Port Link board member), and others in criminal proceedings in connection with the misappropriation of funds. *Id.* at 12–13.

E*Trade account in the United States. *Id.* at 7. The Application calls the purported kickback scheme "one of a number of self-dealing schemes that form the basis for additional causes of action that will be pursued" in the anticipated winding up proceedings. *Id.* at 8. (footnote omitted).

Finally, the KPA claims that the Port Fund and/or its related entities made improper payments to American public relations and lobbying firms. Those payments, the KPA alleges, were paid out from the same Noor Bank account that received the sale proceeds from the Clark Asset and that were transferred through Citibank. *Id.* at 8.

The Application seeks permission to subpoena documents and information from (1) Citibank and (2) E*Trade. Proposed subpoenas are attached to the Application. *See* Jonathan C. Cross Decl., Exs. 1–2. From Citibank, the Application seeks "[d]ocuments and information . . . about certain USD transactions at issue in the [i]mpending Cayman [l]itigation, including (i) transactions relating to the USD 496 million deposit to Port Link's account with Noor Bank following the sale of the [a]sset[s]; and (ii) details regarding all disbursements made from the Noor Bank account." *Id.* at 9 (footnote omitted). The KPA believes that its "investigation to date indicates that these U.S. correspondent banks would have processed any such USD transactions." *Id.* From E*Trade, the KPA seeks "[d]ocuments and information . . . related to an account held by Khalid Al Shamali, the brother of disgraced former KPA Director of Finance, Abdullah Al Shamali, including an approximate USD 3.3 million incoming transfer that occurred on or around September 2, 2010." *Id.*

The Application also states that the KPA will commence litigation proceedings in the Cayman Islands "in the form of a just and equitable winding up petition related to the Port Fund." *Id.* at 17. The requested discovery is necessary "to persuade the Cayman court that

winding up the Port Fund is the just and equitable result." *Id.* at 18. Under Cayman law, the limited partner that seeks to wind up an ELP will need to "adduce clear and cogent evidence to persuade the Court that it is just and equitable to wind up the ELP." Jennifer Fox Decl. ¶ 9. If the KPA prevails in the intended winding up proceedings, "the Cayman court will appoint independent insolvency practitioners as official liquidators over Port Link for the purpose of winding up the Port Fund." App.'s Mem. at 18. "The official liquidators will then take control of the Port Fund from the directors of Port Link and the Port Fund's investment manager, and will have extensive powers under Cayman law to investigate the Port Fund's business and affairs, and to bring claims on behalf of the Port Fund against Port Link and/or any third parties who may have been involved with or benefitted from the fraud, breach of duty or mismanagement." *Id.* A winding up petition under Cayman law is "typically presented where it is suspected that there has been fraud or mismanagement" or "similar circumstances" committed by the general partner, or general partners, of an ELP. *Id.* At the time of filing of the Application, the record did not reflect that the KPA had commenced litigation proceedings in connection with a winding up petition targeting the Port Fund or its related entities.[3]

On January 21, 2020, the KPA sought consent from the Port Fund entities to join the Gulf Investment Corporation's ("GIC") proceedings commenced in the Cayman Islands pursuant to Section 22 of the Cayman Islands Exempted Limited Partnership Law ("Section 22 Proceedings"). Opp. Mem. at 22. The goal of those proceedings was to decide what information the limited partners of the Port Fund were entitled to (if any) under Cayman law and

---

[3] On October 14, 2020, the KPA commenced proceedings against Port Link in the Cayman Islands "seeking various forms of relief, including damages and compensation for the misappropriation and/or misdirection of the Port Fund's assets." ECF No. 28 at 1. The KPA and Port Fund dispute whether those proceedings are the anticipated just and equitable winding up proceedings at the heart of this Application. But, as the KPA concedes, they are not. *Id.* at 2 n.1 ("Although a just and equitable winding up proceeding has not yet been commenced, it remains within the KPA's reasonable contemplation as another avenue of redress of the scheme outlined in the 1782 Application.") (citations omitted).

what confidentiality protections (if any) were to be imposed on the production and use of the requested information. *Id.* at 23. The Port Fund entities consented to the KPA joining on the condition that the KPA "file[] separate evidence supporting its requests for the same information sought by GIC," which the KPA ultimately did. *Id* at 22.

In or about May 2020, the Grand Court of the Cayman Islands held a Section 22 hearing. On June 16, 2020, the Hon. Raj Parker of the Grand Court ruled in favor of the KPA on certain legal issues in the Section 22 proceedings concluding, *inter alia*, that:

- "[S]ection 22 [] provides the Plaintiffs with an entitlement to demand and receive true and full information regarding the business and financial affairs of the partnership." Supp. Fox Decl., Ex. G. ¶ 84. "It is a very wide unqualified provision and will include all of the books and records maintained by the General Partner pursuant to the statutory obligation imposed on it under section 21." *Id.* ¶ 86. "However it is wider than section 21 as it requires information to be provided, not just documents, and the information needs to be 'true and full', not 'true and fair' as is the case under section 21, which only deals with books and records of account." *Id.*

- "On a proper construction of the [Limited Partnership Agreement] there is no restriction on use in relation to information provided relating to the books and records and accounting material." *Id.* ¶ 90.

- The "ordinary and natural meaning" of clause 7.1 of the Limited Partnership Agreement is that "the General Partner can impose conditions and restrictions for *access* and the *provision* of copies as a matter of practicalities complying with the obligation." *Id.* ¶ 99 (emphasis original). "The reasonable conditions and restrictions extend only to practicalities." *Id.*

- The Limited Partnership Agreement contains "no provision on the *use* of information provided in the LPA except as provided for in clause 7.3 which imposes duties of confidentiality on the Plaintiffs in respect of a wide variety of information." *Id.* ¶ 101 (quoting agreement terms) (emphasis original). Judge Parker added that "[t]hat represents the extent of the regime agreed by the parties in the LPA as to the *use* of information once provided." *Id.* ¶ 102.

- "No separate [Cayman Islands Confidential Disclosure Information Law] order under section 4 is required because the Order in the present case for the General Partner to provide information demanded will provide sufficient protection under section 3(1)(j)," which states in relevant part: "disclosure of confidential information in accordance with or pursuant to a right or duty created by any law . . . shall not constitute a breach of the duty of confidence and shall not be actionable at the suit of any person." *Id.* ¶ 105.

Judge Parker further wrote that the Grand Court had been informed "that the 2017 accounts as audited were provided shortly before the hearing and they contain[ed] a lot of information about matters which ha[d] been the subject of questions from the limited partners," and that "[t]he audited 2018 and 2019 accounts were to follow in the next few weeks." *Id.* ¶ 106.[4]

## II.    PROCEDURAL HISTORY

The KPA filed the instant application on January 27, 2020, including an accompanying memorandum of law and declarations. ECF Nos. 1, 4–7. Following receipt of correspondence from non-party, the Port Fund, about its "interest in this matter," its request to be heard with respect to the Application, and U.S. District Judge Vernon Broderick's denial of its request to consolidate the instant application with the GIC application before him,[5] this Court granted the Port Fund leave to file a motion to intervene and opposition to the Application. ECF Nos. 8–11. On May 29, 2020, the Port Fund filed its Motion to Intervene and Opposition to the Application, which included a memorandum of law and declarations. ECF Nos. 19–23. The KPA replied in support of the Application and in opposition to the Motion to Intervene on July 3, 2020, which comprised a memorandum of law and additional declarations. ECF Nos. 24–26. The Port Fund filed a reply on July 10, 2020. ECF No. 27. After full briefing on the Application and Motion to Intervene, both the KPA and the Port Fund submitted several status letters to the Court from October 15, 2020 through August 10, 2021. ECF Nos. 28–37. This Court does not find it necessary to hold oral argument on the Application and will rule on the parties' written submissions.

## III.    APPLICABLE LEGAL STANDARDS

---

[4] It appears that Port Link and Port Fund appealed Judge Parker's decision. ECF No. 29 at 2. But that appeal seems to have been withdrawn. ECF No. 33-1 at 7 (Amended Writ of Summons dated February 12, 2021).
[5] *See Gulf Inv. Corp.*, No. 19-MC-593 (VSB), 2020 WL 7043502 (S.D.N.Y. Nov. 30, 2020).

### A.  Motion to Intervene

The Federal Rules of Civil Procedure require courts to "permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Intervention as of right under Rule 24(a)(2) is granted when an applicant: "(1) timely file[s] an application, (2) "show[s] an interest in the action, (3) demonstrate[s] that the interest may be impaired by the disposition of the action, and (4) show[s] that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (citation omitted). "Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application." *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996) (quoting *Farmland Dairies v. Comm'r*, 847 F.2d 1038, 1043 (2d Cir. 1988) (emphasis in original)).

Under Rule 24(b)(1)(B), courts "may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Rep. of Phil. v. Christie's*, No. 98-CV-3871 (RPP), 2000 WL 1056300, at *2 (S.D.N.Y. Aug. 1, 2000) (quoting *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 73, 73 (2d Cir. 1994)) ("[a]n applicant may be allowed to intervene permissively if 'upon timely application . . . [its] claim or defense and the main action have a question of law or fact in common.'"). In addition, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Other relevant factors

'include the nature and extent of the intervenors' interests,' whether their interests are 'adequately represented by the other parties,' and 'whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Postal Serv. v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978) (quoting *Spangler v. Pasadena City Board of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977) (footnote omitted)). District courts have full discretion regarding permissive intervention. *Id.* at 191.

### B.   § 1782 Application

"In ruling on an application made pursuant to [S]ection 1782, a district court must first consider the statutory requirements and then use its discretion in balancing a number of factors." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). A district court is authorized to grant a 28 U.S.C. § 1782 application for judicial assistance to foreign tribunals and litigants before such tribunals when: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Id.* (citations omitted). These three statutory factors must be met for a district court to have the authority to grant a § 1782 application.

If a petition meets the statutory requirements, a court then must exercise its discretion to determine whether granting the application will comport with the "twin aims of the statute," which are "providing efficient means of assistance to participants in international litigation in our federal courts" and "encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d

8

Cir. 2004). This analysis is governed by the test promulgated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). The four discretionary *Intel* factors are:

> 1) Whether the person from whom discovery is sought is a participant in the foreign proceeding, in which event the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad;
>
> 2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;
>
> 3) Whether the § 1782(1) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
>
> 4) Whether the request is unduly intrusive or burdensome.

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (citing *Intel*, 542 U.S. at 264–65). If a § 1782 application satisfies the statutory requirements and the discretionary *Intel* factors, a district court may grant the petition.

## IV.    DISCUSSION

### A.  The Port Fund May Intervene in This Action

The Port Fund moves to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure to oppose the Application. The Second Circuit has previously explained that "standing to oppose subpoenas issued under § 1782 is [not] limited to the subpoenaed witness" and "that parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties." *In re Hornbeam Corp.*, No. 14MISC424PART1, 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17, 2015), *aff'd,* 722 F. App'x 7 (2d Cir. 2018), and *aff'd,* 722 F. App'x 7 (2d Cir. 2018) (citing *In re Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (citations and internal quotation marks omitted)). Applicant raises no arguments directly contesting, nor provides any legal authority challenging, this well-

9

established principle.[6] There is no doubt that the Port Fund is the party "against whom the requested information will be used" in the anticipated winding up proceedings. App.'s Mem. at 17–18. Also, none of the discretionary factors weigh against permitting intervention. Thus, the Court will allow the Port Fund to intervene for purposes of opposing the Application.[7]

## B. The § 1782 Application Satisfies the Statutory Requirements

The Court now turns to whether the KPA is entitled to Section 1782 discovery from Citibank and E*Trade in connection with its anticipated winding up proceedings in the Cayman Islands. Because the Application satisfies the mandatory and discretionary factors under the statute, the Court will grant the Application.

### 1. Both Citibank and E*Trade Reside or Are "Found" in This District

While the parties do not dispute that Citibank resides or is "found" in the Southern District of New York for purposes of Section 1782,[8] they do disagree about E*Trade in this regard. The Court concludes that E*Trade is "found" in the Southern District of New York.

The Second Circuit has held that "§ 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520,

---

[6] Although Applicant argues that the Port Fund's standing to intervene in connection with the Citibank subpoena is more limited, Applicant nonetheless concedes that, with respect to that subpoena, the Port Fund is a "part[y] against whom the requested information will be used." App.'s Rep. Mem. at 15. Moreover, the KPA's arguments contesting intervention regarding the E*Trade subpoena fail. It contends that the Port Fund cannot simultaneously argue (i) that E*Trade information would not be relevant in impending Cayman winding up proceedings and (ii) that they may intervene to object the validity of the E*Trade subpoena. But, as the Port Fund acknowledges, the contention that E*Trade information would be irrelevant to the proceedings goes to the merits of the Application. For purposes of deciding intervention specifically, however, this Court looks only to "the parties against whom the requested information will be used."

[7] Though the KPA provides some authority for the proposition that the Port Fund, as intervenor, has no standing to contest Section 1782 subpoenas as burdensome where the subpoena targets had been served a copy of the petition and declined to object, the authority is not binding. For this reason, the Court considered all of the Port Fund's arguments as to the fourth *Intel* factor in deciding that the factor favored granting the Application. *See infra*. Pursuant to Rule 45 of the Federal Rules of Civil Procedure, both Citibank and E*Trade may still seek to quash or modify the subpoenas once formally issued.

[8] The Court has general personal jurisdiction because Citibank is headquartered at 388 Greenwich St., New York, NY 10013.

528 (2d Cir. 2019). To determine whether personal jurisdiction will lie, courts in New York must

consider two questions: "(1) whether there is jurisdiction under New York law; and (2) whether

the exercise of jurisdiction would be consistent with federal due process requirements." *City of*

*Almaty v. Ablyazov*, 278 F.Supp.3d 776, 806 (S.D.N.Y. 2017) (citing *Grand River Enters. Six*

*Nations, Ltd. V. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). Jurisdiction under New York law can

be pursuant to the state general jurisdiction statute, N.Y. CPLR § 301, or the state long-arm

statute, N.Y. CPLR § 302(a).

       a.   The Court May Not Exercise General Jurisdiction over E\*Trade

"Section 301 preserves the common law notion that 'a court may exercise general

jurisdiction over a nondomiciliary defendant if the defendant is engaged in such a continuous and

systematic course of doing business here as to warrant a finding of its presence in this

jurisdiction.'" *Thackurdeen v. Duke Univ.*, 130 F.Supp.3d 792, 798 (S.D.N.Y. 2015) (citation

omitted)). For a corporation, the appropriate forum for the exercise of general jurisdiction is

where the corporation "is fairly regarded as at home," *Goodyear Dunlop Tires Operations, S.A.*

*v. Brown*, 564 U.S. 915, 924 (2011), which is typically "where it is incorporated or maintains its

principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).

The Court does not have general personal jurisdiction over E\*Trade. E\*Trade is not

incorporated and does not have its principal place of business in this district. Indeed, the KPA

concedes that there is no general jurisdiction based on the most updated public Securities &

Exchange Commission records for E\*Trade, which state that it is headquartered in Virginia and

incorporated in Delaware. App.'s Rep. Mem. at 22 n.10. And though the Application indicates

that E\*Trade has two offices in Manhattan, that information alone is insufficient to render

E\*Trade "essentially at home." *Ruiz*, 342 F.Supp.3d at 454–55 (explaining holding in *Gucci*

*America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014)); *see also Ei Corp., Inc. v. Gallant Cap. Partners, LLC*, No. 220CV01119APGNJK, 2020 WL 4342663, at *1 (D. Nev. July 28, 2020); *Cannon v. Charter Commc'ns*, No. CV 18-624 (JEB), 2018 WL 5996526, at *2 (D.D.C. Nov. 15, 2018); *Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2014 WL 296159, at *4 (N.D. Cal. Jan. 27, 2014).

        b.   The Court May Exercise Specific Jurisdiction over E*Trade

In New York, specific jurisdiction is governed by N.Y. CPLR § 302. "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in the state." *Lockheed Martin*, 814 F.3d at 629. New York's long-arm statute allows for specific jurisdiction over a non-domiciliary "who in person or through an agent . . . (1) transacts business within the state or contracts anywhere to supply goods or services in the state, or (2) commits a tortious act within the state . . . or (3) commits a tortious act without the state causing injury to person or property within the state . . . or (4) owns, uses or possesses any real property situated within the state." N.Y. CPLR § 302. A court must determine whether the non-domiciliary transacts business within the state of New York and, if it does, whether the alleged claim arises from such business within the state. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247-50 (2d Cir. 2007). "The New York Court of Appeals has explained that the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities in New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citations omitted). "A single transaction would be sufficient to fulfill this requirement . . . so long as the relevant cause of action also arises from that transaction." *Bank Brussels Lambert v. Fiddler Gonzalez &*

*Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) (quoting New York state cases) (citations, internal quotation marks, alterations, and footnote omitted).

On this record, the Court may maintain specific jurisdiction over E*Trade. The requested discovery "arises from a 2010 funds transfer to an account at The Bank of New York in the name of E*Trade, which took place when E*Trade was headquartered in New York." App.'s Rep. Mem. at 22. The Application alleges that as part of the purported kickback scheme, improper payments were made to Khalid Al Shamali—brother of former KPA Director of Finance, Abdullah Bader Mohammed Al Shamali—through a series of transactions that resulted in a transfer of KWD 1 million to The Bank of New York under account name "E*TRADE Securities, Inc." Sabah Decl. ¶ 36–40; *see also* Sabah Decl., Ex. 10. The KPA alleges that Abdullah Bader Mohammed Al Shamali used this account to transfer the unauthorized funds to his brother. App.'s Mem. at 7–8. Funds transfers through New York bank accounts normally constitute "transaction of business" under N.Y. CPLR § 302(1). *See Licci v. Lebanese Canadian Bank, SAL,* 20 N.Y.3d 327, 960 N.Y.S.2d 695, 984 N.E.2d 893, 899 (2012) (quoting *Licci,* 673 F.3d at 66); *see, e.g., Jain v. T & C Holding Inc.,* No. 10 Civ. 1006(RMB), 2011 WL 814659, at *5 (S.D.N.Y. Mar. 3, 2011) (internal quotation marks omitted); *Ge Dandong v. Pinnacle Performance Ltd.*, 966 F.Supp.2d 374, 381–84 (S.D.N.Y. 2013). There is also "an articulable nexus or substantial relationship between the transaction" and the allegations that form the basis of the conduct that underlies the Application. *Cf. Hartford Fire Ins. Co. v. Maersk Line*, No. 18-CV-121 (PKC), 2019 WL 4450639, at *3 (S.D.N.Y. Sept. 17, 2019) (quoting *D&R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 297–99 (2017)). The Court can therefore extend specific personal jurisdiction over E*Trade pursuant to New York's long-arm statute.

c.   Extending Personal Jurisdiction over E*Trade Would Satisfy Due
Process

For the due process analysis, courts must determine (1) "whether a defendant has

sufficient minimum contacts with the forum to justify the court's exercise of personal

jurisdiction over the defendant" and (2) "whether the assertion of personal jurisdiction over the

defendant comports with 'traditional notions of fair play and substantial justice.'" *Waldman v.*

*Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*,

571 U.S. 117, 126 (2014) (internal quotations marks omitted)); *see also In re Terrorist Attacks*

*on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013). Here, E*Trade participated in a funds

transfer through a New York bank account and maintains two offices in Manhattan. There is no

doubt here that E*Trade has sufficient minimum contacts with New York as it has "'purposefully

availed itself of the privilege of conducting activities within the forum State, thus invoking the

benefits and protections of its laws, such that [it] should reasonably anticipate being haled into

court there.'" *Walker*, 490 F.3d at 242–43 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 474–75 (1985)). The Port Fund raises no arguments that exercising personal jurisdiction

would contravene "traditional notions of fair play and substantial justice," and the Court does not

find that asserting personal jurisdiction over E*Trade would be unreasonable.[9]

---

[9] The Court adds that due process is satisfied because E*Trade has waived any objection to personal jurisdiction in connection with the Application. "[T]he requirement of personal jurisdiction represents . . . an individual right [that] can . . . be waived." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). "[W]aiver is the intentional relinquishment or abandonment of a known right." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted)). This due process right "may be waived either explicitly or implicitly." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998). A court may maintain personal jurisdiction by implied consent where "'[t]he actions of the [party] . . . amount to a legal submission to the jurisdiction of the court, whether voluntary or not.'" *Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) (summary order) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011)). Here, communications between the KPA and E*Trade demonstrate that they have waived any defense for lack of personal jurisdiction in connection with the instant application. In email correspondence dated May 19, 2020, E*Trade's Deputy General Counsel, John Bersin, acknowledged notice of the Application (which included the proposed subpoena) and wrote that "E*TRADE does not intend to oppose [the] [A]pplication." Jacob Kaplan Decl., Ex. 1. Bersin then informs the KPA representative that E*Trade generally does not retain records more than seven years old. *Id.* The Port Fund has presented no

2.   **The Requested Discovery Is "For Use" in Foreign Proceedings Before a Foreign Tribunal**

It is undisputed that the intended just and equitable winding up litigation before the Cayman courts constitutes a "foreign proceeding before a foreign tribunal." However, the Port Fund challenges the second statutory requirement on the basis that the discovery is not "for use" in the intended winding up proceedings because they are not reasonably contemplated. The Court disagrees and finds that the KPA has met the second statutory factor.

a.   The Just and Equitable Winding Up Proceedings are Reasonably Contemplated

Where adjudicative proceedings are not "pending" or "imminent," Section 1782 can still "come[] into play" where "a dispositive ruling [is] within reasonable contemplation." *Intel*, 542 U.S. at 259 (citing *In re Letter of Request from Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686, 691 (D.C. Cir. 1989)). Reasonable contemplation means that "the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123–25 (2d Cir. 2015). "[I]t suffices to observe that the Supreme Court's inclusion of the word 'reasonable' in the 'within reasonable contemplation' formulation indicates that the proceedings cannot be merely speculative." *Id.* "At a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.* at 123–24. The Second Circuit has typically rejected Section 1782 applications "where it was 'apparent that

---

argument demonstrating a contrary interpretation of this email, and E*Trade itself has not appeared in this action to oppose the Application—let alone to contest personal jurisdiction. Examining all the circumstances, E*Trade's actions in connection with the Application appear to "amount to a legal submission to the jurisdiction of the court." *Bennaceur*, 658 F. App'x at 616.

all that the [applicants] alleged before the district court was that they had retained counsel and were discussing the *possibility* of initiating litigation,' such that 'at the time the evidence was sought in th[e] case, the [applicants] had done little to make an objective showing that the planned proceedings were within reasonable contemplation.'" *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 100–02 (2d Cir. 2020) (quoting *Certain Funds*, 798 F.3d at 124) (internal quotation marks and alterations original). This Circuit has not determined "what precisely an applicant must show to establish" that planned proceedings are reasonably contemplated. *Id*. This is a fact-specific inquiry. *Id.*

The Application satisfies the second statutory requirement because the possible just and equitable winding up proceedings are within reasonable contemplation. The Application indicates that the KPA is conducting an "extensive and ongoing" investigation and retained local Cayman counsel that has "reviewed the relevant documents and begun preparing the necessary pleadings." App.'s Mem. at 22–23. It further states that there is "reason to believe that hundreds of millions of dollars . . . have been taken or withheld—under circumstances currently shrouded in mystery" and that the KPA "does not . . . currently have sufficient evidence to prove that Port Link, as general partner of Port Fund, committed fraud or has breached its fiduciary duties or has mismanaged Port Fund." Fox Decl. ¶ 10. A winding up petition under Cayman law is "typically presented where it is suspected that there has been fraud or mismanagement" or "similar circumstances" committed by the general partner, or general partners, of an ELP. *Id* ¶ 9. The KPA plans to use the requested discovery to plead or prove claims for fraud and mismanagement of funds by Port Link to make their case for a just and equitable winding up proceeding under Cayman law. The Application articulates theories that will form the basis of the petition, including "showing a lack of probity or mismanagement of the Port Fund and a justifiable loss of

confidence by KPA, or that there have been payments or inappropriate activities that require some further investigation by independent liquidators." App.'s Rep. Mem. at 18 (citing Fox declarations). Because KPA has retained Cayman counsel, said counsel has begun preparing the necessary pleadings for the petition; the Application has set forth a theory that Port Link mismanaged funds in such a manner that, under Cayman law, the Port Fund ought to be wound up; and the KPA has provided declarations expressing an intent to initiate the winding up proceedings, the second statutory factor is satisfied.[10] These steps are sufficiently "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Certain Funds*, 798 F.3d at 123 (quoting *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014)); *see also In re Application of Furstenberg Fin. SAS*, 334 F.Supp.3d 616, 619 (S.D.N.Y. 2018), *aff'd sub nom. In re Furstenberg Fin. SAS*, 785 F. App'x 882 (2d Cir. 2019). The Application provides objective indicia that they will commence the winding up proceedings— rather than rely upon the requested discovery "to assess whether to initiate actions," which would be "plainly insufficient." *In re Sargeant*, 278 F.Supp.3d 814, 823–24 (S.D.N.Y. 2017) (citing cases).

### 3.  The KPA Is An "Interested Person"

It is undisputed that the KPA is an "interested person" under Section 1782,[11] and the Court agrees. The KPA will be a party in the anticipated winding up proceedings against the Port

---

[10] The KPA commenced proceedings on October 14, 2020 against Port Link in the Cayman Islands. But both parties acknowledge that those proceedings are not the just and equitable winding up proceedings that are the subject of the instant application. The Port Fund has not provided a sufficient reason why the commencement of the October 14, 2020 proceedings would prevent the KPA from initiating the just and equitable winding up litigation that is the subject of this Application.

[11] Intervenor concedes its own argument that the KPA may not be a "person" as contemplated by Section 1782: "[T]he Port Fund acknowledges that at present, in the ever-developing world of Section 1782 jurisprudence, the weight of authority is in favor of deeming KPA a 'person' for Section 1782 purposes." Opp. Mem. at 20. They make no other arguments contesting whether the KPA is an "interested person."

Fund and therefore is an "interested person." *See Intel*, 542 U.S. at 256. The Application thus meets the third statutory factor under Section 1782.

### C.  The Discretionary *Intel* Factors Favor Granting the § 1782 Application

Having determined that the Application satisfies the three statutory requirements, the Court is authorized to grant the petition. But before doing so, the Court must assess whether the Application meets the discretionary *Intel* factors. "[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Id.* at 264 (citation omitted). On this record, the Court concludes that all the discretionary factors weigh in favor of granting the Application.

#### 1.  Both Citibank and E*Trade Are Outside the Cayman Courts' Jurisdictional Reach

The KPA has represented that Citibank will not be a participant in the anticipated litigation proceedings,[12] so the Application does not present a situation where "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.*; *see, e.g., In re Application of Shervin Pishevar for an Ord. to take Discovery for use in Foreign Proc. Pursuant to 28 U.S.C. § 1782*, 439 F.Supp.3d 290, 303 (S.D.N.Y. 2020), *adhered to on reconsideration sub nom. In re Pishevar*, No. 119MC00503JGKSDA, 2020 WL 1862586 (S.D.N.Y. Apr. 14, 2020); *In re Application of Lake Holding & Fin. S.A.*, 2021 WL 2581427, at *17 (S.D.N.Y. 2021); *In re Tovmasyan*, No. 21MC353RAM, 2021 WL 3737184, at *5 (D.P.R. Aug. 20, 2021).

The Port Fund's arguments to the contrary are without merit. While there is no doubt that the Port Fund entities, including Port Link, will be participants in the anticipated litigation, the

---

[12] The Port Fund does not argue that E*Trade would be a participant in the anticipated litigation. Because they concede this point, the Court need not further address this issue with respect to E*Trade.

Court is unpersuaded that these entities would have the requested Citibank records in their

possession, custody, or control. The Application asserts that the Cayman courts lack jurisdiction

to order the production of Citibank's records in the Section 22 Proceeding "or in any other

Cayman proceeding." App.'s Rep. Mem. at 25 (citing Supp. Fox. Decl. ¶ 30). Indeed, the Port

Fund itself recognizes that Citibank may possess "internal documents" outside the Port Fund's

possession. Opp. Mem. at 21; *cf. In re Tiberius Grp. AG*, No. 19-MC-467 (VSB), 2020 WL

1140784, at *6 (S.D.N.Y. Mar. 6, 2020) ("[T]here is no evidence or testimony that information

possessed by the New York Banks would be within the jurisdictional reach of the [foreign

tribunal].") (citing cases). And, to the extent there is some overlap in the information sought here

and in the Section 22 Proceeding, because the intended winding up proceedings seem to require a

high standard of proof, the proposed subpoena would likely provide corroborating information

that would bear on those proceedings. *See, e.g.*, *In re Aso*, No. 19MC190JGKJLC, 2019 WL

2345443, at *8 (S.D.N.Y. June 3, 2019), *appeal withdrawn sub nom. In re Application of Aso for*

*an Ord. Pursuant to 28 U.S.C. 1782 to conduct 19 MC 190 (JGK) (JLC) Discovery for Use in*

*Foreign Proc.*, No. 19-1716, 2019 WL 4296121 (2d Cir. Aug. 20, 2019) ("[T]he subpoenaed

parties are uniquely positioned to provide corroborating information."). Finally, as a

nonparticipant in the anticipated Cayman litigation and with no factual support suggesting

otherwise, Citibank is "outside the foreign tribunal's jurisdictional reach." *Intel*, 542 U.S. at 264.

Therefore, the first discretionary factor favors permitting the discovery order.

### 2.   Cayman Courts Would Be Receptive to Foreign Judicial Assistance

The record contains no clear and express directive under Cayman law or policy that

would demonstrate a lack of receptivity to judicial assistance from federal courts in the United

States. In *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995), the Second

Circuit elaborated on this factor:

> [W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782. Such proof, as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures, would provide helpful and appropriate guidance to a district court in the exercise of its discretion. Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'

*Id.* (footnotes and citations omitted). The Court of Appeals in *Euromepa* also discouraged district

courts from engaging in "an extensive examination of foreign law regarding the existence and

extent of discovery in the forum country . . . to ascertain the attitudes of foreign nations to

outside discovery." *Id.* at 1099. Here, the Port Fund does not argue or provide "authoritative

proof" that Cayman courts would reject the use of the requested discovery in the anticipated

litigation proceedings. Moreover, as the KPA accurately emphasizes, the weight of authority

reflects that Cayman courts are generally receptive to judicial assistance from federal courts.

Therefore, the second *Intel* factor also favors granting the Application.

### 3. The Application Is Not an Attempt to Circumvent Foreign Proof-Gathering Restrictions or Other Policies of the Cayman Islands

At this time, the Application does not present any "foreign proof-gathering restrictions or

other policies of a foreign country or the United States" that the KPA could attempt to

circumvent. *Intel*, 542 U.S. at 265. The Port Fund contends that the Application "seek[s] to avoid

or preempt a negative ruling from the Cayman Islands court in the pending [Section 22]

proceeding." Opp. Mem. at 17. However, the Cayman courts already rendered a decision, which

moots this contention. Cayman Justice of the Grand Court Raj Parker ruled in favor of the KPA

and held, among other things, that there is no restriction on the use of information relating to
accounting books and records regarding the partnership and that the disclosure of confidential
information does not necessarily constitute a breach of the duty of confidence where the
disclosure is made pursuant to a separate Cayman law. Supp. Fox Decl., Ex. G. at 16–17.
Moreover, the ruling did not place any express restriction on the KPA obtaining the requested
discovery sought in *this* Application. *Id.* To the extent the Port Fund has concerns about the
requested discovery being shared outside the anticipated litigation, this Court may limit
discovery to use only in the anticipated winding up proceedings. *In re Accent Delight Int'l Ltd.*,
869 F.3d 121, 135 (2d Cir. 2017) ("[W]e hold that Section 1782 does not prevent an applicant
who lawfully has obtained discovery under the statute with respect to one foreign proceeding
from using the discovery elsewhere unless the district court orders otherwise."). For this reason,
the third discretionary factor favors authorizing the discovery requests.

### 4.   The Requested Discovery Is Not Unduly Intrusive or Burdensome

"[A] district court evaluating a § 1782 discovery request should assess whether the
discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule
26 of the Federal Rules of Civil Procedure." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015)
(citing *In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002)). "[U]nduly intrusive or burdensome
requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. The Port Fund objects to this factor
on the basis that the Citibank documents may be located outside the United States and that
E*Trade requests seek irrelevant information.[13] The Court disagrees and addresses each
argument in turn.

---

[13] The Port Fund also objects to this factor on the basis that the Citibank subpoena is duplicative of documents and
information the KPA will obtain (or has obtained) through the Section 22 Proceedings and the potential risk of the
KPA sharing the subpoenaed materials with Kuwaiti authorities outside the scope of the anticipated litigation

The Port Fund's assertion that the proposed Citibank subpoena seeks foreign financial records does not caution against permitting the requested discovery. In *Ruiz*, the Second Circuit joined the Eleventh Circuit in reasoning that because the Federal Rules of Civil Procedure "authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control . . . . [Section] 1782 allows extraterritorial discovery." 939 F.3d at 533 (citing *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1199–1200 (11th Cir. 2016)). The Second Circuit further instructed that "a court may properly, and in fact should, consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize discovery." *Id.* (citing *Mees*, 793 F.3d at 302). The Application states that Citibank acted as a U.S. correspondent bank involving transactions in U.S. currency and, therefore, the Court expects that most documents are located domestically. Nonetheless, in the off chance there are documents located abroad, so long as they are in the possession, custody, or control of Citibank, the extraterritorial discovery is permissible. *Id.* at 533.

The Port Fund also argues that the requested discovery from E*Trade regarding the purported kickback scheme is irrelevant to the anticipated foreign litigation proceedings. The Court finds this argument unavailing. The Application indicates that the information would be relevant to the winding up proceedings in part because the purported kickback scheme "provides another objective basis for the loss of confidence in the Port Fund's management and advisors" who allegedly misappropriated funds "via KGLI by *those in control of the Port Fund* . . . both now convicted criminals . . . and paid to an account held by Khalid Al Shamali . . . at E*Trade's

---

proceedings. The Court has already addressed these objections *supra* and concluded that they do not bar the instant application.

Bank of New York account in New York." App.'s Rep. Mem. at 6 (citing Sabah Decl. ¶ 40) (emphasis added); *see also* App.'s Mem. at 8 n.5 (discussing several schemes to be pursued in the intended winding up proceedings related to or involving the Port Fund managers and directors). In litigation alleging the suspected mismanagement of funds by the managers and directors of the Port Fund as a basis for winding up that ELP, the Court would be remiss to conclude that the requested discovery is "plainly irrelevant to the foreign proceeding." *Certain Funds*, 798 F.3d at 120 n.7. Doing so on the record before this Court would contravene the "twin aims of the statute."[14] *See Schmitz*, 376 F.3d at 84.

## V.   CONCLUSION

For the preceding reasons, the statutory requirements under 28 U.S.C. § 1782 are satisfied and the discretionary *Intel* factors balance in favor of granting the Application. Therefore, the KPA's § 1782 application for discovery from Citibank, N.A. and E*Trade Financial Corporation is hereby **GRANTED** for use limited to the anticipated just and equitable winding up proceedings of the Port Fund in the Cayman Islands. The Clerk of Court is respectfully directed to issue the subpoenas and the KPA is authorized to serve the proposed subpoenas annexed as Exhibits 1 and 2 to the Declaration of Jonathan C. Cross upon Citibank and E*Trade, *see* ECF No. 5, along with a copy of this Memorandum and Order. Citibank and E*Trade are directed to respond to such subpoenas in accordance with Rule 45 of the Federal Rules of Civil Procedure and all other applicable rules.

**SO ORDERED.**

---

[14] To the extent the request needs further tailoring, "[o]nce Petitioner serves the requested subpoena, [E*Trade and Citibank] will have the opportunity to seek an order from this Court modifying or quashing the subpoena." *Matter of HES (Caribbean) Int'l Holdings, S.R.L.*, No. 20-CV-506, 2020 WL 728892, at *4 (D.N.J. Feb. 13, 2020).

**Dated**:   December 13, 2021
       New York, New York

_____
The Hon. Andrew L. Carter, Jr.
United States District Judge